**C. Marie Eckert**, OSB No. 883490
marie.eckert@millernash.com
**Suzanne C. Lacampagne**, OSB No. 951705
suzanne.lacampagne@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  (503) 224-5858
Facsimile:  (503) 224-0155

**Roger R. Martella, Jr.**
rmartella@sidley.com
**Quin M. Sorenson**
qsorenson@sidley.com
**Benjamin E. Tannen**
btannen@sidley.com
*(to be specially admitted)*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 736-8000
Facsimile:  (202) 736-8711

Attorneys for Proposed Intervenor-Defendants
  The National Association of Manufacturers,
  American Fuel & Petrochemical Manufacturers,
  and American Petroleum Institute

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**, et al., | Case No.  6:15-cv-01517-TC |
| **Plaintiffs,** | |
| v. | MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE |
| **UNITED STATES OF AMERICA**, et al., | |
| **Defendants.** | |

Memorandum in Support of Motion to Intervene

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

SUMMARY OF CASE ....................................................................................................... 4

ARGUMENT ....................................................................................................................... 8

I.      The Proposed Intervenor-Defendants Are Entitled To Intervene As Of Right Pursuant To Federal Rule Of Civil Procedure 24(a) ................................................................... 8

      A.      This Motion to Intervene Is Timely ................................................................... 10

      B.      The Proposed Intervenor-Defendants' Members Have Significantly Protectable Interests That Would Be Affected By Plaintiffs' Suit ........................ 11

      C.      Disposition Of This Case May Impair or Impede Proposed Intervenor-Defendants' Ability to Protect Their Interests And The Interests Of Their Members ............................................................................................................ 14

      D.      The Government Cannot Adequately Represent Proposed Intervenor-Defendants' Interests ...................................................................................... 16

II.     In the Alternative, The Proposed Intervenor-Defendants Should Be Granted Leave For Permissive Intervention Under Federal Rule of Civil Procedure 24(b) ..................... 17

III.    Conclusion .............................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska v. Suburban Propane Gas Corp.*,
    123 F.3d 1317 (9th Cir. 1997) .......................................................................10

*Alec L. v. Jackson*,
    863 F. Supp. 2d 11 (D.D.C. 2012) ...............................................................2, 4

*Alec L. ex rel. Loorz v. McCarthy*,
    561 F. App'x 7 (D.C. Cir. 2014) ...................................................................2, 4

*In re Cal. Micro Devices Sec. Litig.*,
    168 F.R.D. 276 (N.D. Cal. 1996) ...............................................................11, 18

*Conservation Law Found. of New England v. Mosbacher*,
    966 F.2d 39 (1st Cir. 1992) ...........................................................................13

*Conservation Nw. v. U.S. Forest Serv.*,
    No. CV-05-0220, 2005 WL 1806364 (E.D. Wash. July 28, 2005) .......................19

*Dimond v. District of Columbia*,
    792 F.2d 179 (D.C. Cir. 1986) ...................................................................16, 17

*Forest Conservation Council v. U.S. Forest Serv.*,
    66 F.3d 1489 (9th Cir. 1995), *abrogated on other grounds by Wilderness*
    *Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) ...........................9, 14, 17

*Fresno Cty. v. Andrus*,
    622 F.2d 436 (9th Cir. 1980) ...............................................................10, 15, 16, 17

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ...............................................................14, 15, 17

*Hunt v. Washington State Apple Advert. Comm'n*,
    432 U.S. 333 (1977)....................................................................................9

*Idaho Farm Bureau Fed'n v. Babbitt*,
    58 F.3d 1392 (9th Cir. 1995) .....................................................................10, 11

*Kootenai Tribe of Idaho v. Veneman*,
    313 F.3d 1094 (9th Cir. 2002), *abrogated on other grounds by Wilderness*
    *Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) .......................................18

70061495.1

*Landgraf v. USI Film Products,*
    511 U.S. 244 (1994)..................................................................................12

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)................................................................................9, 15

*Military Toxics Project v. EPA,*
    146 F.3d 948 (D.C. Cir. 1998)...................................................................9

*Natural Res. Def. Council v. Costle,*
    561 F.2d 904 (D.C. Cir. 1977)..................................................................17

*Nw. Forest Res. Council v. Glickman,*
    82 F.3d 825 (9th Cir. 1996) .......................................................................18

*PPL Montana, LLC v. Montana,*
    132 S. Ct. 1215 (2012)...............................................................................4

*Perry v. Proposition 8 Official Proponents,*
    587 F.3d 947 (9th Cir. 2009) ......................................................................9

*Portland Audubon Soc'y v. Hodel,*
    866 F.2d 302 (9th Cir. 1989), *abrogated on other grounds by Wilderness*
    *Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) ......................9

*Sagebrush Rebellion, Inc. v. Watt,*
    713 F.2d 525 (9th Cir. 1983) ...............................................................11, 14

*Sierra Club v. Espy,*
    18 F.3d 1202 (5th Cir. 1994) .....................................................................17

*Sierra Club v. U.S. E.P.A.,*
    995 F.2d 1478 (9th Cir. 1993), *abrogated on other grounds by Wilderness*
    *Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) ......................12

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) .....................................................................11

*Trbovich v. United Mine Workers of America,*
    404 U.S. 528 (1972)...................................................................................16

*UAW, Local 283 v. Scofield,*
    382 U.S. 205 (1965)...................................................................................18

*United States v. Alisal Water Corp.,*
    370 F.3d 915 (9th Cir. 2004) .....................................................................12

70061495.1

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) ........................................................................9, 12, 13

*United States v. Oregon*,
913 F.2d 576 (9th Cir. 1990) .................................................................................10

*Wilderness Soc'y v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) .......................................................9, 10, 11, 12, 18

**Statutes**

5 U.S.C. §§ 500 *et seq*..............................................................................................13

**Other Authorities**

Fed. R. Civ. P. 24..............................................................................................8, 14, 18

70061495.1

## INTRODUCTION

The National Association of Manufacturers (NAM), American Fuel & Petrochemical Manufacturers (AFPM), and American Petroleum Institute (API) hereby move to intervene in this action filed by Earth Guardians, by a group of young adults and children in their individual capacities, and by "future generations" (collectively Plaintiffs). The NAM is the nation's largest industrial trade association representing the manufacturing sector of the United States economy. AFPM is a national trade association whose members include virtually all United States refiners and petrochemical manufacturers. API is a national trade association whose members include over 625 oil and natural gas companies representing all facets of the oil and natural gas industry and who collectively provide most of the nation's energy.

Through this extraordinary suit, Plaintiffs seek to preempt the federal legislative and regulatory processes through which social, environmental, economic, and national security policies are established under our Constitution, and instead use the federal judiciary to compel massive societal changes that Plaintiffs believe are necessary to address climate change. Indeed, Plaintiffs have asked this Court to issue an injunction forcing many federal agencies (Defendants) to develop an "enforceable national remedial plan to phase out fossil fuel emissions" at a rate that will ensure "a near-term peak in $CO_2$ emissions and a global reduction in $CO_2$ emissions of at least 6% per year. . . ." *See Juliana v. United States*, First Amended Complaint for Declaratory and Injunctive Relief at 80, 94 (Doc. 7). Among other goals, Plaintiffs seek to *completely eliminate* the use of conventional fossil fuels in the United States. Doc. 7 at 94.

This suit is not the first such case involving these claims—in 2011, similar plaintiffs, represented by the same counsel, filed a case involving these claims against several of the same

defendants.  In that case, *Alec L. v. Jackson*, the district court dismissed the plaintiffs' claims with prejudice. 863 F. Supp. 2d 11 (D.D.C. 2012).  The D.C. Circuit subsequently affirmed the dismissal. *Alec L. ex rel. Loorz v. McCarthy*, 561 F. App'x 7 (D.C. Cir. 2014).  The Supreme Court later denied a petition for writ of certiorari, without written order, on December 8, 2014. *Alec. L. v. McCarthy*, No. 14-405 (U.S.).  The complaint in this case, seeking the same relief as the complaint in *Alec L.*, was filed less than a year later.

The NAM represents small and large manufacturers in every industrial sector and in all 50 states. Moutray Decl. ¶ 8.  The NAM includes more than 14,000 members—which include leading members of the coal, oil, and natural gas sectors, petroleum refiners, and petrochemical producers, as well as thousands of manufacturing companies that are heavily reliant on the availability of reasonably-priced energy, and which themselves emit greenhouse gases (GHGs), including carbon dioxide ($CO_2$). *Id.* ¶ 10.  AFPM includes over 400 refiners and petrochemical manufacturers as members, all of whom rely on conventional energy sources to supply consumers with a wide variety of products and services used daily in homes and businesses. Friedman Decl. ¶ 9.  API's members are leaders of the oil and gas industry, supporting over 9.8 million jobs and 8 percent of the U.S. economy through their work to advance conventional and other forms of energy. Feldman Decl. ¶ 11.  All three Proposed Intervenor-Defendants seek to intervene in this case to ensure that the abrupt and extraordinary policy mandates that Plaintiffs ask this Court to direct are not imposed on their members and the entire U.S. economy through this case.

If Plaintiffs succeed in this Court ordering the elimination or massive reduction of U.S. conventional fuel consumption and manufacturing processes that emit GHGs beyond existing federal and other regulations, the members of each of the Proposed Intervenor-Defendants will

Page 2 Memorandum in Support of Motion to Intervene

be harmed.  First, the NAM's members that directly produce or refine conventional fuels—or make the tools and equipment to do so—will be directly affected. Moutray Decl. ¶ 17.  Likewise, a sudden and significant reduction in allowable GHG emissions would cause a significant negative effect for many of API's members by constraining the sale of the product they have specialized in developing and selling. Feldman Decl. ¶ 14.  Moreover, Plaintiffs' call to phase out fossil fuels is a direct threat to AFPM's members' businesses. Friedman Decl. ¶ 16.  Second, the NAM's members that power their facilities with conventional fuels or which directly emit GHGs as part of their manufacturing processes may be forced to invest in massive changes to their manufacturing infrastructure or to abandon such infrastructure. Moutray Decl. ¶ 18. Similarly, AFPM's members would be harmed by a limitation on GHG emissions, due to an increase in the cost of producing transportation fuels, petrochemicals, and other products manufactured by AFPM members. Friedman Decl. ¶ 17.  The refining and petrochemical industries are trade exposed, energy intensive manufacturers that depend upon the availability of reasonably priced and reliable energy sources.  *Id.* ¶¶ 10, 17.  Finally, the dramatic reductions in U.S. GHG emissions that Plaintiffs seek could increase the production and transportation costs for all of the NAM's members, decreasing their global competitiveness and driving jobs and businesses abroad, particularly to locations where GHG emissions could continue unabated. Moutray Decl. ¶¶ 19-24.

Additionally, Plaintiffs seek this unprecedented restructuring of the economy through an injunction by this Court without any involvement by many affected stakeholders, such as the members of Proposed Intervenor-Defendants.  Finally, the Proposed Intervenor-Defendants' members are already subject to a multitude of federal regulations under the Clean Air Act (CAA) and other statutes addressing air emissions, including a number that focus squarely on GHG

Page 3 Memorandum in Support of Motion to Intervene

emissions. Moutray Decl. ¶ 8; Friedman Decl. ¶ 8; Feldman Decl. ¶ 8.  Thus, if Plaintiffs'

requested relief is granted and new GHG rules are rushed out, the Proposed Intervenor-

Defendants' members may face duplicative, even conflicting regulations.  For all of these

reasons, it is critical that they have the opportunity to intervene.

## SUMMARY OF CASE

On September 10, 2015, Plaintiffs filed an amended complaint in the case, claiming that

the Defendants violated their alleged duties as trustees of the natural resources of the United

States by allowing global GHG levels to increase, as well as Plaintiffs' purported Fifth

Amendment Due Process and Equal Protection rights and Ninth Amendment un-enumerated

rights. Doc. 7 at 84-92.  These claims are similar to those made in the *Alec L.* case in which the

Court concluded, in line with the Supreme Court's holding in *PPL Montana, LLC v. Montana*,

132 S. Ct. 1215 (2012), that a "public trust" claim does not implicate a "federal question" within

its jurisdiction under 28 U.S.C. § 1331. 863 F. Supp. 2d at 15.  As noted above, the D.C. Circuit

affirmed that decision and the district court's rationale, also citing *PPL Montana*. *Alec L. ex rel.*

*Loorz*, 561 F. App'x at 7-8.  The amended complaint in this case asserts that the President of the

United States and numerous other federal officials and agencies—including the Departments of

Agriculture, Commerce, Defense, Energy, Interior, State, and the Environmental Protection

Agency and Office of Management and Budget—have "abrogated [their] duty to preserve and

protect the atmosphere" by "authorizing, permitting, and incentivizing fossil fuel production,

consumption, transportation, and combustion" and "[thereby] causing the atmospheric [carbon

dioxide] concentration to increase." Doc. 7 ¶¶ 5, 119, 130.

The amended complaint seeks as relief an order directing Defendants to "prepare and

implement an enforceable national remedial plan to phase out fossil fuel emissions and draw

Page 4 Memorandum in Support of Motion to Intervene

down excess atmospheric [carbon dioxide]" and "to restore Earth's energy balance."  *Id.* at 5, 94. This "plan" would "swiftly phase out $CO_2$ emissions" in order to "ensure that atmospheric $CO_2$ is no more concentrated than 350 ppm by 2100. . . ." *Id.* ¶ 12.  To achieve that goal, the plan and other measures for which the Plaintiffs are calling would ensure "a near-term peak in $CO_2$ emissions and a global reduction in $CO_2$ emissions of at least 6% per year. . . ." *Id.* ¶ 258.  The plan—apparently not subject to congressional command or oversight—would be ignorant of existing statutes and legislative directives and would be issued without allowing for Proposed Intervenor-Defendants to provide meaningful public input on issues of critical importance to their thousands of members.

### Interests of Proposed Intervenor-Defendants

The outcome of this case has direct and profound implications for each of the Proposed Intervenor-Defendants—the NAM, AFPM, and API—and their members.

#### *The NAM*

The NAM is the nation's largest industrial trade association, and its members may be directly and severely impacted by the outcome of this litigation.  The near-term capping of GHG emissions and annual 6% reductions in $CO_2$ emissions that Plaintiffs are seeking would significantly harm the NAM's members that directly produce, refine, and use conventional fuels. Moutray Decl. ¶ 17.  The NAM's members include many of the major oil, coal and natural gas producers, petroleum refiners, and petrochemical producers, as well as manufacturing companies that make the tools and components critical to such industries. *Id.*  Obviously, near-term reductions—and eventual elimination—of conventional fuel use is a central business concern for these members of the NAM. *Id.*  In addition, many of the NAM's members rely on conventional fuels to power their manufacturing processes and move their goods, and have significantly

Page 5 Memorandum in Support of Motion to Intervene

invested in the infrastructure necessary to effectively and efficiently utilize, transport, and combust particular conventional fuels.  Further, many companies directly emit GHGs either through energy combustion or through manufacturing processes themselves. *Id.* ¶ 18.  The elimination of conventional fuels would require these NAM members—at a minimum—to re-engineer their manufacturing processes and invest substantial capital in converting their facilities and fleets to new sources of power, assuming such power is available within any practical or cost effective constraint. *Id.*

The unprecedented GHG reductions that Plaintiffs are seeking would also harm the U.S. manufacturing sector more broadly by driving up input costs for manufacturers. *Id.* ¶ 19.  The costs incurred in other sectors of the economy, such as the utility sector, from new GHG regulations will be transferred to the manufacturing companies, regardless of whether they are emitters of GHGs, through higher electricity costs. *Id.*  These higher costs, which are outside the control of manufacturers, will exacerbate a global competitive disadvantage that is already a significant challenge for manufacturers operating in the United States. *Id.*  GHG regulations will add to the structural non-production costs on U.S. manufacturers that will further reduce their global competitiveness and market share both domestically as well as in other economies. *Id.* ¶¶ 19-24.

*AFPM*

AFPM is a national trade association that represents corporations that own and operate over 95 percent of the United States' domestic petroleum refining capacity and virtually all of our nation's petrochemical production capacity. Friedman Decl. ¶ 7.  AFPM members are large energy consumers who would be impacted directly by the outcome of this litigation.  AFPM member companies manufacture gasoline, diesel fuel, home heating oil, jet fuel, asphalt, and the

Page 6 Memorandum in Support of Motion to Intervene

petrochemicals that serve as "building blocks" in thousands of products used every day by consumers and businesses, including plastics, clothing, medicine and computers. *Id.*

*API*

API is the national trade association for all elements of the oil and natural gas industry, and thus the outcome of this litigation will have a significant and direct impact on its members. API's more than 625 members include large integrated companies, as well as exploration and production, refining, marketing, pipeline, and marine businesses, and service and supply firms, who, collectively, provide most of the nation's energy. Feldman Decl. ¶ 10. API's members explore for, produce, transport, refine, and sell oil, natural gas, and other fossil fuels, the combustion of which releases $CO_2$ into the atmosphere. *Id.* API's members support 9.8 million U.S. jobs and 8 percent of the U.S. economy. *Id.* ¶ 11. America's oil and natural gas industry supplies $85 million *every day* ($30 billion per year) to the U.S. Treasury in the form of income taxes, rents, royalties, and other fees, and the financial returns from oil and natural gas company stocks support college and university endowments and public and private pension plans. *Id.* ¶¶ 11-12. The unprecedented GHG reductions which Plaintiffs seek would have a significant negative effect on many of API's members, which would likewise harm the economy more broadly. *Id.* ¶¶ 11-12, 14.

Thus, the members of the Proposed Intervenor-Defendants have significant economic, legal, and policy interests in this lawsuit, as a ruling in Plaintiffs' favor could result in a rapid, economy-wide shift in the energy sources relied upon by our nation, leading to a dramatically increased burden on the industry at a time when it can least afford such stress. In the face of such a result, the NAM's members would likely have to significantly change, if not entirely abandon, their manufacturing and business practices. Moutray Decl. ¶¶ 17-19. API's members

Page 7 Memorandum in Support of Motion to Intervene

will suffer significant economic harm. Feldman Decl. ¶ 14.  Re-aligning the entire energy mix of our country and potentially eliminating all conventional fuels will dramatically increase the cost of manufacturing, making the United States far less competitive and driving domestic manufacturing abroad. Moutray Decl. ¶¶ 19-24.  The Plaintiffs' calls to reduce GHG emissions would adversely impact trade exposed, energy intensive manufacturers such as AFPM's members, and the proposed elimination of conventional fuels strikes directly at the primary business of AFPM's refinery members.  Friedman Decl. ¶¶ 15-17.

Proposed Intervenor-Defendants' members' interests are particularly likely to be harmed because Plaintiffs' requested remedy apparently provides no opportunity for public input before the court would issue an injunction to compel the executive agencies to act.  Further, barring intervention by the NAM, AFPM, and API, this Court will not have the opportunity to hear from the companies most impacted by Plaintiffs' requested remedy, a remedy that has high likelihood of duplicating and/or conflicting with existing environmental regulations.  The Proposed Intervenor-Defendants therefore seek to intervene in this case to oppose Plaintiffs' efforts to reshape the economy as they see fit.  For the reasons stated below, this Court should grant the Proposed Intervenor-Defendants' motion to intervene.

## ARGUMENT

## I.  The Proposed Intervenor-Defendants Are Entitled To Intervene As Of Right Pursuant To Federal Rule Of Civil Procedure 24(a).

Federal Rule of Civil Procedure 24(a) states in relevant part:

> On timely motion, the court must permit anyone to intervene who…(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Ninth Circuit applies a four part test for determining if an applicant has a right to

Page 8 Memorandum in Support of Motion to Intervene

intervene under Rule 24(a)(2).  These four factors include:  "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action."  *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (citation omitted).[1]  The Ninth Circuit follows "'practical and equitable considerations' and construe[s] the Rule 'broadly in favor of proposed intervenors.'"  *Id.* at 1179 (citations omitted).  There is a "'liberal policy in favor of intervention [which] serves both efficient resolution of issues and broadened access to the courts.'"  *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002) (citations omitted).  The purpose of this liberal interpretation is to involve "'as many apparently concerned persons as is compatible with efficiency and due process.'"  *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 (9th Cir. 1995), *abrogated on*

---

[1] A movant is not required to satisfy the requirements for Article III standing when it satisfies the requirements for intervention as of right under Rule 24(a). *See Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 n.2 (9th Cir. 2009); *Portland Audubon Soc'y v. Hodel*, 866 F.2d 302, 308 n. 1 (9th Cir. 1989), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).  Nonetheless, the Proposed Intervenor-Defendants meet Article III standing requirements because their members would plainly be affected if Plaintiffs were to obtain the relief they seek, and the individual participation of their members in the case is not required.  *See Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (finding trade association had standing to intervene in challenge of EPA regulation where some of its members were subject to challenged regulation).   The interests alleged as grounds for intervention are sufficient to demonstrate that the NAM, AFPM, and API satisfy the test of constitutional standing and associational standing on behalf of their members. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (providing three-prong test for standing generally); *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (providing three-prong test for associational standing).  As discussed above and in the attached Moutray, Feldman, and Friedman declarations, the Proposed Intervenor-Defendants' members face potential injuries that would provide them with their own right to sue, those injuries are related to their organizational purposes, and the nature of the claim and the relief requested is not such that participation of their members in the lawsuit is required.

Page 9 Memorandum in Support of Motion to Intervene

*other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *Fresno*

*Cty. v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (citations omitted).  The Proposed Intervenor-

Defendants satisfy each prong of this test and therefore should be permitted to intervene as of

right.[2]

> **A.    This Motion to Intervene Is Timely.**

Timeliness is evaluated based on:  (i) the stage of the proceedings; (ii) the prejudice to the

other parties if intervention were granted; and (iii) the reasons for and length of delay, if any, in

seeking intervention.  *See, e.g.*, *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319

(9th Cir. 1997); *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990).  A motion to

intervene is made at a sufficiently early stage of the proceedings when it occurs "before any

hearings or rulings on substantive matters." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392,

1397 (9th Cir. 1995) (allowing environmental groups to intervene four months after the

complaint was filed, even though plaintiff had already moved for a preliminary injunction).

This case is clearly timely under these factors.

This case is still in its earliest phases.  The Proposed Intervenor-Defendants are filing

their motion to intervene approximately three months after the Plaintiffs filed their initial

complaint and approximately two months after they filed their First Amended Complaint.  No

substantive hearings have occurred yet, and the Court has not issued any substantive rulings.

Furthermore, because the Proposed Intervenor-Defendants propose to comply with forthcoming

scheduling orders and will endeavor to avoid duplication of issues with the other parties, there is

---

[2] Pursuant to Rule 24(c)'s requirement that an applicant for intervention accompany its motion with a "pleading that sets out the claim or defense for which intervention is sought," the Proposed Intervenor-Defendants are also filing today an accompanying Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(1), (6).

no danger of material prejudice to Plaintiffs or to Defendants. In short, under any test of timeliness, this Motion satisfies this provision of Rule 24(a)(2). *See Idaho Farm Bureau Fed'n*, 58 F.3d at 1397; *In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 276, 277 (N.D. Cal. 1996) (finding timely a motion for permissive intervention filed at pleading stage).

**B.    The Proposed Intervenor-Defendants' Members Have Significantly Protectable Interests That Would Be Affected By Plaintiffs' Suit.**

The sufficiency of an intervenor's legally protectable interest "'is a practical, threshold inquiry [and n]o specific legal or equitable interest need be established.'" *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (*citing Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)). "'[I]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue.'" *Wilderness Soc'y*, 630 F.3d at 1176 (citations omitted); *see also Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (intervenor's interest need not be protected by statute put at issue by complaint so long as it is protected by law and relates to claim). A legally protectable interest could be an "existing legal right, contract, or permit[] relating to" the subject of the litigation. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 819. This requirement is readily satisfied here.

The relief Plaintiffs seek—unprecedented, abrupt and near-term restrictions on GHG emissions and the virtual elimination of conventional fuels—will plainly affect the legally protected interests of Proposed Intervenor-Defendants' members. For example, such relief would adversely impact and may even eliminate the very businesses of those members of Proposed Intervenor-Defendants that are engaged in the production of such fuels and manufacturing to support the energy industry, Moutray Decl. ¶ 17; Friedman Decl. ¶¶ 16-17; Feldman Decl. ¶ 14; and it would likely require a sea change in the operations of those NAM

Page 11 Memorandum in Support of Motion to Intervene

members that rely on such fuels or directly emit GHGs. Moutray Decl. ¶ 18.    Proposed Intervenor-Defendants' members have a multitude of contracts that would be put in jeopardy and permits whose limits and conditions would have to be altered if the Plaintiffs received the relief they seek.    The relief sought would also undermine massive investments members have made over the course of many decades in the innumerable physical and tangible assets of their businesses.    Under an abrupt and across-the-board switch in the nation's energy infrastructure of the magnitude Plaintiffs are proposing, the Proposed Intervenor-Defendants' members would be required to radically reshape their businesses and operations.    For example, they would have to consider shutting down domestic manufacturing in the wake of competition from other nations that are not subject to such constraints. *Id.* ¶¶ 17-24; Friedman Decl. ¶ 17.  The economic effects of the relief sought by Plaintiffs on their members are thus in no way "speculative."

The Ninth Circuit recognizes that where a lawsuit "would affect the use of real property owned by the intervenor by requiring the defendant to change the . . . [the manner in which it] regulate[s] the use of that real property," such interests "are squarely in the class of interests traditionally protected by law." *Sierra Club v. U.S. E.P.A.*, 995 F.2d 1478, 1483 (9th Cir. 1993) *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).    Likewise, "a non-speculative, economic interest may be sufficient to support a right of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).  *See also generally Landgraf v. USI Film Products*, 511 U.S. 244 (1994) (discussing the centrality of settled and legitimate expectations under various fundamental legal principles).    The economic upheaval that would follow from the relief Plaintiffs seek thus establishes both that the Proposed Intervenor-Defendants and their members have legally protected interests and that there is a direct relationship between those interests and "'resolution of plaintiffs' claim.'"  *City of Los*

*Angeles*, 288 F.3d at 398 (citation omitted); *Conservation Law Found. of New England v. Mosbacher*, 966 F.2d 39, 41-44 (1st Cir. 1992) (holding that commercial fishermen impacted by regulatory plan to address overfishing had a recognizable interest in the timetable for implementing that plan).  Here, as the Proposed Intervenor-Defendants and their members will be the parties burdened with satisfying the potentially dramatic fuel switches and GHG reductions proposed by Plaintiffs, they clearly satisfy this test for having a recognizable interest.

In addition, Plaintiffs seek to deprive Proposed Intervenor-Defendants' members of these investments without affording them any say in the matter.  The Administrative Procedure Act (APA) reflects the bedrock principle that businesses affected by federal executive branch regulatory measures have a legal right to participate in the development of, and ultimately to challenge, such measures. *See generally*, 5 U.S.C. §§ 500 *et seq*.  Here, Plaintiffs ask this Court to order Defendants to develop a comprehensive "national remedial plan to phase out fossil fuel emissions." Doc. 7 ¶ 7.  This plan, which would be issued by court order, would presumably not include input from the countless businesses that may be dramatically affected by it, including the members of the NAM, AFPM, and API.  Promulgation of regulations affecting virtually every aspect of the businesses of the NAM AFPM, and API's members without any meaningful participation by those members would violate over half a century of settled administrative law principles, and thus affect this additional, protected legal interest of the members of the Proposed Intervenor-Defendants as well.

Finally, issuing rushed rules governing GHG emissions is likely to be particularly harmful, as there is the real possibility that those rules will duplicate or conflict with existing regulations and policies that weigh numerous considerations including environmental protection, energy security, and international trade issues.  For example, the Proposed Intervenor-

Page 13 Memorandum in Support of Motion to Intervene

Defendants' members are already subject to many regulations addressing air emissions. Moutray Decl. ¶ 8; Friedman Decl. ¶ 8; Feldman Decl. ¶ 8.  These regulations include a number that focus squarely on GHG emissions. Moutray Decl. ¶ 8; Friedman Decl. ¶ 8; Feldman Decl. ¶ 8. Without careful consideration and the active involvement of the NAM, AFPM, API, and other stakeholders in developing the rules, it is highly likely that sweeping new GHG rules will create conflicts and inconsistencies with the legal regime that their members already face.

### C.    Disposition Of This Case May Impair or Impede Proposed Intervenor-Defendants' Ability to Protect Their Interests And The Interests Of Their Members.

To show impairment of interests for the purposes of Rule 24(a)(2), a proposed intervenor need show only that the disposition of an action "*may* as a practical matter" impede the intervenor's ability to protect its interests in the subject of the action. Fed. R. Civ. P. 24(a)(2) (emphasis added).  In evaluating this question, "'the court is not limited to consequences of a strictly legal nature.'" *Forest Conservation Council*, 66 F.3d at 1497-98 (citation omitted); *see also* Fed. R. Civ. P. 24 advisory committee's notes to 1966 Amend. ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene. . . .").  Where the relief sought by the Plaintiffs would have direct, immediate, and harmful impact on a third party's interests, that adverse impact is sufficient to satisfy Rule 24(a)(2). *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (stating that "there is no question" that proposed intervenor Mongolia's environmental agency's interests would be impaired by a decision in favor of an environmental group in a case regarding the application of the U.S. Endangered Species Act to sheep located within Mongolia); *Sagebrush Rebellion*, 713 F.2d at 528 (holding that "an adverse decision in this suit would impair [proposed intervenor environmental groups'] interest in the preservation of birds and their habitats").

Page 14 Memorandum in Support of Motion to Intervene

Further, an entity has sufficient interests to intervene where the proceeding has the potential to subject the movant to governmental regulation or significantly change how the movant does business. *See, e.g.*, *Fund for Animals*, 322 F.3d at 735 (impact on Mongolian environmental agency from outcome of case); *Fresno Cty.*, 622 F.2d at 438 (proposed intervenor group of small farmers would be "injured and its [business] opportunity to participate in excess land sales impaired" if it could not intervene); *cf. Lujan*, 504 U.S. at 561-62 (noting that "there is ordinarily little question" about standing for plaintiffs who are themselves objects of government action or inaction).

As noted previously, the declaratory and injunctive relief that Plaintiffs seek would force the government to abruptly cap GHG emissions and may virtually eliminate conventional fuel use across the nation, thereby dramatically increasing the input costs for manufacturing. Moutray Decl. ¶¶ 16-24.  The dramatic GHG restrictions that Plaintiffs propose will likely add non-production costs on U.S. manufacturers that may reduce further the NAM's members' global competitiveness and market share both domestically as well as in other economies. *Id.* ¶¶ 19-24. As a less competitive location to produce, the U.S. manufacturing sector would end up smaller and employ fewer workers, as companies may be encouraged to locate facilities and operations in other countries outside the regulatory reach of the United States. *Id.*  Likewise, as trade exposed energy intensive manufacturers of transportation fuels and petrochemicals, AFPM's members would be directly harmed by Plaintiffs' attempts to increase energy costs, which would make it more attractive to produce these essential products outside the United States. Friedman Decl. ¶ 17.  This in turn would result in the loss of thousands of jobs currently supported by AFPM members. *Id.* at 11.  Additionally, the proposed GHG cuts which Plaintiffs seek would significantly harm API's members, which in turn will impact the 9.8 million jobs, college and

Page 15 Memorandum in Support of Motion to Intervene

university endowments, and public and private pension plans which depend at least in part on the oil and natural gas industry. Feldman Decl. ¶¶ 11, 12, 14.  Further, Plaintiffs are seeking to force the government to develop regulatory measures to eliminate GHG emissions while depriving affected businesses of their rights under the APA to participate in the development of such measures.

These impacts could impair the interests of virtually the entire swath of the NAM, AFPM, and API's members.

### D.    The Government Cannot Adequately Represent Proposed Intervenor-Defendants' Interests.

The requirement under Federal Rule of Civil Procedure 24(a)(2) to show inadequate representation "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) (citation omitted). The "burden of showing inadequate representation…is not onerous." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986).  In assessing this factor, a court must consider whether "the interests of a present party to the suit are such that it will *undoubtedly* make all of the intervenor's arguments[;]" whether "the present party is capable of and willing to make such arguments[;]" and whether "the intervenor would not offer any necessary element to the proceedings that the other parties would neglect." *Fresno Cty.*, 622 F.2d at 439 (emphasis added).

The Proposed Intervenor-Defendants' interests here include protecting the legal rights and economic interests of their members by opposing Plaintiffs' attempt to have this Court force an abrupt rewrite of the energy policy of the United States.  Defendants cannot be expected to adequately represent the Proposed Intervenor-Defendants' interests.  As government agencies,

Page 16 Memorandum in Support of Motion to Intervene

Defendants are focused on a broad "representation of the general public interest," not the "narrower interest" of certain businesses. *Forest Conservation Council*, 66 F.3d at 1499 (noting that a government agency was "required to represent a broader view than the more narrow, parochial interests of" the intervenors); *Dimond*, 792 F.2d at 192-93 ("A government entity. . . is charged by law with representing the public interest of its citizens.  [A private party], on the other hand, is seeking to protect a more narrow and 'parochial' financial interest. . . ."). This private interest/public interest distinction has justified intervention in many other cases. *See, e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994); *Fresno Cty.*, 622 F.2d at 438-39; *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977); *Fund for Animals*, 322 F.3d at 736.

In addition, Defendants, who are currently implementing GHG controls through numerous regulations and other measures, cannot be expected to adequately represent the Proposed Intervenor-Defendants' interests regarding the specific issue of the regulation of GHG emissions.  The Proposed Intervenor-Defendants have repeatedly expressed concern regarding aspects of the federal government's approach to regulating and controlling GHG emissions from a wide range of sources and have challenged a number of Defendants' GHG regulations in court as well as raised concerns on certain GHG regulations proposed by the federal government through notice and comment opportunities. Moutray Decl. ¶¶ 25-26; Friedman Decl. ¶¶ 18-19; Feldman Decl. ¶¶ 15, 17.  Thus, the interests of the NAM, AFPM, and API are not in any way coterminous with Defendants' interest as reflected in the GHG controls and measures Defendants have thus far adopted.

## II.    In the Alternative, The Proposed Intervenor-Defendants Should Be Granted Leave For Permissive Intervention Under Federal Rule of Civil Procedure 24(b).

Federal Rule of Civil Procedure 24 contemplates two forms of intervention—intervention

of right and permissive intervention—and a court may grant an intervenor's motion on either basis. *UAW, Local 283 v. Scofield*, 382 U.S. 205, 217 n.10 (1965).  Permissive intervention under Rule 24(b) should be allowed when: (1) the applicant has independent grounds for jurisdiction; (2) the applicant's motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996).  Under this standard, neither the inadequacy of representation, nor a direct interest in the subject matter of the action, need be shown. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).  In exercising its discretion, the Court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2).

As previously demonstrated, the Proposed Intervenor-Defendants' Motion to Intervene is timely, will not cause undue delay, and will not prejudice Plaintiffs or Defendants.  Moreover, as discussed above, the Proposed Intervenor-Defendants possess legally protectable interests in their members' economic interests and legal rights in current and future contracts and transactions subject to Plaintiffs' challenge.  The potential for harm to those interests from Plaintiffs' suit provides an independent basis for jurisdiction, particularly given the minimal showing required by Federal Rule of Civil Procedure 24(b).  *See, e.g.*, *In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. at 277 (using cursory analysis to find pension fund could intervene under Rule 24(b)).

As previously noted, the NAM, AFPM, and API's members' economic and legal interests are directly at issue in this suit, and thus their own interests are at issue.  The NAM, AFPM, and API have concrete interests in the production, refining, and use of conventional fuels in the

Page 18 Memorandum in Support of Motion to Intervene

United States, as well as in stable and competitive energy prices. The Proposed Intervenor-Defendants are also asserting interests in their ability to provide input into the policy decisions that will shape the fundamental prospects and global competitiveness of their members. Those activities are directly challenged in this litigation and may be preliminarily or permanently limited and restricted as a result of actions of the Court if the Plaintiffs are successful. For that reason, the Proposed Intervenor-Defendants' claims and defenses will raise questions of law and fact in common with those raised in the main action between Plaintiffs and Defendants. *See, e.g.*, *Conservation Nw. v. U.S. Forest Serv.*, No. CV-05-0220, 2005 WL 1806364, at *2 (E.D. Wash. July 28, 2005) (finding private company's interest in defending a lumber harvesting project in order to guard against a court order barring it was sufficient to establish common claims and defenses). Because intervention would contribute to the just and equitable adjudication of the legal questions presented, it should be permitted.

## III.    Conclusion

For the foregoing reasons, the NAM, AFPM, and API respectfully request that the Court grant its motion for leave to intervene as of right pursuant to Fed. R. Civ. P. 24(a) with respect to all of Plaintiffs' claims. In the alternative, the NAM, AFPM, and API request that they be granted permissive intervention pursuant to Fed. R. Civ. P. 24(b) with respect to all of Plaintiffs' claims.

DATED this 12th day of November, 2015.

MILLER NASH GRAHAM & DUNN LLP

/s/ C. Marie Eckert
C. Marie Eckert, OSB No. 883490
marie.eckert@millernash.com
Suzanne C. Lacampagne, OSB No. 951705
suzanne.lacampagne@millernash.com
Telephone:  (503) 224-5858
Facsimile:  (503) 224-0155

70061495.1

SIDLEY AUSTIN LLP

Roger R. Martella, Jr.
rmartella@sidley.com
Quin M. Sorenson
qsorenson@sidley.com
Benjamin E. Tannen
btannen@sidley.com
*(to be specially admitted)*
1501 K Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 736-8000
Facsimile:  (202) 736-8711

*Attorneys for Proposed Intervenor-Defendants*
*The National Association of Manufacturers,*
*American Fuel & Petrochemical Manufacturers,*
*and American Petroleum Institute*

MANUFACTURERS' CENTER FOR LEGAL
ACTION

Linda E. Kelly
Quentin Riegel
qriegel@nam.org
733 10th Street, NW, Suite 700
Washington, DC  20001
Telephone: (202) 637-3000
Facsimile: (202) 637-3182

AMERICAN FUEL & PETROCHEMICAL
MANUFACTURERS

Richard Moskowitz
RMoskowitz@afpm.org
1667 K Street, NW, Suite 700
Washington, DC 20006
Telephone: (202) 457-0480
Facsimile: (202) 457-0486

70061495.1

1    I hereby certify that I served the foregoing Memorandum in Support of Motion to

2    Intervene on:

3    Julia A. Olson                              Daniel M. Galpern

4    Wild Earth Advocates                        Law Offices of Daniel M. Galpern
     1216 Lincoln Street                         1641 Oak Street

5    Eugene, Oregon  97401                       Eugene, Oregon  97401
     E-mail:  juliaaolson@gmail.com              E-mail:  dan.galpern@gmail.com

6    *Attorney for Plaintiffs*                   *Attorney for Plaintiffs*

7    Philip L. Gregory                           Justin Torres

8    Cotchett, Pitre & McCarthy, LLP             U.S. Department of Justice
     840 Malcolm Road                            Environment & Natural Resources Division

9    Burlingame, California  94010               Natural Resources Section
     E-mail:  pgregory@cpmlegal.com              601 D. Street NW
                                                 Washington, D.C.  20044
10   *Attorney for Plaintiffs*                   E-mail:  justin.torres@usdoj.gov

11                                               *Attorney for Defendants*

12   by the following indicated method or methods on the date set forth below:

13

14   ☒    **CM/ECF system transmission.**

15   ☐    **E-mail.**  As required by Local Rule 5.2, any interrogatories, requests for
          production, or requests for admission were e-mailed in Word or WordPerfect
16        format, not in PDF, unless otherwise agreed to by the parties.

17   ☐    **Facsimile communication device.**

18   ☐    **First-class mail, postage prepaid.**

19   ☐    **Hand-delivery.**

20        DATED this 12th day of November, 2015.

21                                               /s/ C. Marie Eckert

22                                               C. Marie Eckert, P.C.
                                                 Oregon State Bar No. 883490
23
                                                 *Of Attorneys for Proposed Intervenor-*
24                                               *Defendants The National Association of*
                                                 *Manufacturers, American Fuel &*
25                                               *Petrochemical Manufacturers, and American*
                                                 *Petroleum Institute*
26

Page 1 -    Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

70061495.1