**C. Marie Eckert**, OSB No. 883490
marie.eckert@millernash.com
**Suzanne C. Lacampagne**, OSB No. 951705
suzanne.lacampagne@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  (503) 224-5858
Facsimile:  (503) 224-0155

**Roger R. Martella, Jr.**
rmartella@sidley.com
**Quin M. Sorenson**
qsorenson@sidley.com
**Benjamin E. Tannen**
btannen@sidley.com
*(to be specially admitted)*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 736-8000
Facsimile:  (202) 736-8711

Attorneys for Intervenor-Defendants
  The National Association of Manufacturers
  American Fuel & Petrochemical Manufacturers
  American Petroleum Institute

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**, et al., | Case No.  6:15-cv-01517-TC |
| **Plaintiffs,** | |
| **v.** | MEMORANDUM IN SUPPORT OF INTERVENOR-DEFENDANTS' MOTION TO DISMISS |
| **UNITED STATES OF AMERICA**, et al., | |
| **Defendants.** | |

Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION .................................................................................................... 1

STATEMENT OF THE CASE.................................................................................. 2

ARGUMENT ........................................................................................................... 4

I.    THE COMPLAINT DOES NOT ALLEGE A VALID FEDERAL CAUSE OF ACTION
      OR IMPLICATE A FEDERAL QUESTION SUBJECT TO FEDERAL
      JURISDICTION. ............................................................................................ 6

      A.    Neither The "Public Trust Doctrine" Nor The Several Constitutional Principles
            Cited In The Complaint Provide The Plaintiffs With A Cognizable Federal Cause
            Of Action. ............................................................................................ 6

      B.    Any Cause of Action That Might Have Been Recognized As Supporting The
            Alleged Claims Has Been Displaced By Federal Statute. ....................................... 8

      C.    The Complaint Does Not State A Claim Upon Which Relief Could Be Granted
            Under The Common Law Public Trust Doctrine.................................................. 10

II.   THIS CASE PRESENTS NON-JUSTICIABLE POLITICAL QUESTIONS. ................. 11

      A.    The Alleged Claims Implicate Issues That Are Textually Committed To The
            Executive And Legislative Branches. ................................................................ 11

      B.    There Are No Judicially Discoverable Or Manageable Standards For Resolving
            The Alleged Claims. ..................................................................................... 12

      C.    The Alleged Claims Could Not Be Adjudicated Without Expressing Lack Of
            Respect Due To Other Branches Of Government.................................................. 14

III.  THE PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS....................... 16

      A.    The Complaint Does Not Allege Imminent And Particularized Injuries................ 16

      B.    The Injuries Alleged In The Complaint Are Neither Fairly Traceable To The
            Defendants Nor Likely Redressable By The Requested Relief. ............................ 19

CONCLUSION...................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alec L. v. Jackson*,
  863 F. Supp. 2d 11 (D.D.C. 2012), *aff'd,* 561 F. App'x 7 (D.C. Cir. 2014)..............1, 3, 4, 5, 7

*Alec. L. ex rel. Loorz v. McCarthy*,
  561 F. App'x 7 (D.C. Cir. 2014) ............................................................................4

*Am. Elec. Power Co. v. Connecticut*,
  131 S. Ct. 2527 (2011) ..................................................................2, 9, 13, 14, 15, 20

*Appleby v. City of New York*,
  271 U.S. 364 (1926)................................................................................................7

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ............................................................................................6

*Baker v. Carr*,
  369 U.S. 186 (1962)..................................................................................11, 12, 14

*Barron v. Reich*,
  13 F.3d 1370 (9th Cir. 1994) ..................................................................................6

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988)..............................................................................................17

*Bush v. Lucas*,
  462 U.S. 367 (1983)................................................................................................9

*Carlson v. Green*,
  446 U.S. 14 (1980)..................................................................................................8

*Clegg v. Cult Awareness Network*,
  18 F.3d 752 (9th Cir. 1994) ....................................................................................6

*Comer v. Murphy Oil USA, Inc.*,
  839 F. Supp. 2d 849 (S.D. Miss. 2012), *aff'd on other grounds*, 718 F.3d 460
  (5th Cir. 2013)................................................................................................16, 19, 20

*Ctr. for Biological Diversity v. Dep't of Interior*,
  563 F.3d 466 (D.C. Cir. 2009) ..............................................................................20

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*,
  489 U.S. 189 (1989)................................................................................................8

70061320.1

*Dist. of Columbia v. Air Fla., Inc.*,
  750 F.2d 1077 (D.C. Cir. 1984) .......................................................................7

*Gibson v. Matthews*,
  926 F.2d 532 (6th Cir. 1991) .........................................................................8

*Gilligan v. Morgan*,
  413 U.S. 1 (1973)...................................................................................12, 15

*Gladstone Realtors v. Vill. of Bellwood*,
  441 U.S. 91 (1979)...................................................................................18

*Heckler v. Chaney*,
  470 U.S. 821 (1985)...................................................................................12

*Hui v. Castaneda*,
  559 U.S. 799 (2010)...................................................................................9

*Ill. Cent. R.R. Co. v. Illinois*,
  146 U.S. 387 (1892)...................................................................................10

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990)...................................................................................12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...................................................................................16, 17, 18

*Massachusetts v. EPA*,
  549 U.S. 497 (2007)...................................................................................14, 20

*Massachusetts v. Mellon*,
  262 U.S. 447 (1923)...................................................................................18

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
  663 F. Supp. 2d 863 (N.D. Cal. 2009), *aff'd on other grounds*, 696 F.3d 849
  (9th Cir. 2012)...................................................................................13, 16, 20

*North Carolina ex rel. Cooper v. TVA*,
  615 F.3d 291 (4th Cir. 2010) .........................................................................19

*Oregon v. Corvallis Sand & Gravel Co.*,
  429 U.S. 363 (1977)...................................................................................7

*PPL Montana, LLC v. Montana*,
  132 S. Ct. 1215 (2012)...................................................................................1, 5, 6, 7

*Phillips Petrol. v. Mississippi*,
  484 U.S. 469 (1988)...................................................................................4, 7

Page iii Table of Authorities

*Sansotta v. Town of Nags Head*,
    724 F.3d 533 (4th Cir. 2013) .................................................................7

*Shively v. Bowlby*,
    152 U.S. 1 (1894) .................................................................................7

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ...........................................................................17

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .............................................................................18

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ...........................................................................15

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ...........................................................................14

*United States v. 32.42 Acres of Land*,
    683 F.3d 1030 (9th Cir. 2012) ..............................................................7

*United States v. Mission Rock Co.*,
    189 U.S. 391 (1903) ...........................................................................10

*United States v. Standard Oil Co. of Cal.*,
    332 U.S. 301 (1947) .............................................................................9

*Util. Air Regulatory Grp. v. EPA*,
    134 S. Ct. 2427 (2014) ....................................................................9, 15

*Wash. Envtl. Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013) ...........................................5, 10, 16, 19, 20

*Washington v. Davis*,
    426 U.S. 229 (1976) .............................................................................8

*Webster v. Doe*,
    486 U.S. 592 (1988) ...........................................................................12

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ..............................................................6

## Constitution

U.S. Const. art. I, § 1 ...............................................................................12

U.S. Const. art. I, § 8 ...............................................................................12

U.S. Const. art. II, § 1 ..............................................................................12

70061320.1

**Statutes**

Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, 121 Stat. 1844
(2007)...............................................................................................................15

Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat.
1492...............................................................................................................14

Energy Policy Act of 1992, Pub. L. No. 102-486, 106 Stat. 2776...................................14

Energy Security Act of 1980, Pub. L. No. 96-294, 94 Stat. 611 ....................................14

Global Change Research Act of 1990, Pub. L. No. 101-606, 104 Stat. 3096................................14

Global Climate Protection Act of 1987, Pub. L. No. 100-204, tit. XI, 101 Stat.
1331, 1407.......................................................................................................14

National Climate Program Act of 1978, Pub. L. No. 95-367, 92 Stat. 601 ....................................14

15 U.S.C. § 717r ...........................................................................................................17

42 U.S.C. §§ 7401 *et seq.*.................................................................................................9

**Other Authorities**

74 Fed. Reg. 56,260 (Oct. 30, 2009)..............................................................................15

Douglas L. Grant, *Underpinnings of the Public Trust Doctrine: Lessons from
Illinois Central Railroad*, 33 Ariz. St. L.J. 849 (2001).............................................7

## INTRODUCTION

This case is the second filed in the federal judiciary by a group of environmental organizations and individuals seeking the same extraordinary relief:  to commandeer the authority of many federal agencies to direct them "to cease their permitting, authorizing, and subsidizing of fossil fuels" and take whatever other actions are "necessary" to drastically reduce greenhouse gas emissions in the United States to levels these plaintiffs deem acceptable.  First Am. Compl. for Declaratory and Injunctive Relief ¶¶ 7, 12 (Doc. 7) ("Compl.").  The plaintiffs in this case again present their claims, as in the first, under the guise of the "public trust" doctrine, *id.* at 1, a little known and rarely used state common law doctrine generally governing state property rights in lands submerged beneath tidal and navigable waterways.

These unprecedented claims were dismissed in the first case—a decision affirmed on appeal, *see Alec L. v. Jackson*, 863 F. Supp. 2d 11 (D.D.C. 2012), *aff'd,* 561 F. App'x 7 (D.C. Cir. 2014)—and they should be dismissed here as well, for a number of reasons.  While the plaintiffs maintain that the public trust doctrine arises as a matter of federal law, the Supreme Court—along with every other court to consider the issue—has said precisely the opposite, recognizing that the doctrine "do[es] not depend upon the Constitution" but rather "remains a matter of state law," with no application to the federal government.  *PPL Montana, LLC v. Montana*, 132 S. Ct. 1215, 1235 (2012).  Neither that common law doctrine nor any of the broad constitutional principles cited by the plaintiffs, ranging from due process to equal protection to "Unenumerated Rights Preserved for the People by the Ninth Amendment" (Compl. at 91), provide plaintiffs with a cause of action to require a government agency to adopt a particular regulatory regime, much less one (like that demanded by these plaintiffs) that would directly contravene numerous legislative mandates, including those of the Clean Air Act "designat[ing]

Page 1 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

an expert agency, . . . [the U.S. Environmental Protection Agency ("EPA")], as primary regulator of greenhouse gas emissions." *Am. Elec. Power Co. v. Connecticut*, 131 S. Ct. 2527, 2539-40 (2011) ("*AEP*"). Indeed, even if such a cause could be deemed to exist as a general matter, the claims in this case would still fall outside of the federal courts' jurisdiction under Article III, because if allowed to proceed they would empower a group of private citizens to compel through judicial fiat the exercise of sweeping legislative and executive authority conferred by our Constitution exclusively to the political branches, in violation of standing and separation-of-powers principles.

There is, in short, no jurisprudential basis or support for the claims in this case. The complaint should be dismissed, and the case closed.

## STATEMENT OF THE CASE

The gravamen of the complaint is that the federal government holds the atmosphere as a "trust resource" for the benefit of the public, and as such any member of the public may sue the federal government to enforce their "rights as beneficiaries of the federal public trust." Compl. ¶ 130. It asserts that the President of the United States and other federal officials and agencies— including the Departments of Agriculture, Commerce, Defense, Energy, Interior, and State, as well as the Environmental Protection Agency and Office of Management and Budget—have "abrogated [their] duty to preserve and protect the atmosphere" by "authorizing, permitting, and incentivizing fossil fuel production, consumption, transportation, and combustion, causing the atmospheric [carbon dioxide] concentration to increase." *Id.* ¶¶ 5, 119, 130. The plaintiffs include an environmental organization focused on issues relating to carbon dioxide emissions and climate change, as well as several young adults and children from across the country who, according to the complaint, have in the past advocated for reductions in carbon dioxide

Page 2 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

emissions "before local, state, federal, and international governmental bodies."  *Id.* ¶ 20; *see also, e.g., id.* ¶¶ 30, 68, 91.  The complaint alleges that these plaintiffs "derive[ ] emotional, spiritual, and physical benefits" from the environment and that the environment may be harmed in various ways in the future by "carbon pollution and the resulting climate destabilization."  *Id.* ¶¶ 16, 55.

The complaint seeks as relief an order "enjoin[ing] Defendants from violating the public trust doctrine" and directing them to "prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric [carbon dioxide]" and "to restore Earth's energy balance."  *Id.* at 5, 94.  This "plan"—which would not be subject to congressional command or oversight, and indeed would be contrary to existing statutes and legislative directives—would require the federal government to "cease the[ ] permitting . . . of fossil fuels and . . . move to swiftly phase out [carbon dioxide] emissions, as well as take such other action as necessary to ensure that atmospheric [carbon dioxide] is no more concentrated than 350 [parts per million] by 2100."  *Id.* ¶¶ 1, 12.  The plan would be administered by the Court, which would "[r]etain jurisdiction over this action to monitor and enforce Defendants' compliance with the national remedial plan and all associated orders of this Court."  *Id.* at 94.

Not mentioned in the complaint is that this is the second case in which the same claims have been made against the same federal defendants by plaintiffs represented by mostly the same counsel.  The claims in the prior case, *Alec L. v. Jackson*, were dismissed by the district court with prejudice.  863 F. Supp. 2d 11 (D.D.C. 2012).[1]  Quoting the Supreme Court's recent

---

[1] While the complaint in this case lists several "constitutional" claims separately from the "public trust" claim, Compl. at 84-92—whereas the complaint in *Alec L.* set forth only one overarching "public trust" cause of action, with the constitutional principles cited as supporting that claim, Compl. at 33-36, *Alec L.*, 863 F. Supp. 2d 11 (D.D.C., filed May 4, 2011)—all of the claims in this case and in *Alec L.* rely on the same essential allegations, *i.e.*, that the federal

Page 3 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

holding in *PPL Montana, LLC*, that "the public trust doctrine remains a matter of state law," whose "contours . . . do not depend upon the Constitution," the court concluded that a "public trust" claim does not implicate a "federal question" within its jurisdiction under 28 U.S.C. § 1331. 863 F. Supp. 2d at 15. The district court further held, in the alternative, that "even if the public trust doctrine had been a federal common law claim at one time, it has subsequently been displaced by federal regulation, specifically the Clean Air Act." *Id.* The D.C. Circuit subsequently affirmed the dismissal, citing *PPL Montana* and noting that "[t]he plaintiffs point to no case . . . standing for the proposition that the public trust doctrine—or claims based upon violations of that doctrine—arise under the Constitution or laws of the United States, as would be necessary to establish federal question jurisdiction." 561 F. App'x at 7-8.

The Supreme Court later denied a petition for writ of certiorari, without written order, on December 8, 2014. *Alec. L. v. McCarthy*, No. 14-405 (U.S.). The complaint in this case, seeking the same relief as the complaint in *Alec L.*, was filed less than a year later.

## ARGUMENT

The plaintiffs in this case openly seek to circumvent the legislative and regulatory processes established by statute and our Constitution and to use the federal judiciary to compel the massive technological and economic changes that they believe are necessary to drastically reduce greenhouse gas emissions in this country to address climate change. They predicate these unprecedented, as well as undemocratic and judicially unmanageable, demands on the "public trust doctrine," an archaic state law principle traditionally applied for the modest purpose of

---

government owes a constitutionally mandated duty to the plaintiffs to control atmospheric levels of greenhouse gases to limit future impacts of climate change, *see, e.g.*, Compl. ¶ 130, and all of them seek the same relief, *id.* at 94. And, as explained below, *see, e.g., infra* pp. 8-9, all are subject to dismissal on the same grounds. All of the claims are, for these reasons, treated as the same for purposes of this motion.

Page 4 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

determining state-law property rights in lands submerged beneath tidal and navigable waterways. *E.g.*, *Phillips Petrol. v. Mississippi*, 484 U.S. 469, 473-74 (1988). In no case has any court ever invoked the doctrine to compel regulatory action by the federal government, much less adoption of a sweeping new regulatory agenda of the type sought by these plaintiffs.

A number of well-settled legal principles mandate dismissal of this extraordinary lawsuit, just as they mandated dismissal of the same claims in *Alec L. v. Jackson*, 863 F. Supp. 2d 11 (D.D.C. 2012), *aff'd*, 561 F. App'x 7 (D.C. Cir. 2014). *First*, as the Supreme Court held in *PPL Montana*, because the public trust doctrine does not arise under federal law but instead "remains a matter of state law," 132 S. Ct. at 1235, it neither provides a valid cause of action against the federal government nor presents any "federal question" within the jurisdiction of the federal judiciary under 28 U.S.C. § 1331, and the several constitutional principles cited in the complaint do not render the doctrine federal in character or otherwise provide the plaintiffs with a viable claim. *Infra* Part I. *Second*, because the claims would require this Court to exercise legislative and executive authority, directing the adoption of standards of general applicability and future effect despite the absence of any legislative authorization, the claims implicate a series of "political questions" that are non-justiciable under Article III. *Infra* Part II. *Third*, the plaintiffs lack standing under Article III, as they do not and cannot show that the harms they allege are sufficiently concrete and imminent or caused by the government actions they target or that the relief they seek would reduce atmospheric levels of carbon dioxide—which are based on emissions not only from this country but worldwide—or otherwise abate those harms. *Infra* Part III; *see also Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1143 (9th Cir. 2013) (dismissing claims seeking reductions in permissible greenhouse gas emissions for lack of standing).

For any or all of these reasons, the complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2]

## I.    THE COMPLAINT DOES NOT ALLEGE A VALID FEDERAL CAUSE OF ACTION OR IMPLICATE A FEDERAL QUESTION SUBJECT TO FEDERAL JURISDICTION.

The complaint cites no case or other authority that would provide them with a cognizable cause of action within the jurisdiction of the federal judiciary.  That is because none exists.  The "public trust doctrine" is a matter of state—not federal—law, and it does not and cannot support a claim against the federal government to compel adoption of a particular regulatory regime, much less one concerning worldwide atmospheric greenhouse gas levels or global climate change.

### A.    Neither The "Public Trust Doctrine" Nor The Several Constitutional Principles Cited In The Complaint Provide The Plaintiffs With A Cognizable Federal Cause Of Action.

This point—that the public trust doctrine is a state law principle—was unambiguously recognized by the Supreme Court in *PPL Montana*.  That opinion declared that "the public trust doctrine remains a matter of state law" and its "contours . . . do not depend upon the Constitution."  132 S. Ct. at 1234-35.  The doctrine limits the rights of States, but it has no application to the federal government.  *Id.*  Indeed, because the doctrine is one of state law, it is always subject to supreme federal legislative authority.  *Id.*  *PPL Montana* thus confirms, as the

---

[2] Dismissal is required under Rule 12(b)(1) when a complaint fails to satisfy the plaintiffs' burden of pleading facts demonstrating that the claims are justiciable and otherwise within the jurisdiction of the court.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Dismissal is appropriate under Rule 12(b)(6) when the complaint does not allege facts setting forth a claim that is "facially plausible" and upon which relief could be granted. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-51 (2009).  When ruling on a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the Court should generally accept as true all properly pleaded factual allegations in the complaint but should not accept "conclusory" allegations, *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), and it may consider matters of public record, such as formal pronouncements by agencies and officials, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

Page 6 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

courts in *Alec L.* later held, that the public trust doctrine is not one of federal law—either constitutional, statutory, or common—but is instead exclusively a "matter of state law."  *Id.*; *see Alec L.*, 863 F. Supp. 2d at 15.[3]

This holding followed long-settled law.  The Supreme Court and other courts have, in decisions stretching back for more than a century, consistently interpreted and applied the public trust doctrine as a state law principle that governs only state actors.  *E.g.*, *Phillips Petrol.,* 484 U.S. at 473; *Appleby v. City of New York*, 271 U.S. 364, 395 (1926); *Shively v. Bowlby*, 152 U.S. 1 (1894); *Dist. of Columbia v. Air Fla., Inc.*, 750 F.2d 1077 (D.C. Cir. 1984); *see also* Douglas L. Grant, *Underpinnings of the Public Trust Doctrine:  Lessons from Illinois Central Railroad*, 33 Ariz. St. L.J. 849, 870 (2001) ("[T]he Supreme Court has steadfastly treated the public trust doctrine as a matter of state law not federal law.").  Recent cases from this circuit and others— including *Alec L.*, 863 F. Supp. 2d at 15—have recognized that this conclusion is now unambiguously mandated by *PPL Montana*.  *E.g.*, *United States v. 32.42 Acres of Land*, 683 F.3d 1030, 1038 (9th Cir. 2012); *see also Sansotta v. Town of Nags Head*, 724 F.3d 533, 537 n.3 (4th Cir. 2013).

Particularly in light of *PPL Montana*, the several constitutional provisions cited in the complaint—the Due Process and Equal Protection Clauses of the Fifth Amendment and the "Unenumerated Rights Preserved for the People by the Ninth Amendment," Compl. at 84-92—

---

[3] The public trust doctrine does have a tangential relationship to federal common law, but that relationship serves only to underscore its state-law nature.  The "equal footing doctrine," which is a part of federal common law, provides that each State, upon admission to the United States, obtains the same rights over submerged lands within its borders as did the original thirteen states.  *PPL Montana*, 132 S. Ct. at 1228, 1234-35.  Once statehood is attained, however, the equal footing doctrine "d[oes] not operate after that date," and the development of the public trust doctrine is a matter of state law.  *Oregon v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 371 (1977); *see also PPL Montana*, 132 S. Ct. at 1228, 1234-35; *Phillips Petrol.*, 484 U.S. at 473-74.

Page 7 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

could not warrant recognition of a federal public trust doctrine or support a federal public trust cause of action.  Those provisions, indeed, do not and could not apply here in any event.  The Due Process Clause does not compel government officials to act and does not "confer [any] affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests," except in the very limited situation—clearly not present here— "when the State takes a person into its custody and holds him there against his will."  *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196-200 (1989).  The Equal Protection Clause likewise applies only when a law is enacted or enforced for the purpose of impermissibly discriminating against members of a protected class; it does not require government to act, and certainly does not apply where (as here) there are no allegations of intentional discrimination but only of "disproportionate[ ] impact[ ]."  *Washington v. Davis*, 426 U.S. 229, 245-47 (1976).  And courts have long recognized that the Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law," and cannot itself support an independent cause of action for those seeking to enforce constitutional rights.  *E.g.*, *Gibson v. Matthews*, 926 F.2d 532, 544 (6th Cir. 1991).

### B.     Any Cause of Action That Might Have Been Recognized As Supporting The Alleged Claims Has Been Displaced By Federal Statute.

There is, in short, no basis in federal law—whether the Constitution, statute, or common law—for recognition of a federal public trust doctrine that would bind federal officials.  It would, indeed, be doubly inappropriate to hold that federal law not only embodies the public trust doctrine but also creates an implied cause of action to enforce it.

The Supreme Court has repeatedly admonished that federal courts should not imply new causes of action or expand existing ones in the absence of express statutory authorization, *Carlson v. Green*, 446 U.S. 14 (1980), even where the claim would vindicate "fundamental"

Page 8 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

constitutional rights, *Bush v. Lucas*, 462 U.S. 367 (1983). To do so, the Court has explained, would "intrud[e] within a field properly within Congress' control," *United States v. Standard Oil Co. of Cal.*, 332 U.S. 301, 316 (1947), because Congress "is in a better position to decide whether or not the public interest would be served by creating [the cause of action]," *Bush*, 462 U.S. at 388-90. Recognizing the claims in this case would undoubtedly—and impermissibly— "intrud[e] within a field properly within Congress' control," *Standard Oil*, 332 U.S. at 316: the regulation of greenhouse gas emissions across the Nation.

This conclusion is further confirmed by the fact that Congress has already legislated on these issues, directing in the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*, that EPA consider (as appropriate under statutory requirements) nationwide standards for greenhouse gas emissions. *See AEP*, 131 S. Ct. at 2537-38. When Congress enacts a federal statute that "speak[s] directly to [the] question" previously addressed by a non-statutory cause of action, the cause of action is displaced and can no longer be recognized. *Id.* at 2537. Indeed, in *AEP*, the Supreme Court addressed the specific issue presented here—whether the Clean Air Act precludes non-statutory claims seeking restrictions on greenhouse gas emissions—and held unambiguously "that the Clean Air Act and the EPA actions it authorizes" displace any such claims. *Id.*[4]

Any applicable right of action that might have been recognized has, for this reason, been displaced, even if (as the plaintiffs would have it) that claim could be described as "constitutional" in nature. *See, e.g.*, *Hui v. Castaneda*, 559 U.S. 799, 808 (2010); *Bush*, 462 U.S. at 385-86. The claims in this case must be dismissed.

---

[4] EPA has, notably, exercised authority granted under the Clean Air Act and promulgated regulations governing greenhouse gas emissions from, *inter alia*, mobile sources and electric power plants. *See Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2428-30 (2014) (citing regulations).

Page 9 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

C. **The Complaint Does Not State A Claim Upon Which Relief Could Be Granted Under The Common Law Public Trust Doctrine.**

These claims could not proceed, even if they could be deemed to exist under federal law, for the additional reason that they do not state a valid cause of action under any version of the public trust doctrine. That doctrine, as it has traditionally been understood, applies only to a specific and limited set of natural resources within a government's jurisdiction—most specifically, lands submerged beneath tidal and navigable waterways—and serves only to restrict the government's ability to transfer title in those resources or otherwise alienate them. *United States v. Mission Rock Co.*, 189 U.S. 391, 407 (1903); *Ill. Cent. R.R. Co. v. Illinois*, 146 U.S. 387, 445-453 (1892).

No case has ever upheld the novel version of the public trust doctrine asserted by the plaintiffs here. They would have the doctrine apply to something, the atmosphere, that is not a "resource" confined to or owned by any jurisdiction but is instead a blanket of layers of gases across the Earth's surface that is both used and affected by all nations on the planet. *See, e.g.*, *Bellon*, 732 F.3d at 1143. Nothing could be more different than the traditional type of "resource"—a physical asset within the control of a single jurisdiction—that would be covered by the public trust doctrine. *See, e.g.*, *Mission Rock*, 189 U.S. at 407. The plaintiffs would also apply the doctrine to impose an affirmative duty upon governments to adopt a particular regulatory regime for the trust resource. This is, again, contrary to a long line of cases that have consistently understood the doctrine as limiting the powers of government over trust resources—in particular, a government's authority to alienate or transfer title in the resource—and *not* as imposing affirmative regulatory obligations. *See, e.g., Ill. Cent.*, 146 U.S. at 45-53. For this reason, even if the public trust doctrine could be deemed a part of federal law (contrary to *PPL*

Page 10 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

*Montana* and other decisions), the complaint in this case does not set forth a viable claim pursuant to that doctrine.

Put simply, however they are characterized, the claims in this case do not implicate a federal question and do not state a valid cause of action. They should therefore be dismissed.

## II.    THIS CASE PRESENTS NON-JUSTICIABLE POLITICAL QUESTIONS.

These claims are also, independently, subject to dismissal under the political question doctrine. That doctrine bars adjudication of issues that: (i) are "textually . . . commit[ted]" to another branch by the Constitution; (ii) are not subject to "judicially discoverable and manageable standards"; or (iii) could not be resolved without "expressing lack of the respect due coordinate branches of government." *Baker v. Carr*, 369 U.S. 186, 217 (1962). The claims in this case implicate all of these concerns.

### A.    The Alleged Claims Implicate Issues That Are Textually Committed To The Executive And Legislative Branches.

Adjudication of the plaintiffs' claims would, without doubt, involve the judiciary in issues that are committed by the text of the Constitution to the coordinate branches of government. The complaint asks this Court to direct agencies of the Executive Branch—as well as the President—to promulgate specific regulations to achieve a particular goal, without regard to their own expert determinations regarding the need for or suitability of those regulations and without regard to statutory prerequisites and directives enacted by Congress. *See* Compl. ¶¶ 1, 12. The Court would, in essence, be commandeering these agencies and placing them under its exclusive control for these purposes—issuing an order directing them to develop and implement "a national plan to restore Earth's energy balance . . . [and] stabilize the climate system" under which they would be required to take all actions that are "necessary" to ensure that "atmospheric [carbon dioxide] is no more concentrated than 350 [parts per million] by 2100." *Id.* The Court

70061320.1

would then "[r]etain jurisdiction" over the President and Executive Branch "to monitor and enforce Defendants' compliance with the national remedial plan and all associated orders of this Court," potentially until 2100. *Id.* at 94.

There could hardly be a clearer violation of the constitutional principle of separation of powers.  The Constitution by its terms commits legislative power—in particular, authority "To regulate Commerce"—to Congress, U.S. Const. art. I, §§ 1, 8, and executive power to the President, *see* U.S. Const. art. II, § 1.  The political branches, which are ultimately responsible to the public, determine the need for and set regulatory standards.  There is simply no basis and no allowance in the Constitution for a court to control or supervise the internal operations of agencies, much less the Office of the President, or direct their regulatory discretion in the absence of any statute authorizing such judicial intervention.  *See, e.g., Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990); *Webster v. Doe*, 486 U.S. 592, 601 (1988); *Heckler v. Chaney*, 470 U.S. 821, 829 (1985); *see also  Gilligan v. Morgan*, 413 U.S. 1, 5-7 (1973) (rejecting as non-justiciable claims that would require the judiciary to craft particular "standards" for governmental operations and monitor compliance thereafter).  Providing the relief sought by the plaintiffs would require the Court to exercise legislative and executive power denied to the judiciary by the Constitution.

**B.    There Are No Judicially Discoverable Or Manageable Standards For Resolving The Alleged Claims.**

This claim is also non-justiciable because there are no "judicially discoverable and manageable standards" for resolving it.  *Baker*, 369 U.S. at 217.  The complaint asks the Court to order the defendants to develop an "adequate [and] appropriate response to the climate crisis" by "prepar[ing] and implement[ing] . . . an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric [carbon dioxide] so as to stabilize the climate

Page 12 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

system." Compl. at 49, 94. But there are no discoverable or manageable standards by which a court could assess what would constitute an "adequate" or "appropriate" response or a satisfactory "enforceable national remedial plan" in light of the myriad interests implicated by regulation of greenhouse gas emissions and climate change.

To determine the level of emissions reductions, if any, that may be warranted in light of the alleged future risks of climate change, a court would need not only to resolve the scientific likelihood of those risks, and their likely impact on the Nation, but also to weigh those risks against the possible benefits of emissions-producing activities and associated reduction measures and then make a comparative judgment to determine which industries and sectors should be required to reduce their emissions and by how much. *AEP*, 131 S. Ct. at 2539-40 (stating that greenhouse gas emissions regulations "cannot be prescribed in a vacuum" but must take account of "competing interests" relating to "national or international policy"). Thus, even if one accepts (as the plaintiffs allege) that reducing greenhouse gas emissions in order to bring atmospheric carbon dioxide levels down to 350 parts per million would abate some of the future risks of climate change, those reductions would nevertheless not be "appropriate" if the future potential benefits would be outweighed by, for instance, enormous losses in productivity and economic development. *See, e.g.*, *Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 874-77 (N.D. Cal. 2009), *aff'd on other grounds*, 696 F.3d 849 (9th Cir. 2012).

A court simply could not make these determinations without relying on "ad hoc" policy judgments of the type prohibited by the political question doctrine. In *Massachusetts v. EPA*, for example, after holding that the Clean Air Act authorized EPA to consider whether to regulate greenhouse gas emissions under certain circumstances, the Supreme Court refused to address whether the agency should actually exercise that discretion on grounds that it would implicate

Page 13 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

"policy judgments" that the federal judiciary has "neither the expertise nor the authority to evaluate." 549 U.S. 497, 533-34 (2007). Likewise, in *AEP*, the Court refused to address the "appropriate amount of regulation in any particular greenhouse gas-producing sector" because that inquiry, "as with other questions of national or international policy," would require balancing a number of "competing interests," including among other things "the environmental benefit potentially achievable, our Nation's energy needs and the possibility of economic disruption." 131 S. Ct. at 2539-40. Only the legislative and executive branches have the capacity and authority under our Constitution to assess and weigh these questions of "high policy" and decide whether regulations such as those the plaintiffs seek are appropriate. *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 647 (1981).

C.      **The Alleged Claims Could Not Be Adjudicated Without Expressing Lack Of Respect Due To Other Branches Of Government.**

This claim is non-justiciable for the additional reason that it cannot be adjudicated without "expressing lack of the respect due" other branches of government. *Baker*, 369 U.S. at 217. Congress has taken a series of steps over decades to assess the potential impacts and risks of climate change.[5] In particular, in the Clean Air Act, the Supreme Court has said, Congress

---

[5] As early as 1978, Congress established a "national climate program," with the purpose of improving understanding of global climate change through research and international cooperation. National Climate Program Act of 1978, Pub. L. No. 95-367, 92 Stat. 601. Through the 1980s and 1990s, Congress enacted a series of statutes mandating further study of the impact of greenhouse gases and trends in climate change, Energy Policy Act of 1992, Pub. L. No. 102-486, tit. XVI, § 1601, 106 Stat. 2776, 2999; Global Change Research Act of 1990, Pub. L. No. 101-606, 104 Stat. 3096; Energy Security Act of 1980, Pub. L. No. 96-294, tit. VII, § 711, 94 Stat. 611, 774-75, and directing executive officials to coordinate international negotiations concerning global climate change, Global Climate Protection Act of 1987, Pub. L. No. 100-204, tit. XI, § 1102, 101 Stat. 1331, 1408. In the Energy Independence and Security Act of 2007, Congress established nationwide greenhouse gas reduction targets to be satisfied through modified biofuel production methods and increased fuel efficiency standards on cars and certain trucks, as implemented by EPA and the Department of Transportation. Pub. L. No. 110-140, 121 Stat. 1492. In 2008, Congress formally directed EPA to "develop and publish a . . . rule . . . to

Page 14 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

"designated an expert agency, . . . EPA, as best suited to serve as primary regulator of greenhouse gas emissions." *AEP*, 131 S. Ct. at 2539-40.

The plaintiffs ask this Court to substitute its judgment for that of the Legislative and Executive Branches. They would, in essence, have the court tell those branches how to legislate and how to regulate. The complaint, indeed, specifically requests that the court "[r]etain jurisdiction over this action," potentially until 2100, in order to ensure that the named agencies follow their obligations under the approved recovery plan. *Id.* at 94. It is hard to imagine how the judiciary could show a greater "lack of respect" for the political branches than by issuing an order that supersedes their considered judgment concerning matters within their constitutional authority, and further subjects them to potentially decades of continuing supervision by a federal judge. *See Gilligan*, 413 U.S. at 5-8 (claims calling upon court "to assume continuing regulatory jurisdiction" over governmental department constitute non-justiciable political questions).

"[A]llowing courts to oversee legislative or executive action," as the plaintiffs in this case request, "would significantly alter the allocation of power . . . away from a democratic form of government." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation marks omitted).[6] "Climate change" claims like the one asserted by these plaintiffs implicate a host of

---

require mandatory reporting of greenhouse gas emissions above appropriate thresholds in all sectors of the economy of the United States," Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, tit. II, 121 Stat. 1844, 2128 (2007), which EPA did in 2009, 74 Fed. Reg. 56,260 (Oct. 30, 2009). Most recently, EPA and other agencies have promulgated, pursuant to the Clean Air Act, a series of regulations governing greenhouse gas emissions from certain mobile and stationary sources across the country. *See Util. Air Regulatory Grp.*, 134 S. Ct. at 2428-30 (citing regulations).

[6] The justiciability problems associated with this claim are all the more pronounced because many of the agency operations at issue here relate to foreign relations or national defense, fields that the Constitution plainly commits to the political branches. Indeed, the interference with the conduct of foreign affairs could not be plainer. The complaint requests, for example, that the Court declare invalid and void an order authorizing exports of liquefied natural gas to foreign

Page 15 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

political questions that are non-justiciable under Article III and, as other courts have recognized, must be dismissed for lack of jurisdiction. *E.g.*, *Comer v. Murphy Oil USA, Inc.*, 839 F. Supp. 2d 849, 862-63 (S.D. Miss. 2012), *aff'd on other grounds*, 718 F.3d 460 (5th Cir. 2013); *Kivalina*, 663 F. Supp. 2d at 874-77.

## III.    THE PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS.

In addition to the jurisdictional and justiciability problems discussed above, this case also cannot proceed because the plaintiffs lack standing under Article III.  To satisfy the "irreducible constitutional minimum of standing," a plaintiff must plead facts showing an "injury in fact" that is "imminent" and "particularized," "fairly traceable to the challenged action of the defendant," and "likely . . . redress[able] by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (alterations and internal quotation marks omitted); *Bellon*, 732 F.3d at 1139-40.  The plaintiffs in this case cannot meet that standard.

### A.    The Complaint Does Not Allege Imminent And Particularized Injuries.

The allegations in the complaint, first, fail to satisfy the "core" constitutional requirement of an injury that is "imminent" and "particularized."  Most of the adverse impacts alleged are to the environment or the public generally, rather than the plaintiffs personally, *e.g.*, Compl. at 26, 29, 32, 72, 76-77 (alleging harms to forests and glaciers, "infrastructure" and "ecosystem," and "human civilization"), or concern events in the past, *e.g.*, *id.* at 24, 31 (discussing past experiences of the plaintiffs and their families), which could not support claims for prospective injunctive relief.  *See  Lujan*, 504 U.S. at 504 ("Past exposure to illegal conduct does not in itself

---

nations, as well as the statute under which authorization was permitted.  Compl. at 94.  But that order was issued in accordance with this country's obligations under free trade agreements with those foreign nations.  *See* Order No. 3041 at 10-11, *In re Jordan Cove Energy Project, L.P.*, FE Docket No. 11-127-LNG (U.S. Dep't of Energy, Dec. 7, 2011).  The complaint thus asks the judiciary to abrogate agreements that were negotiated and approved by the United States and foreign governments—which have not been (and could not be) challenged in this case.

show a present case or controversy regarding injunctive relief . . . .").  Other asserted harms are

to the *interests* for which the plaintiffs advocate, *see, e.g.*, Compl. ¶¶ 30, 91, not actual injuries to

the plaintiffs themselves, and are likewise inadequate.  *Sierra Club v. Morton*, 405 U.S. 727, 740

(1972).    And many of the allegations—including those relating to the Jordan Cove export

facility, on which the complaint focuses but which is not operational and has not even received

final permitting approvals, Compl. ¶¶ 182, 194-95—concern speculative events or injuries that

have not and may never occur, and which are for that reason not ripe for review.  *See, e.g.*, *id.*

¶¶ 19, 22, 34, 46, 58, 63 (discussing the *possibility* that emissions-producing activities will occur

or that the plaintiffs will visit or reside in areas that may be affected by climate change).[7]

Indeed, rather than seeking to redress "imminent" or "actual" harms, the complaint

acknowledges that its purpose is to produce changes to the atmosphere *in the future*, not until

2100, and to protect the interests of "future generations" not before this Court.  *Id.* ¶ 97.

The fundamental deficiency of these allegations is reflected in the fact that they are not in

any way limited, or "particularized," *Lujan*, 504 U.S. at 560-61, as to these plaintiffs.  The

complaint asserts that the plaintiffs have standing to sue because they may in the future

experience effects of climate change, and it identifies as those effects nearly every

climatological, economic, epidemiological, meteorological, and political occurrence on the

planet, including "[t]he melting of mountain glaciers," "rising sea levels," "biodiversity

---

[7] In addition, any challenge to the Department of Energy's approval of Jordan Cove exports should be made within the context of those proceedings or others, for instance in certification proceedings before the Federal Energy Regulatory Commission—not here.  Indeed, it appears from the complaint that the plaintiffs did in fact raise a challenge in certain proceedings before the Department of Energy but were denied relief, and they are using this case to level a collateral attack on the agency's decision.  Compl. ¶ 96.  Such an attack flatly conflicts with settled principles of administrative law, *see, e.g.*, *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988), and would be inconsistent with federal statutes conferring jurisdiction over many such claims in the federal courts of appeals, *see, e.g.,* 15 U.S.C. § 717r (D.C. Circuit).

Page 17 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

[losses]," "extreme weather events" including floods and droughts, "decreased tourism revenue," geopolitical changes such "regional instability" and "terrorism," as well as essentially *all* known medical conditions—"allergies, asthma, cancer, cardiovascular disease, stroke, heat-related morbidity and mortality, food-borne diseases, injuries, toxic exposures, mental health and stress disorders, and neurological diseases and disorders."  Compl. ¶¶ 121, 219, 226, 227, 235, 237, 239, 240.  Under the plaintiffs' view, anyone who may in the future suffer from any of those effects—in other words, anyone on the planet—could bring suit to force adoption of regulations that, in that person's view, are reasonably warranted to address those risks.

This is plainly not a valid theory of standing.  It is not enough for a plaintiff to allege that a defendant's conduct may generally contribute to a risk to "society" or humanity in general. *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 111-14 (1979); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106-07 (1998).  Indeed, these claims are precisely the type of "generalized grievance" that the Supreme Court has held in numerous cases to be inadequate to support standing.  *See Lujan*, 504 U.S. at 573-74 (citing cases).  Those cases, like this one, involved claims by citizen-plaintiffs to prevent alleged waste or misuse of an asset held in trust for the public at large, and they were deemed non-justiciable because the claims addressed "essentially a matter of public and not of individual concern."  *Massachusetts v. Mellon*, 262 U.S. 447, 487 (1923) ("If one [citizen] may champion and litigate such a cause, then every other [citizen] may do the same.").  Whatever differences might exist in the way these and other parties may in the future experience any alleged effects of climate change, the essential legal injury asserted here—that is, damages to a natural resource, the atmosphere, allegedly held in trust for the public, Compl. at 81—is shared equally by each and every other citizen.  It is the

archetypal example of an "abstract" and "generalized grievance" that cannot support standing. *See Lujan*, 504 U.S. at 573-74.

    **B.**    **The Injuries Alleged In The Complaint Are Neither Fairly Traceable To The Defendants Nor Likely Redressable By The Requested Relief.**

Nor can the plaintiffs show that their injuries are "fairly traceable" to these defendants, or "likely redressable" by the requested relief.  There is simply no way to determine whether and how emissions of greenhouse gases from regulated sources within the United States will impact global atmospheric levels in the future, given that such emissions arise from all jurisdictions around the planet, and a majority of emissions are from sources outside the United States, which would not and could not be reached by a decree in this case.  *See, e.g.*, *North Carolina ex rel. Cooper v. TVA*, 615 F.3d 291, 302 (4th Cir. 2010).  The Ninth Circuit has in fact made precisely this point in an analogous case holding that the plaintiffs lack standing to challenge the federal government's alleged failure to adequately regulate greenhouse gas emissions:  "simply saying that the Agencies have failed to curb emission of greenhouse gases, which contribute (in some undefined way and to some undefined degree) to their injuries, relies on an 'attenuated chain of conjecture insufficient to support standing.'"  *Bellon*, 732 F.3d at 1143 (quoting *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008)).  That language, and the Court's holding, apply equally here.

There is indeed no basis to believe that reductions ordered here would lead to *any* overall reduction, much less the reduction allegedly needed to achieve the plaintiffs' goal of 350 parts per million carbon dioxide globally, or prevent or even slow the ongoing global warming effect that the plaintiffs allege.  To the contrary, it is just as possible that greenhouse gas emissions in other nations would *increase* if severe limits were imposed in the United States, thereby negating the purported benefit achieved by the emissions reductions sought in this case.  *See, e.g.*, *Bellon*,

Page 19 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

732 F.3d at 1143; *North Carolina*, 615 F.3d at 302.   Other decisions have, notably, dismissed similar "climate change" claims for precisely this reason.   *E.g.*, *Bellon*, 732 F.3d at 1143; *Comer*, 839 F. Supp. 2d at 857-62; *Kivalina*, 663 F. Supp. 2d at 879-80; *Ctr. for Biological Diversity v. Dep't of Interior*, 563 F.3d 466, 478-79 (D.C. Cir. 2009) (rejecting similar causation theory).

That these plaintiffs lack standing is confirmed by *Massachusetts v. EPA*, 549 U.S. 497 (2007).   In upholding a State's standing to sue to compel EPA to consider greenhouse gas emissions limits for motor vehicles pursuant to the Clean Air Act, the Supreme Court explicitly relied on the fact that "[i]t is of considerable relevance that the party seeking review here is a sovereign State and not . . . a private individual." *Id.* at 518-20.   In light of their distinctive position in the federal union, the Court said, States are entitled to "special solicitude in [the] standing analysis." *Id.*   This factor, described by the Court in *Massachusetts* as "of critical importance to the standing inquiry," *id.* at 516, is not present here, and the private plaintiffs in this case therefore lack standing to bring their claim.   *Bellon*, 732 F.3d at 1147 ("Plaintiffs are not sovereign states and thus the Court's standing analysis [in *Massachusetts*] does not apply.").[8]

The public trust doctrine thus provides no basis for these plaintiffs' extraordinary request that the Court order the President and multiple federal agencies to take all steps the plaintiffs deem "necessary" to reduce carbon dioxide emissions in the United States by the amount and at the rate that the plaintiffs view as adequate.   Any such order would plainly exceed judicial

---

[8] It may be noted that in *AEP* the Supreme Court raised, but did not resolve, the issue of whether the plaintiffs had standing to bring their claims.   131 S. Ct. at 2535 (noting four-to-four split; affirming exercise of jurisdiction "by an equally divided Court").   To the extent the opinion discusses this issue, however, it strongly implies that standing could not be found in a climate change case—like this one—brought solely by *private* parties.   *See id.* (noting four Justices would have approved standing for "some" of the plaintiffs in light of holding in *Massachusetts* "permitt[ing] a *State* to challenge EPA's refusal to regulate greenhouse gas emissions") (emphasis added).

Page 20 Memorandum in Support of Intervenor-Defendants' Motion to Dismiss

power.  Federal agencies can regulate greenhouse gas emissions only as Congress authorizes; their regulations are reviewable in court only through the procedures that Congress has established.  There is "no room for a parallel track."  *AEP*, 131 S. Ct. at 2531.

## CONCLUSION

For these reasons, the Court should grant this motion and dismiss the claims in the complaint with prejudice under Federal Rules of Civil Procedure 12(b)(1) and (b)(6).

DATED this 12th day of  November, 2015.

MILLER NASH GRAHAM & DUNN LLP

/s/ C. Marie Eckert

C. Marie Eckert, OSB No. 883490
marie.eckert@millernash.com
Suzanne C. Lacampagne, OSB No. 951705
suzanne.lacampagne@millernash.com
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  (503) 224-5858
Facsimile:  (503) 224-0155

SIDLEY AUSTIN LLP

Roger R. Martella, Jr.
rmartella@sidley.com
Quin M. Sorenson
qsorenson@sidley.com
Benjamin E. Tannen
btannen@sidley.com
*(to be specially admitted)*
1501 K Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 736-8000
Facsimile:  (202) 736-8711

*Attorneys for Intervenor-Defendants,*
*The National Association of Manufacturers,*
*American Fuel & Petrochemical Manufacturers,*
*and American Petroleum Institute*

70061320.1

MANUFACTURERS' CENTER FOR LEGAL
ACTION

Linda E. Kelly
Quentin Riegel
qriegel@nam.org
733 10th Street, NW, Suite 700
Washington, DC  20001
Telephone: (202) 637-3000
Facsimile: (202) 637-3182

AMERICAN FUEL & PETROCHEMICAL
MANUFACTURERS

Richard Moskowitz
General Counsel
1667 K Street, NW, Suite 700
Washington, DC 20006
Telephone: (202) 457-0480
Facsimile: (202) 457-0486

70061320.1

1   I hereby certify that I served the foregoing Memorandum in Support of

2   Intervenor-Defendants' Motion to Dismiss on:

3

4   Julia A. Olson                      Daniel M. Galpern
    Wild Earth Advocates                Law Offices of Daniel M. Galpern
    1216 Lincoln Street                 1641 Oak Street
5   Eugene, Oregon  97401               Eugene, Oregon  97401
    E-mail:  juliaaolson@gmail.com      E-mail:  dan.galpern@gmail.com
6
    *Attorney for Plaintiffs*           *Attorney for Plaintiffs*
7
    Philip L. Gregory                   Justin Torres
8   Cotchett, Pitre & McCarthy, LLP     U.S. Department of Justice
    840 Malcolm Road                    Environment & Natural Resources Division
9   Burlingame, California  94010       Natural Resources Section
    E-mail:  pgregory@cpmlegal.com      601 D. Street NW
10                                      Washington, D.C.  20044
    *Attorney for Plaintiffs*           E-mail:  justin.torres@usdoj.gov
11
                                        *Attorney for Defendants*
12
    by the following indicated method or methods on the date set forth below:
13

14   ☒   **CM/ECF system transmission.**

15   ☐   **E-mail.**  As required by Local Rule 5.2, any interrogatories, requests for
16       production, or requests for admission were e-mailed in Word or WordPerfect
         format, not in PDF, unless otherwise agreed to by the parties.

17   ☐   **Facsimile communication device.**

18   ☐   **First-class mail, postage prepaid.**

19   ☐   **Hand-delivery.**

20       DATED this 12th day of November, 2015.

21

22                                  /s/ C. Marie Eckert
23                                  C. Marie Eckert, P.C., OSB No. 883490

24                                  *Of Attorneys for Intervenor-Defendants The*
                                    *National Association of Manufacturers,*
25                                  *American Fuel & Petrochemical*
                                    *Manufacturers, and American Petroleum*
26                                  *Institute*

Page 1 -    Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 503.224.5858 | F: 503.224.0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204