## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KELSEY ROSE CASCADIA JULIANA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 6:15-cv-01517-TC |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| Federal Defendants. | ) | |
| | ) | |

## FEDERAL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division

JUSTIN A. TORRES
Trial Attorney, D.C. Bar No. 1003136
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0874
Fax: (202) 305-0506
justin.torres@usdoj.gov

*Attorneys for Federal Defendants*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ............................................................................................... 1

STANDARD OF REVIEW ................................................................................ 6

ARGUMENT .................................................................................................... 7

    I.    Under *Lujan*, Plaintiffs Lack Article III Standing to Bring This Suit. ................. 7

        A.    The Amended Complaint Fails To Allege Particularized Harm
            Traceable To Defendants' Acts. ................................................................. 8

            1.    Plaintiffs Lack Standing Because They Allege A Generalized
                 Grievance, Not A Particularized Harm. .......................................... 8

            2.    Plaintiffs Lack Standing Because They Allege A Causal
                 Chain That Consists Of Generalized Assertions Of
                 Defendants' "Contribution" To Climate Change........................ 11

            3.    Plaintiffs Lack Standing Because Their Alleged Injuries
                 Cannot Be Redressed By The Court. ............................................. 13

            4.    Future Generations Have Suffered No Injury In Fact And
                 Thus Lack Standing. ....................................................................... 16

        B.    Plaintiffs' Claims Are A Generalized Grievance Best Addressed
            Through Democratic Means, Not By A Federal Court............................ 17

    II.    Plaintiffs Fail To State A Claim Under The Constitution.................................... 19

        A.    There Is No Constitutional Right To Be Free of $CO_2$ Emissions. ............ 20

        B.    Plaintiffs Are Not A Discrete Minority And Have No Equal
            Protection Claim. ...................................................................................... 23

        C.    The Ninth Amendment Guarantees No Substantive Rights. .................... 26

        D.    Defendants' Acts Have A Rational Basis. ................................................ 27

    III.    This Court Lacks Jurisdiction Over Public Trust Doctrine Suits, Which
        Arise Under State Law........................................................................................ 27

CONCLUSION.................................................................................................. 29

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Allen v. Wright,* 468 U.S. 737 (1984) ........................................... 13

*Am. Bus Ass'n v. Slater,* 231 F.3d 1 (D.C. Cir. 2000) ..................... 15

*Am. Elec. Power Co. v. Connecticut*, 131 S. Ct. 2527 (2011) ................. 18, 19

*Amigos Bravos v. BLM*, 816 F. Supp. 2d 1118 (D.N.M. 2011) ................. 11

*Appleby v. City of New York*, 271 U.S. 364 (1926) ......................... 28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................... 6

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ..................... 7

*Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534 (1986) ............. 7

*C.E. Pope Equity Trust v. United States*, 818 F.2d 696 (9th Cir. 1987) ........ 17

*Cetacean Cmty. v. Bush*, 386 F.3d 1169 (9th Cir. 2004) .................. 17

*Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115 (9th Cir. 2010) ........ 6

*Christy v. Hodel*, 857 F.2d 1324 (9th Cir. 1988) ........................ 20

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ................. 25, 26

*City of Mobile, Ala. v. Bolden*, 446 U.S. 55 (1980) ..................... 25

*Clynch v. Chapman*, 285 F. Supp. 2d 213 (D. Conn. 2003) .............. 26

*Collins v. City of Harker Heights*, 503 U.S. 115 (1992).................. 20, 22

*Concerned Citizens of Neb. v. U.S. Nuclear Regulatory Comm'n,*
    970 F.2d 421 (8th Cir. 1992) ........................................ 21

*Ctr. for Biological Diversity v. U.S. Dept. of the Interior,*
    563 F.3d 466, 475 (D.C. Cir. 2009)................................... 11

*Cunningham v. Beavers*, 858 F.2d 269 (5th Cir. 1988) .................. 24

*DeLeon v. Little*, 981 F. Supp. 728 (D. Conn. 1997)..................... 26

*Detroit Bank v. United States*, 317 U.S. 329 (1943)..................... 4

*Douglas v. Hugh A. Stallings, M.D., Inc.,* 870 F.2d 1242 (7th Cir. 1989) ........ 24

*Elizabeth Retail Props. LLC v. KeyBank Nat. Ass'n*, 83 F. Supp. 3d 972 (D. Or. 2015) .............. 6

*Ely v. Velde*, 451 F.2d 1130 (4th Cir. 1970) ................................................................. 22

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)................................... 7

*FCC v. Beach Cmmc'ns*, 508 U.S. 307 (1993) ............................................................... 27

*Flast v. Cohen*, 392 U.S. 83 (1968) ........................................................................... 8

*Gibson v. Matthews*, 926 F.2d 532 (6th Cir. 1991)....................................................... 26

*Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91 (1979) .......................................... 9

*Gonzales v. Gorsuch*, 688 F.2d 1263 (9th Cir. 1982) .................................................... 13

*Hagedorn v. Union Carbide Corp.*, 363 F. Supp. 1061 (N.D. W. Va. 1973)........................ 22

*Hedgepeth v. Wash. Metro. Area Transit Auth.*, 386 F.3d 1148 (D.C. Cir. 2004) ................ 25

*Hill v. Stone*, 421 U.S. 289 (1975) ........................................................................... 24

*Hirabayashi v. United States*, 320 U.S. 81 (1943)......................................................... 4

*Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997)....................................................... 28

*Illinois Central Rail Company v. Illinois*, 146 U.S. 387 (1892) ........................................ 28

*Jaffee v. Soc'y of New York Hosp.*, 1999 WL 246747 (S.D.N.Y. Apr. 27, 1999) ................. 24

*Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356 (1973)...................................... 27

*Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).................. 13

*Long Sault Dev. Co. v. Call*, 242 U.S. 272 (1916)........................................................ 28

*Loortz v. McCarthy,* 561 F. App'x 7 (D.C. Cir. 2014)............................................... 28, 29

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ........................................ 7, 8, 9, 10, 16, 18

*MacNamara v. Cnty. Council of Sussex Cnty.*, 738 F. Supp. 134 (D. Del. 1990) ................. 22

*Mann v. Meachem*, 929 F. Supp. 622 (N.D.N.Y. 1996) ................................................ 26

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ...................................................... 9, 11, 19

*Michael H. v. Gerald D.*, 491 U.S. 110 (1989)........................................................... 20

*Moore v. City of E. Cleveland*, 431 U.S. 494 (1977)..................................................... 20

*Nat'l Sea Clammers Ass'n v. City of New York*, 616 F.2d 1222 (3d Cir. 1980) .......................... 21

*Phillips Petrol. Co. v. Mississippi*, 484 U.S. 469 (1988) ................................................ 28

*Pinkney v. Ohio Envtl. Prot. Agency,* 375 F. Supp. 305 (N.D. Ohio 1974)................................. 22

*PPL Montana, LLC v. Montana*, 132 S. Ct. 1215 (2012) ..................................................... 28

*Price v. Cohen*, 715 F.2d 87 (3d Cir. 1983)................................................................ 24

*Raich v. Gonzales*, 500 F.3d 850 (9th Cir. 2007) ......................................................... 21

*Reno v. Flores,* 507 U.S. 292 (1993) ..................................................................... 21

*Reynolds v. Giusto*, No. CV. 08-6261 PK, 2009 WL 2523727 (D. Or. Aug. 18, 2009)................. 6

*S.F. Chapter of A. Philip Randolph Inst. v. EPA*,
   2008 WL 859985 (N.D. Cal. Mar. 28, 2008).................................................................. 22

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973..................................... 23

*Santana v. Zilog, Inc.*, 95 F.3d 780 (9th Cir. 1996) .................................................. 16

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974)................................ 10, 17

*Sequoyah v. Tenn. Valley Auth.*, 480 F. Supp. 608 (E.D. Tenn. 1979)........................................ 22

*Shively v. Bowlby*, 152 U.S. 1 (1894) .................................................................... 28

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ............................................................... 8

*Sierra Club v. U.S. Def. Energy Support Ctr.*,
   Civ. A. No. 01:11-cv-41, 2011 WL 3321296 (E.D. Va. July 29, 2011).......................... 11

*Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83 (1998)........................................... 7

*Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986) ............................................ 26

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) .................................................... 10

*Tanner v. Armco Steel Corp.*, 340 F. Supp. 532 (S.D. Tex. 1972)........................................ 22

*Tilikum ex rel. People for the Ethical Treatment of Animals, Inc. v. Sea World Parks &
   Entm't, Inc.*, 842 F. Supp. 2d 1259 (S.D. Cal. 2012)................................................. 16

*Truax v. Corrigan*, 257 U.S. 312 (1921)................................................................... 4

*United States v. 32.42 Acres of Land, More or Less, Located in San Diego Cnty., Cal.*,
   683 F.3d 1030 (9th Cir. 2012) ........................................................................ 28

*United States v. Bifield*, 702 F.2d 342 (2d Cir. 1983) .................................................. 26

*United States v. Mitchell*, 915 F.2d 521 (9th Cir. 1990) ............................................... 17

*Upper W. Fork River Watershed Ass'n v. Corps of Eng'rs, U.S. Army*,
    556 F.2d 576 (4th Cir. 1977) ............................................................................ 22

*Upper W. Fork Watershed Assoc. v. Corps of Eng'rs, U. S. Army*,
    414 F. Supp. 908 (N.D. W.Va. 1976) ............................................................... 22

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,
    454 U.S. 464 (1982) ........................................................................................... 7

*Warth v. Seldin*, 422 U.S. 490 (1975) ........................................................... 6, 8, 9, 10

*Wash. Envtl. Council v. Bellon*, 732 F.3d 1131 (9th Cir. 2013) ..................... 12, 13, 15

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ................................................. 21, 22

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ........................................................... 7

*WildEarth Guardians v. Jewell*, 738 F.3d 298 (D.C. Cir. 2013) .............................. 11

*WildEarth Guardians v. Salazar*, 880 F. Supp. 2d 77 (D.D.C. 2012) ...................... 11

## **Statutes**

15 U.S.C. § 717b .......................................................................................................... 2

16 U.S.C. § 2601 ......................................................................................................... 14

30 U.S.C. § 1201 ......................................................................................................... 14

30 U.S.C. § 21a ........................................................................................................... 15

42 U.S.C. § 5801 ......................................................................................................... 15

P.L. 91-631, § 101 ....................................................................................................... 15

P.L. 93-438, § 2(a) ...................................................................................................... 14

P.L. 95-617, § 2 ........................................................................................................... 14

P.L. 95-87, §101 .......................................................................................................... 14

P.L. 96-294, § 100(3) .................................................................................................. 14

## <u>Other Authorities</u>

Fed. R. Civ. P. 12(b)(1)............................................................................... 1, 6, 29

Fed. R. Civ. P. 12(b)(6)............................................................................. 1, 6, 7, 27

## <u>Rules</u>

80 Fed. Reg. 64,510 (Oct. 23, 2015)................................................................ 19

80 Fed. Reg. 64,662 (Oct. 23, 2015)................................................................ 19

## <u>Constitutional Provisions</u>

U.S. Const. amend. V...................................................................................... 20

U.S. Const. art. III § 2, cl.1 ............................................................................. 7

Federal Defendants—the United States of America, the Office of the President of the

United States, and a group of federal agencies and their respective heads sued in their official

capacities—hereby file this Memorandum of Points and Authorities in support of their Motion to

Dismiss.

## INTRODUCTION

To provide the relief requested by Plaintiffs in this case, the Court would be required to

make and enforce national policy concerning energy production and consumption, transportation,

science and technology, commerce, and any other social or economic activity that contributes to

carbon dioxide ("$CO_2$") emissions.  Article III does not give Plaintiffs standing to bring such an

action or invest a federal court with the power to transform its limited jurisdiction to decide

"cases" and "controversies" into a national writ to make climate policy.  Nor does the

Constitution or public trust doctrine give rise to a claim in federal court to vindicate the

generalized public interest in limiting $CO_2$ emissions.  The Amended Complaint should be

dismissed with prejudice under Rule 12(b)(1) because Plaintiffs lack Article III standing or,

alternatively, under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## BACKGROUND

Plaintiffs are a group of individuals—of majority age or minors proceeding through

guardians *ad litem*—as well as the non-profit organization Earth Guardians, a "tribe of young

activists, artists and musicians," dedicated to "creat[ing] a sustainable world for themselves and

future generations."  First Amended Complaint for Declaratory and Injunctive Relief ¶ 91, ECF

No. 7 (Sept. 10, 2015) ("Am. Compl.").  In addition, this suit is brought by "Future

Generations," by and through their putative guardian, Dr. James Hansen.  *Id*. ¶ 92.  Plaintiffs

filed this Amended Complaint on September 10, 2015, bringing four claims against the United

States and a group of federal agencies and officials. *Id.* ¶¶ 98-130. The Amended Complaint alleges that increases in atmospheric carbon dioxide levels have caused rising sea levels, leading to glacier and sea ice melting, *id.* ¶¶ 214-15, 218-19, 223, 225; increased global surface temperatures, *id.* ¶¶ 217, 224; changes to atmospheric moisture levels and rainfall patterns and increased wildfires, *id.* ¶ 229; and coastal erosion, *id.* ¶ 219. Plaintiffs allege that these changes have impacted, or will negatively impact, drinking water quality, *id.* ¶ 226; agriculture and food production, *id.* ¶¶ 226-27; ocean acid levels, *id.* ¶¶ 230-32; coral reef health, *id.* ¶¶ 233-34; plant and animal biodiversity, *id.* ¶¶ 235-37; human health, *id.* ¶ 238; national security, *id.* ¶ 239; and migration and demographic patterns, *id.* ¶ 240. The individual plaintiffs and the organizational plaintiff allege that they or its members have already experienced these impacts, *id.* ¶¶ 16-96, and that those impacts will accelerate during the likely life span of the individual plaintiffs and Future Generations, *id.* ¶¶ 97, 242-55. Plaintiffs allege that Defendants are causing unsustainable $CO_2$ emissions and increased $CO_2$ atmospheric levels and associated impacts by permitting increases in fossil fuel production and combustion, *id.* ¶¶ 151-70, 185-91, subsidizing the fossil fuel industry, *id.* ¶¶ 171-78; and allowing interstate and international transport of fossil fuels, *id.* ¶¶ 179-84. Plaintiffs also specifically complain about DOE/FE Order No. 3041, the Department of Energy's ("DOE") order granting long-term multi-contract authorization, under Section 201 of the Energy Policy Act of 1992, for export of liquefied natural gas ("LNG") from the proposed Jordan Cove LNG terminal in Coos Bay, Oregon ("the Coos Bay facility"). *Id.* ¶¶ 192-201.[1]

---

[1] Section 201 of the Energy Policy Act of 1992 amended 15 U.S.C. § 717b to state that the importation of natural gas from, or the exportation of natural gas to, "a nation with which there is in effect a free trade agreement requiring national treatment for trade in natural gas, shall be deemed to be consistent with the public interest, and applications for such importation or

Plaintiffs bring four claims.  First, they claim that Defendants' actions violate "Plaintiffs' substantive Fifth Amendment rights [under the Due Process Clause] because Defendants directly caused atmospheric $CO_2$ to rise to levels that dangerously interfere with a stable climate system required alike by our nation and Plaintiffs," thus "endanger[ing] Plaintiffs' lives, liberties, and property."  Am. Compl. ¶ 279.  Plaintiffs further allege that Defendants have acted with deliberate indifference by failing to "implement[] their own plans for climate stabilization or any other comprehensive policy measures to effectively reduce $CO_2$ emissions to levels that would adequately protect Plaintiffs from the dangerous situation of climate destabilization."  *Id.* ¶ 285.  Plaintiffs add that Defendants' acts, "if not fundamentally altered without delay, will effect a complete taking of some of Plaintiffs' property interests by virtue of the sea level rise," though they do not bring a claim under the Fifth Amendment's Just Compensation Clause.  *Id.* ¶ 287.  Finally, Plaintiffs claim that the Department of Energy in particular has infringed on their fundamental substantive due process rights by approving the exportation and importation of natural gas pursuant to Section 201 of the Energy Policy Act of 1992, which because it "increase[s] carbon pollution and exacerbate[s] already-dangerous climate instability" is unconstitutional on its face and as applied to Plaintiffs through DOE/FE Order No. 3041.  *Id.* ¶ 288.  However, Plaintiffs do not claim that DOE/FE Order No. 3041 suffers from any procedural or facial defect, and it appears that the issuance of this order is simply one more of Defendants'

---

exportation shall be granted without modification or delay."  *See* P.L. 102–486, § 201 (Oct. 24, 1992).  DOE/FE Order No. 3041 permits export of liquefied natural gas from a liquefaction facility and export terminal that Jordan Cove Energy Project, L.P. proposes to build—but has not yet built—in Coos Bay, Oregon.  *See* Declaration of Cassandra Bernstein Exh. A, at 2 (DOE/FE Order No. 3041).

"aggregate acts" that Plaintiffs allege are unconstitutional because they contribute to climate change and associated impacts. *See, e.g.*, *id.* ¶¶ 1, 5, 9, 129, 305-06, 309-10.

As a second claim, Plaintiffs allege that Defendants' acts violate "the equal protection principles of the Fourteenth Amendment, embedded in the Due Process Clause of the Fifth Amendment." Am. Compl. ¶ 291.[2] Plaintiffs claim that they are a "separate suspect class[]" and "insular minority" under those provisions because they have "no voting rights and little, if any, political power or influence over Defendants." *Id.* ¶ 294. Plaintiffs also allege that plaintiff Future Generations "do not have present political power or influence, have immutable characteristics, and are also an insular minority." *Id.* ¶ 295. Plaintiffs allege that they must be treated as a protected class for purposes of equal protection analysis, and that "federal laws and actions that disproportionately discriminate against and endanger them must be invalidated." *Id.* ¶ 297. Plaintiffs further allege that Section 201 of the Energy Policy Act is unconstitutional on its face and as applied through DOE/FE Order No. 3041 because both have "a disproportionate impact on suspect classes." *Id.* ¶ 299.

As a third claim, Plaintiffs bring suit under the Ninth Amendment, on the ground that "[f]undamental to our scheme of ordered liberty . . . is the implied right to a stable climate system and an atmosphere and oceans that are free from dangerous levels of anthropogenic $CO_2$," Am. Compl. ¶ 304, and that Defendants' acts have infringed on those unenumerated

---

[2] "Unlike the Fourteenth Amendment, the Fifth contains no equal protection clause and it provides no guaranty against discriminatory legislation by Congress." *Detroit Bank v. United States*, 317 U.S. 329, 337 (1943). However, the Supreme Court has held that the due process and equal protection clauses are "associated" and that "[i]t may be that they overlap, that a violation of one may involve at times the violation of the other." *Truax v. Corrigan*, 257 U.S. 312, 331 (1921); *see also Hirabayashi v. United States*, 320 U.S. 81, 100 (1943). For purposes of the present motion, Federal Defendants will presume, but do not admit, that there is a viable Fifth Amendment claim for violation of the equal protection principles of the Fourteenth Amendment.

rights, *id*. ¶ 306.  Plaintiffs do not bring a Ninth Amendment claim specific to the Energy Policy Act or any DOE order.

Finally, Plaintiffs allege that they are beneficiaries of rights under the public trust doctrine that "protect the rights of present and future generations" to "vital natural resources" such as air and water quality, biological diversity, and intact shorelines.  Am. Compl. ¶ 308. Plaintiffs allege that Defendants "have failed in their duty of care as trustees to manage the atmosphere in the best interests of the present and future beneficiaries of the trust property," including Plaintiffs.  *Id*. ¶ 310.  Plaintiffs do not bring a public trust doctrine claim specific to the Energy Policy Act or any DOE order.

Plaintiffs seek a declaratory judgment that Defendants' acts have violated the Constitution; that Section 201 of the Energy Policy Act is unconstitutional on its face and as applied in DOE/FE Order No. 3041; and that Defendants have violated the public trust.  They seek an injunction prohibiting future constitutional and public trust violations by the Defendants and ordering the U.S. government and the Defendant agencies to "prepare a consumption-based inventory of U.S. $CO_2$ emissions," though they do not specifically state whether this request is limited to an inventory of emissions by the Defendants or by all emitting sources in the United States.  Plaintiffs also request that the U.S. government be ordered to "implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric $CO_2$," and ask the Court to retain jurisdiction over the case for an indefinite period of time to monitor the Government's compliance with the plan to phase out $CO_2$ emissions and reduce atmospheric $CO_2$ levels.  Am. Compl. at 94 (Prayer for Relief).  While the Plaintiffs do not specifically state whether this requested relief should be directed solely at emissions by the Defendants or by all U.S. emission sources, elsewhere in the Amended Complaint they do state

that $CO_2$ emissions reductions of 6 percent annually would be required to reduce atmospheric $CO_2$ levels by the year 2100 to 350 ppm, a level that will head off the future impacts that Plaintiffs allege. *Id*. ¶¶ 257-59.  These reductions would be required globally, not just of Defendants or even all U.S. sources, since reductions on that order would only reduce atmospheric $CO_2$ levels to 350 ppm if that "trajectory [were] adhered to by other major emitters." *Id*. ¶ 262.

## STANDARD OF REVIEW

A court reviews a motion to dismiss a complaint for lack of Article III standing under Fed. R. Civ. P. 12(b)(1).  *See Elizabeth Retail Props. LLC v. KeyBank Nat. Ass'n*, 83 F. Supp. 3d 972, 985-86 (D. Or. 2015).  A jurisdictional challenge may be facial or factual.  Where the jurisdictional attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction.  *See Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010).

A court may also dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion, the court must accept all of the claimant's material factual allegations as true and view all facts in the light most favorable to the claimant.  *See Reynolds v. Giusto*, No. CV. 08-6261 PK, 2009 WL 2523727, at *1 (D. Or. Aug. 18, 2009).  However, a court need not accept as true any legal conclusion set forth in a pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Supreme

Court addressed the proper pleading standard under Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*: "While a complaint attacked [under] Rule 12(b)(6) . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." 550 U.S. 544, 555 (2007) (citation and brackets omitted). The complaint must set forth facts supporting a *plausible*, not merely *possible*, claim for relief. *Id*.

## ARGUMENT

### I.      Under *Lujan*, Plaintiffs Lack Article III Standing to Bring This Suit.

A federal court, being one of limited jurisdiction, may act only where it is granted power to do so by the Constitution and applicable statutes and regulations. *See Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 552 (2005). One limitation on a court's power to act is Article III standing, which restricts the jurisdiction of the federal courts to the resolution of "[c]ases" and "[c]ontroversies." U.S. Const. art. III § 2, cl.1; *Bender v. Williamsport Area Sch. Dist*., 475 U.S. 534, 541-42 (1986). The standing doctrine "serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. *Steel Co. v. Citizens for a Better Envt*., 523 U.S. 83, 101 (1998).

The Supreme Court in *Lujan v. Defenders of Wildlife* reiterated the "irreducible minimum," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472 (1982), that a plaintiff seeking to invoke a federal court's jurisdiction must establish. 504 U.S. 555, 560-61 (1992). Plaintiffs must show (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) that their injury is fairly traceable to the challenged action of the defendant, and not the result of the

7

"independent action of some third party not before the court"; and (3) that it is "'likely' as opposed to merely 'speculative' that the injury will be 'redressed by a favorable decision.'" *Id.* at 560-61. A particularized injury, the Court noted, is one that "affect[s] the plaintiff in a personal and individual way." *Id.* at 561 n.1. Because Plaintiffs' alleged injuries are not particular to them but are shared by every person in the Nation, living or yet to be born, and because the impacts that Plaintiffs allege are not traceable to the Defendants' acts and would not be redressed by a favorable decision, Plaintiffs lack standing.

### A. The Amended Complaint Fails To Allege Particularized Harm Traceable To Defendants' Acts.

#### 1. Plaintiffs Lack Standing Because They Allege A Generalized Grievance, Not A Particularized Harm.

To invoke the jurisdiction of a federal court, a plaintiff must allege "such a personal stake in the outcome of the controversy as to ensure that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972) (quotations omitted). Federal courts are not "a forum in which to air . . . generalized grievances about the conduct of government. . . ." *Flast v. Cohen*, 392 U.S. 83, 106 (1968). Each plaintiff must press a personal stake in the outcome of litigation sufficient "to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on *his* behalf." *Warth*, 422 U.S. at 498-99 (emphases added). This requires some modicum of personal interest, as standing to sue may not be predicated upon an interest which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share. Unless a plaintiff asserts "an injury that is peculiar to himself or to a distinct group of which he is a part, rather than one 'shared in substantially equal measure by all or a large class of citizens,'" he

lacks standing. *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 101 (1979) (quoting *Warth*, 422 U.S. at 499).

In *Massachusetts v. EPA*, 549 U.S. 497 (2007), the Supreme Court considered a challenge by states, local governments, and environmental organizations to the Environmental Protection Agency's denial of a rulemaking petition asking EPA to regulate greenhouse gas emissions from new motor vehicles under the mobile source provisions of the Clean Air Act. EPA had denied the petition primarily because it then believed that as a legal matter greenhouse gases were not "air pollutants" within the meaning of the Clean Air Act. *Id*. at 513.

In a 5-4 decision, the Court found that the Commonwealth of Massachusetts had standing to bring the challenge. *Massachusetts*, 549 U.S. at 518. The majority rejected the notion that "because greenhouse gas emissions inflict widespread harm, the doctrine of standing presents an insuperable jurisdictional obstacle." *Id.* at 517. It pointed to this language from Justice Kennedy's concurrence in *Lujan*:

> While it does not matter how many persons have been injured by the challenged action, the party bringing suit must show that the action injures him in a concrete and personal way. This requirement is not just an empty formality. It preserves the vitality of the adversarial process by assuring both that the parties before the court have an actual, as opposed to professed, stake in the outcome, and that the legal questions presented . . . will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.

*Id*. at 517 (quoting *Lujan*, 504 U.S. at 581). The majority then applied the three-part test for Article III standing drawn from the majority opinion in *Lujan*, and held that, based in particular on the loss of state-owned lands to rising sea levels caused by global warming, Massachusetts had alleged sufficiently particularized injury. *Id*. at 522-23. Since EPA's legal position on the scope of the Clean Air Act had led it to refuse to regulate a major specific source of greenhouse gas emissions, Massachusetts was able to show that its injury was traceable to the challenged

agency action, and that the Court could redress the injury by correcting EPA's erroneous view of the statute. *Id.* at 524-25.

The differences between this case and *Massachusetts v. EPA* are stark, and show why Plaintiffs lack standing. Plaintiffs allege that they have suffered and will suffer injuries from Defendants' acts, which allegedly have contributed to climate change. But they have not alleged with sufficient particularity a "personal and individual" injury, which under *Lujan* is a requirement to establish standing. *Lujan*, 504 U.S. at 561 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way"); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 495-97 (2009) (plaintiff may not rely on speculation to show particularized injury at hands of challenged government action). "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth*, 422 U.S. at 499 (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221-27 (1974)). In *Massachusetts v. EPA* the Court found that the State was injured in a particularized way by sea level rise. But none of the Plaintiffs here have been injured in the same way as Massachusetts— or indeed, in any way that distinguishes them from any other person in the Nation—and thus they are in no different a position than any other person when it comes to climate change impacts. Indeed, Plaintiffs acknowledge as much when they allege that Defendants' acts have endangered the "stable climate system *required alike by our nation* and Plaintiffs," Am. Compl. ¶ 279 (emphasis added), and "impose[d] harm *on the nation and on Plaintiffs*," *id.* ¶ 154 (emphasis added)—an implicit admission that the grievances animating the Amended Complaint are shared by all. Whatever injuries climate change has caused or will cause, those injuries are "not focused any more on these petitioners than [they are] on the remainder of the world's

10

population," *Ctr. for Biological Diversity v. U.S. Dept. of the Interior*, 563 F.3d 466, 475 (D.C. Cir. 2009), and hence cannot establish particularized injury for standing for these Plaintiffs.[3]  *See also WildEarth Guardians v. Salazar*, 880 F. Supp. 2d 77, 83-87 (D.D.C. 2012), *aff'd sub nom. WildEarth Guardians v. Jewell*, 738 F.3d 298 (D.C. Cir. 2013)[4]; *Amigos Bravos v. BLM*, 816 F. Supp. 2d 1118, 1126-28 (D.N.M. 2011); *Sierra Club v. U.S. Def. Energy Support Ctr.*, Civ. A. No. 01:11-cv-41, 2011 WL 3321296, at *4-*6 (E.D. Va. July 29, 2011).  Their claims should be dismissed.

> **2.    Plaintiffs Lack Standing Because They Allege A Causal Chain That Consists Of Generalized Assertions Of Defendants' "Contribution" To Climate Change.**

Also deficient are the Amended Complaint's allegations tracing the alleged injuries to the challenged actions of the Defendants.  In *Massachusetts v. EPA*, the State could show that the particular EPA determination under challenge—that EPA lacked authority to regulate greenhouse gas emissions from new motor vehicles under the Clean Air Act—led to a substantial

---

[3] Plaintiffs' allegations concerning the approval of natural gas exportation through the Coos Bay facility do not change the fact that the injury in fact they allege is not particularized and concrete.  Plaintiffs have not alleged that there was any facial or procedural defect in DOE/FE Order No. 3041, such as would support a claim under the Administrative Procedure Act or National Environmental Policy Act.  Rather, they allege that the export of natural gas through the Coos Bay facility pursuant to Section 201 of the Energy Policy Act will "increase carbon pollution and exacerbate[s] already-dangerous climate instability," and thus is unconstitutional because it contributes to the harms that Plaintiffs allege.  Am. Compl. ¶ 288.  Thus, the approval of the export of natural gas from this facility does not cause Plaintiffs any alleged harm that is not suffered by the citizenry as a whole.

[4] In *WildEarth Guardians*, the D.C. Circuit affirmed the district court's finding that the environmental plaintiffs lacked standing to allege constitutional claims for climate change impacts caused by global emissions, but held that plaintiffs had standing under the National Environmental Policy Act because of alleged harms to aesthetic and recreational interests caused by local pollution.  *WildEarth Guardians*, 738 F.3d at 317-18.  Plaintiffs in this case have not brought a NEPA claim, and they allege no separate and specific injuries apart from those related to global $CO_2$ emissions, so these alleged local impacts do not suffice to establish standing in this case.

11

amount of additional carbon dioxide emissions threatening the State's interest in preserving its

shoreline areas from rising sea levels.  549 U.S. at 524.  The causal chain presented in the

Amended Complaint, by contrast, is nothing more than "a series of links strung together by

conclusory, generalized statements of 'contribution.'"  *Wash. Envtl. Council v. Bellon*, 732 F.3d

1131, 1142 (9th Cir. 2013).

Plaintiffs point to harms they have suffered that were allegedly caused by climate change,

including harms to their recreational interests, *see, e.g.*, Am. Compl. ¶¶ 16, 18, 21, 29, 35;

drinking water and diets, *see, e.g.*, *id.* ¶¶ 16-18, 33; physical health, *see, e.g.*, *id.* ¶¶ 19, 37, 62,

75; psychological well-being, *see, e.g.*, *id.* ¶¶ 19, 21, 24, 33; and economic interests, *see, e.g.*, *id.*

¶¶ 24, 26, 32, 38.  But they never attempt to connect those impacts to the Defendants' acts,

except through vague and generalized assertions that those acts contribute to global climate

change.  *See, e.g.*, *id.* ¶ 106 ("DOE's actions and omissions have substantially contributed to

unsafe levels of atmospheric $CO_2$ and a dangerous climate system."); ¶ 112 ("DOI is

substantially contributing to dangerous levels of atmospheric $CO_2$ and a dangerous climate

system in our nation."); ¶ 115 ("DOT acknowledges the severity of the threats of climate change,

yet continues to facilitate the severity of climate change impacts by contributing approximately

27% of U.S. $CO_2$ emissions in 2013."); ¶ 117 ("USDA has substantially contributed to and

continues to substantially contribute to a dangerous climate system . . . .").  The Ninth Circuit has

explicitly rejected the argument that allegations that a source "contributed" to climate change are

sufficient to satisfy Article III's causation requirement:  Plaintiffs "need not connect each

molecule to their injuries, [but] simply saying that [Defendants] have failed to curb emission of

greenhouse gases, which contribute (in some undefined way and to some undefined degree) to

their injuries, relies on an 'attenuated chain of conjecture' insufficient to support standing."

*Wash. Envtl. Council*, 732 F.3d. at 1142-43.[5]  Because Plaintiffs do not adequately allege a causal connection between Defendants' actions and their generalized statements of harm, their claims should be dismissed.

> **3.    Plaintiffs Lack Standing Because Their Alleged Injuries Cannot Be Redressed By The Court.**

Plaintiffs also lack standing because the injuries they allege cannot be redressed by an order within this Court's authority to issue.  "It is a prerequisite of justiciability that judicial relief will prevent or redress the claimed injury, or that there is a significant likelihood of such redress.  Redressability in this sense is an aspect of standing."  *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982) (citations omitted).  Plaintiffs lack standing when they fail to provide evidence of "a close relation between . . . the injury asserted and the relief claimed."  *Id.*  Under the Supreme Court's standing cases, redressability is a matter of the "fit" between an act or omission and the injury that results from it:  Plaintiffs must trace their injury to a *particular* government action that is prohibited, or inaction in the face of a duty to act, the reversal of which will concretely address their injury.  Plaintiffs fail to establish standing where "the injury [is] too abstract," or "the line of causation between the illegal conduct and injury [is] too attenuated," such that "the prospect of obtaining relief from the injury as a result of a favorable ruling [is] too speculative."  *Allen v. Wright,* 468 U.S. 737, 752 (1984), *abrogated in part on non-relevant*

---

[5] The allegations regarding the Coos Bay facility suffer from the same deficiencies in causation as do Plaintiffs' allegations regarding all of Defendants' acts.  The Ninth Circuit has observed that "there is limited scientific capability in assessing, detecting, or measuring the relationship between a certain [greenhouse gas] emission source and localized climate impacts in a given region. . . [I]t is currently beyond the scope of existing science to identify a specific source of $CO_2$ emissions and designate it as the cause of specific climate impacts at an exact location."  *Wash. Envtl. Council*, 732 F.3d at 1143 (quotation omitted).

grounds by *Lexmark Intern., Inc. v. Static Control Components, Inc.*, --- U.S. ----, 134 S. Ct.

1377 (2014).

The Amended Complaint here presents a generalized attack on government action and

inaction regarding climate change, rather than a challenge to specifically identifiable violations

of law that can be concretely rectified by a favorable decision.  Even assuming, *arguendo*, that

Plaintiffs' injuries could satisfy the standing analysis in *Massachusetts v. EPA*—and they do not,

*see Wash. Envtl. Council*, 732 F.3d at 1146—the relief that Plaintiffs seek far exceeds the

relatively narrow request in that case to enact regulations under a specific provision in one

statute.  Instead, Plaintiffs seek a comprehensive national climate policy, overseen by a single

federal district court, that would require wholesale changes to energy production and

consumption in this country.  Meeting this demand would require many Federal energy

regulations to be rewritten, and would negate the purposes and findings of several Federal

statutes that explicitly direct agencies to balance various policy goals with environmental

protection.[6]  Formulating and enforcing this expansive relief lies outside this Court's competence

---

[6] Congress balances energy needs against conservation and environmental goals in a host
of statutes that subsidize fossil fuel production, regulate environmental impacts from energy
consumption, and provide for efficient production and transportation of energy resources—
exactly the activities that Plaintiffs attack in this case.  *See, e.g.*, Energy Security Act of 1980,
P.L. 96-294, § 100(3) (stating that a Congressional purpose is "attainment of synthetic fuel
production in the United States in a timely manner and in a manner consistent with the protection
of the environment"); Public Utilities Regulatory Policies Act of 1978, P.L. 95-617, § 2 ("The
Congress finds that the protection of the public health, safety, and welfare . . . require—(1) a
program providing for increased conservation of electric energy, . . . (2) a program to improve
the wholesale distribution of electric energy . . . , (4) a program for the conservation of natural
gas while insuring that rates to natural gas consumers are equitable, [and] (5) a program to
encourage the development of crude oil transportation systems. . ."), *codified at* 16 U.S.C. §
2601; Surface Mining Control and Reclamation Act of 1977, P.L. 95-87, §101 ("The Congress
finds and declares that— . . . (b) coal mining operations presently contribute significantly to the
Nation's energy requirements . . . and it is, therefore, essential to the national interest to insure
the existence of an expanding and economically healthy underground coal mining industry; . . .

and jurisdiction.  Agencies are "creatures of statute" whose powers and obligations are dependent upon congressional authorization.  *Am. Bus Ass'n v. Slater,* 231 F.3d 1, 9 (D.C. Cir. 2000).  Courts are not at liberty to encumber agencies with duties not contemplated by Congress. *Id.* at 9-10 ("Unless Congress delegates authority to an agency, the agency is without power to act").  Plaintiffs do not allege any statutory framework specifying the agency duties that are supposedly being violated, such that the Court could provide redress by requiring compliance with those specific duties.

Nor do Plaintiffs cite any statute that authorizes federal courts at the behest of allegedly injured parties to issue, for example, an injunction requiring national $CO_2$ emissions reductions of 6 percent per year for the next century, which they allege is the minimum required to reduce atmospheric $CO_2$ levels by the year 2100 to 350 ppm, a level that Plaintiffs claim will head off the future impacts they allege.  Am. Compl. ¶¶ 257-59.  Plaintiffs accordingly cannot show that their alleged injuries resulting from Defendants' acts can be concretely redressed by any specific relief that is within the power of the Court to grant.[7]

------------------------

[and] (d) the expansion of coal mining to meet the Nation's energy needs makes even more urgent the establishment of appropriate standards to minimize damage to the environment and to productivity of the soil and to protect the health and safety of the public."), *codified at* 30 U.S.C. § 1201; Energy Reorganization Act of 1974, P.L. 93-438, § 2(a) ("The Congress hereby declares that the general welfare and the common defense and security require effective action to develop, and increase the efficiency and reliability of use of, all energy sources to meet the needs of present and future generations, . . . to make the Nation self-sufficient in energy, [and] to advance the goals of restoring, protecting, and enhancing environmental quality. . ."), *codified at* 42 U.S.C. § 5801; Mining and Minerals Policy Act, P.L. 91-631, § 101 ("The Congress declares that it is the continuing policy of the Federal Government in the national interest to foster and encourage private enterprise in . . . (2) the orderly and economic development of domestic mineral resources, reserves, and reclamation of metals and minerals to help assure satisfaction of industrial, security and environmental needs"), *codified at* 30 U.S.C. § 21a.

[7] This is equally true of Plaintiffs' request for invalidation, on constitutional grounds, of Section 201 of the Energy Policy Act and the Department of Energy permit authorizing the export of natural gas from the Coos Bay facility, since invalidating Section 201 or vacating

### 4.      Future Generations Have Suffered No Injury In Fact And Thus Lack Standing.

Regardless of whether any individual plaintiff has standing, Future Generations lack

standing and are not proper plaintiffs.  To have standing, a plaintiff must have suffered an injury

in fact that is "concrete and particularized" and "actual or imminent, not conjectural or

hypothetical."  *Lujan*, 504 U.S. at 561.  By definition, Future Generations have not yet suffered

any *actual* injury because Future Generations do not presently exist, such that they could sustain

an injury.  And even assuming that the future impacts of climate change are "imminent," Future

Generations do not have any constitutional or other rights that are in imminent danger of being

harmed.[8]  While some federal and state courts have recognized that viable and even pre-viability

fetuses may have legal interests under state tort law, *see, e.g.*, *Santana v. Zilog, Inc.*, 95 F.3d 780,

785 (9th Cir. 1996), courts have rejected on standing grounds constitutional claims brought on

behalf of non-persons.  *See, e.g.*, *Tilikum ex rel. People for the Ethical Treatment of Animals,*

*Inc. v. Sea World Parks & Entm't, Inc.*, 842 F. Supp. 2d 1259, 1262 (S.D. Cal. 2012) (rejecting

constitutional claim brought on behalf of captive whales).  To Defendants' knowledge, no

federal court has ever recognized that future, and therefore hypothetical, persons have

---

DOE/FE Order No. 3041 would not redress the recreational, health, economic, and dietary harms they allege they have experienced as a result of global climate change.  This is simply the flip side of the Ninth Circuit's holding that "[i]t is currently beyond the scope of existing science to identify a specific source of $CO_2$ emissions and designate it as the cause of specific climate impacts at an exact location."  *Wash. Envtl. Council*, 732 F.3d at 1143 (quotation omitted).

[8] Plaintiffs appear to rely on the "Posterity" language in the Preamble to the Constitution as support for their assertion that Future Generations have constitutional rights that could support standing in this case.  *See* Am. Compl. ¶ 278.  But as several courts have held, the Preamble does not create actionable rights independent of those specifically articulated in the Constitution.  *See, e.g.*, *Tinsley v. Methodist Hosp. of Ind.*, 70 F.3d 1275, 1995 WL 695960, at *2 (7th Cir. 1995) (unpublished table decision); *Maybrick v. Soc. Sec. Admin.*, No. 2:13-CV-508 TS, 2013 WL 6571819, at *2 (D. Utah Dec. 13, 2013); *Hazelton v. City of Grand Praire, Tex.*, 8 F. Supp. 2d 570, 578 n.18 (N.D. Tex. 1998).

16

constitutional rights that may be impaired, and thus have standing to maintain an action to vindicate those constitutional rights in federal court.

Furthermore, Plaintiffs have failed to allege any facts showing that the putative guardian of Future Generations has standing to pursue these claims on their behalf.  Plaintiffs have not alleged any statute providing future persons a private right of action for constitutional claims that can be pursued by a third party (such as Dr. Hansen) on the non-person's behalf.  *Cf. Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1176 (9th Cir. 2004) ("If Article III does not prevent Congress from granting standing to an animal by statutorily authorizing a suit in its name, the question becomes whether Congress has passed a statute actually doing so.").  Constitutional claims are personal and, absent statutory authorization, cannot be asserted vicariously.  *United States v. Mitchell*, 915 F.2d 521, 526 n.8 (9th Cir. 1990).  While a non-attorney may appear *pro se* on his own behalf, a non-attorney "has no authority to appear as an attorney for others than himself." *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987).  Even if the Court determines that the individual plaintiffs have standing—and they do not—Future Generations clearly do not have standing because they have not suffered an injury in fact to a cognizable constitutional right that is actual or imminent.

###### B.    Plaintiffs' Claims Are A Generalized Grievance Best Addressed Through Democratic Means, Not By A Federal Court.

The allegations on behalf of Future Generations simply highlight the generalized nature of the grievance that animates this case and why this judicial proceeding is not the appropriate forum for addressing it.  Plaintiffs allege—not simply on behalf of certain persons living in the Nation presently, but also on behalf of *all* persons in the Nation yet to be born—that "the Judicial Branch [should] compel the Executive Branch to act in conformity with . . . an interest shared by all." *Schlesinger*, 418 U.S. at 217.  This is a generalized grievance that raises substantial

separation of powers concerns because its resolution would transform the district court into a super-regulator setting national climate policy.

Explaining its generalized grievance cases, the Supreme Court in *Lujan* observed:

'The province of the court,' as Chief Justice Marshall said in *Marbury v. Madison*, 'is, solely, to decide on the rights of individuals.' Vindicating the public interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive.

*Lujan*, 504 U.S. at 576 (citation omitted). Plaintiffs' claims in this case amount to a generalized grievance because they seek to convert the universal public interest in having executive officers undertake appropriate measures to address the threat of climate change into an individual right, vindicable in the courts. Allowing such claims to proceed in open-ended litigation, divorced from any statutory duty to undertake specific action to reduce $CO_2$ emissions or address climate change, would require courts to make determinations about strategies to protect the climate that are essentially legislative in character, as well as determine how Executive Branch agencies should carry out those strategies. *See* Am. Compl. at 94 (Prayer for Relief requesting the Court to "[r]etain jurisdiction over this action to monitor and enforce Defendants' compliance with the national remedial plan and all associated orders of this Court"). It is not the role of the district court to resolve questions such as how much the nation's greenhouse gas emissions should be reduced to address global climate change; how much of the burden of reducing worldwide greenhouse gas emissions should be borne by the United States; which federal agencies should promulgate regulations or alter their modes of operation; and what is the appropriate level of funding for such efforts. By design, Article III confines a federal district court's jurisdiction to resolving disputes between specific parties; courts are institutionally ill-suited to balance the various interests of, and the burdens to be borne by, the many entities, groups, and sectors of the

18

economy that, although not parties to this litigation, are affected by a phenomenon that spans the globe. *See Am. Elec. Power Co. v. Connecticut*, --- U.S. ----, 131 S. Ct. 2527, 2539-40 (2011).

The establishment of appropriate targets for the reduction of $CO_2$ emissions in the United States would entail a host of policy judgments that should be made by decision makers who are politically accountable, have expertise, and are able to pursue a coherent national or international strategy. *Cf. Massachusetts,* 549 U.S. at 524 ("[Agencies] whittle away at [massive problems] over time, refining their preferred approach as circumstances change and as they develop a more nuanced understanding of how best to proceed."). Since the Supreme Court held in *Massachusetts v. EPA* in 2007 that $CO_2$ falls within delegated regulatory authority, federal agencies have undertaken substantial efforts to address climate change. *See, e.g.*, *Am. Elec. Power,* 131 S. Ct. at 2533 (acknowledging EPA's post-*Massachusetts* regulatory initiatives limiting greenhouse gas emissions); Am. Compl. ¶ 148 (noting that Defendant Environmental Protection Agency commenced "regulation of greenhouse gases under the Clean Air Act from mobile and stationary sources of air pollution" in 2011); Carbon Pollution Emission Guidelines for Existing Stationary Sources: Electric Utility Generating Units, 80 Fed. Reg. 64,662 (Oct. 23, 2015); Standards of Performance for Greenhouse Gas Emissions From New, Modified, and Reconstructed Stationary Sources: Electric Utility Generating Units, 80 Fed. Reg. 64,510 (Oct. 23, 2015). The Court should decline Plaintiff's invitation to short-circuit this regulatory process.

## II.  Plaintiffs Fail To State A Claim Under The Constitution.

Assuming, *arguendo*, that Plaintiffs have standing to maintain this action, Counts One through Three of the Amended Complaint must be dismissed for failure to state a claim. No court anywhere has ever recognized a federal constitutional right to be free of $CO_2$ emissions (or any pollutant), and more generally have consistently rejected attempts to constitutionalize permissible levels of environmental contamination and environmental impacts. Plaintiffs—those

under the age of 18, those of majority age, and Future Generations—do not constitute a discrete and insular minority for purposes of climate change, and Plaintiffs have not adequately alleged that they lack access to the political process.  And the Ninth Amendment secures no substantive rights at all.  Since Defendants' acts do not implicate a fundamental right or a protected class, they are subject only to rational basis review, and Plaintiffs have not adequately alleged that the Federal Defendants' acts or omissions were impermissible under any "reasonably conceivable" set of facts.

### A.    There Is No Constitutional Right To Be Free of $CO_2$ Emissions.

Plaintiffs do not allege that the Constitution explicitly provides a right to be free of climate change.  They instead allege that such a right is found in the Fifth Amendment's guarantee that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Plaintiffs claim that "[o]ur nation's climate system, including the atmosphere and oceans, is critical to" the enjoyment of the rights guaranteed by the Constitution, Am. Compl. ¶ 279, and that Defendants have placed Plaintiffs in a state of "climate danger," *id*. ¶ 285, by "allowing fossil fuel production, consumption, and combustion at dangerous levels, thereby violating Plaintiffs' substantive Fifth Amendment due process rights," *id*. ¶ 284.

The Supreme Court has stated that courts should exercise the "utmost care and restraint" when contemplating expanding substantive due process protection beyond the rights explicitly identified in the Constitution.  *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).  To be considered fundamental, an unenumerated right must be "deeply rooted in this Nation's history and tradition," *Moore v. City of E. Cleveland*, 431 U.S. 494, 503 (1977), and the Supreme Court has admonished lower federal courts to "exercise restraint in creating new definitions of substantive due process," *Christy v. Hodel*, 857 F.2d 1324, 1330 (9th Cir. 1988).  The party

asserting such a right has the burden of establishing it.  *See Michael H. v. Gerald D.*, 491 U.S. 110, 125 (1989).

As the Ninth Circuit has recognized, the first step in determining whether an asserted fundamental right is deeply rooted in the Nation's history and tradition is to "adopt a narrow definition of the interest at stake."  *Raich v. Gonzales*, 500 F.3d 850, 863 (9th Cir. 2007) (citing *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997)).  *See also id.* ("[W]e have a tradition of carefully formulating the interest at stake in substantive-due-process cases.").  For example, in *Reno v. Flores*, the Supreme Court declined to describe an asserted fundamental right broadly as the "right to be free of physical restraint," in favor of the more narrow asserted "right to an individualized hearing on whether private placement [as opposed to placement in government-sponsored institutions] would be in the . . . 'best interests'" of children committed to the care of the state.  507 U.S. 292, 293, 299 (1993).  The Court then noted that no court had ever recognized such a right and that "[t]he mere novelty of such a claim is reason enough to doubt that 'substantive due process' sustains it; the alleged right certainly cannot be considered 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Id.* at 303.

The Court should use the same analytical framework in this case and reject Plaintiffs' claim to a fundamental constitutional right to be free of $CO_2$ emissions.  No court has *ever* recognized such a right; more generally, no court has ever recognized a federal constitutional right to a natural environment free of pollutants.  Quite the opposite:  courts have consistently held that "there is no constitutional right to a pollution-free environment."  *Nat'l Sea Clammers Ass'n v. City of New York*, 616 F.2d 1222, 1237-38 (3d Cir. 1980), *dismissed and vacated in part*

*on other grounds,* 453 U.S. 1 (1981).[9]  Nor is there cause for this Court create such a right.  The

Supreme Court has warned that "[b]y extending constitutional protection to an asserted right or

liberty interest, [courts], to a great extent, place the matter outside the arena of public debate and

legislative action.  We must therefore 'exercise the utmost care whenever we are asked to break

new ground in this field' . . . ."  *Glucksberg*, 521 U.S. at 720.  Making environmental policy

always involves balancing "competing social, political, and economic forces."  *Collins*, 503 U.S.

at 128.  The Constitution envisions that such balancing is distinctly the province of the Executive

and Legislative branches of government, not that of federal courts.  *See supra* at 17-19.[10]

---

[9] *See also Concerned Citizens of Neb. v. U.S. Nuclear Regulatory Comm'n*, 970 F.2d 421, 426 (8th Cir. 1992) (no Ninth Amendment right to be free from environmental harm due to radioactive waste); *Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1970) (declining "to elevate to a constitutional level" a claimed right to be protected from unnecessary and unreasonable environmental degradation and destruction); *S.F. Chapter of A. Philip Randolph Inst. v. EPA*, 2008 WL 859985, at *6-7 (N.D. Cal. Mar. 28, 2008) ("Plaintiffs also allege deprivation of the right to be free of climate change pollution, but that right is not protected by the Fourteenth Amendment either."); *MacNamara v. Cnty. Council of Sussex Cnty.*, 738 F. Supp. 134, 142-43 (D. Del. 1990), *aff'd* 922 F.2d 832 (3d Cir. 1990); *Sequoyah v. Tenn. Valley Auth.*, 480 F. Supp. 608, 611 (E.D. Tenn. 1979), *aff'd*, 620 F.2d 1159 (6th Cir. 1980) ("[T]he Ninth Amendment grants no substantive rights to [environmental] plaintiffs"); *Upper W. Fork Watershed Assoc. v. Corps of Eng'rs, U. S. Army*, 414 F. Supp. 908, 931-32 (N.D. W.Va. 1976) *aff'd sub nom. Upper W. Fork River Watershed Ass'n v. Corps of Eng'rs, U.S. Army*, 556 F.2d 576 (4th Cir. 1977) ("[C]laims about environmental degradation cannot be elevated to Constitutional levels"); *Pinkney v. Ohio Envtl. Prot. Agency*, 375 F. Supp. 305, 310 (N.D. Ohio 1974) ("[T]he Court has not found a guarantee of the fundamental right to a healthful environment implicitly or explicitly in the Constitution.  Therefore, in light of the prevailing test of a fundamental right, the Court is unable to rule that the right to a healthful environment is a fundamental right under the Constitution."); *Hagedorn v. Union Carbide Corp.*, 363 F. Supp. 1061, 1064-65 (N.D. W. Va. 1973); *Tanner v. Armco Steel Corp.*, 340 F. Supp. 532, 537 (S.D. Tex. 1972) ("[N]o legally enforceable right to a healthful environment, giving rise to an action for damages, is guaranteed by the Fourteenth Amendment or any other provision of the Federal Constitution.").

[10] Because Plaintiffs' substantive due process claims regarding the Energy Policy Act and DOE/FE Order No. 3041 are derivative of Plaintiffs' larger claim of a constitutional right to be free of climate change that is violated by Defendants' aggregate acts, *see* Am. Compl. ¶¶ 288-91, those claims must also be dismissed.

**B.      Plaintiffs Are Not A Discrete Minority And Have No Equal Protection Claim.**

Plaintiffs also allege that Defendants' acts, in the aggregate, are an equal protection violation.  Am. Compl. ¶ 291.  Plaintiffs claim that Defendants' acts have "denied Plaintiffs the same protection of fundamental rights afforded to prior and present generations of adult citizens," and that because "fundamental rights are at stake and are being infringed by the affirmative aggregate acts of Defendants, this Court must apply strict scrutiny for a denial of equal protection of the law."  *Id.* ¶ 292.  Plaintiffs also claim that they are a separate and insular minority for purposes of equal protection analysis, because "Defendants have a long history of deliberately discriminating against children and future generations in exerting their sovereign authority over our nation's air space and federal fossil fuel resources for the economic benefit of present generations of adults."  *Id.* ¶ 294.  Similarly, Plaintiffs allege, "Future generations do not have present political power or influence" and thus are an insular minority for purposes of equal protection analysis.  *Id.* ¶ 295.  Because Plaintiffs include "citizens presently below the voting age and future generations, this Court should determine they must be treated as protected classes."  *Id.* ¶ 297.

Plaintiffs' assertions lack any basis in law.  First, as noted above, the right to be free of $CO_2$ emissions is not a fundamental right deeply rooted in the Nation's tradition and history. *Supra* at 20-22.  "It is not the province of this Court to create substantive constitutional rights in the name of guaranteeing equal protection of the laws."  *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33 (1973).  Accordingly, where a legislative or executive act does not impair a fundamental right protected by the Constitution, there is no occasion to "depart[] from the settled mode of constitutional analysis . . . involving questions of economic and social policy," which is to defer to a legislature's rational choices unless the act impacts a protected class.  *Id.*

Even taking Plaintiffs' allegations as true, Defendants' acts do not impact a protected class. Young people—whether defined as children below the age of majority, or young adults—are not a suspect class for equal protection purposes, at least as pertains to climate change. Courts have several times rejected attempts to constitutionalize environmental policy choices, including claims brought under the Fifth and Fourteenth Amendments. *See supra* at 21 n.9. More specifically, "[n]o cases have ever held . . . that children are a suspect class." *Cunningham v. Beavers*, 858 F.2d 269, 273 (5th Cir. 1988). In fact, courts regularly apply rational basis scrutiny to classifications based on youth or infancy. *See, e.g.*, *Douglas v. Hugh A. Stallings, M.D., Inc.*, 870 F.2d 1242, 1246 (7th Cir. 1989) (holding that "statutes which classify on the basis of age are subject only to the minimal rational relationship review"); *Jaffee v. Soc'y of New York Hosp.*, 1999 WL 246747, at *3 (S.D.N.Y. Apr. 27, 1999) (same). And at least one federal appellate court has held that persons between the ages of 18 and 45—an age range that would encompass the non-youth individual plaintiffs—are not a "'discrete and insular' group in need of 'extraordinary protection from the majoritarian political process.'" *Price v. Cohen*, 715 F.2d 87, 93 (3d Cir. 1983) (citation omitted).

The Court should decline Plaintiffs' invitation to create an equal protection claim for climate change impacts available to children or young adults. Plaintiffs are clearly not differently situated from any other person of any age when it comes to the alleged current impacts of climate change. *See supra* at 8-11. Nor have Plaintiffs alleged that they have been shut out of the political or electoral processes in any formal sense, such that they have been deprived of equal protection of the laws. The mere fact that children do not possess the right to vote is not an equal protection violation, *see, e.g.*, *Hill v. Stone*, 421 U.S. 289, 297 (1975), and the "broad array of laws and government programs dedicated to protecting and nurturing

children—combined with the large numbers of voters who are parents or otherwise concerned

about children—belies the argument that children and their needs cannot attract the attention of

the legislature," *Hedgepeth ex rel. Hedgepeth v. Wash. Metro. Area Transit Auth.*, 386 F.3d

1148, 1155 (D.C. Cir. 2004) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432,

445 (1985)).  To Defendants' knowledge, no court has ever recognized a constitutional claim

based on the expectation that a group of young plaintiffs (even less, unborn plaintiffs) will

confront an acute social problem during their expected lifetimes.  There is a ripeness issue

implicit in any such claim; further, this absence no doubt reflects the recognition that youth

eventually become political decision makers, empowered to confront those problems.  *Id*. at 1154

("Youth is . . . far less 'immutable' than old age: minors mature to majority and literally outgrow

their prior status.").  In fact, Plaintiffs' allegations indicate that they already engage in political

activism advocating for their preferred policy outcomes, and several have had opportunities to

press their concerns to policy makers.[11]  That Plaintiffs have not yet succeeded in enacting their

preferred policies through the normal mechanisms of democratic decision making does not give

rise to an equal protection claim.  *See City of Mobile, Ala. v. Bolden*, 446 U.S. 55, 77 (1980) (the

"right to equal participation in the electoral process does not protect any 'political group,'

however defined, from electoral defeat").  "Any minority can be said to be powerless to assert

---

[11] *See, e.g.*, Am. Compl. ¶ 16 (Plaintiff "walked 1,600 miles from Nebraska to
Washington D.C. in the Great March for Climate Action to raise awareness about the climate
crisis"); ¶ 20 (since the age of six, Plaintiff "has advocated for reductions in $CO_2$ emissions
before local, state, federal, and international governmental bodies, including three speeches
before the United Nations, and [serves] on the Presidential Youth Council to advise the President
of the United States"); ¶ 30 (Plaintiff "has taken individual action to try to protect the climate
system by . . . lobbying his state legislators to pass comprehensive climate legislation"); ¶ 44
(Plaintiff "has been involved in both local and state initiatives to raise awareness about climate
change and advocate for science-based $CO_2$ emission reductions"); ¶ 53 (Plaintiff "started a
petition asking the city of Beaverton to adopt a resolution to lower the city's carbon emissions").

direct control over the legislature," but that does not justify heightened scrutiny under the Fifth and Fourteenth Amendments. *Cleburne Living Ctr.*, 473 U.S. at 445. The Court should reject Plaintiffs' equal protection claim, whatever its asserted basis.[12]

      **C.**    **The Ninth Amendment Guarantees No Substantive Rights.**

Plaintiffs also allege that Defendants have infringed on their unenumerated right to a stable climate system in violation of the Ninth Amendment. Am. Compl. ¶¶ 302-06. But "[t]he [N]inth [A]mendment has never been recognized as independently securing any constitutional right." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986). Rather, it is "a rule of construction" that does not give rise to individual rights. *United States v. Bifield*, 702 F.2d 342, 349 (2d Cir. 1983); *see also Clynch v. Chapman*, 285 F. Supp. 2d 213, 219 (D. Conn. 2003) (dismissing Ninth Amendment cause of action for failure to state a claim). So while the Ninth Amendment may provide the basis for recognition of unenumerated rights, which themselves may be enforceable under the Fifth or Fourteenth Amendments, the Ninth Amendment itself secures no substantive right. *See Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991) (dismissing claim on the ground that "the [N]inth [A]mendment does not confer substantive rights in addition to those conferred by other portions of our governing law"); *DeLeon v. Little*, 981 F. Supp. 728, 734 (D. Conn. 1997) (holding that "'the [Ninth Amendment] does not guarantee any constitutional right'") (quotation omitted); *Mann v. Meachem*, 929 F. Supp. 622, 634 (N.D.N.Y. 1996) ("The Ninth Amendment is recognized as a rule of construction and does

---

[12] Because Plaintiffs' equal protection claims regarding the Energy Policy Act and DOE/FE Order No. 3041 are derivative of Plaintiffs' larger claim that Defendants' aggregate acts are an equal protection violation, *see* Am. Compl. ¶¶ 298-301, those equal protection claims must also be dismissed.

not protect any specific right") (citation omitted).  Since Plaintiffs have failed to state any claim

under the Fifth or Fourteenth Amendments, this claim must also be dismissed.

> **D.      Defendants' Acts Have A Rational Basis.**

Because the challenged acts and omissions of Defendants do not implicate a fundamental

right or impact a suspect class, the Court must apply rational basis review and afford those acts a

strong presumption of validity.  *See FCC v. Beach Cmmc'ns*, 508 U.S. 307, 313 (1993).

Evidentiary support is not required; this Court must uphold Defendant's acts "if there is any

*reasonably conceivable* state of facts that could provide a rational basis" for them.  *Id*. at 315

(emphasis added).  What is more, those attacking the rationality of legislative acts have the

burden "'to negative every conceivable basis which might support [them].'"  *Id*. (quoting

*Lehnhausen v. Lake Shore Auto Parts Co*., 410 U.S. 356, 364 (1973)).  Plaintiffs cannot meet

that burden, and their allegations do not even make the attempt.  The federal government clearly

has an interest in shaping greenhouse gas mitigation policies given their intricate

interdependence with the nation's broader energy generation landscape.  *See supra* at 21 n.9.

That interest is more than enough to justify Defendants' strong efforts to reduce the Nation's

carbon emissions through regulations promulgated under various statutes and related regulating

and permitting regimes while ensuring continued access to affordable, reliable energy sources.

## III.    This Court Lacks Jurisdiction Over Public Trust Doctrine Suits, Which Arise Under State Law.

Finally, Plaintiffs allege that they are "beneficiaries of rights under the public trust

doctrine, rights that are secured by the Ninth Amendment and embodied in the reserved powers

doctrines of the Tenth Amendment and the Vesting, Nobility, and Posterity Clauses of the

Constitution."  Am. Compl. ¶ 308.  Plaintiffs claim that Defendants have "alienated substantial

portions of the atmosphere in favor of the interests of private parties so that these private parties

can treat our nation's atmosphere as a dump for their carbon emissions." *Id.* ¶ 310.  This claim

must be also be dismissed under Rule 12(b)(6).

The public trust doctrine has its roots in English common law.  *See PPL Montana, LLC v.*

*Montana*, --- U.S. ----, 132 S. Ct. 1215, 1234 (2012).  The classic statement of the public trust

doctrine was articulated in *Illinois Central Rail Company v. Illinois*, 146 U.S. 387 (1892).  The

Supreme Court there found that the Illinois legislature did not have authority to vest the State's

title to a portion of the navigable waters of Lake Michigan in a private party.  The attempted

transfer was beyond the authority of the legislature since it amounted to abdication of its

obligation to regulate, improve, and secure submerged lands for the benefit of every individual.

*Id*. at 453-60.

In cases decided both before and after *Illinois Central*, the Supreme Court has steadfastly

and without exception treated the public trust doctrine as a matter of state law, not federal law.

*See PPL Montana*, 132 S. Ct. at 1235 ("the public trust doctrine remains a matter of state law"

and its "contours . . . do not depend upon the Constitution"); *Idaho v. Coeur d'Alene Tribe*, 521

U.S. 261, 285 (1997); *Phillips Petrol. Co. v. Mississippi*, 484 U.S. 469, 475 (1988); *Appleby v.*

*City of New York*, 271 U.S. 364, 395 (1926); *Long Sault Dev. Co. v. Call*, 242 U.S. 272, 278-79

(1916); *Shively v. Bowlby*, 152 U.S. 1, 57-58 (1894).  The Ninth Circuit has done the same.

*United States v. 32.42 Acres of Land, More or Less, Located in San Diego Cnty., Cal.*, 683 F.3d

1030, 1037–38 (9th Cir. 2012) (relying on *PPL Montana* in holding that "the contours of [the

public trust doctrine] are determined by the states, not by the United States Constitution").

Furthermore, in *Alec L. ex rel. Loortz v. McCarthy*, litigated by several of Plaintiffs' counsel, the

U.S. Court of Appeals for the District of Columbia Circuit rejected the precise claims Plaintiffs

bring here.  561 F. App'x 7, 8 (D.C. Cir.) (per curiam), *cert. denied*, 135 S. Ct. 774 (2014).

Noting that there is no case "standing for the proposition that the public trust doctrine—or claims based upon violations of that doctrine—arise under the Constitution or laws of the United States," the D.C. Circuit held that the Supreme Court had "categorically rejected . . . without qualification or reservation" any claim that there was a federal public trust doctrine. *Id*. On that basis, the D.C. Circuit affirmed the district court's Rule 12 dismissal of plaintiff's claim that there was a public trust duty to prevent $CO_2$ emissions into the atmosphere. *Id*. This Court should reach the same conclusion.

## CONCLUSION

Considering the foregoing, Plaintiffs' claims must be dismissed for lack of Article III standing under Rule 12(b)(1) or alternatively for failure to state a claim under Rule 12(b)(6).

Respectfully submitted this 17th day of November, 2015.

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division

*/s/ Justin A. Torres*
JUSTIN A. TORRES
Trial Attorney, D.C. Bar No. 1003136
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0874
Fax: (202) 305-0506
justin.torres@usdoj.gov

*Attorneys for Federal Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 10,029 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

<u>/s/ *Justin A. Torres*</u>
JUSTIN A. TORRES

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of November, 2015, a copy of the foregoing Federal Defendants' Memorandum of Points and Authorities in Support of the Motion to Dismiss was filed via the Court's electronic case filing (ECF) system, which will send notice to all counsel of record.

/s/ *Justin A. Torres*
JUSTIN A. TORRES