JULIA A. OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
WILD EARTH ADVOCATES
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

JOSEPH W. COTCHETT
jcotchett@cpmlegal.com
PHILIP L. GREGORY (*pro hac vice*)
pgregory@cpmlegal.com
PAUL N. MCCLOSKEY
pmccloskey@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577

DANIEL M. GALPERN (OR Bar 061950)
dan.galpern@gmail.com
LAW OFFICES OF DANIEL M. GALPERN
1641 Oak Street
Eugene, OR 97401
Tel: (541) 968-7164

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**; **XIUHTEZCATL TONATIUH M.**, through his Guardian Tamara Roske-Martinez; et al. | Case No.: 6:15-cv-01517-TC |
| **Plaintiffs**, | PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO INTERVENE |
| v. | Request for Oral Argument |
| The **UNITED STATES OF AMERICA**; | |

**Plaintiffs' Response in Opposition to Motion to Intervene**

**BARACK OBAMA**, in his official capacity as
President of the United States; et al.,

**Federal Defendants**.

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................1

LEGAL ARGUMENT ............................................................................................4

    I.       THE PETRO ASSOCIATIONS DO NOT MEET THE NINTH CIRCUIT
            INTERVENTION TEST FOR FEDERAL RULE OF CIVIL PROCEDURE 24(A)..4

          A.     The Petro Associations Do Not Have a Significantly
                Protectable Interest Relating to the Property or Transaction
                Which Is the Subject of this Action...............................................5

          B.     The Disposition of this Action Will Not Impair or Impede the
                Petro Associations' Ability to Protect Their Interests .............10

          C.     The Petro Associations' Interests Will be Adequately
                Represented by Federal Defendants ..........................................12

    II.      THE PETRO ASSOCIATIONS ARE NOT ENTITLED TO PERMISSIVE
            INTERVENTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE
            24(B) ....................................................................................................15

    III.    IF INTERVENTION IS GRANTED, THIS COURT SHOULD LIMIT
            INTERVENORS' PARTICIPATION TO THE REMEDY PHASE OF THIS
            ACTION, TO ISSUES NOT RAISED BY FEDERAL DEFENDANTS, AND TO
            LIMITED BRIEFING...............................................................................18

CONCLUSION .....................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arakaki v. Cavetano,*
    324 F.3d 1078 (9th Cir. 2003) ...................................................................6, 13

*Bark v. Northrop,*
    No. 3:13-CV-01267-HZ, 2013 WL 6576306 (D. Or. Dec. 12, 2013) ...........................19

*California ex rel. Lockyer v. United States,*
    450 F.3d 436 (9th Cir. 2006) ...................................................................5, 6

*Cascadia Wildlands v. BLM,*
    No. 6:12-cv-95-AA, 2012 U.S. Dist. LEXIS 190227 (D. Or. Apr. 25, 2012)................6

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
    647 F.3d 893 (9th Cir. 2011) .................................................................12, 13

*Ctr. for Biological Diversity v. U.S. EPA,*
    No. 2:13-cv-01866-JLR (W.D. Wash. Feb. 18, 2014) .....................................3

*Ctr. for Biological Diversity v. U.S. EPA,*
    No. C09-0670-JCC (W.D. Wash. Oct. 5, 2009) ........................................3, 16

*Dep't of Fair Emp't & Housing v. Lucent Techs., Inc.,*
    642 F.3d 728 (9th Cir. 2011) ...................................................................18

*Donaldson v. United States,*
    400 U.S. 517 (1970) ...........................................................................10

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir. 1998) ..............................................................5, 6, 16

*Flying J, Inc. v. J.B. Van Hollen,*
    578 F.3d 569 (7th Cir. 2009) ...................................................................5

*Freedom from Religion Found., Inc. v. Geithner,*
    644 F.3d 836 (9th Cir. 2011) ...........................................................*passim*

*Greene v. United States,*
    996 F.2d 973 (9th Cir. 1993) ................................................................5, 11

*In re Lease Oil Antitrust Litigation,*
    570 F.3d 244 (5th Cir.2009) ....................................................................5

*ManaSota-88, Inc. v. Tidwell,*
    896 F.2d 1318 (11th Cir. 1990) .................................................................9

*Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.,*
    72 F.3d 361 (3d Cir.1995) ......................................................................5

*Perry v. Proposition 8 Official Proponents,*
    587 F.3d 947 (9th Cir. 2009) .......................................................................16, 17

*Portland Audubon Soc'y v. Hodel,*
    866 F.2d 302 (9th Cir. 1989) .................................................................................5

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v.*
*U.S. Dep't of Agric.,*
    143 Fed. Appx. 751 (9th Cir. 2005) ......................................................................6

*Reich v. ABC/York-Estes Corp.,*
    64 F.3d 316 (7th Cir.1995) ....................................................................................5

*Sierra Club v. U.S. EPA,*
    995 F.2d 1478 (9th Cir. 1993) .......................................................................passim

*So. Cal. Edison Co. v. Lynch,*
    307 F.3d 794 (9th Cir. 2002) .................................................................................7

*State of Montana v. United States EPA,*
    137 F.3d 1135 (9th Cir. 1998) ...............................................................................5

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) .................................................................................6

*U.S. v. City of Los Angeles,*
    288 F.3d 391 (9th Cir. 2002) .................................................................................4

*United States v. City of Los Angeles,*
    288 F.3d 391 (9th Cir. 2002) ...............................................................................13

*United States v. Oregon,*
    839 F.2d 635 (9th Cir. 1988) ...............................................................................11

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.,*
    922 F.2d 92 (2d Cir. 1990) ....................................................................................5

*Wilderness Soc'y v. U.S. Forest Serv.,*
    630 F.3d 1173 (9th Cir. 2011) ...........................................................................4, 5

## STATUTES

**Federal Rule of Civil Procedure**

12(b)(6) ...............................................................................................................14

24(a) .................................................................................................................1, 4

24(b) ...............................................................................................................1, 15

## INTRODUCTION

This Court should deny the motion to intervene filed by the American Fuel & Petrochemical Manufacturers ("AFPM"), American Petroleum Institute ("API"), and National Association of Manufacturers ("NAM"), (collectively the "Petro Associations" or "Proposed Intervenors"). Proposed Intervenors have not established any significantly protectable interests that will be impaired by the disposition of this action and are, therefore, not entitled to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a). Further, the Petro Associations have failed to overcome the presumption of adequate representation by Federal Defendants. For similar reasons, and to ensure the efficient and fair resolution of these constitutional claims, this Court should not permissively allow the Petro Associations to intervene pursuant to Federal Rule of Civil Procedure 24(b).

At the outset, the Petro Associations mischaracterize the Amended Complaint, asserting the claims for relief are focused on the federal public trust doctrine. The federal public trust doctrine claim is but one of four claims brought by Youth Plaintiffs. The Amended Complaint was filed by 21 youth, Dr. James Hansen on behalf of future generations, and Earth Guardians, a youth-run, non-profit organization with youth members across the country (collectively the "Youth Plaintiffs"). Am. Compl. ¶¶ 16-97. Youth Plaintiffs challenge Federal Defendants' aggregate acts, which through their exercise of sovereign authority over our country's atmosphere and fossil fuel resources, permit, subsidize, lease, and otherwise allow continued exploitation, production, and combustion of fossil fuels, resulting in a knowingly dangerous rise of atmospheric carbon dioxide ("$CO_2$") concentrations to levels unprecedented in human history, and an increasingly hazardous destabilization of the climate system during the lifetimes of Youth Plaintiffs. Am. Compl. ¶ 5. Youth Plaintiffs also challenge approval by the Defendant Department of Energy ("DOE") of the export of liquefied natural gas ("LNG") from the Jordan Cove LNG terminal in Coos Bay, Oregon, and the Energy

Policy Act, which mandated that DOE approval. Am. Compl. ¶¶ 1, 105, 107. Youth Plaintiffs claim that federal decision and the aggregate acts by Federal Defendants infringe on their fundamental constitutional rights to due process and equal protection under the law, as well as their reserved inalienable constitutional rights and rights as public trust beneficiaries. Am. Compl. ¶¶ 277-310.

Youth Plaintiffs seek an order declaring their fundamental rights and the infringement thereof, and compelling Federal Defendants to prepare a national emissions inventory and plan to reduce atmospheric $CO_2$ so as to remediate Federal Defendants' infringement of Youth Plaintiffs' rights. Am. Compl., Prayer for Relief. Thus, the remedy sought would leave the details of U.S. energy policy and planning in the hands of the executive and legislative branches, not the judiciary, while ensuring protection of the constitutional and public trust rights of Youth Plaintiffs.

The Petro Associations' alleged interests appear to be attenuated at best, and exist solely at the remedy stage of this case: assuming this Court declares the Youth Plaintiffs' constitutional rights have been infringed and orders a national remedial plan by Federal Defendants, Proposed Intervenors assert such a plan would eventually result in "dramatic reductions in conventional fossil fuels," thereby impairing the economic expectancy of members of the Petro Associations, whose central business concern is producing and selling profitable fossil fuel related products. Moutray Decl. ¶ 17; *see also* Feldman Decl. ¶ 14; Friedman Decl. ¶ 16. The Petro Associations' allegations are not supported by qualified expert testimony or the testimony of a single member of any of the three associations. Thus, at this stage, there is no evidence before this Court that any court-ordered national remedial plan would necessarily impair any alleged legally protectable interests of members of the Petro Associations.

While Youth Plaintiffs believe that this Court will promptly order a national remedial plan, no such plan has been ordered. Further, at this point in the litigation, neither Youth Plaintiffs, Federal Defendants, the Petro Associations, nor this Court

know what measures the national remedial plan will address. The Petro Associations have no interests in determining whether Youth Plaintiffs have rights vis-à-vis Federal Defendants. Thus, Proposed Intervenors' interests, if legally protectable, would not be impaired until this Court determines the scope of the constitutional rights, declares a violation thereof, and orders a remedial plan consistent with the Court's ruling. To the extent intervention is appropriate, it will be at the remedial phase of this case, and not before.

The Petro Associations' interest is contingent upon the occurrence of a train of subsequent events. If this Court grants Youth Plaintiffs' prayer for relief and Federal Defendants propose a national remedial plan, at that point, specific members of the Petro Associations will be able to provide evidence of their own damage or impairment from the remedial plan unfolding in response to this Court's order. Until then, there is no immediate harm to any alleged interests of the Petro Associations' members at this stage of this litigation, and the Petro Associations have failed to overcome the <u>presumption of adequate representation</u> by Federal Defendants. *See Ctr. for Biological Diversity v. U.S. EPA*, No. C09-0670-JCC (W.D. Wash. Oct. 5, 2009) (denying intervention by the American Petroleum Institute, the U.S. Chamber of Commerce, the Utility Water Act Group, and the Utility Air Regulatory Group) (order attached as Exhibit A to Decl. of Julia A. Olson in Support of Youth Plaintiffs' Opposition to the Petro Associations' Motion to Intervene ("Olson Decl.")); *Ctr. for Biological Diversity v. U.S. EPA*, No. 2:13-cv-01866-JLR (W.D. Wash. Feb. 18, 2014) (denying intervention by the American Petroleum Institute and Western States Petroleum Association) (order attached as Exhibit B to Olson Decl.). Therefore, intervention should be denied.

# LEGAL ARGUMENT

I. **THE PETRO ASSOCIATIONS DO NOT MEET THE NINTH CIRCUIT INTERVENTION TEST FOR FEDERAL RULE OF CIVIL PROCEDURE 24(A)**

Absent a federal statute granting a right to intervene, a moving party has the burden to establish "an interest relating to the property or transaction that is the subject of the action" and that it "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). The Ninth Circuit applies a four-part test to determine whether a party can intervene as of right pursuant to Rule 24(a):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). The burden is on the Petro Associations to demonstrate all four prongs. *U.S. v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002); *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011). Although the Petro Associations' motion to intervene is timely, they fail to meet the other three prongs of the Ninth Circuit test to intervene as of right: the Petro Associations fail to claim a "significantly protectable" interest relating to the "property or transaction which is the subject of the action"; fail to show the disposition of this action will not impair or impede their ability to protect their interests; and, finally, the Petro Associations fail to show their interests are inadequately represented by the parties.

### A. The Petro Associations Do Not Have a Significantly Protectable Interest Relating to the Property or Transaction Which Is the Subject of this Action

The Ninth Circuit only grants intervention as of right where the litigation will have a direct effect on the applicant's alleged interest. *See, e.g. Sierra Club, v. U.S. EPA*, 995 F.2d 1478, 1481-82 (9th Cir. 1993); *Portland Audubon Soc'y v. Hodel*, 866 F.2d 302, 309 (9th Cir. 1989). A movant has a significantly protectable interest in an action only if "(1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). "Interest" is not defined by statute, but courts have made clear that more than the minimum Article III interest is required, and mere "economic interest" is not enough. *See State of Montana v. United States EPA,* 137 F.3d 1135, 1142 (9th Cir. 1998) ("a speculative and purely economic interest does not create a protectable interest in litigation concerning a statute that regulates environmental, not economic, interests"); *Flying J, Inc. v. J.B. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009) (party's creditors may have an "economic interest" in the outcome but that would not entitle them to intervene); *In re Lease Oil Antitrust Litigation*, 570 F.3d 244, 250-52 (5th Cir.2009); *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc*., 72 F.3d 361, 366 (3d Cir.1995); *Reich v. ABC/York-Estes Corp*., 64 F.3d 316, 322-23 (7th Cir.1995); *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993). A movant "demonstrate[s] a sufficient interest for intervention of right . . . if 'it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y*, 630 F.3d at 1180 (quoting *California ex rel. Lockyer*, 450 F.3d at 441). An interest that is contingent upon the occurrence of a train of subsequent events will not support intervention. *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.,* 922 F.2d 92, 97 (2d Cir. 1990).

Although the Petro Associations assert their members have protectable interests

that could be affected by this action (primarily an economic expectancy of commercial interests in exploiting fossil fuels and using low-cost, subsidized energy produced from fossil fuels), none of the interests identified in the Moutray, Friedman, or Feldman declarations is protected under law or related to "the property or transaction which is the subject of this action." All of the Petro Associations' asserted interests are so tenuous, generally alleged, and unrelated to the present action that they do not rise to the level of a "significantly protectable interest." For example, none of the members of the Petro Associations asserts that they have any permits or contracts that would be directly affected by this case. *See Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 820 (9th Cir. 2001) (finding "[c]ontract rights are traditionally protectable interests"); *Sierra Club*, 995 F.2d at 1482-83 (finding Clean Water Act pollution permits affecting the use of real property to be significant protectable interests); *Cascadia Wildlands v. BLM*, No. 6:12-cv-95-AA, 2012 U.S. Dist. LEXIS 190227, 5-6 (D. Or. Apr. 25, 2012) (finding a legally protected interest where applicant had purchased an interest in timber that was the subject of the suit). The Petro Associations' alleged interests all relate to their members' fears of sometime in the future needing to use alternative energy sources, reshape their fossil-fuel related businesses, or shut down operations. Memo. in Support of Mot. to Intervene ("Petro Memo.") 3. However, "pure economic expectancy is not a legally protected interest for the purpose of intervention." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.,* 143 Fed. Appx. 751, 753 (9th Cir. 2005).

The Petro Associations have failed to show their members "will suffer a practical impairment of [their] interests as a result of the pending litigation." *California ex rel. Lockyer*, 450 F.3d at 441. They fail to show the resolution of Youth Plaintiffs' claims "actually will affect" the members of the Petro Associations. *Arakaki v. Cavetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (quoting *Donnelly,* 159 F.3d at 410).

The purported interests of the Petro Associations' members are based on

speculation. Moutray Decl. ¶ 17 ("these companies will presumably need to find new lines of business in order to survive and/or move their operations."). The Petro Associations rely on a chain of events that may or may not occur at some point in the future, with no specific connection between the present action and the supposed end result. For example, the Petro Associations argue their energy costs will increase in the absence of fossil fuels, but they provide no foundation or expert testimony establishing that clean and renewable energy cannot be as cost-effective as fossil fuel energy. Friedman Decl. ¶¶ 10, 17. President and CEO of API, Jack Gerard, has in fact admitted in a press release on the API website that: "The facts are clear . . . By embracing our nation's energy renaissance, we can lower costs, clean the air, and create more jobs here at home while providing an example to the world." Olson Decl. Ex. C. Indeed, Proposed Intervenors admit that even with cheap fossil fuel energy, they suffered economic losses during the recession, which damage had nothing to do with this case. Moutray Decl. 12. In the absence of expert testimony by the Petro Associations establishing direct economic impact to members' legally protectable interests from rising energy prices due to declining GHG emissions directly resulting from this case, and in light of the contrary statements made by API's President that an energy renaissance (away from GHG emissions) would actually lower costs and create more jobs at home, this Court should find that the Petro Associations do not have a significantly protectable interest. *So. Cal. Edison Co. v. Lynch,* 307 F.3d 794, 803 (9th Cir. 2002) (rejecting interests of energy purchasers as legally protected interests because "an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention of right"). The Petro Associations, therefore, cannot intervene as of right in this case.

Additionally, the Petro Associations assert: "Plaintiffs' requested remedy apparently provides no opportunity for public input before the court would issue an injunction to compel the executive agencies to act." Petro Memo. 8. They also claim the

relief requested by Youth Plaintiffs would deprive members of the Petro Associations of their rights under the Administrative Procedure Act ("APA") to participate in the development of a regulatory plan. Petro Memo. 13.

The federal judiciary is not required to seek advisory, public input before ruling on questions of constitutional and public trust law and enjoining federal action. This Court can issue such a decision without the Petro Associations' participation. The Petro Associations are also wrong that their members would lose their ability to be part of the public process in the formation of any future regulatory action. The declaratory and injunctive relief requested by Youth Plaintiffs will not practically impair any of movant's purported interests, nor deprive movants of their participatory rights under the APA or in lobbying Congress. Youth Plaintiffs do not ask this Court to circumvent any requirements of the APA. All relief requested relates only to the requirements of Federal Defendants in meeting their constitutional and fiduciary obligations to Youth Plaintiffs. Proposed Intervenors have not shown why any relief requested by Youth Plaintiffs would violate the APA. Moreover, there is no evidence that Youth Plaintiffs' requested relief would infringe upon any proprietary or other interests of the Petro Associations, including any permits or contracts held by members of the Petro Associations. Should a particular member find itself to be the subject of a future government regulation, the appropriate venue to address that issue would be through the administrative rulemaking or permitting process, as the Petro Associations frequently do on behalf of their members.

In 2014, the Petro Associations incurred **$26.45 million** in lobbying expenditures; in 2015, the Petro Associations have thus far incurred **$23.91 million** in lobbying expenditures. Olson Decl. Ex. D. Such lobbying activity has ensured these Federal Defendants are well aware of the concerns and interests of the Petro Associations and their members. The Petro Associations admit they have incredible influence on both the legislative and executive branches of the federal government and their lobbying efforts

have led to a national policy in line with their beliefs and desires. *See* Olson Decl. Ex. E (NAM President and CEO stating, "[w]e helped force the EPA to delay its ozone and Boiler MACT rules that would cost manufacturers billions, make it even harder to create jobs in the US and threaten to wipe out entire industries in our country altogether."). The Petro Associations have ample opportunity to ensure their members' voices are heard by Federal Defendants, and will continue to be so. If Federal Defendants are required to develop a remedial plan pursuant to an order of this Court, the Petro Associations will not lose any opportunity to ensure their members' voices will be heard.

The Petro Associations point to *Sierra Club v. EPA* as support for their position that their asserted interests are significantly protectable. Petro Memo. 12. Despite citing selectively to *dicta* purporting to support their position, *Sierra Club v. EPA* does not stand for such a proposition. In *Sierra Club v. EPA*, the City of Phoenix sought to intervene in a case where a plaintiff was suing an agency of the federal government under the citizen suit provision of the Clean Water Act. *Sierra Club*, 995 F.2d at 1480. The relief sought *required* the federal agency to alter the terms of two specific permits issued to the City of Phoenix. *Id*. The Ninth Circuit ultimately found the City of Phoenix had a significantly protectable interest because it held the federal permits that the plaintiff was directly seeking to alter in its action against the federal agency. *Id*. at 1482-83. In the instant case, there is no evidence that such federal permits are at issue and the Petro Associations cite to no real property owned by members that would suffer a change in use resulting directly from this litigation. The relief sought by Youth Plaintiffs, in contrast to *Sierra Club*, does not have any direct impact on the Petro Associations or their members because Plaintiffs have not asked this Court to shut down, regulate, or limit the emissions of any particular industry. The Eleventh Circuit rejected a similar argument by Florida Electric Power Coordinating Group in *ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318 (11th Cir. 1990):

> Although [the applicant intervenor] contends that the relief requested

could have a profound impact upon the environmental obligations of its member electric utilities, such a generalized grievance does not impart to [the applicant intervenor] the kind of legally protectable interest in the . . . litigation necessary to support intervention as of right.

*Id.* at 1322.

In *Sierra Club*, the court also discussed the genesis of the protectable interest doctrine and traced it to the U.S. Supreme Court decision in *Donaldson v. United States*, 400 U.S. 517 (1970). *Sierra Club*, 995 F.2d at 1482. In *Donaldson*, an individual sought to intervene in a case enforcing a summons to acquire tax information about the proposed intervenor from the proposed intervenor's employer. *Donaldson*, 400 U.S. at 518-21. The Supreme Court found, although the proposed intervenor had an interest in the tax information retained by the employer, it was not a protectable interest because the records belonged to the employer, not to the proposed intervenor. *Id*. at 530-31. Because the proposed intervenor did not have a protectable interest in the tax records, the individual could not intervene as of right. *Id*. In the instant case, as in *Donaldson*, the Petro Associations do not establish a significantly protectable interest in the subject matter of the action. The subject matter of this action is Federal Defendants' constitutional and public trust obligations towards Youth Plaintiffs' rights to life, liberty, property, and public trust resources and the specific and aggregate acts of Federal Defendants that infringe on those rights. Accordingly, the Petro Associations should not be able to intervene as of right.

**B.    The Disposition of this Action Will Not Impair or Impede the Petro Associations' Ability to Protect Their Interests**

Youth Plaintiffs maintain the Petro Associations do not have a significantly protectable interest sufficient to establish intervention as of right. However, even were this Court to find that the Petro Associations hold such an interest, the Petro Associations' ability to protect those interests will not be impaired or impeded by the disposition of this action. As discussed in Section I-A above, any potential impacts on interests held by the Petro Associations members as a result of Plaintiffs' requested

relief are too tenuous, speculative, and indirect to give the Petro Associations the ability to intervene as of right. This tenuousness is exemplified by the Petro Associations' inability to state the specific property interest that would be harmed by this action or the specific amounts of such economic injury. Additionally, the declaratory and injunctive relief sought by Plaintiffs is directed solely at Federal Defendants, and will not directly impact any interests of the Petro Associations' members.

The Petro Associations' own argument fails to meet the standard it developed and urged this Court to adopt. To satisfy the "impaired interest" prong of the intervention as of right test, the Petro Associations define the applicable standard as one where "the relief sought by the Plaintiffs would have direct, immediate, and harmful impact on a third party's interests . . . ." Petro Memo. 14. As discussed in Section I-A above, even if Youth Plaintiffs obtain all of their requested relief, the Petro Associations still will not have met their evidentiary burden that the relief would have a "direct, immediate, or harmful impact" on the Petro Associations' interests.

The Petro Associations must show the required impairment is present by establishing the pending action could result in factual or legal determinations that would have a *stare decisis* effect on the intervenor's interest or available remedies in other litigation. *United States v. Oregon*, 839 F.2d 635, 638-39 (9th Cir. 1988); *Greene v. United States*, 996 F.2d 973, 977-78 (9th Cir. 1993). In this case, any factual or legal determinations will not have such a limiting effect on the Petro Associations or their members. A decision addressing whether Youth Plaintiffs' fundamental constitutional and public trust rights exist and are being violated by Federal Defendants and what obligations the federal government has to protect those rights will, in no way, have "direct, immediate and harmful impacts" on the Petro Associations' interests. Furthermore, any significantly protectable interests by the Petro Associations will not be impaired as a result of a *stare decisis* effect on future litigation involving the Petro Associations. The Petro Associations failed to meet their burden of proving such harm.

Youth Plaintiffs' request an order that Federal Defendants develop and implement a plan to reduce atmospheric $CO_2$ and stabilize the climate system on which they depend. This requested injunctive relief does <u>not</u> require any specific action either by or against the Petro Associations or its members. The requested injunctive relief seeks to direct Federal Defendants to decide how to meet its constitutional and public trust obligations and does not direct Federal Defendants to isolate or discriminate against any one business or industry in meeting its obligations. Additionally, there is no evidence before this Court of any specific permits held by the Petro Associations or its members at issue in this case. Because the Petro Associations do not have a proprietary interest in this case, their interests cannot be impaired by its resolution.

### C.  <u>The Petro Associations' Interests Will be Adequately Represented by Federal Defendants</u>

Although the Petro Associations failed to present evidence of any significantly protectable interests that would entitle them to intervene as of right, any purported interests would be adequately represented by Federal Defendants. The Petro Associations have the same ultimate objective as Federal Defendants: to have this case dismissed and prevent this Court from granting Youth Plaintiffs their requested relief. Therefore, it should be <u>presumed</u> Federal Defendants will adequately represent the Petro Associations' interests. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011).

The Petro Associations rely primarily on D.C. Circuit cases to argue inadequate representation. The Ninth Circuit has articulated three factors that must be examined when deciding whether a defendant adequately represents the interests of a proposed intervenor:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a

proposed intervenor would offer any necessary elements to the proceeding
that other parties would neglect.

*Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cavetano*, 324 F.3d

1078, 1086 (9th Cir. 2003)). Furthermore, "[i]f an applicant for intervention and an

existing party share the same ultimate objective, <u>a presumption of adequacy of</u>

<u>representation arises</u>." *Citizens for Balanced Use*, 647 F.3d at 898 (emphasis added). If a

government actor and the proposed intervenor are on the same side, there is <u>a</u>

<u>presumption of adequacy of representation</u>. *United States v. City of Los Angeles*, 288

F.3d 391, 401 (9th Cir. 2002). Such a presumption arises "when the government is

acting on behalf of a constituency that it represents" and not in a situation where it acts

as an employer. *Id*. To overcome such a presumption, the proposed intervenor must

make "a 'very compelling showing to the contrary'" or "it will be presumed that the

state adequately represents its citizens." *Arakaki*, 324 F.3d at 1086 (quoting 7C Wright,

Miller & Kane, § 1909, at 332). If the proposed intervenor and a party to the lawsuit

"share the same ultimate objective, differences in litigation strategy do not normally

justify intervention." *Id*.

The Ninth Circuit upheld a determination that the federal government adequately

represented the interests of a private party in a case involving the interpretation of law.

*Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841-43 (9th Cir. 2011).

In so ruling, the Ninth Circuit noted that, where "the federal defendants have

demonstrated that their ultimate objective is to uphold" a law and a proposed

intervenor's objective is the same, then the federal government will adequately represent

the latter's interests. *Id*. at 841.

This situation is identical. Federal Defendants seek to negate Youth Plaintiffs'

standing, uphold the Energy Policy Act, and deny application of the Constitution and the

public trust doctrine to Youth Plaintiffs' claims, as well as disallow Youth Plaintiffs

their requested relief. The ultimate objectives of the Petro Associations thus mirror those

of Federal Defendants. Furthermore, here, the Petro Associations' contribution to the defense would be duplicative and not well-informed. For instance, in their proposed Motion to Dismiss, the Petro Associations characterize Youth Plaintiffs' case as solely a public trust case, and virtually ignore three of Youth Plaintiffs' claims under the Fifth and Ninth Amendments of the U.S. Constitution. Petro Associations' Memo in Support of Mot. to Dismiss 2-11. In contrast, Federal Defendants seek to dismiss under Fed. R. Civ. P. 12(b)(6) each of Youth Plaintiffs' four claims for relief.

As in *Freedom from Religion Foundation*, Federal Defendants will adequately represent the Petro Associations' interests. As the Petro Associations have previously stated, they have successfully managed through lobbying and financial contributions to help create U.S. policy consistent with the interests of their members. Olson Decl. Exs. D, E. Clearly, Federal Defendants and the Petro Associations have, for a long time, operated on the same side of this issue. The federal government does not need the Petro Associations' financial resources to further buttress Federal Defendants' defense of this case.

Because the objectives and defenses of Federal Defendants and the Petro Associations are identical, all three prongs of the "adequate representation" test support the conclusion that Federal Defendants adequately represent the interests of the Petro Associations:

- Federal Defendants are making the Petro Associations' arguments;
- Federal Defendants are capable and willing to make such arguments; and
- The Petro Associations will not add any necessary elements to the proceeding that Federal Defendants would neglect.

Allowing the Petro Associations to argue the same legal issues only complicates this litigation and diminishes the ability of this Court to efficiently and effectively resolve the issues presented by this action.

The Petro Associations argue their disagreement with the federal government on existing regulatory programs affecting GHG emissions establishes that their interests are not coterminous with Federal Defendants. Whether or not the Petro Associations and Federal Defendants agree on all existing regulations is not the test in this Circuit. The question before this Court is whether their positions are aligned in *this litigation* and whether Federal Defendants will adequately represent their interests in *this litigation*, not in other regulatory processes. The Petro Associations have not made a "compelling showing" to overcome the presumption that Federal Defendants do not adequately represent their interests. Federal Defendants will argue this case adequately. Indeed, the motion to dismiss filed by the Federal Government shows that it will thoroughly challenge the justiciability of the claims and attempt to have the case dismissed in full. Therefore, this Court should not grant intervenor status as a matter of right to the Petro Associations.

## II. THE PETRO ASSOCIATIONS ARE NOT ENTITLED TO PERMISSIVE INTERVENTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24(B)

The Petro Associations should not be granted permissive intervention pursuant to Fed. R. Civ. P. 24(b). Rule 24(b) provides in relevant part: "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). The Ninth Circuit has "often stated that permissive intervention requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found.*, 644 F.3d at 843 (citation omitted). Additionally, "[w]here a putative intervenor has met these requirements, the court may also consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties' . . . [and] 'whether the intervention will unduly delay or prejudice the adjudication of the original parties'

rights.'" *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (citation omitted). Even where the threshold requirements are met, courts can exercise discretion in deciding whether intervention should be allowed. *See, e.g., Donnelly,* 159 F.3d at 412.

Intervention by the Petro Associations would unduly complicate this litigation, open the door to countless corporate intervenors who claim an interest in fossil fuels or fossil fuel emissions,[1] and burden the proceeding with briefing that misconstrues the claims brought by Youth Plaintiffs. As demonstrated above, the Petro Associations do not have any interests that will be directly affected by the resolution of this case. The due process and equal protection claims of Youth Plaintiffs apply only against government actors, and the fiduciary obligation of the trustee under the public trust doctrine pertains only to the federal government. Interpreting the constitutional rights of Youth Plaintiffs and the duties of Federal Defendants will not have any direct impact on the Petro Associations or their members. The Petro Associations summarily contend that they "possess legally protectable interests in their members' economic interests and legal rights in current and future contracts and transactions subject to Plaintiffs' challenge." Petro Memo. 18. However, they have submitted no evidence of any legal rights in any current contracts or transactions that would be directly and adversely impacted by this litigation. Thus, there is no independent basis for jurisdiction. Most importantly, an order in Youth Plaintiffs' favor will not preclude the Petro Associations from lobbying and participating in regulatory processes, or in defending their interests or rights in future contracts, if any, that in theory might secondarily be impacted.[2]

---

[1]    As Judge Coughenour recognized in his order denying intervention in *Ctr. for Biological Diversity v. EPA*, No. C09-0670-JCC, at *6 (W.D. Wash. Oct. 5, 2009), "[i]f the Court were to allow intervention by every permit-holder who could discharge into one of Washington's rivers that eventually flows into the sea, this suit would balloon out of control."

[2]    The Petro Associations argue that U.S. facilities must "be able to maximize production from their current operations" because "[d]omestic petrochemical manufacturers must compete internationally with foreign companies that enjoy

The Amended Complaint does not allege private parties, such as the Petro Associations, have any constitutional or public trust fiduciary obligations to Youth Plaintiffs. It is not proper for a private party to be a defendant in such an action. While the behavior of a private party may impact a fundamental right or a public trust resource, the Amended Complaint alleges the federal government holds the ultimate responsibility.

Because the Petro Associations do not claim to, and do not, have a legal interest in Youth Plaintiffs' rights to life, liberty and property, or in their public trust resources, or in the Jordan Cove LNG export permit, the Petro Associations do not have a "question of law or fact in common" with the present action. *Freedom from Religion Found.*, 644 F.3d at 843. The Petro Associations do not seek to file a counterclaim that might have a "question of law or fact in common" with the present action. *Id.* Further, the Petro Associations do not argue that their interests in interpreting the Constitution or the public trust doctrine are inadequately represented by Federal Defendants. *See Perry*, 587 F.3d at 955. They simply wish to prevent Youth Plaintiffs from holding Federal Defendants responsible for infringing Youth Plaintiffs' constitutional rights and from meeting their fiduciary obligations under the public trust doctrine. Such a motive only hinders the pursuit of justice, restricts the only forum Youth Plaintiffs have to redress wrongs committed against them, unduly complicates the present action, and ultimately delays a final decision on this matter.

---

significant competitive advantages," which include "direct and indirect government subsidies." Friedman Decl. ¶ 11; *see also* Petro Memo. 15. However, even in these unsupported statements about the "significant competitive advantages" enjoyed by foreign companies, the Petro Associations grossly overstate the vulnerability of domestic petrochemical manufacturers. In fact, it is the United States, not any foreign nation, that is by far the largest provider of energy subsidies. For example, according to the International Monetary Fund, in 2011, the United States was responsible for $502 billion in energy subsidies, as compared with China coming in second with $279 billion, and Russia coming in third at $116 billion. International Monetary Fund, *Energy Subsidy Reform: Lessons and Implications* 13 (2013), *available at* http://www.imf.org/external/np/pp/eng/2013/012813.pdf.

Even if this Court finds the Petro Associations meet the three-part test for permissive intervention, this Court should exercise its discretion to deny the Petro Associations' motion to intervene. The Petro Associations have not demonstrated a legitimate interest in this action. Additionally, the Petro Associations' interests are adequately represented by Federal Defendants. As discussed above, the ultimate objective of both Proposed Intervenors and Federal Defendants is the same: to prevent Youth Plaintiffs from realizing their requested relief.

The Petro Associations and Federal Defendants have raised common legal arguments in their briefs. Allowing intervention will not effectively administer this dispute. Based on motion practice in this action to date, the addition of the Petro Associations as an intervenor would only complicate the litigation with repetitious and ill-informed briefing. Youth Plaintiffs have a right to a timely, efficient, and fair hearing of their legal issues, which relate solely to harm caused by the actions (or inactions) of Federal Defendants. Intervention will make this case unnecessarily complex, unwieldy, and prolonged, particularly as other associations and entities seek to intervene. In order to ensure a fair and efficient resolution to the present action, this Court should not permissively grant the Petro Associations' motion to intervene.

### III.    IF INTERVENTION IS GRANTED, THIS COURT SHOULD LIMIT INTERVENORS' PARTICIPATION TO THE REMEDY PHASE OF THIS ACTION, TO ISSUES NOT RAISED BY FEDERAL DEFENDANTS, AND TO LIMITED BRIEFING.

Youth Plaintiffs are strongly opposed to allowing the Petro Associations to intervene either as of right or permissively. If this Court allows the Petro Associations to intervene, this Court should exercise its ability to limit intervention to the remedial phase of this action and to issues not raised by Federal Defendants. *See Dep't of Fair Emp't & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011).

In addition, this Court should place limitations on intervenors to preclude their conducting any discovery, to file briefs of no more than 25 pages, and to comply with a staged briefing schedule set by the court, where Federal Defendants file first and the

Petro Associations must not duplicate any arguments made by the government. *See Bark v. Northrop*, No. 3:13-CV-01267-HZ, 2013 WL 6576306, at *1 (D. Or. Dec. 12, 2013) (imposing similar limitations on intervention).

In the alternative, the Petro Associations will have the opportunity to seek leave of court to file an amicus brief so that they may have a voice in the matter without unreasonably complicating the litigation by attaining intervenor status.

## CONCLUSION

The Petro Associations do not have significantly protectable interests, their interests will not be impaired by a decision of this Court, and Federal Defendants will adequately represent the Petro Associations' interests. For the foregoing reasons, Youth Plaintiffs respectfully request that this Court deny the motion to intervene of the Petro Associations.

Respectfully submitted this 30th day of November, 2015,

*s/ Julia A. Olson*
JULIA OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
**WILD EARTH ADVOCATES**
1216 Lincoln St.
Eugene, OR 97401
Tel: (415) 786-4825

PHILIP L. GREGORY (applicant *pro hac vice*)
pgregory@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577

DANIEL M. GALPERN (OR Bar 061950)
dan.galpern@gmail.com
**LAW OFFICES OF DANIEL M. GALPERN**
1641 Oak Street
Eugene, OR 97401 Tel: (541) 968-7164

*Attorneys for Plaintiffs*