**C. Marie Eckert**, OSB No. 883490
marie.eckert@millernash.com
**Suzanne C. Lacampagne**, OSB No. 951705
suzanne.lacampagne@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: (503) 224-5858
Facsimile: (503) 224-0155

**Roger R. Martella, Jr.**
rmartella@sidley.com
**Quin M. Sorenson**
qsorenson@sidley.com
**Benjamin E. Tannen**
btannen@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

Attorneys for Proposed Intervenor-Defendants
    The National Association of Manufacturers
    American Fuel & Petrochemical Manufacturers
    American Petroleum Institute

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**, et al., | Case No. 6:15-cv-01517-TC |
| **Plaintiffs,** | |
| v. | REPLY IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANTS' MOTION TO INTERVENE |
| **UNITED STATES OF AMERICA**, et al., | Request for Oral Argument |
| **Defendants.** | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

I.      The NAM, AFPM, and API Are Entitled To Intervene As Of Right Pursuant To Federal
        Rule of Civil Procedure 24(a) ......................................................................................... 2

        A.      This Suit Would Directly Affect Core Interests of the NAM, AFPM, and
                API's Members, and the Disposition of this Action Would Impair or
                Impede those Interests ............................................................................................. 3

        B.      The Government Cannot Adequately Protect the Interests of the NAM,
                AFPM, and API ....................................................................................................... 9

        C.      Restricting the Participation of the NAM, AFPM, and API in This Case is
                Not Appropriate, Given the Potential Impacts of This Case on the
                Proposed Intervenor-Defendants and Their Members. ........................................ 12

II.     In the Alternative, the NAM, AFPM, and API Should Be Granted Leave for
        Permissive Intervention under FRCP 24(b) .................................................................. 14

        CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alec L. v. Jackson,*
    863 F. Supp. 2d 11 (D.D.C. 2012) ......................................................................13

*Alec L. ex. rel. Loorz v. McCarthy,*
    561 F. App'x 7 (D.C. Cir. 2014) ......................................................................13

*Am. Farm Bureau Fed'n v. U.S. EPA,*
    278 F.R.D. 98 (M.D. Pa. 2011) ........................................................................7

*Bark v. Northrop,*
    No. 3:13-CV-01267-HZ, 2013 WL 6576306 (D. Or. Dec. 12, 2013) ....................................13

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
    647 F.3d 893 (9th Cir. 2011) ........................................................................10

*Ctr. for Biological Diversity v. U.S. EPA,*
    No. 2:13-cv-01866-JLR, slip op. (W.D. Wash. Feb. 18, 2014) ................................................8

*Ctr. for Biological Diversity v. U.S. EPA,*
    No. 2:09-cv-00670-JCC, slip op. (W.D. Wash. Oct. 5, 2009) ..................................................8

*Forest Conservation Council v. U.S. Forest Serv.,*
    66 F.3d 1489 (9th Cir. 1995) ......................................................................3, 10

*Fresno Cty. v. Andrus,*
    622 F.2d 436 (9th Cir. 1980) ......................................................................9, 10

*Kleissler v. U.S. Forest Serv.,*
    157 F.3d 964 (3d Cir. 1998) ........................................................................7

*Montana v. U.S. EPA,*
    137 F.3d 1135 (9th Cir. 1998) ......................................................................8

*Nat'l Ass'n of Home Builders v. San Joaquin Valley Unified Air Pollution Dist.,*
    No. 1:07CV0820 LJO DLB, 2007 WL 2757995 (E.D. Cal. Sept. 21, 2007) ........................12

*Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs,*
    188 F.R.D. 381 (D. Or. 1999) ........................................................................6

*Pershing Cty. v. Jewell,*
    No. 3:14-CV-00466-MMD-WGC, 2015 WL 3658074 (D. Nev. June 12, 2015) ..................11

*Trbovich v. United Mine Workers of America,*
    404 U.S. 528 (1972) ........................................................................9

*United States v. California Mobile Home Park Mgmt. Co.*,
   107 F.3d 1374 (9th Cir. 1997) .................................................................13

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ....................................................................2

*W. Watersheds Project v. Salazar*,
   No. 4:08-cv-435-BLW, 2011 WL 4431813 (D. Idaho Sept. 22, 2011)...................................6

*W. Watersheds Project v. U.S. Fish & Wildlife Serv.*,
   No. 4:CV 10-229-BLW, 2011 WL 2690430 (D. Idaho July 9, 2011)...................................11

*Wild Equity Inst. v. City & Cnty. of San Francisco*,
   No. C 11-00958 SI, 2011 WL 2532436 (N.D. Cal. June 24, 2011)...........................................6

*WildEarth Guardians v. Jewel*,
   No. 2:14-CV-00833 JWS, 2014 WL 7411857 (D. Ariz. Dec. 31, 2014) .................................9

*WildEarth Guardians v. Salazar*,
   No. CV-09-574-PHX-FJM, 2009 WL 1798611 (D. Ariz. June 24, 2009) ...............................9

*Wilderness Soc'y v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) .................................................................2, 3, 15

# INTRODUCTION

Plaintiffs' opposition to the intervention motion filed by the National Association of Manufacturers (NAM), American Fuel & Petrochemical Manufacturers (AFPM), and American Petroleum Institute (API) rests on ignoring the extraordinary—indeed, unprecedented—nature of the relief Plaintiffs seek through this suit. Plaintiffs claim that, because they "have not asked this Court to shut down, regulate, or limit the emissions of any particular industry," there is only a "tenuous" and "speculative" relationship between the subject matter of the litigation and any legally protected interests of the NAM, AFPM, API, or their members. *Juliana v. United States*, Plaintiffs' Response in Opposition to Motion to Intervene at 9, 11 (Pls. Response) (Doc. 33). In fact, however, Plaintiffs seek a total restructuring of the United States' economy, particularly the manner in which all energy is made and consumed—relief that would affect virtually every investment decision of every manufacturer and oil and gas and petrochemical company in the Nation, and would not only undermine but could effectively shut down the core businesses of members of the NAM, AFPM, and API. Any claim that this relief will not impair the legally protected interests of those companies is patently incorrect.

The federal Defendants, moreover, do not adequately represent the Proposed Intervenor-Defendants' interests. The mere fact that the government and the Proposed Intervenor-Defendants both seek dismissal of this lawsuit does not defeat intervention; beyond this common interim objective, there is a clear divergence of interests. Although aligned here, the Proposed Intervenor-Defendants and the government have been adverse to each other in litigation addressing several greenhouse gas regulations and policies. And in this litigation, the Proposed Intervenor-Defendants have already advanced arguments that the government has not advanced, including that Plaintiffs' claims are barred by the political question doctrine. Thus, the Proposed Intervenor-Defendants' participation is not only necessary to protect their interests, but helpful to

the Court.

Nor can Proposed Intervenor-Defendants protect those interests in future administrative proceedings or in the remedial stage of this proceeding, as Plaintiffs suggest. The complaint asks this Court to hold that Defendants are liable to Plaintiffs for adverse effects and future risks they associate with climate change and then, as a remedy, to direct Defendants to "prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric [carbon dioxide]." *Juliana v. United States*, First Amended Complaint for Declaratory and Injunctive Relief at 94 (Complaint) (Doc. 7). Permitting intervention only at the latter remedial stage of this case, or only in future administrative proceedings, would preclude Proposed Intervenor-Defendants from challenging the validity of Plaintiffs' claims or right to relief, or otherwise protecting their interests or the interests of their members against the radical overhaul of the Nation's economy aimed at shutting down entire energy sectors and companies that Plaintiffs seek. Those interests can be protected only through participation in the proceeding that determines whether such an overhaul should occur at all—*i.e.*, this lawsuit from the beginning.

For these reasons, Proposed Intervenor-Defendants satisfy the prerequisites for intervention of right. In addition, and for many of the same reasons, permissive intervention would also be appropriate. Under either basis, the motion to intervene should be granted.

## I. The NAM, AFPM, and API Are Entitled To Intervene As Of Right Pursuant To Federal Rule of Civil Procedure 24(a).

While Plaintiffs advocate for a stringent test for intervention, the Ninth Circuit instead has a "'liberal policy in favor of intervention,'" *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (citations omitted), and "construe[s] the Rule 'broadly in favor of proposed intervenors.'" *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir.

2011) (citations omitted).  The purpose of this liberal policy is to involve "'as many apparently concerned persons as is compatible with efficiency and due process.'" *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (citations omitted).  In light of this liberal policy in favor of intervention, and because the Proposed Intervenor-Defendants satisfy each prong of the Ninth Circuit's four-part test for intervention under Rule 24(a), the NAM, AFPM, and API should be permitted to intervene as of right.[1]

> ### A.    This Suit Would Directly Affect Core Interests of the NAM, AFPM, and API's Members, and the Disposition of this Action Would Impair or Impede those Interests.

The Ninth Circuit has admonished that "a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'"  *Wilderness Soc'y*, 630 F.3d at 1179 (citation omitted).  The relief Plaintiffs seek in this litigation will fall directly on the NAM, AFPM, and API's and their members' economic and legal interests, and therefore intervention is appropriate.

While Plaintiffs allege that this case affects only "speculative" and "attenuated" economic interests of Proposed Intervenor-Defendants, the claims and relief sought would in fact directly impact activities and the core of their members' businesses.[2]  Pls. Response at 2, 5-7, 11.

---

[1] Plaintiffs concede that Proposed Intervenor-Defendants satisfy the first factor, namely that their motion to intervene is timely.  Pls. Response at 4.

[2] Plaintiffs also mischaracterize the nature of this economic interest when they discuss a statement that "an energy renaissance (away from greenhouse gas emissions) would actually lower costs and create more jobs at home" by the President and CEO of API, Jack Gerard.  Pls. Response at 7.  The press release to which Plaintiffs refer is actually addressing higher production of oil and natural gas over the last decade in the United States, not a move to renewable energy.  AM. PETROLEUM INST., *Oil and Natural Gas Leading Innovation in Emissions Reduction*, (Sept. 22, 2013), http://www.api.org/News-and-Media/News/NewsItems/2015/September-2015/Oil-and-natural-gas-leading-innovation-in-

As the Proposed Intervenor-Defendants described in their motion to intervene—and Plaintiffs did not rebut—Plaintiffs are seeking a host of changes that will directly impact the NAM, AFPM, API, and their members. *Juliana v. United States*, Memorandum in Support of Motion to Intervene at 1, 4-5, 11-14, 15-16 (Mot. to Intervene) (Doc. 15). Through this litigation, Plaintiffs seek:

- to force the elimination of the use of conventional fossil fuels in the United States. *See* Complaint at 94 (requesting that the Court order Defendants to prepare a plan to "*phase out* fossil fuel emissions") (emphasis added);

- a near-term cap on the nation's greenhouse gas emissions. *See id.* at 80 ("Global atmospheric [carbon dioxide] concentrations *must be reduced* to below 350 [parts per million][3] by the end of the century….To reduce global atmospheric [carbon dioxide] concentrations to 350 [parts per million] by the end of this century *would require a near-term peak* in [carbon dioxide] emissions….") (emphasis added);

- continuing and significant reductions in the nation's greenhouse gas emissions. *See id.* ("To reduce global atmospheric [carbon dioxide] concentrations to 350 [parts per million] by the end of this century *would require...*a global reduction in [carbon dioxide] emissions of *at least 6% per year*….") (emphasis added); and

- to require the Defendants to submit a plan to reduce greenhouse gas emissions, enforceable by this Court, apparently without any meaningful public comment. *See id.* at 94 (requesting as relief that Defendants "prepare and implement an enforceable

emissions-reduction.

[3] Plaintiffs seek a reduction in greenhouse gas concentrations because global atmospheric carbon dioxide concentrations are already above the 350 parts per million level that they seek.

national remedial plan to phase out fossil fuel emissions….").

If Plaintiffs are successful in this litigation, each and every one of these demands will directly and dramatically harm the Proposed Intervenor-Defendants and their members.

In order to achieve these goals, any "enforceable national remedial plan" would necessarily require large-scale changes in the national economy, including specifically the business interests of the NAM, AFPM, and API and their members. *Id.* As noted in the motion to intervene, the NAM's members "include many of the major oil, coal and natural gas producers, petroleum refiners, and petrochemical producers, as well as manufacturing companies that make the tools and components critical to such industries." Mot. to Intervene at 5. AFPM's members are corporations that "own and operate over 95 percent of the United States' domestic petroleum refining capacity and virtually all of our nation's petrochemical production capacity." *Id.* at 6. API's members "explore for, produce, transport, refine, and sell oil, natural gas, and other fossil fuels." *Id.* at 7. Since Proposed Intervenor-Defendants' members' core business interests are related to the use, production, and refining of conventional fuels, and Plaintiffs do not deny that they are seeking immediate reductions in—and the eventual elimination of—the use of these same conventional fuels, their demands would obviously harm Proposed Intervenor-Defendants.

Indeed, as mentioned in the declarations accompanying the motion to intervene, the relief sought by Plaintiffs would threaten the future existence of many of the Proposed Intervenor-Defendants' members, forcing them to either go out of business or survive only by finding new lines of business, obtaining new sources of power, and/or moving their operations abroad.[4] *See,*

---

[4] In their response to the motion to intervene, Plaintiffs assert that Proposed Intervenor-Defendants' "allegations [of protectable interests] are not supported by qualified expert

*e.g.*, Declaration of Dr. Chad Moutray ¶¶ 17-18 (Doc. 16); Declaration of David Friedman ¶¶ 16-17 (Doc. 18). When Plaintiffs say they want to "phase out fossil fuel emissions," Complaint at 94, they effectively are seeking a remedy that necessarily would shut down the Proposed Intervenor-Defendants' member companies. Addressing greenhouse gas emissions from fuels raises fundamental questions of policy, science, regulations, and public administrative processes in which both the Plaintiffs and the Proposed Intervenor-Defendants are entitled to participate. However, to suggest that a company does not have a "significantly protectable interest" in a requested remedy that seeks to jeopardize the ongoing viability of its core business is meritless and contrary to a host of decisions from this Court and others recognizing that a proposed intervenor has a protectable interest in its important business interests and in maintenance of critical commercial opportunities. *See, e.g.*, *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 188 F.R.D. 381, 383, 385 (D. Or. 1999) (allowing intervention by corporations and trade associations in suit filed by environmental groups against the U.S. Army Corps of Engineers because of their "significant, economic" interests in dams operated by the Army Corps).[5]

---

testimony or the testimony of a single member of any of the three associations." Pls. Response at 2. Plaintiffs are simply mistaken that voluminous substantiation of Proposed Intervenor-Defendants' interests in this case, such as through expert testimony, is needed at this stage. Proposed Intervenor-Defendants are making legal arguments in favor of intervention, and the declarations are sufficient documentation in support of those legal arguments.

[5] *See also, e.g.*, *W. Watersheds Project v. Salazar*, No. 4:08-cv-435-BLW, 2011 WL 4431813, at *1, 2-4 (D. Idaho Sept. 22, 2011) (permitting intervention by cattle industry trade associations in lawsuit by environmental group challenging hundreds of U.S. Bureau of Land Management (BLM) grazing decisions under the Endangered Species Act (ESA) since lawsuit could result in "substantial modification" of ranchers' grazing privileges); *Wild Equity Inst. v. City & Cty. of San Francisco*, No. C 11-00958 SI, 2011 WL 2532436, at *1, 2 (N.D. Cal. June 24, 2011) (approving intervention by non-profit that advocates for public golf courses in ESA suit by environmental groups against municipal governments because non-profit had interest in status quo of continued use of golf course by its members); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 967, 968, 973 (3d Cir. 1998) (allowing intervention by lumber companies in litigation brought by environmentalists to restrict logging in a national forest since the relief sought

There are also a wide variety of other protectable interests of Proposed Intervenor-Defendants and their members that would be impacted if Plaintiffs secured the relief they seek. These include, but are in no way limited to, changed environmental permits, investment-backed financial expectations, harmed property interests in idled manufacturing facilities, and interrupted contracts to purchase or sell conventional fuels. For example, oil and gas companies have tens of thousands of current leases on BLM lands alone. *See* U.S. BUREAU OF LAND MANAGEMENT, *Total Number of Leases in Effect*, http://www.blm.gov/style/medialib/blm/wo/MINERALS__REALTY__AND_RESOURCE_PR OTECTION_/energy/oil___gas_statistics/data_sets.Par.56859.File.dat/numberofleasesineffect.p df (last updated Oct. 29, 2014). A lease provides contract rights, and these leases and others on state and private lands held by API members will be put in jeopardy if Plaintiffs receive the relief they request. Likewise, all or nearly all of the 140 petroleum refineries in the United States— many of which are owned or operated by API's members—operate under a Clean Water Act discharge permit, and numerous other of API's over 625 members must obtain permits under the Act every year for dredge-and-fill activities associated with the exploration of oil and natural gas. Plaintiffs' lawsuit threatens the ability of API's members to use these permits.

The cases Plaintiffs cite in favor of their viewpoint that Proposed Intervenor-Defendants only have insufficient, nebulous economic interest at stake are thus not analogous to this one, since the interests of proposed intervenors in those cases (most of which are outside the Ninth Circuit) are far more tangentially at issue than Proposed Intervenor-Defendants' interests in this

---

"[w]ould destroy their business[es]"); *Am. Farm Bureau Fed'n v. U.S. EPA*, 278 F.R.D. 98, 105 (M.D. Pa. 2011) ("The court finds that movants' economic interests of preserving their capital investments in treatment upgrades to be more than a 'mere attenuated economic interest'") (citation omitted).

case.  *See, e.g., Montana v. U.S. EPA*, 137 F.3d 1135, 1141 (9th Cir. 1998) ("None of the proposed intervenors, however, holds [a Clean Water Act] permit that may potentially be modified due to any change in [water quality standards] imposed by the Tribes").  Additionally, while Plaintiffs cite to district court cases within the Ninth Circuit that deny intervention because the contingent interests of intervenors in those cases allegedly would not be impaired or impeded until a chain of events had occurred, those cases are clearly inapposite.  Pls. Response at 3.  Both *Ctr. for Biological Diversity v. U.S. EPA*, No. 2:09-cv-00670-JCC, slip op. (W.D. Wash. Oct. 5, 2009) and *Ctr. for Biological Diversity v. U.S. EPA*, No. 2:13-cv-01866-JLR, slip op. (W.D. Wash. Feb. 18, 2014) analyze possible intervention in an environmental group's challenges to decisions to list certain waters as impaired under the Clean Water Act; in both cases, the Court denied intervention, holding that proposed intervenors' interests were not directly implicated because they would only suffer harm after a chain of events occurred and because they "may protect their members' interests during a later administrative process."  *Ctr. for Biological Diversity*, No. 2:09-cv-00670-JCC, slip op. at 5-6; *Ctr. for Biological Diversity*, No. 2:13-cv-01866-JLR, slip op. at 9-10.  By contrast, in this case, if the NAM, AFPM, and API are not permitted to intervene, they lose their opportunity to raise arguments on the merits and it will be too late for the Proposed Intervenor-Defendants to protect their interests, because the Plaintiffs' plan will necessarily have a large detrimental effect on the Proposed Intervenor-Defendants due to the plan's goals, no matter how it is implemented, as described above.

The outcome of this suit—at the liability phase—is what is critical to these Proposed Intervenor-Defendants.  For the same reason, intervention has been permitted under similar

circumstances; it should be allowed here.[6]

**B.    The Government Cannot Adequately Protect the Interests of the NAM, AFPM, and API.**

As noted in the motion to intervene, the Ninth Circuit provides a three-part test for adequate representation that looks at whether "the interests of a present party to the suit are such that it will *undoubtedly* make all of the intervenor's arguments[;]" whether "the present party is capable of and willing to make such arguments[;]" and whether "the intervenor would not offer any necessary element to the proceedings that the other parties would neglect." *Fresno Cty. v. Andrus*, 622 F.2d 436, 439 (9th Cir. 1980) (emphasis added). The requirement for adequate representation "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) (citation omitted); Mot. to Intervene at 16.

Plaintiffs misrepresent the test for adequate representation of a potential intervenor's interests.[7] After mentioning the three-part test for adequate representation which Proposed

---

[6] *See, e.g.*, *WildEarth Guardians v. Jewel*, No. 2:14-CV-00833 JWS, 2014 WL 7411857, at *1, 2 (D. Ariz. Dec. 31, 2014) (authorizing intervention by API and another trade association in case in which environmental group challenged U.S. Fish and Wildlife Service ESA listing decision because a judgment in this case in favor of plaintiffs could constrain any subsequent proceeding); *WildEarth Guardians v. Salazar*, No. CV-09-574-PHX-FJM, 2009 WL 1798611, at *1, 2 (D. Ariz. June 24, 2009) (authorizing intervention as of right by county in suit filed by environmental group challenging Department of Interior's ruling on an ESA listing petition because "a judgment here may restrain Gunnison County's position in a future administrative proceeding").

[7] Plaintiffs also mischaracterize Proposed Intervenor-Defendants' analysis of the adequate representation issue in the motion to intervene. In their Response, Plaintiffs state that the NAM, AFPM, and API "rely primarily on D.C. Circuit cases to argue inadequate representation." Pls. Response at 12. This is simply not true. *See* Mot. to Intervene at 16-17 (citing *Trbovich*, 404 U.S. 528; *Forest Conservation Council*, 66 F.3d at 1499; *Fresno Cty.*, 622 F.2d 436).

Intervenor-Defendants also discussed in their motion to intervene, Plaintiffs zero in on case law focusing on the existence of a presumption of adequate representation when an applicant for intervention and a party share the same "ultimate objective." While Plaintiffs assert that "[i]f a government actor and the proposed intervenor are on the same side, there is a presumption of adequacy of representation," the Ninth Circuit has in fact consistently recognized that the adequate-representation prong requires proof of more than that the party and the proposed intervenor share the same objective. Pls. Response at 13 (emphasis omitted). In particular, and as most relevant here, several Ninth Circuit cases have observed that government agencies represent broader interests than private party intervenors. *See Forest Conservation Council*, 66 F.3d at 1499 (noting that a government agency was "required to represent a broader view than the more narrow, parochial interests of" the intervenors); *Fresno Cty.*, 622 F.2d at 438-39 (noting that Department of Interior did not adequately represent potential intervenor's interests). Indeed, in the very case Plaintiffs cite in support of their position, *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 899-900 (9th Cir. 2011), the Ninth Circuit found that a federal agency, the United States Forest Service, did *not* adequately represent intervenor conservation groups because the Forest Service might not adequately share their narrower "interest in conserving and enjoying [an area's] wilderness character."

The divergent objectives between the conservation groups and the Forest Service in *Citizens for Balanced Use* resembles the similarly divergent objectives of the NAM, AFPM, and API as Proposed Intervenors and the Defendants in this case. For example, while it might be true that Defendants and Proposed Intervenor-Defendants share the same "interim objective," to have the case dismissed, they do not share the same "ultimate objective" regarding the subject

matter of the case, the federal regulation of greenhouse gases.[8]  Particularly should the case progress beyond the motions to dismiss, there is simply no reason to believe that the Proposed Intervenor-Defendants and the government will take the same position with respect to the ultimate merits and remedy in this case.  Indeed, the open-ended nature of Plaintiffs' claims creates myriad opportunities for divergence with respect to *ultimate* objectives.  Proposed Intervenor-Defendants have, in fact, previously challenged regulations promulgated by some of the Defendants in this case.  Moutray Decl. ¶ 26; Friedman Decl. ¶ 19; Declaration of Howard Feldman ¶ 17 (Doc. 17).[9]

     Moreover, the Defendants are unlikely to make the same arguments Proposed Intervenor-Defendants might make.  This distinction can be seen already at this early stage in the case, such as in the two motions to dismiss, and the Defendants and Proposed Intervenor-Defendants would likely have divergent interests at any remedial stage.  *Compare Juliana v. United States*, Federal

---

[8] This distinction between interim and ultimate objectives is important in analyzing the adequate-representation prong.  *See, e.g.*, *Pershing Cty. v. Jewell*, No. 3:14-CV-00466-MMD-WGC, 2015 WL 3658074, at *5-7 (D. Nev. June 12, 2015) ("Although there might exist some overlap of interests and positions, the Federal Defendants, who as noted above did not take a position on movants' request for intervention, cannot be said to adequately represent the personal, professional and educational interests asserted by the movants"); *W. Watersheds Project v. U.S. Fish & Wildlife Serv.*, No. 4:CV 10-229-BLW, 2011 WL 2690430, at *3-4 (D. Idaho July 9, 2011) (holding that while prospective intervenors and the U.S. Fish and Wildlife Service may have shared "an objective" of affirming part of the agency's decision, they had different "ultimate objective[s]").

[9] While Proposed Intervenor-Defendants frequently do not agree with elements of the government's approach towards regulation of greenhouse gases, that does not mean that they and their members have shied away from playing a significant role in addressing greenhouse gas emissions.  *See, e.g.*, AM. PETROLEUM INST., *Climate Change and Energy* 2 (2015), http://www.api.org/~/media/files/policy/environment/climate-change-and-energy/climate-primer.pdf ("Since 2000, the oil and natural gas industry has invested $90 billion in [greenhouse gas] emissions-reducing technologies") (emphasis omitted); NAT'L ASS'N OF MFRS., *Greenhouse Gas Regulations*, http://www.nam.org/Issues/Greenhouse-Gas-Regulations/ (last visited Dec. 15, 2015) ("Since 2005, manufacturers have lowered their [greenhouse gas] emissions by more than 10 percent…."); Moutray Decl. ¶ 9.

Defendants' Memorandum of Points and Authorities in Support of Their Motion to Dismiss (Doc. 27-1) (no mention of political question doctrine) *with Juliana v. United States*, Memorandum in Support of Intervenor-Defendants' Motion to Dismiss at 11-16 (Proposed Intervenor-Defendants' Motion to Dismiss) (Doc. 20) (political question doctrine asserted as basis for dismissal).[10]

### C. Restricting the Participation of the NAM, AFPM, and API in This Case is Not Appropriate, Given the Potential Impacts of This Case on the Proposed Intervenor-Defendants and Their Members.

Perhaps recognizing that the requirements for intervention are satisfied, Plaintiffs suggest in the alternative that—even if intervention is granted in some form—Proposed Intervenor-Defendants' role in this case should be materially restricted. They argue, in particular, that Proposed Intervenor-Defendants should be allowed to participate solely in the remedial phase, addressing only issues not raised by Federal Defendants. Pls. Response at 18, 19.

At the outset, Proposed Intervenor-Defendants fully respect the need for judicial efficiency and economy and have no interest in unnecessarily duplicating arguments or adding burdens on the court or the parties. However, restricting intervention to the remedial phase and to issues not raised by Defendants would run contrary to the purpose of intervention. In this case, what is critical to Proposed Intervenor-Defendants is the ability to propose arguments in opposition to Plaintiffs' right to the relief they seek. Once the Court has potentially declared that Plaintiffs are due that relief, it is too late. *See Nat'l Ass'n of Home Builders v. San Joaquin Valley Unified Air Pollution Dist*., No. 1:07CV0820 LJO DLB, 2007 WL 2757995, at *5 (E.D.

---

[10] Additionally, Plaintiffs misconstrue Proposed Intervenor-Defendants' Motion to Dismiss when they stated in their Response that Proposed Intervenor-Defendants "virtually ignore" Plaintiffs' constitutional claims. Pls. Response at 14; *see* Proposed Intervenor-Defendants Motion to Dismiss at 7-8.

Cal. Sept. 21, 2007) (denying Plaintiffs' request to limit proposed intervenors' participation to the remedial phase because they "have an interest in the substantive issues raised in the Complaint and [should] be allowed to intervene in an unlimited capacity").

Plaintiffs also suggest that the Court should place various discovery and briefing restrictions on any intervention.[11] Pls. Response at 18, 19. Proposed Intervenor-Defendants will be efficient in their approach to briefing, as they have been with their Motions to Intervene and Dismiss to date, and will not submit extraneous filings. Proposed Intervenor-Defendants, if granted intervention, already have agreed to comply with forthcoming scheduling orders and to endeavor to avoid duplication of issues with other parties. Mot. to Intervene at 10-11. However, since the exact contours the case will take as it moves beyond this early stage are unclear, the Proposed Intervenor-Defendants should also be allowed to participate as full parties with no court-imposed limits on discovery, briefing page limits, or agreements not to address the same arguments as Defendants make. In fact, the case Plaintiffs cite for this proposition actually rejects some of these requests, such as a page limit. *Bark v. Northrop*, No. 3:13-CV-01267-HZ, 2013 WL 6576306, at *7-8 (D. Or. Dec. 12, 2013). *See also United States v. California Mobile Home Park Mgmt. Co.,* 107 F.3d 1374, 1378 (9th Cir. 1997) ("Indeed, intervening parties have full party status in the litigation commencing with the granting of the motion to intervene").

---

[11] This is the second case in which the same claims have been made against the same federal defendants by plaintiffs represented by mostly the same counsel. Proposed Intervenor-Defendants' Motion to Dismiss at 3. The NAM, the only one of the Proposed-Intervenor Defendants in this case to seek intervention in that prior case, was allowed to intervene then, without causing any unnecessary additional briefing or resulting in undue duplication or complication. Indeed, the district court and court of appeals adopted one of the NAM's arguments (lack of federal question jurisdiction) as the basis for dismissal. *See Alec L. ex. rel. Loorz v. McCarthy*, 561 F. App'x 7, 8 (D.C. Cir. 2014); *Alec L. v. Jackson*, 863 F. Supp. 2d 11, 13 (D.D.C. 2012). Given that history, any claim that intervention would be inconsistent with judicial economy or unmanageable is simply unwarranted.

Having said that, if granted intervention, Proposed Intervenor-Defendants would endeavor to proceed fully cognizant of the burdens on the court and in a spirit of economy and efficiency in coordination with the Defendants.

## II.    In the Alternative, the NAM, AFPM, and API Should Be Granted Leave for Permissive Intervention under FRCP 24(b).

In the alternative, the Proposed Intervenor-Defendants meet the standard for permissive intervention because their defenses will raise questions of law and fact in common with those raised in the main action between Plaintiffs and Defendants.  As described above, the NAM's, AFPM's, and API's members' economic and legal interests in maintaining the feasibility of their existing business operations as well as in helping to shape federal greenhouse gas policy are directly at stake in this suit.  Plaintiffs, by requesting extraordinary remedial action, seek to impose significant burdens that would fall squarely on the members of Proposed Intervenor-Defendants, while seeking to effectively exclude them from participation in the development of the remedial actions themselves.  The Proposed Intervenor-Defendants have and will continue to raise common questions of law and fact regarding the government's obligation to regulate greenhouse gas emissions and its role in helping to shape the content of any regulations that are proposed.

Plaintiffs' suggestion that participation by the NAM, AFPM, and API will unduly delay and complicate the case is entirely unwarranted.  As noted above, the Proposed Intervenor-Defendants have already agreed to comply with forthcoming scheduling orders and to endeavor to avoid duplication of issues if granted intervention.  The NAM, AFPM, and API have also worked to present significant information to the Court that the Defendants did not address to assist the Court in understanding the full scope of issues raised by Plaintiffs.  Thus, there is no danger of material prejudice to the parties in this case.

Finally, Plaintiffs' argument that it is improper for a private party to be a defendant in an action when obligations run solely to the federal government has been directly rejected by the *en banc* Ninth Circuit in *Wilderness Society*. In *Wilderness Society*, the Ninth Circuit abandoned its longstanding "federal defendant" rule, under which it had determined for National Environmental Policy Act (NEPA) cases that private "parties lack a 'significantly protectable' interest warranting intervention of right under Rule 24(a)(2) because …[the statute at issue] binds only the federal government." *Wilderness Soc'y*, 630 F.3d at 1177. After a thorough analysis, the Court held that the "federal defendant" bar on intervention was inappropriate because "it eschews practical and equitable considerations and ignores our traditionally liberal policy in favor of intervention." *Id.* at 1179. In that case, the Ninth Circuit also recognized the rejection of similar arguments in nearly every federal circuit to consider them. *Id.* at 1178-80. Therefore, it is irrelevant for purposes of intervention that the Proposed Intervenor-Defendants could not be found liable under the public trust doctrine and constitutional claims Plaintiff raises. *Id.* Instead the generally applicable "liberal" jurisprudence for intervention under Rule 24 should apply. *Id.* at 1180.

## CONCLUSION

For the foregoing reasons, the NAM, AFPM, and API respectfully request that the Court grant their motion for leave to intervene as of right pursuant to Fed. R. Civ. P. 24(a) with respect to all of Plaintiffs' claims. In the alternative, the Proposed Intervenor-Defendants request that

they be granted permissive intervention pursuant to Fed. R. Civ. P. 24(b) with respect to all of Plaintiffs' claims.

DATED this 17th day of December, 2015.

MILLER NASH GRAHAM & DUNN LLP

/s/ C. Marie Eckert
C. Marie Eckert, OSB No. 883490
marie.eckert@millernash.com
Suzanne C. Lacampagne, OSB No. 951705
suzanne.lacampagne@millernash.com
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: (503) 224-5858
Facsimile: (503) 224-0155

SIDLEY AUSTIN LLP

/s/ Roger R. Martella, Jr.
Roger R. Martella, Jr.
rmartella@sidley.com
Quin M. Sorenson
qsorenson@sidley.com
Benjamin E. Tannen
btannen@sidley.com
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

*Attorneys for Proposed Intervenor-Defendants*
*The National Association of Manufacturers,*
*American Fuel & Petrochemical Manufacturers,*
*and American Petroleum Institute*

MANUFACTURERS' CENTER FOR LEGAL ACTION

Linda E. Kelly
Quentin Riegel
qriegel@nam.org
733 10th Street, NW, Suite 700
Washington, DC 20001
Telephone: (202) 637-3000
Facsimile: (202) 637-3182

AMERICAN FUEL & PETROCHEMICAL
MANUFACTURERS

Richard Moskowitz
RMoskowitz@afpm.org
1667 K Street, NW, Suite 700
Washington, DC 20006
Telephone: (202) 457-0480
Facsimile: (202) 457-0486

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 4,819 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: December 17, 2015

/s/ C. Marie Eckert
C. Marie Eckert

I hereby certify that I served the foregoing Reply in Support of Proposed Intervenor-Defendants' Motion to Intervene on:

Julia A. Olson
Wild Earth Advocates
1216 Lincoln Street
Eugene, Oregon  97401
E-mail:  juliaaolson@gmail.com

*Attorney for Plaintiffs*

Philip L. Gregory
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road
Burlingame, California  94010
E-mail:  pgregory@cpmlegal.com

*Attorney for Plaintiffs*

Daniel M. Galpern
Law Offices of Daniel M. Galpern
1641 Oak Street
Eugene, Oregon  97401
E-mail:  dan.galpern@gmail.com

*Attorney for Plaintiffs*

Sean C. Duffy
United States Department of Justice
Environment & Natural Resources
Division
Natural Resources Section
P.O. Box 7611
Washington, D.C.  20044
E-mail:  sean.c.duffy@usdoj.gov

*Attorney for Defendants*

by the following indicated method or methods on the date set forth below:

☒ **CM/ECF system transmission.**

☐ **E-mail.**  As required by Local Rule 5.2, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

☐ **Facsimile communication device.**

☐ **First-class mail, postage prepaid.**

☐ **Hand-delivery.**

DATED this 17th day of November, 2015.

/s/ C. Marie Eckert
_____

C. Marie Eckert, P.C.
Oregon State Bar No. 883490

*Of Attorneys for Proposed Intervenor-Defendants*
*The National Association of Manufacturers, American*
*Fuel & Petrochemical Manufacturers, and American*
*Petroleum Institute*