UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

KELSEY CASCADE ROSE JULIANA; et al.,           6:15-cv-1517-TC

Plaintiffs,

ORDER

v.

The UNITED STATES OF AMERICA; et al.,

Defendants.

COFFIN, Magistrate Judge:

Plaintiffs include a group of younger individuals (aged 8-19) who assert harm from carbon pollution because of government action and/or inaction allegedly resulting in climate destabilization and ocean acidification. Also among the plaintiffs are associations of activists who assert they are beneficiaries of the federal public trust harmed by allegedly substantial impairment and alienation of their public trust resources through ongoing actions to allow fossil fuel exploitation.

Plaintiffs are suing the United States and various government officials and agencies because, they assert, the government has known for decades that carbon dioxide ($CO_2$) pollution has been causing catastrophic climate change and has failed to take necessary action to curtail fossil fuel emissions. Moreover, plaintiffs allege, that the government and its agencies have taken action or failed to take action that has resulted in increased carbon pollution through fossil fuel extraction,

Page 1 - ORDER

production, consumption, transportation, and exportation. Plaintiffs assert that a reduction of global $CO_2$ concentrations to less than 350 parts per million is possible, but action must be taken immediately to prevent further ocean acidification and ocean warming. Plaintiffs allege that the current actions and omissions of defendants make it extremely difficult for plaintiffs to protect their vital natural systems and a livable world. Consequently, plaintiffs seek immediate action to restore energy balance and implementation of a plan to put the nation on a trajectory (that if adhered to by other major emitters) will reduce atmospheric $CO_2$ concentrations to no more than 350 parts per million by 2100.

Plaintiffs assert that the actions and omissions of defendants that increased $CO_2$ emissions "shock the conscience," and are infringing the plaintiffs' right to life and liberty in violation of their substantive due process rights. Plaintiffs also allege defendants have violated plaintiffs equal protection rights embedded in the Fifth Amendment by denying them protections afforded to previous generations and by favoring short term economic interests of certain citizens. Plaintiffs further allege that defendants' acts and omissions violate the implicit right, via the Ninth Amendment, to a stable climate and an ocean and atmosphere free from dangerous levels of $CO_2$. Finally, plaintiffs allege that defendants have violated the public trust doctrine, secured by the Ninth Amendment, by denying future generations essential natural resources.

Through this action, plaintiffs ask the court to:

1. Declare that Defendants have violated and are violating Plaintiffs' fundamental constitutional rights to life, liberty, and property by substantially causing or contributing to a dangerous concentration of $CO_2$ in the atmosphere, and that, in so doing, Defendants dangerously interfere with a stable climate system required by our nation and Plaintiffs alike;

2. Enjoin Defendants from further violations of the Constitution underlying each

claim for relief;

3. Declare the Energy Policy Act, Section 201, to be unconstitutional on its face;

4. Declare DOE/FE Order No. 3041, granting long-term multi-contract authorization to Jordan Cove Energy for LNG exports from its Coos Bay terminal, to be unconstitutional as applied and set it aside;

5. Declare Defendants' public trust violations and enjoin Defendants from violating the public trust doctrine underlying each claim for relief;

6. Order Defendants to prepare a consumption-based inventory of U.S. $CO_2$ emissions;

7. Order Defendants to prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric $CO_2$ so as to stabilize the climate system and protect the vital resources on which Plaintiffs now and in the future will depend ...

First Amended Complaint (#7) at p. 94.

The National Association of Manufacturers (NAM), the American Fuel & Petrochemical Manufacturers (AFPM), and the American Petroleum Institute (API) move to intervene in this action.

NAM represents manufacturers in every industrial sector across the country. Its members include leaders of the coal industry, oil industry, natural gas industry, petroleum producers, and petrochemical refiners. NAM manufacturer members rely heavily on the availability of energy with $CO_2$ as a byproduct.

AFPM includes refiners and petrochemical manufactures as members who rely on conventional energy sources to supply their product and whose product itself emits $CO_2$.

API's members are leaders of the oil and gas industries which industries are emitters of $CO_2$.

Proposed intervenors assert that the relief requested by plaintiffs will directly affect not only their members' business interest, but the business itself. Proposed intervenors contend that through

Page 3 - ORDER

this action, plaintiffs in essence seek to force the federal government to eventually shut them down altogether. At the least, the proposed intervenors' members would have to substantially overhaul their business and business models to survive in the event plaintiffs prevail. Because of the drastic relief sought, allegedly necessary to protect plaintiffs' constitutional rights, including the complete phase out of the very core of proposed intervenors' businesses (production and use of fossil fuels), proposed intervenors seek to intervene in all phases of litigation asserting that once liability is established, the harm to their interests will be complete.

A.  Intervention as of Right

The court must permit intervention on the part of movants if they claim

> an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

Courts apply a four-part test to determine whether movants may intervene as of right:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

Wilderness Society v. United States Forest Service, 630 F.3d 1173, 1177 (9th Cir. 2011). Courts generally construe Rule 24 broadly in favor of intervention. United States ex rel. McGough v. Covington Techs. Co., 967 F.2d 1391, 1394 (9th Cir. 1992).

Plaintiffs concede the motion is timely. However, plaintiffs argue that the proposed

intervenors do not meet the other three requirements for intervention as of right.

###### 1. Significantly Protectable Interest

The proposed intervenors' asserted interest need not be protected by the federal provisions under which the litigation is brought to qualify as "significantly protectable". Wilderness Society, 630 F.3d at 1179. All that is required is that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue. Id. However, an interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule. Washington Elec. Co-op, Inc. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (9th Cir. 1990).

Plaintiffs assert that the proposed intervenors have no direct interest in whether the federal government is violating their alleged constitutional rights via its policies regarding $CO_2$ emissions and alleged ocean and atmospheric degradation. Plaintiffs argue that there is no showing that the resolution of their claims actually will affect them beyond speculation. Plaintiffs contend that the proposed intervenors can protect their interests in the future (after these proceedings) by simply engaging in the administrative rule-making process implementing the sought after relief directing defendants to prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excessive atmospheric $CO_2$. The argument appears to be nothing more than the rule, no longer followed in the Ninth Circuit, that proposed private intervenors in NEPA cases could only participate in the remedial phase and not the liability phase. See Wilderness Society, 630 F.3d 1173, 1176, 1178-1180.

Moreover, to suggest that, for example, setting aside the long-term multi-contract

Page 5 - ORDER

authorization to Jordan Cove Energy for liquified natural gas exports authorized by the DOE/FE order No. 3041 or that requiring defendants to phase out fossil fuel emissions has no direct impact on the fossil fuel industries themselves is counterintuitive. Such relief would, at a minimum, change the very nature of businesses engaged in by members of the proposed intervenors and substantially alter the various property and contractual rights, if not outright eliminate the businesses altogether.[1] Assuming that plaintiffs are correct in that the defendants are liable for constitutional violations based on policies favoring economic interests related to fossil fuel emissions, participation in the remedy only would prohibit the proposed intervenors from arguing that alleged harm from $CO_2$ emissions does not rise to the level of a constitutional violation and their business model would be forever changed as a result. Lobbying the agencies in charge of implementing any court directives addressing the constitutional harm will not adequately permit the proposed intervenors to protect their interests. Because this action will directly change the nature of many of the members' business or how they carry out their business, the proposed intervenors have a protectable interest. See, e.g., Sierra Club v. United States E.P.A., 995 F.2d 1478, 1483 (9th Cir. 1993) (abrogated on other grounds by Wilderness Society, 630 F.3d 1173) (suit affecting the use of real property owned by the intervenors by requiring the defendant to change the terms of permits it issues to the would-be intervenors, which permits regulate the use of that real property, raises interests that are squarely in the class of interests traditionally protected by law).

---

[1] Plaintiffs also assert that the alleged protectable interests asserted by the proposed intervenors is not supported by qualified expert testimony. At this stage of the proceedings, the court is not going to engage in a mini-trial to determine the rights of proposed parties. The issue here is only whether the proposed intervenors claim such an interest. In addition, given that plaintiffs seek to eliminate, in essence, the very product of many of the intervenors, the court need not resort to the aid of experts to determine whether the interests are protectable or whether those interests may be impaired by this litigation.

Page 6 - ORDER

### 2. Impairing or Impeding the Protectable Interest

As noted above, the very nature of this action is a direct attack on the alleged priorities the defendants place on the fossil fuel industry to the detriment of the health and welfare of current and future generations. Plaintiffs seek to phase out fossil fuel emissions. Proposed intervenors produce and/or rely on those fossil fuels. There is no question that the interests of proposed intervenors would be impaired through court mandated regulation that has the goal of eliminating emissions altogether. Perhaps proposed intervenors could discover technologies that allow the continued use of fossil fuels with dramatically reduced emissions or could convert to production and use of green fuels in order to maintain viable business operations into the future in the event plaintiffs' are successful. But proposed intervenors presence is necessary to fully and fairly put those issue before the court in these proceedings. See, e.g., Fund for Animals, Inc. v. Norton, 322 F.3d 728, 735 (D.C.Cir. 2003) (looking to practical consequences of action, loss of revenues and market share to address the outcome, etc.).

### 3. Adequate Representation

Plaintiffs take the position that the government is essentially pro-fossil fuel industry, thus its interests and the interests of the proposed intervenors are in alignment. Accordingly, plaintiffs argue that the defendants will adequately represent the interests of the proposed intervenors. However, the defendants interests are much broader and Rule 24 only requires that the court consider whether the interest of the government defendants are such that they will undoubtedly make all of intervenors' arguments. See Fresno County v. Andrus, 622 F.3d 436, 439 (9th Cir. 1980) (adequate representation if the interests of a present party are such that it will undoubtedly make all of the

Page 7 - ORDER

intervenors's arguments; (2) the present party is capable of and willing to make such arguments; and (3) the intervenors would not offer any necessary element to the proceedings that the other parties would neglect).

The government is required to represent the broad interest of the public as a whole, not just the economic interests of the fossil fuel industry. Therefore, defendants are an inadequate representative. Cf. Sierra Club v. Espy, 18 F3d. 1202, 1208 (9th Cir. 1994) (Government could not adequately represent the apparently aligned interests of the forest industry in environmental challenge suit given its broader interests).

Courts, in interpreting Rule 24, are guided primarily by practical and equitable considerations. Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998). And, as noted above, the rule broadly favors intervention. United States ex rel. McGough v. Covington Techs. Co., 967 F.2d at 1394. A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, courts can prevent or simplify future litigation involving related issues; at the same time, courts can allow an additional interested party to express its views. Forest Conservation Council v. U.S. Forest Serv., 66 F.3d 1489, 1496 n. 8 (9th Cir. 1995).

Plaintiffs allege that defendants have a long history of deliberately discriminating against children and future generations in exerting authority over our nation's fossil fuel resources for the economic benefit of present generations of adults. First Amended Complaint (#7) at ¶ 294. Plaintiffs further allege that defendants have a *de facto* policy to favor influential and entrenched fossil fuel energy interests (and corporations) to the long-term detriment of plaintiffs. Id. at ¶¶ 298, 301. In essence, plaintiffs argue they have superior constitutional rights that trump the economic

Page 8 - ORDER

interest of the proposed intervenors. Equity demands that members of the proposed intervenors whose property interests are alleged to be in direct conflict to plaintiffs' life, liberty, and property interests have a say in this litigation. At a minimum, such intervention will simplify future litigation as defendants endeavor to resolve this complex confluence of economic and property interests of the populace on the one hand and the health interests of current and future generations on the other.

The motion to intervene as of right is granted.

B.  Restrictions on Intervention

Plaintiffs suggest that if intervention is granted, that the court should limit intervention to the remedial phase, preclude discovery, limit briefing to no more than 25 pages, and require briefing to follow the government's brief so as not to duplicate arguments. As noted above, restriction to the remedial phase is inadequate for the proposed intervenors to adequately protect their interests. Given the breadth of the complaint it is unclear if 25 page limits are appropriate.[2] The contours of discovery are difficult to determine in a novel case such as this that sits somewhere between a civil rights action and NEPA/Clean Air Act/Clean Water Act suit. Should the complaint survive the motions to dismiss, the court will hold a Rule 16 conference to address how discovery will be conducted and other case management issues.

## CONCLUSION

For the reasons stated above, the motion to intervene (#14) filed by The National Association

---

[2] Indeed, plaintiffs have requested and received permission to file an over-length brief in opposition to the government's motion to dismiss.

Page 9 - ORDER

of Manufacturers, the American Fuel & Petrochemical Manufacturers, and the American Petroleum Institute is granted .

DATED this **14** day of January 2016.

THOMAS M. COFFIN
United States Magistrate Judge