JOHN C. CRUDEN
Assistant Attorney General

SEAN C. DUFFY (NY Bar. No. 4103131)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
601 D Street NW
Washington, DC 20004
Telephone: (202) 305-0445
Facsimile:  (202) 305-0506
sean.c.duffy@usdoj.gov

*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# EUGENE DIVISION

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**, et al.,<br>        Plaintiffs, | Case No. 6:15-cv-01517-TC |
| v. | **FEDERAL DEFENDANTS'** |
| **UNITED STATES OF AMERICA**, et al.,<br>        Federal Defendants. | **REPLY IN SUPPORT OF**<br>**MOTION TO DISMISS** |

**TABLE OF CONTENTS**

Introduction.................................................................................................................... 1

      1. Standing ............................................................................................... 1

      2. Failure to State a Claim....................................................................... 1

      3. Lack of Subject Matter Jurisdiction.................................................... 1

Argument ......................................................................................................... 2

    I.    Plaintiffs Lack Article III Standing...................................................... 2

          A.   Plaintiffs allege only generalized harms, shared by all, and not
               suitable for resolution by the judicial process. ................................... 2

          B.   Plaintiffs fail to show a sufficient causal connection between the
               government's actions and increased risk of climate change ............... 4

          C.   The Court cannot redress Plaintiffs' injuries....................................... 7

    II.   Plaintiffs Fail to State Any Cognizable Constitutional Claim ............................... 9

          A.   Plaintiffs fail to state a claim under the Due Process Clause. ........... 10

          B.   Plaintiffs fail to state an equal protection claim. ............................... 14

          C.   The Ninth Amendment guarantees no substantive rights................. 19

    III.  The Court Has no Jurisdiction Over the Public Trust Doctrine Claim ................. 20

Conclusion ........................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

*Alec L. ex rel. Loorz v. McCarthy,*
    561 F. App'x 7 (D.C. Cir. 2014) .................................................................................. 21, 23

*Alec L. v. Jackson,*
    863 F. Supp. 2d 11 (D.D.C. 2012) ............................................................................... 21, 22

*Allen v. Wright,*
    468 U.S. 737 (1984) ........................................................................................................... 7

*Am. Bus Ass'n v. Slater,*
    231 F.3d 1 (D.C. Cir. 2000) ............................................................................................... 8

*Am. Elec. Power Co. v. Connecticut,*
    564 U.S. 410 (2011) ........................................................................................................... 9

*Appleby v. City of New York,*
    271 U.S. 364 (1926) ......................................................................................................... 21

*Aronow v. Minnesota,*
    No. A12-0585, 2012 WL 4476642 (Minn. Ct. App. Oct. 1, 2012) ..................................... 21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................................... 9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................................... 9

*Bennett v. Spear,*
    520 U.S. 154 (1997) ........................................................................................................... 4

*Benton v. Maryland,*
    395 U.S. 784 (1969) ......................................................................................................... 10

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985) ............................................................................. 14, 15, 16, 17-18

*Collins v. City of Harker Heights,*
    503 U.S. 115 (1992) ......................................................................................................... 10

*Ctr. for Biological Diversity v. U.S. Dep't of Interior,*
    563 F.3d 466 (D.C. Cir. 2009) ........................................................................................... 3

*Cunningham v. Beavers,*
    858 F.2d 269 (5th Cir. 1988) ........................................................................................... 16

*DeLeon v. Little,*
    981 F. Supp. 728 (D. Conn. 1997) ................................................................................... 20

*Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*,
    489 U.S. 189 (1989) ......................................................................... 12, 14

*District of Columbia v. Air Fla., Inc.*,
    750 F.2d 1077 (D.C. Cir. 1984) ................................................................. 21

*Douglas v. Hugh A. Stallings, M.D., Inc.*,
    870 F.2d 1242 (7th Cir. 1989) .................................................................. 16

*FCC v. Beach Commc'ns*,
    508 U.S. 307 (1993) ................................................................................. 19

*Filippone v. Iowa Dep't of Nat. Res.*,
    No. 12-0444, 2013 WL 988627 (Iowa Ct. App. Mar. 13, 2013) ......................... 21

*Gabree v. King*,
    614 F.2d 1 (1st Cir. 1980) ......................................................................... 16

*Gasper v. La. Stadium & Exposition Dist.*,
    418 F. Supp. 716 (E.D. La. 1976) ................................................................ 11

*Gibson v. Matthews*,
    926 F.2d 532 (6th Cir. 1991) ..................................................................... 20

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991) ................................................................................. 18

*Hagedorn v. Union Carbide Corp.*,
    363 F. Supp. 1061 (N.D.W. Va. 1973) .......................................................... 11

*Hedgepeth ex rel. Hedgepeth v. Wash. Metro. Area Transit Auth.*,
    386 F.3d 1148 (D.C. Cir. 2004) ............................................................... 16-17

*Idaho v. Coeur D'Alene Tribe*,
    521 U.S. 261 (1997) ................................................................................. 21

*Ill. Cent. R.R. Co. v. Illinois*,
    146 U.S. 387 (1892) .............................................................................. 20-21

*In re Steuart Transp. Co.*,
    495 F. Supp. 38 (E.D. Va. 1980) ................................................................. 22

*Jaffee v. Soc'y of N.Y. Hosp.*,
    No. 96-cv-3623-LAP, 1999 WL 246747 (S.D.N.Y. Apr. 27, 1999) ...................... 16

*Kramer v. Union Free School Dist.*,
    395 U.S. 621 (1969) ................................................................................. 16

*L.W. v. Grubbs*,
    974 F.2d 119 (9th Cir. 1992) ..................................................................... 13

*Lehnhausen v. Lake Shore Auto Parts Co.*,
    410 U.S. 356 (1973) ........................................................................................ 19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) ..................................................................................... 7

*Light v. United States*,
    220 U.S. 523 (1911) ........................................................................................ 22

*Long Sault Dev. Co. v. Call*,
    242 U.S. 272 (1916) ........................................................................................ 21

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................ 4

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ........................................................................ 9

*Mass. Bd. of Ret. v. Murgia*,
    427 U.S. 307 (1976) ........................................................................................ 15

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ........................................................................................ 4

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ........................................................................ 4

*Michael H. v. Gerald D.*,
    491 U.S. 110 (1989) ........................................................................................ 11

*Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
    453 U.S. 1 (1981) ............................................................................................ 11

*Mills v. Habluetzel*,
    456 U.S. 91 (1982) .......................................................................................... 15

*Miss. Univ. for Women v. Hogan*,
    458 U.S. 718 (1982) ........................................................................................ 15

*Moore v. City of E. Cleveland*,
    431 U.S. 494 (1977) ........................................................................................ 10

*Munger v. City of Glasgow Police Dep't*,
    227 F.3d 1082 (9th Cir. 2000) ........................................................................ 13

*Nat'l Sea Clammers Ass'n v. City of New York*,
    616 F.2d 1222 (3d Cir. 1980) ........................................................................ 11

*Nunez by Nunez v. City of San Diego*,
    114 F.3d 935 (9th Cir. 1997) .......................................................................... 18

*PPL Mont., L.L.C. v. Montana,*
   132 S. Ct. 1215 (2012) ................................................................. 21, 23

*Palko v. Connecticut,*
   302 U.S. 319 (1937) ......................................................................... 10

*Penilla v. City of Huntington Park,*
   115 F.3d 707 (9th Cir. 1997) ...................................................... 12, 13

*Phillips Petroleum Co. v. Mississippi,*
   484 U.S. 469 (1988) ......................................................................... 20

*Pinkney v. Ohio Envtl. Prot. Agency,*
   375 F. Supp. 305 (N.D. Ohio 1974) ................................................ 11

*Price v. Cohen,*
   715 F.2d 87 (3d Cir. 1983) .............................................................. 16

*Ramos v. Town of Vernon,*
   353 F.3d 171 (2d Cir. 2003) ............................................................ 18

*Reno v. Flores,*
   507 U.S. 292 (1993) ..................................................................... 10-11

*Russell v. Gregoire,*
   124 F.3d 1079 (9th Cir. 1997) ......................................................... 13

*S.F. Chapter of A. Philip Randolph Inst. v. EPA,*
   No. C-07-04936, 2008 WL 859985 (N.D. Cal. Mar. 28, 2008) ............ 11

*Sanders-Reed v. Martinez,*
   350 P.3d 1221 (N.M. Ct. App. 2015) ............................................... 21

*Shively v. Bowlby,*
   152 U.S. 1 (1894) ............................................................................ 20

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) ............................................................................ 2

*Tanner v. Armco Steel Corp.,*
   340 F. Supp. 532 (S.D. Tex. 1972) .............................................. 11-12

*Tex. Comm'n on Envtl. Quality v. Bonser-Lain,*
   438 S.W.3d 887 (Tex. App. 2014) ................................................... 21

*United States v. 32.42 Acres of Land,*
   683 F.3d 1030 (9th Cir. 2012) ..................................................... 22-23

*United States v. 1.58 Acres of Land,*
   523 F. Supp. 120 (D. Mass. 1981) ............................................... 22, 23

*United States v. 11.037 Acres of Land,*
    685 F. Supp. 214 (N.D. Cal. 1988) ................................................. 23

*United States v. Carolene Prods. Co.,*
    304 U.S. 144 (1938) ....................................................................... 15

*United States v. Flores-Villar,*
    536 F.3d 990 (9th Cir. 2008) ......................................................... 16

*United States v. Trinidad Coal & Coking Co.,*
    137 U.S. 160 (1890) ....................................................................... 22

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) ....................................................................... 10

*Wash. Envtl. Council v. Bellon,*
    732 F.3d 1131 (9th Cir. 2013) .......................................................... 6

*Wolfson v. Brammer,*
    616 F.3d 1045 (9th Cir. 2010) .......................................................... 7

*Wood v. Ostrander,*
    879 F.2d 583 (9th Cir. 1989) ......................................................... 13

## Constitutional Provisions

U.S. Const. amend. V ............................................................................. 10

U.S. Const. art. III, § 2 .............................................................. 1, 2, 20

## Statutes

16 U.S.C. § 2601 (2012) ......................................................................... 8

30 U.S.C. § 21a (2012) ........................................................................... 8

30 U.S.C. § 1201 (2012) ......................................................................... 8

42 U.S.C. § 5801 (2012) ......................................................................... 8

## Rules

Fed. R. Civ. P. 12(b)(6) .................................................................. 22, 23

Fed. R. Civ. P. 12(h)(3) .................................................................. 2, 20

**Introduction**

To resolve the Government's Motion to Dismiss, the Court need only resolve one or more of the following three issues, all straightforward:

**1. Standing**. Under Article III of the Constitution, a plaintiff must establish standing by showing that it has a suffered an actual or imminent injury that is concrete and particularized, by showing a sufficient causal nexus between the alleged injury and the defendant's challenged conduct, and by showing that judicial relief will redress the alleged injury. Because Plaintiffs allege only generalized harms that are inadequately connected to any actions by the government and cannot be redressed by any specific relief within a federal court's power to grant, all claims should be dismissed for lack of standing.

**2. Failure to State a Claim**. Plaintiffs' constitutional claims are premised on the existence of a fundamental right to be free from climate change, special protection for youth and posterity as a suspect class, and a Ninth Amendment right to a stable climate system. Because freedom from climate change is not a fundamental right and youth and posterity are not a suspect class, the government's actions are subject to rational basis review. As Plaintiffs do not and cannot claim that the government's actions lack a rational basis, the Fifth Amendment claims should be dismissed for failure to state a claim. In addition, because the Ninth Amendment secures no substantive rights and the public trust doctrine imposes no relevant obligations on the federal government, these claims should also be dismissed for failure to state a claim.

**3. Lack of Subject Matter Jurisdiction**. Under Article III of the Constitution, the judicial power of the federal courts extends to cases arising under the Constitution, laws, and treaties of the United States, rather than to claims that arise only under state law. Plaintiffs claim

that the government violated the public trust doctrine, which is wholly a matter of state law.  For
this reason, the public trust claim should also be dismissed for lack of subject matter jurisdiction.

**Argument**

**I.    PLAINTIFFS LACK ARTICLE III STANDING**

Article III of the Constitution extends the jurisdiction of the federal courts only to
"[c]ases" and "[c]ontroversies" "of the sort traditionally amenable to, and resolved by, the
judicial process."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998); U.S. CONST.
art. III § 2, cl. 1.  Plaintiffs have not shown that they have standing.  The Court must therefore
dismiss the action for a lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).

**A.    Plaintiffs allege only generalized harms, shared by all, and not suitable for
resolution by the judicial process.**

The harms that Plaintiffs allege are the kinds of generalized grievances, shared by all, that
are ill-suited and not traditionally amenable to resolution by the judicial process.  The gravamen
of the Complaint is that the government, through its "aggregate actions," has enabled and
permitted carbon dioxide ("$CO_2$") emissions to rise, increasing the risk of climate change.[1]  *See*
First Amended Complaint for Declaratory and Injunctive Relief ("Compl.") ¶¶ 151-54, ECF No.
7.  Plaintiffs allege that they will be affected by climate change through, *inter alia*, "record high
temperatures and heat waves," "climate-exacerbated wildfires," "diminished air quality,"
"worsening drought," "extreme weather events," "migration of forest species," "rising seas and

---

[1] The "aggregate actions" that Plaintiffs complain of include permitting fossil fuel
extraction, Compl. ¶¶ 164-70, subsidizing the fossil fuel industry through undervalued royalty
rates, favorable revenue code provisions, and overseas public financing, *id.*¶¶ 171-78, allowing
interstate and international transport of fossil fuels, *id.* ¶¶ 179-84, and authorizing fossil fuel
combustion in the energy and refineries, transportation, and manufacturing sectors.  *Id.* ¶¶ 185-
91.

frequent storm surges," "pine beetle infestations," "rising seas swallowing [] backyard beach[es]," "algal blooms from warming temperatures," and "increasing pollen counts."  Mem. of Pls. in Opp'n to Fed. Defs' Mot. to Dismiss ("Opp'n"), ECF No. 41, at 30 – 33.  But as Plaintiffs concede, the harms caused by climate change are not specific to them, but rather are shared throughout the entire country,[2] and by humanity at large.[3]  Contrary to Plaintiffs' insistence—that the Complaint alleges "highly personal specific injuries from the aggregate acts of Defendants," Opp'n at 30—the personal injuries to which they refer are no more specific to Plaintiffs than to every other member of the public.[4]

Accordingly, Plaintiffs' alleged injury is too generalized to establish standing.  *See Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009) ("climate change is a harm that is shared by humanity at large, and the redress that Petitioners seek—to prevent an increase in global temperature—is not focused any more on these petitioners than it is on the remainder of the world's population. Therefore Petitioners' alleged injury is too generalized to establish standing.").

---

[2] *See* Compl. ¶ 154 ("Defendants knowingly acted to exacerbate [the risk of climate change] and impose harm *on the nation* and on Plaintiffs.") (emphasis added), *id.* ¶ 207 ("The current level of atmospheric $CO_2$ concentration caused by human-made climate change has already taken *our country* into the danger zone.") (emphasis added), *id.* ¶ 279 ("*Our nation's climate system* has been, and continues to be, harmed by Defendants.") (emphasis added).

[3] *See id.* ¶ 210 ("*Earth* has now warmed about 0.9°C above pre-industrial temperatures.") (emphasis added), *id.* ¶ 213 ("Unless arrested by government action informed by science, climate change will impose increasingly severe impacts on *our nation and others*, potentially to the point of collapse.") (emphasis added), *id.* ¶ 215 ("If carbon pollution is not quickly abated, there is near scientific certainty that *humanity will suffer sea level rise* of several meters, submerging much of the eastern seaboard of the U.S., including Florida, *as well as other low lying areas of Europe, the Far-East, and the Indian sub-continent.*") (emphasis added).

[4] Plaintiffs' allegation that approval of natural gas exportation through the Coos Bay facility will "increase carbon pollution," Compl. ¶ 288, does not allege harm that is specific to Plaintiffs and therefore is not particularized and concrete.  *See* Fed. Defs' Mem. of P. & A. in Supp. of Their Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 27-1 at 11, n.3.

The Supreme Court's decision in *Massachusetts v. EPA* is not to the contrary. 549 U.S. 497 (2007). Plaintiffs argue that they, like the Commonwealth in *Massachusetts*, have standing because they "own property being injured by Defendants' acts." Opp'n at 34. However, unlike the State in *Massachusetts*, Plaintiffs here have not identified any statute conferring a special "procedural right" to challenge the United States' climate change policy. *See* 549 U.S. at 517. Moreover, in *Massachusetts*, the State was threatened with a loss of sovereign territory—a literal loss of sovereignty—that it could not unilaterally avoid. *Id.* at 518-20.

### B.    Plaintiffs fail to show a sufficient causal connection between the government's actions and increased risk of climate change.

The causal connection between the challenged government actions and the alleged injury is too attenuated to support standing. To satisfy the causality element of Article III standing, a plaintiff must show that the alleged injury is fairly traceable to the challenged action. It is not sufficient "if the injury complained of is the result of the independent action of some third party not before the court[.]" *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (internal quotation marks, punctuation, alterations, emphasis and citation omitted). Where the "chain of causation involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, . . . [courts] have found the causal chain too weak to support standing at the pleading stage." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (internal quotation marks omitted).

Plaintiffs fail to show that the harms they allege are "fairly traceable" to the "aggregate actions" of the government. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The actions that Plaintiffs challenge include permitting fossil fuel extraction, Compl. ¶¶ 164-70, subsidizing the fossil fuel industry through undervalued royalty rates, favorable revenue code provisions, and overseas public financing, *id.* ¶¶ 171-78, allowing interstate and international

transport of fossil fuels, *id.* ¶¶ 179-84, and authorizing fossil fuel combustion in the energy and refineries, transportation, and manufacturing sectors. *Id.* ¶¶ 185-91. Plaintiffs assert that these agency actions—in combination with countless intervening actions by unidentified third parties—will create greenhouse gas emissions that ultimately harm Plaintiffs' aesthetic, recreational, economic, environmental, and other interests. *See, e.g.*, *id.* ¶¶ 16-19, 21-22, 24-26, 27-29, 32-33, 36-38, 43-44.

But the chain of causation between the challenged government actions and Plaintiffs' alleged injuries is necessarily long, complicated, and populated with numerous actions and decisions by third parties who are not before the Court. To take just one example, consider Plaintiffs' challenge to alleged subsidies of the fossil fuel industry through favorable revenue code provisions.[5] In attempting to link the revenue code provisions they challenge to the injuries they allege, Plaintiffs ignore the many intervening actions by third parties that must occur for the revenue code provisions to harm Plaintiffs in the way that they claim. The chain of causation begins with the 63rd and 69th Congresses that passed the challenged provisions, although Congress is not before the Court. It presumably would then pass to the Internal Revenue Service, which administers the internal revenue code, and is also not before the Court. Then there are the actions of unnamed third parties (none of whom are before the Court) who, possibly incentivized by the challenged provisions, engaged in fossil fuel exploration. And then there are

_____

[5] Plaintiffs claim that the United States "provides approximately $5.1 billion per year in tax provision subsidies to support fossil-fuel exploration" and cite the "intangible drilling costs" and "percentage depletion allowance" provisions of the revenue code, which were introduced in 1916 and 1926 respectively. Compl. ¶¶ 174-75. Plaintiffs claim that the "United States supports fossil fuel development by allowing the fossil fuel industry to avoid the true social cost of $CO_2$ emissions from fossil fuels", *id.* ¶ 178, and leap to the conclusion that the government, by subsidizing fossil fuel exploitation is causing "dangerous inference with our atmosphere and climate system" and is endangering "Plaintiffs' health and welfare." *Id.* ¶ 280.

FED. DEFS' REPLY IN SUPPORT
OF MOTION TO DISMISS          - 5 -

the end users of the fossil fuels, whose combustion of the fossil fuels causes $CO_2$ emissions to be released into the earth's atmosphere. Though Plaintiffs do not specifically allege it, the release of those $CO_2$ emissions into the earth's atmosphere by those fossil fuel users presumably contributes to the dangerous levels of $CO_2$ emissions that Plaintiffs allege, and in turn increases the risk of climate change. In a similar way, for each of the government actions they challenge, Plaintiffs leap from that action to the alleged harm without accounting at all for numerous third parties and intervening acts that must be part of the chain of causation.

As the foregoing example illustrates, in each case, the chain of causation, from the aggregate actions that Plaintiffs challenge to the harms they allege, is strung together by a series of inferences, actions by third parties not before the Court, and conclusory statements that the government has contributed to harms without a plausible basis from which a court could conclude that the challenged actions caused Plaintiffs' alleged injuries. "While Plaintiffs need not connect each molecule to their injuries, simply saying that the Agencies have failed to curb emission of greenhouse gases, which contribute (in some undefined way and to some undefined degree) to their injuries, relies on an attenuated chain of conjecture insufficient to support standing." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1142-43 (9th Cir. 2013) (citation and internal quotation marks omitted).[6] Because Plaintiffs have not shown that the alleged harms are

_____

[6] Plaintiffs attempt to distinguish *Bellon* on the basis that it "was a summary judgment decision on standing." Opp'n at 37 n.15. Plaintiffs misapprehend both the procedural posture in *Bellon* and its significance. In *Bellon*, the district court, on cross-motions for summary judgment, granted plaintiffs' motion on one count and dismissed a second count. 732 F.3d at 1138. On appeal, defendants contended, for the first time, that the case must be dismissed for lack of Article III standing, and hence jurisdiction. *Id.* at 1138-39. The court in *Bellon* noted that because the case had proceeded beyond the pleading stage, plaintiffs could no longer rely on mere allegations; instead the "basis for standing must affirmatively appear in the record." *Id.* at 1139 (internal citation and quotation marks omitted). Nothing in the posture of *Bellon* changes the standing analysis or its applicability to this case. Because it is jurisdictional, whether by

"fairly traceable" to the government actions they challenge, they have not demonstrated that they have standing.  The Court therefore lacks jurisdiction, and the Complaint must be dismissed.

In their brief, Plaintiffs claim that they are challenging "systemic, aggregate acts" rather than "a determination by one federal agency" and claim that this "strengthens the causation element."  Opp'n at 36.  It does not.  Each of the government actions that Plaintiffs challenge suffers from the same causality defect, which is Plaintiffs' failure to account at all for the many actions by third parties not before the Court that necessarily contributed to the harms that Plaintiffs allege.  Labeling the government actions as systemic or aggregating those actions does nothing to cure this fundamental standing defect, which permeates the Complaint and leaves the Court without jurisdiction.

> ### C.    The Court cannot redress Plaintiffs' injuries.

Because there is no remedy that the Court could fashion to provide Plaintiffs with the relief they seek, the Complaint must be dismissed.  For a claim against the government to be redressable, a plaintiff must trace its injury to a particular act or omission, the reversal of which would address that injury.  A plaintiff fails to establish standing when "the prospect of obtaining relief from the injury as a result of a favorable ruling [is] too speculative[.]"  *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).  There must be a substantial likelihood that the injury will be redressed by a favorable judicial decision.  *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010).

---

allegations or by evidence, a plaintiff must be able to demonstrate that it has standing at every stage of the proceedings.

Here, Plaintiffs seek the extraordinarily unworkable remedy of a Court order directing the government "to prepare a consumption-based inventory of U.S. $CO_2$ emissions" and "prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric $CO_2$." Compl. at 94, Prayer for Relief ¶¶ 6,7. These remedies would require the Court to override existing statutes that explicitly call for the development of energy resources, and that direct federal agencies to balance energy needs and conservation and environmental goals.[7] These remedies would also require the Court to direct unspecified agencies to take actions they lack statutory authority to take. *See Am. Bus. Ass'n v. Slater*, 231 F.3d 1, 9 (D.C. Cir. 2000) (agencies are "creatures of statute" whose powers and obligations are dependent upon congressional authorization). As such, a court order requiring federal agencies to prepare a consumption-based inventory of $CO_2$ emissions and to prepare and implement a plan to phase out fossil fuel emissions would raise fundamental separation of powers issues.

In their brief, Plaintiffs fail to acknowledge the paradox of seeking an impossible remedy. In one breath, they deny that they are "asking this Court to order Defendants to rewrite energy regulations, negate the purpose of existing statutes, or order agencies to do something that they do not have statutory authority to do." Opp'n at 40. But in the next breath, they ask the Court to "enjoin[] additional fossil fuel production and extraction on federal public lands"; "set[] aside subsidies that support fossil fuel production . . ." *id.*; and "prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions." Compl. at 94, Prayer for Relief ¶ 7. Because the remedies that Plaintiffs seek are fundamentally at odds with valid statutes and

---

[7] *See, e.g.* Energy Security Act of 1980 Pub. L. No. 96-294, § 100(3), 94 Stat. 611 (1980); Public Utility Regulatory Policies Act of 1978 § 2, 16 U.S.C. § 2601; Surface Mining Control and Reclamation Act of 1977 § 101, 30 U.S.C. § 1201; Energy Reorganization Act of 1974 § 2(a), 42 U.S.C. § 5801; Mining and Minerals Policy Act of 1970 § 101, 30 U.S.C. § 21a.

regulations, Plaintiffs' alleged injuries cannot be redressed by a favorable ruling.  For this reason as well, Plaintiffs lack standing and this Court lacks jurisdiction over Plaintiffs' claims, which must be dismissed.

"The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 170 (1803).  Here, Plaintiffs seek to shoehorn the universal public interest in having executive officers undertake measures to address climate change, into an individual private right, vindicable by the courts.  But it is the province of the political branches, not the judiciary, to determine what strategies to prevent climate change are the most wise, to what level $CO_2$ emissions should be reduced, how much of the global reduction should be borne by the United States, and which agencies should be charged with promulgating regulations to implement the reductions.  *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 131 S.Ct. 2527, 2537 (2011) ("it is primarily the office of Congress, not the federal courts, to prescribe national policy in areas of special federal interest.").  The Court should therefore decline Plaintiffs' invitation to short-circuit the political and regulatory processes.

## II.    PLAINTIFFS FAIL TO STATE ANY COGNIZABLE CONSTITUTIONAL CLAIM

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While a court must accept the material factual allegations as true, conclusory statements "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions. . . ." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).  Even if the Court accepts all of the material facts as true, all four counts of the Complaint must be dismissed for failure to state a claim.  No court has ever

recognized a fundamental right to be free of $CO_2$ emissions, nor found youth or posterity to be a suspect class. As such, the question for the Court on the Fifth Amendment claims is whether the government's actions have a rational basis, that is, whether those acts are permissible under any "reasonably conceivable set of facts," which Plaintiffs do not challenge. The Ninth Amendment secures no substantive rights. And the public trust doctrine does not impose any relevant enforceable duties on the Federal Defendants.

> **A.    Plaintiffs fail to state a claim under the Due Process Clause.**

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The Due Process Clause requires heightened scrutiny of governmental actions that interfere with fundamental rights and liberty interests, such as the right to marry, to have children, to direct the upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). But the Supreme Court has cautioned that courts must "exercise the utmost care whenever we are asked to break new ground in this field." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992) (rejecting claim that a governmental employer's duty to provide a safe working environment is a substantive component of the Due Process Clause).

The Supreme Court's substantive Due Process jurisprudence has two features. First, the Due Process Clause protects fundamental rights and liberties that are "deeply rooted in this Nation's history and tradition," *Moore v. City of E. Cleveland*, 431 U.S. 494, 503 (1977) and "implicit in the concept of ordered liberty" such that "neither liberty nor justice would exist if they were sacrificed." *Palko v. Connecticut*, 302 U.S. 319, 325, 326 (1937), *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784 (1969). Second, the Court has required a "careful description" of the asserted fundamental liberty interest. *Reno v. Flores*, 507 U.S. 292, 302

(1993).  The party asserting the right has the burden of establishing it.  *See Michael H. v. Gerald D.*, 491 U.S. 110, 125 (1989).

Plaintiffs claim that their Fifth Amendment rights have been infringed by government actions that have "caused atmospheric $CO_2$ to rise to levels that dangerously interfere with a stable climate system . . ." Compl. ¶ 279.  But, as explained in the government's opening brief, no court has ever recognized a fundamental right to be free from $CO_2$ emissions or climate change.  To the contrary, courts that have considered the issue have consistently held that there is no constitutional right to a healthful or pollution-free environment.  *See Nat'l Sea Clammers Ass'n v. City of New York*, 616 F.2d 1222, 1237-38 (3d. Cir. 1980), *dismissed and vacated in part on other grounds sub nom. Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981); *S.F. Chapter of A. Philip Randolph Inst. v. EPA*, No. C-07-04936, 2008 WL 859985, at 6-7 (N.D. Cal. Mar. 28, 2008) ("Plaintiffs also allege deprivation of the right to be free of climate change pollution, but that right is not protected by the Fourteenth Amendment [Due Process Clause]. . ."); *Pinkney v. Ohio Envtl. Prot. Agency*, 375 F. Supp. 305, 310 (N.D. Ohio 1974) ("[T]he Court has not found a guarantee of the fundamental right to a healthful environment implicitly or explicitly in the Constitution."); *Gasper v. La. Stadium & Exposition Dist.*, 418 F. Supp. 716, 720-21 (E.D. La. 1976), *aff'd* 577 F.2d 897 (5th Cir. 1978) ("the courts have never seriously considered the right to a clean environment to be constitutionally protected under the Fifth and Fourteenth Amendments."); *Hagedorn v. Union Carbide Corp*, 363 F. Supp. 1061, 1064-65 (N.D. W.Va. 1973) (finding no cause of action under the Fifth or Fourteenth Amendments for complaint alleging that emissions were fouling the air); *Tanner v. Armco Steel Corp.*, 340 F. Supp. 532, 537 (S.D. Tex. 1972) ("no legally enforceable right to a healthful environment, giving rise to an action for damages, is guaranteed by the Fourteenth Amendment

or any other provision of the Federal Constitution.").  Accordingly, government actions that contribute to climate change are not subject to strict scrutiny, but are instead reviewed under the rational basis standard.

In response to these numerous authorities, Plaintiffs do not argue that a court has ever recognized a fundamental right to be free from $CO_2$ emissions or climate change.  And they do not ask this Court to establish such a constitutional right.  Instead, Plaintiffs seek to establish a constitutional violation by relying on a line of cases where the government placed a person in a position of danger, thus incurring an affirmative duty to provide for that person's safety and security.  Opp'n at 4-6.  But as shown below, the cases that Plaintiffs rely upon are wholly inapplicable.

As a general matter, the "[Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.  It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means."  *DeShaney v. Winnebago Cty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1986).  Thus, the Due Process Clause does not generally confer affirmative rights to governmental aid, even though such aid may be necessary to secure a person's life, liberty, or property rights.

As Plaintiffs note, courts have recognized a limited exception to this general rule: "when a state officer's conduct places a person in peril in deliberate indifference to their safety, that conduct creates a constitutional claim."  *See Penilla v. City of Huntington Park*, 115 F.3d 707, 709 (9th Cir. 1997).  But the cases Plaintiffs rely upon are inapplicable here, because in each of those cases, the court found that the government conduct had significantly facilitated the

violation of an individual's life, liberty, or property interests, all of which are constitutionally protected. Here, by contrast, the government has established (and Plaintiffs do not dispute) that there is no similarly protected fundamental right to an environment free of climate change.

A review of the facts in those cases illustrates this critical difference. In *Wood v. Ostrander*, a police officer arrested a driver for driving while intoxicated, impounded the vehicle, and left a female passenger alone in a high-crime neighborhood at 2:30 am, where she was subsequently raped. 879 F.2d 583, 586 (9th Cir. 1989). In *Penilla*, police officers responding to a 9-1-1 call found a man in need of immediate medical care, proceeded to cancel the request for paramedics, and locked the man inside his house where he died of respiratory failure. 115 F.3d at 708. In *L.W. v. Grubbs*, defendants made a registered nurse at a custodial institution work alone with a violent sex offender who then raped and terrorized her. 974 F.2d 119, 120 (9th Cir. 1992). And in *Munger v. City of Glasgow Police Department*, after responding to a call reporting a disturbance at a bar, the police forced an unruly and visibly intoxicated patron outside the bar on a frigid 11-degree night wearing only a t-shirt, and he subsequently died of hypothermia. 227 F.3d 1082, 1084-85 (9th Cir. 2000). The common theme running through these cases is that "the state creates the danger and removes the individual's ability to protect himself." *Russell v. Gregoire*, 124 F.3d 1079, 1093 n.10 (9th Cir. 1997). All of the cases involved a clear and present danger of imminent physical harm to a specific plaintiff, an overt government act that proximately caused the dangerous situation, deliberate indifference by the government to the plaintiff's safety, and subsequent physical harm or loss of life. None of those circumstances are present here.

At bottom, Plaintiffs argue that because the Defendant agencies have contributed to a "dangerous climate situation" by allowing or insufficiently regulating greenhouse gas emissions,

they now have an affirmative constitutional duty to protect individuals affected by climate change.  But this interpretation of the "danger exception" in *Deshaney* would swallow the rule.  Under Plaintiffs' reasoning, the Due Process Clause would be violated anytime the United States takes an action that in any way decreases a person's level of security, no matter how attenuated the causal chain.  The Court should not adopt Plaintiffs' position, as it would have no boundaries.  Every foreign policy decision by the President has the potential to increase resentment toward the United States and thus endanger its citizens at home and abroad.  But such decisions do not, and should not, provide the basis for claiming a violation of Substantive Due Process rights.  For the same reasons, mere contribution to the "dangerous climate situation" alleged here cannot serve as a basis for a constitutional claim against the Defendant agencies.  Because there is no fundamental right to an environment free from climate change, and because the challenged government actions each has a rational basis as discussed below, Count One should be dismissed for failure to state a claim.

### B.    Plaintiffs fail to state an equal protection claim.

None of the government actions that Plaintiffs complain of classify or affect youth or posterity any different than they affect other persons.  For this reason, Plaintiffs' Equal Protection Clause claim must fail.  But even if the challenged government actions classify or affect youth and posterity differently, those actions are reviewed under the rational basis test because youth and posterity are not suspect classifications that are subject to heightened scrutiny.  Moreover, the challenged actions would easily survive rational basis review because Plaintiffs have not, and cannot allege, that there is no reasonably conceivable state of facts that could provide a rational basis for the Defendants' actions.

"The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). The "Constitution presumes that even improvident decisions will eventually be rectified by [] democratic processes." *Id.* This general rule gives way only when a statute burdens a fundamental right protected by the Constitution or uses a suspect classification such as race, alienage, or national origin. Such laws are subject to strict scrutiny and will be sustained only if they are suitably tailored to a compelling state interest. *Id.*[8]

Because Plaintiffs' desire to live free of climate change is not a fundamental right, *see* Mot. to Dismiss at 22 n.9, for the Court to apply heightened scrutiny to the challenged actions, Plaintiffs must show that they are a suspect class in need of extraordinary protection. But the Supreme Court has declined to treat classifications based on age as suspect and has thus declined to apply heightened scrutiny to government actions that classify by age. In *Massachusetts Board of Retirement v. Murgia*, the Supreme Court explained that "a suspect class is one 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'" 427 U.S. 307, 313 (1976) (citation omitted). The Court stated that a suspect class is a "discrete and insular group," which the elderly are not because old age "marks that stage that each of us will reach if we live out our normal life span." *Id.* at 313-14 (citing *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152-53 n.4 (1938)).

─────────────────────

[8] Classifications based on gender or illegitimacy are subject to "intermediate scrutiny" and fail unless the classification is substantially related to a sufficiently important governmental interest, *Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982) (gender classification), or is "substantially related to a legitimate state interest." *Mills v. Habluetzel*, 456 U.S. 91, 99 (1982) (illegitimacy classification).

By the same token courts have found that the young, though they "have historically been denied full rights of adulthood while shouldering such burdens of citizenship as military service," have not been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness, as to justify searching judicial scrutiny." *Gabree v. King*, 614 F.2d 1, 2 (1st Cir. 1980) (quoting *Murgia*, 427 U.S. at 313) (internal citations omitted); *see also Cunningham v. Beavers*, 858 F.2d 269, 273 (5th Cir. 1988) ("No cases have ever held, and we decline to hold, that children are a suspect class."). Courts accordingly apply rational basis review to classifications based on youth or infancy. *See e.g.*, *United States v. Flores-Villar*, 536 F.3d 990, 998 (9th Cir. 2008) ("[r]ational basis review applies to the claim of age-based discrimination because age is not a suspect class"); *Douglas v. Hugh A. Stallings, M.D., Inc.*, 870 F.2d 1242, 1245-46 (7th Cir. 1989) ("plaintiffs can point this Court to no case which has recognized . . . minors. . . as a suspect classification."); *Jaffee v. Soc'y of N.Y. Hosp.*, No. 96-cv-3623-LAP, 1999 WL 246747, at *3 (S.D.N.Y. Apr. 27, 1999); *Price v. Cohen*, 715 F.2d 87, 93 (3d Cir. 1983).

The mere fact that children do not possess the right to vote does not establish an equal protection violation. *See e.g., Kramer v. Union Free School Dist. No. 15*, 395 U.S. 621, 625 (1969) (states have the power to impose reasonable citizenship, age, and residency requirements on the availability of the ballot). Here, Plaintiffs' allege that they already engage in political advocacy by participating in activities to raise awareness of their preferred policies, such as advocating before state, federal, and international political bodies and lobbying state and local officials. Compl. ¶¶ 16, 20, 30, 44, 53.[9] *See also Hedgepeth ex rel. Hedgepeth v. Wash. Metro.*

---

[9] Plaintiffs rely on Justice Marshall's separate opinion in *City of Cleburne* for the proposition that "minors might be considered politically powerless where government acts with

*Area Transit Auth.*, 386 F.3d 1148, 1155 (D.C. Cir. 2004) (noting the "broad array of laws and government programs dedicated to protecting and nurturing children – combined with the large numbers of voters who are parents or otherwise concerned about children – belies the argument that children and their needs cannot attract the attention of the legislature").

In *City of Cleburne*, the Supreme Court declined to categorize the developmentally disabled – persons for whom "there have been and there will continue to be instances of discrimination . . . that are in fact invidious, and that are properly subject to judicial correction under constitutional norms" – as a "quasi suspect class[] calling for a more exacting standard of judicial review than is normally accorded economic and social legislation." 473 U.S. at 442. The Court reasoned that the appropriate method of reaching such instances of discrimination is "not to create a new quasi-suspect classification and subject all governmental action based on that classification to more searching evaluation." *Id.* at 446. Likewise, this Court should decline

---

prejudice or indifference to their interests." Opp'n at 16, 17-18 (citing 437 U.S. at 472 n.24). But the point, in the passage that Plaintiffs cite, is that there is little reason to treat youth as a suspect class:

> The 'political powerlessness' of a group may be relevant . . . . Minors cannot vote and thus might be considered politically powerless to an extreme degree. Nonetheless, we see few statutes reflecting prejudice or indifference to minors, and I am not aware of any suggestion that legislation affecting them be viewed with the suspicion of heightened scrutiny.
>
> . . .
>
> Statutes discriminating against the young have not been common nor need be feared because those who do vote and legislate were once themselves young, typically have children of their own, and certainly interact regularly with minors. Their social integration means that minors, unlike discrete and insular minorities, tend to be treated in legislative arenas with full concern and respect, despite their formal and complete exclusion from the electoral process.

*City of Cleburne*, 473 U.S. at 472 n.24 (MARSHALL, J., concurring in part and dissenting in part) (internal citation omitted).

Plaintiffs' invitation to label youth or posterity – persons whose interests are less likely than the developmentally disabled to face instances of invidious discrimination – as a suspect class for purposes of the Equal Protection Clause.

Plaintiffs cite two cases – *Ramos v. Town of Vernon* and *Nunez by Nunez v. City of San Diego* – for the proposition that some courts apply heightened scrutiny "to laws that discriminate against minors." Opp'n at 17. Neither case supports this proposition. Both cases involved challenges to nearly identical juvenile curfew ordinances. *See Nunez*, 114 F.3d 935, 938 (9th Cir. 1997); *Ramos*, 353 F.3d 171, 172 (2d. Cir. 2003). Both plaintiffs alleged, and both courts found, that the ordinances violated the plaintiffs' fundamental right of free movement (or intrastate travel). Had the plaintiffs been adults, the courts would have subjected such laws to strict scrutiny, because they violate fundamental rights. *See Ramos*, 353 F.3d at 176 ("were this ordinance applied to adults, it would be subject to strict scrutiny"). At issue in each case, was not whether *age-based classifications* are entitled to heightened scrutiny (they are not), but instead whether *violations of fundamental rights* are subject to less than strict scrutiny when applied to minors. *Compare Nunez*, 114 F.3d at 945 ("[a]lthough many federal courts have recognized that juvenile curfews implicate the fundamental rights of minors, the parties dispute whether strict scrutiny review is necessary") (footnote omitted) *with Ramos*, 353 F.3d at 180 ("strict scrutiny would appear to be too restrictive a test to address government actions that implicate children's constitutional rights"). That the Ninth Circuit does not apply heightened scrutiny to age-based classifications is clear from the *Nunez* opinion itself: "Because age is not a suspect classification, distinctions based on age are subject to rational basis review." *Nunez*, 114 F.3d at 944 (citing *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991)). Because Plaintiffs have not

(and cannot) state a claim that the government's actions violate a fundamental right, those actions are, without question, subject to rational basis review.

Plaintiffs claim that even if, as is the case, they are not entitled to heightened scrutiny, the Court should not dismiss the Complaint for failure to state a claim. Opp'n at 19. Plaintiffs are incorrect. Because they are not entitled to heightened scrutiny, judicial review of the government's actions is conducted under the rational basis test, which affords those actions a strong presumption of validity. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Under this standard, a Court must uphold government action "if there is *any reasonably conceivable* set of facts that could provide a rational basis" for them. *Id.* at 315 (emphasis added). Plaintiffs attacking the rationality of legislative acts bear the burden "to negative every conceivable basis which might support [them]." *Id.* (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). Plaintiffs here do not even attempt to meet this high burden. Moreover, the many federal laws that Plaintiffs would override through the remedy they seek are laws that attempt to balance competing energy needs and conservation and environmental goals, and thus have a rational basis in policy determinations. *See* Mot. to Dismiss at 22, n.9. That interest more than justifies the government's efforts to reduce carbon emissions through regulations promulgated under various statutes while ensuring continued access to affordable and reliable energy sources. Because the challenged government actions do not disproportionately affect youth or posterity, because youth and posterity are not a suspect class subject to heightened scrutiny, and because the government's challenged actions clearly have a rational basis, Count Two should be dismissed for failure to state a claim.

### C.    The Ninth Amendment guarantees no substantive rights

In the Complaint, Plaintiffs allege that the government infringed on an implied Ninth Amendment right to a stable climate system. Compl. ¶¶ 302-06. However, while the Ninth

FED. DEFS' REPLY IN SUPPORT
OF MOTION TO DISMISS                - 19 -

Amendment may provide the basis for recognition of rights that may be enforceable under the

Fifth Amendment, it secures no substantive right.  *See Gibson v. Matthews*, 926 F.2d 532, 537

(6th Cir. 1991) ("the Ninth Amendment does not confer substantive rights in addition to those

conferred by other portions of our governing law."); *DeLeon v. Little*, 981 F. Supp. 728, 734 (D.

Conn. 1997) ("the [Ninth Amendment] does not guarantee any constitutional right") (quotation

marks and citation omitted).  In their opposition, Plaintiffs offer no additional support for their

Ninth Amendment claim.  Because the Ninth Amendment secures no substantive right, Count

Three should be dismissed for failure to state a claim.

## III.    THE COURT HAS NO JURISDICTION OVER THE PUBLIC TRUST DOCTRINE CLAIM

Article III of the Constitution limits the jurisdiction of the federal courts to, *inter alia*,

cases "arising under this Constitution, the Laws of the United States, and Treaties. . ." U.S.

CONST. art. III § 2, cl. 1.  Because the public trust doctrine does not "arise under" federal law,

this Court has no jurisdiction to hear Plaintiffs' public trust claim and it must be dismissed.  Fed.

R. Civ. P. 12(h)(3).  Moreover, because a public trust doctrine claim does not lie against the

federal government, it should be dismissed for failure to state a claim.  Even if an actionable

public trust doctrine claim against the federal government did arise under federal law, courts

have not applied the doctrine to create a cause of action for permitting $CO_2$ emissions.

Under the public trust doctrine, which is rooted in Roman and English common law and

which vested in the original states, the "title and dominion in lands flowed by the tide water were

in the King for the benefit of the nation."  *Phillips Petroleum Co. v. Mississippi*, 484 U.S. 469,

473 (1988) (quoting *Shively v. Bowlby*, 152 U.S. 1, 57 (1894)).  The states' right to use such

lands is limited to the extent that it would cause "substantial impairment of the interest of the

public in the waters," and the states' right to the water is subject to "the paramount right of

[C]ongress to control their navigation so far as may be necessary for the regulation of commerce

with foreign nations and among the states." *Ill. Cent. R.R. Co. v. Illinois*, 146 U.S. 387, 435 (1892).  While some state courts have expanded the doctrine to protect additional water uses such as recreation, aesthetic enjoyment, and preservation of flora and fauna, there has been no parallel development of the doctrine as it pertains to federally-owned waterbeds.  *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1083 (D.C. Cir. 1984).  Equally fatal to Plaintiffs claims, courts have not "expanded the doctrine to protect the atmosphere . . . ."  *Alec L. v. Jackson,* 863 F.Supp.2d 11, 13 (D.D.C. 2012), *aff'd sub nom. Alec L. ex rel. Loorz v. McCarthy*, 561 F. App'x 7 (D.C. Cir. 2014).[10]

The Supreme Court has long and consistently stated that the public trust doctrine is a matter of state (not federal) law.  *PPL Montana, LLC v. Montana*, __ U.S. __, 132 S.Ct. 1215, 1235 (2012); *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 285 (1997); *Appleby v. City of New York*, 271 U.S. 364, 395 (1926); *Long Sault Dev. Co. v. Call*, 242 U.S. 272, 278-79 (1916); *United States v. 32.42 Acres of Land*, 683 F.3d 1030, 1037-38 (9th Cir. 2012).  The contours of the doctrine "do not depend upon the Constitution," and the states "retain residual power to determine the scope of the public trust over waters within their borders . . . ."  *PPL Montana*, 132 S. Ct. at 1235.  Because the doctrine is a matter of state law, a public trust claim does not "arise"

---

[10] Plaintiffs claim that courts have "recognized that the atmosphere is a public trust resource."  Opp'n at 27.  But the cases Plaintiffs cite declined to recognize a common law public trust doctrine right to protect the atmosphere.  *See Sanders-Reed v. Martinez*, 350 P.3d 1221, 1225 (N.M. Ct. App. 2015) ("Plaintiffs have cited no cases – and we have found none – where another jurisdiction's appellate court has concluded that common law public trust principles independently apply to management of the atmosphere."); *Filippone v. Iowa Dep't of Nat. Res.*, No. 12-0444, 2013 WL 988627, at *3 (Iowa Ct. App. Mar. 13, 2013) (Defendant "does not have a duty under the public trust doctrine to restrict greenhouse gases to protect the atmosphere…"); *Aronow v. Minnesota*, No. A12-0585, 2012 WL 4476642, at *3 (Minn. Ct. App. Oct. 1, 2012) ("no Minnesota appellate court has held that the public-trust doctrine applies to the atmosphere"); *see also Tex. Comm'n on Envtl. Quality v. Bosner-Lain*, 438 S.W.3d 887 (Tex. App. 2014) (vacating and dismissing state district court decision that Plaintiffs rely upon).

under federal law, and must be dismissed for lack of jurisdiction.  *See Alec L.*, 863 F. Supp. 2d at 15.

In addition, because a public trust doctrine claim does not lie against the federal government, Plaintiffs' claim should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Plaintiffs claim that the public trust doctrine imposes rights and duties on the federal government.  But none of the cases Plaintiffs rely upon has held that a plaintiff may sue the federal government on a public trust claim.  Plaintiffs cite *Light v. United States*, 220 U.S. 523 (1911) and *United States v. Trinidad Coal & Coking Company*, 137 U.S. 160 (1890), for the proposition that the "Supreme Court has found a public trust in federal resources."  Opp'n at 22. Neither case, however, suggests that a Plaintiff can sue the federal government for violating the public trust doctrine.  To the contrary, in *Light* the Supreme Court stated that "it is not for the courts to say how [public lands held in] trust shall be administered.  That is for Congress to determine."  *Light*, 220 U.S. at 537 ((citing *Trinidad*, 137 U.S. at 170).  *In re Steuart Transportation Company*, which Plaintiffs also rely upon, involved a suit by federal and state government claimants against the owner of a vessel responsible for causing an oil spill that injured migratory birds.  495 F. Supp. 38, 40 (E.D. Va. 1980).  In permitting the suit to go forward under public trust and *parens patriae* theories, the court stated that "the State of Virginia and the United States have the right and the duty to protect and preserve the public's interest in natural wildlife resources."  *Id.* at 40.  Nothing in the court's opinion however suggests that a plaintiff can sue the government under a public trust theory.[11]

---

[11] Plaintiffs also rely on *United States v. 1.58 Acres of Land*, where a court held that the United States could condemn state public trust property.  In dictum, that court stated that the federal government is restricted in its ability to abdicate responsibilities over public trust land. 523 F. Supp. 120 (D. Mass. 1981).  However, the Ninth Circuit has declined to follow this

Nor can Plaintiffs locate the source of a federal public trust doctrine.  In *PPL Montana*, the Supreme Court "directly and categorically rejected any federal constitutional foundation for that doctrine, without qualification or reservation."  *Alec L.*, 561 F. App'x at 8 (citing *PPL Montana*, 132 S. Ct. at 1234-35).  Plaintiffs cite precatory language in court briefs, federal statutes, and treaties, recognizing a responsibility to protect the environment.  Opp'n at 24 – 27. Plaintiffs claim such language constitutes an admission that "there is a federal Public Trust Doctrine" but concede that it "do[es] not form the origination" of such a doctrine.  *Id.* at 24. Even assuming that such language were to prove the existence of a separate federal public trust doctrine, nothing in the precatory language provides for a cause of action against the federal government.  Because Plaintiffs cannot show that a public trust claim lies against the federal government, the public trust claim should also be dismissed, pursuant to Rule 12(b)(6), for failure to state a claim.

## Conclusion

This Court should dismiss the Complaint for a lack of subject matter jurisdiction and a failure to state a claim upon which relief can be granted.

Dated:  February 10, 2016              Respectfully submitted,

                                           JOHN C. CRUDEN
                                           Assistant Attorney General
                                           Environment & Natural Resources Division

---

dictum.  *See United States v. 32.42 Acres of Land*, 683 F.3d 1030, 1039 (9th Cir. 2012) (concluding that when the United States takes tidal lands by eminent domain, it does so in "full fee simple, free of California's public trust"); *see also United States v. 11.0337 Acres of Land*, 685 F. Supp. 214, 216-17 (N.D. Cal. 1988) (concluding that the "United States' condemnation of [state tidelands] extinguishes the State's public trust easement" and declining to follow *1.58 Acres of Land*).

<u>*s/ Sean C. Duffy*</u>
SEAN C. DUFFY (NY Bar. No. 4103131)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
601 D Street NW
Washington, DC 20004
Telephone: (202) 305-0445
Facsimile:  (202) 305-0506
sean.c.duffy@usdoj.gov

*Attorneys for Federal Defendants*

**<u>Certificate of Service</u>**

I hereby certify that on February 10, 2016, I filed the foregoing with the Clerk of Court

via the CM/ECF system, which will provide service to all attorneys of record.

<u>*s/ Sean C. Duffy*</u>
Sean C. Duffy
*Attorney for Federal Defendants*