JOHN C. CRUDEN
Assistant Attorney General

SEAN C. DUFFY (NY Bar. No. 4103131)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
601 D Street NW
Washington, DC 20004
Telephone:  (202) 305-0445
Facsimile:  (202) 305-0506
sean.c.duffy@usdoj.gov

*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**, et al.,<br>      Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA**, et al.,<br>      Federal Defendants. | Case No. 6:15-cv-01517-TC<br><br>**FEDERAL DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATION OF MAGISTRATE JUDGE**<br><br>**(ECF NO. 68)** |

# TABLE OF CONTENTS

Introduction ........................................................................................................ 1

    I.      BACKGROUND ...................................................................................... 4

         A.     The Complaint ................................................................ 4

         B.     The Motions to Dismiss and the Magistrate's Recommendation ............. 8

    II.     STANDARD OF REVIEW ........................................................................ 9

    III.   OBJECTIONS TO THE FINDINGS AND RECOMMENDATION ........................................ 10

         A.     The Executive Branch's duties with respect to CO2 emissions, and the scope of potential federal court actions to enforce those duties, are defined by statute, not the Constitution. ............................................... 11

         B.     Plaintiffs do not state a cognizable due process claim because they do not identify a fundamental right, or a duty to be protected from harm, that has been violated .................................................................. 14

              1.     There is no fundamental right to be free from climate change. ...................................................................... 15

              2.     The Due Process clause does not impose an affirmative duty on the United States to guarantee minimum levels of safety and security. ................................................................. 17

         C.     Because the public trust doctrine is exclusively a matter of state law that applies only to states, plaintiffs cannot assert a claim against the federal government. ................................................................. 19

              1.     Any claim that there exists a federal public trust is foreclosed by recent Supreme Court and Ninth Circuit decisions.................. 20

              2.     The public trust doctrine does not apply to the atmosphere. ........ 24

              3.     The Court should not create an implied right of action. .............. 25

         D.     Plaintiffs have not shown that they have Article III standing.................. 26

              1.     Unlike in Massachusetts v. EPA, plaintiffs here cannot established standing. ................................................... 27

              2.     Plaintiffs have not alleged injuries that are fairly traceable to the conduct of the federal agencies. ............................................... 31

              3.     Plaintiffs' injuries are unlikely to be redressed by a favorable ruling. .................................................................. 33

Conclusion ........................................................................................................ 35

# TABLE OF AUTHORITIES

**Cases**

*Alabama v. Texas*,
    347 U.S. 272 (1954) ............................................................................................. 23

*Alec L. ex rel. Loorz v. McCarthy*,
    561 F. App'x 7 (D.C. Cir. 2014) ....................................................................... 22

*Alec L. v. Jackson*,
    863 F. Supp. 2d 11 (D.D.C. 2012) ......................................................... 19, 21, 25

*Allen v. Wright*,
    468 U.S. 737 (1984) ...................................................................................... 30, 33

*Am. Bus. Ass'n v. Slater*,
    231 F.3d 1 (D.C. Cir. 2000) ............................................................................... 33

*Am. Fuel & Petrochem. Mfrs. v. O'Keeffe*, __ F. Supp. 3d __,
    No. 3:15-cv-467-AA, 2015 WL 5665232 (D. Or. Sept. 23, 2015) ................... 10

*American Electric Power Co. v. Connecticut*,
    564 U.S. 410 (2011) ............................................................ 3, 11, 12, 14, 26, 34

*Appleby v. City of N.Y.*,
    271 U.S. 362 (1926) ........................................................................................... 20

*Aronow v. Minnesota*,
    No. A12-0585, 2012 WL 4476642 (Minn. Ct. App. Oct. 1, 2012) ................... 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 10

*Bennett v. Spear*,
    520 U.S. 154 (1997) ........................................................................................... 31

*Bush v. Lucas*,
    462 U.S. 367 (1983) ...................................................................................... 25, 26

*Carlson v. Green*,
    446 U.S. 14 (1980) ............................................................................................. 25

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
    598 F.3d 1115 (9th Cir. 2010) ............................................................................. 9

*City of Alameda v. Todd Shipyards Corp.*,
    635 F. Supp. 1447 (N.D. Cal. 1986) .................................................................. 23

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013) .................................................................................. 27, 29

*DeShaney v. Winnebago County Department of Social Services*,
    489 U.S. 189 (1989) ...................................................................................... 15, 17

*District of Columbia v. Air Fla., Inc.*,
 750 F.2d 1077 (D.C. Cir. 1984) ................................................................ 20, 24

*Elizabeth Retail Props. LLC v. KeyBank Nat'l Ass'n*,
 83 F. Supp. 3d 972 (D. Or. 2015) .................................................................... 9

*Ex parte Levitt*,
 302 U.S. 633 (1937) ........................................................................................ 30

*FCC v. Beach Commc'ns, Inc.*
 508 U.S. 307 (1993) ........................................................................................ 16

*Federal Election Commission v. Akins*,
 524 U.S. 11 (1998) .......................................................................................... 30

*Filippone v. Iowa Dep't of Natural Res.*, No. 12-0444,
 2013 WL 988627  (Iowa Ct. App. Mar. 13, 2013) ......................................... 25

*Flast v. Cohen*,
 392 U.S. 83 (1968) ..................................................................................... 4, 27

*Gasper v. La. Stadium & Exposition Dist.*,
 418 F. Supp. 716 (E.D. La. 1976) ................................................................... 16

*Georgia v. Tennessee Copper Co.*,
 240 U.S. 650 (1916) ........................................................................................ 14

*Hagedorn v. Union Carbide Corp.*,
 363 F. Supp. 1061 (N.D. W. Va. 1973) ........................................................... 16

*Hui v. Castaneda*,
 559 U.S. 799 (2010) ........................................................................................ 26

*Illinois Central Railroad v. Illinois*,
 146 U.S. 387 (1892) .................................................................................. 21, 26

*Kleppe v. New Mexico*,
 426 U.S. 529 (1976) ........................................................................................ 23

*L.W. v. Grubbs*,
 974 F.2d 119 (9th Cir. 1992) .......................................................................... 18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 134 S. Ct. 1377 (2014) .................................................................................... 30

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) .......................................................................... 27, 28, 30, 31

*Lujan v. Nat'l Wildlife Ass'n*,
 497 U.S. 871 (1990) ........................................................................................ 30

*Marbury v. Madison*,
 5 U.S. (1 Cranch) 137 (1803) .......................................................................... 34

*Massachusetts v. EPA*,
 549 U.S. 497 (2007) ....................................................... 4, 12, 13, 27, 28, 34

*Massachusetts v. Mellon,*
 262 U.S. 447 (1923) ............................................................................................ 30

*Maya v. Centex Corp.,*
 658 F.3d 1060 (9th Cir. 2011) ............................................................................ 31

*McDonnell Douglas Corp. v. Commodore Bus. Machs. Inc.,*
 656 F.2d 1309 (9th Cir. 1981) .............................................................................. 9

*Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,*
 453 U.S. 1 (1981) ................................................................................................ 16

*Monsanto Co. v. Geertson Seed Farms,*
 561 U.S. 139 (2010) ............................................................................................ 27

*Munger v. City of Glasgow Police Dep't,*
 227 F.3d 1082 (9th Cir. 2000) ............................................................................ 18

*Nat'l Sea Clammers Ass'n v. City of New York,*
 616 F.2d 1222 (3d. Cir. 1980) ............................................................................ 16

*Native Village of Kivalina v. ExxonMobil Corp.,*
 696 F.3d 849 (9th Cir. 2012) ........................................................................ 11, 12

*Norton v. S. Utah Wilderness All.,*
 542 U.S. 55 (2004) .............................................................................................. 34

*Nunez ex rel. Nunez v. City of San Diego,*
 114 F.3d 935 (9th Cir. 1997) ................................................................................ 8

*Ohio Forestry Ass'n v. Sierra Club,*
 523 U.S. 726 (1998) ............................................................................................ 29

*Penilla v. City of Huntington Park,*
 115 F.3d 707 (9th Cir. 1997) .................................................................. 17, 18, 19

*Phillips Petroleum Co. v. Mississippi,*
 484 U.S. 469 (1988) ...................................................................................... 20, 24

*Pinkney v. Ohio Envtl. Prot. Agency,*
 375 F. Supp. 305 (N.D. Ohio 1974) .................................................................... 16

*Porter v. Osborn,*
 546 F.3d 1131 (9th Cir. 2008) .................................................................. 8, 17, 18

*PPL Montana, LLC v. Montana,*
 132 S. Ct. 1215 (2012) ................................................................ 4, 19, 20, 21, 22

*Raines v. Byrd,*
 521 US. 811 (1997) ............................................................................................ 27

*S.F. Chapter of A. Philip Randolph Inst. v. EPA,*
 No. C 07-04936 CRB, 2008 WL 859985 (N.D. Cal. Mar. 28, 2008) ...................... 16

*Sanders-Reed v. Martinez,*
 350 P.3d 1221 (N.M. Ct. App. 2015) .................................................................. 25

*Shively v. Bowlby*,
  152 U.S. 1 (1894)......................................................................................... 24

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)..................................................................................... 31

*Tanner v. Armco Steel Corp.*,
  340 F. Supp. 532 (S.D. Tex. 1972) ............................................................. 16

*Tex. Comm'n on Envtl. Quality v. Bosner-Lain*,
  438 S.W.3d 887 (Tex. App. 2014)............................................................... 25

*United States v. 1.58 Acres of Land*,
  523 F. Supp. 120 (D. Mass. 1981) .............................................................. 23

*United States v. 32.42 Acres of Land*,
  683 F.3d 1030 (9th Cir. 2012) ..............................................19, 21, 22, 23

*United States v. City and Cty. of San Francisco*,
  310 U.S. 16 (1940)....................................................................................... 23

*United States v. Richardson*,
  418 U.S. 166 (1974)..................................................................................... 30

*United States v. Standard Oil Co. of Cal.*,
  332 U.S. 301 (1947)..................................................................................... 25

*Utility Air Regulatory Group v. EPA*,
  134 S.Ct. 2427 (2014).............................................................................2, 13

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
  454 U.S. 464 (1982)..................................................................................... 30

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Defense Council*,
  435 U.S. 519 (1978)....................................................................................... 3

*Warth v. Seldin*,
  422 U.S. 490 (1975)....................................................................................... 9

*Wash. Envtl. Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) ..........................................................4, 12, 32

*Washington v. Glucksberg*,
  521 U.S. 702 (1997)..................................................................................... 15

*Wolfson v. Brammer*,
  616 F.3d 1045 (9th Cir. 2010) .................................................................... 33

*Wood v. Ostrander*,
  879 F.2d 583 (9th Cir. 1989) ...................................................................... 18

*Zook v. EPA*,
  611 F. App'x 725 (D.C. Cir. 2015)............................................................. 12

**Constitutional Provisions**

U.S. Const., Art. II, § 3 ................................................................................ 13

U.S. Const., Art. III, § 2, cl. 1 ....................................................................... 26

U.S. Const., Art. IV, § 3, cl. 2 ....................................................................... 23

U.S. Const., Art. VI, cl. 2 ............................................................................. 21

**Statutes**

28 U.S.C. § 636(b)(1) ..................................................................................... 9

30 U.S.C. § 21a ............................................................................................ 33

42 U.S.C. § 1983 ............................................................................... 8, 15, 17

42 U.S.C. § 7408 .......................................................................................... 12

42 U.S.C. § 7409 .......................................................................................... 12

42 U.S.C. § 7521(a)(1) .................................................................................. 12

42 U.S.C. § 7604 .................................................................................... 14, 34

42 U.S.C. § 7607(b) ...................................................................................... 28

5 U.S.C. § 706(1) .......................................................................................... 34

52 U.S.C. § 30109(a)(8) ................................................................................ 30

Pub. L. No. 91-631 ....................................................................................... 33

Pub. L. No. 93-438 ....................................................................................... 33

Pub. L. No. 95-617 ....................................................................................... 33

Pub. L. No. 95-87 ......................................................................................... 33

Pub. L. No. 96-294 ....................................................................................... 33

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................. 9

Fed. R. Civ. P. 12(b)(6) ............................................................................... 10

**Federal Register Citations**

74 Fed. Reg. 66,496 (Dec. 15, 2009) .............................................................. 1

75 Fed. Reg. 17,004 (Apr. 2, 2010) ................................................................ 2

75 Fed. Reg. 25,324 (May 7, 2010) ................................................................ 1

75 Fed. Reg. 31,514 (June 3, 2010) ................................................................ 2

76 Fed. Reg. 34,041 (June 10, 2011) .............................................................. 2

76 Fed. Reg. 56,982 (Sept. 15, 2011) ............................................................. 2

76 Fed. Reg. 57,106 (Sept. 15, 2011) ............................................................. 1

79 Fed. Reg. 41,795 (July 17, 2014) ............................................................... 2

79 Fed. Reg. 73,545 (Dec. 11, 2014) ........................................................................... 2

80 Fed. Reg. 40,137 (July 13, 2015) ............................................................................. 1

80 Fed. Reg. 56,593 (Nov. 17, 2015) ........................................................................... 2

80 Fed. Reg. 64,510 (Oct. 23, 2015) ............................................................................ 2

80 Fed. Reg. 64,662 (Oct. 23, 2015) ............................................................................ 2

81 Fed. Reg. 2,319 (Jan. 15, 2016) ............................................................................... 2

81 Fed. Reg. 4,747 (Jan. 27, 2016) ............................................................................... 2

81 Fed. Reg. 6,615 (Feb. 8, 2016) ................................................................................ 2

## Introduction

On April 8, 2016, the magistrate issued findings and a recommendation that the Court permit plaintiffs to proceed with a first-of-its-kind lawsuit that seeks to establish novel constitutional rights and a novel federal common law of public trust.  The United States objects.

Climate change poses a monumental threat to Americans' health and welfare by driving long-lasting changes in our climate, leading to an array of severe negative effects, which will worsen over time.  *See* Endangerment & Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 74 Fed. Reg. 66,496, 66,518 (Dec. 15, 2009) (concluding that "compelling" scientific evidence supports the "attribution of observed climate change to anthropogenic" emissions of greenhouse gases).

Recognizing the need to act, the Executive Branch over the past decade has engaged in numerous initiatives to reduce the emissions of carbon dioxide ($CO_2$) and other greenhouse gasses (GHGs) that contribute to global warming.  The President has issued a Climate Action Plan.[1]  And EPA has enacted numerous rules aimed at reducing GHGs.   In joint rulemakings with the Department of Transportation, EPA has issued final rules that will eliminate an estimated six billion metric tons of GHG emissions from the transportation sector and has proposed further reductions.[2]  EPA has also issued final rules regulating GHG emissions in the electricity sector, which are designed to reduce the industry's carbon emissions in 2030 by 32

---

[1] https://www.whitehouse.gov/sites/default/files/image/president27sclimateactionplan.pdf

[2] 74 Fed. Reg. 66,496 (Dec. 15, 2009); 75 Fed. Reg. 25,324 (May 7, 2010) (GHG standards for passenger vehicles and light-duty trucks starting in model year 2012); 76 Fed. Reg. 57,106 (Sept. 15, 2011) (GHG standards medium and heavy-duty engines starting in model year 2016); 77 Fed. Reg. 62,624 (Oct. 15, 2012) (GHG standards for passenger vehicles and light-duty trucks starting in model year 2017); 80 Fed. Reg. 40,137 (July 13, 2015) (proposed GHG standards medium and heavy-duty engines starting in model year 2018).

percent from 2005 levels.[3]  These sectors—transportation and electricity—were responsible,

respectively, for 26 and 30 percent of total U.S. GHG emissions in 2014.[4]  In addition, certain

high-emitting industrial facilities and other sources must obtain clean air permits that address

their GHG emissions.[5]  EPA has also enacted regulations governing the sequestration of carbon

pollution underground[6] and has proposed rules to limit GHG emissions from oil and gas

production and municipal solid waste landfills.[7]  And it is not just EPA, acting pursuant to the

Clean Air Act, that is enacting rules that have the effect of reducing GHGs.  Actions by other

federal agencies pursuant to other statutory authorizations also have the effect of reducing

GHGs.[8]

--------

[3] 80 Fed. Reg. 64,662 (Oct. 23, 2015) (emission guidelines for reducing greenhouse gas emissions from existing fossil-fuel fired power plants, the highest-emitting stationary sources of $CO_2$); 80 Fed. Reg. 64,510 (Oct. 23, 2015) (standards of performance for greenhouse gas emissions from new, modified, or reconstructed fossil-fuel fired power plants).

[4] *https://www3.epa.gov/climatechange/ghgemissions/sources.html* (visited Apr. 29, 2016)

[5] 75 Fed. Reg. 17,004 (Apr. 2, 2010) (identifying when Clean Air Act permitting requirements became applicable to greenhouse gases); 75 Fed. Reg. 31,514 (June 3, 2010) (establishing a process for phasing in Clean Air Act permitting requirements for smaller sources not previously required to obtain such permits); *Utility Air Regulatory Group v. EPA*, 134 S.Ct. 2427 (2014) ("*UARG*") (affirming that construction permits for larger sources are required to include limitations on GHG emissions).

[6] 76 Fed. Reg. 56,982 (Sept. 15, 2011) (establishing a program to permit indefinite geologic sequestration of $CO_2$);

[7] 80 Fed. Reg. 56,593 (Nov. 17, 2015) (oil and gas production); 79 Fed. Reg. 41,795 (July 17, 2014) (municipal solid waste landfills).

[8] *See e.g.* 81 Fed. Reg. 6,615 (Feb. 8, 2016) (Bureau of Land Management (part of defendant Department of the Interior) proposed rule to reduce waste of natural gas from venting, flaring, and leaks); 81 Fed. Reg. 4,747 (Jan. 27, 2016) (DOE energy conservation standards for commercial pre-rinse spray valves); 81 Fed. Reg. 2,319 (Jan. 15, 2016) (DOE energy conservation standards for residential boilers); "Joint Department of Commerce and Department of Energy: Smart Cities-Smart Growth Business Development Mission to China-April 12-17, 2015," 79 Fed. Reg. 73,545 (Dec. 11, 2014); International Trade Administration (part of defendant Department of Commerce) "Clean Technologies Mission to India," 76 Fed. Reg. 34,041 (June 10, 2011).

Federal courts play an important but limited role in this effort.  The Supreme Court ruled in *American Electric Power Co. v. Connecticut* ("*AEP*"), that plaintiffs could not seek reductions in greenhouse gas emissions from power plants under a public nuisance theory.  564 U.S. 410 (2011).  The Court reasoned that, with regard to the stationary sources of GHGs at issue in that case, Congress has chosen EPA "as best suited to serve as primary regulator," and left it to the EPA to determine "the appropriate amount of regulation in any particular greenhouse gas-producing sector," after balancing other important national interests such as "our Nation's energy needs and the possibility of economic disruption. . . ." 564 U.S. at 427-28.  EPA's authorities and responsibilities are defined by statute and, as the Court recognized in *AEP*, EPA's actions or inactions are subject to judicial review pursuant to the causes of action in the Clean Air Act.  *Id.* at 427.  *AEP* makes abundantly clear that statutes provide the source of the agency's powers and duties to control greenhouse gas emissions from such sources.  There is "no room for a parallel track" for federal courts to determine the steps necessary to reduce greenhouse gas emissions from the relevant sources.  *Id.* at 425.

In this case, plaintiffs seek to establish such a "parallel track" but on an even greater scale.  They attempt to force numerous federal agencies to more vigorously regulate $CO_2$ emissions via a suit that is based on the Due Process clause of the Fifth Amendment and the Ninth Amendment of the Constitution, as well as the public trust doctrine.  The magistrate's recommendation that this unprecedented action be allowed to proceed ignores the clear teaching of *AEP* that EPA's statutory authority under the Clean Air Act displaces other claims.  In addition, the magistrate's finding of a constitutionally-based duty under which courts can order the Executive branch to issue "sweeping regulations" (Findings at 10)—misapprehends the limited role of the courts in reviewing the work of federal agencies.  *See Vt. Yankee Nuclear*

*Power Corp. v. Nat. Res. Defense Council*, 435 U.S. 519, 555 (1978). Furthermore, the magistrate's recommendation to allow the plaintiffs' "public trust" claim to proceed is clearly contrary to the Supreme Court's directive in *PPL Montana, LLC v. Montana*, that this doctrine is a matter of state, not federal law. 132 S. Ct. 1215, 1234-35 (2012). Finally, the magistrate's finding that plaintiffs have adequately alleged Article III standing overlooks bedrock standing principles that "confine 'the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process.'" *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). It also fails to recognize the Ninth Circuit's ruling that the causality element of standing cannot be established merely by generalized allegations of government failure to adequately regulate greenhouse gas emissions. *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1142-46 (9th Cir. 2013). For all of these reasons, the magistrate's recommendations should be rejected and the claims in this case dismissed.

## I. BACKGROUND

### A. The Complaint

Twenty-one young citizens, an organization called Earth Guardians, and "Future Generations"—by and through Dr. James Hansen—have filed a complaint seeking to drastically reduce carbon emissions by imposing extensive obligations on the President, the Executive Office of the President, and numerous cabinet-level Executive agencies.[9] *See* Compl. ¶¶ 16-128, p. 94 (Prayer for Relief).

-------

[9] The defendant agencies are the departments of Energy, the Interior, Transportation, Agriculture, Commerce, Defense, State, and the EPA. The heads of these agencies are sued in their official capacities. In addition, the heads of the Council on Environmental Quality, the Office of Management and Budget, and the Office of Science and Technology Policy are sued in

Plaintiffs allege that climate change is causing ice sheets to melt into the oceans, thereby raising ocean water levels and submerging low-lying lands, *id.* ¶¶ 214-15, 218-19, 223, 225; causing ocean acidity to increase, damaging coral reefs and threatening wildlife, *id.* ¶¶ 231-235; causing ocean temperatures to increase, *id.* ¶ 236; disrupting agriculture and the fresh water supply, *id.* ¶¶ 217, 224-228; changing atmospheric moisture levels and rainfall patterns, *id.* ¶ 229; and increasing the risk of wildfires. *Id.* In addition, plaintiffs allege that fossil fuel extraction and combustion negatively impact human health, national security, and human migration and demographic patterns. *Id.* ¶¶ 238-240. Plaintiffs allege that they have already experienced these impacts, *id.* ¶¶ 16-96, and that the impacts will accelerate during the likely life-span of the individual plaintiffs and for future generations. *Id.* ¶¶ 97, 242-55.

Plaintiffs allege that the federal agencies have enabled cumulative $CO_2$ emissions to increase, *id.* ¶151, by enabling and permitting fossil fuel production and combustion, *id.* ¶¶ 164-70, 185-91, by subsidizing the fossil fuel industry, *id.* ¶¶ 171-78, and by allowing interstate and international transport of fossil fuels. *Id.* ¶¶ 179-84. With one exception,[10] plaintiffs do not identify or challenge specific agency actions, such as agency orders, permits, adjudications, or

_____

their official capacities. First Am. Compl. for Decl. and Inj. Rel. ¶¶ 98-128, ECF No. 7 ("Compl.").

[10] Plaintiffs complain about a Department of Energy order granting long-term, multi-contract authorization for the export of liquefied natural gas ("LNG") from a proposed terminal that Jordan Cove Energy Project, L.P. seeks to locate in Coos Bay, Oregon. Compl. ¶¶ 192-201; *see also* Decl. of Cassandra Bernstein, Ex. A, at 2, ECF No. 27-2 ("DOE/FE Order No. 3041"). Whether this project will be completed is in doubt. In March, the Federal Energy Regulatory Commission (FERC) denied a request to build a 232-mile-long pipeline to the proposed LNG export terminal and denied a request to build, construct, and operate the terminal. 154 FERC ¶ 61,190 at ¶¶ 1-2, 42, 46 (March 11, 2016), attached hereto as Exhibit 1. Jordan Cove has requested rehearing of FERC's order. Because it is uncertain whether there will be an LNG export terminal in Coos Bay, it is premature for plaintiffs to claim injuries from DOE's order authorizing Jordan Cove to export LNG from that terminal.

rule-makings, or the failure to undertake any of these activities.  Instead, they challenge what they term the agencies' "aggregate actions."  *Id.* ¶ 129.

The plaintiffs predicate their demands on the Due Process clause of the Fifth Amendment, equal protection principles in the Fifth Amendment, unenumerated rights reserved by the Ninth Amendment, and the public trust doctrine—an infrequently used state law doctrine whose principal purpose has been to govern state property rights in lands submerged beneath tidal and navigable waterways.

Specifically, plaintiffs first claim that the federal agencies, by "permitting, authorizing, and subsidizing fossil fuel extraction, production, transportation, and utilization," are causing "atmospheric $CO_2$ to rise to levels that dangerously interfere with a stable climate system." *Id.* ¶ 279.  They complain that the agencies "have not implemented their own plans for climate stabilization," *id.* ¶ 285, thereby endangering plaintiffs' lives, liberties, and property and violating [plaintiffs'] substantive due process rights under the Fifth Amendment.  Compl. ¶ 279.

Second, plaintiffs claim that they are an "insular minority with no voting rights" and little political power, *id*. ¶ 294, who will disproportionately bear the impacts of climate change, i*d.* ¶ 296, and therefore should be treated as a protected suspect class for equal protection purposes. They allege that "federal laws and actions that disproportionately discriminate against . . . them must be invalidated," *id.* ¶ 297, and they specifically allege that Section 201 of the Energy Policy Act discriminates against them because the full impact of $CO_2$ emissions and climate change will fall disproportionately on youth and future generations.  *Id.* ¶ 299.

Third, plaintiffs claim that the "right to be sustained by our country's vital natural systems, including our climate system," *id.* ¶ 303, and the "right to a stable climate system," *id.* ¶ 304, are "implicit liberties protected from government intrusion by the Ninth Amendment."  *Id.* ¶

303.  Plaintiffs claim that the federal agencies have infringed on these liberties through "aggregate acts," *id.* ¶ 306, although they do not specifically identify those "acts."

Finally, plaintiffs allege that they are the beneficiaries of a public trust that "protect[s] the rights of present and future generations" to "vital natural resources" including the "air (atmosphere), water, seas, [shores], and wildlife." *Id.* ¶ 308.  Plaintiffs allege that the federal agencies, through the unspecified "aggregate acts," have unconstitutionally "alienated substantial portions of the atmosphere" and have failed to satisfy a duty of care that the public trust doctrine places upon them. *Id.* ¶ 310.

Plaintiffs seek a declaration that the federal agencies have violated their fundamental constitutional rights and the public trust, and that Section 201 of the Energy Policy Act is unconstitutional on its face and as applied in DOE/FE Order No. 3041. *Id.* 94.  Plaintiffs seek an injunction prohibiting the federal agencies from future violations of the Constitution and public trust.  *Id.*  And plaintiffs ask the Court to order the agencies to "prepare a consumption-based inventory of U.S. $CO_2$ emissions," and "prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric $CO_2$." *Id.*  They ask that the Court retain jurisdiction over the case for an indefinite period of time to monitor the government's compliance with the "national remedial plan." *Id.*   While plaintiffs do not specify to what level $CO_2$ emissions must be reduced or how long this Court would need to retain jurisdiction, elsewhere in the complaint they indicate that "[g]lobal atmospheric $CO_2$ concentrations must be reduced to below 350 [parts per million] by the end of the century," *id.* ¶ 257, a goal that would require a "global reduction in $CO_2$ emissions of at least 6% per year, alongside approximately 100 gigatons of carbon drawdown this century from global reforestation and improved agriculture." *Id.* ¶ 258.

**B.      The Motions to Dismiss and the Magistrate's Recommendation**

Federal Defendants and intervenors have filed motions to dismiss.  Federal Defendants

seek dismissal on several grounds, including that the plaintiffs lack standing, have not stated

cognizable constitutional claims, and have not asserted a cognizable claim under the public trust

doctrine.  Fed. Defs.' Mem of P. & A. in Supp. of Mot. to Dismiss, ECF No. 27-1, ("Mot. to

Dismiss"); Fed. Defs.' Reply in Supp. of Mot. to Dismiss, ECF No. 57 ("Reply").

The magistrate recommends that the Court deny the motions to dismiss and permit

plaintiffs to go forward on their due process and public trust claims.  Order & Findings &

Recommendation 15-17, ECF No. 68 ("Findings").  In doing so, the magistrate assumes that the

Federal Defendants have a duty to limit $CO_2$ emissions, apparently based solely on EPA

authority under the Clean Air Act.  Findings at 10, 16.  For the due process claim, the magistrate

applies a "shocks the conscience" standard, which is reserved for cases where plaintiffs sue *state*

actors (usually law enforcement) for money damages pursuant to 42 U.S.C. § 1983.  *Id.* at 15

(citing *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)).  Turning to the public trust

doctrine, the magistrate finds that a *federal* version of that doctrine exists, that it applies to the

territorial ocean waters and atmosphere of the nation, and that it provides substantive due process

protections for some plaintiffs within the navigable waters of Oregon.  *Id.* at 20-24.  The

magistrate recommends that the Court find that plaintiffs have standing to bring these two

claims.  Finally, while the magistrate offers no recommendation as to whether the Court should

dismiss plaintiffs' Ninth Amendment and equal protection claims,[11] the Findings recommend

_____

[11] Because the Findings do not address plaintiffs' equal protection or Ninth Amendment
claims in any detail, those claims are not discussed in these objections.  As explained in our
briefs on the motion to dismiss, youth has not been found to be a suspect class by any court, and
the equal protection claim is foreclosed by Ninth Circuit case law.  *See* Reply at 14-19; *Nunez ex*

that the Court "decline to create a new separate suspect class based on posterity."[12]  Findings at

15 n.8.

## II.    STANDARD OF REVIEW

When a party objects to any portion of a magistrate judge's findings and

recommendation, the district court must make a *de novo* determination of the portions of the

proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1);

*McDonnell Douglas Corp. v. Commodore Bus. Machs. Inc.*, 656 F.2d 1309, 1313 (9th Cir.

1981).  A court may "accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

A court reviews a motion to dismiss a complaint for lack of Article III standing under

Fed. R. Civ. P. 12(b)(1).  *See Elizabeth Retail Props. LLC v. KeyBank Nat'l Ass'n*, 83 F. Supp.

3d 972, 985-86 (D. Or. 2015).  A jurisdictional challenge may be facial or factual.  Where the

jurisdictional attack is facial, the court determines whether the allegations contained in the

complaint are sufficient on their face to invoke federal jurisdiction, accepting all material

allegations in the complaint as true, and construing them in favor of the party asserting

jurisdiction.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Once a party has moved to dismiss

for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of

establishing the court's jurisdiction.  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d

1115, 1122 (9th Cir. 2010).

---

*rel. Nunez v. City of San Diego*, 114 F.3d 935, 938 (9th Cir. 1997).  In addition, the Ninth
Amendment secures no substantive rights.  *See* Mot. to Dismiss at 26-27; Reply at 19-20.  Thus,
both the equal protection and the Ninth Amendment claims should be dismissed.

[12] Federal Defendants agree with the magistrate's recommendation that the Court decline
to define future generations as a new suspect class for purposes of equal protection.

A court may also dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true.  *Am. Fuel & Petrochem. Mfrs. v. O'Keeffe*, __ F. Supp. 3d __, No. 3:15-cv-467-AA, 2015 WL 5665232, at *3 (D. Or. Sept. 23, 2015).  However, a court need not accept as true any legal conclusion set forth in a pleading.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "While a complaint attacked [under] Rule 12(b)(6) . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and punctuation omitted).  The complaint must set forth facts supporting a *plausible*, not merely *possible*, claim for relief.  *Id.*

## III.    OBJECTIONS TO THE FINDINGS AND RECOMMENDATION

Federal Defendants object to the magistrate's recommendation that the Court deny the motion to dismiss and several of the findings supporting that recommendation.  These include the finding that EPA has a general duty to regulate $CO_2$ emissions, Findings at 16-17; that a "shocks the conscience" standard is the appropriate measure of whether plaintiffs have stated a due process claim, *id.* at 15; that the public trust doctrine provides substantive due process protections against actions by the federal government, *id.* at 23; and that plaintiffs have alleged justiciable claims, *i.e.* that they have standing.  *Id.* at 8.  Federal Defendants respectfully ask that the Court reject the objectionable findings and dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

A. **The Executive Branch's duties with respect to $CO_2$ emissions, and the scope of potential federal court actions to enforce those duties, are defined by statute, not the Constitution.**

The magistrate's finding that the due process claims may proceed is based on two flawed premises. First, the magistrate found that "EPA has a duty to regulate $CO_2$ emissions for the benefit of the public health," based on a provision of the Clean Air Act that the magistrate never examined. Findings at 16-17; *id.* at 10 (citing 42 U.S.C. § 7409). Second, the magistrate found that a due process claim could be brought to remedy an alleged failure to fulfill that statutory duty. *Id.* at 15-16. Although nominally based on the Clean Air Act, the magistrate's findings are inconsistent with this law and contrary to recent Supreme Court precedent construing it.

The Clean Air Act defines the scope of EPA's duties to regulate $CO_2$ emissions and the extent to which federal courts may enforce those duties. In *AEP*, the Court made clear that plaintiffs seeking to limit greenhouse gas emissions may not do so under a common law theory, but must instead do so pursuant to the specific causes of action provided by the Clean Air Act where the Act "speaks directly to the question at issue." *AEP*, 564 U.S. at 424 (internal quotation marks and punctuation omitted). That is because "Congress designated an expert agency, here, EPA, as best suited to serve as primary regulator of greenhouse gas emissions" and left it to the agency to determine the "appropriate amount of regulation in any particular greenhouse gas-producing sector" after making an "informed assessment of the competing interests." *Id.* at 427-28. The Court found that it would be improper to conclude "that federal judges may set limits on greenhouse gas emissions in [the] face of a law empowering EPA to set the same limits." *Id.* at 429.[13]

_____

[13] Similarly, in *Native Village of Kivalina v. ExxonMobil Corp.*, the Ninth Circuit affirmed a district court's dismissal of an Alaskan native village's claim for damages against major emitters of $CO_2$ who had allegedly contributed to global warming that was destroying sea

The magistrate overstates the extent of EPA's obligations under the Clean Air Act.  In *Massachusetts*, the Supreme Court held that $CO_2$ fits within the Clean Air Act's definition of "air pollutant," contrary to EPA's initial interpretation.  549 U.S. at 528.  Therefore, EPA was authorized to regulate $CO_2$ emissions from new cars and trucks if it determined (as it later did) that $CO_2$ "contribute[s] to . . . air pollution which may reasonably be anticipated to endanger public health or welfare."  *Id.* (citing 42 U.S.C. § 7521(a)(1)).  But the Court did not express any view as to the degree to which EPA was required to regulate $CO_2$ emissions from motor vehicles, much less whether EPA was required to regulate $CO_2$ or any other GHG emissions from other sources.[14]

*Massachusetts* did not in any way suggest that EPA has a general duty, untethered to an operative statute, to regulate greenhouse gases.  As the Supreme Court subsequently observed, "[t]he Act-wide definition [of 'air pollutant'] to which the [*Massachusetts*] Court gave a

---

ice that protected the village from erosion.  696 F.3d 849 (9th Cir. 2012)696 F.3d 849, 853, 856 (9th Cir. 2012).  While the district court had dismissed the complaint for several alternative reasons, including the plaintiff's failure to state a claim, its lack of standing, and the fact that it sought resolution of a political question, the Court of Appeals addressed only the failure to state a claim, affirming on the ground that "[t]he Supreme Court has already determined that Congress has directly addressed the issue of domestic greenhouse gas emissions from stationary sources and has therefore displaced federal common law."  *Id.* at 856 (citing *AEP*, 410 U.S. at 424).

[14] The magistrate likewise read too much into 42 U.S.C. § 7409 for providing EPA with the authority to regulate $CO_2$.  *See* Findings at 10.  That provision directs EPA to promulgate NAAQS for pollutants that have been listed, and for which air quality criteria have been issued, under 42 U.S.C. § 7408.  But $CO_2$ has not been listed and EPA has not issued air quality criteria for $CO_2$.  *See e.g.*, *UARG*, 134 S. Ct. at 2435 ("To date, EPA has issued NAAQS for six pollutants: sulfur dioxide, particulate matter, nitrogen dioxide, carbon monoxide, ozone, and lead"); *Bellon*, 732 F.3d at 1136 ("the EPA has not established NAAQS for greenhouse gases.").  The Clean Air Act "entrusts to the Administrator's sole judgment" whether to list a pollutant under 42 U.S.C. § 7408, and "scientific evidence alone . . . cannot give rise to a mandatory duty to regulate."  *Zook v. EPA*, 611 F. App'x 725, 726 (D.C. Cir. 2015) (citations omitted).

'sweeping' and 'capacious' interpretation, is not a command to regulate, but a description of the universe of substances EPA may *consider* regulating under the Act's operative provisions." *UARG*, 134 S. Ct. at 2441 (2014) (internal citation omitted).  In *UARG*, the Court explained that under established separation of powers principles, Congress, through legislation, defines the EPA's authorities and duties, while the Executive executes them: "[u]nder our system of government, Congress makes laws and the President, acting at times through agencies like EPA, 'faithfully execute[s]' them.  U.S. CONST., Art. II, § 3."  *Id.* at 2446.  *Massachusetts* thus provides no support for the magistrate's finding that there exists a general duty for EPA to protect the plaintiffs from the effects of $CO_2$ emissions.  A court cannot order EPA to enact "sweeping regulations" independent of the specific directives of the Clean Air Act.  And even it if could, an agency has "significant latitude as to the manner, timing, content, and coordination of its regulations . . . ." *Massachusetts*, 549 U.S. at 533.

These cases similarly confirm that a federal court cannot declare EPA to have enforceable duties to regulate $CO_2$ beyond the specific provisions of the applicable statute – in those cases, the Clean Air Act – and that statutory duties can only be enforced through the applicable statutory procedures providing for judicial review.  Neither the magistrate nor the plaintiffs identify any duties that might apply to the other federal agencies acting pursuant to the statutes that apply to them.  But what has been said regarding EPA's duties to regulate GHGs applies equally to the claims that plaintiffs make against the other agencies for alleged violations of a duty to regulate $CO_2$.  As *AEP* makes clear, the relevant statutes determine which agencies have a duty to regulate $CO_2$ emissions, not general principles drawn from constitutional or tort law.  Courts cannot impose additional duties as the magistrate recommends here.

A plaintiff dissatisfied with EPA's regulation (or lack thereof) has one recourse under the Clean Air Act – to challenge EPA action or inaction in the manner Congress has provided. *AEP*, 564 U.S. at 429.  Section 304 of the Clean Air Act provides a specific means of challenging EPA actions or inaction, by permitting plaintiffs to bring an action "where there is an alleged failure . . . to perform any act or duty under this chapter which is not discretionary with the Administrator."  42 U.S.C. § 7604(a)(2).  That provision expressly prohibits plaintiffs from commencing an action against the EPA prior to "60 days after the plaintiff" first provides the EPA with "notice of such action."  42 U.S.C. § 7604(b)(2).  Congress has also provided a mechanism for plaintiffs to compel action unreasonably delayed, and that provision similarly requires 180-days notice before such an action may be commenced.  42 U.S.C. § 7604(a). Courts cannot derive an additional cause of action under the Clean Air Act.

**B.    Plaintiffs do not state a cognizable due process claim because they do not identify a fundamental right, or a duty to be protected from harm, that has been violated.**

Plaintiffs' due process claim fails for the additional reason that there is no legal basis for plaintiffs' theory, accepted by the magistrate, that a claim for increased regulation of $CO_2$ emissions can be grounded in the Due Process clause.  At least the states that brought the public nuisance claims against generators of $CO_2$ in *AEP* grounded their claims on an established legal theory supported by prior Supreme Court precedent.  *See AEP*, 564 U.S. at 421 (noting that the Court in *Georgia v. Tennessee Copper Co.*, 240 U.S. 650 (1916) allowed Georgia to bring a common law nuisance claim to abate sulfur dioxide discharges in Tennessee).  The claims here have no similar pedigree—no case has *ever* held that there is a due process right to enjoin air pollution.

Moreover, plaintiffs cannot avoid dismissal of their due process claim by refashioning it as an exception to the Supreme Court ruling in *DeShaney v. Winnebago County Department of*

*Social Services*, which held that the Due Process clause does not guarantee minimum levels of

safety and security. 489 U.S. 189, 195 (1989). The exceptions to the *DeShaney* rule apply in a

limited context where a state official places a plaintiff in a dangerous situation with deliberate

indifference to that person's safety. They do not provide the means for plaintiffs to mount broad

challenges to governmental policies. Moreover, such cases are limited to the context of the

statute at issue in those cases, 42 U.S.C. § 1983, which does not provide a right of action against

federal agencies. Any action that lies against the federal agencies would need to be brought

pursuant to a statute, such as the Administrative Procedure Act ("APA"), that provides a right of

action against federal agencies.

      1.     <u>There is no fundamental right to be free from climate change.</u>

      The Due Process clause requires heightened scrutiny of governmental actions that

interfere with fundamental rights and liberty interests, such as the right to marry, to have

children, to direct the upbringing of one's children, to marital privacy, to use contraception, to

bodily integrity, and to abortion. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

Plaintiffs do not provide a clear description of the fundamental right that the Court would need to

first identify before subjecting government action affecting it to strict scrutiny. Nor do they

describe it in a consistent way. *See* Compl. ¶ 279 ("stable climate system"); ¶ 285 ("Plaintiffs'

lives and their bodily integrity and dignity"). The magistrate recommends that the Court find a

violation of plaintiffs' substantive due process rights, but does so without specifically identifying

what fundamental right is at issue.

      No fundamental right is implicated in this case. Even if the Court gives the plaintiffs the

benefit of the doubt and identifies an alleged "right to a stable climate system," it must face the

fact that no court has ever recognized a fundamental right to a stable climate system or one free

from climate change. Courts have consistently held that there is no constitutional right to a healthful or pollution-free environment. *See Nat'l Sea Clammers Ass'n v. City of New York*, 616 F.2d 1222, 1237-38 (3d. Cir. 1980), *dismissed and vacated in part on other grounds sub nom. Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981); *S.F. Chapter of A. Philip Randolph Inst. v. EPA*, No. C 07-04936 CRB, 2008 WL 859985, at *6-7 (N.D. Cal. Mar. 28, 2008) ("Plaintiffs also allege deprivation of the right to be free of climate change pollution, but that right is not protected by the Fourteenth Amendment [Due Process clause]."); *Pinkney v. Ohio Envtl. Prot. Agency*, 375 F. Supp. 305, 310 (N.D. Ohio 1974) ("[T]he Court has not found a guarantee of the fundamental right to a healthful environment implicitly or explicitly in the Constitution."); *Gasper v. La. Stadium & Exposition Dist.*, 418 F. Supp. 716, 720-21 (E.D. La. 1976), *aff'd*, 577 F.2d 897 (5th Cir. 1978) ("[T]he courts have never seriously considered the right to a clean environment to be constitutionally protected under the Fifth and Fourteenth Amendments."); *Hagedorn v. Union Carbide Corp.*, 363 F. Supp. 1061, 1064-65 (N.D. W. Va. 1973) (finding no cause of action under the Fifth or Fourteenth Amendments for a complaint alleging that emissions were fouling the air); *Tanner v. Armco Steel Corp.*, 340 F. Supp. 532, 537 (S.D. Tex. 1972) ("no legally enforceable right to a healthful environment, giving rise to an action for damages, is guaranteed by the Fourteenth Amendment or any other provision of the Federal Constitution.").[15]

---

[15] Government actions that do not violate a fundamental right are reviewed under the rational basis test, which affords those actions a strong presumption of validity and upholds those actions "if there is *any reasonably conceivable* state of facts that could provide a rational basis" for them. *FCC v. Beach Commc'ns, Inc.* 508 U.S. 307, 315 (1993) (emphasis added). Plaintiffs here do not allege that any government action in this case would fail to satisfy the rational basis test. The many federal laws that plaintiffs would override through the remedy they seek are laws that attempt to balance competing energy needs, conservation and environmental goals, and thus have a rational basis in policy determinations. *See* Mot. to Dismiss at 14, n.6 (describing

2.    <u>The Due Process clause does not impose an affirmative duty on the United States to guarantee minimum levels of safety and security.</u>

Apparently recognizing that there is no fundamental right to be free from climate change, in their brief opposing Federal Defendants' motion to dismiss, plaintiffs instead argue that the federal agencies have a duty to guarantee certain levels of safety and security to them because the agencies have played a role in causing climate change.  Mem. of Pls. in Opp'n to Fed. Defs.' Mot. to Dismiss 4-9, ECF No. 41.  This argument fails for several reasons.

In *DeShaney*, the Supreme Court made clear that while the Due Process clause forbids the government from depriving individuals of life, liberty, or property without due process of law, it does not impose an affirmative obligation on the government to ensure that those interests do not come to harm by other means.  489 U.S. at 195.  In their opposition brief, plaintiffs rely on a line of cases that carve out an exception to the *DeShaney* rule for claims brought pursuant to 42 U.S.C. § 1983, "when a *state officer's* conduct places a person in peril in deliberate indifference to their safety," *Penilla v. City of Huntington Park*, 115 F.3d 707, 709 (9th Cir. 1997) (emphasis added), or engages in conduct that "shocks the conscience."  *Porter*, 546 F.3d at 1137.  The magistrate endorsed this approach, by apparently adopting the "shocks the conscience" standard.  Findings at 15.

The cases that plaintiffs and the magistrate rely upon are readily distinguishable.  In each of those cases, a plaintiff sued a state actor who facilitated a substantial invasion of the plaintiffs'

_____

Congress's balancing of conservation and environmental goals in statutes that subsidize fossil fuel production, regulate environmental impacts from energy consumption, and provide for efficient production and transportation of energy resources).  Those interests more than justify the government's efforts to reduce carbon emissions through regulations promulgated under various statutes while ensuring continued access to affordable and reliable energy sources.

rights. *Wood v. Ostrander*, 879 F.2d 583, 586 (9th Cir. 1989) (bodily harm); *L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992) (bodily harm); *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1084-85 (9th Cir. 2000) (life); *Penilla*, 115 F.3d at 708 (life); *Porter*, 546 F.3d at 1137 (society of child). All of these cases involved the same basic pattern: state action—usually by law enforcement in a custodial setting—facilitating an actual (not potential) physical injury or death of an individual. All of these cases were brought by plaintiffs after the injury or death occurred. All involved conduct that, had it been done by the state directly, would violate an established due process right. None of these cases was brought against the federal government.

Even if Section 1983 applied to federal actors, applying that standard here would extend the exception to the *DeShaney* rule far outside its ordinary context. Under the magistrate's approach, a plaintiff would need only to allege (1) an action or failure to act where there is a duty, (2) deliberate indifference, and (3) a threat of imminent harm. Under this standard, a plaintiff could raise a substantive due process claim to challenge virtually any government program. For example, plaintiffs could challenge any foreign policy decision by the President, on the theory that such decisions deliberately endanger them because they may heighten international tensions and thus may precipitate an adverse action by a foreign nation or group that infringes on an individual's life or liberty. Plaintiffs could similarly challenge any health and safety regulation, on the theory that it is insufficiently stringent, and thus facilitates the regulated communities' ability to infringe on the public's life or liberty. Either case would easily satisfy the magistrate's test, because in either case the government will have taken some action or inaction that threatens harm to a potential claimant's life or liberty, and will have done so knowing that a different action might have done more to prevent such harm. These scenarios are far removed from the cases recognizing Section 1983 claims "when a state officer's conduct

places a person in peril in deliberate indifference to their safety." *Penilla*, 115 F.3d at 709.

Those cases involved discrete acts by state actors that directly and proximately placed a

particular individual in peril; none of the cases challenged a regulatory policy and its widespread

effects on the United States citizenry.  The Court should decline to expand the Due Process

clause in this unprecedented and unwarranted manner.

Because there is no fundamental right to a "stable climate system" and plaintiffs cannot

show that the government programs they attack lack a rational basis, the due process claim

should be dismissed.  The magistrate, in adopting the "shocks the conscience" test, applies a

standard that should not apply in cases where plaintiffs assert broad challenges to government

policies, and should not apply to challenges to actions or inaction by federal agencies.

### C.    Because the public trust doctrine is exclusively a matter of state law that applies only to states, plaintiffs cannot assert a claim against the federal government.

The public trust doctrine does not impose obligations on the federal government.  This is

confirmed by recent opinions in both the Supreme Court and the Ninth Circuit.  *PPL Mont.*, 132

S. Ct. at 1234-35; *United States v. 32.42 Acres of Land*, 683 F.3d 1030, 1038 (9th Cir. 2012).

Further, a district court in the District of Columbia, in a decision affirmed by the D.C. Circuit,

has specifically found that the same public trust claim that plaintiffs assert in this case is

foreclosed by *PPL Montana*.  *Alec L. v. Jackson*, 863 F. Supp. 2d 11, 15 (D.D.C. 2012), *aff'd sub*

*nom. Alec L. ex rel. Loorz v. McCarthy*, 561 F. App'x 7 (D.C. Cir. 2014).  Plaintiffs' public trust

claim is thus foreclosed by both binding precedent and persuasive authority by courts that have

considered the parameters of the doctrine and unanimously concluded that it is exclusively a

matter of state law and thus raises no federal question.  But even if the Court were to recognize

the existence of a federal public trust, it would need to face the fact that courts have not extended

the public trust to permit claims based on the "atmospheric trust" that plaintiffs seek to enforce in this case.

       1.    <u>Any claim that there exists a federal public trust is foreclosed by recent Supreme Court and Ninth Circuit decisions.</u>

      The Supreme Court's decision in *PPL Montana* forecloses the public trust claim that plaintiffs assert here.  In *PPL Montana*, the State argued that if the Court denied it title to riverbeds under the equal footing doctrine, it would "undermine the public trust doctrine" by interfering with the State's rights over navigable waters within its borders.[16]  *PPL Montana*, 132 S. Ct. at 1234.  The State asserted that the public trust doctrine is grounded in the United States Constitution as part of the equal footing doctrine, Br. for Resp. 53, 132 S. Ct. 1215 (No. 10-218), and that it is therefore binding as a matter of federal law.  *Id.* at 25 & n.11.  The Supreme Court rejected Montana's position and explained that, "[w]hile equal-footing cases have noted that the State takes title to the navigable waters and their beds in trust for the public, the contours of that public trust do not depend upon the Constitution" but "remains a matter of state law."[17]  132 S. Ct. at 1234-35.  That conclusion—that the public trust doctrine does not apply as a matter of

---

    [16] The equal footing doctrine, which has long been recognized as a principle derived from the Constitution, provides that each State, upon its admission to the Union, "gains title within its borders to the beds of waters then navigable . . .  or tidally influenced."  *PPL Mont.*, 132 S. Ct. at 1228.

    [17] The Supreme Court and other courts have, in decisions stretching back more than a century, consistently interpreted and applied the public trust doctrine as an exclusively state-law principle that governs only state actors.  *See e.g. Phillips Petroleum Co. v. Mississippi*, 484 U.S. 469, 473 (1988); *Appleby v. City of N.Y.*, 271 U.S. 362, 395 (1926); *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077 (D.C. Cir. 1984); *see also* Douglas L. Grant, *Underpinnings of the Public Trust Doctrine:  Lessons from Illinois Central Railroad*, 33 Ariz. St. L.J. 849, 870 (2001) ("[T]he Supreme Court has steadfastly treated the public trust doctrine as a matter of state law not federal law.").

federal law and therefore could not support Montana's claim to title—forecloses the possibility that plaintiffs can assert a federal public trust claim.

In *32.42 Acres of Land*, the Ninth Circuit confirmed that the public trust is a matter of state, not federal, law.  There the court considered, in a condemnation action, a claim by the California Lands Commission, that the public trust doctrine "restricts the ability of both federal and state governments to alienate public trust lands free of the public trust."  683 F.3d at 1037. Relying on *PPL Montana*, the court held that the public trust doctrine, as found in *Illinois Central Railroad v. Illinois*, 146 U.S. 387 (1892), and similar cases, is state law because it "is state law that determines what rights and privileges in submerged lands may be granted by a state to private individuals," *Id.* at 1038, and not federal law applicable to the United States.  Thus, because the public trust is state law, subject to the Supremacy Clause, U.S. CONST. art. VI, cl. 2, the Ninth Circuit concluded that the federal government held the condemned land in "full fee simple" free of the public trust.  *Id.* at 1039.

Finally, in *Alec L.* plaintiffs presented the same argument they make here – that there is a federal public trust in the atmosphere.  863 F. Supp. 2d at 12.  There, the plaintiffs sued several federal agencies alleging "violations of the federal public trust doctrine."  *Id.*  And there, the Court rejected the plaintiffs' argument that the public trust doctrine is a matter of federal law, noting that the holding in *PPL Montana*—that "the public trust doctrine remains a matter of state law" and "its contours do not depend upon the Constitution"—foreclosed this argument.  *Id.* at 15 (quoting *Mont. PPL*, 132 S. Ct. at 1235) (internal quotations marks and punctuation omitted). On appeal, the D.C. Circuit emphatically rejected the claim that there is a federal public trust:

> The plaintiffs point to no case, however, standing for the proposition that the public trust doctrine—or claims based upon violations of that doctrine—arise under the Constitution or laws of the United States, as would be necessary to establish federal question jurisdiction.  To the contrary, the Supreme Court

recently reaffirmed that "the public trust doctrine remains a matter of state law" and that "the contours of that public trust do not depend upon the Constitution."

*Alec L. ex rel. Loorz*, 561 Fed. App'x at 8 (quoting *PPL Mont.*, 132 S. Ct. at 1235) (internal citation omitted).

Based on a flawed reading of *PPL Montana,* the magistrate found that the public trust doctrine must "provide at least some substantive due process protections for some plaintiffs within the navigable water areas of Oregon."[18]  Findings at 23.  The magistrate tried to distinguish *PPL Montana* as a case that merely rejected Montana's "attempt to conflate the equal footing doctrine with the public trust doctrine. . . ."  *Id.* at 18.  However, in *PPL Montana*, the State did not merely conflate the two doctrines; it asserted that the public trust doctrine is grounded in the U.S. Constitution as part of the equal footing doctrine, Br. for Resp. 53, 132 S. Ct. 1215 (No. 10-218), and that it is therefore binding as a matter of federal law.  *Id.* at 25 & n.11.  The Court rejected Montana's attempt to ground the public trust doctrine in the Constitution and concluded that the public trust doctrine "remains a matter of state law."  *PPL Mont.*, 132 S. Ct. at 1235.  This conclusion was confirmed by the Ninth Circuit in *32.42 Acres of Land*.  683 F.3d at 1038.  The magistrate's finding that there is a federal public trust doctrine is thus precluded by binding Supreme Court and Ninth Circuit precedent.

─────────────────────

[18] Although the magistrate suggests that the public trust claim has a substantive due process component and provides protections within Oregon's "navigable waters," the complaint alleges that the public trust claim is "secured by the Ninth Amendment and embodied in the reserved powers doctrine in the Tenth Amendment and the Vesting, Nobility, and Posterity Clauses of the Constitution."  Compl. ¶ 308.  In other words, plaintiffs do *not* claim that the public trust is an aspect of substantive due process under the Fifth Amendment.  Moreover, the primary focus of the complaint and the allegations it contains, is the impact that $CO_2$ has on the atmosphere.  While plaintiffs also discuss the impact that $CO_2$ has on waters, the allegations go far beyond "the navigable water areas of Oregon."  Findings at 23.  The continued confusion over plaintiffs' claims underscores the amorphous nature of this lawsuit, the lack of precedent for it, and the uncertainty of possible redress were the plaintiffs to succeed.

The holdings in these cases are consistent with, and indeed compelled by, the Property Clause of the Constitution, which provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."  U.S. CONST. art. IV, § 3, cl. 2.  In *Kleppe v. New Mexico*, the Supreme Court held that "[t]he power over the public land thus entrusted to Congress is *without limitations*." 426 U.S. 529, 539 (1976) (emphasis added) (quoting *United States v. City and Cty. of San Francisco*, 310 U.S. 16, 29 (1940)); *see also Alabama v. Texas*, 347 U.S. 272, 273 (1954). Because the Constitution makes Congress' power over federal lands plenary, that power is not subject to, or in any way constrained by, any common law public trust doctrine.  Thus, for example, in *United States v. 32.42 Acres of Land*, when the United States acquired property by condemnation on behalf of the Navy and sought to extinguish California's public trust obligations in the land, the court held that the United States, when it exercises the federal power of eminent domain, can extinguish California's public trust.  683 F.3d at 1032.  Any other result would be inconsistent with Congress's plenary power concerning the use, management, and disposal of federal property.

In no prior case, including the three condemnation cases cited by the magistrate (Findings at 21), has a federal court held that the public trust doctrine arises as a matter of federal constitutional law and applies directly to the federal government.  In two of those cases, *City of Alameda v. Todd Shipyards Corp.*, 635 F. Supp. 1447 (N.D. Cal. 1986) and *United States v. 1.58 Acres of Land*, 523 F. Supp. 120 (D. Mass. 1981), courts concluded that a land conveyance from a state to the federal government does not extinguish public trust restrictions burdening the *state's* title.  In the third case, *United States v. 32.42 Acres of Land*, the court, purporting to follow *City of Alameda*, characterized the public trust as a "*federal* public trust" but did not tie it

to any constitutional provision as the plaintiffs and the magistrate attempt to do here.  No. 3:05-cv-01137-DMS-WMC (S.D. Cal. filed May 31, 2005) (Apr. 28, 2006 Order 11, ECF No. 24).  The portion of the district court's opinion in *32.42 Acres of Land* finding a public trust in a portion of the land, was not challenged on appeal, so the Ninth Circuit never had the opportunity to consider it in light of *PPL Montana*.  However, given that the Ninth Circuit repeated *PPL Montana*'s holding that the public trust doctrine "remains a matter of state law," the district court's contrary statement would be unlikely to have withstood scrutiny were it challenged.  These decisions cannot be interpreted – particularly post *PPL Montana* – to establish a federal public trust doctrine binding on federal agencies.

More fundamentally, insofar as *Alameda*, *1.58 Acres of Land*, or *32.42 Acres of Land* can be read as holding that a public trust attaches to federal property, that interpretation necessarily fails because it is foreclosed by the Supreme Court's decision in *Kleppe*.  Congress' plenary power over federal lands is not subject to, or in any way constrained by, any common law public trust doctrine.

## 2.    The public trust doctrine does not apply to the atmosphere.

The version of the public trust doctrine that plaintiffs assert here also fails because it would vastly expand the doctrine from its traditional application.  Under the public trust doctrine, "title and dominion in lands flowed by the tide water were in the King for the benefit of the nation."  *Phillips Petroleum Co.*, 484 U.S. at 473 (quoting *Shively v. Bowlby*, 152 U.S. 1, 57 (1894)).  It is thus limited to riparian lands submerged beneath tidal and navigable waterways, and its traditional function is to restrict transfers or alienation of those lands.  Although state courts have sometimes expanded the doctrine to protect additional water uses within a state's jurisdiction, such as recreation, aesthetic enjoyment, and preservation of flora and fauna, *see Air*

*Florida*, 750 F.2d at 1083, the atmosphere is not a resource that can be owned and due to its ephemeral nature cannot remain within the jurisdiction of any single government.  Even as applied to the states, moreover, courts have not "expanded the doctrine to protect the atmosphere . . . ." *Alec L.,* 863 F. Supp. 2d at 13.[19]

   3.   <u>The Court should not create an implied right of action.</u>

   Even if the Court were to conclude—*PPL Montana* and *Kleppe* notwithstanding—that there is a federal public trust, it would be inappropriate to go further and hold that the doctrine creates an implied cause of action to enforce it.  Neither plaintiffs nor the magistrate cite to a single case where a court has permitted a party to do what plaintiffs seek to do here:  to bring an affirmative case under a federal public trust, and have a court enforce it.  The Supreme Court has long admonished that federal courts should not imply new causes of action or expand existing ones in the absence of express statutory authority, *Carlson v. Green*, 446 U.S. 14 (1980), even where the claim would vindicate "fundamental" constitutional rights.  *Bush v. Lucas*, 462 U.S. 367 (1983).  To do so, the Court has explained, would "intrud[e] within a field properly within Congress' control," namely, the regulation of $CO_2$ emissions across the Nation. *United States v. Standard Oil Co. of Cal.*, 332 U.S. 301, 316 (1947).

-------

[19] The cases plaintiffs rely upon for the proposition that there is an atmospheric public trust, declined to expand the doctrine in that manner.  *See Sanders-Reed v. Martinez*, 350 P.3d 1221, 1225 (N.M. Ct. App. 2015) ("Plaintiffs have cited no cases – and we have found none – where another jurisdiction's appellate court has concluded that common law public trust principles independently apply to management of the atmosphere."); *Filippone v. Iowa Dep't of Natural Res.*, No. 12-0444, 2013 WL 988627, at *3  (Iowa Ct. App. Mar. 13, 2013) (Defendant "does not have a duty under the public trust doctrine to restrict greenhouse gases to protect the atmosphere . . . ."); *Aronow v. Minnesota*, No. A12-0585, 2012 WL 4476642, at *3 (Minn. Ct. App. Oct. 1, 2012) ("no Minnesota appellate court has held that the public-trust doctrine applies to the atmosphere"); *see also Tex. Comm'n on Envtl. Quality v. Bosner-Lain*, 438 S.W.3d 887 (Tex. App. 2014) (vacating and dismissing state district court decision that plaintiffs rely upon).

This admonishment is particularly apt here, where Congress has already legislated on this issue, authorizing the EPA to establish nationwide standards for greenhouse gas emissions from specific sources. *See AEP*, 410 U.S. at 424. It is a well-settled principle that when Congress enacts a federal statute that "speak[s] directly to [the] question" previously addressed by a non-statutory cause of action, the earlier cause of action is displaced and can no longer be recognized. *Id.* (citation omitted). In *AEP*, the Supreme Court addressed a similar issue to the one presented here—whether a federal common law public nuisance claim against GHG emitters could be maintained after passage of the Clean Air Act. The Supreme Court, in that case, held unambiguously "that the Clean Air Act and the EPA actions it authorizes" displace any such claims. *Id.*

Whatever the basis of the public trust doctrine, and even if one assumes (contrary to authority) that it is somehow grounded in the U.S. Constitution, a cause of action to enforce that doctrine would represent an exercise in federal common law-making that the Supreme Court has said in numerous prior cases is subject to statutory displacement. *See e.g. Hui v. Castaneda*, 559 U.S. 799, 808 (2010); *Bush*, 462 U.S. at 385-86. As the Supreme Court has consistently stated, of the public trust doctrine in particular, it is "subject always to the paramount right of congress." *Ill. Cent. R.R. Co.*, 146 U.S. at 435. Even if the Court were to recognize a public trust claim in this case, any cause of action that might otherwise have been recognized, has been displaced by the Clean Air Act.

### D.    Plaintiffs have not shown that they have Article III standing.

Article III of the Constitution limits the jurisdiction of the federal courts to "[c]ases" and "[c]ontroversies." U.S. CONST. art. III, § 2, cl. 1. "Those two words confine 'the business of federal courts to questions presented in an adversary context and in a form historically viewed as

capable of resolution through the judicial process.'" *Massachusetts*, 549 U.S. at 516 (quoting *Flast*, 392 U.S. at 95). The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from "being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013). In keeping with this purpose, the Supreme Court has instructed that the standing inquiry is "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was constitutional." *Raines v. Byrd*, 521 US. 811, 819-20 (1997).

To establish standing, plaintiffs must show that they (1) suffered a concrete, particularized and actual or imminent injury, (2) fairly traceable to the challenged conduct, and (3) that it is likely to be redressed by a favorable decision. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). At the motion to dismiss stage of the proceedings, standing is determined based on the allegations in the complaint. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Even taking the allegations as true, the complaint fails to adequately allege that plaintiffs have suffered or are threatened with particularized injuries as a result of the challenged actions of the defendants, or that their injuries are redressable by a judicial decree. Rather, the allegations make clear that plaintiffs are asserting generalized grievances better resolved by the Executive and Legislative branches of the government rather than by the Judiciary. Because the complaint does not show that plaintiffs have standing, the Court has no jurisdiction.

1.      Unlike in *Massachusetts v. EPA*, plaintiffs here cannot established standing.

Unlike the plaintiffs in *Massachusetts*, the plaintiffs here have not presented claims in a context that is historically viewed as capable of being resolved through the judicial process. In *Massachusetts*, the Supreme Court considered a challenge by states, local governments, and

environmental organizations to EPA's denial of a petition asking it to promulgate rules regulating greenhouse gas emissions from new motor vehicles under section 202(a)(1) of the Clean Air Act.  549 U.S. 497 (2007).  EPA had denied the petition primarily because it believed, as a legal matter, that greenhouse gases were not "air pollutants" within the meaning of the Clean Air Act.  *Id.* at 513.  The majority rejected the notion that "because greenhouse gas emissions inflict widespread harm, the doctrine of standing presents an insuperable jurisdictional obstacle." *Id.* at 517.  It found that Massachusetts had standing to bring the challenge, relieving the court of the need to evaluate the standing of other parties.  *Id.* at 518.

The differences between *Massachusetts* and this case are stark, and show why plaintiffs lack standing.  In *Massachusetts*, the plaintiffs challenged EPA's denial of a rulemaking petition. Central to the Court's finding that plaintiffs had standing to challenge the agency's decision was the fact that Congress had "accorded a procedural right" to challenge the agency action alleged to be unlawfully withheld, which allowed the plaintiffs to "assert that right without meeting all of the normal standards for redressability and immediacy."  *Id.* at 517 (quoting *Lujan*, 504 U.S. at 572 n.7).  The issue presented in *Massachusetts* was particularly well-suited for judicial resolution in that it involved purely an issue of statutory construction for which Congress provided a right of action.  *See* 42 U.S.C. § 7607(b).  The present case is different.

The lack of specificity in the complaint as to the agency actions that plaintiffs are challenging in this case underscores how ill-suited this case is for judicial resolution.  Rather than challenging identified agency actions or inaction pursuant to a statutory right of action, plaintiffs instead bring free-standing constitutional claims challenging unspecified actions.  The gravamen of the complaint is that the government has, through unspecified actions and inaction, permitted $CO_2$ emissions to rise, increasing the risk of climate change.  Plaintiffs allege:

> Defendants have permitted, authorized, and subsidized the extraction, production, transportation, and utilization of fossil fuels across the U.S. (and beyond). Defendants retain authority to limit or to deny the production, consumption, transportation, and combustion of fossil fuels. The vastness of our nation's fossil fuel enterprise renders it infeasible for Plaintiffs to challenge every instance of Defendants' violations and, even if feasible, challenging each of Defendants' actions would overwhelm the court. Nonetheless, Defendants' liability arises in part from their *aggregate actions*. Those actions have substantially caused the present climate crisis. They form the predicate for Plaintiffs' allegations that current and new fossil fuel projects, to the extent they will further raise atmospheric $CO_2$ levels, infringe upon Plaintiffs' constitutional rights.

Compl. ¶ 129 (emphasis added). Allegations as generalized and lacking in details as these do not provide the basis for any kind of cognizable federal lawsuit. They do not provide sufficient information about the who, what, where, when, and why that serve as the basis for plaintiffs' claims. Nor do they provide notice to the agencies as to the specific action that is being challenged. The generalized nature of the conduct that the plaintiffs complain of, combined with the absence of a statutory right of action permitting plaintiffs to challenge that conduct, demonstrate why plaintiffs' claims are ill-suited to judicial resolution.[20]

Plaintiffs claim that it is "infeasible" to challenge "every instance" where they perceive a legal violation. Compl. ¶ 129. But fundamental limitations on this Court's jurisdiction require them to do just that. The Supreme Court has rejected plaintiffs' efforts to aggregate loosely knit and vaguely described grievances into a single lawsuit because it will be easier, or cheaper to do so. *See e.g. Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734-35 (1998). Plaintiffs must

---

[20] The magistrate was persuaded that young age of the individual plaintiffs matters for purposes of standing because they are more likely to experience the effects of the climate change than those who are older. Findings at 8. This hardly seems relevant to standing. For plaintiffs to have standing they must be facing an injury that is "imminent," and "certainly impending." *See Clapper*, 133 S. Ct. at 1147 (quotation marks and citation omitted). If plaintiffs' injuries due to climate change are already taking place, or are sufficiently imminent to support standing, plaintiffs' age should not matter as the effects of climate change are felt by all generations.

identify the agency actions (or inactions) that allegedly cause them harm, and must challenge those actions specifically, because only then can the issues be presented in a way that is capable of judicial resolution, and only then can the court ensure that it is not infringing on areas reserved to the political branches. *See Lujan v. Nat'l Wildlife Ass'n*, 497 U.S. 871, 894 (1990) (noting that while the case-by-case approach is not as "far-reaching a corrective process . . . . more sweeping actions are for the other branches"). The Court should reject plaintiffs' efforts to avoid identifying the specific agency actions they seek to challenge.[21]

*Federal Election Commission v. Akins*, which the magistrate relies upon, does not support standing in this case. There, plaintiffs filed an administrative complaint with the FEC seeking a determination that the American Israeli Public Affairs Committee (AIPAC) is a "political committee" for purposes of the Federal Election Campaign Act (FECA), and hence subject to FEC disclosure requirements. 524 U.S. 11, 15-16 (1998). The FEC denied the complaint and plaintiffs challenged that determination in court, which the FECA permits. *Id.* at 18; *see* 52 U.S.C. § 30109(a)(8). The *Akins* Court distinguished prior cases that dismissed complaints that alleged only "generalized grievances,"[22] and held that "the informational injury at issue here . . . is sufficiently concrete and specific such that the fact that it is widely shared *does not deprive Congress of constitutional power to authorize vindication* in the federal courts." 524 U.S. at 24-25 (emphasis added). Unlike *Akins*, plaintiffs can point to no Congressionally-created

---

[21] The complaint specifically refers to just one agency action—DOE/FE Order No. 3041—which involves only one agency defendant (the Department of Energy).

[22] *See e.g. Lujan*, 504 U.S. at 573-74; *Allen v. Wright*, 468 U.S. 737, 755-56 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475-79 (1982); *United States v. Richardson*, 418 U.S. 166, 176-78 (1974); *Massachusetts v. Mellon*, 262 U.S. 447, 487 (1923); *Ex parte Levitt*, 302 U.S. 633, 634 (1937).

procedural right to sue in federal court.  At most, *Akins* provides support for the proposition that Congress can provide private litigants access to the federal courts to enforce statutory rights.

      2.    <u>Plaintiffs have not alleged injuries that are fairly traceable to the conduct of the federal agencies.</u>

Even more deficient is the complaint's failure to trace the alleged injuries to the numerous government activities that plaintiffs challenge.  For there to be standing, the alleged injuries must be "particularized."  *See Lujan*, 504 U.S. at 560 n.1 ("[b]y particularized, we mean that the injury must affect the plaintiffs in a personal and individual way"); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 495-97 (2009) (plaintiff may not rely on speculation to show particularized injury at hands of challenged government action).  Plaintiffs must also demonstrate that the injuries are fairly traceable to the challenged conduct and that it is not "the result of the independent action of some third party not before the court."  *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (internal quotation marks, punctuation, alterations, emphasis and citation omitted).  Where, as here, the "chain of causation involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, . . . [courts] have found the causal chain too weak to support standing at the pleading stage."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (internal quotation marks omitted).

Plaintiffs allege that numerous government activities—including permitting and incentivizing fossil fuel extraction, Compl. ¶¶ 164-78, allowing transport of fossil fuels, *id.* ¶¶ 179-84, and authorizing fossil fuel combustion in the energy and refineries, transportation, and manufacturing sectors, *id.* ¶¶ 185-91—cause $CO_2$ to be emitted, ultimately harming their aesthetic, recreational, economic, environmental, and other interests.  *See, e.g.*, *id.* ¶¶ 16-19, 21-22, 24-26, 27-29, 32-33, 36-38, 43-44.  But plaintiffs do not account for any of the numerous intervening activities by the fossil fuel extractors, transporters, emitters, and consumers who

plaintiffs have not brought into the case, but who are surely a necessary part of the chains of causation. *See Bellon*, 732 F.3d at 1144 ("Because a multitude of independent third parties are responsible for the changes contributing to Plaintiffs' injuries, the causal chain is too tenuous to support standing.").

The magistrate relies on a mere allegation that there is a "strong link" between the numerous third party actions and the government's regulation and assumes, incorrectly, that EPA and other government agencies are not taking action to reduce $CO_2$ emissions. Findings at 10. But for there to be standing, plaintiffs need to do more than just allege that there is a link between the alleged injuries and the government conduct complained of; plaintiffs must show that there is a link.

Plaintiffs can no more establish standing in this case than the plaintiffs in *Bellon*. There, the plaintiffs sued state agencies under the Clean Air Act citizen-suit provision, seeking to compel the agencies to regulate greenhouse gas emissions. 732 F.3d at 1135. The Ninth Circuit stated that "the critical inquiry for standing purposes is whether the Agencies' alleged misconduct causes injury to *Plaintiffs*." *Id.* at 1144. Under this standard, plaintiffs must "establish that their specific, localized injuries are fairly traceable" to the agencies' conduct. The court found that "simply saying that the Agencies have failed to curb emission of greenhouse gases, which contribute (in some undefined way and to some undefined degree) to their injuries, relies on an attenuated chain of conjecture insufficient to support standing." *Id.* at 1142-43 (citation and internal quotation marks omitted). So too here. Because plaintiffs have not shown that their alleged injuries are "fairly traceable" to the government actions they challenge, they have not demonstrated that they have standing.

3.    Plaintiffs' injuries are unlikely to be redressed by a favorable ruling

Plaintiffs must show that there is a substantial likelihood that their alleged injuries will be redressed by a favorable judicial decision.  *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010).  They have not.  Here, "the prospect of obtaining relief . . .  as a result of a favorable ruling [is] too speculative[.]"  *Allen v. Wright*, 468 U.S. at 752.

Plaintiffs seek extraordinarily unworkable remedies, including having four Executive office entities and eight separate federal agencies submit a court-ordered "consumption-based inventory of U.S. $CO_2$ emissions" and an "enforceable national remedial plan to phase out fossil fuel emissions."  Compl. 94, ¶¶ 6, 7.  To grant this relief, the Court would need to override existing statutes that explicitly call for the development of energy resources and that direct federal agencies to balance energy needs and conservation and environmental goals.[23]  The Court would likely need to direct the agencies to take actions those agencies lack statutory authority to take.  *See Am. Bus. Ass'n v. Slater*, 231 F.3d 1, 9 (D.C. Cir. 2000) (agencies are "creatures of statute" whose powers and obligations are dependent upon congressional authorization).  Such an order would place the judiciary in the position of a *de facto* superagency, using expert witnesses, to oversee the work of the agency experts, and it would raise profound separation of powers problems.

_____

[23] *See, e.g.* Energy Security Act of 1980, Pub. L. No. 96-294, § 100(3), 94 Stat. 611 (1980); Public Utility Regulatory Policies Act of 1978, Pub. L. No. 95-617, § 2, 92 Stat. 3117 (1978) (codified at 16 U.S.C. § 2601); Surface Mining Control and Reclamation Act of 1977, Pub. L. No. 95-87, § 101, 91 Stat. 445 (1977) (codified at 30 U.S.C. § 1201); Energy Reorganization Act of 1974, Pub. L. No. 93-438, § 2(a), 88 Stat. 1233 (1974) (codified at 42 U.S.C. § 5801); Mining and Minerals Policy Act of 1970, Pub. L. No. 91-631, § 101 (codified at 30 U.S.C. § 21a).

The magistrate states that it is "for expert opinion" and the Court to determine the "extent to which a court order can limit" harm associated with $CO_2$ emissions.  Findings at 12.  This is incorrect.  "The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 170 (1803).  Congress has assigned the authority to regulate $CO_2$ emissions to the Executive agency defendants in this case.  *See e.g. Massachusetts*, 549 U.S. at 532 ("[W]e hold that EPA has the statutory authority to regulate the emission of [greenhouse] gases from new motor vehicles.").  The Court should not enter the political thicket to supervise the agencies' determinations as to which strategies to prevent climate change are the most wise, to what level $CO_2$ emissions should be reduced, how much of the global reduction should be borne by the United States, and which agencies should be charged with promulgating regulations to implement the reductions.  "[F]or it is primarily the office of Congress, not the federal courts, to prescribe national policy in areas of special federal interest." *AEP*, 564 U.S. at 423-24 (citation omitted).

The magistrate's statement that "courts can order agencies . . . to craft regulations. . ." and "direct the EPA to take a hard look at the best available science" misapprehends the role of the courts in reviewing the work of federal agencies.  Findings at 13-14.  Where Congress has so provided in a statute like the Clean Air Act, 42 U.S.C. § 7604(a)(2), the APA, 5 U.S.C. § 706(1), or some other statute, a reviewing court may order an agency to comply with a discrete obligation clearly required by statute, although the court cannot direct how the agency complies with that obligation. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 67-71 (2004).  And when authorized by statute, a citizen may petition an agency to undertake a rulemaking, and the denial of such a petition may be judicially reviewable. *See Massachusetts*, 549 U.S. at 517-18.

In this case, however, plaintiffs have not brought claims under the APA, the Clean Air Act, or any other statute, nor have they alleged any statutory violations.

Because plaintiffs ask for remedies that a court cannot provide without short-circuiting the political and regulatory processes, there is no likelihood that plaintiffs' alleged injuries could be redressed by a favorable ruling in this case.[24]  Without the possibility of judicial redress, there is no "case" or "controversy" within the meaning of Article III.  The Court should accordingly dismiss the claims for lack of jurisdiction.

## Conclusion

Federal Defendants respectfully ask that this Court, after reviewing the findings and recommendation of the magistrate and the objections made by Federal Defendants to such findings, reject the objectionable findings, and dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.


Dated:  May 2, 2016                                    Respectfully submitted,

                                                       JOHN C. CRUDEN
                                                       Assistant Attorney General
                                                       Environment & Natural Resources Division


                                                       */s/ Sean C. Duffy*
                                                       SEAN C. DUFFY (NY Bar. No. 4103131)

---

[24] The magistrate notes that a Dutch court, in *Urgenda Foundation v. The State of The Netherlands*, ordered the Dutch state to reduce greenhouse gases.  Rechtbank Den Haag [Hague Dist. Ct.], 24 June, C/09/456689, HA ZA 13-1396 (Neth.) cited at Ex. 6, ECF No. 43 at 110-164. *Urgenda,* which is on appeal, concerns the Dutch State's obligations under the United Nations Framework Convention on Climate Change, the Dutch Constitution, the law of the European Union, and principles of international law, none of which are relied upon by plaintiffs in this case.  *Id.* ¶¶ 4.35-4.92.  Notably, the *Urgenda* decision does not implicate the serious separation of powers issues that this case does, because "Dutch law does not have a full separation of state powers, in this case, between the executive and the judiciary."  *Id.* ¶ 4.95.

U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
601 D Street NW
Washington, DC 20004
Telephone: (202) 305-0445
Facsimile:  (202) 305-0506
sean.c.duffy@usdoj.gov

*Attorneys for Federal Defendants*

**<u>Certificate of Service</u>**

I hereby certify that on May 2, 2016, I filed the foregoing with the Clerk of Court via the

CM/ECF system, which will provide service to all attorneys of record.


<u>*/s/ Sean C. Duffy*</u>
Sean C. Duffy
*Attorney for Federal Defendants*