JULIA A. OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
WILD EARTH ADVOCATES
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

DANIEL M. GALPERN (OR Bar 061950)
dan.galpern@gmail.com
LAW OFFICES OF DANIEL M. GALPERN
1641 Oak Street
Eugene, OR 97401
Tel: (541) 968-7164

*Attorneys for Plaintiffs*

JOSEPH W. COTCHETT
jcotchett@cpmlegal.com
PHILIP L. GREGORY (*pro hac vice*)
pgregory@cpmlegal.com
PAUL N. MCCLOSKEY
pmccloskey@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**;<br>**XIUHTEZCATL TONATIUH M.**, through<br>his Guardian Tamara Roske-Martinez; et al.<br><br>      Plaintiffs,<br><br>v.<br><br>The **UNITED STATES OF AMERICA**;<br>**BARACK OBAMA**, in his official capacity as<br>President of the United States; et al.,<br><br>      Federal Defendants. | Case No.: 6:15-cv-01517-TC<br><br>PLAINTIFFS' MEMORANDUM IN<br>RESPONSE TO FEDERAL OBJECTIONS |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**

## TABLE OF CONTENTS

Page

**INTRODUCTION** ................................................................................................ 1

**STANDARD OF REVIEW** ................................................................................ 2

    **I.**    JUDGE COFFIN PROPERLY FOUND PLAINTIFFS ASSERTED COGNIZABLE SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION CLAIMS UNDER THE FIFTH AMENDMENT ............................................................. 2

        **A.**    The Appropriate Standard for the Danger-Creation Exception to *DeShaney* is "Deliberate Indifference," Which is a Subset of the "Shocks the Conscience" Standard .................................... 4

        **B.**    The Heart of the Implicit Right to Liberty Is the Ability to Survive ........................................................................................... 7

        **C.**    EPA Has the Power and Duty to Limit $CO_2$ Emissions, But It Has Exercised Its Power in a Manner that Infringes on the Fundamental Rights of Plaintiffs ............................................. 10

        **D.**    Judge Coffin Properly Found Plaintiffs Asserted a Cognizable Claim under the Public Trust Doctrine through the Fifth Amendment Due Process Clause .............................................. 15

    **II.**    JUDGE COFFIN PROPERLY FOUND PLAINTIFFS ALLEGED FACTS ESTABLISHING THEIR INDIVIDUALIZED STANDING TO BRING SUIT ....... 24

        **A.**    Plaintiffs Have Alleged Concrete and Individualized Injuries to Fundamental Rights .................................................................. 24

        **B.**    Plaintiffs Must Be Able to Bring their Claim Today Before the Harm is Irreparable and "Locked In" ..................................... 26

        **C.**    Plaintiffs Injuries Are Redressable .......................................... 28

**CONCLUSION** ................................................................................................. 29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*AEP v. Connecticut,*
  131 S. Ct. 2527 (2011)...........................................................................................2

*Ala. Legislative Black Caucus v. Alabama,*
  575 U.S. ___ (2015)............................................................................................27

*Alabama v. Texas,*
  347 U.S. 272 (1954)................................................................................20, 21, 22

*Babbitt v. United Farm Workers Nat'l Union,*
  442 U.S. 289 (1979)............................................................................................26

*Bolling v. Sharpe,*
  347 U.S. 497 (1954)............................................................................................16

*Bowsher v. Synar,*
  478 U.S. 714 (1986)............................................................................................24

*Brown v. Board of Education,*
  347 U.S. 483 (1954)..............................................................................................7

*Brown v. Plata,*
  131 S. Ct 1910 (2011)...................................................................................27, 28

*Brown v. Plata,*
  563 U.S. 493 at ¶ 192(a) – (q) (N.D. Cal. Aug. 2001)......................................28

*Camfield v. United States,*
  167 U.S. 518 (1897).....................................................................................17, 19

*Cnty. of Sacramento v. Lewis,*
  523 U.S. 833 (1998)..........................................................................................4, 5

*Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.,*
  538 F.3d 1172 (9th Cir. 2008) ...........................................................................11

*Davis v. Passman,*
  442 U.S. 228 (1979)............................................................................................11

**Page(s)**

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,*
    489 U.S. 189 (1989)..................................................................... 3, 4, 5, 27

*Foster v. Wash. Dep't of Ecology,*
    No. 14-2-25295-1 (Wash. King Cnty. Super. Ct. Nov. 11, 2015) ........................... 1, 23

*Gasper v. Louisiana Stadium & Exposition District,*
    418 F. Supp. 716, 720-21 (E.D. La. 1976), *aff'd* 577 F.2d 897 (5th Cir. 1978)....... 9, 10

*Geer v. Connecticut,*
    161 U.S. 519 (1896).......................................................................... 23

*Glossip v. Gross,*
    576 U.S. __, slip op. 9-10 (2015)......................................................... 27

*Hagedorn v. Union Carbide Corporation,*
    363 F. Supp. 1061 (N.D. W.Va. 1973) ....................................................... 10

*Hurtado v. California,*
    110 U.S. 516 (1884).......................................................................... 18

*Idaho v. Coeur d'Alene Tribe of Idaho,*
    521 U.S. 261 (1997)....................................................................... 16, 23

*Illinois Central Railroad Co. v. Illinois,*
    146 U.S. 387 (1892)....................................................................... 21, 22

*Ingraham v. Wright,*
    430 U.S. 651 (1977).......................................................................... 6

*Kennedy v. City of Ridgefield,*
    439 F.3d 1055 (9th Cir. 2006) ................................................................ 6

*Kleppe v. New Mexico,*
    426 U.S. 529 (1976)................................................................... 19, 20, 22

*Light v. United States,*
    220 U.S. 523 (1911).......................................................................... 17

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992).......................................................................... 26

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**     iii

**Page(s)**

*Massachusetts v. EPA,*
    549 U.S. 497 (2007)................................................................................... 12

*National Sea Clammers Association v. City of New York,*
    616 F.2d 1222 (3d. Cir. 1980) ............................................................... 8, 9

*Obergefell v. Hodges,*
    576 U.S. __ (2015)...................................................................................... 7

*Pinkney v. Ohio Environmental Protection Agency,*
    375 F. Supp. 305 (N.D. Ohio 1974).......................................................... 9

*Planned Parenthood v. Casey,*
    505 U.S. 833 (1992).................................................................................... 8

*Pollard v. Hagan,*
    44 U.S. 212 (1845).................................................................................... 16

*Porter v. Osborn,*
    546 F.3d 1131 (9th Cir. 2008) .............................................................. 4, 5

*PPL Montana v. Montana,*
    132 S. Ct. 1215 (2012).............................................................................. 15

*Raich v. Gonzales,*
    500 F.3d 850 (9th Cir. 2007) ..................................................................... 7

*Reno v. Flores,*
    507 U.S. 292 (1993).................................................................................. 13

*Roe v. Wade,*
    410 U.S. 113 (1973).................................................................................... 7

*S.F. Chapter of A. Philip Randolph Institute v. EPA,*
    No. C 07-04936 CRB, 2008 WL 859985 (N.D. Cal. Mar. 28, 2008)............................ 9

*Shively v. Bowlby,*
    152 U.S. 1 (1894)...................................................................................... 16

*Sierra Club v. Penfold,*
    857 F.2d 1307 (9th Cir. 1988) ................................................................. 15

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**      iv

**Page(s)**

*Skinner v. Oklahoma,*
   316 U.S. 535 (1942)................................................................ 27

*Swann v. Charlotte-Mecklenburn Bd. of Educ.,*
   401 U.S. 1 (1971).................................................................. 28

*Tanner v. Armco Steel Corporation,*
   340 F. Supp. 532 (S.D. Tex. 1972) .......................................... 10

*United States v. Beebe,*
   127 U.S. 338 (1888).............................................................. 17

*United States v. California,*
   332 U.S. 19 (1889)................................................... 17, 19, 20

*United States v. Causby,*
   328 U.S. 256 (1946).............................................................. 17

*United States v. Midwest Oil Co.,*
   236 U.S. 459 (1915).............................................................. 20

*United States v. Ruby,*
   588 F.2d 697 (9th Cir. 1978) ................................................. 22

*United States v. Trinidad Coal & Coking Co.,*
   137 U.S. 160 (1890).............................................................. 17

*Utah Div. of State Lands v. United States,*
   482 U.S. 193 (1987).............................................................. 16

*Utility Air Regulatory Group v. EPA,*
   134 S. Ct. 2427 (2014).......................................................... 11

*Wang v. Reno,*
   81 F.3d 808 (9th Cir. 1996) ......................................... 4, 5, 13

*Washington v. Glucksberg,*
   521 U.S. 702 (1997)................................................................ 8

*WildEarth Guardians v. EPA,*
   751 F.3d 649 (D.C. Cir. 2014) .............................................. 12

*Zivotofsky v. Clinton,*
   132 S. Ct. 1421 (2012).......................................................... 22

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**    v

Page(s)

*Zook v. EPA,*
    611 F. App'x 725 (D.C. Cir. 2015).............................................................. 12

*Zubik v. Burnwell,*
    578 U.S. ___, slip op. 3-4 (2016).............................................................. 29

## **<u>STATUTES/RULES</u>**

**28 U.S.C.**

§ 636 .................................................................................................... 2

§ 1331 .................................................................................................. 4

**42 U.S.C.**

§ 1983 .................................................................................................. 4

§ 7408 ................................................................................ 10, 11, 12, 13

§ 7409 ........................................................................................... 10, 13

§ 7410 .................................................................................................. 13

§ 7521 .................................................................................................. 12

Fed. R. Civ. P. 72 ................................................................................... 2

**Page(s)**

## OTHER AUTHORITIES

EPA, *Policy Options for Stabilizing Global Climate* (1990) ............................................ 28

Gerald Torres & Nathan Bellinger, *The Public Trust: The Law's DNA*, 4 Wake Forest J.L. & Pol'y 281, 288-97 (2014) ......................................................................................... 22

J. Inst. 2.1.1 (T. Sanders trans., 4th ed. 1867); 2 William Blackstone, Commentaries on the Laws of England 4 (1766) ....................................................................................... 23

Mary Christina Wood, *Nature's Trust: Environmental Law for a New Ecological Age*, 133-36 (2014) ............................................................................................................ 22

Mary Turnispseed, et al., *The Silver Anniversary of the United States' Exclusive Economic Zone: Twenty-Five Years of Ocean Use and Abuse, and the Possibility of a Blue Water Public Trust Doctrine*, 36 Ecology L.Q. 1, 45 (2009) .............................. 16

Michael C. Blumm & Lynn S. Schaffer, *The Federal Public Trust Doctrine: Misinterpreting Justice Kennedy and Illinois Central Railroad*, 45 Envtl. L. 399, 406-07 (2015) ................................................................................................................... 16

State of Or. Dept. of Envtl. Quality, Dept. of Energy and Dept. of Transp., *Oregon's Greenhouse Gas Emissions Through 2010: In-Boundary, Consumption-Based and Expanded Transportation Sector Inventories* (2013) .................................................. 29

U.S. Const. art. IV, § 3 ................................................................................................ 18

Zygmunt J.B. Plater et al., *Environmental Law and Policy: Nature, Law, and Society* 1103 (3rd ed. 2004) ................................................................................................... 16

**INTRODUCTION**

This Court should adopt the Findings and Recommendations ("F&Rs") of

Magistrate Judge Coffin and deny in full the Motions to Dismiss brought by the Federal

Defendants and the Intervenor Defendants. Magistrate Judge Coffin rightly recommends

allowing all of Plaintiffs' claims for relief to proceed and denying in full Defendants'

Motions to Dismiss. As Judge Hollis Hill in Washington State recently ruled from the

bench, climate change "is an urgent situation. This is not a situation that these children

can wait on."[1] Indeed, the First Amended Complaint addresses a dire and entirely

unrelieved threat to Plaintiffs. Magistrate Judge Coffin accurately describes the instant

case as one seeking "relief from government action and inaction that allegedly results in

carbon pollution of the atmosphere, climate destabilization, and ocean acidification," and

that, in turn, "threatens catastrophic consequences which have already begun and will

progressively worsen in the near future." F&R 1.

Plaintiffs alleged that the Obama administration and prior administrations, with

deliberate indifference and reckless disregard, knowingly acted in the aggregate to

promote and ensure an energy system dominated by fossil fuels, ensuring emissions of

greenhouse gases at far-higher rates than what is safe for these Plaintiffs – in violation of

their fundamental rights. Taken as true at this stage of the case, the allegations in the First

Amended Complaint establish Plaintiffs' individual standing and violations of Plaintiffs'

constitutional and public trust rights.

Magistrate Judge Coffin correctly treated this case differently from the public

nuisance claims in *AEP v. Connecticut*, 131 S. Ct. 2527 (2011), or statutory claims under

---

[1]    *Foster v. Wash. Dep't of Ecology*, No. 14-2-25295-1 SEA, Transcript at 20 (Wash.
King Cnty. Super. Ct., Hearing of Apr. 29, 2016) (attached hereto as Exhibit 1).

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL**                    1
**OBJECTIONS**

the Clean Air Act. The First Amended Complaint does not allege a public nuisance claim or a Clean Air Act violation. It is a constitutional case brought pursuant to the Fifth and Ninth Amendments of the U.S. Constitution. Thus, this Court's role is integral and not limited by standards for public nuisance claims or Clean Air Act claims on judicial review.

In their objections, Defendants offer no new substantive arguments that have not already been briefed and argued before Magistrate Judge Coffin. Their Objections are filled with rhetoric that ignores the allegations of the First Amended Complaint. Plaintiffs will not respond in kind; rather, Plaintiffs' Response to the Objections incorporates Plaintiffs' briefs in opposition to Defendants' Motions to Dismiss and Plaintiffs' oral argument, while supplementing with discrete responses.

## STANDARD OF REVIEW

All parties agree that this Court must review *de novo* the portions of the Magistrate Judge's findings and recommendations with which any party objects. 28 U.S.C. § 636(b) (1); Fed. R. Civ. P. 72 (b) (3); *McDonnell Douglas Corp. v. Commodore Bus. Machs. Inc.,* 656 F.2d 1309, 1313 (9th Cir. 1981).

## ARGUMENT

**I.    JUDGE COFFIN PROPERLY FOUND PLAINTIFFS ASSERTED COGNIZABLE SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION CLAIMS UNDER THE FIFTH AMENDMENT**

Judge Coffin's F&Rs affirm the following claims under the Fifth Amendment:

1.    **Fifth Amendment Substantive Due Process-Danger Creation Claim**:

This Claim seeks to protect Plaintiffs' fundamental liberty interest in

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                2

personal security under the *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189 (1989), exception. (FAC Claim One, ¶¶ 277-289);

2. **Fifth Amendment Substantive Due Process Violation for Government Acts Infringing on Plaintiffs' Enumerated Rights of Life, Liberties, and Property**: This Claim includes Plaintiffs' rights to life and property and already recognized implicit liberties such as Plaintiffs' rights to move freely, to family, and to personal security. (FAC Claim One, ¶¶ 277-289);

3. **Fifth Amendment Substantive Due Process Violation for Government Acts Infringing on Unenumerated and Unalienable Rights Reserved by the Ninth Amendment**: This Claim includes the implicit right to a stable climate system, atmosphere, and oceans which are free from dangerous levels of anthropogenic carbon dioxide. (FAC Claims One and Three, ¶¶ 277-289, 302-306);

4. **Fifth Amendment Substantive Due Process and Equal Protection Violation for Government Acts that Discriminate Against Plaintiffs as a Class with Respect to the Exercise of their Fundamental Rights:**[2] (FAC Claim Two, ¶¶ 290-301); and

5. **Public Trust Doctrine and Fifth Amendment Substantive Due Process Violation for Government Acts that Substantially Impair and/or**

---

[2]    Judge Coffin recommends this Court need not address whether future generations or minor children are entitled to suspect classification because the case raises issues of fundamental rights and, thus, discrimination against a class, suspect or not, with respect to the exercise of their fundamental rights raises issues of substantive due process and is owed strict scrutiny. F&R 15, n. 8. However, should this Court not address suspect classification, Plaintiffs' Second Claim for Relief should not be dismissed because the Fifth Amendment claim survives with or without an identifiable suspect class.

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**

3

**Alienate Public Trust Resources of Plaintiff Beneficiaries, Including Future Generations, within the Federal Public Domain:** (FAC Claims One and Four, ¶¶ 277-289, 307-310).

Federal Defendants are incorrect that a constitutional claim may only be brought pursuant to 42 U.S.C. § 1983 or another statute like the Administrative Procedures Act ("APA"). Fed. Obj. 15. In fact, the *DeShaney* exception and other due process and equal protection cases were brought pursuant to the Fifth Amendment and 28 U.S.C. § 1331, without invoking 42 U.S.C. § 1983. *See Wang v. Reno*, 81 F.3d 808, 818 (9th Cir. 1996) (Fifth Amendment *DeShaney* exception claim against U.S. officials).

    **A.**    **The Appropriate Standard for the Danger-Creation Exception to *DeShaney* is "Deliberate Indifference," Which is a Subset of the "Shocks the Conscience" Standard**

The F&Rs reference the "shocks the conscience" standard discussed in *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008), which has been applied as a standard for evaluating substantive due process violations. F&R 15; *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-52 (1998). In *Lewis*, the Supreme Court affirmed the overarching standard for culpability in a substantive due process case as behavior that "shocks the conscience." *Id.* In evaluating allegations concerning such behavior, the Supreme Court explained: what shocks the conscience in one context may not do so in another; whether behavior shocks the conscience is a fact-specific inquiry; and proving "deliberate indifference" can meet the standard, but not in the fact specific context of the high-speed auto chase presented in the case. *Id.* (finding no Fourteenth Amendment violation when motorcyclist was injured by police officer after fleeing officer in a high-speed chase).

The Ninth Circuit has affirmed that "deliberate indifference" is merely a subset of the "shocks the conscience" standard. *Porter*, 546 F.3d at 1137 (reviewed police conduct in a highly escalated roadside investigation under the "purpose to harm" test rather than "deliberate indifference," given the finding that the officer did not have an opportunity for the kind of deliberation that would be required for deliberate indifference to meet the "shocks the conscience" standard). In a long line of cases, however, the Ninth Circuit has consistently applied the "deliberate indifference" test where plaintiffs bring claims under the danger-creation exception to *DeShaney*, and has found no similar concerns as expressed by *Lewis* or *Porter* that "deliberate indifference" would be an inappropriate test in this context. *See* Pls' Opp'n Fed. MTD at 5-9 (Dkt. # 41). Where, as here, the federal government knowingly acts over decades to create an extremely dangerous situation, the federal defendants' deliberate indifference to that danger patently shocks the conscience. These Plaintiffs are not being harmed by heat-of-the-moment decisions but, as alleged, by a long, slow, and deliberate burn.

Contrary to Federal Defendants assertions, Fed. Obj. 17-18, Plaintiffs have unequivocally pled claims against the federal government that meet the deliberate indifference test. *See Wang*, 81 F.3d 808. Dr. Hansen's declaration, attached to the FAC, provides expert affirmation that there is an unusually serious risk of harm, threatening the very fabric of civilization, of an inhospitable world, including sea level rise on the order of 5-9 meters. FAC, Hansen Dec., ¶ 42. Despite the fact that Defendants have had actual knowledge of that elevated risk, FAC ¶¶ 131-150, Defendants failed to take obvious steps to avert the mounting risks their own actions substantially caused. FAC ¶¶ 146, 149, 153. The constitutional and fiduciary obligation is not to do *something* under the Clean Air

Act, as Defendants assert, but to do *enough* to avert the risks and harms that Defendants have imposed on Plaintiffs.

In *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1064 (9th Cir. 2006), a constitutional violation occurred where the state knew of the violent tendencies of the perpetrator, the state promised to give advance notice to the victim, and the state enhanced a dangerous situation by failing to do so. Here, Federal Defendants (and their predecessors) have known since at least 1965 that atmospheric carbon dioxide ("$CO_2$") buildup endangered Plaintiffs and the planet; Federal Defendants even made a commitment (at least by 1992 in the United Nations Framework Convention on Climate Change) to protect present and future generations from dangerous anthropogenic interference with the climate system. Yet, as alleged in the FAC, Federal Defendants have continued to impose that risk by their affirmative acts aimed to ensure that fossil fuels would be increasingly exploited, and burned, even while associated $CO_2$ emissions were largely unconstrained. That imposition occurred despite the federal Defendants' knowledge that "the most effective way to reduce carbon dioxide ($CO_2$) emissions is to reduce fossil fuel consumption."[3]

Unlike the defendants in *Ingraham v. Wright*, 430 U.S. 651, 673 (1977) (addressing corporal punishment of students in school), here Federal Defendants do not argue they are justified by history or current circumstances in infringing on Plaintiffs' fundamental rights to personal security. The position advanced by Federal Defendants is they can do whatever they want no matter how badly it harms these Plaintiffs or threatens

---

[3]    EPA, *Overview of Greenhouse Gases*, available at https://www3.epa.gov/climatechange/ghgemissions/gases/co2.html (accessed May 13, 2016).

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                                                                6

their survival because: (1) climate change is a global problem; and (2) the Clean Air Act renders the U.S. Constitution irrelevant and precludes judicial review of constitutional violations related to catastrophic climate change. The FAC alleges, however, that the emissions Federal Defendants have substantially caused and continue to permit are increasingly diminishing the capacity of human and natural systems to support Plaintiffs' personal security and survival. FAC ¶¶ 5-11, 96-97. Thus, for the reasons stated in Plaintiffs' Opposition Briefs and in the F&Rs, Federal Defendants' Motion to Dismiss should be denied.

## B.     The Heart of the Implicit Right to Liberty Is the Ability to Survive

Federal Defendants continue to ignore the enumerated and recognized fundamental rights detailed in the FAC, as discussed above. They also misstate the implied liberty right Plaintiffs' assert, characterizing it as "being free from climate change" or $CO_2$ emissions. The right asserted in the FAC is *the implied right to a stable climate system, atmosphere, and oceans, which are free from dangerous levels of anthropogenic $CO_2$ caused by these Defendants*. Fed. Obj. 15; F&R 15.

Based on the Ninth Circuit's decision in *Raich v. Gonzales*, the question to be answered is: what is the centerpiece of the unenumerated fundamental right asserted? *Raich v. Gonzales*, 500 F.3d 850, 864 (9th Cir. 2007) (finding marijuana was the centerpiece of the claimed right to make life-shaping medical decisions and preserve her integrity). In *Obergefell v. Hodges*, 576 U.S. __ (2015), the centerpiece of the right was the equal opportunity to marry. In *Brown v. Board of Education*, 347 U.S. 483 (1954), it was the right to equal education free from racial discrimination. In the Supreme Court's decisions in *Roe v. Wade,* 410 U.S. 113 (1973) and *Planned Parenthood v. Casey*, 505

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                      7

U.S. 833 (1992), it was the right to choose to have children and pregnancy. In the instant case, the centerpiece is the right to personal security in a viable climate system that supports human life and liberties, a survival resource of which all of our ancestors have benefited. Thus, as alleged in the FAC, actions and omissions by Federal Defendants endanger the centerpiece of the fundamental rights asserted by Plaintiffs. After examining our Nation's history, legal traditions, and practices, this Court's inquiry must consider whether liberty and justice would exist if the right at issue here is sacrificed. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). No Defendant suggests that liberty and justice would be protected if the climate system and essential natural systems, including oceans, are for all human intent and purpose functionally destroyed. In fact, Defendants do not even address the *Glucksberg* inquiries, and neither do the cases they cite. Fed. Obj. 16.

Not one of the cases cited by Defendants that asserted a right to a healthful environment are precedential, all but one coming from district courts and none from the Ninth Circuit Court of Appeals. Furthermore, none of the cases is compelling because the courts did not perform the constitutional analysis to evaluate an implied right. These cases also are distinguishable because the rights and harms alleged here are completely different, especially in that the injuries alleged here are far more severe in nature and degree.

In *National Sea Clammers Association v. City of New York*, the court conclusorily stated, "there is no constitutional right to a pollution-free environment." *National Sea Clammers Association v. City of New York,* 616 F.2d 1222, 1224 (3d. Cir. 1980). However, that case was decided at summary judgment, the plaintiff's harm was economic in nature, and Plaintiffs here do not claim a right to a "pollution-free environment." *Id*. at

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                                           8

1238 (claiming constitutional violations from discharged sewage and toxic waste into the
Atlantic Ocean causing harm to fishing resource and plaintiffs' employment; combined
with statutory claims).

In *S.F. Chapter of A. Philip Randolph Institute v. EPA*, plaintiffs inappropriately
pled a claim against EPA under the Fourteenth Amendment, instead of the Fifth, and
claimed a right to a clean environment for the benefit of plaintiffs' localized property
interest. *S.F. Chapter of A. Philip Randolph Institute v. EPA*, No. C 07-04936 CRB, 2008
WL 859985, at *6-7 (N.D. Cal. Mar. 28, 2008) (finding the liberty interest protected by
the Fourteenth Amendment "does not include the maintenance of transient levels of the
quality of neighborhood life"). The district court's cursory finding that there is no right to
be free from climate pollution from two power plants is not persuasive given the
opinion's lack of analysis and the complaint's failure to properly plead the claim.

In *Pinkney v. Ohio Environmental Protection Agency,* the plaintiffs tried to enjoin
construction of a mall, claiming it would attract polluting cars, overburden sewers, and
decrease property values. *Pinkney v. Ohio Environmental Protection Agency*, 375 F.
Supp. 305, 310 (N.D. Ohio 1974). Based on these allegations, the district court rejected
their claimed constitutional right "to be free of unreasonable contamination of their air,
water supply and other fundamental life sources." *Id.*

In *Gasper v. Louisiana Stadium & Exposition District*, the plaintiffs challenged
smoking inside the Louisiana Stadium, claiming a "right to be free from hazardous
smoke." *Gasper v. Louisiana Stadium & Exposition District*, 418 F. Supp. 716, 720-21
(E.D. La. 1976), *aff'd* 577 F.2d 897 (5th Cir. 1978). The district court held there was no

fundamental right to be free from cigarette smoke and that such a right would "mock the lofty purposes" of the constitutional amendments. *Id.*

In *Hagedorn v. Union Carbide Corporation,* the plaintiffs sued Union Carbide and state officials for "fouling the air in that community," and "mar[ring] their property, thereby causing additional cleaning, maintenance and repair." *Hagedorn v. Union Carbide Corporation*, 363 F. Supp. 1061, 1062, 1064-65 (N.D. W.Va. 1973). The court concluded "plaintiffs have not stated facts which would under the present state of the law constitute a violation of their constitutional rights," but did not foreclose a claim in the future with different facts or as the law evolves. *Id.* at 1064.

In *Tanner v. Armco Steel Corporation,* the plaintiffs sued private petroleum refineries for creating air pollution and sought damages, alleging violations of the Fifth, Ninth, and Fourteenth Amendments. *Tanner v. Armco Steel Corporation*, 340 F. Supp. 532, 537 (S.D. Tex. 1972). The court dismissed the Fifth Amendment claim because there were no federal defendants and ultimately found that the Ninth and Fourteenth Amendments did not give rise to a damages claim for the right to a healthy environment. *Id*.

**C.    EPA Has the Power and Duty to Limit $CO_2$ Emissions, But It Has Exercised Its Power in a Manner that Infringes on the Fundamental Rights of Plaintiffs**

Judge Coffin recognized that Congress, through the Clean Air Act, delegated authority to EPA to limit $CO_2$ emissions. F&R 10 (citing 42 U.S.C. § 7409); *see also* 42 U.S.C. § 7408. As the executive agency given federal power to regulate $CO_2$, the Court can review EPA's exercise of its authority, through both actions and omissions, in light of Plaintiffs' fundamental constitutional rights asserted here, just as courts can review the

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                                                    10

actions of any federal officer or agency acting under color of law for alleged constitutional violations. *Davis v. Passman*, 442 U.S. 228, 241 (1979) (holding that plaintiff had a right of action to pursue her Fifth Amendment due process and equal protection claims against a federal officer and stating: "the judiciary is clearly discernible as the primary means through which these [constitutional] rights may be enforced"). Here, the FAC alleges that EPA, and its Administrator, among other Federal Defendants, are infringing on Plaintiffs' fundamental rights by authorizing dangerous amounts of $CO_2$ pollution and by exercising deliberate judgment not to cap or adequately reduce the total amount of national $CO_2$ pollution. FAC ¶¶ 3, 125-130.[4]

For example, since 1970, EPA Administrators, including Defendant Gina McCarthy and her predecessors, have been required to set caps on the total amount of certain criteria pollutants permissible in the air.[5] 42 U.S.C. § 7408; *Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427, 2435 (2014) ("*UARG*") ("Title I charges EPA with formulating national ambient air quality standards (NAAQS) for air pollutants. §§ 7408-7409."). The national pollution caps are established using the best available scientific information to determine the effects of different levels of pollution on human health and welfare. 42 U.S.C. § 7408(a)(2). The standard by which the Administrator "shall" revise

---

[4]    In *Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, the court held that "[b]y allowing particular fuel economy levels, which NHTSA argues translate directly into particular tailpipe emissions, NHTSA's regulations are the proximate cause of those emissions just as EPA Clean Air Act rules permitting particular smokestack emissions are the proximate cause of those air pollutants . . . ." *Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1215-17 (9th Cir. 2008).

[5]    These national pollution caps are known as NAAQS. EPA Administrators have thus far capped the level of allowable ozone, particulate matter, carbon monoxide, nitrogen oxides, sulfur dioxide, and lead. *UARG*, 134 S. Ct. at 2435.

the criteria pollutant list, and add $CO_2$, is whether emissions of the air pollutant in the Administrator's judgment "cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7408(a)(1)(A); *see Zook v. EPA*, 611 F. App'x 725, 726 (D.C. Cir. 2015) ("Section 108 conditions the Administrator's obligation to list an air pollutant on a finding that 'emissions of [the pollutant], in [her] judgment, cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare.'")[6]. That is the *same* prerequisite for establishing pollutant emission standards for new motor vehicles under Title II of the Act. 42 U.S.C. § 7521(a)(1) (" . . . which in [the Administrator's] judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare"); *Massachusetts v. EPA*, 549 U.S. 497, 528 (2007).

In 2009, as directed by the Supreme Court, EPA made the requisite endangerment finding that the pollutant carbon dioxide, and other greenhouse gases, endanger public health and welfare. Endangerment & Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 74 Fed. Reg. 66,496, 66,518 (Dec. 15, 2009). Notwithstanding a 2009 petition asking the Administrator to designate $CO_2$ as a criteria

---

[6]    Federal Defendants cite *Zook v. EPA* for the proposition that scientific evidence of endangerment from a given air pollutant alone does not create a duty to regulate, but the facts of that case are inapposite. In *Zook*, there was no endangerment finding as to ammonia or hydrogen, the pollutants at issue. *Id.* at 726. In the instant case, the Administrator has already made an endangerment finding for $CO_2$ and greenhouse gases and yet still continues to allow dangerous levels of these pollutants to be emitted. In at least one case, EPA has stated that EPA's decisions not to regulate are based on Congress's decisions not to adequately fund EPA. *WildEarth Guardians v. EPA*, 751 F.3d 649, 652-53 (D.C. Cir. 2014).

pollutant and set a national pollution cap for $CO_2$ at no greater than 350 ppm, as well as caps for six other greenhouse gases, EPA has not acted on that petition.[7]

Even if the Clean Air Act could be read not to *require* the regulation of $CO_2$ and other greenhouse gases as pollutants, as Defendants suggest, there is no dispute that the Clean Air Act grants the Administrator and EPA the *authority to regulate*. The Fifth Amendment to the Constitution protects Plaintiffs' rights to life, liberty, and property against the unlawful exercise of the Administrator's judgment, which causes infringement of Plaintiffs' fundamental rights. U.S. Const. amend. V; *Reno v. Flores*, 507 U.S. 292, 302 (1993) (The Fifth Amendment's guarantee of due process includes "a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." (emphasis in original)); *Wang v. Reno*, 81 F.3d 808, 818 (9th Cir. 1996) (finding violation of liberty rights under Fifth Amendment). Congress cannot, and has not, by ordinary legislation amended out of the Constitution the preservation of fundamental rights simply by creating an agency and granting it the power, and broad discretion, to regulate $CO_2$ as a pollutant. While Plaintiffs agree that Defendants EPA and Administrator McCarthy must comply with the

---

[7]     On December 2, 2009, 350.org and the Center for Biological Diversity submitted the petition pursuant to the Clean Air Act, which requires EPA to respond within "a reasonable time." 42 U.S.C. §§ 7408-7410; http://www.biologicaldiversity.org/programs/climate_law_institute/global_warming_litig ation/clean_air_act/pdfs/Petition_GHG_pollution_cap_12-2-2009.pdf. **Seven years later**, EPA has not responded to the petition. Instead, the Administrators have exercised their judgment and authority by ***not*** adding $CO_2$ to the criteria pollutant list, even though the endangerment finding for motor vehicle emissions would apply equally to the criteria pollutant standard for NAAQS. *See* Fed. Obj. 12, n. 14 ("But $CO_2$ has not been listed and EPA has not issued air quality criteria for $CO_2$.").

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                    13

Clean Air Act, they must also abide by the U.S. Constitution in the exercise of their executive power. Thus, EPA's knowing failure to control $CO_2$ emissions as a dangerous pollutant is subject to this Court's constitutional review, as are the actions and omissions of the other Federal Defendants with power and authority over fossil fuels and sources of greenhouse gas pollution. *See* F&R 14. None of the Clean Air Act cases cited by Defendants addresses anything more than EPA's compliance with specific statutory provisions and, thus, are not instructive on the role of EPA and the Administrator in violating Plaintiffs' fundamental rights. Fed. Obj. 10-12.

This Court need not wade into Federal Defendants' new displacement arguments under *AEP* because Plaintiffs do not ask this Court to set limits on greenhouse gas emissions for "any particular greenhouse gas-producing sector."[8] Fed. Obj. 11. Plaintiffs agree with Defendants that sector by sector limits should be set by EPA. However, EPA must act consistent with protecting Plaintiffs from the danger Defendants have substantially created and remediating the violations of their constitutional rights. What EPA, and the other Federal Defendants, cannot continue to do is to exercise their discretion under the Clean Air Act and other statutes in such a way as to violate Plaintiffs' fundamental rights, including to continue to permit, authorize, lease, and subsidize new and ongoing fossil fuel operations that are driving the climate system towards calamitous points of no return.

While Judge Coffin focused on Defendants EPA and Administrator McCarthy in recommending denial of the Motions to Dismiss, the FAC outlines ways in which Federal

---

[8]    Federal Defendants did not raise displacement in their Motion to Dismiss. However, Plaintiffs thoroughly briefed the issue in their Opposition to Defendant Intervenors' Motion to Dismiss at 3-9 (Dkt. # 56).

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                                                     14

Defendants' aggregate actions, not just the acts and omission of EPA, are substantially

impairing public trust assets and infringing Fifth Amendment rights. For instance, the

Department of Interior, through its agencies, is responsible for leasing public lands for

fossil fuel extraction, an act over which EPA has no statutory authority. FAC ¶¶ 109-112,

164-170, 174 (subsidies over which EPA has no control), 179-184 (EPA has no role in

the approvals for transporting fossil fuels). In looking at the link between federal control

and harm, including monetary control, the Ninth Circuit looks "to the nature of the

federal funds used and the extent of federal involvement," a factual inquiry for the merits

of this case. *Sierra Club v. Penfold*, 857 F.2d 1307, 1314 (9th Cir. 1988).

> ### D. Judge Coffin Properly Found Plaintiffs Asserted a Cognizable Claim under the Public Trust Doctrine through the Fifth Amendment Due Process Clause

Defendants have not reevaluated their dogged misreading of *PPL Montana v.

Montana*, 132 S. Ct. 1215 (2012), in light of the F&Rs, and continue to mischaracterize

the Public Trust Doctrine.[9]

The citizens of the original thirteen states reserved public trust resources for

themselves and their sovereign states by virtue of the Tenth Amendment and granted the

federal government trustee responsibility over other national territories, much of which

was later turned over to new states. *See* Michael C. Blumm & Lynn S. Schaffer, *The

Federal Public Trust Doctrine: Misinterpreting Justice Kennedy and Illinois Central*

---

[9]    Defendants continually mischaracterize the Public Trust Doctrine as an arcane, little-used law. They are wrong. The continued prominence of the Public Trust Doctrine in American law is illustrated by the fact that, since 1970, the Public Trust Doctrine has appeared in more than 700 state court cases, more than 145 federal court cases, and more than 2700 scholarly works. Lynn S. Schaffer, *Pulled From Thin Air: The (Mis)Application of Statutory Displacement to a Public Trust Claim in* Alec L. v. Jackson, 19 Lewis & Clark L. Rev. 169, 174, n. 14 (2015).

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                                             15

*Railroad*, 45 Envtl. L. 399, 406-07 (2015); *Pollard v. Hagan*, 44 U.S. 212, 230 (1845)

(Upon federation, "[t]he shores of navigable waters, and the soils under them, were not

granted by the Constitution to the United States, but were reserved to the states

respectively."); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 283 (1997) (the

federal government "held navigable waters in acquired territory for the ultimate benefit of

future States"); *Shively v. Bowlby*, 152 U.S. 1, 57 (1894). It would run counter to the

system of federalism to secure public trust resource protection at the state level, but allow

the national sovereign to control the vast federal public domain completely free of the

Public Trust Doctrine. In fact, the Supreme Court in *Bolling v. Sharpe* rejects this idea,

stating: "it would be unthinkable that the same constitution would impose a lesser duty on

the Federal Government" than the states. *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954)

(regarding whether rights in the Fifth and Fourteenth Amendments applied equally to

both sets of sovereigns); *see* Zygmunt J.B. Plater et al., *Environmental Law and Policy:*

*Nature, Law, and Society* 1103 (3rd ed. 2004) ("Since [t]he federal government is a

creature of the states by delegation through the Act of Union and the federal Constitution

. . . the federal government is therefore exercising delegated powers . . . [and] cannot

have greater rights and fewer limitations than the entities that created it.").[10]

For public trust resources still within the federal domain, like federal public lands,

the airshed, territorial waters, navigable waters, and migratory wildlife, the federal

government also remains a sovereign trustee. *See United States v. Beebe*, 127 U.S. 338,

---

[10]    *See Utah Div. of State Lands v. United States*, 482 U.S. 193, 196 (1987) (explaining
the trustee obligation inherited by the original States from the English Crown was
quintessentially national in character, not a state-based doctrine); *see* Mary Turnispseed,
et al., *The Silver Anniversary of the United States' Exclusive Economic Zone: Twenty-
Five Years of Ocean Use and Abuse, and the Possibility of a Blue Water Public Trust
Doctrine*, 36 Ecology L.Q. 1, 45 (2009).

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL**                    16
**OBJECTIONS**

342 (1888) ("The public domain is held by the government as part of its trust. The government is charged with the duty, and clothed with the power, to protect it . . . common to all the people as the beneficiaries of the trust."); *Camfield v. United States*, 167 U.S. 518, 524 (1897) ("[I]t would be recreant to its duties as trustee for the people of the United States to permit any individual or private corporation to monopolize them for private gain."); *United States v. California*, 332 U.S. 19, 33 (1889) (finding sovereign dominion over the territorial waters lies with the federal government as trustee); *United States v. Causby*, 328 U.S. 256, 260, 266 (1946) (holding airspace is part of the federal public domain).

The question here is not whether Federal Defendants are trustees of natural public resources. Many courts, including the Supreme Court, have said as much. *Beebe*, 127 U.S. at 342; *Light v. United States*, 220 U.S. 523, 537 (1911); *United States v. Trinidad Coal & Coking Co.*, 137 U.S. 160, 170 (1890) (finding public lands are "held in trust for all the people"). The question is which resources are in the federal domain and whether Federal Defendants are meeting their fiduciary obligation as trustee over those resources. Those are questions for the merits, not a Motion to Dismiss, where the FAC alleges substantial impairment of trust resources within the federal public domain. Thus, for purposes of reviewing the F&Rs, this Court's inquiry can stop here.

Having failed to persuade Judge Coffin of their misreading of *PPL Montana*, Federal Defendants raise a new argument: the Property Clause compels a finding of no federal public trust obligation. Fed. Obj. 23. However, the Property Clause does not nullify the Public Trust Doctrine or citizens' fundamental rights as beneficiaries under the Fifth Amendment due process clause. U.S. Const. art. IV, § 3, cl. 2. Indeed, Federal

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL**    17
**OBJECTIONS**

Defendants cannot simultaneously be trustees over federal public property, as numerous Supreme Court cases hold, and have no obligations or limits on their authority preventing them from irreversibly damaging vital public resources.

Federal Defendants parrot language used in a few Supreme Court cases, without providing any context for those decisions or the Supreme Court's dicta, and infer that Congress has "plenary power concerning the use, management, and disposal of federal property," without any limitation, even if it means that citizens' lives are endangered and survival resources in the national public domain irreparably damaged. Fed. Obj. 23. Defendants' inference defies logic and the foundational principles of our democracy, and runs counter to an honest reading of a long line of Supreme Court cases, including those discussed above. Federal Defendants forget that the Constitution, including the Property Clause, and the lens through which it should be viewed, is for the protection of individual liberties. *See, e.g., Hurtado v. California*, 110 U.S. 516, 531-32 (1884) ("In this country written constitutions were deemed essential to protect the rights and liberties of the people against the encroachments of power delegated to their governments, and the provisions of Magna Charta were incorporated into Bills of Rights. They were limitations upon all the powers of government, legislative as well as executive and judicial."). The Constitution limits the role of the Federal Defendants and was not created for the benefit of the Federal Defendants.

In each of the cases Defendants' cite, Fed. Obj. 23, the Supreme Court considered the delegated power of Congress over the territories and property granted it by the states through Article IV vis-à-vis the states' ongoing interests in resources touching state and federal interests. These Property Clause cases are about the constitutionally-embedded

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                                        18

tension of state and federal rights within our federalist system of government. These cases were not about the rights of the public and citizen beneficiaries, or even individual liberties, being threatened by acts of the federal power. For instance, in *Kleppe v. New Mexico*, the Supreme Court's recitation of Congressional power over public lands as being "without limitation" refers to limitations placed on Congressional power *by the states*, where federal public lands lie within particular states. *Kleppe v. New Mexico*, 426 U.S. 529, 539-40 (1976) (noting that the bounds of federal power had not been definitively resolved). *Kleppe* does not stand for the proposition Federal Defendants suggest, which is Congress has unlimited plenary power to damage federal public lands. The Supreme Court said Congress had "complete power" over public lands "to regulate and protect the wildlife living there," not to destroy it. *Id.* at 541; *see Camfield*, 167 U.S. at 524 (affirming the power of the U.S. to protect federal property as a proprietor for the public interest, to prevent private corporate monopolies for private gain, and to fulfill its trustee duty to the people).

United States v. California is also a case about which sovereign, state or federal, retains sovereign authority to protect the territorial waters of the nation, not whether either sovereign can allow substantial impairment of that resource free of its public trust obligation. 332 U.S. at 19, 27-36. The Supreme Court's reasoning for awarding the resource to the federal public domain is laden with sovereign fiduciary responsibility:

> The ocean, even its three-mile belt, is thus of vital consequence to the nation in its desire to engage in commerce and to live in peace with the world; it also becomes of crucial importance should it ever again become impossible to preserve that peace. And as peace and world commerce are the paramount responsibilities of the nation, rather than an individual state,

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL**                    19
**OBJECTIONS**

> so, if wars come, they must be fought by the nation. The state is not
> equipped in our constitutional system with the powers or the facilities for
> exercising the responsibilities which would be concomitant with the
> dominion which it seeks.

*Id.* at 35-36 (citations omitted); *see also United States v. Midwest Oil Co.*, 236 U.S. 459, 471 (1915) (finding the President can reserve from sale parcels of land for public uses as the exigencies of the public service require, even though the Constitution grants Congress the delegated power over federal property, not the President).

Federal Defendants would have this Court adopt the "without limitation" language from *Kleppe* and *Alabama v. Texas*, 347 U.S. 272 (1954), entirely out of context and apply the result to a situation not previously confronted. Those cases referred to the ability of Congress to *protect* public lands and, in some instances, transfer public lands to states or to lease them; they do not hold that Congress may irretrievably damage or destroy public lands or the public's essential interest in public resources. None of the Property Clause cases confronted Fifth Amendment violations of fundamental rights and claims that essential resources within the federal Public Trust were being damaged. None of the decisions contemplated the catastrophic result in the instant case of undoing the Public Trust obligation of Federal Defendants over crucial public resources. In short, the limits of Congressional discretion under the Property Clause have not yet been tested. As the Supreme Court said in *Illinois Central Railroad Co., v. Illinois*, "we cannot, it is true, cite any authority where a grant of this kind has been held invalid, for we believe that no instance exists where the harbor of a great city and its commerce have been allowed to pass into the control of any private corporation." *Illinois Central Railroad Co. v. Illinois,*

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                    20

146 U.S. 387, 455 (1892). Justices Douglas and Black, in their dissents from the *per curiam* opinion of *Alabama v. Texas*, articulate the outer limits of the Property Clause that have never been tested. 347 U.S. 272, 280-81 (1954) (Black, J., dissenting); *id.* at 281-83 (Douglas, J., dissenting). The Supreme Court's *per curiam* in *Alabama* simply did not consider the questions posed (and flatly rejected) by the dissenters – whether the U.S. could transfer the Pacific Ocean and the Columbia River out of the public domain. *Id.*

> Thus we are dealing here with incidents of national sovereignty. The marginal sea is not an oil well; it is more than a mass of water; it is a protective belt for the entire Nation over which the United States must exercise exclusive and paramount authority. The authority over it can no more be abdicated than any of the other great powers of the Federal Government. It is to be exercised for the benefit of the whole.

*Id.* at 282. So too, here, "more than property rights [is] involved." *Id.* at 281.

> Could Congress cede the great Columbia River or the mighty Mississippi to a State or a power company? I should think not. For they are arteries of commerce that attach to the national sovereignty and remain there until and unless the Constitution is changed. What is true of a great river would seem to be even more obviously true of the marginal sea. For it is not only an artery of commerce among the States but the vast buffer standing between us and the world. It therefore would seem that unless we are to change our form of government, that domain must by its very nature attach to the National Government and the authority over it remain nondelegable.

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                                                         21

*Id*. at 282. The fundamental and unalienable rights of these Plaintiffs under the Fifth Amendment are at issue here, distinguishing this case from both *Alabama v. Texas* and *Kleppe v. New Mexico*.

The Property Clause is nothing more nor less than what the original thirteen states intended: a delegation of enumerated power to the federal government to deal with property of a federal character, including the territories entrusted to later-admitted states. Without that power, Congress would not have been able to act and manage federal property, leaving that role to the states. Because the Public Trust is part of the sovereignty of government itself, and predates the Constitution, the Public Trust is imposed on any delegation of power to the federal government over public resources. *See United States v. Ruby*, 588 F.2d 697, 705 (9th Cir. 1978) (noting federal government is a constitutional trustee on behalf of the people); Mary Christina Wood, *Nature's Trust: Environmental Law for a New Ecological Age*, 133-36 (2014); Gerald Torres & Nathan Bellinger, *The Public Trust: The Law's DNA*, 4 Wake Forest J.L. & Pol'y 281, 288-97 (2014).

Federal Defendants cannot police themselves with respect to their fiduciary obligation because, in the words of the Supreme Court, it "would place every harbor in the country at the mercy of a majority of the legislature." *Ill. Cent. R.R.* 146 U.S. at 455; *see also Zivotofsky v. Clinton*, 132 S. Ct. 1421, 1427 (2012) (political branches cannot police constitutionality of their own conduct). It is important to note that in 1892 the threat to these harbors and coastal cities was not the complete and irreversible inundation of sea level rise; rather, the threat was a far lesser and reversible evil, but found to be a Public Trust violation nonetheless. As the Catholic Amici write, degradation to the

atmospheric trust "poses a threat to human society of a magnitude unimaginable in the day when Justice Field invoked the doctrine to protect Chicago Harbor." Brief for Global Catholic Climate Movement & Leadership Council of Women Religious as *Amici Curiae* Supporting Plaintiffs, *Juliana v. United States* at 16, No.: 6:15-cv-01517-TC (D. Or. Jan. 1, 2016).

The federal public domain unequivocally includes the oceans and the air and atmosphere as these are domains that transcend state borders. The Public Trust *res* has always included air according to Justinian and Blackstone, who list the air resource before water. J. Inst. 2.1.1 (T. Sanders trans., 4th ed. 1867); 2 William Blackstone, Commentaries on the Laws of England 4 (1766) ("[T]here are some few things which, notwithstanding the general introduction and continuance of property, must still unavoidably remain in common . . . Such (among others) are the elements of light, air, and water . . . ."). The Supreme Court relies on Justinian and Blackstone in interpreting the scope of the Public Trust Doctrine. *Geer v. Connecticut*, 161 U.S. 519, 523, 526-28 (1896); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 US 261, 284 (1997). Defendants are also wrong that no court has found public trust protection for the atmosphere. Indeed Washington Judge Hollis Hill eloquently wrote last year in a state constitutional public trust case: "The navigable waters and the atmosphere are intertwined and to argue a separation of the two, or to argue that GHG emissions do not affect navigable waters in nonsensical." *Foster v. Wash. Dep't of Ecology*, No. 14-2-25295-1, slip op at 8 (Wash. King Cnty. Super. Ct. Nov. 11, 2015); *see also Foster v. Wash. Dep't of Ecology*, No. 14-2-25295-1 SEA, Transcript at 20 (Wash. King Cnty. Super. Ct., Hearing of Apr. 29, 2016) (attached hereto as Exhibit 1).

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                                                                    23

For all of these reasons, and those submitted previously to Judge Coffin, Plaintiffs' Public Trust Doctrine claim against the Federal Defendants should be heard.

## II.    JUDGE COFFIN PROPERLY FOUND PLAINTIFFS ALLEGED FACTS ESTABLISHING THEIR INDIVIDUALIZED STANDING TO BRING SUIT

Federal Defendants appear concerned that Plaintiffs seek, by their claims, to usurp the powers of the political branches and, thus, assert Plaintiffs should be subject to a rigorous standing inquiry. Fed. Obj. 27. However, as the Supreme Court has repeatedly said, the purpose of separation of powers is to better secure liberty, not protect the political branches for their own power. *Bowsher v. Synar*, 478 U.S. 714, 721 (1986). Judge Coffin correctly finds Plaintiffs meet each of the three prongs of standing and no more rigorous test is justified or supported by any precedent.

### A.    Plaintiffs Have Alleged Concrete and Individualized Injuries to Fundamental Rights

In addition to the allegations noted in the F&Rs, Plaintiffs alleged other individual and not generalized injuries. For instance, several Plaintiffs' property interests are being harmed. The family property of Sahara V. on the Oregon coast is imminently threatened with sea level rise. FAC ¶ 45; Sahara V. Dec, ¶ 3; Hansen Supp. Dec. Ex. 3, Graphics 6 (a) & (b) (sea level rise in Yachats, Oregon). Levi D's property interests in Indialantic, Florida are currently being harmed by rising seas, which are threatening his community, destroying his beaches, and decreasing the property value of his home. FAC ¶ 82, 84. If unabated, Levi will suffer a complete deprivation of his constitutionally protected property interests due to the submersion of his home by rising sea levels. FAC ¶¶ 84; Levi D. Dec. ¶¶ 1-4; Ex. 3 to Hansen Supp. Dec., Graphics 5 (a) & (b) (sea level rise in Melbourne Beach, nearby to Indialantic, Florida).

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                                                                   24

The FAC also alleges Plaintiffs' property interests will be infringed by the increasing severity and frequency of extreme weather events. Xiuhtezcatl M. Dec. ¶¶ 10, 11 (climate-exacerbated extreme rain and flooding have already caused property damage and increased frequency and severity of wildfires remain a threat). Jayden F., who lives in southern Louisiana, is experiencing more severe and frequent hurricanes, storm surges, and flooding, which threatens her home. FAC ¶ 87; Hansen Supp. Dec. Ex. 3, Graphics 3(a) & (b) (sea level rise in coastal Louisiana).

The liberty interests of Plaintiffs in choosing where to live and their freedom of movement, which are central to individual dignity and autonomy, are also being harmed and threatened with irreversible harm. FAC, ¶ 66, Jaime B. Dec., ¶ 3 (displaced from Navajo Reservation and ancestral home from climate change and drought conditions); FAC ¶¶ 49, 88.

The FAC alleges Plaintiffs' personal security interests are being threatened much in the same way as their right to life. Zealand, Jaime, and Xiuhtezcatl have all had to flee for safety or evacuate homes from wildfires or flooding, which are more severe and frequent with climate change. FAC ¶¶ 36, 67, 70. Alex, Sahara, and Nathaniel suffer from asthma; their ailments worsen with increasing wildfires and levels of pollen, making it harder for them to breathe, conditions that will only worsen with time. FAC ¶¶ 28, 46, 75. Extreme weather events have already and will increasingly harm Sophie, Victoria, and Jayden. FAC ¶¶ 63, 72, 87.

The FAC alleges at ¶¶ 97, 241 the very survival of Plaintiffs, indeed their right to life, is being threatened by the aggregate actions of Federal Defendants by permitting, authorizing, subsidizing, and supporting fossil fuel exploitation, production, and

consumption. If the emissions from Federal Defendants' actions continue unabated, feedback loops would be triggered and critical tipping points would be past, thus causing irreversible changes to our climate system making it no longer conducive to the survival of Plaintiffs and future generations. Supported by science, the FAC alleges that, by the end of this century, when many of these children would still be living, the Earth's climate system will no longer be conducive to their survival. FAC ¶¶ 5-11, 96-97.

Contrary to Defendants' spin, these individualized injuries are either already occurring or are being locked-in such that the future injury is "certainly impending." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (an injury that is "certainly impending" is adequate); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564, n. 2 (1992) (same). Defendants baldly ignore the science of climate change as alleged in the FAC, which means that future harms, even those many decades in the future, have been and are being locked in right now, and thus, can only be remedied *today*.

**B.   Plaintiffs Must Be Able to Bring their Claim Today Before the Harm is Irreparable and "Locked In"**

Federal Defendants suggest that a substantive due process claim for government endangerment of Plaintiffs should be brought only ***after*** Plaintiffs are severely injured or dead. Fed. Obj. 18. Nothing in the Constitution or substantive due process jurisprudence requires such an unjust result. Plaintiffs' FAC alleges Federal Defendants have knowingly and willfully put Plaintiffs in a dangerous situation and continue to enhance that danger – threatening Plaintiffs' personal security, survival, implicit liberties, and property interests. Thus, the infringement of fundamental rights is happening now. The present and imminent harms alleged are but the early stages of climate-related injuries to

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                                                  26

the personal security and other fundamental rights of Plaintiffs. FAC ¶¶ 136, 213-255.

Federal Defendants must be compelled, now, to cease their ongoing exacerbation of the

situation and to act to reverse the damage they have already inflicted, through the climate

system, upon Plaintiffs. Nothing in the Constitution precludes the Court from acting until

the full measure of the catastrophe is realized. It is critical that this Court act before it is

too late.

What makes this case uniquely positioned for a meaningful remedy is the

thorough scientific evidence supporting the FAC and showing the causal link to the

irreversible full deprivation of Plaintiffs' rights. Unlike many of the plaintiffs in the

*DeShaney* line of cases, the uncontested science supports Plaintiffs' claims that this Court

must act so that the deprivation of Plaintiff's fundamental rights may be averted.[11] As Dr.

MacCracken says in ¶ 12 of his Expert Declaration: "What's the use of having developed

a science well enough to make predictions, if in the end, all we're willing to do is stand

around and wait for them to come true?"

The constitutional violation presented here to this Court is akin to that which the

Supreme Court discussed in *Brown v. Plata*, comparing conditions causing constitutional

---

[11]     *See Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942) (enjoining forced sterilization to
protect the *future* fundamental liberty rights of marriage and procreation); *Ala.
Legislative Black Caucus v. Alabama*, 575 U.S. ___ (2015) (reviewing Alabama's
redistricting as racial gerrymandering in violation of Fourteenth Amendment and Voting
Rights Act of 1965 alleging negative impacts on equal representation of minorities;
plaintiffs sought to protect their rights to vote in *future* elections); *Glossip v. Gross*, 576
U.S. __, slip op. 9-10 (2015) (lower court held 3-day evidentiary hearing, considered
expert testimony, and reviewed numerous exhibits in an Eighth Amendment drug
cocktail, death penalty case, to evaluate whether execution drugs constituted cruel and
unusual punishment to prisoners, *prior to* execution). The FAC alleges, and the scientific
evidence will show, Plaintiffs' lives, liberties, and properties are threatened by cocktail of
greenhouse gas pollutants, legally-sanctioned by Federal Defendants, that will drastically
impair the exercise of Plaintiffs' fundamental rights in the immediate future.

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL**                    27
**OBJECTIONS**

infringements to "a spider web, in which the tension of the various strands is determined by the relationship among its parts." *Brown v. Plata*, 131 S. Ct 1910, 1937 (2011). The Supreme Court acknowledged the "interdependence of the conditions producing the violation," which included overcrowding and said, "[o]nly a multifaceted approach aimed at many causes, including overcrowding, will yield a solution." *Id.* The Supreme Court then affirmed the federal courts' authority "to fashion practical remedies when confronted with complex and intractable constitutional violations." *Id*. In *Brown v. Plata*, as here, plaintiffs described the conditions that produced the constitutional violation, but did not list every one of the many decisions and factors that played a role. *See* First Amended Complaint Class Action, *Brown v. Plata*, 563 U.S. 493 at ¶ 192(a) – (q) (N.D. Cal. Aug. 2001).

        **C.**    **Plaintiffs Injuries Are Redressable**

Federal Defendants are wrong that Plaintiffs injuries are not redressable because the requested relief is unworkable. Fed. Obj. 33. For example, while Federal Defendants balk at the idea of preparing a national plan to phase out fossil fuel emissions, court-ordered plans are a standard remedy. *See, e.g., Brown v. Plata*, 563 U.S. 493 (2011); *Swann v. Charlotte-Mecklenburn Bd. of Educ.*, 401 U.S. 1 (1971). Furthermore, the Federal Government already prepared a plan similar to the one requested by Plaintiffs 26 years ago, though it was never implemented, thus requiring the preparation and implementation of a new plan. FAC ¶ 3 citing EPA, *Policy Options for Stabilizing Global Climate* (1990). There is nothing about consumption-based $CO_2$ emission inventories that

is unworkable either, given that the State of Oregon performs them.[12] Federal Defendants

are also wrong to say that granting Plaintiffs requested relied would require the Court to

"override existing statutes." Fed. Obj. 33. Judge Coffin was correct in concluding that

Plaintiffs requested relief is within the authority of the Federal Defendants. F&R 14.

Courts have the ability and discretion to fashion remedies consistent with the role of the

judiciary. *See e.g. Zubik v. Burnwell,* 578 U.S. ___, slip op. 3-4 (2016) (noting the gravity

of the issues regarding constitutional rights of religious exercise and women's rights to

equal health coverage, including contraceptives, and remanding to Courts of Appeals for

parties to develop a remedy that addresses the rights at issue).

## CONCLUSION

These 21 youth Plaintiffs filed their First Amended Complaint, seeking an order

from this Court to prevent Federal Defendants from continuing to violate the Constitution

and the Public Trust Doctrine by knowingly putting Plaintiffs and their vital natural

systems at catastrophic risk from greenhouse gas pollution and climate destabilization. At

its core, this case is about Plaintiffs' survival and whether Federal Defendants can

continue to endanger it.

Based on the clear allegations in the First Amended Complaint, this Court should

affirm the denial of these Motions to Dismiss. In objecting to Magistrate Judge Coffin's

Findings and Recommendations, Defendants largely ignore the actual allegations in the

---

[12]    *See, e.g.,* State of Or. Dept. of Envtl. Quality, Dept. of Energy and Dept. of
Transp., *Oregon's Greenhouse Gas Emissions Through 2010: In-Boundary,
Consumption-Based and Expanded Transportation Sector Inventories* (2013), available
at http://www.oregon.gov/deq/AQ/Documents/OregonGHGinventory07_17_13FINAL.p
df.

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL**                              29
**OBJECTIONS**

First Amended Complaint and simultaneously present no evidence to contradict any of Plaintiffs' allegations of fact.

The Constitution is clear: Federal Defendants cannot deprive Plaintiffs of their fundamental rights under the Fifth Amendment to life, liberties, and property. The allegations of Federal Defendants' aggregate actions at issue in this case must be judged against those constitutional rights. Defendants mischaracterize Plaintiffs' case as seeking to be free from all $CO_2$ emissions. That is not Plaintiffs' claim. They claim the right to be free from government acts that threaten their personal security, their lives, their liberties and their property. The First Amended Complaint makes clear allegations of affirmative, official, and effective endangerment of Plaintiffs by Federal Defendants. The First Amended Complaint alleges these defendants have and continue to inflict substantial harm to Plaintiffs' fundamental rights, requiring Plaintiffs to invoke this Court's legal protection because their personal security has been directly impacted and their rights as citizen beneficiaries to vital public trust resources within the federal domain damaged.

In contrast to these well-pled and uncontroverted allegations, the Defendants respond with broad strokes:

- Plaintiffs have no fundamental rights at stake, no rights to life, personal security, liberties, or property.

- There is no right to a stable climate system, healthy atmosphere, and oceans free from dangerous levels of human-caused $CO_2$ pollution created and caused by Federal Defendants.

- Federal Defendants have no constitutional obligation to protect any of our essential natural resources, including our atmosphere and our oceans.

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                                                           30

- The States must protect public trust resources, but Federal Defendants are exempt from such a trust obligation.

- The power of the political branches to destroy the climate system, oceans, and atmosphere is plenary and cannot be reviewed by this Court.

- The political power of the executive and legislature is more important than the constitutional rights of the youth and future generations.

- There are no checks and balances when it comes to climate change. The political branches police themselves and make all of the decisions regardless of their knowing role in creating and causing the "apocalyptic effect" of their decisions.

- Climate change will harm everyone and therefore no one can sue the federal government because the vastness of the harm somehow eliminates the case and controversy.

- When addressing climate change, it does not matter that the effects these Plaintiffs will experience are substantially worse than the effects on earlier generations.

- If one of these Plaintiffs died or was severely injured by state action in causing or enhancing climate change, only then might their representatives have a claim this Court could hear.

- Even though Federal Defendants contend only the Clean Air Act matters when it comes to stopping climate change, they say the Clean Air Act does not *require* the regulation of $CO_2$.

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                                                       31

- Finally, Federal Defendants claim that a national climate plan, based on science, is an extraordinarily unworkable remedy, even though such a national climate plan is both necessary and achievable, as demonstrated to Congress in 1989 and produced by the EPA in 1990, based on 350 ppm.

These arguments should be rejected.  While this case presents a unique, systemic problem, Plaintiffs only ask this Court to do what courts have done throughout our nation's history: issue declaratory relief, and order an accounting and a plan to remedy constitutional violations. There is no more time to waste. We deal here with the rights of these children to be secure and the government's significant role in destroying that security. Plaintiffs have the right to prove Federal Defendants' role in harming them has been knowing and deliberate. When they do, this Court will find inflicting such a harm is unconstitutional and a violation of the Public Trust Doctrine. The remedies requested will preserve Plaintiffs' rights to life, liberty, and property and secure our nation for our Posterity.

Magistrate Judge Coffin is correct: These Motions to Dismiss must be denied.

Respectfully submitted this 16th day of May, 2016,

<u>s/ Julia A. Olson</u>
JULIA OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
**WILD EARTH ADVOCATES**
1216 Lincoln St.
Eugene, OR 97401
Tel: (415) 786-4825

PHILIP L. GREGORY (*pro hac vice*)
pgregory@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                                                                32

Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577

DANIEL M. GALPERN (OR Bar 061950)
dan.galpern@gmail.com
**LAW OFFICES OF DANIEL M. GALPERN**
1641 Oak Street
Eugene, OR 97401 Tel: (541) 968-7164

*Attorneys for Plaintiffs*

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO FEDERAL OBJECTIONS**                33