JULIA A. OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
WILD EARTH ADVOCATES
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

DANIEL M. GALPERN (OR Bar 061950)
dan.galpern@gmail.com
LAW OFFICES OF DANIEL M. GALPERN
1641 Oak Street
Eugene, OR 97401
Tel: (541) 968-7164

JOSEPH W. COTCHETT
jcotchett@cpmlegal.com
PHILIP L. GREGORY (*pro hac vice*)
pgregory@cpmlegal.com
PAUL N. MCCLOSKEY
pmccloskey@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**; **XIUHTEZCATL TONATIUH M.**, through his Guardian Tamara Roske-Martinez; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>The **UNITED STATES OF AMERICA**; **BARACK OBAMA**, in his official capacity as President of the United States; et al.,<br><br>Federal Defendants. | Case No.: 6:15-cv-01517-TC<br><br>PLAINTIFFS' MEMORANDUM IN RESPONSE TO INTERVENOR OBJECTIONS |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO INTERVENOR OBJECTIONS**

# TABLE OF CONTENTS

                                                                                                                        Page

**INTRODUCTION** .................................................................................................. 1

**LEGAL ARGUMENT**............................................................................................ 3

      I.      THE FIRST AMENDED COMPLAINT PROPERLY ALLEGES
              CLAIMS FOR RELIEF ................................................................................. 3

              A.      A Claim Under The Public Trust Doctrine May Be Made
                        Against Federal Defendants............................................................ 3

              B.      Plaintiffs Properly Alleged Due Process And Equal
                        Protection Claims............................................................................ 6

**CONCLUSION** .................................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

## CASES

*Arce v. Douglas*,
  793 F.3d 968 (9th Cir. 2015) ............................................................................................... 9

*Arlington Heights v. Metro. Hous. Corp.*,
  429 U.S. 252 (1977) ................................................................................................... 8, 9, 10

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
  489 U.S. 189 (1989) ............................................................................................................. 6, 8

*Ingraham v. Wright*,
  430 U.S. 651 (1977) ............................................................................................................. 6

*Kennedy v. City of Ridgefield*,
  439 F.3d 1055 (9th Cir. 2006) .......................................................................................... 6, 7

*L.W. v. Grubbs*,
  92 F.3d 894 (9th Cir. 1996) ............................................................................................... 7, 8

*McGinest v. GTE Serv. Corp.*,
  360 F.3d 1103 (9th Cir. 2004) ............................................................................................ 9

*Obergefell v. Hodges*,
  135 S.Ct. 2584 (2015) .......................................................................................................... 8

*Pac. Shores Props., LLC v. City of Newport Beach*,
  730 F.3d 1142 (9th Cir. 2013) ............................................................................................ 9

*Penilla v. City of Huntington Park*,
  115 F.3d 707 (9th Cir. 1997) .............................................................................................. 7

*PPL Montana, LLC v. Montana*,
  132 S. Ct. 1215 (2012) ..................................................................................................... 3, 4

*Uhlrig v. Harder*,
  64 F.3d 567 (10th Cir.1995), *cert. denied*, 516 U.S. 1118 (1996) .............................. 7, 8

*United States v. Mission Rock Co.*,
  189 U.S. 391 (1903) ......................................................................................................... 4, 5

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO INTERVENOR OBJECTIONS**

ii

**Page(s)**

*Washington v. Davis*,
   426 U.S. 229 (1976) .................................................................................................... 8, 10

*Wood v. Ostrander*,
   879 F.2d 583 (9th Cir. 1989) ............................................................................................. 6

# OTHER AUTHORITIES

Charles L. Wilkinson, *The Public Trust Doctrine in Public Land Law*, 14 U.C. Davis L.
   Rev. 269, 315 (1980) ........................................................................................................ 5

Karl S. Coplan, *Public Trust Limits on Greenhouse Gas Trading Schemes: A Sustainable
   Middle Ground*, 35 Colum. J. Envtl. L. 287, 315 (2010) ................................................. 5

## INTRODUCTION

Plaintiffs originally brought this action against various federal government officials and agencies. The First Amended Complaint ("FAC") asserts Federal Defendants have known for decades that carbon dioxide ("$CO_2$") pollution has been causing catastrophic climate change, but despite this knowledge, failed to take necessary actions to curtail damaging fossil fuel emissions. The FAC also alleges Federal Defendants have taken action or failed to take action resulting in increased carbon pollution by promoting fossil fuel extraction, production, consumption, transportation, and exportation. Plaintiffs aver a reduction of global $CO_2$ concentrations to no more than 350 parts per million ("ppm") by the end of the century is possible and essential to protect Plaintiffs' fundamental rights, but action must be taken immediately to prevent further ocean acidification, ocean warming, and climate destabilization. Plaintiffs seek immediate implementation of a plan by Federal Defendants to reduce atmospheric $CO_2$ concentrations to no more than 350 ppm by 2100 in order to avoid the most catastrophic and irreversible impacts of climate change and ocean acidification.

In their constitutional claims, Plaintiffs assert the actions and omissions of Federal Defendants increased $CO_2$ emissions such as to "shock the conscience" and infringe Plaintiffs' rights to life, liberty, and property in violation of the substantive due process clause of the Fifth Amendment. FAC ¶¶ 277-289. The FAC also alleges Federal Defendants violated Plaintiffs' equal protection rights under the Fifth Amendment by denying them protections afforded to previous generations and by favoring short-term economic interests of certain citizens. FAC ¶¶ 290-301. The FAC goes on to allege Federal Defendants' acts and omissions violate Plaintiffs' unenumerated rights through

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO INTERVENOR OBJECTIONS**                                                                                    1

the Ninth Amendment to a stable climate and an ocean and atmosphere free from dangerous levels of $CO_2$. FAC ¶¶ 302-306. Finally, the FAC alleges Federal Defendants violated the Public Trust Doctrine by causing public trust resources to become substantially impaired and by denying Plaintiffs and future generation's access to essential natural resources. FAC ¶¶ 307-310.

The National Association of Manufacturers ("NAM"),[1] the American Fuel & Petrochemical Manufacturers ("AFPM"),[2] and the American Petroleum Institute ("API")[3] (collectively, "Intervenor Defendants") successfully moved to intervene in this action. As part of their Motion to Intervene, Intervenor Defendants claimed that Federal Defendants would not adequately represent the interests of Intervenor Defendants in this litigation.[4] (Dkt. 15.)

---

[1]  In moving to intervene, NAM asserted it represented manufacturers "in every industrial sector" across America. (Dkt. 14.) NAM alleged its members include leaders of the coal industry, oil industry, natural gas industry, petroleum producers, and petrochemical refiners. NAM also alleged its members rely heavily on the availability of energy with $CO_2$ as a byproduct.

[2]  In its Motion to Intervene, AFPM stated its members include "virtually all United States refiners and petrochemical manufactures" who rely on conventional energy sources to supply their product and whose product itself emits $CO_2$. (Dkt. 14.)

[3]  As part of the Motion to Intervene, API claimed its members "include over 625 oil and natural gas companies representing all facets of the oil and natural gas industry and who collectively provide most of the nation's energy," emitting $CO_2$. (Dkt. 14.)

[4]  It is ironic that, at footnote 1 of their Objections to Magistrate's Findings and Recommendations, Intervenor Defendants positively characterize Federal Defendants' "aggressive steps to reduce greenhouse gas emissions and address concerns over climate change." (Dkt. 73.) In their Motion to Intervene, Intervenor Defendants claimed that one of the bases supporting their right to intervene was that they "have repeatedly expressed concern regarding aspects of [Federal Defendants'] approach to regulating and controlling GHG from a wide range of sources and have challenged a number of [Federal Defendants'] GHG regulations in court as well as raised concerns on certain GHG regulations proposed by [Federal Defendants'] through notice and comment

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO INTERVENOR OBJECTIONS**                    2

Intervenor Defendants employ the unnecessarily broad brush approach of objecting to every aspect of the Findings and Recommendations ("F&Rs") of Magistrate Judge Coffin. This Court should ADOPT Judge Coffin's F&Rs as its own opinion and deny in full the Motions to Dismiss brought by Federal Defendants and Intervenor Defendants. Judge Coffin properly finds and recommends Plaintiffs' claims should proceed and Intervenor Defendants' Motion to Dismiss should be denied. In this brief, Plaintiffs will not re-state arguments made in opposition to Intervenor Defendants' Motion to Dismiss, in oral argument, or in response to Federal Defendants' Objections to the Findings and Recommendations. Rather, Plaintiffs will address the new arguments made and cases cited by Intervenor Defendants. Finally, given the urgency alleged in the FAC, this Court should set a prompt case management conference pursuant to Rule 16.

## LEGAL ARGUMENT

I. **THE FIRST AMENDED COMPLAINT PROPERLY ALLEGES CLAIMS FOR RELIEF**

    A. **A Claim Under The Public Trust Doctrine May Be Made Against Federal Defendants**

In opposing the Motions to Dismiss, Plaintiffs addressed the arguments by Intervenor Defendants that *PPL Montana, LLC v. Montana*, 132 S. Ct. 1215 (2012), "held that the public trust doctrine is not a matter of federal law and cannot apply to the

---

opportunities." (Dkt. 15.) Thus, it is clear that Intervenor Defendants' positive characterization of Federal Defendants efforts must be "tongue in cheek" and that they are objecting to Judge Coffin's Findings and Recommendations to the extent allowing this case to proceed will result in appropriate controls over GHG emissions. Furthermore, the efforts to reduce greenhouse gas emissions that Intervenor Defendants point to in footnote 1 are wholly inadequate to address the climate crisis.  Further, the recently-signed Paris Agreement features emission reduction pledges that are fully inadequate to protect Plaintiffs fundamental right to a viable climate system notwithstanding their non-binding character. To the extent these efforts pertain to the case, they are facts to be presented at trial.

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO INTERVENOR OBJECTIONS**      3

federal government." Intervenor Obj. 3 (Dkt. 73). In his F&Rs, Judge Coffin agreed with Plaintiffs and properly distinguished the cases cited by Intervenor Defendants, in particular determining: "The question whether the United States has public trust obligations for waters over which it alone has sovereignty (e.g., the territorial seas of its coastline) was simply not presented to or decided by the Court in *PPL Montana, LLC*." F&Rs 17. The F&Rs properly determine the FAC "touches upon protected areas (territorial ocean waters at a minimum) impacted by the government's alleged conduct and harm to many plaintiffs given the alleged sea level rise, ocean acidification, and atmosphere change." F&Rs, 21. Plaintiffs will not restate their arguments in responding to Intervenor Defendants' persistent misreading of *PPL Montana*. *See* Pls' Opp'n Fed. MTD at 19-29 (Dkt. 41).

Intervenor Defendants commence their discussion of the Public Trust Doctrine by citing to *United States v. Mission Rock Co.*, 189 U.S. 391, 407 (1903), incorrectly asserting this decision regarding "state property rights in lands submerged beneath tidal and navigable waterways," holds that the sole purpose of the Public Trust Doctrine is to restrict "a state's ability in certain circumstances to alienate those resources." Intervenor Obj. 9. That is not the holding of *Mission Rock*. In fact, the *Mission Rock* decision addressed whether the State of California had title to convey to "submerged land as an easement appurtenant" to certain islands. The *Mission Rock* decision does not broadly address whether the Public Trust Doctrine applies to the federal government; but instead evaluates state public trust law. *United States v. Mission Rock Co.*, 189 U.S. at 407 (commenting that even transfers of state public trust property to private owners must be done "in strict performance of the state's trust").

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO INTERVENOR OBJECTIONS**                                              4

Further, the F&Rs properly noted that the instant "case is different in that it does not at all implicate the equal footing doctrine or public trust obligations of the State of Oregon. The public trust doctrine invoked instead is directed against the United States and its unique sovereign interests over the territorial ocean waters and atmosphere of the nation." F&Rs, 20. Thus, decisions such as *Mission Rock* simply do not apply to the FAC's allegations concerning the Public Trust Doctrine. Determining "the government's public trust duties [are] deeply ingrained in this country's history," the F&Rs found that, "[a]t this stage of the proceedings, the court cannot say that the public trust doctrine does not provide at least some substantive due process protections for some plaintiffs within the navigable water areas of Oregon." F&Rs, 23.

Intervenor Defendants' absolute assertion that Federal Defendants are not subject to the Public Trust Doctrine does not even address, much less distinguish, the opinions of the Supreme Court and Circuit Courts of Appeal, all recognizing the Public Trust Doctrine applies to sovereign entities. The Public Trust Doctrine is an ancient legal mandate incorporated into American jurisprudence. The Doctrine establishes a sovereign obligation to hold critical natural resources in trust for the benefit of the citizen beneficiaries. The doctrine is "rooted in the precept that some resources are so central to the well-being of the community that they must be protected by distinctive, judge-made principles." Charles L. Wilkinson, *The Public Trust Doctrine in Public Land Law*, 14 U.C. Davis L. Rev. 269, 315 (1980). The Public Trust Doctrine is "inherent in the nature of sovereignty and are therefore enforceable as limits on federal action." *See* Karl S. Coplan, *Public Trust Limits on Greenhouse Gas Trading Schemes: A Sustainable Middle Ground*, 35 Colum. J. Envtl. L. 287, 315 (2010). Based on the forgoing analysis, as well

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO INTERVENOR OBJECTIONS**   5

as the briefing concerning the Motions to Dismiss, the F&Rs properly apply the Public Trust Doctrine to the claims in this case and should be adopted by this Court.

### B. **Plaintiffs Properly Alleged Due Process And Equal Protection Claims**

Intervenor Defendants mistakenly state Plaintiffs "do not challenge *any* government action that allegedly infringes on the plaintiffs' individual rights . . . ." Intervenor Obj. 16 (emphasis added). The FAC refers to numerous government actions infringing on Plaintiffs' due process and equal protection rights, *see, e.g.,* FAC ¶¶ 165-170; 172-174; 181-182; 186-190; the F&Rs properly construe the FAC as asserting the claims go to Federal Defendants' "action/inaction with respect to their obligations regarding regulating environmental pollutants," doing "so in favor of older generations." F & Rs at 15.

Intervenor Defendants fault the FAC for not asserting that Federal Defendants "'created' climate change." Intervenor Obj. 17. None of the cases cited by Intervenor Defendants require the State to be solely responsible for creating the danger.

"It is well established that the Constitution protects a citizen's liberty interest in her own bodily security." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (citing *Ingraham v. Wright*, 430 U.S. 651, 673–74 (1977); *Wood v. Ostrander*, 879 F.2d 583, 589 (9th Cir. 1989)). It is likewise well established that a due process violation may occur where "state action affirmatively places the plaintiff in a position of danger, that is, where state action creates *or exposes* an individual to a danger which he or she would not have otherwise faced." *Id*. (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197, 201 (1989); *Wood*, 879 F.2d at 589–90) (quotation and alteration omitted) (emphasis added). Liability under this theory requires a two-part

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO INTERVENOR OBJECTIONS**                                                              6

showing: (1) "that the officer's actions created *or increased* the danger facing [plaintiff]"; and (2) "the state official acted with deliberate indifference to a known or obvious danger." *Kennedy*, 411 F.3d at 1142 (emphasis added); *see Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997) (affirming denial of Fed. R. Civ. P. 12(b)(6) motion to dismiss where officers "allegedly took *affirmative actions that significantly increased the risk facing Penilla*: they cancelled the 911 call to the paramedics; they dragged Penilla from his porch, where he was in public view, into an empty house; they then locked the door and left him there alone. And they allegedly did so after they had examined him and found him to be in serious medical need.") (emphasis added).

In the decision primarily relied on by Intervenor Defendants, *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996), the Ninth Circuit adopted the test in the Tenth Circuit decision in *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir.1995), *cert. denied*, 516 U.S. 1118 (1996), as presenting "an accurate statement and application" for a due process violation under Section 1983. In *Uhlrig*, the Court listed the elements required by the Tenth Circuit to state a Section 1983 claim. A plaintiff must allege:

> (1) [Plaintiff] was a member of a limited and specifically definable group; (2) Defendants' conduct put [Plaintiff] and the other members of that group at substantial risk of serious, immediate and proximate harm; (3) the risk was obvious or known; (4) Defendants acted recklessly in conscious disregard of that risk; and (5) such conduct, when viewed in total, is conscience shocking.

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO INTERVENOR OBJECTIONS**   7

*L.W. v. Grubbs*, 92 F.3d at 898, quoting from *Uhlrig*, 64 F.3d at 574. There is no requirement that the FAC allege Federal Defendants themselves *solely* created the danger. Further, having sufficiently pled the claim in the FAC, Plaintiffs obligation to establish the factual elements of the *DeShaney* exception is a matter reserved for trial.

      Intervenor Defendants also assert Plaintiffs have not alleged "affirmative, purposeful conduct" by Federal Defendants for purposes of the equal protection claim. Intervenor Obj. 18-19. Magistrate Judge Coffin properly found the FAC alleges "discrimination against a class of younger individuals with respect to a fundamental right protected by substantive due process." F&Rs 15, n. 8; *see* FAC ¶¶ 8, 292-93, 297. The cases cited by Intervenors and the test they assert only apply to equal protection claims involving a suspect class. If the Court adopts Judge Coffin's recommendation not to create a new suspect classification for Posterity (future generations) at this time (F&R 15, n.8), *Obergefell v. Hodges* provides the framework for analysis for Fifth Amendment violations of substantive due process and equal protection principles. *Obergefell v. Hodges*, 135 S.Ct. 2584, 2604-05 (2015).

      If the Court rejects the recommendation not to give Posterity suspect classification, then the tests set forth in Supreme Court cases like *Washington v. Davis*, 426 U.S. 229, 242 (1976) and *Arlington Heights v. Metro. Hous. Corp.*, 429 U.S. 252 (1977), would apply, and Plaintiffs have properly alleged facts to meet those tests. *See* Pls' Opp'n Intervenors' MTD at 26-28 (Dkt. 56).

If a governmental actor engages in discrimination with a discriminatory purpose, such conduct violates the Equal Protection Clause. *Arlington Heights v. Metro. Hous. Corp.*, 429 U.S. 252, 265–66 (1977) (noting, in the context of a zoning challenge, that "[w]hen there is a proof that a discriminatory purpose has been a motivating factor" in a government decision, judicial deference to that decision is not justified under the Equal Protection Clause). Under *Arlington Heights*, a plaintiff must simply allege that a discriminatory reason more likely than not motivated the defendant and that the defendant's actions adversely affected the plaintiff in some way. *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004)). Plaintiffs do not have to allege "the discriminatory purpose was the sole purpose of the challenged action, but only that it was a 'motivating factor.'" *Arce v. Douglas*, 793 F.3d 968, 977 (9th Cir. 2015) (quoting *Arlington Heights*, 429 U.S. at 266). For purposes of a Motion to Dismiss, this Court analyzes whether a discriminatory purpose motivated the defendants by examining, among other things, the events leading up to the challenged decision, the historical background of the decision, and whether it creates a disparate impact. *Id*. (citing *Arlington Heights*, 429 U.S. at 266–68, and *Pac. Shores Props.*, 730 F.3d at 1158–59). A plaintiff need not establish any particular element in order to prevail. *See Pac. Shores Props.*, 730 F.3d at 1156 (for the purpose of summary judgment, "any indication of discriminatory motive may suffice to raise a question that can only be resolved by a factfinder").

For their part, Intervenor Defendants fundamentally misread the type of allegations required to sustain a suspect classification equal protection challenge. Intervenor Defendants ignore that while evidence of disparate impact is not necessarily determinative of bias in the manner in which Federal Defendants have dealt with fossil fuel emissions, it is nevertheless relevant and important evidence that at a minimum raises an inference of discrimination. *See Washington v. Davis*, 426 U.S. 229, 242 (1976) ("Necessarily, an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another"); *Arlington Heights*, 429 U.S. at 266 ("The impact of the official action . . . may provide an important starting point. Sometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action even when the governing legislation appears neutral on its face."). Whether Plaintiffs' Equal Protection claim under the Fifth Amendment involves a suspect class or a class being discriminated against with respect to their fundamental rights, the FAC properly asserts an equal protection violation.

As to the due process claims, the F&Rs properly determine the FAC alleges Federal Defendants acted to create "a life-threatening situation." F&Rs 16. This finding is supported by numerous allegations in the FAC. *See, e.g.,* ¶¶ 8, 9, 130, 151, 280, 284-85. Further, the F&Rs did not err in concluding that the FAC properly asserts an equal protection claim given the undisputed allegations of stark disparities in the effects of fossil fuel emissions on Plaintiffs, resulting in the complete destruction of the climate system. This Court should adopt the Findings and Recommendations of Magistrate Judge Coffin.

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO INTERVENOR OBJECTIONS**                                    10

## CONCLUSION

The Motions to Dismiss were thoroughly briefed and argued. Intervenor Defendants were given a full opportunity to argue their position. Magistrate Judge Coffin issued Findings and Recommendations that are reasoned and follow Supreme Court and Ninth Circuit case law. Given the urgency alleged in the FAC, this Court should adopt the Findings and Recommendations and set a prompt case management conference pursuant to Rule 16.

Respectfully submitted this 16th day of May, 2016,

*s/ Julia A. Olson*
JULIA OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
**WILD EARTH ADVOCATES**
1216 Lincoln St.
Eugene, OR 97401
Tel: (415) 786-4825

PHILIP L. GREGORY (*pro hac vice*)
pgregory@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577

DANIEL M. GALPERN (OR Bar 061950)
dan.galpern@gmail.com
**LAW OFFICES OF DANIEL M. GALPERN**
1641 Oak Street
Eugene, OR 97401 Tel: (541) 968-7164

*Attorneys for Plaintiffs*