JULIA A. OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
WILD EARTH ADVOCATES
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

DANIEL M. GALPERN (OR Bar 061950)
dan.galpern@gmail.com
LAW OFFICES OF DANIEL M. GALPERN
2495 Hilyard Street, Suite A
Eugene, OR 97405
Tel: (541) 968-7164

JOSEPH W. COTCHETT
jcotchett@cpmlegal.com
PHILIP L. GREGORY (*pro hac vice*)
pgregory@cpmlegal.com
PAUL N. MCCLOSKEY
pmccloskey@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**; **XIUHTEZCATL TONATIUH M.**, through his Guardian Tamara Roske-Martinez; et al.<br><br>Plaintiffs,<br><br>v.<br><br>The **UNITED STATES OF AMERICA**; **DONALD TRUMP**, in his official capacity as President of the United States; et al.,<br><br>Federal Defendants. | Case No.: 6:15-cv-01517-TC<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO CERTIFY OREDER FOR INTERLOCUTORY APPEAL**<br>Request for Oral Argument |

## TABLE OF CONTENTS

Page

**INTRODUCTION** ................................................................................................ 1

**ARGUMENT** ...................................................................................................... 2

    I.    **The November 10 Order Does Not Present Any Controlling Question of Law** ...................................................................................... 4

        A.    **Plaintiffs' Standing is Not a Controlling Question of Law** .................. 5

        B.    **The Right to a Climate System Capable of Sustaining Human Life is Not a Controlling Question of Law For Purposes of This Motion Because it is Not the Only Constitutional Right at Issue** ...................... 7

        C.    **The Federal Public Trust Doctrine Is Not a Controlling Question of Law** .................................................................................................. 8

    II.    **There Are No Substantial Grounds for Differences of Opinion** ...................... 9

        A.    **There are No Substantial Grounds for Disagreement that Plaintiffs Adequately Pleaded Standing** .................................................. 10

            1.    **Plaintiffs Adequately Pleaded Injury In Fact** ......................... 11

            2.    **Plaintiffs Have Adequately Pleaded Causation** ....................... 13

            3.    **Plaintiffs Have Adequately Pleaded Redressability** ................. 17

        B.    **No Substantial Grounds for Disagreement on Plaintiffs' Due Process Rights** .................................................................................. 19

        C.    **There are No Substantial Grounds for Disagreement as to the Public Trust** .................................................................................. 22

    III.    **Appeal Would Not Materially Advance Ultimate Termination of the Litigation** ........................................................................................... 25

**CONCLUSION** ................................................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alec L. ex. rel Loorz v. Jackson,*
    863 F.Supp.2d 11 (D.D.C.2012) ............................................................................... 22

*Alec L. ex. rel Loorz v. McCarthy,*
    561 F. App'x 7 (D.C. Cir. 2014) ......................................................................... 22, 23

*Allen v. Wright,*
    468 U.S. 737 (1984) ............................................................................... 11, 16, 17

*Am. Elec. Power Co. v. Conn.,*
    564 U.S. 410 (2010) ........................................................................... 9, 14, 23, 24

*Ashmore v. Northeast Petroleum Div. of Cargill, Inc.,*
    855 F.Supp. 438 (D. Me. 1994) .................................................................................. 4

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................................. 16

*Bowsher v. Synar,*
    478 U.S. 714 (1986) .................................................................................................. 11

*Cal. Dep't of Water Resources v. Powerex Corp.,*
    533 F.3d 1087 (9th Cir. 2008) ................................................................................... 3

*Camacho v. P.R. Ports Auth.,*
    369 F.3d 570 (1st Cir. 2004) .................................................................................. 3, 9

*Cf. Brown v. Plata,*
    563 U.S. 493 (2011) .................................................................................................. 15

*Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.,*
    No. 09-CV-320-HU,
    2010 WL 952273 (D. Or. March 10, 2010) .............................................................. 5

*City of Burbank v. General Elec. Co.,*
    329 F.2d 825 (9th Cir. 1964) ..................................................................................... 5

*Clinton v. Jones,*
    520 U.S. 681 (1997) ·················································································· 19

*Conn. v. Am Elec. Power Co.*,
    582 F.3d 309 (2d Cir. 2009) .................................................................. 14, 15

*Coopers & Lybrand v. Livesay*,
    437 U.S. 463 (1978)............................................................................... 3, 7

*Couch v. Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010) ............................................................. *passim*

*Ctr. for Biological Diversity v. FPL Grp.*,
    83 Cal.Rptr.3d 588 (Cal. Ct. App. 2008)................................................... 18

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 353 (2006)........................................................................... 14, 15

*De Shaney v. Winnebago Cty. Dep't of Soc. Servs.*,
    489 U.S. 189 (1989)................................................................................. 21

*Dept. of Economic Dev. V. Arthur Anderson & Co.*,
    683 F.Supp. 1463 (S.D.N.Y. 1988) ............................................................. 6

*Edwards v. First Am. Corp.*,
    610 F.3d 514 (9th Cir. 2010) ...................................................................... 6

*Exec. Software N. Am., Inc. v. United States Dist. Ct. for the Cent. Dist. Of Cal.*,
    24 F.3d 1545 (9th Cir. 1994) ...................................................................... 2

*Fed. Election Comm'n v. Akins*,
    524 U.S. 11 (1998).................................................................................. 12

*Hypotherm, Inc. v. Am. Torch Tip Co.*,
    No 05-373, 2008 WL 1767062 (D.N.H. Apr. 15, 2008) ....................................... 28

*Ill. Cent. R. Co. v. State of Ill.*,
    146 U.S. 387 (1892)............................................................................ 24, 25

*In re Cement Antitrust Litigation*,
    673 F.2d 1020 (9th Cir. 1982), *aff'd* 459 U.S. 1190 (1983) ........................... 4, 7, 26

*In re Magic Marker Securities Litig.*,
    472 F.Supp. 436 (E.D. Pa. 1979) ................................................................. 4

*Keystone Tobacco Co. v. U.S. Tobacco Co.*,
    217 F.R.D. 235 (D.D.C. 2003)...................................................................... 5

*Kuehner v. Dickinson & Co.*,
    84 F.3d 316 (9th Cir. 1996) ................................................................ 3

*Lawson v. FMR LLC*,
    724 F.Supp.2d 167 (D. Mass. 2010) ................................................... 3

*Lewis v. Casey*,
    518, U.S. 343 (1996) ........................................................................ 14, 15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 561 (1992) ................................................................... *passim*

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ......................................................... 11, 12

*Massachusetts v. Environmental Protection Agency*,
    549 U.S. 497 (2007) ....................................................................... 12, 15

*McDonald v. City of Chicago, Ill.*,
    561 U.S. 742 (2010) ............................................................................ 20

*McFarlin v. Conseco Servs., LLC*,
    381 F.3d 1251 (11th Cir. 2004) ........................................................... 5

*McNulty v. Borden, Inc.*,
    474 F.Supp. 1111 (E.D. Pa. 1979) ...................................................... 4

*Miller v. Bolger*,
    802 F.2d 660 (3rd Cir. 1986) ·············································· 8

*Molybdenum Corp. of America v. Kasey*,
    279 F.2d 216 (9th Cir. 1960) .................................................. 6, 7, 8, 14

*Movsesian v. Victoria Verischerung* Ag,
    578 F.3d 1052 (9th Cir. 2009) ........................................................ 8, 18

*Mowat Const. Co. v. Dorena Hydro, LLC*,
    No. 6:14-CV-00094-AA, 2015 WL 5665302 (D. Or. September 23, 2015) ............ 2

*Nat'l Asbestos Workers Med. Fund. v. Phillip Morris, Inc.*,
    71 F.Supp.2d 139 (E.D.N.Y. 1999) ..................................................... 2

*Native Village of Kivalina v. ExxonMobil Corp.*,
    696 F.3d 849, 2012 WL 4215921. (9th Cir. 2012) ............................. 23

*Natural Res. Defense Council v. Cnty. of L.A.*,
No. 08-cv-1467-AHM(PLAx), 2011 WL 318543 (C.D. Cal. Jan. 27, 2011) ......................... 22

*Novak v. United States*,
795 F.3d 1012 (9th Cir. 2015) ........................................................................ 11, 12

*Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*,
No. 2:13-cv-02378-JAM-AC (E.D. Cal. June 11, 2014) ................................. 6, 10, 26

*Obergefell v. Hodges*,
135 S.Ct. 2584 (2015) .................................................................................... 8, 20

*Penilla v. City of Huntington Park*,
115 F.3d 707 (9th Cir. 1997) .............................................................................. 21

*PPL Montana, LLC v. Montana*,
565 U.S. 576 (2012) .................................................................................... 22, 24

*Presbyterian Church v. United States*,
870 F.2d 518 (9th Cir. 1989) .............................................................................. 18

*Raines v. Byrd*,
521 U.S. 811 (1997) .......................................................................................... 12

*Reno v. Flores*,
507 U.S. 292 (1993) .......................................................................................... 19

*Richardson Elecs., Ltd. V. Panache Broad. Of Pa., Inc.*,
202 F.3d 957 (7th Cir. 2000) .............................................................................. 28

*Robinson Twp., Wash. Cnty., Pa. v. Pennsylvania*,
83 A.3d 901 (Pa. Sup. Ct. 2013) ........................................................................ 24

*Ryes v. BCS Ins. Co.*,
379 F.App'x 412 (5th Cir. 2010) ......................................................................... 18

*Scanlon v. M.V. Super Servant 3*,
429 F.3d 6 (1st Cir. 2005) .................................................................................. 28

*Struthers Scientific & Intern. Corp. v. General Foods Corp.*,
290 F. Supp. 122 (S.D. Tex. 1968) ...................................................................... 26

*Tamas v. Dep't of Soc. & Health Servs.*,
630 F.3d 833 (9th Cir. 2010) .............................................................................. 21

**Plaintiffs' Response in Opposition to Federal Defendants' Motion to Certify Order for Interlocutory Appeal**

*Teem v. Doubravsky*,
  No. 3:15-cv-00210-ST, 2016 U.S. Dist. LEXIS 13452, 3 (D. Or. Jan. 7 2016) ....................... 2

*U.S. Rubber Co. v. Wright*,
  359 F.2d 784 (9th Cir. 1966) ...................................................................................... 3, 4, 7

*U.S. v. Nixon*,
  418 U.S. 683 (1974) ............................................................................................................ 19

*U.S. v. Woodbury*,
  263 F.2d 784 (9th Cir. 1929) ............................................................................................. 3

*United States v. 34.42 Acres of Land*,
  683 F.3d 1030 (9th Cir. 2012) ...................................................................................... 24, 25

*Washington Envt'l Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) ................................................................................ 12, 14, 15

*Washington v. Trump*,
  847 F.3d 1151 (9th Cir. Feb. 9, 2017) ............................................................................. 19

*White v. Nix*,
  43 F.3d 374 (9th Cir. 1994) ................................................................................................ 7

*WildEarth Guardians v. U.S. Dep't of Agric.*,
  795 F.3d 1148 (9th Cir. 2015) ......................................................................................... 15

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ............................................................................................................ 19

## STATUTES

28 U.S.C. § 1292 ....................................................................................................... *passim*

## OTHER AUTHORITIES

16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER,
  FEDERAL PRACTICE & PROCEDURE § 3930 (3d. ed. 2012) ................................... *passim*

Michael C. Blumm & Lynn S. Schafer, *The Federal Public Trust Doctrine: Misinterpreting
  Justice Kennedy and Illinois Central Railroad*, 45 ENVTL. L. 399 (2015) .............................. 23

## RULES

D.C. Circuit Rule 36(e)(2) ................................................................ 22

F.R.C.P. 8 ........................................................................................ 14

## REGULATIONS

Exec. Order ___, 82 Fed. Reg. ___ (March 28, 2017) ..................... 26

Exec. Order 13766, 82 Fed. Reg. 8657 (Jan. 24, 2017) .................. 26

Exec. Order 13778 82 Fed. Reg. 12497 (Feb. 28, 2017) ................ 26

**INTRODUCTION**

Plaintiffs oppose and respectfully request that this Court deny Federal Defendants'
Motion to Certify Order for Interlocutory Appeal (ECF No. 120) ("Motion to Certify"). This
Court should not grant Defendants' request to certify this Court's November 10, 2016 Opinion
and Order denying Federal and Intervenor Defendants' Motions to Dismiss (ECF No. 83)
("November 10 Order") because any delay in resolving the merits of this case irreversibly
prejudices the Youth Plaintiffs in securing and protecting their fundamental constitutional rights.
As Federal Defendants acknowledge in their Answer to Plaintiffs' First Amended Complaint
("FAC"), "'business as usual' $CO_2$ emissions" imperil Plaintiffs with "dangerous, and
unacceptable economic, social, and environmental risks." ECF 98 at ¶ 150.

Federal Defendants failed to meet their burden of showing that the November 10 Order
satisfies the minimum requirements for interlocutory appeal under 28 U.S.C. § 1292(b). For
purposes of interlocutory appeal, not one of the holdings in the November 10 Order presents a
controlling question of law. Even if reversed on appeal, the conclusions in the November 10
Order as to the public trust doctrine and Plaintiffs' due process rights would not substantially
affect the scope of this litigation or the matters at issue for discovery and trial. Additionally, each
of the November 10 Order's holdings would benefit from, and those with respect to standing
require, factual development in order to permit considered appellate review. Although the
November 10 Order may involve holdings that develop the law, it provides no substantial
grounds for differences of opinion as to its conclusions since those holdings find direct support
in precedent as well as this Court's careful and reasoned analysis of assertedly contradictory
caselaw. Further, appellate reversal of those holdings would not materially advance the ultimate
determination of this litigation as each of Plaintiffs' remaining claims seeks similar relief and,
while presenting different standards, involves and requires similar overlapping factual
development through discovery, argument, and presentation of evidence at trial. Finally, Federal
Defendants' considerable delay in requesting an interlocutory appeal counsels against

certification. Here, interlocutory appeal will serve only to squander the valuable time and resources of the judiciary and parties through piecemeal appellate review of an undeveloped factual record, thereby lengthening and protracting this litigation. In keeping with this Court's projected trial scheduling for the fall of 2017, the Ninth Circuit is likely to have a full factual record and final decision on the merits from this Court within a year to review under the preferred method of appeal. *See* November 28, 2016 Transcript, ECF 100 at 12:2-5. Appellate review at this stage would not relieve Federal Defendants of their discovery obligations and would materially prejudice Plaintiffs by delaying prompt resolution of their claims amidst the urgency of the climate crisis. Plaintiffs respectfully request this Court to exercise its unfettered discretion to deny Federal Defendants' Motion to Certify.

## **ARGUMENT**

Pursuant to 28 U.S.C. § 1292(b), an otherwise non-final order may be subject to interlocutory appeal only if the district court certifies, in writing: (1) the order involves a "controlling issue of law"; (2) the controlling issue of law is one to which there is a "substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The party seeking the interlocutory appeal bears the burden of establishing that "all three § 1292(b) requirements are met." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Satisfaction of all three requirements is a "minimum" for certification, *Nat'l Asbestos Workers Med. Fund. v. Phillip Morris, Inc.*, 71 F.Supp.2d 139, 162 (E.D.N.Y. 1999) (cited in *Teem v. Doubravsky*, No. 3:15-cv-00210-ST, 2016 U.S. Dist. LEXIS 13452, 3 (D. Or. Jan. 7 2016)). "[E]ven when all three statutory criteria are satisfied, district court judges have unfettered discretion to deny certification." *Mowat Const. Co. v. Dorena Hydro, LLC,* No. 6:14-CV-00094-AA, 2015 WL 5665302, at * 5 (D. Or. September 23, 2015) (Aiken, C.J.) (quotations and citation omitted); *see also Exec. Software N. Am., Inc. v. United States Dist. Ct. for the Cent. Dist. Of Cal.*, 24 F.3d 1545, 1550 (9th Cir. 1994) (a district court's certification decision is

"unreviewable"), *overruled on other grounds by Cal. Dep't of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

These requirements are jurisdictional. *Couch*, 611 F.3d at 633. Even if the district court grants certification, the appellate court still has the "independent duty to confirm," *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 318-19 (9th Cir. 1996), whether the appellant met its burden establishing that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978). Appellate courts may deny certification for any reason, including docket congestion. *Id.* at 475.

Seeking to prevent "the debilitating effect on judicial administration caused by piecemeal appeal" of cases, Congress "carefully confined the availability" of review under Section 1292(b) to exceedingly rare circumstances. *Id.* at 471; *U.S. v. Woodbury*, 263 F.2d 784, 799 n. 11 (9th Cir. 1929) (Section 1292(b) to be applied "only in exceptional circumstances"); *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (Section 1292(b) "not merely intended to provide review of difficult rulings in hard cases"); *see also Camacho v. P.R. Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004) ("Section 1292(b) is meant to be used sparingly, and appeals under it are, accordingly, hen's-teeth rare"); *see also Lawson v. FMR LLC*, 724 F.Supp.2d 167 (D. Mass. 2010) ("after twenty-four years as a District Judge within this Circuit, I cannot recall an occasion in which I have been willing to make a § 1292(b) certification").

Federal Defendants fail to carry their burden to establish *any* of the Section 1292(b) statutory requirements. Nor can they demonstrate that the November 10 Order and the circumstances of this case present the "hen's teeth rare" justification for departure from the strong policy preference against piecemeal appellate review. To the contrary, Federal Defendants' delay in seeking certification counsels in favor of a denial of the Motion to Certify, especially in light of the immense harm that will befall Plaintiffs as a result of further delay relative to Federal Defendants' comparatively modest discovery obligations.

I.      **The November 10 Order Does Not Present Any Controlling Question of Law**

Not one of the issues posed by Federal Defendants constitutes a controlling question of law for purposes of Section 1292(b). A question is only "controlling" if "resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982), *aff'd* 459 U.S. 1190 (1983). Although resolution of an issue need not terminate an action in order to be "controlling," a mere effect on the duration of litigation without effect on its final outcome will not suffice. *Id.* at 1027 (interpreting a question as "controlling" by the effect of its resolution on the time, effort, or expense of conducting a suit would read the "controlling question of law" requirement out of Section 1292(b)).

No controlling question of law is present if additional claims would remain to be tried after appeal, especially if those claims involve similar evidence as those to which the question relates. *See, e.g., U.S. Rubber Co.*, 359 F.2d at 785 (denying certification since question of law was only relevant to one of several causes of action alleged); *McNulty v. Borden, Inc.*, 474 F.Supp. 1111, 1120-22 (E.D. Pa. 1979) (claim involving substantially the same evidence would remain to be tried in any event); *Ashmore v. Northeast Petroleum Div. of Cargill, Inc.,* 855 F.Supp. 438, 440 (D. Me. 1994) (same issues would remain no matter outcome of appeal, since other legal theories were also advanced); *In re Magic Marker Securities Litig.*, 472 F.Supp. 436 (E.D. Pa. 1979) (elimination of issues did not support certification in view of overlap of issues with remaining claim); *see also* 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3930 (3d. ed. 2012) ("WRIGHT & MILLER") ("[T]here is little doubt that a question is not controlling if the litigation would be conducted in the same way no matter how it were decided.… Rejection of one theory may not be controlling when another theory remains available that may support the same result.") (Footnotes omitted). Even if the November 10 Order's conclusions as to the public trust doctrine and due process rights were reversed on appeal, Plaintiffs' remaining constitutional

claims dictate that this litigation would be conducted in the same manner. Hence, though those conclusions are law of the case and would control on summary judgment, they are not controlling for purposes of interlocutory appeal.

Additionally, a "controlling question of law" is one that presents a purely legal question as opposed to a question of fact, a mixed question of law and fact, or a question for which additional factual development is necessary prior to ultimate disposition of an issue. *Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*, 2010 WL 952273, at *3 (D. Or. March 10, 2010) (collecting cases); *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) ("§ 1292(b) appeals were intended, and should be reserved for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts"); *Keystone Tobacco Co. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 239 (D.D.C. 2003) (When "the crux of an issue decided by the court is fact-dependent, the court has not decided a 'controlling question of law'").

### A.    Plaintiffs' Standing is Not a Controlling Question of Law

Contrary to Federal Defendants' contentions, this Court's determinations that Plaintiffs adequately pleaded the injury, causation, and redressability elements of standing do not present controlling questions of law. As an initial matter, rulings on the sufficiency of pleadings generally are unsuitable for interlocutory appeal because of the ready availability of amendment. 16 WRIGHT & MILLER § 3930, n. 21 (3d. ed. 2012) (citing *City of Burbank v. General Elec. Co.*, 329 F.2d 825, 828-29 (9th Cir. 1964)). Further, as discussed in Section II.A, Plaintiffs' allegations as to standing are more than adequate for the minimal showing required of them to survive a motion to dismiss.

The determination that Plaintiffs have adequately pleaded standing is not suitable for interlocutory appeal since the "case has not yet developed far enough to permit considered appellate disposition of the questions presented." 16 WRIGHT & MILLER § 3930 (3d. ed. 2012). Determinations of standing at the motion to dismiss stage are unfitting for interlocutory appeal because factual development in the discovery stage may add color to general standing allegations,

thus determining whether specific facts necessary to support a claim are *in fact* embraced by a complaint's general allegations. *Nutrishare, Inc. v.  Conn. Gen. Life Ins. Co.*, No. 2:13-cv-02378-JAM-AC (E.D. Cal. June 11, 2014) (denying motion for certification where claimant argued that standing is a controlling question of law; discovery might establish standing making certification inappropriate). The standing inquiry here, and the sufficiency of Plaintiffs' allegations thereunder, is necessarily informed and dependent on development and presentation of factual evidence distinguishing Plaintiffs' case from those cited by Federal Defendants as undermining the adequacy of Plaintiffs' injuries, and their causation and redressability.  As such, the standing inquiry here is intertwined with questions of fact and, therefore, does not pose a "controlling question of law."

Further, interlocutory appeal at this early stage would run contrary to Congress' intent in enacting Section 1292(b) of preventing piecemeal appeals without adequate development of the record. *Id.*; *see also Molybdenum Corp. of America v. Kasey*, 279 F.2d 216 (9th Cir. 1960) (vacating initial grant of certification for appeal as improvident where record was inadequate to resolve the questions presented for review of denial of motion to dismiss); *Dept. of Economic Dev. V. Arthur Anderson & Co.*, 683 F.Supp. 1463, 1487 (S.D.N.Y. 1988) (denying certification where determination of question alleged to be controlling depended on sufficiency of facts; "discovery may turn up new facts relevant to the issue of subject matter jurisdiction, and these facts may in turn influence this Court's interpretation of facts already proffered by the parties.")

Finally, Federal Defendants cite one case to support their proposition that standing presents a controlling question of law. ECF 120-1 at 7 (citing *Edwards v. First Am. Corp.*, 610 F.3d 514, 515-16 (9th Cir. 2010)). In *Edwards*, the claimant failed to allege any actual injury; the sole question presented was whether standing with respect to injury had been conferred by statute. *Edwards*, 610 F.3d at 516-18. Thus, the standing inquiry in *Edwards* involved only a pure legal question of statutory interpretation, as opposed to the standing inquiry involved in the November 10 Order that requires further factual development prior to any appellate review.

**B.    The Right to a Climate System Capable of Sustaining Human Life is Not a Controlling Question of Law For Purposes of This Motion Because it is Not the Only Constitutional Right at Issue**

Federal Defendants provide no authority to support their contention that this Court's finding of an unenumerated fundamental Due Process right to "a climate system capable of sustaining human life" presents a controlling question of law. To the contrary, applicable authority establishes that this issue does not present a controlling question for purposes of this Motion. Even were an appellate court to reverse this Court's determination, this litigation would proceed in substantially the same manner such that reversal would not "materially affect the outcome of the litigation in the district court." *In re Cement*, 673 F.2d at 1026. As a result, this issue is not controlling for interlocutory appeal purposes. *Id.*

Irrespective of any analysis as to this particular implied right, the November 10 Order did not dispose of Plaintiffs' claims of infringement of their enumerated Due Process rights to life, liberty, and property and previously recognized unenumerated rights implied thereunder, nor did the November 10 Order dispose of Plaintiffs' Equal Protection claims of discrimination with respect to such rights or Plaintiffs' claims of discrimination against them as a suspect class. Review at this early stage would violate the strong policy against piecemeal review of cases because this Court has not yet ruled on Plaintiffs' remaining constitutional claims. *Coopers & Lybrand*, 437 U.S. at 471 (citing the "debilitating effect on judicial administration caused by piecemeal" appeal); *see also Molybdenum Corp. of America*, 279 F.2d 216. Those claims require discovery, expert testimony, and presentation of issues and information significantly overlapping those presented by Plaintiffs' claims of infringement to their right to a climate system capable of sustaining human life. Therefore, this litigation will proceed in much the same way no matter how this issue is decided and its resolution is therefore not controlling under Section 1292(b). *See, e.g., U.S. Rubber Co.*, 359 F.2d at 785; *White v. Nix*, 43 F.3d 374, 378-89 (9th Cir. 1994).

While the existence of the right to a climate system capable of sustaining human life finds an indisputable and independent basis in law, *see* Section II.B infra, appellate review of this issue will benefit from a full record of facts from which an appellate court may ascertain the

necessity of the recognition of this implicit right at this crucial moment in history. *Molybdenum Corp. of America*, 279 F.2d 216 (interlocutory appeal is improvident where record has not developed adequately to allow considered appellate review). Information as to the factual realities and history of climate change, its impacts, and the role Federal Defendants play in its creation and continuity is exactly the type of "new insight [that] reveals discord between the Constitution's central protections and a received legal stricture," such that development of this information on the record will be indispensable to a court of appeals in reviewing whether "a claim to liberty must be addressed." *Obergefell v. Hodges*, 135 S.Ct. 2584, 2598 (2015).

### C.      The Federal Public Trust Doctrine Is Not a Controlling Question of Law

For similar reasons, whether this Court recognizes a federal public trust doctrine that cannot be displaced is not a controlling question of law for purposes of Section 1292(b). Even were an appellate court to reverse with respect to this issue, each of Plaintiffs' remaining constitutional claims, while presenting different standards, would require overlapping factual development through discovery, argument, and presentation of evidence similar to that involved in Plaintiffs' public trust claim. Here too, appellate review of this Court's holdings would be premature and implicate piecemeal consideration of an undeveloped record contrary to the letter and spirit of Section 1292(b). The November 10 Order did not specifically address whether the atmosphere is a public trust resource. Absent detailed consideration by the district court and development of a sufficient record, appellate deliberations on that issue would not be proper. *Movsesian v. Victoria Verischerung* Ag, 578 F.3d 1052, 1056 (9th Cir. 2009) (in deciding issues on appeal under Section 1292(b), the Ninth Circuit "will not address issues outside the order appealed from, or issues not yet considered by the district court") (citation omitted); *Miller v. Bolger*, 802 F.2d 660, 666 (3rd Cir. 1986) ("We have refused to reach an issue posed by an order appealed under section 1292(b) where that issue was not addressed by the district court") (citation omitted). Additionally, the November 10 Order's conclusions as to the public trust doctrine in the territorial seas, its connection to the atmosphere, and the results of the

displacement analysis are determinations for which a fully developed factual record should be provided in order to facilitate non-piecemeal appellate review.[1]

Each of the issues that Federal Defendants claim to be controlling requires further development of the record in order to ensure considered appellate disposition of the questions presented. Additionally, even if these issues were reversed on appeal, this litigation would be conducted in substantially the same manner. Rather than contributing to the ultimate termination of this litigation, appellate review at this stage would only protract the proceedings through piecemeal consideration of issues in this urgent case. For these reasons, none of the issues presented by Federal Defendants constitutes a controlling question of law under Section 1292(b).

## II.    There Are No Substantial Grounds for Differences of Opinion

No substantial grounds for differences of opinion exist with respect to any determinations in the November 10 Order. Section 1292(b) is clear that the grounds for disagreement must be "*substantial*." 28 U.S.C. § 1292(b) (emphasis added). "[A] party's strong disagreement with the Court's ruling is not sufficient." *Couch*, 611 F.3d at 633.

> To determine if a substantial ground for difference of opinion exists…courts must determine to what extent the controlling law is unclear. Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented. *Id.* at 633 (citation and quotations omitted).

However, in keeping with the principle that circumstances justifying interlocutory appeal are "hen's teeth rare," *Camacho*, 369 F.3d at 573, the Ninth Circuit made clear that "just because a

---

[1]    For example, record development as to the hydrologic connection between atmospheric greenhouse gas pollution and acidification of the territorial seas will provide an appellate court with important information for review of Plaintiffs' public trust claims. Additionally, even were Plaintiffs' constitutionally-rooted public trust claims subject to displacement  - which they are not – the effect of greenhouse gas pollution on the territorial seas necessarily informs the consideration of whether the Clean Air Act and other statutes "speak directly" to a question at issue here – the impairment of public trust aquatic resources. *Am. Elec. Power Co. v. Conn.*, 564 U.S. 410, 424 (2010).

**Plaintiffs' Response in Opposition to Federal Defendants' Motion to Certify Order for    9**
**Interlocutory Appeal**

court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such substantial difference of opinion as will support an interlocutory appeal." *Couch*, 611 F.3d at 633 (citation and quotations omitted). "That settled law might be applied differently does not establish a substantial ground for difference of opinion." *Id.* (citations omitted). No grounds for disagreement are present where, as here, the holdings in the November 10 Order find support in precedent and a careful and reasoned analysis (previously not conducted by any court) of allegedly contradictory cases.

### A.     There are No Substantial Grounds for Disagreement that Plaintiffs Adequately Pleaded Standing

In conducting the standing inquiry at the motion to dismiss stage, a court must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife,* 504 U.S. 561 (1992). As discussed below, there are no substantial grounds to dispute that Plaintiffs met this undemanding standard. Moreover, interlocutory appeal of the issue of standing is unsuitable at this stage because development of the factual record will conclusively establish the specific facts embraced by Plaintiffs' standing allegations. *Nutrishare, Inc. v. Connecticut General Life Insurance Company,* No. 2:13-cv-02378-JAM-AC (E.D. Cal. June 11, 2014) (denying motion for certification where discovery would determine standing). Appellate consideration without development of such a record would run contrary to the twin policy aims against piecemeal appeal and review of unripe cases. 16 WRIGHT & MILLER § 3930 (3d. ed. 2012) (interlocutory appeal not appropriate when "the case has not yet developed far enough to permit considered appellate disposition of the question presented"); *Lujan*, 504 U.S. at 561 (burden of proof as to standing varies "with the manner and degree of evidence required at successive stages of litigation").

Federal Defendants correctly assert that "[a]t the heart of the standing doctrine is 'the Art. III notion that federal courts may exercise power only in the last resort, and as a necessity…and only when adjudication is consistent with a system of separated powers and the dispute is one traditionally thought to be capable of resolution through the judicial process.'" ECF 120-1 at 8-9

(quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984). However, Federal Defendants manifestly mischaracterize Plaintiffs' claims as running afoul of these principles. For more than fifty years, Federal Defendants knowingly and substantially contributed to the urgent climate crisis upon which Plaintiffs' claims are founded. As a result, it is clear that the judiciary in fact represents Plaintiffs' "last resort" and that exercise of judicial jurisdiction is a "necessity." *Id.* Plaintiffs' claims, and the standing allegations supporting them, are eminently suitable for judicial resolution without implicating separation of powers concerns. *See Allen*, 468 U.S. at 760 ("[I]t is not the role of the judiciary" to serve as "continuing monitors of the wisdom and soundness of Executive action"…*absent actual present or immediately threatened injury resulting from unlawful government action*") (emphasis added); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986) ("The declared purpose of separating and dividing the powers of government, of course, was to diffuse power, the better to secure liberty"); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) ("The very essence of civil liberty consists in the right of every individual to claim the protection of the laws, whenever he receives an injury").

### 1.    Plaintiffs Adequately Pleaded Injury In Fact

Federal Defendants argue Plaintiffs cannot establish standing because their alleged injuries are "widely shared by essentially every member of society." ECF 120-1 at 10. A generalized grievance insufficient to establish injury is one claiming harm only to an abstract interest such as the "proper application of the Constitution and laws…." *Lujan*, at 504 U.S. at 573. However, if an alleged harm is personally and concretely manifested in an individual, it does not matter how many people share in its effect. *Novak v. United States*, 795 F.3d 1012, 1018 (9th Cir. 2015). Here, Plaintiffs more than adequately allege concrete injury-in-fact by pointing to highly personalized and unique impacts to their health, safety, property, recreational, spiritual, and other interests. *See* November 10 Order at 19-20 (detailing a selection of alleged impacts). Consequently, despite Federal Defendants' contentions, there is no need here to rely on Congress to elevate by statute Plaintiffs' already concrete, legally cognizable injuries.

Contrary to Federal Defendants' characterization of *Massachusetts v. EPA*, extension of standing based on personal and concrete manifestation of a widely-shared harm is not limited to claims involving quasi-sovereign interests. *Massachusetts v. Environmental Protection Agency*, 549 U.S. 497 (2007); *see, e.g., Novak*, 795 F.3d at 1016, 1018 (interests of six individuals and one corporation); *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998) (interests of group of individual voters). Likewise, despite Federal Defendants' assertion that Plaintiffs' injuries fail to establish standing because they have not brought suit under a procedural statute, the Supreme Court has clearly stated there is "[a]bsolutely no basis for making the Article III inquiry turn on the source of the asserted right." *Lujan*, 504 U.S. at 576. Notwithstanding this clear principle, Federal Defendants' incongruously assert that Plaintiffs' claims, because they are constitutionally rather than statutorily based, are not "traditionally thought to be capable of resolution through the judicial process." ECF 120-1 at 10 (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). However, as Chief Justice Marshall famously stated, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury*, 5 U.S. (1 Cranch) at 177. The *Raines* Court itself recognized "the irreplaceable value of the power articulated by Mr. Chief Justice Marshall [in *Marbury*] lies in the protection it has afforded the *constitutional* rights and liberties of individual citizens and minority groups against oppressive or discriminatory government action." 521 U.S. at 829 (emphasis added). Federal Defendants' misconstrual of the generalized grievance doctrine, erroneous conception of the capabilities of the judiciary, and invocation of inapposite cases[2] does not suffice to show substantial grounds for disagreement as to the sufficiency of Plaintiffs' injuries. Moreover, Federal Defendants' admissions as to the impacts of climate change in their Answer to the FAC seriously undermine their contention that reasonable grounds for difference of opinion exist here. *See* FAC, ECF 98 at

---

[2]    *Washington Envt'l Council v. Bellon* is also inapposite. 732 F.3d 1131 (9th Cir. 2013). In that case, the Ninth Circuit found the plaintiffs lacked standing on *summary judgment* and only *after* development of a factual record, further demonstrating that this Court should not permit appellate review as to standing prior to development of a full factual record.

¶¶ 1, 5, 8, 10, 123(b), 127, 130, 150, 202, 206-207, 213-233, 235, 237-238, 241, 243, 245-250, 252, 254, 255, 259-60.

### 2.    Plaintiffs Have Adequately Pleaded Causation

Federal Defendants argue Plaintiffs have failed to plead causation because, as they claim, the FAC relies upon the "simple expedient of aggregating a vaguely-defined category of government actions and inactions," rather than specifically identifying particular government projects for challenge. ECF 120-1 at 11. This argument misconstrues Plaintiffs' FAC, the law governing its adequacy, and the November 10 Order. As noted previously, "on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561. Plaintiffs' allegations establish the general authority of each Federal Defendant over its own actions, and those of third parties, which directly affect the atmospheric concentration of $CO_2$. FAC, ECF at ¶¶ 98- 130, 180-183, 185, 186-190, 263-276. Under this authority, Federal Defendants have the ability to increase or decrease the overwhelming portion of all U.S. $CO_2$ emissions, which historically account for approximately one quarter of worldwide human emissions. *Id.; see also* Federal Defendants' Answer to FAC, ECF 98 at ¶ 151 (admitting U.S.'s share of cumulative global $CO_2$ emissions for 1850 to 2012 as over twenty-five percent); Declaration of Michael C. MacCracken, ECF 44, ¶¶ 3, 4, 6, 8. Plaintiffs further generally allege Federal Defendants have acted under this authority to authorize, permit, and promote activities that have increased $CO_2$ concentrations to dangerous levels. FAC, ECF 7 at ¶¶ 154, 164-179, 181-183, 185, 190, 193. Additionally, Plaintiffs allege that, in spite of the known dangers of elevated $CO_2$ concentrations, Federal Defendants have failed to use their authority to maintain or restore atmospheric $CO_2$ at safe levels. FAC, ECF 7 at ¶¶ 1-9, 132-163, 180, 183. Finally, Plaintiffs allege that current and projected levels of $CO_2$ concentrations result in direct and specific impacts resulting in infringement of their rights. FAC, ECF at ¶¶ 16-97, 200-255, 277-310. These allegations are amply sufficient to "embrace those specific facts that are necessary to support" their claims. *Lujan*, 504 U.S. at 561.

Plaintiffs' specific facts as to causation have been developed in informal discovery, are currently being developed through formal discovery, and will be established in the factual record of the case. There is no reason to burden this Court or an appellate court with an unwieldy complaint setting forth the multitude of discrete policy decisions and specific actions of Federal Defendants that has caused the current climate crises when the pleading standard requires only "short and plain statements." *Id.*; F.R.C.P. 8. Further, precedent establishes that causation in climate change cases is "an issue best left to the rigors of evidentiary proof at a future stage of the proceedings, rather than dispensed with as a threshold question of constitutional standing." *Conn. v. Am. Elec. Power Co., Inc.*, 582 F.3d 309, 347 (2d Cir. 2009) *rev'd on other grounds*, *Am. Elec. Power Co., Inc. v. Conn.*, 564 U.S. 410, 429 (2011); *see also Bellon*, 732 F.3d 1131, 1144 (disposing of standing in climate change case only after development of factual record). As such, interlocutory appeal here would only present the appellate court with a record inadequate to resolve the question at issue. *Molybdenum Corp. of America*, 279 F.2d 216.

Federal Defendants mischaracterize and misquote a number of inapposite cases to support their erroneous contention that Plaintiffs cannot establish causation absent a challenge limited to specifically identified government actions.[3] In *Lewis*, the Supreme Court invalidated a sweeping lower court order enjoining, on a systemwide basis, specific inadequacies of a challenged prison library system that were found *after trial* to have had *no connection* to the plaintiffs' injuries. 518 U.S. at 357-60. In *DaimlerChrsyler*, the Supreme Court similarly held that, where the claimants had standing for purposes of their *municipal* taxes, such an injury did

---

[3]    ECF 120-1 at 11 (quoting *Lewis v. Casey*, 518, U.S. 343, 358 n. 6 (1996) ("standing is not dispensed in gross. If the right to complain of *one* administrative deficiency automatically conferred the right to complain of *all* administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review") and *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (quoting *Lewis*, 518 U.S. at 357) ("[t]he actual-injury requirement would hardly serve the purpose…of preventing courts from undertaking tasks assigned to the political branches[,] if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy *all* inadequacies in that administration")).

not entitle them to seek a remedy as to their *state* taxes, for which they lacked standing. 547 U.S. at 353. "The remedy must of course be limited to the inadequacy that produced the injury-in-fact that the plaintiff has established." *Lewis*, 518 U.S. at 344; *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 353 (2006). In contrast to both *Lewis* and *DaimlerChrysler*, Plaintiffs' injuries here are causally connected to the aggregate actions and omissions of each Federal Defendant with respect to climate change. Systemwide relief is appropriate here because, in contrast to *Lewis,* Plaintiffs' injuries are causally related to systemwide actions and inadequacies. 518 U.S. at 360 ("The constitutional violation has not been shown to be systemwide and granting a remedy beyond what was necessary to provide relief to [plaintiffs] was therefore improper.").

Similarly, Federal Defendants' reliance on *Bellon* and *Mass. v. EPA* lacks any basis. In *Bellon*, the Ninth Circuit found causation lacking only *after* development of a factual record on summary judgment,[4] "because the defendant[s]…were such minor contributors to greenhouse gas emissions…that [their] contribution…was 'scientifically indiscernible.'" *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1158 (9th Cir. 2015) (quoting and explaining *Bellon*, 732 F.3d at 1144). In contrast, the FAC alleges Federal Defendants are responsible for a substantial share of global $CO_2$ emissions – allegations that have not yet been subject to evidentiary proof and must be taken as true at this stage. Further, neither *Mass. v. EPA* nor *Bellon* require that a plaintiff identify particular government projects for challenge in pleadings. *Cf. Brown v. Plata*, 563 U.S. 493 (2011) (ordering reduction of inmate populations across entire state prison system).

Federal Defendants object that "[t]here is no way to determine from the complaint what role particular actions of each Defendant has played or will play in the creation of the alleged injuries, as opposed to the role played by parties not before the court." ECF 1201-1 at 12. However, it is plainly not the function of a complaint to establish such "detailed factual matters," but only to present sufficient allegations which, accepted as true, "state a claim to relief that is

---

[4]    *See Bellon*, 732 F.3d at 1143 n. 6, n. 8 (distinguishing *Conn. v. Am Elec. Power Co.*, 582 F.3d 309 (2d Cir. 2009) as to causation based on procedural posture).

plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Likewise, the argument that Plaintiffs have failed to establish authority under which Federal Defendants can provide the requested relief is without merit. The standards under which Plaintiffs' constitutional claims are founded determine the measure of necessary relief, which Federal Defendants may effectuate through their existing authority, as alleged in the FAC. ECF 7 at ¶¶ 98-130, 180-183, 185-190, 263-276.

Similarly, Federal Defendants' consistent refrain that the Administrative Procedure Act may provide relief for discrete agency actions is of no moment; in fact, they cite no authority to suggest that Plaintiffs are foreclosed from bringing constitutional claims merely on the basis on the APA's existence. Furthermore, the objection that the FAC is inadequate because, as Federal Defendants argue, the climate crisis hinges on the response of regulated third parties likewise misunderstands the FAC, which alleges Federal Defendants are a but-for causal factor of that crisis. Were it not for the actions of Federal Defendants in permitting, authorizing, and promoting the actions of third parties with respect to fossil fuel development, emissions associated with such activities would not occur.

Finally, Federal Defendants also misconstrue *Allen* to support their argument that a constitutional claim must rest upon a challenge to a specifically identified and discrete government project. In *Allen*, the Supreme Court found:

> The diminished ability of respondents' children to receive a desegregated education would be fairly traceable to unlawful IRS grants of tax exemptions only if there were enough racially discriminatory private schools receiving tax exemptions in respondents' communities for withdrawal of those exemptions to make an appreciable difference in public school desegregation. 468 U.S. at 758

It was with respect to this conclusion that the Supreme Court pronounced a finding of causation would "pave the way generally for suits challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations." *Id.* at 759. In stark contrast to the circumstances of *Allen*, Federal Defendants'

responsibility for a major share of global $CO_2$ emissions is surely "enough" such that their elimination would "make an appreciable difference" as to the devastating injuries upon which Plaintiffs' claims are founded. *See* ECF 98 at ¶ 151 (admitting U.S.'s share of cumulative global $CO_2$ emissions for 1850 to 2012). As Federal Defendants themselves acknowledge,[5] the *Allen* Court clearly recognized "it is not the role of the judiciary" to serve as "continuing monitors of the wisdom and soundness of Executive action…*absent actual present or immediately threatened injury resulting from unlawful government action.*" 468 U.S. at 760 (emphasis added). Where, as here, government action has directly resulted in infringement of individual fundamental rights, causing concrete as opposed to merely abstract injury, it is the duty of the courts to entertain jurisdiction irrespective of the scope of the actions challenged and the breadth of the necessary relief. *Id.* Federal Defendants cannot carry their burden to establish substantial grounds for disagreement that Plaintiffs have adequately pleaded causation. Here again, Federal Defendants' own admissions in their Answer undermine their position on this issue. *See* ECF 98 at ¶¶ 7, 10, 105, 110-112, 114(b), 123(a), 123(b), 125, 130, 147, 150-153, 159, 165-170, 177, 181-84, 186-89, 191, 193, 202, 205-207, 213, 216, 221, 224, 227, 231, 235, 238.

### 3.    Plaintiffs Have Adequately Pleaded Redressability

There are no reasonable grounds for disagreement that Plaintiffs have adequately pleaded redressability. Federal Defendants again argue the FAC must specifically identify particular government projects for challenge. Plaintiffs' arguments in response, including those based on Federal Defendants' own admissions, are set forth in Section II.A.2 and are not repeated here.

Federal Defendants also posit that Plaintiffs' claims lack redressability because, as they claim, Plaintiffs have not alleged these Defendant agencies have the statutory authority to take the remedial actions sought, and this Court could not compel Congress to enact additional statutory authority. Federal Defendants fail to recognize that they cannot employ their authority over emissions generating activities, which authority Plaintiffs allege, in a manner that violates

---

[5]    ECF 120-1 at 14, (quoting *Allen*, 468 U.S. at 760)

Plaintiffs' constitutional rights. A court order directing Federal Defendants to prepare a national plan that would phase out such emissions and cause Federal Defendants to use their *existing* authority, alleged in the FAC, over management of the nation's forests and energy infrastructure to drawdown $CO_2$ concentrations, would implicate none of these concerns. To the extent any statute or regulation compels Federal Defendants to take actions that infringe Plaintiffs' rights, such a statute would be unconstitutional as applied.

Federal Defendants contend they have not waived sovereign immunity with respect to Plaintiffs' claims, raising an argument ineligible for interlocutory consideration as it was neither argued by any party nor addressed by the November 10 Order. *Movsesian*, 578 F.3d at 1056 (in deciding issues on appeal under Section 1292(b), the Ninth Circuit "will not address issues outside the order appealed from, or issues not yet considered by the district court") (citation omitted); *Ryes v. BCS Ins. Co.*, 379 F.App'x 412, 415 (5th Cir. 2010) (declining to address an argument on interlocutory review that was not raised before the trial court).

Furthermore, sovereign immunity is inapplicable here for *at least* two reasons. First, sovereign immunity does not apply in a suit against a sovereign trustee by the citizen beneficiaries because the judicial branch remains the ultimate guardian of the trust. *See Ctr. for Biological Diversity v. FPL Grp.*, 83 Cal.Rptr.3d 588, 602 (Cal. Ct. App. 2008). Second, Section 702 of the APA is a general waiver of sovereign immunity for suits seeking nonmonetary relief against the United States and its agencies, even if the claim does not arise under the APA. *Presbyterian Church v. United States*, 870 F.2d 518, 524 (9th Cir. 1989).

Likewise, Federal Defendants' argument that "no relief could be obtained against the President," ECF 120-1 at 17, is not eligible for interlocutory appeal as it was not previously addressed by any party or the November 10 Order. Further, this line of reasoning is substantially similar to one flatly rejected by the Ninth Circuit as "contrary to the fundamental structure of our constitutional democracy" in *Washington v. Trump*, in which the current president argued that he had "unreviewable authority" with respect to immigration policy "even if those actions potentially contravene constitutional rights and protections." *Washington v. Trump*, 847 F.3d

1151, 1161 (9th Cir. Feb. 9, 2017). Similarly, the argument here is an attempt at "aggrandizement of one of the three co-equal branches of the Government at the expense of another," a position the separation of powers doctrine is designed to prevent. *Clinton v. Jones*, 520 U.S. 681, 699 (1997) (citations omitted). Contrary to Federal Defendants' alarming argument, the judiciary may even "severely burden the Executive Branch by reviewing the legality of the President's official conduct," *Id.* at 682, 705 (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)), and "direct appropriate process to the President himself." *Id.* (citing *U.S. v. Nixon*, 418 U.S. 683 (1974). "Insofar as a court orders a President…to act or refrain from action, it defines, or determines, or clarifies, the legal scope of an official duty….[I]f the order itself is lawful[], it cannot impede, or obstruct, or interfere with the President's basic task – the lawful exercise of his Executive Authority." *Id.* at 718 (Breyer, J., concurring). There are no grounds for disagreement as to any issue not argued at the motion to dismiss stage or addressed in the November 10 Order.

### B.    No Substantial Grounds for Disagreement on Plaintiffs' Due Process Rights

There are no substantial grounds for disagreement as to whether Plaintiffs enjoy a right to a climate system capable of sustaining human life. Though this Court may be the first to recognize this fundamental right, and though other courts have rejected the existence of significantly broader and easily distinguishable rights to a "healthy" or "pollution-free environment," the Ninth Circuit has made clear that "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such substantial difference of opinion as will support an interlocutory appeal." *Couch*, 611 F.3d at 633 (citation and quotations omitted).

Here, this Court indisputably "exercise[d] the utmost care" in recognizing the right at issue by "beginning with a careful description" of the right, *Reno v. Flores*, 507 U.S. 292, 302 (1993), as that to a climate system *capable of sustaining human life*. November 10 Order, ECF 83 at 32-33. To assert, as Federal Defendants do, ECF 120-1 at 19, that recognition of this specific and narrowly cabined right divests the public and legislature of a contentious debate as

to whether the baseline conditions on which life depends should be preserved is nonsensical and a point to which no reasonable jurist could subscribe.

This Court noted that, when deciding upon previously unrecognized fundamental rights, the Supreme Court has inquired whether such rights are either "deeply rooted in this Nation's history and tradition" or "fundamental to our scheme of ordered liberty[.]" November 10 Order, ECF 83 at 30 (quoting *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010).) To the extent there exists any *perceived* lack of historical support for the right at issue here, the thoroughly unprecedented nature of the current climate crisis is surely explanatory. Moreover, as the Supreme Court recently stated: "The identification and protection of fundamental rights…has not been reduced to any formula." *Obergefell*, 135 S. Ct. at 2598. Drawing on tests used by the Supreme Court, this Court found a climate system capable of sustaining human life is a fundamental right protected by the Constitution, noting all enumerated and previously recognized unenumerated rights rest upon its foundation. November 10 Order, ECF 83 at 31-32 ("Certain rights may be necessary to enable the exercise of other rights….a stable climate system is quite literally the foundation of society, without which there would be neither civilization nor progress.") (citations and quotations omitted). No reasonable grounds exist upon which *anyone* could disagree that the baseline conditions necessary for preserving life underlie each of our Constitutionally protected rights, including the rights to life, liberty, and property, as well as others equally touching upon intimate and personal liberty interests. Examples of the latter include the choice of whether to bring children into the world, the right to determine one's diet, to practice one's chosen spirituality, to determine where one lives and travels, and a myriad other choices. Recognition of a right to these baseline conditions does not announce a "new" fundamental right. A fully developed factual record on appeal allows the appellate court to more readily determine whether "new insight reveals discord between the Constitution's central protections and a received legal stricture," such that "a claim to liberty must be addressed." *Obergefell*, 135 S.Ct. at 2598.

Similarly, no reasonable grounds exist for debate as to whether Plaintiffs have adequately plead a claim under the "danger creation" exception to *De Shaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). As an initial matter, the dubiousness of Federal Defendants' position on this issue is underscored by their admissions of facts highly relevant to the elements of this claim. *See* ECF 98 at ¶¶ 1, 5, 7, 10, 111, 123(b), 127, 130, 134, 139, 147, 149, 150, 153, 165-70, 183, 184, 193, 202, 206, 207, 210, 211, 213, 216, 217, 228, 238, 241, 243, 245, 247, 249, 252, 253, 261. Even absent such admissions, at the motion to dismiss stage, this Court must accept the truth of the as-yet unpresented specific facts embraced by Plaintiffs' general allegations. *Lujan*, 504 U.S. at 1139. The FAC alleges Federal Defendants played a material part in the creation of the climate crisis and continue to exacerbate it despite decades of knowledge of the dangers it poses to Plaintiffs. These allegations state a claim under the "danger creation" exception. *See, e.g. Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (claimant can recover where the government's "conduct places a person in peril in deliberate indifference to their safety"). Further, because the specific facts embraced by the FAC have not yet been presented to this Court, this issue is a matter for which the "case has not yet developed far enough to permit considered appellate disposition of the questions presented." 16 WRIGHT & MILLER § 3930 (3d. ed. 2012). As to Federal Defendants' contention that the dangers and impacts posed by Federal Defendants' actions are not "actual, or particularized," Plaintiffs have addressed these arguments in Section II.A.2. Though "a dearth of cases does not give rise to a substantial ground for differences of opinion," *Couch*, 611 F.3d at 634 (quotations and citations omitted), Federal Defendants point to no precedent contrary to recognition of a "danger creation" claim in the circumstances of this case. *See Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 842 (9th Cir. 2010) (recognizing "a foster child's liberty interest in social worker supervision and protection from harm" and "reasonable safety and minimally adequate care"). There are no reasonable grounds for disagreement as to Plaintiffs' due process rights.

**C.    There are No Substantial Grounds for Disagreement as to the Public Trust**

Federal Defendants contend that substantial grounds for disagreement on Plaintiffs' public trust claims are present because, as they claim, "reasonable jurists have already reached a contrary conclusion" to the November 10 Order. (ECF 120-1 at 22). However, Federal Defendants' argument hinges exclusively on *Alec L. ex. rel Loorz v. Jackson*, 863 F.Supp.2d 11 (D.D.C.2012) and its summary affirmance in *Alec L. ex. rel Loorz v. McCarthy*, 561 F. App'x 7 (D.C. Cir. 2014). There the D.C. Circuit decided not to publish its unreflective affirmance of the district court's conclusions, citing D.C. Circuit Rule 36(e)(2), which states in relevant part: "[A] panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." *Alec L.*, 561 F. App'x at 8. Since no court of appeals has spoken to this issue with precedential authority, this is not a situation "where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point." *Couch*, 611 F.3d at 633. Further, a contrary pronouncement on the issue by a district court in D.C. does not establish substantial grounds for differences of opinion. *See, e.g., Natural Res. Defense Council v. Cnty. of L.A.*, No. 08-cv-1467-AHM(PLAx), 2011 WL 318543, at *1 (C.D. Cal. Jan. 27, 2011) ("[A] single conflicting district court opinion from a different circuit is not sufficient to establish a substantial ground for difference of opinion. If it were, interlocutory appeals would likely be justified on any number of issues in routine cases, rather than only in exceptional cases") (internal citations omitted).

Moreover, *Alec L.* lacks sufficiency to create substantial grounds for disagreement because that court, in its unreflective and superficial analysis, relied exclusively on dicta from a case where the existence of a federal public trust doctrine was not even at issue. 863 F.Supp.2d at 15 (citing *PPL Montana, LLC v. Montana*, 565 U.S. 576, 603-04 (2012)). A thorough analysis of *PPL Montana* against the nature, history, and case law governing the public trust doctrine establishes the case's inapplicability to the present dispute.  It also confirms that the *Alec L.* case mispronounced the law as to the scope of the public trust doctrine and the public trust doctrine applies to all sovereign entities, including Federal Defendants. *See* Michael C. Blumm & Lynn S.

Schafer, *The Federal Public Trust Doctrine: Misinterpreting Justice Kennedy and Illinois Central Railroad*, 45 ENVTL. L. 399 (2015). As this Court was the first to conduct such a reasoned and careful analysis further confirms the insufficiency of the *Alec L.* case to establish substantial grounds for disagreement. *See* November 10 Order at 36-47.

Likewise, contrary to Federal Defendants' claims, the district court's order in *Alec L.* does not establish substantial grounds for differences of opinion as to whether the Clean Air Act displaces the federal public trust.[6] Here, one district court opinion from another circuit does not establish such grounds. Further, *Alec L.* fundamentally erred in its displacement analysis, relying exclusively upon *Am. Elec. Power Co. v. Connecticut* to hold that "even if Plaintiffs allege a public trust claim that could be construed as sounding in federal common law, the Court finds that that cause of action is displaced by the Clean Air Act." 863 F.Supp.2d at 15-17. However, in *AEP*, the Supreme Court had before it only the question of the displacement of federal common law nuisance claims against private parties. 564 U.S. 410 (2011). Additionally, the Supreme Court's pronouncement that the Clean Air Act "displaces any common law right to seek abatement of carbon-dioxide emissions" was expressly limited to emissions "from fossil fuel fired power plants." *Id.* at 2530. Here Plaintiffs' claims are neither based on a theory of nuisance against private parties nor do they seek relief limited to abatement of $CO_2$ emissions from fossil fuel fired power plants.[7] Crucially, public trust claims are inherently different from nuisance and other similar purely common law claims.

---

[6]    The D.C. Circuit did not address displacement. *Alec L.*, 561 F. App'x at 8.

[7]    Neither does Federal Defendants' invocation of *Native Vill. of Kivalina v. ExxonMobil Corp.* establish substantial grounds for differences of opinion, as that case also dealt only with displacement of a nuisance action against private parties seeking relief from fossil fuel fired power plants. *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 2012 WL 4215921. (9th Cir. 2012).

**Plaintiffs' Response in Opposition to Federal Defendants' Motion to Certify Order for    23 Interlocutory Appeal**

The public trust doctrine is an innate attribute of sovereignty, *Ill. Cent. R. Co. v. State of Ill.*, 146 U.S. 387, 455 (1892) (public trust resources are held by the government "by virtue of its sovereignty"),[8] inherent in the Constitution and "preserved rather than created by it." *Robinson Twp., Wash. Cnty., Pa. v. Pennsylvania*, 83 A.3d 901, 948 (Pa. Sup. Ct. 2013). Intrinsic to the very concept of sovereignty, the obligations the public trust imposes on government and the rights it bestows upon present and future generations may not be diminished by legislation. *Ill. Cent. R. Co.*, 146 U.S. at 453 ("The state can no more abdicate its trust in property in which the whole people are interested…than it can abdicate its police powers in the administration of government and the preservation of peace"). Rooted as they are in the Constitution, and arising from it, public trust claims are of a fundamentally different character than the common law nuisance claims considered in *AEP* and *Kivalina*.

Nor are there substantial grounds for disagreement as to the Court's treatment of *United States v. 34.42 Acres of Land* – a case that, like *PPL Montana*, did not even involve, and in which the court did not consider, the applicability of the public trust to the federal government. *United States v. 34.42 Acres of Land*, 683 F.3d 1030 (9th Cir. 2012). In that case, the Ninth Circuit invoked *PPL Montana*, and its proclamation that a state's public trust is a matter of state law, to support the proposition that when the federal government condemns state lands, it takes title free from the *state's* public trust obligations by virtue of the Supremacy clause. *Id.* at 1038.

---

[8]   That, as Federal Defendants note, the Supreme Court has not yet addressed the applicability of the public trust doctrine outside of cases "regarding state management of coastal regions and navigable waterways" is of no moment here. ECF 120-1 at 23 n. 2. "[A] dearth of cases does not give rise to a substantial ground for differences of opinion," nor does the fact that a "court is the first to rule on a particular question," or that "counsel contends that one precedent rather than another is controlling[.]"*Couch*, 611 F.3d at 633, 34 (quotations and citations omitted). Further, contrary to Federal Defendants' assertions, this Court's holding that,"[b]ecause a number of plaintiffs' injuries relate to the effects of ocean acidification and rising ocean temperatures, they have adequately pleaded harm to public trust assets," November 10 Order at 42 (footnote omitted), finds direct support in case law. *See Foster v. Wash. Dep't of Ecology*, No. 14-2-2595-1, slip op. at 8 (Wash. King Cnty. Super. Ct. Nov. 19, 2015) ("The navigable waters and the atmosphere are intertwined and to argue a separation of the two, or to argue that [greenhouse gas] emissions do not affect navigable waters is nonsensical.").

That holding is wholly inapplicable to this case. The applicability of a state's public trust doctrine to the federal government does not speak to the existence of a separate federal public trust. Because the public trust doctrine is an attribute of sovereignty, its contours and applicability are necessarily a matter of each particular sovereign's law. *Ill. Cent. R. Co.*, 146 U.S. at 455. Importantly, prior to the Ninth Circuit's ruling in *34.42 Acres*, the district court had ruled the tidelands included in the parcel condemned by the federal government were subject to a federal public trust. *34.42 Acres,* 683 F.3d at 1033, 1039 n. 2. This ruling was not overturned on appeal. *Id.* Federal Defendants have presented no authority establishing substantial grounds for differences of opinion on this Court's determinations relevant to Plaintiffs' public trust claims. Again, Federal Defendants' admissions in their Answer undermine their contention that substantial grounds exist here. ECF 98 at ¶¶ 1, 5, 7, 8, 10, 105, 110, 111, 112, 119, 123(a), 123(b), 125, 127, 130, 150, 153, 165, 166, 167-170, 181-184, 193, 202, 205-208, 210, 211, 213, 216, 228, 231-233, 235, 237, 241, 243, 245, 247-250, 269, 260.

## III.    <u>Appeal Would Not Materially Advance Ultimate Termination of the Litigation</u>

This delayed effort to appeal the November 10 Order would not materially advance ultimate termination of this litigation, but instead result in further protraction and delay, contrary to the letter and spirit of Section 1292(b). "The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." 16 WRIGHT & MILLER § 3930 (3d. ed. 2012) (footnote omitted). As explained above, no issue offered by Federal Defendants presents a controlling question of law. First, each issue requires presentation of evidence in order to present a court of appeals with a record adequate "to permit considered appellate disposition of the questions presented." 16 WRIGHT & MILLER § 3930 (3d. ed. 2012). Further, with respect to standing, even if this Court's determination of the adequacy of Plaintiffs' allegations were reversed, "[r]ulings on the sufficiency of a pleading generally are unsuitable for interlocutory appeal" because of the "ready availability of amendment." 16 WRIGHT & MILLER § 3930, n. 21 (3d.

ed. 2012); *see also Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, No. 2:13-cv-02378-JAM-AC

(E.D. Cal. June 11, 2014) (denying motion for certification for interlocutory appeal as to

standing pleadings; discovery might establish standing, making certification inappropriate).

    Additionally, even if this Court's determinations as to the public trust doctrine and the

fundamental right to a climate system capable of sustaining human life were reversed on

interlocutory appeal, Plaintiffs' remaining claims seek similar relief and involve and require

overlapping factual development through discovery, argument, and presentation of evidence at

trial. 16 WRIGHT & MILLER § 3930 (3d. ed. 2012) ("Immediate appeal may be found

inappropriate…if the character of the trial is not likely to be affected.") (footnote omitted)

Accordingly, interlocutory appeal would not "*appreciably* shorten the time, effort, or expense"

of conducting this litigation, *In re Cement Antitrust Litigation*, 673 F.2d at 1027 (emphasis added

and citation omitted), but rather only lengthen and protract the proceedings through disfavored

piecemeal appeal. Clearly, the urgency of the climate crisis upon which Plaintiffs' claims rest

counsels this Court to exercise its unfettered discretion to deny certification. 16 WRIGHT &

MILLER § 3930 (3d. ed. 2012) ("Delay may be a particularly strong ground for denying appeal

if…there are special reasons for pressing on with discovery or trial."); *Struthers Scientific &

Intern. Corp. v. General Foods Corp.*, 290 F. Supp. 122 (S.D. Tex. 1968) (Appeal would more

likely delay rather than advance termination of the litigation and "[t]he parties would be better

advised to expend their energies completing discovery rather than taking appeals").

    Moreover, even in the face of the increasing urgency of the climate emergency, the new

executive administration has, in the first two months of office, taken and proposed actions which

profoundly exacerbate the dangers and impacts Plaintiffs face[9] and appointed climate science

---

[9]   *See* Exec. Order ___, 82 Fed. Reg. ___ (March 28, 2017) (directing rollback of Clean Power
Plan, rescinding moratorium on coal mining on federal lands, and rescinding six Obama
administration executive orders aimed at curbing climate change and regulating emissions,
including inclusion of climate change impacts in environmental reviews ); Exec. Order 13766,
82 Fed. Reg. 8657 (Jan. 24, 2017) (expediting environmental reviews and approvals for
infrastructure projects"); Exec. Order 13778 82 Fed. Reg. 12497 (Feb. 28, 2017) (ordering a
review of the "Waters of the United States" Rule); Presidential Memorandum Regarding

deniers to high ranking office.[10] In light of these actions, if presented with further delay in resolution of their claims by interlocutory appeal, Plaintiffs will be forced to seek preliminary relief in this case. While such equitable relief would afford Plaintiffs reprieve from additional aggregate federal actions violating their rights, it would also delay the ultimate termination of this case and further protract these proceedings, which this Court has sought to avoid.

Federal Defendants' fundamentally mischaracterize the nature of their obligations under Plaintiffs' January 24, 2017 Litigation Hold Demand Letter as unduly onerous. Pursuant to the January 24 Letter, Plaintiffs simply informed Federal Defendants of their legal obligation to refrain from destroying documents relevant to Plaintiffs' claims. These obligations do not require Federal Defendants to take any affirmative action to produce any documents, but merely to refrain from their destruction. *See* Declaration of Julia A. Olson in Support of Plaintiffs' Response to Federal Defendants' Motion to Certify Order for Interlocutory Appeal. Likewise, Federal Defendants' objections to Plaintiffs' propoundment of discovery are without merit. Given the stage of this case, propounding such discovery is wholly appropriate and Federal Defendants' remedy is a discovery motion before Judge Coffin. Plaintiffs' discovery efforts are aimed at prompt resolution of their claims in keeping with the urgent circumstances of this case.

---

Construction of the Dakota Access Pipeline (Jan. 24, 2017), available at https://www.whitehouse.gov/the-press-office/2017/01/24/presidential-memorandum-regarding-construction-dakota-access-pipeline (encouraging approval of Dakota Access Pipeline); Presidential Memorandum Regarding Construction of the Keystone XL Pipeline (Jan. 24, 2017), available at https://www.whitehouse.gov/the-press-office/2017/01/24/presidential-memorandum-regarding-construction-keystone-xl-pipeline; Media Note: Issuance of Presidential Permit to TransCanada for Keystone XL Pipeline (March 24, 2017), available at https://www.state.gov/r/pa/prs/ps/2017/03/269074.htm; Reuters, "President Trump Prepares to Withdraw from Groundbreaking Climate Change Agreement, Transition Official Says" (Jan. 20, 2017) (Detailing possible withdrawal from Paris Climate Agreement)

[10] Coral Davenport, "E.P.A. Head Stacks Agency With Climate Change Skeptics," N.Y. Times (March 7, 2017) available at https://www.nytimes.com/2017/03/07/us/politics/scott-pruitt-environmental-protection-agency.html; Chris Mooney and Brady Dennis, "On Climate Change, Scott Pruitt Causes an Uproar – and contradicts the EPA's Own Website," Wash. Post (March 9, 2017) available at https://www.washingtonpost.com/news/energy-environment/wp/2017/03/09/on-climate-change-scott-pruitt-contradicts-the-epas-own-website/?utm_term=.b164bb28f26e.

Furthermore, Federal Defendants' repetition of their preference to litigate under the APA is undeserving of further consideration as the limitation of review to an administrative record for claims brought thereunder has no applicability to this case.

With respect to the extent that this case may present discovery issues, many courts "cast doubt on the suitability of hardship as a basis for appeal." 16 WRIGHT & MILLER § 3930 (3d. ed. 2012); *Id.* at n. 51. However, if this Court were to consider hardship in determining whether to grant certification, the potentially irreversible impacts of the climate crisis which are befalling Plaintiffs increase with every delay in resolution of this case and surely outweigh any relatively modest and necessarily temporary hardship to Federal Defendants in collecting and producing documents, answering requests for admissions and interrogatories, and attending depositions.

Further, Federal Defendants' four-month delay in seeking certification counsels strongly in favor of denial. *See, e.g., Richardson Elecs., Ltd. V. Panache Broad. Of Pa., Inc.,* 202 F.3d 957, 958-59 (7th Cir. 2000) ("district judge should not grant an inexcusable dilatory request" for certification) (citation omitted); *Scanlon v. M.V. Super Servant 3*, 429 F.3d 6, 8 (1st Cir. 2005) (motion filed four months after order); *Hypotherm, Inc. v. Am. Torch Tip Co.*, No 05-373, 2008 WL 1767062, at *1 (D.N.H. Apr. 15, 2008) (motion filed five months after order).

Notwithstanding the impropriety of interlocutory appeal in this case and Federal Defendants' inflated characterizations of their discovery burdens, Plaintiffs have been and remain receptive to Federal Defendants' concerns regarding discovery. As reflected in the monthly status conferences and in keeping with the urgency of the dangers faced by Plaintiffs, counsel are constantly working with counsel for Federal Defendants and this Court to narrowly tailor discovery and identify the key documents and factual matters necessary to bring this case to a prompt, thorough, and successful resolution.

## **CONCLUSION**

This Court should exercise its unfettered discretion to refuse Defendants' request to short-circuit the appeals process at the expense of Plaintiffs' constitutional rights. For all of the foregoing reasons, Plaintiffs respectfully request this Court exercise its unfettered discretion to deny Federal Defendants' Motion in its entirety.

DATED this 3rd day of April, 2017, at Eugene, Oregon.

Respectfully submitted,

/s/   Julia A. Olson

JULIA OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
**WILD EARTH ADVOCATES**
1216 Lincoln St.
Eugene, OR 97401
Tel: (415) 786-4825

PHILIP L. GREGORY (*pro hac vice*)
pgregory@cpmlegal.com
**COTCHET, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577

DANIEL M. GALPERN (OR Bar 061950)
dan.galpern@gmail.com
**LAW OFFICES OF DANIEL M. GALPERN**
2495 Hilyard Street, Suite A
Eugene, OR 97405
Tel: (541) 968-7164

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the Supporting Memorandum complies with the applicable word-count limitation under LR 7-2(b) because it contains 29 pages and 10,362 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

/s/    *Julia A. Olson*
JULIA OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
**WILD EARTH ADVOCATES**
1216 Lincoln St.
Eugene, OR 97401
Tel: (415) 786-4825

**Plaintiffs' Response in Opposition to Federal Defendants' Motion to Certify Order for**    30
**Interlocutory Appeal**