JULIA A. OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
WILD EARTH ADVOCATES
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

DANIEL M. GALPERN (OR Bar 061950)
dan.galpern@gmail.com
LAW OFFICES OF DANIEL M. GALPERN
2495 Hilyard Street, Suite A
Eugene, OR 97405
Tel: (541) 968-7164

JOSEPH W. COTCHETT
jcotchett@cpmlegal.com
PHILIP L. GREGORY (*pro hac vice*)
pgregory@cpmlegal.com
PAUL N. MCCLOSKEY
pmccloskey@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**; **XIUHTEZCATL TONATIUH M.**, through his Guardian Tamara Roske-Martinez; et al. <br><br> Plaintiffs, <br><br> v. <br><br> **The UNITED STATES OF AMERICA**; **DONALD TRUMP**, in his official capacity as President of the United States; et al., <br><br> Federal Defendants. | Case No.: 6:15-cv-01517-TC <br><br> PLAINTIFFS' RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO STAY LITIGATION <br> Request for Oral Argument |

## <u>INTRODUCTION</u>

Plaintiffs oppose and respectfully request that this Court deny Federal Defendants' Motion to Stay Litigation (ECF No. 121) (the "Motion to Stay").[1] This Court should exercise its discretion to deny the Motion to Stay because both Federal and Intervenor Defendants failed to carry their burden to show that an interlocutory appeal is appropriate. *See* Plaintiffs' Response in Opposition to Federal Defendants' Motion to Certify Order for Interlocutory Appeal; and Plaintiffs Response in Opposition to Intervenor Defendants' Motion for Certification of Order for Interlocutory Appeal. Even if this Court were to grant interlocutory appeal, Federal Defendants failed to satisfy their burden of demonstrating circumstances establishing the propriety of a stay. To the contrary, analysis of the circumstances of this case establishes that no stay is warranted.  Federal Defendants have neither shown that they are likely to succeed on their merits nor that they will suffer irreparable injury absent a stay. Further, any delay in resolving the merits of this case irreparably prejudices the Youth Plaintiffs in securing and protecting their fundamental constitutional rights. Provision of a stay will irreparably exacerbate existing and imminent deprivations of Plaintiffs' constitutional rights. As Federal Defendants themselves acknowledge in their Answer to Plaintiffs' First Amended Complaint ("FAC"), "'business as usual' $CO_2$ emissions" imperil Plaintiffs with "dangerous, and unacceptable economic, social, and environmental risks." ECF 98 at ¶ 150. Federal Defendants' recent actions demonstrate that they intend to act quickly to eliminate the climate programs of the federal government, thus escalating and exacerbating the already-occurring substantial injuries to Plaintiffs. Any delay in resolving this case will only allow further action at the expense of irreparable injury to Plaintiffs' rights. Lastly, the public interest clearly lies in prompt resolution of Plaintiffs' claims and a

---

[1]    Intervenor Defendants join in Federal Defendants' Motion to Stay. ECF 122 at 2-3. However, Intervenor Defendants make no additional or independent arguments as to why this Court should grant a stay. Accordingly, Plaintiffs' arguments as to the impropriety of a stay of proceedings address only those issues within Federal Defendants' Motion to Stay and Intervenor Defendants' Motion to Stay should be denied outright.

denial of Federal Defendants' requested stay. Plaintiffs respectfully request this Court to exercise its discretion and deny the Motion to Stay.

## STANDARD OF REVIEW

A stay of proceedings is "an exercise of judicial discretion and the propriety of its issue is dependent upon the circumstances of the particular case." *Niken v. Holder*, 556 U.S. 418, 433 (2009) (quotations and citations omitted and alterations normalized). As "an intrusion into the ordinary processes of administration and judicial review," a stay "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Id.* (quotations and citations omitted). The burden of "making out the justice and wisdom of a departure from the beaten track" of continuing proceedings "lay[s] heavily on the petitioners…." *Landis v. North American Co.*, 299 U.S. 248, 256 (1936).

The Supreme Court requires that a petitioner for a stay of proceedings must demonstrate satisfaction of a four factor test: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; *and* (4) where the public interest lies." *Nken,* 556 U.S. at 434 (emphasis added).

This test is "substantially identical" to that employed by the Ninth Circuit when deciding motions for preliminary injunctions and temporary restraining orders. *RCC South LLC v. SFI Belmont LLC*, No. CV11-2356-PHX-DGC, 2011 WL 6019279, at *2 (D. Ariz. 2011) ("[T]he standard for a stay pending appeal is the same as that required for preliminary injunction.") (citation omitted); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 (9th Cir. 2001) ("[O]ur analysis is substantially identical for [an] injunction and [a] TRO…."). Accordingly, precedent addressing injunction motions provides guidance for any analysis of a stay of proceedings.

In effectuating this test, the Ninth Circuit applies a sliding scale under which a petitioner seeking a stay must show irreparable harm and either: "(a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor." *Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011) (per curiam). "As has long been the case," the "relative hardships to the parties provid[e] the critical element in determining" the applicable standard under the sliding scale approach. *Id.* at 970 (quotations and citation omitted); *see also Landis*, 299 U.S. at 259 ("[B]enefit and hardship will be set off, the one against the other…"). As explained below, Federal Defendants have not demonstrated satisfaction of any of the Supreme Court's *Nken* factors.

## ARGUMENT

### I.    Federal Defendants Have Not Shown That They Are Likely to Prevail on Appeal

"The first factor, a *strong* showing of a likelihood of success on the merits, requires more than a *mere possibility* that relief will be granted." *Nken*, 556 U.S. at 420 (emphasis added). To justify a stay pending appeal of a lower court's decision, "the applicant must meet a heavy burden of showing…that the judgment of the lower court was erroneous on the merits…." *Id.* at 439, Kennedy, J., concurring). Here, Federal Defendants fail to demonstrate that they are likely to succeed on the merits because their arguments, and the cases upon which they rely, conflate the standard applicable to a motion for a stay with that necessary to show "controlling questions of law for which there are substantial grounds for differences of opinion" – two of the three prerequisites to certify an order for interlocutory appeal. 28 U.S.C. 1292(b). This is amply demonstrated by Federal Defendants' references to their own briefing on these issues[2] as the primary basis for their contention that they are likely to prevail on the merits. ECF 121 at 4

---

[2]    Plaintiffs' arguments demonstrating Federal Defendants' failure to establish that this Court's November 10, 2016 Order presented any controlling issues of law for which there are substantial grounds for differences of opinion are set forth in Plaintiffs' Response in Opposition to Federal Defendants' Motion to Certify Order for interlocutory Appeal and are not repeated herein.

(citing Memorandum In Support of Federal Defendants' Motion to Certify Order for Interlocutory Appeal at 6-17, 18, 22).

Federal Defendants' reliance on *Scallon v. Scott Henry's Winery Corp.* likewise suffers from the same deficiency, as that case similarly equated the standards for interlocutory certification with the required distinct showing of likelihood of success on the merits. No. 6:14-CV-1990-MC, 2015 WL 5772107, at *1 (D. Or. Sept. 30, 2015). The *Scallon* Court explicitly based its finding of propriety of a stay pending appeal on its conclusion that "the question…is a matter of first impression upon which reasonable jurists could disagree." *Id.* at *1. The Ninth Circuit employed this same language in discussing the "substantial grounds for disagreement" standard governing certification under 28 U.S.C. § 1292(b). *Reese v. BP Expl. (Alaska), Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("[A] substantial ground for difference of opinion exists where novel and difficult questions of first impression are presented…." upon which "reasonable jurists might disagree….") (quotations and citations omitted and alterations normalized). While "[i]t is well settled that the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for differences of opinion," *Couch v. Telescope*, 611 F.3d 629, 634 (9th Cir. 2010), to conflate the standard governing a showing of a likelihood of success on the merits with the "substantial grounds for differences of opinion" standard for interlocutory certification would run contrary to the express pronouncements of the Supreme Court. In *Nken*, the Supreme Court explicitly stated that a "showing of a likelihood of success on the merits[] requires more than a mere *possibility* that relief will be granted." *Nken*, 556 U.S. at 420 (emphasis added). Hence, even if Federal Defendants had demonstrated that any of the issues in this Court's November 10, 2016 Order presented conclusions "upon which reasonable jurists *might* disagree," which they have not, such a demonstration would plainly be insufficient to carry their burden of showing more than a mere possibility of success on the merits. *Id. See DKS, Inc. v. Corporate Business Solutions, Inc.*, No. 2:15-cv-00132-MCE-DAD, 2015 WL 6951281 at *1 (E.D. Cal. Nov. 9, 2015) (neither the

assertion that "reasonable minds can disagree" with an order's reasoning nor an assertion that arguments on appeal are "non-frivolous" is enough to show a likelihood of success on the merits).

Finally, Federal Defendants' reliance on *Umatilla Waterquality Protective Ass'n, Inc. v. Smith Forzen Foods*, is similarly misplaced and insufficient to demonstrate a likelihood of success on the merits. 962 F.Supp. 1312 (D. Or. 1997). In that case, the court certified an order for interlocutory appeal on the *joint* request of the parties. *Id.* at 1314. Here, Plaintiffs strongly oppose interlocutory appeal. Moreover, the *Umatilla* court failed to conduct any analysis of either party's likelihood of success on the merits, or any of the other three factors governing a stay of proceedings. Instead, the court granted a stay "[g]iven the importance of the issues decided…to the rest of th[e] case" – and did not perform the requisite analysis required here. Because Federal Defendants rely upon their asserted satisfaction of the requirements for interlocutory certification under 28 U.S.C. § 1292(b), and upon case law conflating that standard with the required showing here, Federal Defendants have not carried their burden to establish "a strong showing of a likelihood of success on the merits[.]" *Nken*, 556 U.S. at 420. Further, even if satisfaction of the Section 1292(b) requirements were sufficient to show a likelihood of success on the merits, which it is not, Federal Defendants have failed to carry their burden to establish satisfaction of those requirements, as more fully discussed in Plaintiff's Response in Opposition to Federal Defendants' Motion to Certify Order for Interlocutory Appeal.

Moreover, given the strength of the Court's orders rejecting Defendants' Motions to Dismiss, and given the great weight of evidence in Plaintiffs' favor, including the admissions of the Federal Defendants, Plaintiffs, rather than Federal Defendants, are likely to prevail on the merits in this litigation. Indeed, Plaintiffs were preparing to move for a preliminary injunction in order to preserve as much of the status quo as possible during the pendency of this case, and have held that motion in abeyance given the Court's direction that the parties move quickly to trial, with a goal of going to trial in the summer or fall of 2017. November 28, 2016 Transcript, ECF 100 at 12:2-5. Further, Federal Defendants have failed to marshal or demonstrate the

existence of *any* facts supporting their legal arguments as to their asserted likelihood of success on the merits. Federal Defendants fail to carry their burden on this factor.

## II.    Federal Defendants Have Not Shown Irreparable Injury Absent a Stay

An applicant for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255; *Leiva-Perez*, 640 F.3d at 968 (applicant must "show that an irreparable injury is the more probable or likely outcome"). A stay of proceedings is "not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (citation and quotations omitted).

Federal Defendants' claims that they will suffer irreparable harm absent a stay are premised entirely on their obligations to participate in discovery. ECF 121 at 4-6. Of the two cases Federal Defendants rely upon in their discussion of this alleged irreparable harm, only one even remotely addresses whether discovery obligations may qualify as imposing irreparable injuries. *H.A.L. v. Foltz*, No. 3:05-cv-873-J-33MCR (M.D. Fla., Feb. 28, 2008). Crucially, in that case, plaintiffs filed no opposition to the defendants' motion to stay discovery pending appeal. *Id.* at *1. The court therefore had no arguments before it from which to conclude that participation in discovery does not impose irreparable harm. Additionally, the interlocutory appeal granted in that case, during which a stay of discovery was sought, involved the issue of qualified immunity, which is intended to "insulate[] public officials not only from liability but also from…discovery." *Id.* The question on appeal consisted solely of whether the law alleged to have been violated by the defendant government officials "was clearly established at the time" of alleged violation – a purely "legal question." *Id.* In stark contrast to the circumstances of *H.A.L.*, Plaintiffs strongly oppose Federal Defendants' Motion to Stay. Further, Federal Defendants' Motion to Certify Order for Interlocutory Appeal neither involves a purely legal controlling question of law, nor one as to an issue that was specifically intended to insulate public officials from discovery. *See*

Plaintiffs' Response in Opposition to Federal Defendants' Motion to Certify Order for Interlocutory Appeal at 4-9.

Contrary to the Middle District of Florida's conclusion in *H.A.L.*, many courts in the Ninth Circuit that have assessed assertions of irreparable harm premised on participation in discovery have found such predications insufficient. *See, e.g.*, *DKS, Inc.*, No. 2:15-cv-00132-MCE-DAD, 2015 WL 6951281, at *2 ("CBS' conclusory contention that Plaintiff has made 'crippling demands for voluminous discovery' is not enough to make a strong showing of irreparable harm."); *E.E.O.C. v. Recruit U.S.A., Inc.*, 939 F.2d 746 (9th Cir. 1991) (defendant would not be irreparably harmed if forced to participate in discovery pending appeal); *Lam v. City of San Francisco*, No. 10-cv-4641-PJH (N.D. Cal., July 22, 2015) ("The only 'injury' that would result from denial of a stay would be the requirement of plaintiffs' participation in the discovery process…"); *Welch v. My Left Foot Children's Therapy, LLC*, NO. 2:14-cv-01786-MMD-GWF, 2016 WL 5867410 (D. Nev. Oct. 6, 2016) (assertions based upon expenses of discovery did not amount to irreparable harm).

As with the claims of the defendants in *DKS* that the plaintiffs in that case had made "crippling demands for voluminous discovery," Federal Defendants offer conclusory statements characterizing discovery in this case as "extraordinarily broad" and "virtually limitless." ECF 121 at 5. Federal Defendants' hyperbolic characterizations of discovery in this case are based primarily on Plaintiffs' January 24, 2017 Litigation Hold Demand Letter. ECF 121 at 4-5, *Id.* at Ex. A (January 24, 2017 Litigation Hold Demand Letter). However, pursuant to the January 24 Letter, Plaintiffs simply informed Federal Defendants of their legal obligation to refrain from destroying documents relevant to Plaintiffs' claims. These obligations do not require Federal Defendants to take any affirmative action to produce any documents, but merely to refrain from their destruction. *See* Declaration of Julia A. Olson in Support of Plaintiffs' Response to Federal Defendants' Motion to Certify Order for Interlocutory Appeal; *see also E.E.O.C.*, 939 F.2d at 755 (finding no irreparable injury where "the injunction does not require the companies to recreate documents no longer in existence. It simply orders them to maintain all relevant records

**Plaintiffs' Response in Opposition to Federal Defendants' Motion to Stay**          7

already in existence….”). Plaintiffs issued the January 24 Letter in response to Federal

Defendants' removal of information relevant to their claims from public governmental websites,

seeking to prevent destruction of evidence upon which Plaintiffs' case depends. *See E.E.O.C.*,

939 F.2d at 749-50 (claimant would “suffer immediate and irreversible injury to its ability to

investigate and determine charges…filed against defendants…if any of the business

records…[were] altered, destroyed, or removed….”); *Shutterfly, Inc. v. Forever Arts, Inc.*, No.

CR 12-3671 SI, 2012 WL 2911887, at *3 (N.D. Cal. July 13, 2012) (claimant would “suffer

irreparable harm in the absence of an injunction if defendants delete or destroy the sought after

evidence”). As counsel for Federal Defendants have made clear, many of the records relevant to

Plaintiffs' claims are subject to passive systems under the protocol of which these records may

be automatically lost, destroyed, or deleted after a given period. Feb. 7, 2017 Transcript, ECF

115 at 7: 21-25, 8: 1-2, 10: 3-16. Despite Plaintiffs' requests, to date, Federal Defendants

continue to object to altering these protocols, to the scope of Plaintiffs' January 24 Letter, and to

responding to discovery in this case, as evidenced by their Motion to Stay and their counsels'

statements at the February 7 case management conference. *Id.*; *see* Declaration of Julia A. Olson

in Support of Plaintiffs' Response to Federal Defendants' Motion to Certify Order for

Interlocutory Appeal. Notwithstanding those objections, and Plaintiffs' sensitivity to the need to

facilitate as swift a discovery phase as possible, the January 24 Letter and the need for discovery

in this case is justified in light of the nature of the claims and factual circumstances at issue. As

the Ninth Circuit illustrated in *E.E.O.C.*:

> [C]ourts may conclude that evidence from preceding years is relevant to the
> investigation of specific discriminatory acts and practices. Evidence of
> past…practices may reveal that unlawful conduct was part of a larger pattern of
> discrimination….The types of charges at issue in this case do not admit of isolated
> or narrow time margins. Superimposing an artificially truncated time frame would
> risk excluding evidence relevant to previous instances of similar discriminatory
> practices.

939 F.2d at 755.

**Plaintiffs' Response in Opposition to Federal Defendants' Motion to Stay**          8

Plaintiffs certainly agree to the appropriateness of narrowing discovery in this urgent case and are receptive to Federal Defendants' concerns in that regard. As reflected in the monthly status conferences and in keeping with the exigency of the dangers faced by Plaintiffs, counsel for Plaintiffs are consistently working with counsel for Defendants and this Court to narrowly tailor discovery and identify the key documents and factual matters necessary to bring this case to a prompt, thorough, and successful resolution.

However, Federal Defendants' discovery obligations would only be delayed, rather than narrowed, should this Court certify the November 10 Order for interlocutory appeal and grant a stay for the duration of appeal. As an initial matter, none of the issues presented by the November 10 Order are suitable for interlocutory appeal. *See* Plaintiffs' Response in Opposition to Federal Defendants' Motion to Certify Order for Interlocutory Appeal; Plaintiffs' Response in Opposition to Intervenor Defendants' Motion for Certification of Order for Interlocutory Appeal. Further, as Plaintiffs have explained, appellate review at this stage in the litigation would not result in a narrowing of issues for discovery. *See* Plaintiffs' Response in Opposition to Federal Defendants' Motion to Certify Order for Interlocutory Appeal at 4-9, 25-28; Plaintiffs' Response in Opposition to Intervenor Defendants' Motion for Certification of Order for Interlocutory Appeal at 4-9, 20-22. Even if this Court's conclusions in the November 10 Order as to the public trust doctrine and the fundamental right to a climate system capable of sustaining life were reversed on interlocutory appeal, Plaintiffs' remaining constitutional claims, while presenting different standards, require similar factual development through discovery. *Id.* Therefore, a stay of proceedings for determination of these issues would serve only to further delay discovery, which would occur regardless of the results of appeal, thereby exacerbating the irreparable harm that will befall Plaintiffs without reducing Federal Defendants' discovery obligations. Irrespective of this state of affairs, Plaintiffs remain resolute and earnest in their intentions to conduct narrow discovery to the maximum extent practicable while seeking to prove their case, in keeping with the urgency of the climate crisis upon which their claims are founded.

**Plaintiffs' Response in Opposition to Federal Defendants' Motion to Stay**          9

Here again, Federal Defendants belabor their oft-repeated refrain of their preference that Plaintiffs litigate the infringements of their fundamental constitutional rights through the Administrative Procedure Act. However, it is neither the prerogative of Federal Defendants to determine Plaintiffs' litigation strategy, nor Federal Defendants' right to exclude evidence relevant to their violations of the Plaintiffs' constitutional rights merely on the basis of the APA's existence. *Cf. E.E.O.C.*, 939 F.2d at 755 (refusing to superimpose "artificially truncated" frame which would exclude relevant evidence). If Federal Defendants have objections to discovery propounded in this case, their "remedy is [to seek] a protective order under Federal Rule of Civil Procedure 26(c) rather than a stay of all proceedings." *DKS, Inc.*, No. 2:15-cv-00132-MCE-DAD, 2015 WL 6951281, at *2, n.2. Federal Defendants have failed to carry their burden to show that they will be irreparably injured in the absence of a stay of proceedings.

### III.    Federal Defendants Have Not Shown That Plaintiffs Will Not Suffer Substantial Injury From a Stay

Even if this Court finds Federal Defendants have shown irreparable injury absent a stay, it must "balance the interests of all parties and weigh the damage to each." *Guy v. Cnty. Of Haw.*, No. 14-00400 SOM/KSC, 2014 WL 4702289, at *5 (D. Haw. Sept. 19, 2004) (quoting *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)). While the four-factor analysis requires Federal Defendants to show that they will suffer "*irreparable* injury" absent a stay, in assessing the harm that a grant of a stay will work top Plaintiffs, this Court need only consider whether "issuance of the stay will substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 434 (emphasis added); *see also CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) ("Among these competing interests are the *possible* damage which may result from the granting of a stay" weighed against "the hardship or inequity which a party may suffer in being required to go forward….") (emphasis added). Federal Defendants fail to carry their burden to show that a grant of stay will not result in possible substantial injury to Plaintiffs. To the contrary, the dangerous climate impacts befalling Plaintiffs as a result of Federal Defendants' unconstitutional conduct increase in quantity and

severity with every delay in resolution of their claims, establishing the actuality of both
substantial and irreparable injury to Plaintiffs should a stay of proceedings be granted. Federal
Defendants themselves acknowledge these dangers. *See* Federal Defendants' Answer to the FAC,
ECF 98 at ¶ 150 ("'[B]usiness as usual' $CO_2$ emissions" imperil Plaintiffs with "dangerous, and
unacceptable economic, social, and environmental risks. As Defendants have acknowledged, the
use of fossil fuels is a major source of these emissions, placing our nation on an increasingly
costly, insecure, and environmentally dangerous path."). The Federal Defendants in the Trump
Administration have repeatedly promised to expand fossil fuel development, and to eliminate
climate programs of the federal government, thus escalating and exacerbating the already-
occurring substantial injuries to Plaintiffs. *See* note 3, *infra*.

The irreparable character of environmental injury is well established in precedent binding
on this Court. In *Amoco Prod. Co. v. Vill. Of Gambell*, the Supreme Court made clear that
"[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages
and is often permanent or at least of long duration, *i.e.*, irreparable." 480 U.S. 531, 545 (1987)
(quotations omitted) *abrogated in part on other grounds by Winter v. Nat. Resources Defense
Council*, 555 U.S. 7 (2008). The Ninth Circuit has employed this precise language in approving
remedies provided in cases involving environmental injuries. *See, e.g. High Sierra Hikers Ass'n
v. Blackwell*, 390 F.3d 630, 642 (9th Cir. 2004) (quoting *Amoco Prod. Co.*, 480 U.S. at 545).
Similarly in *Envtl. Def. v. Army Corps of Eng'rs*, the D.C. district court stated: "Because of the
irremediable nature of many environmental claims, courts have been weary of even relatively
modest environmental harm." No. 04-1575, 2006 WL 1992626, at *9-10 (D.D.C. Jul. 14, 2006).

Further, the constitutional nature of Plaintiffs' claims establishes that the prolongation
and exacerbation of Federal Defendants' violations of Plaintiffs' rights resulting from a stay of
proceedings constitutes irreparable injury. As the Ninth Circuit has unmistakably established,
"the balance of equities favor[s] preventing the violation of a party's constitutional rights."
*Arizona Dream Act Coal., v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). Likewise, Ninth
Circuit precedent is clear: "Unlike monetary injuries, constitutional violations cannot be

**Plaintiffs' Response in Opposition to Federal Defendants' Motion to Stay**          11

adequately remedied through damages and therefore generally constitute irreparable harm."

*Nelson v. Nat'l Aeronautics and Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd on other grounds* 562 U.S. 134 (2011). Similarly, in *Goldie's Bookstore, Inc. v. Superior Court of California*, the Ninth Circuit explained that even an "[a]lleged constitutional infringement will often alone constitute irreparable harm." 739 F.2d 466, 472 (9th Cir. 1984); *see also Cobine v. City of Eureka*, No. C 16-02239 JW, 2016 WL 1730084 (N.D. Cal. May 2, 2016); *Guy.*, No. 14-00400 SOM/KSC, 2014 WL 4702289.

Additionally, Plaintiffs are likely to suffer irreparable harm in the event of interlocutory appeal or a stay of proceedings because of the near certainty of destruction of evidence relevant to their claims. Ninth Circuit precedent is clear that destruction of evidence constitutes irreparable injury. *E.E.O.C.*, 939 F.3d at 749-50 ("Plaintiff… will suffer immediate and irreversible injury…if any of the business records…are altered, destroyed, or removed…. Such injury would be irreparable…."); *see also DKS, Inc.*, No. 2:15-cv-00132-MCE-DAD, 2014 WL 4702289at *2 ("[T]he risk of lost evidence as a result of delaying this action…favors denial of the instant Motion");  *S.E.C. v. Bivona*, No. 16-cv-01386-EMC, 2016 WL 2996903, at *2 (N.D. Cal. May 25, 2016) ("The preliminary injunction will preserve the assets…preventing the 'irreparable harm' of evidence being destroyed or concealed."); *Shutterfly, Inc.*, No CR 12-3671 SI, 2012 WL 2911887, at *3 (N.D. Cal. July 13, 2012) ("Shutterfly will likely suffer irreparable harm in the absence of an injunction if defendants delete or destroy the sought after evidence.") As counsel for Federal Defendants have made clear, many of the records relevant to Plaintiffs' claims are subject to passive systems under the protocol of which these records may be automatically lost, destroyed, or deleted after a given period. Feb. 7, 2017 Transcript, ECF 115 at 7: 21-25, 8: 1-2, 10: 3-16. Notwithstanding Plaintiffs' good faith efforts to clarify the scope and nature of their January 24, 2017 Litigation Hold Demand Letter and address these issues with counsel for Federal Defendants, Federal Defendants have failed to share with Plaintiffs the protocols that are in place to ensure that evidence is not destroyed, including email communications involving climate and energy policy. *See* Declaration of Julia A. Olson in

**Plaintiffs' Response in Opposition to Federal Defendants' Motion to Stay**          12

Support of Plaintiffs' Response to Federal Defendants' Motion to Certify Order for Interlocutory Appeal

The risk of irreparable harm to Plaintiffs should this Court issue a stay of proceedings is far from hypothetical. Even in the face of the increasing urgency of the climate emergency, the new executive administration has, in the first two months of office, taken and proposed actions which profoundly exacerbate the dangers and impacts Plaintiffs face and appointed climate science deniers to high ranking office.[3] Despite the known dangers to Plaintiffs, the Trump Administration is intent on immediately dismantling what little limitations on greenhouse gas emissions there were, while expanding fossil fuel extraction, infrastructure, and energy production full throttle.

In light of Federal Defendants' recent actions, in addition to those over the course of the past decades, any delay in resolution of Plaintiffs' claims for interlocutory appeal or a stay of

---

[3]    *See* Exec. Order ___, 82 Fed. Reg. ___ (March 28, 2017) (directing rollback of Clean Power Plan, rescinding moratorium on coal mining on federal lands, and rescinding six Obama administration executive orders aimed at curbing climate change and regulating emissions, including inclusion of climate change impacts in environmental reviews ); Exec. Order 13766, 82 Fed. Reg. 8657 (Jan. 24, 2017) (expediting environmental reviews and approvals for infrastructure projects"); Exec. Order 13778 82 Fed. Reg. 12497 (Feb. 28, 2017) (ordering a review of the "Waters of the United States" Rule); Presidential Memorandum Regarding Construction of the Dakota Access Pipeline (Jan. 24, 2017), available at https://www.whitehouse.gov/the-press-office/2017/01/24/presidential-memorandum-regarding-construction-dakota-access-pipeline (encouraging approval of Dakota Access Pipeline); Presidential Memorandum Regarding Construction of the Keystone XL Pipeline (Jan. 24, 2017), available at https://www.whitehouse.gov/the-press-office/2017/01/24/presidential-memorandum-regarding-construction-keystone-xl-pipeline; Media Note: Issuance of Presidential Permit to TransCanada for Keystone XL Pipeline (March 24, 2017), available at https://www.state.gov/r/pa/prs/ps/2017/03/269074.htm; Reuters, "President Trump Prepares to Withdraw from Groundbreaking Climate Change Agreement, Transition Official Says" (Jan. 20, 2017) (Detailing possible withdrawal from Paris Climate Agreement).
[3] Coral Davenport, "E.P.A. Head Stacks Agency With Climate Change Skeptics," N.Y. Times (March 7, 2017) available at https://www.nytimes.com/2017/03/07/us/politics/scott-pruitt-environmental-protection-agency.html; Chris Mooney and Brady Dennis, "On Climate Change, Scott Pruitt Causes an Uproar – and contradicts the EPA's Own Website," Wash. Post (March 9, 2017) available at https://www.washingtonpost.com/news/energy-environment/wp/2017/03/09/on-climate-change-scott-pruitt-contradicts-the-epas-own-website/?utm_term=.b164bb28f26e.

---

**Plaintiffs' Response in Opposition to Federal Defendants' Motion to Stay**                    13

proceedings will most certainly result in irreparable injury to Plaintiffs. Federal Defendants' claim to the contrary is wholly without merit. ECF 121 at 6. First, Federal Defendants' estimations of the time needed for discovery and to proceed to trial is without basis, as this Court has projected a scheduling of trial for the fall of 2017. *See* November 28, 2016 Transcript, ECF 100 at 12:2-5. Second, as Plaintiffs have addressed, given the urgency of their claims, counsel is working diligently to narrowly tailor discovery and identify the key documents and factual matters necessary to bring this case to as a prompt a resolution as possible and within the time frame projected by this Court. Third, Federal Defendants vastly underestimate the delay that interlocutory appeal and a stay of proceedings would cause to resolution of Plaintiffs' claims, as well as the severity of the harms that will result from such delay. As the Supreme Court recognized in *Nken*, "[i]t takes time to decide a case on appeal. Sometimes a little; sometimes a lot. No court can make time stand still while it considers an appeal, and if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review." 556 U.S. at 421. In light of the looming climactic tipping points after which the effects of climate change become irreversible, Plaintiffs' cannot afford any delay in resolution of their claims. Magistrate Judge Coffin recognized this urgency and the importance of this issue to the case, asking: "[W]hat is…[the] tipping point at which it becomes irreversible climate change….isn't that, in essence, the thrust of this case?" February 7, 2017 Transcript, ECF 115 at 18: 8-12.

In *Landis*, the Supreme Court concluded that a stay of proceedings of one case should not extend beyond determination of a related case by another district court, "laying to one side the question of whether it should even go so far." 299 U.S. at 256-57. In doing so, the Supreme Court recognized that "[a]ready the proceedings in the District Court have continued more than a year. With the possibility of an intermediate appeal to the Circuit Court of Appeals, a second year or even more may go by before" proceedings could continue in the district court." *Id*. at 256. The same circumstances and reasoning apply here. Plaintiffs filed their complaint in August 2015. Eighteen months later, the parties are only now in the initial phase of discovery. To delay discovery and resolution of Plaintiffs' exigent claims to allow for interlocutory appeal or a stay

of proceedings would cause irreparable harm. *See* Declaration of Dr. James E. Hansen In

Support of Plaintiffs' Claim for Declaratory and Injunctive Relief , ECF 1-1(detailing climate

science, impacts, tipping points, and urgency).

Federal Defendants' reliance on *Scallon* is unavailing here. No. 6:14-CV-1990-MC, 2015

WL 5772107. The *Scallon* court's conclusion that a stay of proceedings would not substantially

injure the plaintiffs because their "claims date back many decades" is clearly inapplicable here.

*Id.* at *2. First, the *Scallon* plaintiffs sought only monetary relief against parties with whom they

had been involved in business relationships for many decades, and their claims arose from those

interactions. *Id.* at *1-2. The court noted that delay in resolving the claims would merely

"preserve[] the status quo." *Id.* at *2. In stark contrast here, Plaintiffs are youths ranging from

nine to twenty years of age. They have not had the sort of intimate business relationship with

Federal Defendants at issue in *Scallon*. To the contrary, the Youth Plaintiffs have no voice in

representative democracy such that they have had no connection with the policy decisions and

actions of Federal Defendants from which their claims arise. Crucially, unlike in *Scallon*, delay

in resolution of Plaintiffs' claims would exacerbate Plaintiffs' injuries rather than preserve the

status quo, especially in light of Federal Defendants' recent actions. The only way to preserve

the status quo in this case would be to proceed to an immediate trial, and for this Court to order

Federal Defendants to prepare and enforce a plan to remedy their violations of Youth Plaintiffs'

constitutional rights.

Finally, Federal Defendants assertion that any delay "is eminently justified" because

"Plaintiffs waited until 2015 to file their complaint" is manifestly devoid of any basis in equity or

reasonableness. ECF 121 at 6-7. First, Federal Defendants identify "no prejudice" that they have

"suffered as a result" of this alleged delay. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 n. 12 (9th

Cir. 2013). More importantly, to assert that Youth Plaintiffs should have brought suit earlier

obscures the fact that Plaintiffs ranged from eight to nineteen years old at the time they filed their

complaint, assumes that youth as young as eight possess the capacity at an earlier age to make

strategic legal decisions to safeguard their rights, and argues for the placement of procedural

**Plaintiffs' Response in Opposition to Federal Defendants' Motion to Stay**          15

burdens upon youth without justification, further evidencing the discrimination exacted upon Plaintiffs by Federal Defendants. Further, Federal Defendants' assertion that Plaintiffs ought to have filed suit prior to 2015 serves only to underscore their admission of the urgency of the climate crisis and counsels strongly in favor of denying any delay for interlocutory appeal or a stay of proceedings in this case. *See* ECF 98 at ¶ 150. Federal Defendants have failed to show that a stay of proceedings will not substantially injure Plaintiffs. To the contrary, it is manifestly evident that delay of resolution of Plaintiffs' claims for interlocutory appeal or a stay of proceedings will work profound and irreparable harm to Plaintiffs. The balance of equities here weighs strongly in favor of a denial of the Motion to Stay.

III.    **The Public Interest Weighs in Favor of Denying a Stay of Proceedings**

Federal Defendants have failed to carry their burden to establish that "the public interest does not weigh heavily against a stay." *Leiva-Perez*, 640 F.3d at 967.  To the contrary, where, as here, the public interest weighs in favor of denial of a stay of proceedings, this Court should exercise its discretion to refuse a "departure from the beaten track" continuing proceedings in their ordinary course. *Landis*, 299 U.S. at 256.

Contrary to Federal Defendants' assertions, Plaintiffs do not seek to "remove decision making authority on…critical issues from our publicly-elected officials, and to have them instead decided by the Court." ECF 121 at 7. Rather, Plaintiffs seek only an order from this Court directing Federal Defendants to use their existing authority, including that delegated to Federal Defendant agencies by our publicly-elected officials, to prepare a plan of their own devisement adequate to remedy their unconstitutional deprivations of Plaintiff's rights. While, Federal Defendants correctly point out that this case touches upon the principle of separation of powers, they fundamentally err in their analysis of the application of those principles to this case. *Id.* Like all cases involving infringements of individual constitutional rights, this case implicates the separation of powers insofar as "[t]he declared purpose of separating and dividing the powers of government, was to diffuse power better to secure liberty." *Bowsher v. Synar*, 478 U.S. 714, 721

**Plaintiffs' Response in Opposition to Federal Defendants' Motion to Stay**          16

(1986). As the Supreme Court famously established, "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison*, 5 (U.S. 1 Cranch) 137, 163 (1803). When the political branches have failed to protect the constitutional rights of citizens, particularly those who, like Plaintiffs, lack a voice in representational government, and have instead actively infringed those rights, the principle of separation of powers calls upon the judiciary to discharge its duty to serve as a check and a balance to the other branches and safeguard constitutional liberty. *Id.*

Federal Defendants repeat their objections to the ability of Plaintiffs to propound discovery on and this Court's ability to issue relief applicable to the President. ECF 121 at 7. Plaintiffs have addressed these arguments at length. *See* Plaintiffs Response in Opposition Federal Defendants Motion to Certify Order for Interlocutory Appeal at 18-19. Plaintiffs here reiterate that the Supreme Court has clearly stated the judiciary may even go so far as to "severely burden the Executive Branch by reviewing the legality of the President's official conduct," *Clinton v. Jones*, 520 U.S. 681, 682, 705 (1997) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)), and "direct appropriate process to the President himself." *Id.* (citing *U.S. v. Nixon*, 418 U.S. 683 (1974)). Notwithstanding this Court's authority in this respect, Plaintiffs and their counsel remain steadfast in their efforts and intentions to ensure that discovery in this case is as minimally intrusive as possible, consistent with the needs of this case, in order to secure as prompt a resolution of Plaintiffs' claims as possible.

Federal Defendants assert that they are entitled to a stay "because of the recent change in administration," citing to a single, readily-distinguishable case to support their argument. ECF 121 at 8 (citing *Brady Campaign to Prevent Gun Violence v. Salazaar*, 612 F.Supp.2d 1, 10 (D.D.C. 2009)). In *Brady*, the district court permitted a *two-week* extension of a briefing schedule in response to the Obama administration's *unopposed* motion after President Obama took office in the middle of proceedings, ten days before its responsive brief was due. *Brady*, 612 F.Supp.2d at 10. Defendants in *Brady* moved for a "two-week extension of the briefing schedule to provide the new administration that took office an opportunity to consider the issues raised by

the Plaintiffs' motions." *Id.* (quotations and citations omitted and alterations normalized). The extension was granted and the Obama administration submitted its briefing on the deadline set by the court, just twenty-four days into office. *Id.*

The circumstances of the Trump administration's request for a stay in this case are drastically different from those in *Brady*. First, the *Brady* case did not even involve a stay of proceedings, but only a short extension in briefing schedule. Second, whereas in *Brady*, the Obama administration asked for a two-week extension for submission of briefing due ten days after the president took office, the Trump administration here requests an *indefinite* stay of *all proceedings* and delayed its request for six weeks after inauguration day, while at the same time the administration (these same Federal Defendants) are moving swiftly to further violate Plaintiffs' fundamental constitutional rights. Further, whereas the *Brady* plaintiffs did not oppose the Obama administration's motion for extension, Plaintiffs here vigorously oppose Federal Defendants' Motion to Stay. Federal Defendants have failed to carry their burden to demonstrate that the public interest weighs in favor of a stay.

To the contrary, the public interest here favors prompt resolution of Plaintiffs' claims in this Court by continuing proceedings in their ordinary course. *See, e.g. Cobine*, No. C 16-02239 JW, 2016 WL 1730084 at * 7 ("The Court recognizes the public interest of protecting the public health and safety as well as preserving the environment…"); *Ctr. for Biological Diversity v. E.P.A.*, 722 F.3d 401, 415 (D.C. Cir. 2013) ("The task of dealing with global warming is urgent and important at the national and international level.") (Kavanaugh, J., concurring).

Importantly, Ninth Circuit precedent recognizes the clear and important public interest in upholding individual constitutional rights, such as those of Plaintiffs. "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Rodriguez*, 715 F.3d at 1146 (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)); *see also Vayeghan v. Kelly*, No. cv 17-0702, 2017 WL 396531 at *1 (C.D. Cal. Jan. 29, 2017) ("The Court must consider the public interest in upholding constitutional rights") (citation omitted); *Guy*, No. 14-00400 SOM/KSC, 2014 WL

**Plaintiffs' Response in Opposition to Federal Defendants' Motion to Stay**     18

4702289, at *6 ("[P]reventing constitutional violations is in the public interest."). This public interest in preserving Plaintiffs' constitutional rights is deserving of great weight here because further delay in resolution of their claims is certain to result in additional and irreparable impacts. Even where a deprivation of rights is, by contrast, a mere possibility, its prevention serves the public interest. *See Gebin v. Mineta*, 239 F.Supp.2d 967 (C.D. Cal. 2002) ("[B]ecause the termination of plaintiffs' employment *could* constitute a constitutional deprivation, the public interest will be advanced by granting the preliminary relief.") (emphasis added). The public interest in safeguarding individual constitutional rights is especially pronounced when a court is called upon, as this Court is here, to protect the fundamental rights of those most vulnerable. *Cobine*, No. C 16-02239 JW, 2016 WL 1730084, at * 7 ("The Court…recognizes the public interest in maintaining the protections afforded by the Constitution to those most in need of protection."). Due to the constitutional nature of their claims, the urgency of the climate crisis upon which they are founded, and the vulnerability of their position in our society, the public interest in swift resolution of Plaintiffs' claims surely outweighs any interest Federal Defendants have in delaying discovery and trial in this case. *Cf. Arizona v. Arpaio*, No. CV14-1356 PHX DGC, 2016 WL 722949, at *3 (D. Ariz. Feb. 14, 2016) ("Because the Constitution is the ultimate expression of the public interest, equitable balancing is inappropriate where a party's constitutional rights are at stake.")

## **CONCLUSION**

Federal Defendants failed to carry their burden to establish satisfaction of the Supreme Court's four-factor test justifying a stay of proceedings. To the contrary, application of each of those four factors here counsels strongly in favor of denying a stay of proceedings. For all of the foregoing reasons, Plaintiffs therefore respectfully request this Court to deny the Motion to Stay.

DATED this 3rd day of April, 2017, at Eugene, Oregon.

Respectfully submitted,

/s/   *Julia A. Olson*

JULIA OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
**WILD EARTH ADVOCATES**
1216 Lincoln St.
Eugene, OR 97401
Tel: (415) 786-4825

PHILIP L. GREGORY (*pro hac vice*)
pgregory@cpmlegal.com
**COTCHET, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577

DANIEL M. GALPERN (OR Bar 061950)
dan.galpern@gmail.com
**LAW OFFICES OF DANIEL M. GALPERN**
2495 Hilyard Street, Suite A
Eugene, OR 97405
Tel: (541) 968-7164

*Attorneys for Plaintiffs*

**Plaintiffs' Response in Opposition to Federal Defendants' Motion to Stay**          20

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the Supporting Memorandum complies with the

applicable word-count limitation under LR 7-2(b) because it contains 19 pages and 6,950 words,

including headings, footnotes, and quotations, but excluding the caption, table of contents, table

of cases and authorities, signature block, exhibits, and any certificates of counsel.

> /s/    *Julia A. Olson*
> JULIA OLSON (OR Bar 062230)
> JuliaAOlson@gmail.com
> **WILD EARTH ADVOCATES**
> 1216 Lincoln St.
> Eugene, OR 97401
> Tel: (415) 786-4825