JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division

LISA LYNNE RUSSELL, Chief
GUILLERMO A. MONTERO, Assistant Chief
SEAN C. DUFFY (NY Bar No. 4103131)
MARISSA PIROPATO (MA Bar No. 651630)
Trial Attorneys
Natural Resources Section
601 D Street NW
Washington, DC 20004
(202) 305-0445 (Duffy)
(202) 305-0470 (Piropato)
sean.c.duffy@usdoj.gov
marissa.piropato@usdoj.gov

*Attorneys for Federal Defendants*

### UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**, et al., <br>     Plaintiffs, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, et al., <br>     Federal Defendants. | Case No. 6:15-cv-01517-TC <br><br> **FEDERAL DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATION OF MAGISTRATE JUDGE (ECF No. 146)** <br><br> **Expedited Hearing Requested** |

### Introduction

In our motion to certify the Court's November 10, 2016 order ("Order") denying the motions to dismiss, Federal Defendants set forth the reasons why the Order is a textbook example of the kind of order that is appropriately certified for interlocutory appeal. As we showed, the Order decided pure questions of law that control this litigation, in ways that are novel or otherwise not supported by existing precedent, and resolution of those questions may greatly advance the ultimate termination of the litigation. The Magistrate's Findings and

Recommendation ("findings" or "F&R") nonetheless recommend that the Court deny the motion for certification, primarily on the basis of an incorrect perception that additional fact-finding is necessary, while largely ignoring the purely legal Constitutional, jurisdictional, and separation-of-powers issues that make continued litigation improper. The United States objects to the findings and respectfully requests that the Court certify the Order for interlocutory appeal. The United States also respectfully requests expedited consideration of the motion to certify the order for interlocutory review and a determination by May 19, 2017.[1]

This Court's review of the Magistrate's findings is *de novo*. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1); *Howell v. Berryhill*, No. 6:16-CV-271-SB, 2017 WL 1653948, at *1 (D. Or. May 1, 2017).

## I. Each of the questions proposed for certification satisfies the statutory criteria for interlocutory appeal.

Permissive interlocutory appeal is governed by 28 U.S.C. § 1292(b), which permits the Court to certify an order for immediate appeal if: (1) the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. As explained below, and in Federal Defendants' motion to certify, the Order decided five "controlling questions of law," as to which there is a "substantial ground for difference of opinion." *See* Fed. Defs.' Mot. to Certify Order for Interlocutory Appeal 3, ECF No. 120. Specifically, it determined that Plaintiffs have adequately alleged injury in fact, causation, and redressability sufficient to satisfy the Article III standing requirement; that the Fifth Amendment

---

[1] Pursuant to Local Rule 7-1(a), the parties conferred on the request for expedition. Plaintiffs oppose the request for expedited consideration. Intervenor-Defendants do not oppose the request for expedition.

Due Process clause protects a fundamental right to a "climate system capable of sustaining human life"; and that Plaintiffs have alleged a cognizable federal public trust claim against the United States. Resolution of the propriety of these rulings on controlling questions by the Ninth Circuit Court of Appeals would unquestionably "materially advance the ultimate termination of the litigation" because, if resolved in the United States' favor, they would dispose of the claims before the Court.

In the findings, the Magistrate identifies the proper legal standard and recognizes the role of the Court in exercising its discretion in considering the motion. F&R 4-5, ECF No. 146. The Magistrate also cites to additional cases for the proposition that interlocutory appeals are rare, and are reserved for exceptional circumstances. *Id.* at 5-6. However, while interlocutory appeals may not be common, they are granted where the standards are met, as here. *See Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (noting that over one and one-half years, the Court of Appeals for the Seventh Circuit received thirty-one petitions for interlocutory appeal and granted six of them); *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996) (noting that over the course of two years, the Court of Appeals for the Second Circuit received thirty-five motions for leave to appeal and granted eight). Moreover, given the scope of the issues raised in the complaint, and the scope of the discovery demands propounded to date, *see* Joint Status Report as of April 3, 2017 at 4-14, ECF No. 131, this case presents the sort of exceptional situation that 28 U.S.C. § 1292(b) was meant to accommodate. As the Committee of the Judicial Conference of the United States (which proposed the legislation) stated:

> [T]he appeal from interlocutory orders . . . should and will be used only in exceptional cases where a decision of the appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases, where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided. . . . It is not thought that the district judges would

>grant the certificate in ordinary litigation which could otherwise be promptly disposed of. . .

*See* S. Rep. No. 85-2434 (1958), *reprinted in* 1958 U.S.C.C.A.N. 5255, 5260-61.  In deciding the motions to dismiss, the Court observed that this is "no ordinary lawsuit."  Op. & Order 3, ECF No. 83 ("Op. 3").  And as demonstrated in our motion for stay (ECF No. 121), continued litigation is likely to be protracted, extremely burdensome, and disruptive to the conduct of the agencies and the Office of the President, particularly so in light of Plaintiffs' massively broad discovery demands.

        A.       <u>The standing issues satisfy the criteria for interlocutory appeal.</u>

The Magistrate acknowledges that a non-final order may be subject to interlocutory review where it involves, *inter alia*, a "controlling issue of law."[2]  F&R 4 (citing 28 U.S.C. § 1292(b)).  However, the findings fail to come to grips with the purely legal issues Federal Defendants have sought to certify.  For example, the findings state that whether Plaintiffs have standing does not present a controlling question of law because it allegedly requires the resolution of "numerous factual questions," including: "What are the projected effects of elevated $CO_2$ emissions on the climate, atmosphere, seas, and habitat," and "[h]ave the federal defendants deliberately chosen to encourage and promote fossil fuel production with knowledge of the dangers created by those policies?"  F&R 15.  The Magistrate ignores the purely legal

---

[2] With respect to the three-part standard set forth in 28 U.S.C. § 1292 for determining whether an issue is appropriate for interlocutory appeal, the Magistrate does not address the applicability of each prong to each issue for which certification to appeal is sought.  For example, the Magistrate addresses only the first prong ("controlling question of law") as it pertains to the standing and due process inquiries.  In its motion to certify, the United States set out in full why each of the issues for certification satisfy the three-part standard; rather than repeat those points here, the United States relies upon its briefing on the motion, which is incorporated herein by reference.  *See* Mem. in Supp. of Fed. Defs' Mot. to Certify Order for Interlocutory Appeal, ECF No. 120-1 ("Mot. To Certify"); Reply in Supp. of Fed. Defs' Mot. to Certify Order for Interlocutory Appeal,  ECF No. 139.

FEDERAL DEFENDANTS' OBJECTIONS TO
FINDINGS AND RECOMMENDATION       4

questions presented in the Federal Defendants' motion, *viz.*, whether, as a matter of law, injury in fact can be established by alleging a generalized harm to the world-wide environment; whether causation can be established by relying on the aggregate effects of all federal government policies relating to fossil fuel production, transportation, and consumption over many decades; and whether redressability can be established by alleging that sweeping equitable relief reversing policies put in place by Congress and multiple administrations would address the alleged injury. Whether standing to sue is ever possible in a case like this one—that seeks to fundamentally change the way that Congress and the Executive Branch address energy and environmental policy—is a question of law that needs no factual development.

Similarly, the Magistrate acknowledges that a non-final order may be subject to interlocutory review when "the controlling issue of law is one to which there is a 'substantial ground for difference of opinion.'" F&R 4 (citing 28 U.S.C. § 1292(b)). But here again, the findings address this standard inadequately in several respects. Most fundamentally, the findings focus exclusively on whether a widely shared injury is sufficiently concrete, particularized, actual and imminent to establish a cognizable injury in fact, F&R 14, but they completely ignore the causation and redressability factors. The United States moved to certify the causation and redressability issues separately, and a favorable ruling on either issue would dispose of this litigation. Even with respect to injury in fact, the findings incorrectly conclude that there is no substantial ground for a difference of opinion, do not cite any supporting authority, and are based entirely on the view that it would be "an irrational limitation on standing which allowed isolated incidents of deprivation of constitutional rights to be actionable, but not those reaching pandemic proportions." *Id.*

FEDERAL DEFENDANTS' OBJECTIONS TO
FINDINGS AND RECOMMENDATION                5

But a "pandemic" complaint conflicts with Supreme Court standing jurisprudence. *Lujan v. Defs of Wildlife*, 504 U.S. 555, 573-74 (1992) ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws . . . does not state an Article III case or controversy.")  While the Court's opinion sought to distinguish this case from "generalized grievance" caselaw (Op. 20), the counter-examples most commonly recited ("a widespread mass tort" or "large numbers of voters suffer[ing] interference with voting rights conferred by law"), *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 35 (1998), quoting *United States v. Richardson*, 418 U.S. 166, 177 (1974), illustrate how very different this case is, where Plaintiffs' asserted grievance is essentially that for decades the executive and legislative branches have governed imprudently on a subject affecting every human being on the planet.  And, as we have noted (Mot. to Certify 10), *Massachusetts v. EPA*, 549 U.S. 497 (2007), is not to the contrary.

Redressability issues highlight the dubiousness of Plaintiffs' standing.  Plaintiffs assume that a due process claim can be brought against the United States absent a statutory right of action or waiver of sovereign immunity, apparently inferring a private cause of action in the Constitution itself.  To the contrary, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471 (1994) (citations omitted).  Section 702 of the APA is a limited waiver, but not one Plaintiffs rely upon.  Even if the APA were understood to provide the requisite waiver of sovereign immunity here*, see The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 523-24 (9th Cir. 1989) (finding APA waived sovereign immunity for constitutional claims), Plaintiffs can demonstrate no basis

FEDERAL DEFENDANTS' OBJECTIONS TO
FINDINGS AND RECOMMENDATION               6

for the equitable relief they seek.  The findings do not address this fundamental prohibition, which bars redress.

Moreover, no relief could be obtained against the President in this case.  *See, e.g., Mississippi v. Johnson*, 71 U.S. 475, 501 (1866) ("this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties"); *Newdow v. Bush*, 355 F. Supp. 2d 265, 280-82 (D.D.C. 2005) (declining to create an exception to Presidential immunity "where [the President] is claimed to have violated the Constitution"); *see also Clinton v. Jones*, 520 U.S. 681, 718-19 (1997) (Breyer, J. concurring) (acknowledging "the apparently unbroken historical tradition . . . implicit in the separation of powers' that a President may not be ordered by the Judiciary to perform particular Executive acts") (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992) (Scalia, J. concurring)); *Frothingham v. Mellon*, 262 U.S. 447, 488 (1923) ("The general rule is that neither department may invade the province of the other and neither may control, direct, or restrain the action of the other.").  The findings fail to address the President's immunity from suit, which is another bar to redress.

B.   The Due Process claim satisfies the criteria for interlocutory appeal.

The Magistrate similarly asserts that an interlocutory appeal on the Due Process issue "would be premature" because "[t]he plaintiffs' substantive due process claim presents a mixed question of law and fact that mandates an opportunity to develop the record." F&R 11.  But this improperly presumes that Plaintiffs have pleaded a cognizable Due Process claim.  Citing this Court's November 10, 2016 Order, the Magistrate takes as a given that there is a fundamental Due Process right to "a climate system capable of sustaining human life." F&R 10.  With that as its baseline, the F&R conclude that evidence of federal regulatory practices relating to fossil fuels—both historically and going forward—is necessary to avoid presenting the appellate court

with a "hollow hypothetical question." *Id*. It further concludes on that basis that "evidence of policies promoting increased production of fossil fuels and reduction of existing regulatory efforts will be relevant to the 'danger creation' and 'deliberate indifference' standards pertinent to Plaintiffs' substantive due process claim." F&R 11.  By assuming the answer to the key legal issue presented by our motion on the substantive due process claim—the completely unprecedented nature of the Plaintiffs' alleged fundamental right—the Magistrate avoids that issue altogether.  Whether Plaintiffs have alleged the violation of a constitutionally protected fundamental life, liberty, or property interest is a pure legal question, and no factual development is needed to answer it.

Plaintiffs are unable to point to a single case that comes anywhere close to holding that the federal government's pursuit of a general policy or its determinations on the extent of regulating a particular subject can form the basis of a substantive due process claim.  The only case cited by the Magistrate, *Penilla v. City of Huntington Park*, is inapposite.  It involved a suit against police officers under 42 U.S.C. § 1983 for engaging in affirmative conduct that directly and immediately endangered an individual: they "took affirmative actions that significantly increased the risk facing Penilla: they cancelled the 911 call to the paramedics; they dragged Penilla from his porch, where he was in public view, into an empty house; they then locked the door and left him there alone. . . *after* they had examined him and found him to be in serious medical need."  115 F.3d 707, 710 (9th Cir. 1997).  Extending this substantive due process theory to the federal government's general pursuit of policies, such as "promoting increased production of fossil fuels," F&R 11, is a huge and unprecedented logical leap.

In sum, the United States is entitled to interlocutory appeal on the issue of whether Plaintiffs have asserted a cognizable claim arising under a constitutionally protected fundamental

right.  Insofar as the Magistrate concluded that the requirements of 28 U.S.C. § 1292(b) are not satisfied, it is because he declined to engage in the key legal inquiry presented in the United States' motion, and because he incorrectly found that the claim presents a mixed question of law and fact that requires development of a factual record.

### C. The public trust claim satisfies the criteria for interlocutory appeal.

The United States has also satisfied the requirements of 28 U.S.C. § 1292(b) with respect to Plaintiffs' "public trust" claim.  This unprecedented claim suffers from numerous legal defects, none of which are addressed by the Magistrate.  The Magistrate does not even mention the recent D.C. Circuit ruling in *Alec L.*, which found, consistent with the Supreme Court's opinion in *PPL Montana*, that the public trust doctrine is a matter of state law, and is not based on the Constitution or federal law.  *See Alec L. ex rel. Loorz v. McCarthy*, 561 Fed. App'x 7 (D.C. Cir. 2014) (citing *PPL Mont., LLC v. Montana*, 565 U.S. 576, 604 (2012) (affirming the dismissal, for lack of jurisdiction, of a suit practically identical to Plaintiffs' suit here).  This conflicting precedent illustrates that there are substantial grounds for difference of opinion on plaintiffs' public trust claims.  *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ("Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point.'").  Furthermore, the findings do little more than assert that the federal government must retain some public trust rights over territorial seas, without explaining how that theory, even if correct, could possibly form the basis for a suit challenging the federal government's policies relating to fossil fuel production, transportation and consumption or the regulation of $CO_2$.  That is, in and of itself, a controlling question of law in this case.

FEDERAL DEFENDANTS' OBJECTIONS TO
FINDINGS AND RECOMMENDATION                9

The findings also fail to address our argument that the Clean Air Act displaces any federal public trust theory of liability based on greenhouse gas emissions, as argued more fully in our motion (Mot. to Certify 24-25), which we incorporate herein by reference.

In sum, the findings in no way support denial of an interlocutory appeal of the public trust issue. For the reasons explained in the United States' motion, the issue should be certified for interlocutory appeal because appellate review would materially advance the ultimate termination of the litigation by resolving the controlling issue of whether the asserted federal public trust claim is cognizable.

## II. Additional fact-finding is not appropriate and does not provide a valid basis for denying the motion for certification.

### A. Additional facts will not assist in resolving the legal questions presented.

To resolve the dispositive legal questions, the court of appeals will need to look no further than the complaint, this Court's order, the parties' briefs, and the relevant legal authorities. Whether Plaintiffs have adequately pleaded standing, or cognizable Due Process or public trust claims, are pure legal questions. Plaintiffs nonetheless contend, and the Magistrate evidently agrees, that the Ninth Circuit will need additional factual development of the claims. Pls.' Rep. in Opp'n to Fed. Defs.' Mot. to Certify Order for Interlocutory Appeal 7, 9, ECF No. 133; F&R 9, 11. In this regard, Plaintiffs' misapprehend the role of a Rule 12(b)(6) motion to dismiss in district court litigation, while the Magistrate misapprehends the role of appellate review of interlocutory appeals.

A motion to dismiss tests the validity of the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It provides a means whereby claims that lack a legal basis can be dismissed and the parties and the court can avoid the burdens associated with discovery and the development of a factual record pertaining to non-cognizable claims. With certain exceptions

not relevant here, a court ordinarily does not look beyond the complaint when deciding whether it adequately states a claim or fails for lack of jurisdiction.[3]

The Magistrate has ignored the vital role of a motion to dismiss and wrongly insisted on factual development where none is required or appropriate.  For example, when Federal Defendants explained that Plaintiffs' Fifth Amendment equal protection claim is foreclosed because "youth" is not a suspect class, and because Plaintiffs had not alleged that the policies they challenge lack a rational basis, the Magistrate expressed concern that he lacked a record on which to conduct a "rational basis analysis."  Reporter's Transcript of Proceedings, March 9, 2016 at 27:16-23; ECF No. 67.  Because Plaintiffs' claims do not challenge the rational basis of federal action, the United States' pleadings on this point are irrelevant to the legal claim, and yet the Magistrate concluded that they were necessary.  Now that the United States has filed its Answer, ECF No. 98, the Magistrate recommends that the Court move the goal posts further, requiring additional factual development before the Ninth Circuit has an opportunity to consider whether the claims should be dismissed.  No such factual development is necessary to resolve the purely legal issues raised in the United States' motion.  Indeed, Plaintiffs' allegations are accepted as true for purposes of Federal Defendants' motion to dismiss.

---

[3] A motion to dismiss that challenges a court's jurisdiction may be brought under Fed. R. Civ. P. 12(b)(1) either as a facial attack on the sufficiency of the pleadings or as a factual attack contesting the complaint's allegations. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  In a facial attack, the court accepts factual allegations as true, as it does in resolving a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Id.*  A court need not, however, accept legal conclusions alleged in the complaint as true, and a plaintiff must "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### B. Additional factual development will not aid appellate review.

The findings assert that the issues for which interlocutory appeal is sought "are not well served" for appellate review because they lack record development "beyond the pleadings." F&R 9. But the Magistrate does not explain how the *legal* questions at issue here—whether Plaintiffs have alleged sufficient facts to support standing or whether their novel due process right and public trust claims are cognizable—will benefit on appeal from additional *factual* development through discovery and a trial, when it is the very existence of those rights and the facial sufficiency of the pleadings, as a matter of law, that would be at issue on an interlocutory appeal.[4]

The Magistrate also asserts that the "judicial forum is particularly well-suited for the resolution of factual and expert scientific disputes[.]" F&R at 9. But the premise of this statement—that the present case primarily concerns "expert scientific disputes"—is incorrect. As the Magistrate recognizes, for purposes of this case, Plaintiffs and Federal Defendants have addressed many of the issues on the pleadings. *See id.* at 2-4 ("federal defendants . . . in their answer, admitted the accuracy of a significant number of allegations").[5] While there certainly

---

[4] The Magistrate's reliance on a district court opinion in *Bennett v. City of Philadelphia*, No. Civ. A. 03-5685, 2004 WL 187408 (E.D. Pa. Jan. 26, 2004), for the proposition that the appeal of a case involving a "*Deshaney* question" requires a factual record is misplaced. *See* F&R 11 n.7. In *Bennett*, the court evidently assumed that the legal basis for the claim was valid and that Defendants were attacking the question of liability. 2004 WL 187408 at *1. Here, by contrast, the question for which certification is sought is a purely legal one—whether Plaintiffs have a constitutionally protected interest to a climate system of a particular atmospheric level of $CO_2$ and whether federal agencies have a duty to protect that interest by taking actions to sharply reduce $CO_2$ emissions.

[5] The Magistrate focused much attention on the Federal Defendants' Answer. See F&R 2-4. Recognizing that the Answer was filed during a previous Administration, the United States reserves the right to seek leave to amend that Answer under Fed. R. Civ. P. 15. Notwithstanding this reservation, as we have explained, the claims presented by the motion for certification are purely legal, and not dependent on the United States' Answer or upon the further development of

are scientific disputes regarding aspects of climate science, it is not those scientific disputes that are at the heart of what the parties dispute in this case. Rather, the heart of the dispute is the legal questions concerning whether Plaintiffs have standing, whether this Court has jurisdiction, and whether Plaintiffs have stated claims that are cognizable in a federal court.

## Conclusion

For the foregoing reasons and those stated in the United States' motion to certify, the Court should certify the November 2016 order for interlocutory appeal.

Dated: May 5, 2017

Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division

*/s/ Sean C. Duffy*
LISA LYNNE RUSSELL
GUILLERMO A. MONTERO
SEAN C. DUFFY (NY Bar No. 4103131)
MARISSA PIROPATO (MA Bar No. 651630)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
601 D Street NW
Washington, DC 20004
Telephone: (202) 305-0445
Facsimile: (202) 305-0506
sean.c.duffy@usdoj.gov

*Attorneys for Federal Defendants*

---

a factual or expert record in this case. In any event, Plaintiffs' allegations are accepted as true in deciding Federal Defendants' motion to dismiss.

**Certificate of Service**

I hereby certify that on May 5, 2017 I caused the foregoing to be filed with the Clerk of Court via the CM/ECF system, which will provide service to all attorneys of record.

> */s/ Sean C. Duffy*
> Sean C. Duffy
>
> *Attorney for Federal Defendants*