JULIA A. OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
WILD EARTH ADVOCATES
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

DANIEL M. GALPERN (OR Bar 061950)
dan.galpern@gmail.com
LAW OFFICES OF DANIEL M. GALPERN
2495 Hilyard Street, Suite A
Eugene, OR 97405
Tel: (541) 968-7164

JOSEPH W. COTCHETT
jcotchett@cpmlegal.com
PHILIP L. GREGORY (*pro hac vice*)
pgregory@cpmlegal.com
PAUL N. MCCLOSKEY
pmccloskey@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**; **XIUHTEZCATL TONATIUH M.**, through his Guardian Tamara Roske-Martinez; et al. | Case No.: 6:15-cv-01517-TC |
| Plaintiffs, | |
| v. | PLAINTIFFS' RESPONSE TO INTERVENOR DEFENDANT NATIONAL ASSOCIATION OF MANUFACTURERS' MOTION TO WITHDRAW |
| **The UNITED STATES OF AMERICA**; **DONALD TRUMP**, in his official capacity as President of the United States; et al., | |
| Federal Defendants. | |

PLAINTIFFS' RESPONSE TO INTERVENOR DEFENDANT NATIONAL
ASSOCIATION OF MANUFACTURERS' MOTION TO WITHDRAW

## TABLE OF CONTENTS

Page

BACKGROUND ........................................................................................................... 7

    I.    Intervenor Defendant NAM's Intervention ........................................... 7

    II.    Intervenor Defendants' involvement in this case has complicated and prolonged the litigation to the detriment of this Court and Plaintiffs ............ 9

        a.    Intervenor Defendants' motion to dismiss and motion to certify order for interlocutory appeal required substantial additional briefing by Plaintiffs ............................................. 10

        b.    Intervenor Defendants refused this Court's multiple requests to narrow the issues as to the allegations in the complaint admitted by Federal Defendants ......................................... 11

        c.    Intervenor Defendants' refusal to respond to any discovery placed a significant burden on Plaintiffs and this Court .................... 17

ARGUMENT ............................................................................................................. 18

    I.    NAM seeks to avoid its obligations as a party in the case and must provide a justification to the Court in support of its desire to withdraw ................................................................................. 18

    II.    Intervenor Defendants' withdrawal should be conditioned in a manner that does not prejudice Plaintiffs ................................................................. 19

        a.    NAM's withdraw from the case should be with prejudice ................. 21

        b.    In addition to making NAM's withdrawal with prejudice, this Court should place other terms and conditions on NAM's withdrawal from this case ........................................................................... 27

            i.    This Court has the inherent power to order an award of attorneys' fees to Plaintiffs given Intervenor Defendants' conduct in this case ............................................. 28

            ii.    This Court has the power to preclude NAM and its members from attempting to further litigate the claims in this case ...... 31

CONCLUSION .......................................................................................................... 33

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975) .................................................................................................. 29

*Beaudry Motor Co. v. Abko Properties, Inc.*,
  780 F.2d 751 (9th Cir. 1986) .............................................................................. 29, 30

*Briles v. Loomis Group, Inc.*,
  CIV. 08-1290-AA, 2009 WL 563048 (D. Or. Mar. 3, 2009).................................... 31

*Brooks v. State Bd. of Elections*,
  173 F.R.D. 547 (S.D. Ga. 1997) ............................................................................... 22

*Burnette v. Godshall*,
  828 F.Supp. 1439 (N.D. Cal. 1993) .................................................................... 21, 28

*Burnette v. Lockheed Missiles & Space Co., Inc.*,
  72 F.3d 766 (9th Cir. 1995) ................................................................................ 21, 28

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) .................................................................................................... 30

*Chicago, R.I. & P.R. Co. v. Schendel*,
  270 U.S. 611 (1926)................................................................................................... 33

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990)................................................................................................... 24

*Goldlawr, Inc. v. Shubert*,
  32 F.R.D. 467 (S.D.N.Y 1962) .......................................................................... 23, 28

*Goodyear Tire & Rubber Co. v. Haeger*,
  137 S. Ct. 1178 (2017)................................................................................... 28, 29, 30

*Greene v. United States*,
  996 F.2d 973 (9th Cir. 1993) .......................................................................... 7, 22, 34

*Hall v. Cole*,
  412 U.S. 1 (1973)....................................................................................................... 29

*Hargis v. Foster*,
  282 F.3d 1154 (9th Cir. 2002) .................................................................................. 21

*Headwaters Inc. v. U.S. Forest Serv.*,
   399 F.3d 1047 (9th Cir. 2005) .................................................. 32

*Hemstreet v. Duncan*,
   No. CIV. 07-732-ST, 2008 WL 2167137 (D. Or. May 21, 2008) .................................... 21, 22

*Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maintenance, Inc.*,
   707 F.2d 425 (9th Cir. 1983) .................................................. 30

*Koch v. Hankins*,
   8 F.3d 650 (9th Cir.1993) .................................................. 31

*Mine Workers v. Bagwell*,
   512 U.S. 821 (1994) .................................................. 29

*Montana v. United States*,
   440 U.S. 147 (1979) .................................................. 32, 33

*N.W. Envtl. Def. Ctr. v. Allen*,
   CIV. 05-1279-AA, 2007 WL 1746333 (D. Or. June 13, 2007) .................................... 27

*Radian Asset Assur., Inc. v. College of the Christian Bros. of New Mexico*,
   274 F.R.D. 683 (D.N.M. 2011) .................................................. 23

*Richards v. Jefferson Cnty.*,
   517 U.S. 793 (1996) .................................................. 31

*Rodriguez v. U.S.*,
   542 F.3d 704 (9th Cir. 2008) .................................................. 30

*Santa Rosa Meml. Hosp. v. Kent*,
   15-16650, 2017 WL 1488263 (9th Cir. Apr. 26, 2017) .................................... 31

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) .................................................. 31, 32, 33

*United States v. Oregon*,
   839 F.2d 635 (9th Cir. 1988) .................................................. 7, 22, 34

*United States v. Outboard Marine Corp.*,
   789 F2d 497 (7th Cir.1986) .................................................. 23

*United States v. Standard Oil Co.*,
   603 F.2d 100 (9th Cir. 1979) .................................................. 30

*Williams v. Peralta Community College Dist.*,
   227 F.R.D. 538 (N.D. Cal. 2005)..................................................................... 21, 22, 31

## OTHER AUTHORITIES

1 Restatement (Second) of Judgments § 39, Comment a, at 382 (1980)..................................... 32

18A Charles Alan Wright et al., Federal Practice and Procedure § 4454 (2d ed. 2017) ............. 33

## RULES

**Federal Rules of Civil Procedure**

Rule 24 ................................................................................................................... 32

Rule 41 ................................................................................................. 20, 21, 22, 27

In November 2015, three trade associations—the National Association of Manufacturers ("NAM"), American Fuel & Petrochemical Manufacturers ("AFPM"), and American Petroleum Institute ("API")—moved to intervene in this case as full party defendants to protect the interests of their members. They argued, and this Court agreed, that the relief Plaintiffs seek could directly harm the economic interests in the production, refining and use of fossil fuels of "virtually the entire swath of the NAM, AFPM, and API's members." Memo in Support of Mot. to Intervene ("Mot. to Intervene"), ECF 15, at 16.

Eighteen months later, only three days before the due date of its required responses to Plaintiffs' Requests for Admissions, NAM completely reversed its position and moved this Court for permission to withdraw from this case without providing any justification for its request to withdraw. NAM argues it has the full discretion to join and leave this case as a party without any explanation and without any consequences.

Plaintiffs do not outright oppose NAM's withdrawal from this case. However, Plaintiffs believe such withdrawal should only be granted with conditions. There are several reasons why NAM's withdrawal should be conditioned in a manner that does not prejudice Plaintiffs or the continued prosecution of this case: the excessive delay caused by NAM's participation in this case, the late date of NAM's motion to withdraw, Plaintiffs' investment of considerable resources in addressing issues raised by NAM, and the apparent squandering of judicial resources. In permitting NAM to withdraw, this Court should order the following:

    (a)    NAM's withdrawal should be with prejudice, finding that NAM no longer meets the requirements of Rule 24;

    (b)    NAM should be required to pay attorneys' fees and costs of counsel for Plaintiffs that are attributed to NAM's participation in this case;

(c)     Because NAM seeks to withdraw long after motion practiced commenced, the legal determinations made to date should have a *stare decisis* effect on NAM's interest or available remedies in other litigation. *United States v. Oregon*, 839 F.2d 635, 638-39 (9th Cir. 1988); *Greene v. United States*, 996 F.2d 973, 977-78 (9th Cir. 1993); and

(d)     NAM and its members should be precluded from participating in this case as parties. As a result, NAM should file with this Court a list of its members, both at the time NAM moved to intervene and at the time NAM moved to withdraw. Both NAM and each of these members should be precluded from making any future filings in this case absent leave of this Court, which leave should only be granted if NAM or such member presents evidence as to its role, if any, in the decision to intervene, the decision to admit or deny allegations in the First Amended Complaint, the various decisions to respond to discovery, and the decision to withdraw. Further, any future filing by NAM or its members should be limited to *amicus curiae* participation if the foregoing conditions are met.

## BACKGROUND

### I.     Intervenor Defendant NAM's Intervention

Along with the other Intervenor Defendants, NAM vigorously argued for the right to intervene in this case on behalf of its members "to ensure that the abrupt and extraordinary policy mandates that Plaintiffs ask this Court to direct are not imposed on their members and the entire U.S. economy through this case." Mot. to Intervene, ECF 15, at 2. According to the moving papers, it was the interests of NAM's members, not of the trade association itself, which

was used to justify intervention. *See* Mot. to Intervene, ECF 15; Declaration of Chad Moutray of NAM in Support of Motion to Intervene ("Moutray Decl."), ECF 16, ¶¶ 2, 8, 10.

Along with AFPM and API, NAM argued: "if Plaintiffs succeed in this Court ordering the elimination or massive reduction of U.S. conventional fuel consumption and manufacturing processes that emit GHGs beyond existing federal and other regulations, the ***members*** of each of the Proposed Intervenor-Defendants will be harmed." Mot. to Intervene, ECF 15, at 2-3 (emphasis added.) "NAM is the nation's largest industrial trade association" with "more than 14,000 members—which include leading members of the coal, oil, and natural gas sectors, petroleum refiners, and petrochemical producers, as well as thousands of manufacturing companies that are heavily reliant on the availability of reasonably-priced energy, and which themselves emit greenhouse gases (GHGs), including carbon dioxide ($CO_2$)." Mot. to Intervene, at 5, 2; *see* Moutray Decl. ¶ 10.

NAM argued the remedy Plaintiffs seek may directly and severely impact NAM's members, some of which may be forced to invest in massive changes to their manufacturing infrastructure or to abandon such infrastructure and/or face increased costs of production and transportation, exacerbating a global competitive disadvantage. Mot. to Intervene, at 2, 5-6; *see* Moutray Decl. ¶ 17-24.

Plaintiffs opposed NAM's participation in this case as full party intervenor defendants. Plaintiffs' Opp. to Mot. to Intervene, ECF 33. For instance, Plaintiffs argued NAM's "asserted interests are so tenuous, generally alleged, and unrelated to the present action" and were instead based on its "members' fears of sometime in the future needing to use alternative energy sources, reshape their fossil-fuel related businesses, or shut down operations." *Id.* at 5-6. Plaintiffs further

argued that, if intervention was granted, NAM, API, and AFPM be limited to participating in the remedy phase of the case.

This Court found that all of the factors for intervention had been met and granted the motion to intervene as of right. Order Granting Mot. to Intervene, ECF 50. This Court concluded that Intervenor Defendants have a protectable interest because, if Plaintiffs prevail, "this action will directly change the nature of many of the ***members***' business or how they carry out their business." *Id.* at 6 (emphasis added.) This Court also found "[t]here is no question that the interests of proposed intervenors would be impaired" by Plaintiffs' requested remedy. *Id.* at 7. Finally, this Court decided the interests of Federal Defendants were much broader than the interests of Intervenor Defendants, and Federal Defendants would not adequately represent the interests of Intervenor Defendants. *Id.* at 7-8.

## II.    Intervenor Defendants' involvement in this case has complicated and prolonged the litigation to the detriment of this Court and Plaintiffs

In addition to the briefing and oral argument on the Motions to Intervene, to Dismiss, and to Certify for Interlocutory Appeal, both this Court and Plaintiffs have expended substantial resources responding to Intervenor Defendants' participation in the case, both by attempting to engage in discovery concerning Intervenor Defendants and through motion practice. Since January 2017, Plaintiffs have expended significant resources addressing Intervenor Defendants' arguably sanctionable Answer, as well as propounding requests for admissions, serving and narrowing requests for production of documents, and conferring on deposition notices, in order to narrow the issues for trial and to obtain documents relevant to Intervenor Defendants' position on climate change. Plaintiffs have had numerous email exchanges, telephonic meet and confers, and an all-day in-person meet and confer with Intervenor Defendants. Now, after months of what is ultimately proving to have been a waste of time and resources by this Court and Plaintiffs, and

with serving only objections to all discovery requests, each Intervenor Defendant seeks this Court's permission to withdraw from the case. From a judicial economy perspective, no party in litigation should be allowed to waltz away from a case after squandering the time and energy of this Court and Plaintiffs. Withdrawal after such conduct should be coupled with repercussions.

   a.    **Intervenor Defendants' motion to dismiss and motion to certify order for interlocutory appeal required substantial additional briefing by Plaintiffs**

After moving to intervene, Intervenor Defendants spent 10 months briefing and arguing their motion to dismiss, which was completely denied on November 10, 2016. At the motion to dismiss stage, the arguments of Intervenor Defendants essentially duplicated arguments made by Federal Defendants, and raised the political question doctrine defense, which even Federal Defendants did not make. ECF 20. On February 2, 2016, Plaintiffs had to file a 29-page brief in opposition to Intervenor Defendants' Motion to Dismiss. ECF 56. Thereafter, on March 9, 2016, Plaintiffs had to prepare for and oppose oral arguments made by Intervenor Defendants before this Court.  On May 16, 2016, Plaintiffs opposed Intervenor Defendants' objections to this Court's Findings and Recommendations on the Motions to Dismiss. ECF 76.  Thereafter, on September 13, 2016, Plaintiffs prepared for and addressed oral argument before Judge Aiken.

In the past two months, Plaintiffs have opposed the complicated Motion to Certify filed by Intervenor Defendants, as well as Federal Defendants' motions for expedited review and stay, in which Intervenor Defendants joined. On April 3, 2017, Plaintiffs filed their opposition to Intervenor Defendants' Motion to Certify Order for Interlocutory Appeal. ECF 132. On April 4, 2017, Plaintiffs filed their opposition to Defendants' Motion to Stay. ECF 134. On May 23, 2017, Plaintiffs filed their response to objections to this Court's Findings and Recommendations on the Motion to Stay. ECF 165. On May 26, 2017, Plaintiffs opposed Intervenor Defendants' objections to this Court's Findings and Recommendations on interlocutory appeal. ECF 168.

**b.    Intervenor Defendants refused this Court's multiple requests to narrow the issues as to the allegations in the complaint admitted by Federal Defendants**

As this Court is well aware, Intervenor Defendants repeatedly resisted this Court's multiple requests to state their position on allegations admitted by Federal Defendants. This motion is the latest (and hopefully last) example of this refusal to take a position.

Intervenor Defendants were required to answer Plaintiffs' First Amended Complaint ("FAC") by November 28, 2016. Upon Intervenor Defendants' motion, this Court granted an extension of time to answer to December 15, 2016, so that Intervenor Defendants could address what they termed "complicated allegations" in Plaintiffs' FAC. ECF 87, 91. In advocating for their requested extension of time, counsel for Intervenor Defendants represented to this Court:

> This is an extraordinarily long complaint with a number of very detailed allegations going back almost over the last – well, for more than a century, and it does take some time to respond to those allegations in a thoughtful manner and to compile all the information necessary to answer them.

November 28, 2016 Status Conference Transcript, ECF 100, at 5:1-6.

Notwithstanding this representation and the resulting extension, the Answer finally filed by Intervenor Defendants claimed a lack of sufficient information or knowledge to admit or deny 198 paragraphs containing factual allegations in the FAC, in essence refusing to take a position on over 75% of Plaintiffs' factual allegations.[1] On January 13, 2017, Federal Defendants made numerous important admissions in their Answer that drastically lessened the scope of discovery. Promptly thereafter, both this Court and Plaintiffs made numerous attempts to determine the position of Intervenor Defendants on these admissions in order to determine the scope of issues for discovery and trial.

---

[1]    259 paragraphs in the FAC contain factual allegations. Intervenor Defendants admit only 47 partial or complete paragraphs. They specifically deny only 14 paragraphs. ECF 93.

[2]    At oral argument on their Motion to Intervene, counsel for Intervenor Defendants stated that while "there would be three intervenors . . . they would be speaking with one voice. . . submitting

PLAINTIFFS' RESPONSE TO INTERVENOR DEFENDANT NATIONAL              11
ASSOCIATION OF MANUFACTURERS' MOTION TO WITHDRAW

At the status conference on February 7, 2017, this Court laid out the importance of the

issue:

> To summarize, the government has admitted that, yes, climate change is a reality
> and that, yes, it's induced by human activity, and they admit that $CO_2$ right now is
> at a level of 400 parts per million, which exceeds the level – is the highest level in
> millions of years. So a number of the allegations made by the plaintiffs in their
> complaint are admitted by the government.
>
> The intervenors' answer, on the other hand – basically the mantra of the
> intervenors' answer is we don't know, and on that basis we deny. We don't know
> what's going on. We don't know if it's climate change or not. We don't know if
> it's human induced or not.
>
> So to what extent does the government's admissions control where we go in this
> case? The intervenors in your proposed schedule indicate that they don't intend to
> do any fact discovery.
>
> Does that mean, then, that the intervenors essentially are not going to contest the
> government's admissions?
>
> So are you going to ride the government's coattails, so to speak, in this litigation?
>
> Are you going to set out and attempt to controvert some of the government's
> admissions?
>
> So that's going to be a big help in terms of how we manage this discovery to find
> out what the intervenors intend to do.

ECF 115, at 14-15.

Intervenor Defendants' counsel responded in part, "it really is beside the point whether

the intervenors concede or contest the factual underpinnings of the plaintiffs' case." *Id.* at 16.

This Court continued the line of questioning: "let's just take a small example, do the intervenors

acknowledge that the CO2 levels in the atmosphere are currently at 400 PPM? Do you deny that,

or do you not know?" *Id.* at 16-17. Counsel for Intervenor Defendants responded: "I would say

that as we said in our answer, we don't know." *Id.* at 17.

As a result of agreements reached at this status conference, Plaintiffs spent substantial time developing a summary of Federal Defendants' admissions in their Answer to the FAC. On February 15, 2017, Plaintiffs provided Intervenor Defendants with both that summary and relevant core facts from their clients and their clients' members that would assist with addressing Intervenor Defendants' position on Federal Defendants' admissions. ECF 155, ¶ 2. Believing that counsel for Intervenor Defendants contravened Rule 11's requirements in their Answer by denying nearly all of Plaintiffs' factual allegations without a reasonable inquiry into the knowledge of Intervenor Defendants and their members, on February 15, 2017, Plaintiffs also served counsel for Intervenor Defendants with a draft Rule 11 motion. In the draft Rule 11 motion, Plaintiffs provided Intervenor Defendants with evidence of knowledge of each trade association, and their members, on the factual allegations of climate change, in an effort to compel Intervenor Defendants to specifically admit or deny the allegations. Decl. of Julia Olson Supporting Pls.' Resp. to NAM's Mot. to Withdraw ("Olson Decl.), ¶ 2, Exh. 1. Subsequent discussions with counsel and statements to this Court confirmed that the reason for the denials and the unwillingness of Intervenor Defendants to answer requests for admissions is based on the fact that the members of NAM are not in agreement on the factual allegations in the FAC and cannot speak with one voice on climate change. Olson Decl., ¶ 3; *see also* Olson Decl. in Support of Pls.' Opp. to Intervenor Defs.' for an Extension of Time to Respond to Pls.' RFAs, ECF 155, ¶ 9, 10; Status Conference Transcript, ECF 164, at 33; Mot. to Intervene Oral Argument Transcript, ECF 53, at 9:18-23.

As Plaintiffs stated in their March 7, 2017 Status Report:

The February 15 letter pointed out that the Intervenor Defendants claimed a "lack of sufficient knowledge to admit or deny": (1) factual allegations regarding the content of publicly available documents cited in the First Amended Complaint that can be accessed by a simple internet search; (2) factual allegations long

known by, and previously admitted by, the Intervenor Defendants and/or their members as established by the Intervenor Defendants and/or their members' own documents and records; and (3) factual allegations that could be admitted with slight alterations in the averments, as the Federal Defendants did in their answer. The February 15 letter asserted "Intervenor Defendants failed to conduct a 'reasonable and competent inquiry' in the course of preparing their answer to the First Amended Complaint in violation of Rule 11." The February 15 letter was accompanied by a draft of legal and factual arguments and exhibits constituting evidence of the Intervenor Defendants' knowledge of the factual allegations in Plaintiffs' First Amended Complaint.

In prior meet and confers regarding discovery, and in a discussion with Mr. Volpe at the courthouse on February 7, counsel for Plaintiffs stated their belief that the answer of the Intervenor Defendants regarding insufficient knowledge or information to many of the factual allegations to be incorrect given the wealth of knowledge that the Intervenor Defendants have had for decades, including their own independent scientific research, on climate change.

Despite their promise to confer further with Plaintiffs' counsel regarding these issues and their plea of ignorance about climate matters, there has been no attempt by counsel for the Intervenor-Defendants to confer on this issue since the February 7 Status Conference. <u>Plaintiffs have not received any substantive response to the February 15 letter, as well as Plaintiffs' repeated requests that the Intervenor Defendants substantively respond to the factual allegations and inform Plaintiffs' counsel if the Intervenor Defendants intend to dispute those facts, particularly those admitted by the Federal Defendants</u>.

ECF 119, at 3.

During the March 8, 2017 status conference, Intervenor Defendants complained that Plaintiffs' summary of Federal Defendants' admissions was too extensive and "not helpful." ECF 124 at 40-41. Because Intervenor Defendants continued to refuse to take a position on the allegations, Plaintiffs agreed to serve requests for admissions on Intervenor Defendants, narrowing the list of Federal Defendants' admissions. *Id*. at 43. Plaintiffs served these RFAs on March 24, 2017.

At the status conference on April 7, 2017, this Court again expressed concern about the scope of the issues for pre-trial and trial and asked when Intervenor Defendants would respond to Plaintiffs' RFAs. ECF 143, at 16. Counsel for Intervenor Defendants stated that they had until

the end of April and should be responding to that discovery "soon." This Court declared the response would "probably help us figure out how to get this case more focused." ECF 143, at 17. Counsel for Intervenor Defendants inquired why the position of Intervenor Defendants "is relevant to any issue." *Id.*

The Court explained why these responses are relevant to the case:

[I]f I were trying this case as the trial judge, I would be wondering, you know, what is your position about human-induced climate change. Is it consistent with the government? Is it contradictory to the government's position? Do you intend -- you indicate in the status report that you view the role of the intervenors to be that of offering expert testimony in the case. Expert testimony on what subject? What position are your experts going to take that's relevant to this case?

ECF 143, at 17-18.

On April 20, 2017, this Court went so far as to order Intervenor Defendants to electronically file their responses to Plaintiffs' RFAs. ECF 142.

On April 24, 2017, Intervenor Defendants sought their initial extension to respond to the RFAs. After the meet and confer on Intervenor Defendants' request for this extension, and based on agreement from counsel for Intervenor Defendants that they would come to the May 4 in-person meet and confer with "information regarding the intervenors' responses that we believe will help narrow the issues of concern to plaintiffs," Plaintiffs agreed not to contest an extension to May 15. Pls.' Opp. to Intervenor Defs.' Mot. for an Extension of Time to Respond to Pls.' RFAs, ECF 154, at 4; Olson Decl. in Support of Pls.' Opp. to Intervenor Defs.' Mot. for an Extension of Time to Respond to Pls.' RFAs, ECF 155, ¶ 4.

On May 4, 2017, at the meet and confer, Intervenor Defendants told Plaintiffs that they had reached agreement among Intervenor Defendants on the RFA responses, assured Plaintiffs that they were taking many factual issues out of dispute and narrowing the issues for trial, and committed to Plaintiffs that they would serve and file their formal responses on May 15. ECF

154, at 4; ECF 155, ¶ 5. However, while not coming to the May 4 in-person meet and confer

with any specific information or factual responses as previously represented, Intervenor

Defendants assured Plaintiffs that they would be happy with the substantial narrowing of issues

in dispute when the responses were served on May 15. ECF 154, at 4; ECF 155, ¶¶ 4, 5. Then, on

May 9, 2017, Intervenor Defendants conferred with Plaintiffs and requested a second extension

to May 31, 2017, to respond to Plaintiffs' RFAs. ECF 154, at 4; ECF 155, ¶¶ 9, 10.

On May 10, 2017, Intervenor Defendants moved for an Extension of Time to Respond to

Plaintiffs' Requests for Admissions. ECF 153. Plaintiffs opposed this motion by arguing

Intervenor Defendants had tactically avoided taking a position on the admissions made by

Federal Defendants and providing key statements omitted from Intervenor Defendants' motion:

> [O]mitted from their motion is both the fact that this is the second request for an
> extension on these RFAs and any evidence as to what happened between May 4
> and May 9 to require an extension.
>
> What is also omitted is the precise nature of the requested extension. On May 9,
> 2017, Intervenor Defendants conferred with Plaintiffs by telephone, requesting an
> extension to May 31, 2017, not June 7, 2017, to respond to Plaintiffs' RFAs.
> Olson Dec., ¶ 9. The sole reason proffered at that time was Intervenor Defendants
> no longer had consensus as to the response to the RFAs among the members of
> Intervenor Defendants. Olson Dec., ¶¶ 9, 10. The point here is that Intervenor
> Defendants' story supporting their extension request keeps shifting, as a lack of
> consensus is not mentioned in their moving papers.
>
> Another important point missing from their motion is the many efforts Intervenor
> Defendants have made to avoid taking a position on the admissions by Federal
> Defendants. The Court and Plaintiffs began attempting to get Intervenor
> Defendants to take a position on these admissions since at least the February 7,
> 2017 Status Conference. ECF 115 at 15-17.

ECF 154, at 3.

This Court extended the due date for Intervenor Defendants' responses to Plaintiffs'

RFAs to May 18, 2017. Minute Order, May 12, 2017, ECF 156. At the status conference on May

18, 2017, counsel for Intervenor Defendants made yet a third request for more time to respond to

Plaintiffs' RFAs. This third request included two new key admissions: (1) the admissions process would ***not*** narrow the case as Intervenor Defendants had been representing to Plaintiffs and the Court; and (2) Intervenor Defendants would not be able to file a consolidated response, as they had promised the Court they would do when they were granted intervention in the case.[2] Status Conference Transcript, ECF 164, at 33; Mot. to Intervene Oral Argument Transcript, ECF 53, at 9:18-23.

Ultimately, ***in lieu of responding to any of the RFAs or taking a position on any admissions made by Federal Defendants***, NAM unceremoniously filed this Motion to Withdraw. The months spent by this Court and Plaintiffs attempting to get Intervenor Defendants to take a position on the admissions proved to be a complete waste of time. The representation that Intervenor Defendants would provide information to "help narrow the issues of concern to plaintiffs" proved hollow and false.

### c.    Intervenor Defendants' refusal to respond to any discovery placed a significant burden on Plaintiffs and this Court

In addition to their efforts trying to get Intervenor Defendants to take a position on the Federal Government's admissions, Plaintiffs spent substantial time propounding requests for production of documents ("RFPs") on, and conferring on deposition notices with, Intervenor Defendants. This considerable effort was required, in part, because Intervenor Defendants failed to specifically admit or deny nearly all of the allegations in the FAC. Plaintiffs propounded one set of RFPs on API (February 17, 2017) and two sets of RFPs on all three Intervenor Defendants (March 7 and March 17, 2017). After receiving objections on the RFPs to API and one of the

---

[2]    At oral argument on their Motion to Intervene, counsel for Intervenor Defendants stated that while "there would be three intervenors . . . they would be speaking with one voice. . . submitting joint submissions in all circumstances in this case operating essentially as one intervenor." Mot. to Intervene Oral Argument Transcript, ECF 53, at 9:18-23.

RFPs to all Intervenors, and after an all-day meet and confer in Portland on May 4, 2017, Plaintiffs spent an extensive amount of time revising and narrowing the two sets of RFPs to address objections raised by Intervenor Defendants. Those two sets of revised RFPs, one to API and one to all Intervenor Defendants, were served on May 19, 2017. By virtue of this Motion to Withdraw, over three months after service of the initial RFPs, Intervenor Defendants take the position that they do not have to respond to a single RFP or provide any witnesses for deposition. The RFP and deposition process is another example of a complete waste of time and resources on the part of this Court and Plaintiffs.

## ARGUMENT

While Plaintiffs do not oppose NAM's withdrawal from the case if it is conditional, such withdrawal must recognize the excessive delay and distraction caused by NAM's participation in the case.  Plaintiffs expended considerable resources addressing issues raised by NAM, at the Motion to Dismiss, status conference, and discovery stages.  Further, this Court expended substantial judicial resources in tackling matters presented by NAM's participation in this case as a party defendant. As a result, the order permitting NAM's withdrawal should include provisions addressing the prejudice suffered by this Court and Plaintiffs, as well as anticipate future procedural maneuvers NAM and its members may present in this litigation.

I.    **NAM seeks to avoid its obligations as a party in the case and must provide a justification to the Court in support of its desire to withdraw**

NAM provides no reason for this Court to allow for withdrawal. Instead, NAM suggests, with more chutzpah than legal authority, that "an intervening party may decide that it no longer wishes to pursue *currently* the particular interests and rights that led to intervention in a particular case." NAM Mot. to Withdraw, ECF 163, at 3 (emphasis added). While permitting

withdrawal, this Court should not countenance NAM's cavalier position on what it means to choose to intervene as a party in litigation.

While NAM fails to state a reason for its withdrawal, the rationale is obvious: in light of the timing of the motions to withdraw and statements made by counsel for Intervenor Defendants to this Court, NAM is seeking to withdraw to avoid its obligations as a full party in the case, both to answer the FAC and respond to discovery requests in a manner that meets the requirements of Rule 11.

Just as parties are required to demonstrate why intervention is proper pursuant to Federal Rule of Civil Procedure 24, intervening defendants seeking to withdraw should similarly be required to justify such withdrawal. Indeed, NAM supported its motion to intervene with an extensive 19-page memorandum, ECF 15, as well as an expert declaration. Moutray Decl., ECF 16. Yet, after months of causing delay and distraction, NAM now seeks to leave this case without any evidentiary basis, relying solely on a brief of less than 3 pages. ECF 163. Further, NAM fails to suggest that it should bear any consequences for its aborted participation in this case. Allowing withdrawal without any consequences based on this minuscule record would set bad precedent, tolerating well-resourced third parties to come in and out of litigation, burdening plaintiffs and the court with efforts to thwart or delay litigation involving fundamental constitutional rights.

## II.    Intervenor Defendants' withdrawal should be conditioned in a manner that does not prejudice Plaintiffs

Plaintiffs would experience extreme prejudice if NAM was allowed to withdraw without any conditions, particularly given there is no commitment that NAM or any of its members will not attempt to re-enter the case or file a writ of mandamus to the Ninth Circuit and the Supreme

Court as a non-party.[3] NAM argues that both the decisions to intervene and withdraw from the case are within its sole discretion. NAM analogizes to a plaintiff dismissing a case: "just as a plaintiff has the right to decide she no longer wishes to pursue a particular claim filed in a particular case, an intervening party may decide that it no longer wishes to pursue currently the particular interests and rights that led to intervention in a particular case." NAM Mot. to Withdraw, ECF 163, at 3. However, none of the cases NAM cites in its motion supports this proposition. Further, as this Court well knows, a plaintiff cannot unilaterally dismiss its case after a certain point without consequences. Voluntary dismissal of actions by plaintiffs is governed by Federal Rule 41(a). Under Rule 41(a)(2), "[e]xcept as provided in Rule 41(a)(1),[4] an action may be dismissed at the plaintiff's request only by court order, *on terms that the court considers proper*. . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Fed. R. Civ. P. 41(a)(2) (emphasis added). Thus, per the plain meaning of the Rule, voluntary dismissal of actions by plaintiffs through court order is subject to terms set by the court.

In fact, NAM's analogy supports Plaintiffs' argument that this Court has the discretion to decide whether NAM's withdrawal should be with prejudice and to place terms and conditions on NAM's withdrawal, including, but not limited to, payment of Plaintiffs' attorneys' fees and

---

[3]    Intervenor Defendants' counsel told Plaintiffs previously they would seek writ of mandamus if this Court did not certify the decision on the motions to dismiss for interlocutory appeal. Olson Decl. in Support of Pls.' Opp. to Intervenor Defs.' for an Extension of Time to Respond to Pls.' RFAs, ECF 155, ¶ 7. It would be particularly egregious for NAM to be allowed to withdraw from this case and avoid discovery and this court's jurisdiction and then move the appellate courts for a writ of mandamus over this very same matter. Such gaming the system should be disallowed.

[4]    Under Rule 41(a)(1), a plaintiff may without court order dismiss an action by filing "notice of dismissal before the opposing party serves either an answer or a motion for summary judgment" or by stipulation. Fed. R. Civ. P. 41(a)(1). This provision is not analogous to NAM's effort to withdraw because answers have been filed.

PLAINTIFFS' RESPONSE TO INTERVENOR DEFENDANT NATIONAL                    20
ASSOCIATION OF MANUFACTURERS' MOTION TO WITHDRAW

costs, and an order conditioning future participation in this litigation by NAM and its members. Assuming the validity of NAM's analogy between its request to withdraw and the voluntary dismissal of an action by a plaintiff, this Court should likewise grant NAM's motion to withdraw only on terms that are "proper."

a.      **NAM's withdraw from the case should be with prejudice**

Under Rule 41, the issue of whether to dismiss an action with or without prejudice is within this Court's discretion. *See Williams*, 227 F.R.D. at 539–40 (citing *Hargis v. Foster*, 282 F.3d 1154 (9th Cir. 2002), *amended by* 312 F.3d 404, 406 (9th Cir. 2002)). This position is derived from Rule 41(a)(2)'s "on terms that the court considers proper" language. *See Burnette v. Godshall*, 828 F.Supp. 1439, 1443 (N.D.Cal.1993), *aff'd sub nom., Burnette v. Lockheed Missiles & Space Co.*, 72 F.3d 766 (9th Cir.1995); *Hargis v. Foster*, 312 F.3d 404, 412 (9th Cir. 2002).

To determine whether an action should be dismissed with prejudice, the court asks whether "it would be inequitable or prejudicial to defendant to allow plaintiff to refile the action." *Hemstreet v. Duncan*, No. CIV. 07-732-ST, 2008 WL 2167137, at *2 (D. Or. May 21, 2008) (quoting *Burnette*, 828 F.Supp at 1443). Here, this Court should ask whether allowing NAM and its members the ability to later participate in this action, by again seeking party status, by filing writs of mandamus, or by participating as *amicus curiae*, would prejudice Plaintiffs and frustrate judicial economy and justice. The obvious answer is the later participation in this case by NAM and its members would by inequitable and prejudicial to Plaintiffs and, as with their earlier participation in this case, continue to frustrate judicial economy and justice.

Equity demands that NAM's withdrawal be with prejudice where NAM repeatedly lost its motions for dismissal, filed a wholly inadequate Answer, gave lip service to the discovery process, and then waited until it was faced with admitting key facts of the case, which would

assist Plaintiffs in obtaining a successful ruling on the merits, before seeking to withdraw. *See Brooks v. State Bd. of Elections*, 173 F.R.D. 547, 549-50 (S.D. Ga. 1997) (equity requires dismissal with prejudice "where the plaintiff waited until the defendant is on the verge of triumph to move for a Rule 41(a)(2) dismissal.").

The factors this Court should consider are those considered when a plaintiff seeks to dismiss a case: "(1) the defendant's effort and expense in preparing for trial, (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, [and] (3) insufficient explanation of the need to take a dismissal." *Hemstreet v. Duncan*, No. CIV. 07-732-ST, 2008 WL 2167137, at *2 (D. Or. May 21, 2008) (quoting *Williams*, 227 F.R.D. at 540). "Another significant factor to consider is the extent to which any prejudice to defendant can be mitigated by the imposition of conditions." *Id.*

As described above, Plaintiffs have expended significant time and resources in responding to NAM's motions and objections in this case and in their efforts to expeditiously prepare for trial against NAM, when NAM refused to take any position on the core facts of this case. NAM also sought to delay this case, stay this case, and frustrate Plaintiffs' discovery attempts, all of which demonstrated a lack of diligence in moving the case forward to resolution. Further, in its motion to withdraw, NAM fails to explain its need to withdraw from the case, and should be required to go on record with its explanation.

In order to intervene, NAM was required to establish this case could result in factual or legal determinations that would have a *stare decisis* effect on the interest or available remedies of NAM and its members in other litigation. *United States v. Oregon*, 839 F.2d 635, 638-39 (9th Cir. 1988); *Greene v. United States*, 996 F.2d 973, 977-78 (9th Cir. 1993). Because NAM represented that it had made this showing on behalf of itself and its members, should this Court

allow NAM to withdraw from this case, such withdrawal should be with prejudice, both for NAM and each of NAM's members. *See* Olson Decl. ¶ 4, Exh. 2 (listing NAM members represented on the NAM Board of Directors).[5]  Further, because NAM has withdrawn after motion practiced commenced, the legal determinations made to date should have a *stare decisis* effect on NAM's interest or available remedies in other litigation. Beyond dismissing actions with prejudice, trial courts have conditioned dismissals without prejudice on a plaintiff's agreement to enter covenant to not sue in the future. *See Goldlawr, Inc. v. Shubert*, 32 F.R.D. 467 (S.D.N.Y 1962); *Radian Asset Assur., Inc. v. College of the Christian Bros. of New Mexico*, 274 F.R.D. 683 (D.N.M. 2011); *United States v. Outboard Marine Corp.*, 789 F2d 497 (7th Cir.1986). Without such preclusive effect, there is no telling when or how NAM or its members will again seek to helicopter into this case.

Withdrawal with prejudice is one of the penalties that NAM and its members should bear. There must be consequences as a result of NAM's repeated unwillingness to take a position on the factual allegations in the FAC, both in its Answer and in its discovery responses. For example, despite being granted an extension of time "to canvas the appropriate personnel to directly answer the allegations in the complaint,"[6] NAM's Answer frivolously repeated the refrain of lack of sufficient information or knowledge to admit or deny many allegations of fact that: (1) are based on federal government statements in publicly available documents easily uncovered by a simple Google search; (2) have been long known, and previously admitted, by NAM and/or its members; and (3) could be admitted with slight alterations in the averments, as Federal Defendants did in their answer. The repetitious, baseless assertions of "lack of sufficient

---

[5]    NAM should be required to disclose its members to the Court.

[6]    November 28, 2016 Case Management Conference Transcript, ECF 100, at 7:12-23.

information and knowledge" in response to the FAC's allegations are but one example of how NAM wasted the valuable time and resources of this Court and Plaintiffs, particularly given the underlying urgency of the issues raised in this case.

Under Rule 11, counsel must "certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393 (1990). A "reasonable inquiry" conducted by Intervenor Defendants' counsel would have revealed that NAM and many of its members, on whose behalf NAM intervened,[7] possess sufficient knowledge to respond to portions of the factual allegations in Plaintiffs' FAC. NAM has been aware of the prevailing science on climate change for over 20 years and has had knowledge of the issues presented in admissions by Federal Defendants as evidenced through NAM's own activities and the activities of organizations like the Global Climate Coalition, of which NAM was a founding member.

NAM's Board of Directors consists of many high-ranking officers and representatives of NAM's members. Accordingly, documents, records, and other information in the possession of, accessible to, and within the knowledge of NAM's members should be attributable to NAM and accessible to NAM by reasonable inquiry. As discussed below, documents and records of NAM's members contain ample information about the FAC's allegations regarding the realities of climate change. The existence of these documents, their ready availability, and the imputation to NAM of the knowledge they reflect establishes that NAM failed to conduct a reasonable inquiry with respect to its Answer to the FAC.

---

[7]    *See* Intervenor Defs.' Mot. to Intervene, ECF 14, at 3 ("[i]f Plaintiffs succeed, each of the Proposed Intervenor Defendants' *members* will be harmed in various ways.") (emphasis added); *see also* Memo. in Support of Mot. to Intervene, ECF 15, at 11-15 (Arguing relief sought by Plaintiffs will harm Intervenor Defendants' members).

PLAINTIFFS' RESPONSE TO INTERVENOR DEFENDANT NATIONAL                    24
ASSOCIATION OF MANUFACTURERS' MOTION TO WITHDRAW

NAM, through its member companies and Board of Directors, has substantial knowledge of the facts underlying Plaintiffs' factual allegations. Of concern, many of the members of NAM maintain corporate positions on climate change that are sharply at odds with the Answer filed by NAM. Counsel for Intervenor Defendants either ignored these positions or failed to conduct a reasonable inquiry into the knowledge and information of at least the following NAM members represented on the NAM Board of Directors.

ExxonMobil Corporation, a NAM member with a representative on the Executive Committee of NAM's Board of Directors,[8] possesses substantial knowledge of the facts underlying Plaintiffs' allegations. For example, on November 12, 1982, M. B. Glaser, Exxon's Manager of Environmental Affairs Programs, distributed extensive briefing material on the $CO_2$ Greenhouse Effect to Exxon management. The materials included Table 4[9] (*infra*), which demonstrates a sophisticated understanding of how continued global emissions incrementally lead to persistent increases in atmospheric $CO_2$ concentrations and average temperature increases.

---

[8]    *See Board of Directors*, National Association of Manufacturers, http://www.nam.org/About/Board-of-Directors/ (last visited June 2, 2017).

[9]    M. B. Glaser, *CO$_2$ "Greenhouse" Effect*, Exxon Research and Engineering Company (Nov. 12, 1982), available at https://insideclimatenews.org/sites/default/files/documents/1982%20Exxon%20Primer%20on%20CO2%20Greenhouse%20Effect.pdf.

PLAINTIFFS' RESPONSE TO INTERVENOR DEFENDANT NATIONAL    25
ASSOCIATION OF MANUFACTURERS' MOTION TO WITHDRAW

TABLE 4

ESTIMATED ATMOSPHERIC $CO_2$ CONCENTRATION AND
AVERAGE TEMPERATURE INCREASE
21st CENTURY STUDY--HIGH CASE

| Year | Emitted, GtC | | Stored in Atmosphere, GtC | | Atmospheric Concentration, ppm | | Average Temperature Increase, °C |
|---|---|---|---|---|---|---|---|
| | Incremental | Cummulative | Incremental | Cummulative | Incremental | Cummulative | |
| 1979 | -- | -- | -- | 715 | -- | 337 | 0 |
| 1990 | 69.3 | 69.3 | 37.1 | 752 | 17.5 | 355 | 0.22 |
| 2000 | 77.2 | 146.5 | 41.3 | 793 | 19.5 | 374 | 0.45 |
| 2015 | 137.5 | 284.0 | 73.6 | 867 | 34.7 | 409 | 0.84 |
| 2030 | 163.3 | 447.3 | 87.4 | 954 | 41.2 | 450 | 1.25 |
| 2050 | 263.5 | 710.8 | 141.0 | 1095 | 66.5 | 516 | 1.84 |
| 2080 | 490.6 | 1201.4 | 262.5 | 1358 | 123.7 | 640 | 2.78 |
| 2090 | 191.3 | 1392.7 | 102.3 | 1160 | 48.2 | 688 | 3.09 |

Intel Corporation, a NAM member with a representative on the NAM Board of

Directors,[10] stated in 2015 that:

> In the absence of significant decreases in emissions, the planet is likely to warm
> more than 2 degrees C above pre-industrial temperatures during the 21st Century,
> and could warm by more than 4 degrees C. This level of warming is likely to be
> accompanied by significant sea level rise, as well as impacts to water resources,
> ecosystems, and human health. Although uncertainty surrounds how climate
> change may affect some types of extreme weather events, there is a high degree of
> certainty that heat waves have and will continue to increase in frequency and
> severity, and that heavy precipitation events will be more frequent in many
> regions.[11]

BP America, Inc. is a NAM member with a representative on the NAM Board of

Directors.[12] Its parent company, BP p.l.c., "recognizes that the existing trend of increasing

---

[10]   *See Board of Directors*, National Association of Manufacturers,
http://www.nam.org/About/Board-of-Directors/ (last visited June 2, 2017).

[11]   Intel Corporation, *Global Climate Change Policy Statement* 4 (2015),
http://www.intel.com/content/www/us/en/corporate-responsibility/environment-climate-change-policy-harper.html?wapkw=climate+change.

PLAINTIFFS' RESPONSE TO INTERVENOR DEFENDANT NATIONAL                    26
ASSOCIATION OF MANUFACTURERS' MOTION TO WITHDRAW

greenhouse gas emissions worldwide is not consistent with limiting the global average temperature rise to 2°C or lower."[13]

Ford Motor Company, a NAM member represented on NAM's Board,[14] stated "[t]he increase in atmospheric concentrations of these greenhouse gases (GHGs) is primarily caused by burning fossil fuels …" and climate stabilization "can only be achieved by significantly and continuously reducing GHG emissions over a period of decades in all sectors of the economy as well as across the globe."[15]

NAM sought to try to frustrate Plaintiffs' attempts to secure their constitutional rights, without ever having to go on record about either the science of climate change or the role of NAM and its members in working with Federal Defendants to perpetuate the climate crisis. For all of these reasons, NAM's withdrawal should be with prejudice, precluding NAM and its members from any participation in this case going forward.

**b.    In addition to making NAM's withdrawal with prejudice, this Court should place other terms and conditions on NAM's withdrawal from this case**

Just as "approval of a motion to dismiss under Rule 41(a)(2) lies within the sound discretion of this court, and includes weighing all relevant equities," so too does the court's approval of a motion to withdraw. *See N.W. Envtl. Def. Ctr. v. Allen*, CIV. 05-1279-AA, 2007 WL 1746333, at *4 (D. Or. June 13, 2007) (Aiken, J) (internal quotations omitted) (discussing

---

[12]    *See Board of Directors*, National Association of Manufacturers, http://www.nam.org/About/Board-of-Directors/ (last visited June 2, 2017).
[13]    BP, *The energy challenge and climate change: BP Sustainability Report 2015* at 2, http://www.bp.com/content/dam/bp/pdf/about-bp/energy-challenge-climate-change.pdf.

[14]    *See Board of Directors*, National Association of Manufacturers, http://www.nam.org/About/Board-of-Directors/ (last visited June 2, 2017).

[15]    Ford Motor Company, *Climate Change* (2015), https://corporate.ford.com/microsites/sustainability-report-2014-15/environment-climate.html.

dismissing an action "with conditions"). "[T]he district court must weigh the relevant equities

and do justice between the parties in each case, imposing such costs and attaching such

conditions to the dismissal as are deemed appropriate." *Burnette v. Godshall*, 828 F.Supp. 1439,

1443–44 (N.D. Cal. 1993), *aff'd sub nom. Burnette v. Lockheed Missiles & Space Co., Inc.,* 72

F.3d 766 (9th Cir. 1995).  As one court stated in response to a plaintiff's request to dismiss a

case:

> this plaintiff has engaged in extensive maneuvering to maintain in this court the
> very actions it now wishes to discontinue. The argument plaintiff has presented
> throughout this maneuvering is that dismissal of these actions would cause it
> serious hardship because the causes sued upon would then be barred by the statute
> of limitations. . . In view of these facts, it seems appropriate to provide that
> plaintiff bear reasonable costs and counsel fees for the extensive litigation to
> which defendants have been subjected.

*Goldlawr, Inc. v. Shubert*, 32 F.R.D. 467, 470 (S.D.N.Y. 1962).

### i.    This Court has the inherent power to order an award of attorneys' fees to Plaintiffs given Intervenor Defendants' conduct in this case

As a condition of its withdrawal at this late stage in the litigation, Plaintiffs respectfully

request this Court award reasonable attorneys' fees directly incurred by Plaintiffs as a result of

NAM's bad faith litigation tactics under the common-law exceptions to the American Rule that

permit an award of attorneys' fees in this situation. The Supreme Court has recently clarified that

federal courts have inherent authority to sanction litigants for "bad-faith conduct by ordering it to

pay the other side's legal fees. . . . A district court has broad discretion to calculate fee awards

under the standard," which limits fees to those "incurred solely because of the misconduct."

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1183–84 (2017). Alternatively,

Plaintiffs respectfully reserve their right to seek fees against NAM at the close of the litigation

for such tactics if Plaintiffs prevail on the merits.[16] Such an award is in the interests of justice

and is necessary to promote the interests of fairness. Such an order would address the attorneys'

fees that Plaintiffs incurred solely because of NAM's improper participation in this case and

would be compensatory, rather than punitive. *See Goodyear Tire & Rubber Co. v. Haeger*, 137

S. Ct. 1178, 1186 (2017) (quoting *Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994))

(approving of fee awards which redress the wronged party "for losses sustained"). Having

chosen to intervene over the objections of Plaintiffs and taken positions that have prolonged and

delayed this litigation, it is inappropriate for NAM to withdraw and remove itself from liability

for attorneys' fees to which Plaintiffs are entitled, either now or at the close of this litigation.

"An award of fees to the prevailing party is proper if (1) authorized by statute or, (2) the

court finds that the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive

reasons." *Beaudry Motor Co. v. Abko Properties, Inc.*, 780 F.2d 751, 756 (9th Cir. 1986); *see

also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975). The United

States Supreme Court has determined the American Rule governing the award of attorneys' fees:

> ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or
> contractual authorization [however] federal courts, in the exercise of their
> equitable powers, may award attorneys' fees when the interests of justice so
> require. Indeed, the power to award such fees "is part of the original authority of
> the chancellor to do equity in a particular situation," and federal courts do not
> hesitate to exercise this inherent equitable power whenever "overriding
> considerations indicate the need for such a recovery."

*Hall v. Cole*, 412 U.S. 1, 4–5 (1973) (citations omitted).

"In exceptional cases, the but-for standard even permits a trial court to shift all of a

party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Goodyear Tire*

---

[16]    If this Court determines that attorneys' fees attributable to NAM's participation in this case
and subsequent withdrawal are warranted, Plaintiffs will file a separate motion for attorneys'
fees, with supporting declarations, at the time and in the manner designated by this Court.

& *Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017). An award of attorneys' fees under the "bad faith exception" to the American Rule applied in the Ninth Circuit should be imposed here because this is an "exceptional" situation and is required "for dominating reasons of justice.'" *Beaudry Motor Co.*, 780 F.2d at 756. (quoting *United States v. Standard Oil Co.*, 603 F.2d 100, 103 (9th Cir. 1979); *see Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. at 1188 (noting an award for "brazenly unethical efforts"). The fees incurred by the plaintiffs in this case "would not have been incurred except for the misconduct." *Goodyear Tire*, 137 S. Ct. at 1188. "[I]f a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party, as it may when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order . . . .'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (citations and quotations omitted). "Mere recklessness does not alone constitute bad faith; rather, an award of attorney's fees is justified when reckless conduct is 'combined with an additional factor such as frivolousness, harassment, or an improper purpose.'" *Rodriguez v. U.S.*, 542 F.3d 704, 709 (9th Cir. 2008). "It is clear that bad faith supporting an award of attorneys' fees may be found in conduct … occurring during the course of the action." *Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir. 1983). This Court has the "inherent equitable power" to award attorneys' fees to Plaintiffs in this case in light of NAM's motion to withdraw on the eve of being court-ordered to respond to Plaintiffs' outstanding discovery, including requests for admissions, requests for production, and depositions. *Beaudry Motor Co.*, 780 F.2d at 756.

Further, in deciding whether to award costs to Plaintiffs, this Court should consider the excessive and duplicative expenses incurred as a result of NAM's participation in this litigation.

*See Santa Rosa Meml. Hosp. v. Kent*, 15-16650, 2017 WL 1488263, at *2 (9th Cir. Apr. 26, 2017) (quoting *Williams v. Peralta Community College Dist.*, 227 F.R.D. 538, 539–40 (N.D. Cal. 2005)). Those costs incurred for the preparation of work product rendered useless by the dismissal should be awarded as a condition of voluntary dismissal. *See Briles v. Loomis Group, Inc.*, CIV. 08-1290-AA, 2009 WL 563048, at *1 (D. Or. Mar. 3, 2009) (Aiken, J) (quoting *Koch v. Hankins*, 8 F.3d 650, 652 (9th Cir.1993)).

 As detailed above, NAM's conduct in this litigation justifies a finding of bad faith. Its decision to withdraw, nearly two years after it moved to intervene over the objections of Plaintiffs and three days before its required response to crucial discovery, suggests that NAM's intervention in this case was solely for the purpose of harassment and delay. NAM's intransigent inability to faithfully fulfill routine obligations of a party in litigation demonstrates disrespect for this Court's time and resources, and illuminates that NAM's participation in this case has been in bad faith.

   **ii.**   **This Court has the power to preclude NAM and its members from attempting to further litigate the claims in this case**

 As a condition of its withdrawal at this late stage in the litigation, Plaintiffs respectfully request this Court preclude NAM and its members from litigating the claims in this case. The general rule is, because nonparties have not had a "full and fair opportunity to litigate" claims and issues in a case, such nonparties should not be precluded from litigating claims raised in prior suits. *See Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008); *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996). In this case, however, NAM, on behalf of itself and its members, has had a "full and fair opportunity to litigate," and has chosen to withdraw by its own accord.

 There are six exceptions to the general rule against nonparty preclusion, three of which would apply to NAM and its members should it seek to relitigate these claims. The Supreme

Court clarifies in *Taylor v. Sturgell* that nonparties can be bound: (1) by agreement, (2) through privity with a party to the lawsuit, (3) through adequate representation by a party to the lawsuit, (4) by control over the litigation, (5) against relitigating through a proxy, and (6) through a statutory scheme. 553 U.S. at 893-95. In this case, exceptions (3), (4), and (5) apply directly.

First, this Court should bind NAM and its members to the results of this litigation because NAM and its members are "adequately represented by someone with the same interests who was a party to the suit." *Taylor*, 553 U.S. at 894 (citation omitted) (internal quotation marks omitted); *see Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1053 (9th Cir. 2005). In NAM's motion to intervene, NAM argued that it was entitled to intervene as of right under Rule 24(a) because the interests of NAM's members were not adequately protected by Federal Defendants. This Court granted intervention, and NAM had full opportunity to adequately represent its interests and the interests of its members. Moreover, NAM has allegedly made public statements since filing its motion to withdraw, that its interests are adequately protected by Federal Defendants, essentially admitting that NAM no longer meets the inadequate representation requirement of Rule 24(a). *See* Olson Decl. ¶¶ 6-7, Exh. 4-5.

Second, this Court should bind NAM to the results of this litigation because NAM, through its intervention in the case, "assumed control" over this litigation. *Taylor*, 553 U.S. at 895; *see Montana v. United States*, 440 U.S. 147, 154 (1979). NAM and its members have had "the opportunity to present proofs and argument, and have, therefore, had their "day in court." 1 Restatement (Second) of Judgments § 39, Comment a, at 382 (1980); *Taylor*, 553 U.S. at 895.

Third, this Court should bind NAM and its members to the results of this litigation because NAM has brought suit in this case "as the designated representative" of numerous potential litigants. If NAM and its members are not bound by the judgment in this case, the

results—relitigation through NAM or its members—would run amok of the fifth exception to the presumption against nonparty preclusion by allowing relitigation through proxies. *See Taylor*, 553 U.S. 895; *Chicago, R.I. & P.R. Co. v. Schendel*, 270 U.S. 611, 620, 623 (1926); 18A Charles Alan Wright et al., Federal Practice and Procedure § 4454 (2d ed. 2017).

Precluding NAM and its members from relitigating these claims in a future lawsuit "protects [its] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. at 153–54. In this case, Plaintiffs, as NAM's adversaries, have already dealt with the vexatious expense accompanying NAM's participation in this case, such as responding to and defending against NAM's motion to dismiss and preparing discovery against NAM due to NAM's refusal to take a position in its Answer. Moreover, NAM has already acted in a manner that wastes judicial resources, changing its position on timing, whether it could respond in a joint manner with the other Intervenor Defendants, and failing to take a position on climate science despite readily available data and statements previously made by NAM and its members. Furthermore, precluding the future participation in this case or other litigation with the same claims by NAM and its members fulfills the goals of the presumption against nonparty preclusion: here, NAM indeed has a "full and fair opportunity to litigate" and is instead moving to withdraw on the verge of meaningful discovery. Cf. *Taylor*, 553 U.S. 892.

## CONCLUSION

NAM should never have chosen to intervene in this case. Once it intervened, NAM should not have employed the numerous frivolous techniques that resulted in substantial delay and disruption of this litigation. NAM should be allowed to withdraw, ***with conditions***. An order

permitting withdrawal should recognize Plaintiffs' investment of considerable resources in addressing issues raised by NAM, and the apparent squandering of judicial resources as a result of NAM's participation. In permitting NAM to withdraw, this Court should order the following:

a.  NAM's withdrawal should be with prejudice, finding that NAM no longer meets the requirements of FRCP 24;

b.  NAM should be required to pay attorneys' fees and costs of counsel for Plaintiffs that are attributed to NAM's participation in this case;

c.  Because NAM has withdrawn after motion practiced commenced, the legal determinations made to date should have a *stare decisis* effect on NAM's interest or available remedies in other litigation. *United States v. Oregon*, 839 F.2d 635, 638-39 (9th Cir. 1988); *Greene v. United States*, 996 F.2d 973, 977-78 (9th Cir. 1993); and

d.  NAM and its members should be precluded from participating in this case as parties. As a result, NAM should file with this Court a list of its members, both at the time NAM moved to intervene and at the time NAM moved to withdraw.  Both NAM and each of these members should be precluded from making any future filings in this case absent leave of this Court, which leave should only be granted if NAM or such member presents evidence as to its role, if any, in the decision to intervene, the decision to admit or deny allegations in the FAC, the various decisions to respond to discovery, and the decision to withdraw. Further, any future filing by NAM or its members should be limited to *amicus curiae* participation if the foregoing conditions are met.

DATED this 5th day of June, 2017, at Eugene, Oregon.

Respectfully submitted,

/s/   *Julia A. Olson*

JULIA OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
**WILD EARTH ADVOCATES**
1216 Lincoln St.
Eugene, OR 97401
Tel: (415) 786-4825

PHILIP L. GREGORY (*pro hac vice*)
pgregory@cpmlegal.com
**COTCHET, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577

DANIEL M. GALPERN (OR Bar 061950)
dan.galpern@gmail.com
**LAW OFFICES OF DANIEL M. GALPERN**
2495 Hilyard Street, Suite A
Eugene, OR 97405
Tel: (541) 968-7164

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the Supporting Memorandum complies with the

applicable word-count limitation under LR 7-2(b) because it contains 29 pages and 9,259 words,

including headings, footnotes, and quotations, but excluding the caption, table of contents, table

of cases and authorities, signature block, exhibits, and any certificates of counsel.

/s/     Julia A. Olson
JULIA OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
**WILD EARTH ADVOCATES**
1216 Lincoln St.
Eugene, OR 97401
Tel: (415) 786-4825