Case No. 17-_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

In re: UNITED STATES OF AMERICA.

UNITED STATES OF AMERICA, et al.
Petitioners,

v.

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF OREGON
Respondent,

and

KELSEY CASCADIA ROSE JULIANA, *et al.*,
Real Parties in Interest.

On Petition For A Writ Of Mandamus In
Case No. 6:15-cv-01517-TC-AA (D. Or.)

## PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON AND REQUEST FOR STAY OF PROCEEDINGS IN DISTRICT COURT

JEFFREY H. WOOD
Acting Assistant Attorney General

ERIC GRANT
Deputy Assistant Attorney General

ANDREW C. MERGEN
DAVID C. SHILTON
Appellate Section
Environment & Natural Res. Div.
U.S. Department of Justice
P.O. Box 7415
Washington, DC 20044
(202) 514-5580

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION AND RELIEF SOUGHT ....................................................1

STATEMENT OF JURISDICTION ...............................................................3

STATEMENT OF THE ISSUE ......................................................................3

STATEMENT OF RELEVANT FACTS.........................................................3

STANDARD OF REVIEW ............................................................................8

REASON FOR GRANTING THE WRIT ....................................................10

    I.    The district court's  order denying the motion to dismiss is based on clear error ...................................................................................10

        A.    The district court clearly erred by finding that plaintiffs adequately alleged standing based on vague and attenuated allegations of injury, causation and redressability ...................................................11

            1.    Plaintiffs did not allege a cognizable injury that is particularized and concrete ....................................................13

            2.    Plaintiffs failed to adequately allege causation ....................15

            3.    Plaintiffs failed to adequately allege redressability..............19

        B.    The district court clearly erred by allowing plaintiffs to proceed on their claim of a fundamental right under the due process clause ...................................................................................21

            1.    There is no basis in law for a due process right to a particular climate system ........................................................22

            2.    Plaintiffs failed to identify any cause of action for their claims...............................................................................26

C.    The district court clearly erred in holding that plaintiffs stated on actionable "public trust" claim against the federal government ...28

II.    Mandamus is warranted to confine the district court to the lawful exercise of its jurisdiction ..............................................................31

III.    Defendants have no other means of obtaining immediate review needed to avoid a serious intrusion on the separation of powers, and without action by this court the defendants will be prejudiced in a way not correctable on appeal.......................................................................32

IV.    The order raises new and important problems and issues of first impression ........................................................................................37

V.    A stay of proceedings is warranted ...............................................38

CONCLUSION ......................................................................................................40

STATEMENT OF RELATED CASES

CERTIFICATE REGARDING COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES:

*Alec L. v. Jackson,*
863 F. Supp. 2d 11 (D.D.C. 2012), *aff'd, Alec L. ex rel. Loorz v. McCarthy,* 561 Fed. App'x (Mem.) (D.C. Cir. 2014), *cert. denied,* 135 S. Ct. 774 (2014) ............................................................................................................28-30

*Allen v. Wright,*
468 U.S. 737 (1984), *abrogated in non-relevant part by Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377 (2014) .............................. 11, 12, 15, 16, 19

*American Electric Power Company v. Connecticut,*
564 U.S. 410 (2011) .................................................................................................29

*Bauman v. U.S. District Court,*
557 F.2d 650 (9th Cir. 1977) ......................................................................2, 4, 8, 9, 38

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................................22

*Bush v. Lucas,*
462 U.S. 367 (1983) .................................................................................................27

*Carlson v. Green,*
446 U.S. 14 (1980) ...................................................................................................26

*Cheney v. U.S. Dist. Ct.,*
542 U.S. 367 (2004) ...................................................................................9, 10, 34, 35

*Christensen v. U.S. District Court for Central District of California,*
844 F.2d 694 (9th Cir. 1988) ......................................................................................9

*Clapper v. Amnesty Int'l USA,*
133 S. Ct. 1138 (2013) .............................................................................................12

*Clinton v. Jones,*
520 U.S. 681 (1997) .................................................................................................21

iv

*Collin s v. Harker Heights,*
        503 U.S. 115 (1992) .................................................................................24

*Consol. Gas Supply Corp. v. Fed. Energy Regulatory Comm'n,*
        611 F.2d 951 (4th Cir. 1979) .......................................................................4

*Credit Suisse v. United States District Court for the Central District of California,*
        130 F.3d 1342 (9th Cir. 1997) ........................................................... 32, 33

*Cty. of Sacramento v. Lewis,*
        523 U.S. 833 (1998) .................................................................................26

*Davis v. Passman,*
        442 U.S. 228 (1979) ........................................................................... 26, 27

*Ex Parte Peru,*
        318 U.S. 578 (1943) .................................................................................10

*Flast v. Cohen,*
        392 U.S. 83 (1968) ...................................................................................13

*Franklin v. Massachusetts,*
        505 U.S. 788 (1992) .................................................................................21

*Gasper v. La. Stadium & Exposition Dist.,*
        418 F. Supp. 716 (E.D. La. 1976), *aff'd,* 577 F.2d 897 (5th Cir. 1978) ...............23

*Hilton v. Braunskill,*
        481 U.S. 770 (1987) .................................................................................38

*In re Cement Antitrust Litig.,*
        688 F.2d 1297 (9th Cir. 1982) ............................................................. 9, 31

*In re Cheney,*
        406 F.3d 723 (D.C. Cir. 2005) ....................................................................35

*LaBuy v. Howes Leather Co.,*
        352 U.S. 249 (1957) ............................................................................ 9, 31

*Laird v. Tatum,*
        408 U.S. 1 (1972)......................................................................................13

*Leiva-Perez v. Holder,*
    640 F.3d 962 (9th Cir. 2011) ....................................................................38

*Lewis v. Casey,*
    518 U.S. 343 (1996) .......................................................................... 17, 19

*Lombardi v. Whitman,*
    485 F.3d 73 (2d Cir. 2007) .....................................................................26

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871 (1990) ................................................................................27

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ......................................................................13, 16-19

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ........................................................... 14, 15, 19, 28

*Medhekar v. U.S. Dist. Court for the N. Dist. of California,*
    99 F.3d 325 (9th Cir. 1996) ....................................................................33

*Michael H. v. Gerald D.,*
    491 U.S. 110 (1989) ................................................................................23

*Mississippi v. Johnson,*
    71 U.S. (4 Wall.) 475 (1867) ..................................................................20

*Nat'l Sea Clammers Ass'n v. City of New York,*
    616 F.2d 1222 (3d. Cir. 1980), *dismissed and vacated in part on other grounds*
    *sub nom. by Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,*
    453 U.S. 1 (1981)................................................................................ 23, 24

*Newdow v. Bush,*
    355 F. Supp. 2d 265 (D.D.C. 2005) .......................................................21

*Nken v. Holder,*
    556 U.S. 418 (2009) ................................................................................38

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004) ..................................................................................27

*Obergefell v. Hodges,*
        135 S. Ct. 2584 (2015) ........................................................................ 24, 25

*Penilla v. City of Huntington Park,*
        115 F.3d 707 (9th Cir. 1997) ........................................................................25

*Perry v. Schwarzenegger,*
        591 F.3d 1147 (9th Cir. 2009) ............................................................... 9, 32

*Philipps Petroleum Co. v. Mississippi,*
        484 U.S. 469 (1988) ........................................................................30

*Pinkney v. Ohio Envtl. Prot. Agency,*
        375 F. Supp. 305 (N.D. Ohio 1974) ..........................................................23

*PPL Mont., LLC v. Montana,*
        565 U.S. 576 (2012) ............................................................... 29, 30

*Raich v. Gonzales,*
        500 F.3d 850 (9th Cir. 2007) ........................................................................24

*Raines v. Byrd,*
        521 U.S. 811 (1997) ............................................................... 13, 15

*Reno v. Flores,*
        507 U.S. 292 (1993) ........................................................................24

*S.F. Chapter of A. Philip Randolph Inst. v. EPA,*
        No. C, 07-04936 CRB, 2008 WL 859985 (N.D. Cal. Mar. 28, 2008) .................23

*Schlesinger v. Reservists Comm. to Stop the War,*
        418 U.S. 208 (1974) ........................................................................13

*Spokeo, Inc. v. Robins,*
        136 S. Ct. 1540 (2016) ........................................................................14

*United States v. 32.42 Acres of Land,*
        683 F.3d 1030 (9th Cir. 2012) ........................................................................29

*United States v. Nixon,*
        418 U.S. 683 (1974) ........................................................................35

*Washington v. Glucksberg,*
521 U.S. 702 (1997) ................................................................... 23, 24

*Washington Environmental Council v. Bellon,*
732 F.3d 1131 (9th Cir. 2013) ....................................................... 15, 18

*Wood v. Ostrander,*
879 F.2d 583 (9th Cir. 1989) ..............................................................25

## U.S. CONSTITUTION:

Article III ......................................................... 5, 11, 12, 14, 17, 18, 21

Article II, § 3 ............................................................................. 31, 39

## STATUTES:

Energy Policy Act:
15 U.S.C. § 717r(b) ..............................................................................4

28 U.S.C. § 1292(b) ..................................................................... 1, 7, 32

28 U.S.C. § 1331 .................................................................................28

28 U.S.C. § 1651 ..............................................................................2, 3

## RULES:

Fed. R. App. P. 8(a)(1) ........................................................................38

Fed. R. App. P. 12(b)(6) ......................................................................21

Fed. R. App. P. 21 ......................................................................... 3, 38

Fed. R. App. P. 30(b)(6) ........................................................................7

## OTHER AUTHORITIES:

Minors Oposa, 33 I.L.M (Phillipines)....................................................24

**MISCELLEANOUS:**

Richard J. Lazarus, *Judicial Missteps, Legislative Dysfunction, and the Public Trust Doctrine: Can Two Wrongs Make It Right?*, 45 ENVTL. L. 1139 (2015)....................................31

## INTRODUCTION AND RELIEF SOUGHT

In this case, the United States District Court for the District of Oregon has declared that the Due Process Clause guarantees American citizens an "unenumerated fundamental right" to "a climate system capable of sustaining human life." Dkt. 83 in No. 6:15-cv-01517 (D. Or.) at 31-32 (Attach. 1). The court has determined that this amorphous and sweeping right is judicially enforceable, permitting the court to dictate and manage—indefinitely—all federal policy decisions related to fossil fuels, energy production, alternative energy sources, public lands, and air quality standards. To say the least, and by the district court's own admission, this ruling is "unprecedented." *Id.* at 52.

The defendants—the United States, the President, and twenty other Executive Branch Departments, agencies, offices, Cabinet Secretaries, Directors and Officers— have in both the prior and the current Administrations endeavored to bring to an end this improper case. Defendants moved on November 11, 2015, for the court to dismiss the case (Dkt. 17), and on March 7, 2017, to certify an interlocutory appeal pursuant to 28 U.S.C. §1292(b) from the district court's order denying the motion to dismiss (Dkt. 120). Defendants also moved for a stay of proceedings. Dkt. 121. Despite requests for expedition, the district court did not finally rule on the motion to certify an appeal until June 8, 2017, when it adopted the magistrate judge's recommendation to deny certification, and denied the requested stay. Dkt. 172

**1**

(Attach. 2).  In the meantime, it has permitted the start of an unbounded discovery process, including requests relating to sensitive internal workings of the Office of the President reaching as far back as the Administration of President Lyndon Johnson. *See infra* at 6-7, 32-37.

The governing criteria for mandamus relief articulated in *Bauman v. U.S. District Court,* 557 F.2d 650 (9th Cir. 1977), are easily satisfied here.  The district court has committed multiple and clear errors of law in refusing to dismiss an action that seeks wholesale changes in federal government policy based on utterly unprecedented legal theories.  Immediate review is needed to prevent the district court from the unlawful exercise of its jurisdiction and to avoid the staggering burden imposed on the federal government by the ongoing discovery directed at the entire course of federal decision-making relating to the broad issues raised by these unprecedented claims.  No other means are available to obtain the relief the government seeks since the district court refused to certify for interlocutory appeal its order denying the motions to dismiss. Defendants respectfully request this Court to issue the writ and direct the district court to dismiss the case.  They also request that the Court exercise its authority under the All Writs Act to stay proceedings in the district court until the merits of this petition for mandamus are resolved.

2

## STATEMENT OF JURISDICTION

This Court has authority to issue a writ of mandamus pursuant to 28 U.S.C. § 1651 and Rule 21 of the Federal Rules of Appellate Procedure.

## STATEMENT OF THE ISSUE

Whether the district court committed clear legal error and exceeded its judicial authority by refusing to dismiss this action against the President and multiple federal agencies that seeks to fundamentally redirect federal policy regarding energy development, transportation and consumption in order to bring about dramatic reductions in global concentrations of carbon dioxide ($CO_2$).

## STATEMENT OF RELEVANT FACTS

Twenty-one minors and an organization called Earth Guardians filed this action on August 12, 2015, naming the President, the Executive Office of the President, and numerous cabinet-level Executive agencies.  An Amended Complaint was filed on September 10, 2015.  Dkt. 7 (Attach. 3).  The Amended Complaint alleges that the defendants have allowed cumulative $CO_2$ emissions to increase, ¶151, by enabling and permitting fossil fuel production and combustion, ¶¶164-70, 185-91, by subsidizing the fossil fuel industry, ¶¶171-78, and by allowing interstate and international transport of fossil fuels, ¶¶179-84.  With one exception, plaintiffs do not identify or challenge specific agency actions, such as agency orders, permits, or

3

rulemakings, or the failure to undertake any specific required actions.[1]  Instead, they

challenge what they term the federal government's "aggregate actions," ¶129, which

they assert have caused "climate instability" that injures their prospects for long and

healthy lives.  ¶288.  Plaintiffs allege that the aggregate actions by the defendants

violate their rights under the Due Process Clause and the equal protection component

of the Fifth Amendment, their rights reserved by the Ninth Amendment, and the

public trust doctrine.  ¶¶277-310.

    For relief, plaintiffs ask the court to declare their rights under the Constitution

to a certain kind or quality of "climate system" and to enjoin the Executive Branch to

"prepare a consumption-based inventory of U.S. CO2 emissions" and to "prepare and

implement an enforceable national remedial plan to phase out fossil fuel emissions

and draw down excess atmospheric CO2."  Dkt. 7 at 94.  They ask the court to retain

jurisdiction for an indefinite period of time to monitor the government's compliance

with this "national remedial plan."  *Id.*

---

[1]  The exception is a challenge to the Department of Energy's (DOE) 2011
authorization, pursuant to Section 201 of the Energy Policy Act, of the export of
liquefied natural gas (LNG) from the Jordan Cove, Oregon, LNG Terminal.  Dkt. 7 at
¶193.  Plaintiffs ask that Section 201 be declared unconstitutional as a violation of
plaintiffs' "fundamental rights to life, liberty, and property," and that the DOE Order
be set aside.  *Id.* at ¶288 and p. 94.  This claim is indisputably beyond the district
court's jurisdiction because exclusive jurisdiction to review export authorizations like
this one is vested in the courts of appeals.  15 U.S.C. § 717r(b); *Consol. Gas Supply Corp.
v. FERC,* 611 F.2d 951, 957 (4th Cir. 1979).

4

On November 17, 2015, defendants moved to dismiss the complaint for lack of jurisdiction due to a failure to establish Article III standing and for failure to state a claim under the Fifth Amendment, the Ninth Amendment, and the public trust doctrine. Dkt. 27. On April 8, 2016, the magistrate judge assigned to the case issued findings and a recommendation that the court deny defendants' motion to dismiss, as well as a motion to dismiss on political question grounds filed by intervenor-defendants. Dkt. 68 (Attach. 4).[2] Defendants and intervenors filed objections to the magistrate's findings and recommendation. Dkt. 73, 74. On November 10, 2016, the district court issued an opinion and order adopting the magistrate's findings and recommendations and denying the motions to dismiss. Dkt. 83 (Attach. 1). The district court found that plaintiffs had adequately alleged the injury-in-fact, causation, and redressability elements of standing, *id.* at 18-28; had not raised non-justiciable political questions, *id.* at 6-17; and had asserted cognizable claims under the Due Process Clause and the public trust doctrine, *id.* at 28-51. With respect to plaintiffs' due process claims, the district court held that the Federal Government's aggregate actions on climate change are subject to "strict scrutiny," *id.* at 29, because plaintiffs have adequately alleged the violation of "an unenumerated fundamental right" to "a climate system capable of sustaining human life," *id.* at 31-32. With respect to

---

[2] The intervenors have subsequently moved to withdraw from the case. Dkt. 163, 166, 167.

plaintiffs' "public trust" claim, the district court held that, as a matter of "substantive due process," *id.* at 51, plaintiffs have a cause of action under the Constitution to assert claims that the Federal Government has violated "duties as trustee[] by failing to protect the atmosphere, water, seas, seashores, and wildlife," *id.* at 40.

Defendants filed an Answer on January 13, 2017. Dkt. 98. On January 24, 2017, plaintiffs sent a Notice of Litigation Hold and Request for Preservation demanding that defendants preserve, among other things:

> All Documents related to climate change since the Federal Defendants * * * became aware of the possible existence of climate change;

> All Documents related to national energy policies or systems, including fossil fuels and alternative energy sources and transportation;

> All Documents related to federal public lands, navigable waters, territorial waters, navigable air space or atmosphere; [and]

> All Documents related to greenhouse gas emissions or carbon sequestration as those terms apply to agriculture, forestry, or oceans.

Dkt. 121-1 at 5-7.

Consistent with their extraordinarily broad conception of the scope of this case, plaintiffs served Requests for Admissions on the Executive Office of the President and on EPA on January 20, 2017, Dkt. 151-1; filed broad Requests for Production of Documents on all defendants in February and March 2017, Dkt. 151-2, 151-3, 151-4, 151-5, 151-6, 151-7, 151-8; and have announced their intention to depose, *inter alios*:

6

Rex Tillerson, Secretary of State

Scott Pruitt, Administrator, EPA

Rick Perry, Secretary of Energy

Ryan Zinke, Secretary of Interior

Rule 30(b)(6) witness for Executive Office of the President

Dkt. 151-9.

On March 7, 2017, defendants moved the district court to certify its Opinion and Order of November 10, 2016, for interlocutory appeal pursuant to 28 U.S.C. §1292(b).  Dkt. 120.  The motion identified controlling questions of law pertaining to plaintiffs' lack of standing and to their failure to state cognizable claims under the Constitution or the public trust doctrine.  Defendants also moved to stay the litigation pending consideration of the issues raised by the request under 28 U.S.C. §1292(b).  Dkt. 121.

As time passed and discovery deadlines approached, defendants sought expedited rulings on these motions.  Dkt. 120 at 2.  The district court, however, referred the stay motion to the magistrate judge.  The magistrate judge then granted (over defendants' objections) plaintiffs' requests for additional time to respond to the motions.  Dkt. 127.  The magistrate judge denied the stay motion and recommended denying the §1292(b) motion on May 1, 2017.  Dkt. 146 (Attach. 5).  Defendants filed objections with the district court on May 5, 2017 and on May 9, 2017, respectively,

7

again requesting expedited rulings since the court had refused to extend pending discovery deadlines while the motions were being considered.  Dkt. 149, 151.  On May 31, 2017, the Executive Office of the President was forced to respond to the above-discussed Requests for Admissions.  All defendants will be forced to respond in the coming weeks to document requests that seek material dating back over at least five decades.

On June 6, 2017, defendants filed a Notice Regarding Pending Motions reminding the district court of the urgent need for resolution of the defendants' requests for interlocutory appeal and for a stay.  Dkt. 171.  On June 8, 2017, the district court issued an order adopting the magistrate judge's findings and recommendations, denying the motions to certify for interlocutory appeal, and denying the requested stay.  Dkt. 172.[3]

## STANDARD OF REVIEW

The Court considers a petition for a writ of mandamus by applying the five factors identified in *Bauman v. U.S. District Court*, 557 F.2d 650 (9th Cir. 1977):

(1) whether the petitioner has no other means, such as direct appeal, to obtain the desired relief;

---

[3] The district court declined to dismiss defendants' motion to certify as untimely. Dkt. 172 at 3, n.2.  The November 9, 2017, decision denying the motions to dismiss was issued immediately following the election resulting in a new Administration. That, along with the necessarily complex process for approving an appeal by the government, explains why the motion to certify was not filed until March 7, 2017.

(2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal;

(3) whether the district court's order is clearly erroneous as a matter of law;

(4) whether the district court's order is an oft repeated error or manifests a persistent disregard of the federal rules; and

(5) whether the district court's order raises new and important problems or issues of first impression.

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2009) (citing *Bauman*, 557 F.2d at 654-55).[4]  Not every factor is relevant in every case, and the writ may issue even if some of the factors point in different directions.  *Christensen v. U.S. District Court*, 844 F.2d 694, 697 (9th Cir. 1988).  This Court has identified the key factor as whether it is "firmly convinced that [the] district court erred" in issuing the challenged order.  *Id.* (quotes, citation omitted).

This Court may also grant mandamus as an exercise its supervisory authority over a district court, to ensure that the judicial system operates in an orderly, efficient manner.  *See In re Cement Antitrust Litig.,* 688 F.2d 1297, 1307 (9th Cir. 1982); *see also LaBuy v. Howes Leather Co.*, 352 U.S. 249 (1957).  Mandamus may also be appropriate

---

[4]  The three factors the Supreme Court has established for mandamus relief —
(1) the party seeking relief has no other adequate means of relief; (2) the right to relief is clear and undisputable; and (3) issuing the writ is appropriate in the circumstances — overlap substantially with the *Bauman* factors and are also satisfied for the reasons discussed.  *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004) (*Cheney*).

"to restrain a lower court when its actions would threaten the separation of powers by 'embarrass[ing] the executive arm of the Government * * *.'" *Cheney,* 542 U.S. at 381, quoting *Ex parte Peru*, 318 U.S. 578, 588 (1943).

## REASONS FOR GRANTING THE WRIT

### I.  The district court's order is based on clear error.

In its order denying the motions to dismiss, the district court rendered unprecedented and clearly erroneous rulings.  It found that plaintiffs had adequately alleged standing based on alleged injuries that are widely shared by every member of society, cannot plausibly be traced to particular actions of the federal government, and cannot be redressed by an order within the authority of a federal court.  It accepted plaintiffs' novel and unprecedented interpretation of the scope of the Due Process Clause as providing an "unenumerated fundamental right" to a global atmosphere capable of sustaining human life with $CO_2$ concentrations that the district court determines are necessary to protect plaintiffs from asserted injury.  It improperly found that plaintiffs could proceed on a theory that the President and federal agencies had violated the "public trust" doctrine, even though the Supreme Court has found that such doctrine is purely a creature of state law and even though the Court of Appeals for the District of Columbia Circuit has affirmed the dismissal of nearly-identical claims by some of these same plaintiffs.

10

These rulings constitute clear and profound error warranting a writ of mandamus directing that the case be dismissed. They also demonstrate a remarkable disregard for essential separation-of-powers limitations on the role of federal courts and call for this Court to exercise its supervisory mandamus powers to end this clearly improper attempt to have the judiciary decide important questions of energy and environmental policy to the exclusion of the elected branches of government.

## A. The district court clearly erred by finding that plaintiffs adequately alleged standing based on vague and attenuated allegations of injury, causation and redressability.

The Supreme Court has consistently stressed that "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated in non-relevant part by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). Accordingly, in response to a motion to dismiss, a district court must determine:

> Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?

*Id.* at 752. These questions go to the heart of whether an adjudication is proper, and they "must be answered by reference to the Art. III notion that federal courts may exercise power only in the last resort, and as a necessity, * * * and only when

**11**

adjudication is consistent with a system of separated powers and the dispute is one traditionally thought to be capable of resolution through the judicial process." *Id.* at 738 (inner citations and quote marks omitted); *see also Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (standing requirement preserves the separation of powers by "prevent[ing] the judicial process from being used to usurp the powers of the political branches.")

This suit is plainly not "consistent with a system of separated powers" *Allen,* 468 at 752, as it seeks to have a federal court decide broad matters of national energy and environmental policy that are reserved to the elected branches of government, at the behest of plaintiffs who assert highly generalized injuries purportedly resulting from a decades-long failure of Congress and the Executive Branch to adequately address the buildup of $CO_2$ in the global atmosphere.[5]  The Supreme Court has made clear that Article III does not permit suits that seek "broad-scale investigation" into

---

[5]  The district court recognized that "[t]his lawsuit challenges decisions defendants have made across a vast set of topics," including "whether and to what extent to regulate $CO_2$ emissions from power plants and vehicles, whether to permit fossil fuel extraction and development to take place on federal lands, how much to charge for use of those lands, whether to give tax breaks to the fossil fuel industry, whether to subsidize or directly fund that industry," and many others.  Dkt. 83 at 3-4.  But rather than recognizing that these broad policy questions are for the elected branches of government, the court found them to be appropriate for judicial determination because "[t]he identification and protection of fundamental rights is an enduring part of the judicial duty to interpret the Constitution." *Id.* at 31, 32.  As shown *infra* at 22-26, this was clear error.

government functions "with the district court determining at the conclusion of that

investigation the extent to which those activities may or may not be appropriate,"

because "this approach would have the federal courts as virtually continuing monitors

of the wisdom and soundness of Executive action." *Laird v. Tatum*, 408 U.S. 1, 14–15

(1972).  Contrary to the district court's assumption, no additional fact finding could

possibly repair the fundamental defects that foreclose standing in this case.  The

refusal to dismiss on grounds of lack of standing was clear error.

## 1.  Plaintiffs did not allege a cognizable injury that is particularized and concrete.

The Supreme Court has consistently "stressed that the alleged injury must be

legally and judicially cognizable." *Raines v. Byrd*, 521 U.S. 811, 819 (1997).  This

requires that "the plaintiff have suffered 'an invasion of a legally protected interest

which is * * * concrete and particularized,' *Lujan, supra*, at 560 * * * and that the

dispute is 'traditionally thought to be capable of resolution through the judicial

process,' *Flast v. Cohen*, 392 U.S. 83, 97 (1968)." *Id.*  As the Court explained in

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220–21 (1974):

> Concrete injury, whether actual or threatened, is that indispensable
> element of a dispute which serves in part to cast it in a form traditionally
> capable of judicial resolution.  It adds the essential dimension of specificity to
> the dispute by requiring that the complaining party have suffered a particular
> injury caused by the action challenged as unlawful.

*See also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("[f]or an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way'").

The allegations of injury accepted by the district court as adequate to survive the motion to dismiss fell far short of these Article III requirements. The allegations of the complaint involve generalized phenomena such as drought, floods, rising sea levels, reduced agricultural productivity, and fire-prone forests that may affect plaintiffs, but in the same way and to the same extent as they may affect everyone else in the world. Dkt. 7 ¶¶ 16-91. These generalized harms are allegedly caused or exacerbated by a "global" increase in atmospheric $CO_2$ that plaintiffs allege has resulted, in part, from the "aggregate" actions and inactions of the federal government over six decades of implementing congressional policy concerning energy development and environmental protection. *Id.* at ¶129 (defendants "aggregate actions * * * have substantially caused the present climate crisis"); *see also* ¶275. These allegations do not plausibly allege a cognizable injury that is "concrete" and "particularized."

Contrary to the district court, nothing in *Massachusetts v. EPA*, 549 U.S. 497 (2007), supports standing based on non-specific allegations of harm allegedly resulting from decades-long failures by the federal government to enact and implement policies that would lessen the buildup of $CO_2$ in the global atmosphere. In that case, the Court permitted Massachusetts to pursue a claim involving an alleged failure to

14

comply with a specific provision of the Clean Air Act because it had a "stake in protecting its quasi-sovereign interests" through the exercise of a "procedural right" provided in the statute. *Id.* at 518-20. As this Court has expressly recognized, the standing holding in *Massachusetts v. EPA* does not apply where "the present case neither implicates a procedural right nor involves a sovereign state." *Washington Environmental Council v. Bellon,* 732 F.3d 1131, 1145 (9th Cir. 2013) ("*Bellon*"). There is no equivalent statutory provision giving these plaintiffs a protectable interest in seeking relief from effects allegedly resulting from the aggregate effect of governmental actions and inactions over many decades relating to CO2. And whereas Massachusetts' claim "turn[ed] on the proper construction of a congressional statute, a question eminently suitable to resolution in federal court," 549 U.S. at 516, plaintiffs' claims here do not rely on any statute but instead ask the court to make essentially legislative determinations regarding energy, transportation, public lands and pollution control policies, matters which are far removed from a dispute that is "traditionally thought to be capable of resolution through the judicial process." *Raines, supra,* 521 U.S. at 819.

## 2. Plaintiffs failed to adequately allege causation.

The Supreme Court observed in *Allen* that allowing standing where the alleged injury could not fairly be traced to a particular government action "would pave the

way generally for suits challenging, not specifically identifiable Government violations

of law, but the particular programs agencies establish to carry out their legal

obligations.  Such suits, even when premised on allegations of several instances of

violations of law, are rarely if ever appropriate for federal-court adjudication."  468

U.S. at 759-60.  That describes this case, where plaintiffs rely on the "aggregate" of

everything the federal government has done (or not done) over the past six decades

relating to CO2 emissions as the "cause" of their asserted injuries.  *See* Dkt. 83 at 14

(district court finds that "the theory of plaintiffs' case is * * * that defendants' *aggregate*

*actions* violate their substantive due process rights and the government's public trust

obligations") (emphasis in original).

It is impossible to determine from the complaint what role particular actions of

each defendant agency or of various presidents (over decades) supposedly has played

or will play in the creation of the alleged injuries, as opposed to the role played by

third parties not before the court.  Where "the plaintiff is not himself the object of the

government action or inaction he challenges, standing is not precluded, but it is

ordinarily 'substantially more difficult' to establish."  *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 562 (1992) (quoting *Allen*, 468 U.S. at 758).  The plaintiffs do not allege that

they are the object of any government action, but instead that the federal government

has engaged in policies that encourage private actors to develop and use fossil fuels,

or done too little to regulate the emission of CO2.  Where "causation and

**16**

redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction — and perhaps on the response of others as well — it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562.

That requirement is rendered meaningless if plaintiffs simply lump together everything the federal government does or does not do that relates to fossil fuels or to the emission of CO2 and then allege that the "aggregate" effect of government conduct and private conduct they wish to see regulated causes them injury through climate change. The district court found it sufficient for plaintiffs to simply allege that "defendants have the power to increase or decrease" CO2 emissions from fossil fuel combustion through policies relating to fossil fuel development and that "DOT and EPA have broad power to set emissions standards" with respect to the transportation and power sectors of the economy. Dkt. 83 at 25-26. But a central part of the Article III inquiry is the requirement that a plaintiff identify *with particularity* a government failure that is a meaningful cause of the plaintiff's injury. That inquiry cannot be avoided by the expedient of aggregating a vaguely-defined category of government actions and inactions relating to vast sectors of the American economy. *See Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("Standing is not dispensed in gross. If the right to complain of *one* administrative deficiency automatically conferred the right to

17

complain of *all* administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review.")

The fundamental deficiency in plaintiffs' causation showing is confirmed by this Court's decision in *Bellon, supra,* 732 F.3d 1131. Although the plaintiffs in *Bellon,* unlike plaintiffs here, had alleged a specific failure by an agency — not setting standards for CO2 emissions from refineries — that allegation was insufficient for causation. This Court made clear that where standing rests on alleged climate change injuries, "[t]o satisfy the causality element for Article III standing, Plaintiffs must show that the injury is causally linked or 'fairly traceable' to the Agencies' alleged misconduct, and not the result of misconduct of some third party not before the court." *Id.* at 1141, citing *Lujan*, 504 U.S. at 560–61. As the Court noted, "simply saying that the Agencies have failed to curb emission of greenhouse gases, which contribute (in some undefined way and to some undefined degree) to their injuries, relies on an attenuated chain of conjecture insufficient to support standing." *Id.* at 1142-43 (quote marks and citation omitted). Plaintiffs here rely on a far more attenuated and diffuse chain of causation, one that fails to point to a specific alleged failure to regulate but relies instead on alleged but unidentified failures over many decades. Contrary to the district court's assumption (Dkt. 83 at 25), this is not a failure that can be corrected by allowing plaintiffs to conduct factual discovery. Basing causation on the "aggregate" effect of all federal policies relating to fossil fuel

**18**

production and overall regulatory policy toward CO2 emissions is a fundamental legal

flaw that no factual showing could possibly cure.[6]

### 3. Plaintiffs failed to adequately allege redressability.

The district court similarly assumed that plaintiffs could properly allege

redressability by aggregating all sources of CO2 emissions that have any connection

with the federal government or federal lands, and then alleging that reducing that

aggregate quantity by broad relief directed at the federal government would lessen

their injuries.  Dkt. 83 at 27 ("If plaintiffs can show, as they have alleged, that

defendants have control over a quarter of the planet's greenhouse gas emissions, and

that a reduction in those emissions would reduce atmospheric CO2 and slow climate

change, then plaintiffs' requested relief would redress their injuries").  This approach

is clearly at odds with *Allen* and *Lujan,* as well as with *Lewis v. Casey*, 518 U.S. at 358

n.6, which affirmed that standing focuses on redress of *particular* administrative

---

[6]  Contrary to the district court (Dkt. 83 at 26), *Massachusetts v. EPA* does not support
causation here.  The State there alleged that its injuries were caused by a particular
failure of the defendant agency (EPA's denial of a rulemaking petition asking for
regulation of greenhouse gas emissions under a specific section of the Clean Air Act),
and that this failure to follow a statutory duty led to significantly increased greenhouse
gas emissions from a specific source (new motor vehicles).  549 U.S. at 510-14, 523-
24.  Here, the complaint simply lists examples of various regulations, orders, actions
and inactions, and then alleges that the entire course of federal government conduct
in past decades has caused plaintiffs' injuries.

deficiencies, rather than "confer[ing] the right to complain of *all* administrative deficiencies."

Plaintiffs cannot establish redressability by the simply alleging that the district court can order the federal government to take "'action necessary to ensure that atmospheric CO2 is no more concentrated than 350 ppm by 2100.'"  Dkt. 83 at 28 (quoting Dkt. 7 ¶12).  The complaint never alleges that the agencies have statutory authority for the sweeping remedial action plaintiffs assert is necessary to remedy their harms, and the district court specifically noted that plaintiffs' theory of the case "requires no citation to particular statutory or regulatory provisions."  Dkt. 83 at 14.[7] Nor, under the Constitution's framework of separation of powers, could the court compel Congress to enact the additional authority that would be needed to provide the requested relief.

Equally problematic is the erroneous assumption of the district court that this relief could be obtained against the President.  *See, e.g., Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1866) ("this court has no jurisdiction of a bill to enjoin the President

---

[7]  In a recent filing, plaintiffs claim that they "have adequately alleged existing statutory and regulatory authority under which Federal Defendants can provide the relief requested."  Dkt. 129 at 25, citing Dkt. 7 at ¶¶ 98-130, 180, 183, 265, 266. Nothing in those paragraphs of the complaint identifies *any* statutory or regulatory authority that would permit the court to order defendants "to prepare a consumption-based inventory of U.S. CO2 emissions," or "to prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric CO2 so as to stabilize the climate system."  Dkt. 7 at 94.

in the performance of his official duties").  "There is longstanding legal authority that the judiciary lacks the power to issue an injunction or a declaratory judgment against the co-equal branches of government * * *."  *Newdow v. Bush*, 355 F. Supp. 2d 265, 280-82 (D.D.C. 2005) (declining to carve an exception to Presidential immunity "where [the President] is claimed to have violated the Constitution"); *see also Clinton v. Jones*, 520 U.S. 681, 718-19 (1997) (Breyer, J. concurring) (acknowledging "the apparently unbroken historical tradition * * * implicit in the separation of powers that a President may not be ordered by the Judiciary to perform particular Executive acts") (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992) (Scalia, J. concurring)).

Plaintiffs' redressability allegations thus also clearly fail to establish an Article III controversy: plaintiffs have failed to identify specific agency actions or inactions that could be redressed by a federal court and they have failed to identify any statutory authority for an order directing the defendants to "phase out fossil fuel emissions and draw down excess atmospheric CO2."  Dkt. 7 at 94.

## B.  The district court clearly erred by allowing plaintiffs to proceed on their claim of a fundamental right under the due process clause.

Even if plaintiffs had shown that this case was within the district court's jurisdiction under Article III, it should have been dismissed for failure to state a claim upon which relief can be granted.  "While a complaint attacked [under] Rule 12(b)(6) * * * does not need detailed factual allegations, a plaintiff's obligation to provide the

21

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and brackets omitted). The complaint must set forth facts supporting a plausible, not merely possible, claim for relief. *Id.* The complaint here clearly failed to do that.

### 1. There is no basis in law for a due process right to a particular climate system.

The district court recognized the unprecedented nature of its ruling that plaintiffs could pursue a due process claim against the federal government based on a global phenomenon like climate change. The court nevertheless allowed the case to go forward because "[p]laintiffs purport to challenge the government's failure to limit third-party CO2 emissions pursuant to the danger creation *DeShaney* exception." Dkt. 83 at 33. The district court's attempt to analogize this case involving the entire federal government's alleged contribution to global levels of CO2 to cases involving actions of police officers that placed individual plaintiffs in direct and immediate peril is riddled with error.

No federal court at any level has ever found a right to be protected from a general environmental phenomenon like climate change, and many courts have dismissed similar arguments asserting constitutionally-protected rights to various aspects of the environment. *See Nat'l Sea Clammers Ass'n v. City of New York*, 616 F.2d

22

1222, 1237-38 (3d. Cir. 1980) ("[i]t is established in this circuit and elsewhere that there is no constitutional right to a pollution-free environment"), *dismissed and vacated in part on other grounds sub nom. by Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981); *S.F. Chapter of A. Philip Randolph Inst. v. EPA*, No. C 07-04936 CRB, 2008 WL 859985, at *6-7 (N.D. Cal. Mar. 28, 2008) ("Plaintiffs also allege deprivation of the right to be free of climate change pollution, but that right is not protected by the Fourteenth Amendment [Due Process Clause] either."); *Pinkney v. Ohio Envtl. Prot. Agency*, 375 F. Supp. 305, 310 (N.D. Ohio 1974) ("[T]he Court has not found a guarantee of the fundamental right to a healthful environment implicitly or explicitly in the Constitution."); *Gasper v. La. Stadium & Exposition Dist.*, 418 F. Supp. 716, 720-21 (E.D. La. 1976) ("[T]he courts have never seriously considered the right to a clean environment to be constitutionally protected under the Fifth and Fourteenth Amendments"), *aff'd*, 577 F.2d 897 (5th Cir. 1978).

The consistent and long-standing refusal of courts to accept a due process right to environmental quality is required by the Supreme Court's cautious approach to considering novel due process claims and its "insistence that the asserted liberty interest be rooted in history and tradition." *Michael H. v. Gerald D.*, 491 U.S. 110, 122 (1989). In *Washington v. Glucksberg*, the Court emphasized that federal courts must "exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into"

23

judicial policy preferences, and lest important issues be placed "outside the arena of public debate and legislative action." 521 U.S. 702, 720 (1997); *see also Reno v. Flores*, 507 U.S. 292, 302 (1993) ("'Substantive due process' analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.'") (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)).

Neither plaintiffs nor the district court made any attempt to show that the concept of a fundamental right to a stable climate system is "deeply rooted in our legal tradition," as required by *Glucksberg*, 521 U.S. at 722. The district court cited only a single opinion from a Phillipines court to show judicial support for a fundamental right to a "'balanced and healthful ecology.'" Dkt. 83 at 50, citing *Minors Oposa*, 33 I.L.M. at 187; *see also id.* at 32. This is plainly insufficient to show that an asserted right under the United States Constitution to a stable climate system is "deeply rooted in our legal tradition." *See Raich v. Gonzales*, 500 F.3d 850, 865 (9th Cir. 2007).

The interest in a stable climate system is unlike any of the fundamental liberty interests the Supreme Court has accepted. It has no impact on personal autonomy, unlike restraints on the ability to marry. While the plaintiffs and the district court rely on the decision in *Obergefell v. Hodges*, 135 S. Ct. 2584, 2598 (2015), recognizing a fundamental right to same-sex marriage, that recognition was based on prior decisions

24

establishing that "[t]he fundamental liberties protected by [the Due Process] Clause include * * * certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs." *Id.* at 2597. While *Obergefell* extended that existing line of cases to recognize a fundamental right to marry for same-sex couples, the "fundamental right" found by the district court here has no relation to any subject that has previously been afforded heightened constitutional protection.

The limited due process right recognized by this Court in several post-*DeShaney* cases is grounded in the peculiar duty a governmental body takes on when it has control over a particular individual's person and places him or her in imminent peril. *See Penilla v. City of Huntington Park,* 115 F.3d 707, 710 (9th Cir. 1997) (cause of action for due process violation arose where officers "took affirmative actions that significantly increased the risk facing Penilla: they cancelled the 911 call to the paramedics; they dragged Penilla from his porch, where he was in public view, into an empty house; they then locked the door and left him there alone * * * after they had examined him and found him to be in serious medical need"); *Wood v. Ostrander*, 879 F.2d 583, 588 (9th Cir. 1989) (due process cause of action arose where officer arrested a female driver, impounded the car, and left driver by the side of the road at night in a high-crime area). This duty of officers not to affirmatively place an individual in a position of imminent risk with deliberate indifference to his or her safety can be

25

traced to common law roots.  But there is no basis in common law or elsewhere for a duty to protect persons (which would presumably include all members of the general population of the United States) against whatever perils are produced by emissions of $CO_2$.[8]

### 2. *Plaintiffs failed to identify any cause of action for their claims.*

Neither plaintiffs nor the district court identified a cause of action authorizing suits against federal agencies or the President for declaratory and injunctive relief related to this alleged right.  When the district court asserted that "the Fifth Amendment * * * provides the right of action" for both the due process and the public trust claims, it cited only cases upholding a cause of action for damages against federal officers for violations of constitutional rights.  Dkt. 83 at 51, citing *Davis v. Passman*, 442 U.S. 228, 245 (1979), and *Carlson v. Green*, 446 U.S. 14, 18 (1980).  While the Supreme Court has in limited circumstances implied causes of action against individual federal officers in their personal capacities, in order to vindicate clearly-

---

[8]  Nor have plaintiffs properly alleged another prerequisite to a substantive due process claim: that the challenged conduct is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 n. 8 (1998).  The complaint cites only instances of federal agencies carrying out statutorily-authorized policies that plaintiffs believe are too encouraging of energy production and give too little consideration to climate change.  Such official action that is merely inconsistent with plaintiffs' policy preferences is not remotely the sort of conduct that rises to the conscience-shocking level that can support a due process claim.  *See, e.g., Lombardi v. Whitman*, 485 F.3d 73, 84 (2d Cir. 2007).

established constitutional rights, it has emphasized that such implication should be sparing, and that "such power is to be exercised in the light of relevant policy determinations made by the Congress," and only where no other alternative form of relief is available. *Bush v. Lucas*, 462 U.S. 367, 373-744 (1983); *see also Davis,* 442 U.S. at 245.

No court has ever recognized an implied Fifth Amendment cause of action directly against the federal government itself that would allow plaintiffs to seek, through injunctive and declaratory relief, a fundamental re-ordering of national priorities to address an environmental problem. Any such implied cause of action would run contrary to the consistent refusal of Congress to authorize causes of action for programmatic challenges. As the district court recognized, Dkt. 83 at 52, plaintiffs could not have brought this broadly programmatic challenge under any statutorily-created causes of action such as the APA. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 892–93 (1990) ("it is at least entirely certain that the flaws in the entire 'program' * * * referenced in the complaint, and presumably actions yet to be taken as well * * * cannot be laid before the courts for wholesale correction under the APA"); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("'respondent cannot seek wholesale improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made'") (quoting *Lujan,* 497 U.S. at 64-65). Nor could plaintiffs have

27

invoked the narrow and specific Clean Air Act cause of action at issue in *Massachusetts v. EPA,* 549 U.S. at 519-20.  The district court's failure to dismiss these programmatic claims here further warrants a writ of mandamus.

## C.  The district court clearly erred in holding that plaintiffs stated an actionable "public trust" claim against the federal government.

As with its due process holding, the district court was unable to point to any authority supporting the proposition that the "public trust" doctrine authorizes suit against the federal government writ large to require it to protect the global atmosphere or other alleged public trust resources.  Moreover, plaintiffs' public trust theory was convincingly rejected in a recent, nearly-identical suit brought in the District of Columbia by some of the same individuals who are plaintiffs and their counsel here.  In *Alec L. v. Jackson*, 863 F. Supp. 2d 11 (D.D.C. 2012), *aff'd, Alec L. ex rel. Loorz v. McCarthy*, 561 Fed. App'x 7 (D.C. Cir. 2014), cert. denied, 135 S. Ct. 774 (2014), plaintiffs alleged that several Executive Branch departments and agencies had violated their alleged fiduciary duties to preserve and protect the atmosphere as a commonly-shared public resource under the public trust doctrine.  They invoked the federal question statute, 28 U.S.C. §1331, as the basis for subject matter jurisdiction over this "public trust" claim.  The district court in *Alec L.* found no support for the assertion that the public trust doctrine or claims based on it arise under the Constitution or laws of the United States.  The court cited the Supreme Court's

28

reaffirmation in *PPL Mont., LLC v. Montana*, 565 U.S. 576, 603-04 (2012), that "the public trust doctrine remains a matter of state law" and that "the contours of that public trust do not depend upon the Constitution."

The district court in *Alec L.* also ruled that even if the public trust doctrine had provided a claim under federal law at one time, that claim has been displaced by federal regulation, specifically the Clean Air Act.  The district court relied for this alternative ruling on *American Electric Power Company v. Connecticut*, 564 U.S. 410, 423-24 (2011), where the Supreme Court held that "the Clean Air Act and the EPA actions it authorizes displace any federal common law right to seek abatement of carbon-dioxide emissions from fossil-fuel fired power plants."

The D.C. Circuit affirmed in an unpublished memorandum decision, concluding that the district court had correctly dismissed the suit for lack of subject matter jurisdiction since the public trust doctrine is a matter of state law, not federal law.  *Alec L. ex rel. Loorz v. McCarthy*, 561 Fed. App'x at 8, citing *PPL Montana*.  This Court has also interpreted *PPL Montana* as establishing that the public trust doctrine is purely a matter of state law, and as such does not (for example) restrict the power of the United States to condemn a parcel of former tidelands in fee.  *United States v. 32.42 Acres of Land*, 683 F.3d 1030, 1038-39 (9th Cir. 2012).

The district court recognized that "*Alec L.* was substantially similar to the instant action."  Dkt. 83 at 45.  Nevertheless, it was "not persuaded by the reasoning

29

of the *Alec L.* courts," because, in its view "a close reading of *PPL Montana* reveals that it says nothing about the viability of federal public trust claims." *Id.* at 46.  But although *PPL Montana* did not involve a federal public trust claim, its holding that "the public trust doctrine remains a matter of state law" clearly precludes the possibility that the doctrine could form the basis for suit against the federal government in federal court.

Even if the public trust doctrine could be invoked against federal agencies acting pursuant to statutes, the district court cited no case that had ever applied the doctrine beyond the context of tidelands and navigable freshwater bodies.  The Supreme Court has always addressed the public trust doctrine in connection with state management of coastal regions and navigable waterways.  *See, e.g., PPL Montana*, 132 S. Ct. at 1235; *Philipps Petroleum Co. v. Mississippi*, 484 U.S. 469, 479 (1988).  The district court attempted to shoehorn plaintiffs' claim into the traditional scope of the public trust doctrine by finding that, "[b]ecause a number of plaintiffs' injuries relate to the effects of ocean acidification and rising ocean temperatures, they have adequately alleged harm to public trust assets." Dkt. 83 at 42 (footnote omitted).  But there is no support in the public trust law of any state for bringing a claim based on allegations that depend on such an indirect chain of causation; *i.e.*, that CO2 emissions from challenged actions and non-actions, when combined with all other worldwide emissions of CO2 over decades, leads to warmer and more acidic waters in the earth's

30

vast oceans, which in turn might affect particular coastal areas that may be subject to the public trust doctrine.[9]

## II.  Mandamus is warranted to confine the district court to the lawful exercise of its jurisdiction.

Even if it were not so plain that the district court committed clear errors in denying the motion to dismiss, it would be appropriate for this Court to exercise its supervisory mandamus authority over the district court "to ensure that the judicial system operates in an orderly and efficient manner."  *See In re Cement Antitrust Litig.*, 688 F.2d 1297, 1307 (9th Cir. 1982); *see also LaBuy v. Howes Leather Co.*, 352 U.S. 249, 259-260 (1957).  The district court's rulings in this case show a clear and continuing intent to usurp the power of Congress to determine national policy regarding energy development, use of public lands, and environmental protection by constructing out of whole cloth a novel constitutional right to a "climate system capable of sustaining human life," thus allowing the plaintiffs and the court to ignore statutory limits and directions.  *See, e.g.,* Dkt. 83 at 52.  The rulings similarly show a clear intent to usurp the authority of the President to "take Care that the Laws be faithfully executed," Art. II, § 3, and of the federal agencies to exercise the authority that Congress has

---

[9] Even scholars who are sympathetic to the broad goals pursued by the plaintiffs here acknowledge that plaintiffs' arguments "take the public trust doctrine far beyond its historic moorings."  Richard J. Lazarus, *Judicial Missteps, Legislative Dysfunction, and the Public Trust Doctrine:  Can Two Wrongs Make It Right?*, 45 ENVTL. L. 1139, 1152 (2015).

delegated to administer statutes governing the federal government's approach to energy and environmental policy.  This usurpation of congressional, presidential and agency authority is not correctable by way of an appeal after final judgment, and so should be corrected by issuance of a writ of mandamus.  *See Perry v. Schwarzenegger,* 591 F.3d at 1157-59 (supervisory mandamus appropriate where important constitutional interests could be compromised before appellate review is available).

### III.  Defendants have no other means of obtaining immediate review needed to avoid a serious intrusion on the separation of powers, and without action by this court the defendants will be prejudiced in a way not correctable on appeal.

The defendants have no adequate means, other than by a writ of mandamus, to obtain needed immediate review of these significant rulings and relief from onerous and disruptive discovery based on claims that have no basis in law.  This Court found that a writ of mandamus was appropriate in similar circumstances where a district court denied a motion to dismiss an action against foreign banks on grounds of the Act of State doctrine, refused to certify that decision for interlocutory appeal pursuant to 28 U.S.C. §1292(b), and allowed discovery against the banks to proceed.  *Credit Suisse v. United States District Court for the Central District of California,* 130 F.3d 1342, 1346 (9th Cir. 1997) ("*Credit Suisse*").  After finding that "[t]he Banks thus have no other means of obtaining immediate review of the denial of their motion to dismiss," the Court issued a writ of mandamus directing the district court to vacate its denial of the

Banks' motion to dismiss and to dismiss the action. *Id* at 1348. Here as well, defendants have no other means of obtaining immediate review of the denial of the motion to dismiss, and the burden and cost of complying with the extraordinarily intrusive and inappropriate discovery sought by plaintiffs cannot be corrected in a subsequent appeal from a final judgment. *See also Medhekar v. U.S. Dist. Court for the N. Dist. of California*, 99 F.3d 325, 326 (9th Cir. 1996) (finding second *Bauman* factor satisfied since "the harm sought to be avoided, the burden and cost of providing the initial disclosures, cannot be corrected in a subsequent appeal from a final judgment in the absence of mandamus relief").

The extraordinary scope of this litigation and the enormous burden of discovery became evident with plaintiffs' January 24, 2017, litigation hold demand letter, which demanded that all defendants (including the President) preserve "[a]ll Documents related to climate change," "[a]ll Documents related to national energy policies or systems," "[a]ll Documents related to federal public lands, navigable waters, territorial waters, navigable air space or atmosphere;" and "[a]ll Documents related to greenhouse gas emissions or carbon sequestration as those terms apply to agriculture, forestry, or oceans," going back at least six decades. Dkt. 121-1 at 5-6. The intrusion on the separation of powers has been vividly highlighted by plaintiffs' requests for production of documents, none more so than the RFPs directed at the

President.[10]  That RFP, as revised on May 19, 2017, seeks a vast array of documents and communications relating to climate change from the current administration and every previous administration going back to the Administration of President Lyndon Johnson.  *See* Dkt. 159-6 at ¶¶1-29.  Many of the requests relate to sensitive internal workings of the Office of the President, including the seeking of advice from agency and department heads (*e.g.,* ¶¶ 8-10), and communications relating to international negotiations (¶¶ 25-29).[11]  These requests seriously infringe upon the President's constitutional authority to require opinions from department heads and to conduct foreign relations.

As the Supreme Court made clear in *Cheney*, mandamus is appropriate where discovery threatens to disrupt the confidentiality that is essential to Presidential or Vice-Presidential decision-making, or to burden the Office of the President in ways

---

[10]  Plaintiffs therein define "the President" broadly to include "the President, Vice President, Executive Office of the President, the President's Cabinet, Presidential advisory boards, [and] Presidential and Vice Presidential task forces," as well as the Council on Environmental Quality, the Office of Management and Budget, and Office of Science and Technology Policy, along with "all current and former principals, employees, agents, attorneys, consultants and other representatives of the President."  RFP at 3-4.

[11]  Similarly, the Revised RFP to the State Department dated May 19, 2017, demands "Each DOCUMENT that REFERS, RELATES, REGARDS, OR PERTAINS TO COMMUNICATIONS between Secretary of State Rex Tillerson and President Donald Trump on the issue of CLIMATE CHANGE" as well as on "the issue of ENERGY POLICY" since January 20, 2017, and communications and documents relating to a host of international negotiations going back as far as 1979.  Dkt. 159-3 at ¶¶ 9-10, 17-48.

34

that distract from the performance of constitutional duties.  542 U.S. at 381-82 ("the

public interest requires that a coequal branch of Government 'afford Presidential

confidentiality the greatest protection consistent with the fair administration of

justice,' and give recognition to the paramount necessity of protecting the Executive

Branch from vexatious litigation that might distract it from the energetic performance

of its constitutional duties") (quoting *United States v. Nixon*, 418 U.S. 683, 715 (1974)).

In *Cheney,* the Court ruled that the court of appeals erred in concluding it lacked

authority to issue mandamus regarding discovery requested by the Sierra Club and

others against Vice President Cheney relating to the National Energy Policy

Development Group; the Court emphasized in particular that "separation-of-powers

considerations should inform a court of appeals' evaluation of a mandamus petition

involving the President or the Vice President."  *Id.* at 382. [12]  The plaintiffs' discovery

efforts here constitute an even broader threat of disruption to confidentiality than was

present in *Cheney,* since this case involves not just a specific Vice-Presidential task

force, but everything having to do with climate change over the course of many

decades.

---

[12] On remand, the Court of Appeals granted the petition for mandamus and ordered
the case dismissed.  *In re Cheney*, 406 F.3d 723, 731 (D.C. Cir. 2005).

35

Plaintiffs' discovery requests directed at the federal agencies are equally inappropriate and disruptive.  Plaintiffs have made clear that they intend to seek discovery regarding virtually all of the federal government's activities relating to control of $CO_2$ emissions, fossil fuels production and transportation, alternative energy sources, and public lands, transportation and energy policy.  Thus, plaintiffs have stated (Dkt. 159 at 6):

> The discovery phase of this case will develop a factual record, in part, establishing with scientific and factual certainty: (1) the causal mechanisms underlying climate change; (2) the global and national injuries and unique personal injuries to Plaintiffs resulting from climate change; (3) the degree to which Federal Defendants' actions have caused those impacts; (4) the factual context within which Federal Defendants have taken, authorized, and permitted the actions resulting in those impacts; and (5) the degree to which Federal Defendants can mitigate and reverse those impacts through exercise of their authority over our nation's energy system.

Because they are proceeding on clearly erroneous theories as to the sort of claims that plaintiffs may bring in this context, neither the magistrate judge nor the district court can be expected to rein in this improper discovery.  Thus, in recommending denial of the motion to certify an interlocutory appeal, the magistrate judge specifically cited an alleged need "to develop the record," reasoning that that since "[t]he plaintiffs contend that the federal defendants are denying their basic right to a habitable climate system, * * * [t]he fossil fuel production regulatory practices of federal defendants both historically and going forward will provide an evidentiary framework for their claims."  Dkt. 146 at 10, 11.  The district court adopted the

36

magistrate's findings *in toto*.  Dkt. 172.   This extraordinarily broad discovery based on clearly incorrect legal theories is already proving to be highly time-consuming and resource-intensive and is significantly affecting the operations of the defendant agencies.  The damage this will do to vital federal operations cannot be remedied by an appeal from a final judgment.

## IV.  The order raises new and important problems and issues of first impression.

The district court conceded that "plaintiffs likely could not obtain the relief they seek through citizen suits brought under the Clean Air Act, the Clean Water Act, or other environmental laws."  Dkt. 83 at 52.  But in the court's view, "that argument misses the point," which is that "[t]his action is of a different order than the typical environmental case."  *Id.*  Since the plaintiffs here are alleging that the defendants' actions and inactions "profoundly damaged our home planet," then "whether or not they violate any specific statutory duty" is simply irrelevant.  *Id.*  The court conceded that its ruling was "unprecedented," but ultimately concluded that "[f]ederal courts too often have been cautious and overly deferential in the arena of environmental law, and the world has suffered for it."

The district court is the first in the country to recognize this "different order" of case that permits a federal court to run roughshod over both judgments of Congress embodied in statutes and limits on justiciability established over decades of

Supreme Court precedents.  The need for this Court to intervene through a writ of

mandamus is clear.

## V.  A stay of proceedings is warranted.

Defendants also ask this Court to exercise its authority under the All Writs Act

to stay district court proceedings while it considers this mandamus petition.  *See* 9th

Cir. General Order 6.8a (motions panel "may also issue a stay or injunction pending

further consideration of the application").[13]  Whether to issue a stay is "an exercise of

judicial discretion * * * to be guided by sound legal principles," *Nken v. Holder*, 556

U.S. 418, 433-34 (2009) (internal citations omitted), based on the following factors:

(1) the applicant's likely success on the merits; (2) irreparable injury to the applicant

absent a stay; (3) substantial injury to the other parties; and (4) the public interest.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Leiva-Perez v. Holder*, 640 F.3d 962,

970 (9th Cir. 2011) (*Nken* requires a showing of irreparable harm, but applies a

balancing test showing "that irreparable harm is probable and either: (a) a strong

likelihood of success on the merits and that the public interest does not weigh heavily

---

[13]  Fed. R. App. P. 8(a)(1) does not expressly refer to a stay pending review of a
petition for a writ of mandamus under Fed. R. App. P. 21.  Nevertheless, defendants
sought a stay pending resolution of a requested interlocutory appeal, which was
denied by the magistrate.  Dkt. 146.  Defendants renewed that request for stay in their
objection to the magistrate's denial of stay, Dkt. 151, but the district court denied that
request in its June 8, 2017, order.  Dkt. 172 at 4.

against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor"). Each of these factors counsels in favor of a stay.

The arguments set out above show that the defendants have a strong likelihood of success in obtaining mandamus. Absent a stay, the President and the federal departments and agencies that are subject to the discovery propounded by plaintiffs will be irreparably harmed because of the disruption to important functions that this sweeping and improper discovery is causing. A stay of proceedings during the pendency of this mandamus petition is not likely to appreciably harm plaintiffs, since their alleged injuries stem from the cumulative effects of $CO_2$ emissions from every source in the world over decades; whatever additions to the global atmosphere that may somehow be attributed to the defendants over the time it takes to resolve the petition are plainly *de minimis* and not a source of irreparable harm. Finally, the public interest strongly favors a stay, because absent such relief the Executive Branch and its agencies (including the Executive Office of the President) would be subject to continued discovery and forced to divert substantial resources away from their essential function of "faithfully execut[ing]" the law. U.S. CONST. art. II, § 3.

## CONCLUSION

The Court should grant a stay of proceedings in the district court while it considers this petition.  The petition should be granted and the district court directed to vacate its November 10, 2016 Order and dismiss the case.

Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General

ERIC GRANT
Deputy Assistant Attorney General

<u>s/ David C. Shilton</u>
ANDREW C. MERGEN
DAVID C. SHILTON
Attorneys, Appellate Section
Environment & Natural Resources Div.
U.S. Department of Justice
P.O. Box 7415
Washington, DC  20044
(202) 514-5580
david.shilton@usdoj.gov

40

STATEMENT OF RELATED CASES

Petitioners are not aware of any related cases.


/s/ David C. Shilton
David C. Shilton

**41**

CERTIFICATE REGARDING COMPLIANCE WITH FRAP 21(d)

Petitioners are today filing a motion for permission to file an over-length petition for mandamus and request for stay.  This petition for mandamus and request for stay contains 9,926 words, exclusive of the material specified in FRAP 32(f).

/s/ David C. Shilton
David C. Shilton

42

CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2017, I electronically filed the foregoing petition

with the Clerk of the Court for the United States Court of Appeals for the Ninth

Circuit by using the appellate CM/ECF system.  On this date, a notice of filing of this

petition, including the petition itself, will be lodged in the district court in the

underlying matter, and service in compliance with Federal Rule of Appellate

Procedure 21(a)(1) will be accomplished through the district court's CM/ECF system.

All counsel in this case are participants in the district court's CM/ECF system.  In

addition, a courtesy copy of the foregoing brief has been provided via e-mail to the

following counsel:

Julia A. Olson
juliaaolson@gmail.com
Wild Earth Advocates
1216 Lincoln Street
Eugene, OR 97401

Philip L. Gregory
Pgregory@cpmlegal.com
Cotchett, Pitre & McCarthy, LLP
San Francisco Airport Office
840 Malcolm Road
Burlingame, CA 94010

Daniel M. Galpern
Dan.Galpern@gmail.com
Law Offices of Daniel M. Galpern
1641 Oak Street
Eugene, OR 97401

**43**

Attorneys for Plaintiffs

Frank R. Volpe
Fvolpe@sidley.com
Mark D. Hopson
Mhopson@sidley.com
Benjamin E. Tannen
Btannen@sidley.com
1501 K Street NW
Washington, DC 20005

C. Marie Eckert
Marie.Eckert@millernash.com
Miller, Nash, Graham & Dunn LLP
111 SW Fifth Avenue, Suite 3400
Portland, OR 97204

Attorneys for Intervenor Defendants

/s/ David C. Shilton
David C. Shilton
Attorney for Federal Defendants

44