JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division

LISA LYNNE RUSSELL, Chief
GUILLERMO A. MONTERO, Assistant Chief
SEAN C. DUFFY (NY Bar No. 4103131)
MARISSA PIROPATO (MA Bar No. 651630)
CLARE BORONOW (admitted to MD bar)
Trial Attorneys
Natural Resources Section
601 D Street NW
Washington, DC 20004
(202) 305-0445 (Duffy)
(202) 305-0470 (Piropato)
sean.c.duffy@usdoj.gov
marissa.piropato@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| KELSEY CASCADIA ROSE JULIANA, et al., | Case No. 6:15-cv-01517-TC |
| Plaintiffs, | |
| v. | **DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AND FOR A STAY OF ALL DISCOVERY** |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | **Expedited Ruling Requested on Motion for Stay of All Discovery** |

Defs.' Mot. for Protective Order & Stay of Discovery
*Juliana v. United States*, No. 6:15-cv-01517-TC

i

Defendants hereby move the Court for a protective order and stay of all discovery. Discovery is precluded by the Administrative Procedure Act ("APA") and barred by the Constitution. The bases for this motion are more fully set forth in the accompanying Memorandum of Law. The United States respectfully requests expedited consideration of its motion seeking to stay all discovery. Per Local Rule 7-1(a), the parties have conferred and Plaintiffs oppose this motion and the request for expedited consideration.

Dated: May 9, 2018

Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division

*/s/ Clare Boronow*
LISA LYNNE RUSSELL
GUILLERMO A. MONTERO
SEAN C. DUFFY (NY Bar No. 4103131)
MARISSA PIROPATO (MA Bar No. 651630)
CLARE BORONOW (admitted to MD bar)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
601 D Street NW
Washington, DC 20004
Telephone: (202) 305-0445
Facsimile: (202) 305-0506
sean.c.duffy@usdoj.gov

*Attorneys for Defendants*

Defs.' Mot. for Protective Order & Stay of Discovery
*Juliana v. United States*, No. 6:15-cv-01517-TC

ii

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division

LISA LYNNE RUSSELL, Chief
GUILLERMO A. MONTERO, Assistant Chief
SEAN C. DUFFY (NY Bar. No. 4103131)
MARISSA A. PIROPATO (MA Bar. No. 651630)
CLARE BORONOW (admitted to MD bar)
Trial Attorney
Natural Resources Section
601 D Street NW
Washington, DC 20004
Telephone: (202) 305-0445
Facsimile:  (202) 305-0506
sean.c.duffy@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| KELSEY CASCADIA ROSE JULIANA, et al., | Case No. 6:15-cv-01517-TC |
| Plaintiffs, | |
| v. | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AND FOR A STAY OF ALL DISCOVERY** |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 3

    I.     The Amended Complaint ................................................................... 3

    II.    Procedural History ........................................................................... 5

LEGAL STANDARD.................................................................................................. 7

ARGUMENT ............................................................................................................. 8

    I.     The Court Should Grant a Protective Order Precluding All Discovery................. 8

          A.     Plaintiffs' Claims Must Be Reviewed on an Administrative Record ......... 9

          B.     Requiring Agencies to Take Policy Positions in Discovery Conflicts with the APA's Provisions Regulating Rulemaking and Adjudication................................................................... 14

          C.     The Constitutional Separation of Powers Bars Discovery........................ 16

    II.    The Court Should Stay All Discovery Pending Resolution of this Motion and  Defendants' Dispositive Motions.................................................. 19

CONCLUSION.......................................................................................................... 20

Defs.' Mot. for Protective Order & Stay of Discovery
*Juliana v. United States*, No. 6:15-cv-01517-TC

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Elec. Power Co. v. Connecticut,*
 564 U.S. 410 (2011) ............................................................................................. 16, 17

*Animal Def. Council v. Hodel,*
 840 F.2d 1432 (9th Cir. 1988) ..................................................................................... 7

*Arapaho Tribe v. Ashe,*
 92 F. Supp. 3d 1160 (D. Wyo. 2015) ......................................................................... 12

*Camp v. Pitts,*
 411 U.S. 138 (1973) ................................................................................................... 10

*Charlton Mem'l Hosp. v. Sullivan,*
 816 F. Supp. 50 (D. Mass. 1993) ......................................................................... 11, 13

*Cheney v. U.S. Dist. Court for D.C.,*
 542 U.S. 367 (2004) ................................................................................................... 18

*Chiayu Chang v. U.S. Citizenship & Immigration Servs.,*
 254 F. Supp. 3d 160 (D.D.C. 2017) ........................................................................... 12

*Citizens to Preserve Overton Park v. Volpe,*
 411 U.S. 402 (1971) ................................................................................................... 10

*CMAX, Inc. v. Hall,*
 300 F.2d 265 (9th Cir. 1962) ....................................................................................... 8

*Dickinson v. Zurko,*
 527 U.S. 150 (1999) ................................................................................................... 16

*E. Bridge, LLC v. Chao,*
 320 F.3d 84 (1st Cir. 2003) ........................................................................................ 13

*Evans v. Salazar,*
 No. C08-0372-JCC, 2010 WL 11565108 (W.D. Wash. July 7, 2010) ............... 11, 12

*Fla. Power & Light Co. v. Lorion,*
 470 U.S. 729 (1985) ................................................................................................... 10

*Flast v. Cohen,*
 392 U.S. 83 (1968) ..................................................................................................... 18

*Friends of the Earth v. Hintz,*
 800 F.2d 822 (9th Cir. 1986) ................................................................................. 7, 10

*Harvard Pilgrim Health Care of New England v. Thompson,*
 318 F. Supp. 2d 1 (D.R.I. 2004) ..................................................................... 11, 12, 13

*Havasupai Tribe v. Robertson,*
 943 F.2d 32 (9th Cir. 1991) ................................................................................... 7, 10

*Hill Dermaceuticals, Inc. v. FDA*,
    709 F.3d 44 (D.C. Cir. 2013) ........................................................... 10

*In re SEC ex rel. Glotzer v. Stewart*,
    374 F.3d 184 (2d Cir. 2004) ............................................................ 16

*In re United States*,
    884 F.3d 830 (9th Cir. 2018) .......................................... 1, 2, 6, 14, 19

*In re United States*,
    138 S. Ct. 443 (2017) .......................................................... 2, 3, 4, 8, 20

*Inland Empire Pub. Lands Council v. Glickman*,
    911 F. Supp. 431 (D. Mont. 1995) ................................................... 11

*Inland Empire Pub. Lands Council v. Glickman*,
    88 F.3d 697 (9th Cir. 1996) ............................................................. 14

*Jarita Mesa Livestock Grazing Assoc. v. U.S. Forest Serv.*,
    58 F. Supp. 3d 1191 (D.N.M. 2014) ................................................ 12

*Jarvis v. Regan*,
    833 F.2d 149 (9th Cir. 1987) ........................................................... 20

*Ketcham v. U.S. Nat'l Park Serv.*,
    No. 16-CV-00017-SWS, 2016 WL 4268346 (D. Wyo. Mar. 29, 2016) ........................... 12, 13

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ........................................................................ 8

*Lands Council v. Powell*,
    395 F.3d 1019 (9th Cir. 2005) ......................................................... 11

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) .......................................................... 8

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) .................................................................... 9, 13

*Matera v. Google Inc.*,
    No. 15-CV-04062-LHK, 2016 WL 454130 (N.D. Cal. Feb. 5, 2016) ............................... 8, 20

*Nat'l Broad. Co. v. United States*,
    319 U.S. 190 (1943) ....................................................................... 16

*Ninilchik Traditional Council v. United States*,
    227 F.3d 1186 (9th Cir. 2000) ......................................................... 16

*Norton v. S. Utah Wilderness*,
    *All.*, 542 U.S. 55 (2004) ............................................................... 13

*Perez v. Mortg. Bankers Ass'n*,
    135 S. Ct. 1199 (2015) .............................................................. 14, 15

*Pres. Endangered Areas of Cobb's History (P.E.A.C.H.) v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242 (11th Cir. 1996).................................................................................................... 11

*Pres. Endangered Areas of Cobb's History (P.E.A.C.H.) v. U.S. Army Corps of Eng'rs*, 915 F. Supp. 378 (N.D. Ga. 1995).......................................................................... 11

*Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989)......................................................................................................... 18

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987)................................................................................... 8, 19

*Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689 (1933)......................................................................................................... 19

*Sw. Ctr. for Biological Diversity v. U. S. Forest Serv.*, 100 F.3d 1443 (9th Cir. 1996)........................................................................................ 11

*Tagg Bros. & Moorhead v. United States*, 280 U.S. 420 (1930)......................................................................................................... 16

*Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143 (1946)......................................................................................................... 16

*United States v. Carlo Bianchi & Co.*, 373 U.S. 709 (1963)......................................................................................................... 16

*United States v. Nixon*, 418 U.S. 683 (1974)......................................................................................................... 17

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519 (1978)......................................................................................................... 14

*W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116 (9th Cir. 2009) ......................................................................................... 9

*Wash. State Farm Bureau v. Marshall*, 625 F.2d 296 (9th Cir. 1980) ......................................................................................... 10

*Webster v. Doe*, 486 U.S. 592 (1988)......................................................................................................... 11

*Wong Yang Sung v. McGrath*, 339 U.S. 908 (1950)......................................................................................................... 14

*Wood v. McEwen*, 644 F.2d 797 (9th Cir. 1981) ..................................................................................... 8, 19

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)......................................................................................................... 17

**Constitution**

U.S. CONST. art. II § 1 ............................................................................................ 17

U.S. CONST. art. II, cl. 2 ......................................................................................... 17

U.S. CONST. art. II § 3 ....................................................................................... 17, 18

**Statutes**

5 U.S.C. § 551(4) ............................................................................................. 14, 15

5 U.S.C. § 551(7) ................................................................................................... 14

5 U.S.C. § 553 ................................................................................................... 14, 15

5 U.S.C. § 554 ................................................................................................... 14, 15

5 U.S.C. § 706(2)(B) .............................................................................................. 11

**Rules**

Fed. R. Civ. P. 26(c) ................................................................................................ 1

Fed. R. Civ. P. 26(c)(1) ........................................................................................... 7

Fed. R. Civ. P. 26(c)(1)(A) ...................................................................................... 7

Fed. R. Civ. P. 30(b)(6) ...................................................................................... 7, 15

**Other Authorities**

JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES, at § 807 (Ronald D. Rotunda & John E. Nowak eds., Carolina Acad. Press 1987) (1833)............................17

# INTRODUCTION

Asserting an unenumerated and unprecedented constitutional right to particular climate conditions, Plaintiffs challenge a sweeping array of largely unspecified agency actions, policies, and programs related to federal environmental and energy policy over the past several decades. They seek to have the Court require the President and eight Executive Branch departments and agencies draw up a new policy and then to have the Court impose and enforce that policy. In considering Defendants' petition for a writ of mandamus, the Ninth Circuit observed that "some of plaintiffs' claims as currently pleaded are quite broad, and some of the remedies the plaintiffs seek may not be available as redress." *In re United States*, 884 F.3d 830, 837 (9th Cir. 2018). The court instructed that "the district court needs to consider those issues further in the first instance," adding that "[c]laims and remedies often are vastly narrowed as litigation proceeds" and that the court had "no reason to assume this case will be any different." *Id.* at 838. In the meantime, the court also observed that the defendants "may seek protective orders, as appropriate, under Federal Rule of Civil Procedure 26(c)." *Id.* at 835.

Plaintiffs have now served Defendants with a new round of discovery requests, including requests to depose representatives of two federal executive agencies under Rule 30(b)(6), and Plaintiffs have informed Defendants that further requests will follow. As contemplated by the Ninth Circuit, Defendants now object to Plaintiffs' discovery requests and move for a protective order precluding all discovery. Such an order is justified for three reasons—in addition to the fundamental flaws in this suit that Plaintiffs' claims are nonjusticiable and that the unprecedented, sweeping constitutional right they assert has no foundation in the text or purposes of the Due Process Clause or in the history of the Nation. First, Plaintiffs' challenges to federal agency actions are governed by the Administrative Procedure Act ("APA"), and—with

exceptions not relevant here—judicial review in APA cases is limited to the administrative record.  Second, the APA's carefully constructed provisions governing notice-and-comment rulemaking and administrative adjudication, together with the respective departments and agencies' organic statutes establishing their respective authorities, foreclose any prospect for the Court to require the Defendant agencies and officials to take public policy positions or make factual assessments on matters concerning climate change through depositions, requests for admission, or other forms of discovery in this suit.  Those provisions also foreclose an adjudication of these factual and policy issues in this suit against those agencies or their officials, outside the procedures prescribed by Congress for matters within their jurisdiction to be resolved.  Finally, even if discovery in this case were not precluded by the APA, it would be barred by the Constitution, because Plaintiffs' attempt to elicit positions and proposals from executive agency officials on questions of public policy would invade the President's exclusive constitutional authority to supervise the Executive Branch, require the opinions of his principal officers, and formulate policy recommendations.

Because Defendants' proposed protective order would preclude all discovery in the case, Defendants ask this Court to stay discovery pending resolution of this motion.  In addition, and consistent with the Ninth Circuit's expectation that the claims in this case would be "vastly narrowed," *In re United States*, 884 F.3d at 838, Defendants have moved for judgment on the pleadings ("MJOP") and will soon move for summary judgment, as the Ninth Circuit also contemplated, *see id.* at 836.  Because a favorable ruling on either of those dispositive motions would eliminate the need for any discovery, Defendants also ask this Court to stay all discovery pending resolution of those motions.  *See In re United States*, 138 S. Ct. 443, 444 (2017).

## BACKGROUND

### I.    The Amended Complaint

As the Court has recognized, Plaintiffs' claims are "unprecedented."  ECF No. 83 at 52.

Plaintiffs assert an unenumerated and previously unimagined constitutional right to a "climate

system capable of sustaining human life."  *Id.*  They ask this Court to order President Obama

(and now President Trump), the Executive Office of the President, and eight federal agencies to

"prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions

and draw down excess atmospheric $CO_2$."  ECF No. 7 ("Am. Compl."), Prayer for Relief ¶ 7.

Plaintiffs claim that Defendants have known about the risks of climate change "for decades" but

have nevertheless "continued to permit, authorize, and subsidize fossil fuel extraction,

development, consumption, and exportation—activities producing enormous quantities of $CO_2$

emissions that have substantially caused or contributed to the increase in the atmospheric

concentration of $CO_2$."  Am. Compl. ¶¶ 5-7.  With one exception, Plaintiffs do not identify or

challenge specific agency actions, but instead challenge what they term the Defendants'

"affirmative aggregate actions."  *Id.* ¶¶ 1, 5, 44, 129, 163, 281.[1]

Plaintiffs predicate their demands on the Due Process Clause of the Fifth Amendment,

equal protection principles in the Fifth Amendment, unenumerated rights reserved by the Ninth

Amendment, and an asserted "public trust" duty, invoking an infrequently used doctrine under

state law whose principal purpose has been to govern state property rights in lands submerged

beneath tidal and navigable waterways.  Specifically, Plaintiffs complain that (1) the agencies

---

[1] Plaintiffs allege that the Jordan Cove LNG Terminal in Coos Bay, Oregon will produce significant greenhouse gas emissions that will harm Plaintiffs.  Am. Compl. ¶¶ 198-201.  As explained below and in Defendants' motion for judgment on the pleadings, any cognizable challenge to agency action regarding the Jordan Cove Terminal must be raised in the court of appeals.  *See* MJOP 16-17 & n.3.

have taken "deliberate actions" that have "cumulatively resulted in dangerous levels of atmospheric $CO_2$, which deprive Plaintiffs of their fundamental right to life, liberty, and property," Am. Compl. ¶ 280; (2) Plaintiff youths are a protected class and, as such, are discriminated against by laws and actions that "favor the present, temporary economic benefits of certain citizens, especially corporations, over Plaintiffs' rights to life, liberty, and property," *id.* ¶¶ 294, 301; (3) Defendants have infringed on Plaintiffs' "right to be sustained by our country's vital natural systems, including our climate system," and their "right to a stable climate system," which are "implicit liberties protected from government intrusion by the Ninth Amendment," *id.* ¶¶ 303-04; and (4) Defendants have "failed in their duty of care as trustees to manage the atmosphere in the best interests of the present and future beneficiaries," including Plaintiffs, *id.* ¶ 310.

Plaintiffs seek a declaration that Defendants have violated their constitutional rights and the supposed public trust described above, that Section 201 of the Energy Policy Act is unconstitutional on its face, and that DOE/FE Order No. 3041 is unconstitutional as applied. *Id.*, Prayer for Relief ¶¶ 1, 3-5. They also seek an injunction prohibiting Defendants from future violations of the Constitution and alleged public trust obligations, and they ask the Court to order Defendants to "prepare a consumption-based inventory of U.S. $CO_2$ emissions," and "prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric $CO_2$." *Id.*, Prayer for Relief ¶¶ 2, 6-7. They request that the Court retain jurisdiction over the case for an indefinite period of time to monitor the government's compliance with the "national remedial plan." *Id.*, Prayer for Relief ¶ 8. Plaintiffs indicate that "[g]lobal atmospheric $CO_2$ concentrations must be reduced to below 350 [parts per million] by the end of the century," Am. Compl. ¶ 257, a goal that would require a "global reduction in $CO_2$

emissions of at least 6% per year, alongside approximately 100 gigatons of carbon drawdown this century from global reforestation and improved agriculture." *Id.* ¶ 258.

## II.    Procedural History

In November 2015, Defendants moved to dismiss Plaintiffs' claims on several grounds, including lack of standing, failure to state a cognizable constitutional claim, and failure to state a claim on a public trust theory. ECF No. 27. The magistrate judge recommended that the Court deny the motion. ECF No. 68. Defendants objected to the magistrate judge's recommendations. ECF No. 74. The Court adopted the magistrate judge's recommendations and denied Defendants' motion to dismiss. ECF No. 83.

On March 7, 2017, Defendants moved to certify the Court's order for interlocutory appeal. ECF No. 120. The magistrate judge recommended that the Court deny the motion. ECF No. 146. Defendants objected to the magistrate judge's findings and recommendations, ECF No. 149, but the Court adopted them and denied the motion on June 8, 2017. ECF No. 172. The next day, Defendants petitioned for a writ of mandamus in the Ninth Circuit, arguing that the Court erred rejecting the contention that Plaintiffs' claims are nonjusticiable and in finding that Plaintiffs have judicially enforceable rights in the climate, and that mandamus was the only means of obtaining timely and effective relief. ECF No. 177-1.

On December 11, 2017, the Ninth Circuit heard argument on mandamus petition. The panel members expressed skepticism about the breadth of plaintiffs' claims. As Judge Berzon put it, "I would hope that if this case did go forward, that it would be pared down and focused and directed at particular orders and agencies." Oral Arg. Recording at 11:23-11:33, *United States v. U.S. Dist. Court for Dist. of Or.*, No. 17-71692 (9th Cir. Dec. 11, 2017), https://www.ca9.uscourts.gov/media/.

On March 7, 2018, the Ninth Circuit denied Defendants' mandamus petition without prejudice. *In re United States*, 884 F.3d at 838. The court recognized that "some of plaintiffs' claims as currently pleaded are quite broad, and some of the remedies the plaintiffs seek may not be available as redress." *Id.* at 837. The court "also underscore[d] that this case is at a very early stage, and that the defendants have ample opportunity to raise legal challenges to decisions made by the district court on a more fully developed record, including decisions as to whether to focus the litigation on specific governmental decisions and orders." *Id.* The court added that "[c]laims and remedies often are vastly narrowed as litigation proceeds" and that the court had "no reason to assume this case will be any different." *Id.* at 838. Ultimately, however, the court "decline[d] to exercise [its] discretion to grant mandamus relief at [that] stage of the litigation[,]" in part because no discovery requests had yet been filed. *Id.* at 835, 838. The court reiterated that Defendants could continue to "raise and litigate any legal objections they have," including by challenging future discovery orders, "seeking mandamus in the future," or "asking the district court to certify orders for interlocutory appeal of later rulings." *Id.* at 835-38.

The district court has ordered the parties to proceed with discovery, and has set trial for October 29, 2018. ECF Nos. 181, 189, 192. In April 2018, Plaintiffs served Defendants with 17 expert reports. On May 4, 2018, Plaintiffs served more than 100 Requests for Admissions and Rule 30(b)(6) notices on two named agency defendants, the United States Department of Agriculture ("USDA") and Department of the Interior ("DOI"). These RFAs are broad in scope, seeking admissions in certain cases dating back to the 1960s on matters that are not purely factual but extend to topics such as policy opinions on whether certain resources are at risk and admissions concerning "cultural services" such as "spiritual renewal and, aesthetic enjoyment." *See, e.g.*, ECF No. 194-3 at 16-17; ECF No. 194-4 at 29. Among the topics noticed for the

30(b)(6) depositions, Plaintiffs requested the United States to designate a witness to respond to "any analysis or evaluation" related to "atmospheric $CO_2$ concentrations, climate change targets, or greenhouse gas emissions" that "would avoid endangerment of human health and welfare for current and future generations . . . ."  Ex. A at 6 (Pls.' FRCP 30(b)(6) Notice of Deposition – Def. Dep't of Interior); Ex. B at 6 (Pls.' FRCP 30(b)(6) Notice of Deposition – Def. Dep't of Agric.).  Plaintiffs further noticed a topic concerning the role of DOI and USDA in implementing President Trump's energy policy.  Plaintiffs have not yet served any revised discovery requests on the other agency defendants, including the EPA and Department of Energy, against whom Plaintiffs focus many of the allegations in the Amended Complaint, but Plaintiffs have informed Defendants that they anticipate serving additional discovery requests in the weeks ahead.[2]

## LEGAL STANDARD

A protective order should be granted when the moving party establishes "good cause" for the order and justice requires "an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  The authority of the Court under Rule 26(c) includes the ability to enter an order "forbidding the disclosure or discovery" altogether.  Fed. R. Civ. P. 26(c)(1)(A); *see Havasupai Tribe v. Robertson,* 943 F.2d 32, 34 (9th Cir. 1991).  The Ninth Circuit has routinely upheld protective orders precluding all discovery in cases governed by the APA's record-review rule.  *See id.*; *Animal Def. Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir. 1988), *amended by* 867 F.2d 1244 (9th Cir. 1989); *Friends of the Earth v. Hintz,* 800 F.2d 822, 827-29 (9th Cir. 1986).

---

[2] The United States is still analyzing the discovery propounded on May 4, 2018.  This motion focuses on the *propriety of discovery generally* and in no way waives the United States' right to seek a protective order directed at the specific requests propounded on May 4, 2018, or any future discovery Plaintiffs may propound.

Federal courts likewise have broad discretion to control their dockets by staying proceedings.  *See, e.g., Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005).  In determining whether to grant a stay, courts weigh the "competing interests which will be affected by the granting or refusal to grant a stay," including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *See Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  Courts regularly stay discovery pending decisions on other motions that would moot the need for discovery, including dispositive motions or motions for a protective order precluding all discovery.  *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir. 1987); *Wood v. McEwen,* 644 F.2d 797, 801-02 (9th Cir. 1981); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 454130, at *2 (N.D. Cal. Feb. 5, 2016); *see also In re United States*, 138 S. Ct. at 444.

## ARGUMENT

### I.    The Court Should Grant a Protective Order Precluding All Discovery

In addition to the grounds previously raised by Defendants and renewed here concerning the nonjusticiability of the suit and the absence of any judicially enforceable rights in the Earth's climate under the Constitution or an asserted "public trust," this Court should grant a protective order for any or all of three reasons.  First, Plaintiffs' challenges to agency actions and inaction are governed by the APA, which—with exceptions not relevant here—limits judicial review to the administrative record and therefore precludes and obviates the need for any discovery. Second, the APA's carefully constructed provisions governing notice-and-comment rulemaking and administrative adjudication, together with the respective departments and agencies' organic

statutes establishing their respective authorities, foreclose any prospect for the Court to require

the Defendant agencies and officials to take public policy positions or make factual assessments

on matters concerning climate change through depositions, requests for admission, or other

forms of discovery in this suit.  Those provisions also foreclose an adjudication of these factual

and policy issues in this suit against those agencies or their officials, outside the procedures

prescribed by Congress for matters within their jurisdiction to be resolved.  Third, even if

discovery in this case were not precluded by the APA, it would be barred by the Constitution,

because Plaintiffs' attempt to elicit positions and proposals from executive agency officials on

questions of public policy would invade the President's exclusive constitutional authority to

supervise the Executive Branch, require the opinions of his principal officers, and formulate

policy recommendations.

### A.      Plaintiffs' Claims Must Be Reviewed on an Administrative Record

As explained in detail in Defendants' motion for judgment on the pleadings, Plaintiffs

ultimately challenge administrative agency actions and inaction, and their claims are therefore

cognizable only under the APA, which Congress established as the exclusive mechanism to seek

judicial review of agency actions and inactions of the kind that underlie Plaintiffs' claims.  *See*

MJOP 11-16 *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1122-23 (9th Cir. 2009).

And review may be sought under the APA only by challenging discrete agency action, not on a

broad programmatic (much less Executive-Branch-wide) basis.  *See Lujan v. Nat'l Wildlife*

*Fed'n*, 497 U.S. 871, 891 (1990).[3]

---

[3] Other statutes, such as Section 307 of the Clean Air Act, may also provide relevant rights of
action to challenge agency actions that regulate or otherwise relate to greenhouse gas
emissions.  But Plaintiffs do not invoke any such statutory right of action.

Defs.' Mot. for Protective Order & Stay of Discovery                                          9
*Juliana v. United States*, No. 6:15-cv-01517-TC

Because Plaintiffs' claims must proceed under the APA, they are not entitled to conduct discovery of Defendants. It is a "fundamental principle[] of judicial review of agency action" that review must be based on "the administrative record already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). "The task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Id.* at 743-744 (citation omitted). "The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Id.* at 744. "The factfinding capacity of the district court is thus typically unnecessary to judicial review of agency decisionmaking." *Id.*; *see Citizens to Preserve Overton Park v. Volpe*, 411 U.S. 402, 420 (1971).

The rule that APA claims must be reviewed based on the administrative record, and that APA plaintiffs are therefore not entitled to discovery, is "black-letter administrative law," *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013), and it has been enforced repeatedly by the Ninth Circuit, including in environmental cases like this one. *See, e.g.*, *Havasupai*, 943 F.2d at 34 (affirming district court's limitation on the scope of its review to the administrative record and barring discovery); *Friends of the Earth*, 800 F.2d at 827-29 (affirming district court's order quashing litigation depositions on ground that review was limited to the administrative record); *Wash. State Farm Bureau v. Marshall*, 625 F.2d 296, 305 (9th Cir. 1980) (holding that district court should have limited its review to evidence before the agency at the

time of the decision); *see also Lands Council v. Powell,* 395 F.3d 1019, 1029 (9th Cir. 2005)

(reiterating rule while resolving case on other grounds).[4]

District courts, moreover, have often implemented the record-review rule by issuing

protective orders under Rule 26(c), as Defendants ask the Court to do here.  *See, e.g., Evans v.*

*Salazar*, No. C08-0372-JCC, 2010 WL 11565108, at *2 (W.D. Wash. July 7, 2010); *Inland*

*Empire Pub. Lands Council v. Glickman*, 911 F. Supp. 431, 437 (D. Mont. 1995), *aff'd*, 88 F.3d

697 (9th Cir. 1996); *see also Harvard Pilgrim Health Care of New England v. Thompson*, 318 F.

Supp. 2d 1, 8 (D.R.I. 2004); *Pres. Endangered Areas of Cobb's History (P.E.A.C.H.) v. U.S.*

*Army Corps of Eng'rs,* 915 F. Supp. 378, 383-84 (N.D. Ga. 1995), *aff'd*, 87 F.3d 1242 (11th Cir.

1996); *Charlton Mem'l Hosp. v. Sullivan*, 816 F. Supp. 50, 51 (D. Mass. 1993).

Plaintiffs' assertion of constitutional claims does not make their case any less of a

challenge to agency action or remove it from the scope of the APA's procedural rules, including

the record-review rule.  As explained in Defendants' motion for judgment on the pleadings,

Section 706(2)(B) of the APA expressly contemplates judicial review of constitutional

challenges to agency action when it directs a reviewing court to hold unlawful agency action that

is "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. 706(2)(B), and the

Supreme Court has decided constitutional claims under the APA, *see, e.g.*, *Webster v. Doe*, 486

U.S. 592, 603-04 (1988).  MJOP 11-16.  Numerous district courts have recognized that

---

[4] The Ninth Circuit has allowed extra-record review or limited discovery in only four narrow
circumstances: (1) when the agency has failed to explain its actions so as to frustrate judicial
review; (2) when it appears that the agency has relied on documents or materials not included in
the administrative record; (3) when necessary to explain technical terms or complex subject
matter involved in the agency action; or (4) when there is a strong showing of bad faith and
improper behavior by the agency.  *Sw. Ctr. for Biological Diversity v. U. S. Forest Serv.,* 100
F.3d 1443, 1450 (9th Cir. 1996).  Even if those are all valid exceptions, *but see Overton Park*,
411 U.S. at 420 (contemplating narrower exception), none of them is implicated here.

constitutional challenges to agency action are just as strictly governed by the record-review rule as are statutory challenges. *See, e.g.*, *Chiayu Chang v. U.S. Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 161-62 (D.D.C. 2017) (denying motion for discovery outside the administrative record); *Ketcham v. U.S. Nat'l Park Serv.*, No. 16-CV-00017-SWS, 2016 WL 4268346, at *1 (D. Wyo. Mar. 29, 2016) (denying motion objecting to filing of the administrative record); *N. Arapaho Tribe v. Ashe*, 92 F. Supp. 3d 1160, 1170–71 (D. Wyo. 2015) (granting motion to strike extra-record evidence); *Harvard Pilgrim Health Care*, 318 F. Supp. 2d at 8 (affirming magistrate judge's grant of a protective order); *Jarita Mesa Livestock Grazing Assoc. v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1199, 1237 (D.N.M. 2014) (granting motion to preclude discovery outside the administrative record); *Evans v. Salazar*, No. C08-0372-JCC, 2010 WL 11565108, at *2 (W.D. Wash. July 7, 2010) (granting protective order).

The district court's decision in *Chiayu Chang* is illustrative. There, the plaintiffs challenged the government's denial of their visa petitions, alleging retroactivity, due process, and equal protection claims. 254 F. Supp. 3d at 161. The plaintiffs moved for discovery, arguing "that the constitutional or 'non-APA' nature of their [claims] exempts them from the record review rule because those claims are brought under the court's 'equitable power' and the Constitution rather than under the APA." *Id.* at 161. The court rejected this tactic, holding that "discovery on plaintiffs' equal protection and due process claims is not appropriate." *Id.* at 162. "To hold otherwise," the court reasoned, "would 'incentivize every unsuccessful party to agency action to allege . . . constitutional violations' in order to 'trade in the APA's restrictive procedures for the more evenhanded ones of the Federal Rules of Civil Procedure.'" *Id.* at 161-62 (quoting *Jarita Mesa*, 58 F. Supp. 3d at 1238).

Similarly, in *Ketcham*, plaintiffs sought declaratory and injunctive relief against the
National Park Service for allegedly violating plaintiffs' First Amendment right by denying public
access to areas in Yellowstone National Park where the government was culling bison.  2016 WL
4268346, at *1.  After the government filed an administrative record with the court, the plaintiffs
objected, "asserting the Court should respect their decision to bring this action as a constitutional
claim rather than an APA claim."  *Id.*  Like the court in *Chiayu Chang*, the court in *Ketcham*
rejected plaintiffs' tactic, reasoning that "[t]o distinguish between a 'stand-alone constitutional
challenge' and an 'APA challenge,' as urged by Plaintiffs, would run afoul of Congress's intent."
*Id.* at *2; *accord, e.g.*, *E. Bridge, LLC v. Chao*, 320 F.3d 84, 91 (1st Cir. 2003) ("[T]he present
constitutional claim is really just a recharacterization of their administrative claim, and we will
not allow plaintiffs to circumvent the statutory review process with an agile game of word
play."); *Harvard Pilgrim*, 318 F. Supp. 2d at 10 ("The APA's restriction of judicial review to the
administrative record would be meaningless if any party seeking review based on statutory or
constitutional deficiencies was entitled to broad-ranging discovery."); *Charlton Mem'l Hosp.*,
816 F. Supp. at 51 (granting a protective order because "counts alleging violations of the Equal
Protection Clause … cannot so transform the case that it ceases to be primarily a case involving
judicial review of agency action").

In sum, the need to protect Defendants from undue and unlawful discovery in violation of
the APA's record-review requirement readily justifies the grant of a protective order under Rule
26(c).  As explained in Defendants' motion for judgment on the pleadings, Plaintiffs have not yet
identified any "discrete" final agency actions properly subject to challenge in this Court.  *Norton
v. S. Utah Wilderness All.*, 542 U.S. 55, 62, 64 (2004); *see Lujan*, 497 U.S. at 891; MJOP 16-22.
If Plaintiffs identify any such discrete agency action—perhaps by amending their complaint as

part of "vastly narrow[ing]" their claims, as the Ninth Circuit envisioned, *In re United States*, 884 F.3d at 838—and if Plaintiffs' claims are otherwise cognizable and not dismissed on some other ground, the appropriate agency would compile an administrative record as part of the judicial review of that action.

### B.    Requiring Agencies to Take Policy Positions in Discovery Conflicts with the APA's Provisions Regulating Rulemaking and Adjudication

A protective order is also justified because the discovery envisioned by Plaintiffs conflicts with the APA in another way:  Requiring federal agencies to take positions on policy questions through depositions and requests for admission would violate the APA's carefully articulated scheme for agencies to make factual assessments and policy determinations through rulemaking and adjudication in matters within their jurisdiction.

The APA sets forth a "comprehensive regulation of procedures" for agency decision-making. *Wong Yang Sung v. McGrath*, 339 U.S. 33, 36 *modified*, 339 U.S. 908 (1950).  The APA defines a "rule" to mean "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4).  "[A]djudication" means "agency process for the formulation of an order," *id.* § 551(7), which in turn "means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing," *id.* § 551(6).  The APA then prescribes detailed and mandatory procedures for agencies to follow in rulemaking and formal adjudication.  *See* 5 U.S.C. §§ 553, 554.

"Time and again," the Supreme Court has explained that the APA establishes the exclusive procedural requirements for agency decisionmaking, and the courts are not free to alter those requirements.  *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1207 (2015); *see Vt.*

*Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 546 (1978).  To require agencies to comply with discovery seeking official positions on matters of factual assessment and questions of policy would, however, impermissibly conflict with the procedures prescribed by the APA and deprive the public of the ability to provide input where the APA's rulemaking provisions or agency procedures require.  Consistent with Plaintiffs' stated aims of probing the Executive Branch's policies on climate change, Plaintiffs' discovery requests have asked (and surely will continue to ask) the agencies to make factual assessments and statements on numerous complex and controversial policy issues in an effort to have them craft, and the Court enforce, an "enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric $CO_2$."  Am. Compl., Prayer for Relief ¶ 7.  The responses of agency officials to such questions on behalf of their agencies, *see* Fed. R. Civ. P. 30(b)(6), could in many cases fall within the broad definitions of "rule" and "adjudication" provided by the APA, *see* 5 U.S.C. § 551(4), (7), for matters that Congress has committed to the agencies.  Yet they would be offered by individual deponents, without public input from other stakeholders or any of the relevant orderly procedures of agency decisionmaking contemplated by the APA.  *See* 5 U.S.C. §§ 553, 554.  These and similar required responses to discovery thus would be in direct contravention of Congress's judgment in the APA and the agencies' respective organic statutes to vest such determinations in the agencies' administrative processes in the first instance.  Indeed, beyond discovery, a trial on such matters against the Defendant agencies (much less the President) would be fundamentally inconsistent with the APA and the agencies' organic statutes.

Plaintiffs thus seek to force the agencies to do something that the APA forbids and is beyond this Court's authority to require.  Just as this Court cannot expand the APA's procedural requirements, *see Perez*, 135 S. Ct. at 1207, it likewise cannot authorize their violation.  *See, e.g.*,

*In re SEC ex rel. Glotzer v. Stewart*, 374 F.3d 184, 188-192 (2d Cir. 2004) (refusing to authorize discovery request directed at federal agency that violated APA requirements); *cf. Am. Elec. Power Co. v. Connecticut (AEP)*, 564 U.S. 410, 428 (2011) (noting, in rejecting climate-change-related claim, that courts "may not . . . issue rules under notice-and-comment procedures").  A protective order precluding discovery against the agencies is accordingly warranted.

### C.    The Constitutional Separation of Powers Bars Discovery

Finally, even apart from the requirements of the APA, the Constitution's separation of powers bars the discovery that Plaintiffs envision here.  Even before the enactment of the APA, the Supreme Court recognized that permitting an agency's "findings to be attacked or supported in court by new evidence would substitute the court for the administrative tribunal[,]" *Tagg Bros. & Moorhead v. United States*, 280 U.S. 420, 444 (1930), a step that would improperly allow the court to "usurp[] the agency's function[,]" *Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946); *see also Nat'l Broad. Co. v. United States*, 319 U.S. 190, 227 (1943) (stating that "[t]he court below correctly held that its inquiry was limited to review of the evidence before the Commission" in a challenge to agency action under the First Amendment).  Moreover, "in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed," the Supreme Court "has held that consideration is to be confined to the administrative record and that no de novo proceeding may be held."  *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963); *see also Dickinson v. Zurko*, 527 U.S. 150, 155 (1999); *Ninilchik Traditional Council v. United States,* 227 F.3d 1186, 1194 (9th Cir. 2000) (explaining that APA judicial review provisions "function[] as a default judicial review standard").

Limiting review of agency action to the agency record reflects fundamental separation of powers principles.  A fortiori, this suit, in which Plaintiffs seek discovery in aid of requiring the Defendant agencies (and the President) to develop and implement a comprehensive, government-wide climate policy, *without regard to the agencies' existing statutory authorities*, trenches even more fundamentally on the separation of powers.  The Constitution provides that "the executive power shall be vested in a President of the United States." U.S. CONST. art. II, § 1.  As part of the executive power, the "President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." *United States v. Nixon*, 418 U.S. 683, 708 (1974).  That principle is also reflected in the Opinion Clause of the Constitution, which vests in the President the exclusive power to "require the Opinion . . . of the principal Officer in each of the executive Departments, upon any Subject relating to the Duties of their respective Offices." U.S. CONST. art. II, § 2, cl. 1; *see Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 641 n.9 (1952) (Jackson, J., concurring) (describing President's power under the Opinion Clause).  The Recommendations Clause of the Constitution similarly vests the President with power to "recommend to" Congress for "Consideration such Measures as he shall judge necessary and expedient." U.S. CONST. art. II, § 3.  Like the Opinion Clause, the Recommendations Clause presupposes that the President "must possess more extensive sources of information" than the other branches.  JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES, at § 807 (Ronald D. Rotunda & John E. Nowak eds., Carolina Acad. Press 1987) (1833).

By contrast, courts exercising the judicial power "may not commission scientific studies or convene groups of experts for advice," and accordingly "lack the scientific, economic, and technological resources an agency can utilize in coping with" complex policy problems. *AEP*,

564 U.S. at 428. Just as the President may not compel an advisory opinion from a court on a question of law, *see, e.g., Flast v. Cohen*, 392 U.S. 83, 96 n.14 (1968), a court may not compel the opinion of an executive official on a question of policy. Similarly, because the President's duty requires him to recommend only what "*he* shall judge necessary and expedient," U.S. CONST. art. II, § 3 (emphasis added), the Constitution makes clear that this exclusively executive power must remain free from interference. The Supreme Court has accordingly rejected discovery demands that "threaten substantial intrusions on the process by which those in closest operational proximity to the President advise the President." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 381 (2004) (internal quotation marks and citation omitted).

The discovery sought by Plaintiffs implicates the same separation of powers concerns. Plaintiffs seek to probe the views of federal agencies concerning questions of national environmental and energy policy and to require them to make factual and predictive judgments outside the scope of governing procedures and authority. In the very first revised discovery requests served, Plaintiffs sought binding Rule 30(b)(6) deposition testimony seeking the official views of federal agencies on their roles in implementing the President's energy policy, including the departments' "analysis or evaluation" of various issues related to climate change. And this is presumably just the beginning. Allowing Plaintiffs to exploit the civil litigation system to marshal the policy positions of federal agencies would displace the President as the superintendent of the Executive Branch and encroach on his exclusive authority to elicit the views of federal agencies in formulating national policies for addressing important issues of general concern. Congress may not "encroach[] upon a power that the text of the Constitution commits in explicit terms to the President," *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440,

482 (1989) (Kennedy, J., concurring), and neither may the Judiciary.  Defendants' motion for a

protective order against all discovery should accordingly be granted.

## II.    The Court Should Stay All Discovery Pending Resolution of this Motion and Defendants' Dispositive Motions

In addition to requesting a protective order precluding discovery, Defendants also

respectfully ask this Court to exercise its authority to stay all discovery in light of the substantial

separation of powers and other legal obstacles discussed above and in the interests of judicial

economy and avoiding a needless expenditure of resources by both parties.  *See e.g., Sinclair*

*Ref. Co. v. Jenkins Petroleum Process Co.,* 289 U.S. 689, 693-94 (1933).  At a minimum, this

Court should stay discovery pending resolution of this motion, which—if granted—would mean

that no discovery is necessary or appropriate.

Moreover, the Court should stay discovery pending its resolution of Defendants' motion

for judgment on the pleadings, which Defendants have also filed today, and Defendants' motion

for summary judgment, which Defendants will file in the near future.  *See In re United States*,

884 F.3d at 836 (noting that Defendants "still have the usual remedies before the district court

for nonmeritorious litigation, for example, seeking summary judgment on the claims").  A

favorable ruling on either of those motions would terminate the litigation and thus eliminate any

need for discovery.  For that reason, district courts have frequently granted—and the Ninth

Circuit has frequently upheld—stays of discovery while dispositive motions are pending. *See,*

*e.g.*, *Rutman Wine*, 829 F.2d at 738 ("It is sounder practice to determine whether there is any

reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo

the expense of discovery."); *Wood*, 644 F.2d at 801-02 (upholding grant of protective order

suspending discovery where the legal sufficiency of plaintiff's complaint was challenged).  The

Supreme Court, moreover, recently granted a stay of discovery while the Ninth Circuit considers

the government's dispositive motion in another case challenging Executive Branch policy. *See In re United States*, 138 S. Ct. at 444.

A stay of discovery will not prejudice Plaintiffs. Defendants' dispositive motions can be resolved without discovery, *cf. Jarvis v. Regan,* 833 F.2d 149, 155 (9th Cir. 1987), and only very modest discovery has occurred to date, so a stay would not cause any serious disruption, *see Matera*, 2016 WL 454130, at *4. At most, Plaintiffs may complain of a short-term delay. But it was Plaintiffs who waited years to bring this suit, and even more years to serve their current discovery requests. Thus, any argument of harm arising from a stay would be exceedingly strained, at best. The balance of harms tips strongly in Defendants' favor, and the Court should accordingly grant a stay.

## **CONCLUSION**

The Court should grant a protective order precluding all discovery. The Court should also stay all discovery pending resolution of this motion and Defendant's dispositive motion for judgment on the pleadings and forthcoming motion for summary judgment.


Dated: May 9, 2018                    Respectfully submitted,

                                      JEFFREY H. WOOD
                                      Acting Assistant Attorney General
                                      Environment & Natural Resources Division

                                      */s/ Clare Boronow*
                                      LISA LYNNE RUSSELL
                                      GUILLERMO A. MONTERO
                                      SEAN C. DUFFY (NY Bar No. 4103131)
                                      MARISSA PIROPATO (MA Bar No. 651630)
                                      CLARE BORONOW (admitted to MD bar)
                                      U.S. Department of Justice
                                      Environment & Natural Resources Division
                                      Natural Resources Section
                                      601 D Street NW

Washington, DC 20004
Telephone: (202) 305-0445
Facsimile:  (202) 305-0506
sean.c.duffy@usdoj.gov

*Attorneys for Defendants*