JULIA A. OLSON (OR Bar 062230)
JuliaAOlson@gmail.com
WILD EARTH ADVOCATES
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

ANDREA K. RODGERS (OR Bar 041029)
Andrearodgers42@gmail.com
Law Offices of Andrea K. Rodgers
3026 NW Esplanade
Seattle, WA 98117
Tel: (206) 696-2851

PHILIP L. GREGORY (*pro hac vice*)
pgregory@gregorylawgroup.com
Gregory Law Group
1250 Godetia Drive
Redwood City, CA 94062
Tel: (650) 278-2957

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**; **XIUHTEZCATL TONATIUH M.**, through his Guardian Tamara Roske-Martinez; et al.<br><br>Plaintiffs,<br><br>v.<br><br>The **UNITED STATES OF AMERICA**; **DONALD TRUMP**, in his official capacity as President of the United States; et al.,<br><br>Defendants. | Case No.: 6:15-cv-01517-TC<br><br>**NOTICE OF SUPPLEMENTAL DISPUTED FACTS RAISED BY DEFENDANTS' EXPERT REPORTS IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**NOTICE OF SUPPLEMENTAL DISPUTED FACTS RAISED BY DEFENDANTS' EXPERT REPORTS IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs respectfully submit this Notice of Supplemental Disputed Facts Raised by Defendants' Experts in Support of Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment. ECF No. 255. Each of the supplemental disputed facts identified below come from Defendants' expert reports, which were served on Plaintiffs on August 13, 2018, after the close of briefing on Defendants' Motion for Summary Judgment and are attached hereto as Exhibits 1-8. Dr. Sugar's Expert Report is filed subject to the Protective Order. The facts below do not represent all of the facts within Defendants' expert reports that Plaintiffs contest, but are illustrative. By providing this supplemental information to the Court, Plaintiffs in no way waive their rights to contest the admissibility of Defendants' expert reports or expert testimony prior to and during trial.

**Supplemental Statement of Disputed Facts from Defendants' Expert Reports**

<u>Defendants Dispute That Plaintiffs Have Article III Standing</u> (ECF No. 255 at 3-28)

<u>Defendants Dispute Plaintiffs' Evidence Of Their Concrete, Particularized, Actual Harms</u> (ECF No. 255 at 4-11).

1. "As a threshold matter, a medical professional would not simply rely on a complaint or a declaration filed in a lawsuit to establish asthma and/or allergy symptoms." Expert Report of Dr. Norman I. Klein, MD at 3.

2. "Dr. Van Susteren's methods fall below reasonable standards of practice, and thus, her report and opinions therein are not valid to a reasonable degree of medical certainty." Expert Report of Dr. Jeffrey Sugar, MD at 5.

3. "While a substantial body of literature referred to by the Plaintiffs' experts (in addition to others that I have reviewed) have demonstrated an increased association of risk of various health

effects, including neurological and psychological impacts, with climate change, these studies do not independently establish that the Plaintiffs' specific health effects are primarily caused by climate change and its possible repercussions." Expert Report of Dr. Arthur Partikian at 3.

4.  "In her report [Dr. Van Susteren] describes an array of psychiatric and medical consequences of climate change, but she never directly links any of these dire consequences . . . to any individual plaintiffs. They remain theoretical possibilities, reported in various studies of natural disasters, but *not* conclusively identified in any of the Plaintiffs she examined." Expert Report of Dr. Jeffrey Sugar, MD at 17.

> <u>Defendants Dispute Plaintiffs' Injuries Are Fairly Traceable To Defendants' Misconduct</u> (ECF No. 255 at 11-23).
> <u>Defendants Dispute The Federal Government Has Put Plaintiffs In A Position Of Danger In Violation Of The Fifth Amendment</u> (ECF No. 255 at 46-49).

5.  "Even if the individual Plaintiffs' complaints of allergy and asthma symptoms were credited, an examination of other potential contributing factors must be evaluated before climate change could be determined as a contributing, much less primarily contributing, factor to these specific Plaintiffs." Expert Report of Dr. Norman I. Klein, MD at 3.

6.  "Similarly, other respiratory allergies also have contributing factors that do not concern climate change." Expert Report of Dr. Norman I. Klein, MD at 4.

7.  "The reports of Plaintiffs' experts Dr. Trenberth and Prof. Running do not and cannot reliably tie global climate change due to the Defendants' conduct at issue to the claimed injuries they allege affected Plaintiffs where they live, work, or recreate." Expert Report of Dr. John P. Weyant at 4.

8. "By failing to analyze the potential confounding effect of local conditions, Dr. Trenberth reaches conclusions about the impacts on Plaintiffs that are unsupported and therefore unreliable." Expert Report of Dr. John P. Weyant at 10.

9. "Overall, Dr. Trenberth's conclusions are not supported by analysis that allows one to determine how and to what degree Jaime's experiences with water shortages, wildfires, droughts, or heat waves are exacerbated by human-induced climate change." Expert Report of Dr. John P. Weyant at 11.

10. "The Oregon Department of Forestry chart undermines Dr. Trenberth's assertions that 2015 was extraordinary and that the wildfire season has become longer and more intense due to human-induced climate change." Expert Report of Dr. John P. Weyant at 14.

11. "When Prof. Running makes claims about injuries to Plaintiffs, he simply presumes that human-induced climate change is the major cause of the multiple hydrological and ecological changes that he discusses, despite the fact that population growth and migration, forest and water management practices, and wildfire and flood prevention measures are also important determinants of the climate events he analyzed." Expert Report of Dr. John P. Weyant at 15.

12. "Complicated interactions are emblematic of the confounding factors that scientists need to consider when examining the influence of climate change. It is the part of the reason why Prof. Running's statement that an increased wildfire season due to climate change has and will affect many of the Plaintiffs is an overbroad assertion." Expert Report of Dr. John P. Weyant at 18.

13. "Other sources of GHG emissions dwarf emissions from fossil fuels in the United States." Expert Report of Dr. John P. Weyant at 18.

14. "I estimate that $CO_2$ emissions caused by all of the conduct at issue, including emissions allegedly caused directly by Defendants, emissions allegedly caused by Defendants' affirmative policy acts, and emissions allegedly caused by Defendants' alleged failure to act, comprise no more than 4% of global emissions." Expert Report of Dr. James L. Sweeney at 60.

15. "At least 96% of global emissions were caused by (i) countries other than the U.S., or (ii) fossil fuel consumption by entities other than the federal government that would have occurred absent Defendants' conduct at issue." Expert Report of Dr. James L. Sweeney at 60.

16. "[E]missions caused by Defendants' affirmative policy acts (e.g., subsidies) were small as well." Expert Report of Dr. James L. Sweeney at 63.

17. "Plaintiffs and their experts offer no analysis to link the failure to develop policies to the impacts on GHG emissions." Expert Report of Dr. James L. Sweeney at 66.

18. "Simple economic analysis suggests that in the rest of the world, fossil fuel consumption and $CO_2$ emissions would have increased by a small amount in response to the U.S.'s hypothetical conduct of eliminating $CO_2$ emissions." Expert Report of Dr. James L. Sweeney at 68.

19. "Erickson selectively targeted data and tailored his methods to inflate the beneficial impacts of subsidy reform on fossil fuel consumption and associated emissions reductions." Expert Report of David G. Victor at 4.

20. "The effect of oil subsidy reforms on emissions will be small to zero." Expert Report of David G. Victor at 4.

21. "The studies that Erickson cites in support of his analysis of the impacts of subsidies on oil production do not substantiate his claims." Expert Report of David G. Victor at 4.

22. "With respect to the impacts of federal coal leasing policies, I again find that Erickson's conclusions are not supported by the breadth of nuanced research on this topic." Expert Report of David G. Victor at 4.

23. "Stiglitz fails to identify plausible, real-world actions that the U.S. government could have taken that would have led to appreciably different outcomes with respect to domestic and international energy systems." Expert Report of David G. Victor at 5.

24. "Erickson creates the impression that emissions control policies should pinpoint only energy-related combustion of fossil fuels and niche industrial activities, such as production of cement." Expert Report of David G. Victor at 6.

25. "Erickson fails to articulate the fact that overall U.S. emissions contributions have been declining since 2005." Expert Report of David G. Victor at 8.

26. "Even if the U.S. eliminates all of its territorial 272 GHG emissions, and by extension all of its $CO_2$ emissions, a substantial share (88%) of total global GHG emissions would remain." Expert Report of David G. Victor at 10.

27. "US oil and gas producers extract commodities worth \$245b per year. The subsidy embodied in the output is only about 1.9% of the total market value of production. In my view, subsidies worth that tiny fraction of the total value are not material to an industry whose prices can swing many multiples of this percentage in a financial quarter." Expert Report of David G. Victor at 12.

28. "I believe that the dependence on fossil fuels which existed prior to oil crises of the 1970s, and which exists today, is the 'inevitable consequence of history.'" Expert Report of David G. Victor at 30.

29. "Stiglitz misrepresents the magnitude and breadth of the Federal government's contributions to R&D." Expert Report of David G. Victor at 30.

30. "In the late 1970s, there was little experience with renewables technology, and what experience did exist suggests such technologies would be substantially more costly than existing commercial rivals." Expert Report of David G. Victor at 33.

31. "Erickson analysis relies on cherry-picked subsidy statistics that focus on fossil energy subsidies, belying the larger picture." Expert Report of David G. Victor at 19.

32. "Erickson has selectively targeted data and tailored his methods to inflate the beneficial impacts of subsidy reform on U.S. consumption of fossil fuels, and associated reductions in emissions contributions." Expert Report of David G. Victor at 19.

33. "The effect of oil subsidy reforms on emissions will be much smaller than suggested by Erickson, because other factors have a much larger impact on production decisions, the industry is highly competitive and responsive to changes in market conditions and production costs." Expert Report of David G. Victor at 19.

Defendants' Dispute Plaintiffs' Injuries Can Be Redressed (ECF No. 255 at 23-28)

34. "I conclude that there is considerable doubt as to whether Dr. Robertson's proposed agricultural methods can deliver the amount of GHG abatement that Dr. Robertson claims at any price." Expert Report of Dr. Daniel Sumner at 8.

35. "Research, some of it conducted by Dr. Robertson himself in his academic role, demonstrates that some of his proposed methods are not technically viable; that others are not economically feasible; and that for others, an abatement amount cannot be reliably estimated." Expert Report of Dr. Daniel Sumner at 8.

36. "Moreover, USDA research indicates that, even after correcting for these issues, Dr. Robertson's conclusion as to the potential amount of abatement is implausibly large." Expert Report of Dr. Daniel Sumner at 8.

37. "The low-carbon energy systems proposed by Plaintiffs' experts, Professor Jacobson and Professor Williams, are not technically feasible, and assume the existence of technologies that are in development and are decades from commercial acceptance." Expert Report of Dr. James L. Sweeney at 9.

38. "Neither Professor Jacobson nor Professor Williams provides a credible estimate of the full costs of their respective proposals." Expert Report of Dr. James L. Sweeney at 9.

39. "Plaintiffs' experts have not demonstrated that their approaches are realistic or likely to succeed in practice." Expert Report of Dr. James L. Sweeney at 9.

40. "If the U.S. halted its use and production of fossil fuels, the prices of these fuels would fall and other counties would increase their use of fossil fuels." Expert Report of Dr. James L. Sweeney at 13.

41. "Only a very small fraction of these sources [of U.S. greenhouse gas emissions are] directly controlled by the federal government." Expert Report of Dr. James L. Sweeney at 56.

42. "Many elements of the energy system transformations proposed by Professors Jacobson and Williams are not technically feasible." Expert Report of Dr. James L. Sweeney at 71.

43. "Neither Professor Jacobson nor Professor Williams provides a credible estimate of the full costs of their respective proposals." Expert Report of Dr. James L. Sweeney at 72.

44. "Even if technically feasible, the energy system transformations proposed by Professors Jacobson and Williams are not economically viable." Expert Report of Dr. James L. Sweeney at 72.

45. "Professor Jacobson's and Professor Williams' goals are unrealistic considering the scope of the decisions that would need to be influenced and the government intervention required." Expert Report of Dr. James L. Sweeney at 92.

46. "Many elements of the energy system transformations proposed by Professors Jacobson and Williams are not technically feasible, would require significant investment by consumers or businesses to invent, develop, and/or adopt new low-carbon energy technologies, would require major consumer behavioral change, would involve significant costs borne by the government or directly by energy users, and would require leaps in technology." Expert Report of Dr. James L. Sweeney at 101.

47. "Jacobson's proposed timelines for building, installing, and deploying the necessary facilities and infrastructure to transition to his proposed energy system are unrealistic and likely infeasible by failing to address myriad real-world considerations." Expert Report of Howard J. Herzog at 3.

48. Dr. Jacobson "fails to evince that it is both technically and economically feasible to transition from a predominantly fossil fuel-based energy system to a 100% clean, renewable energy system for all energy sectors by 2050, with about 80% conversion by 2030." Expert Report of Howard J. Herzog at 4.

49. "The timeline proposed by Jacobson to transform the United States energy system to 100% WWS is unsubstantiated and unrealistic." Expert Report of Howard J. Herzog at 4.

50. "Specifically, Jacobson's proposed energy system would require large-scale development of new energy infrastructure, including solar and wind farms in addition to transmission, distribution, and storage infrastructure. Nowhere in his Expert Report does Jacobson address

siting, design, permitting, or financing for the necessary facilities and infrastructure." Expert Report of Howard J. Herzog at 4.

51. "Erickson oversimplifies the technical feasibility of the U.S. adopting a consumption-based inventory and accounting system." Expert Report of David G. Victor at 4.

52. "Erickson's Expert Report fails to note that even if the U.S. were to shift to a consumption-based accounting system, such a shift would increase the share of global emissions attributed to the U.S. by only about 1%." Expert Report of David G. Victor at 4.

53. "To implement consumption-based accounting in ways that actually influence the activities contributing to emissions, a broader accounting of GHGs is necessary than that which the current consumption-based accounting scheme can support." Expert Report of David G. Victor at 12.

DATED this 24th day of August, 2018.

Respectfully submitted,

*s/ Julia A. Olson*
Julia A. Olson, OR Bar 062230