JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

LISA LYNNE RUSSELL, Chief
GUILLERMO A. MONTERO, Assistant Chief
SEAN C. DUFFY (NY Bar. No. 4103131)
MARISSA A. PIROPATO (MA Bar. No. 651630)
CLARE BORONOW (admitted to MD bar)
FRANK J. SINGER (CA Bar No. 227459)
ERIKA NORMAN (CA Bar No. 268425)
Trial Attorneys
Natural Resources Section
601 D Street NW
Washington, DC 20004
Telephone: (202) 305-0445
Facsimile:  (202) 305-0506
sean.c.duffy@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| KELSEY CASCADIA ROSE JULIANA, *et al.*, | Case No. 6-15-cv-01517-AA |
| Plaintiffs, | |
| v. | |
| UNITED STATES OF AMERICA, *et al.*, | |
| Defendants. | |

**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION TESTIMONY OF PROFESSOR CATHERINE SMITH AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Defendants bring this motion pursuant to Federal Rules of Evidence 401, 402, 403, and 702 for an order *in limine* excluding the expert opinion testimony of Professor Catherine Smith because her testimony consists exclusively of legal opinions that are not relevant to any issues in dispute in this case. This motion is based upon the memorandum below and its attached exhibits. Defendants have conferred with Plaintiffs' counsel regarding this motion and Plaintiffs have indicated they oppose it.

## I.    INTRODUCTION

Professor Smith's Report, attached as Exhibit A ("Smith Rep."), cites the Constitution, international jurisprudence, several United States Supreme Court cases, and instances of executive, judicial, and societal discrimination against children throughout history to support her legal conclusion that children are a protected class warranting intermediate scrutiny by the nation's courts. The Ninth Circuit, however, prohibits opinion testimony on ultimate issues of law, *see Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004), and recognizes that resolving questions of law is the exclusive province of the trial judge. *See United States v. Weitzenhoff*, 35 F.3d 1275, 1290 (9th Cir. 1993). While Professor Smith posits that her opinions are historically and sociologically informed and thus not legal conclusions, the "history" she considers in her expert report consists of case law. The Smith Report should be excluded because it consists of legal advocacy with the pretense of sociological and historical analysis and improperly infringes on the judge's function by interpreting the law.

## II.    FACTUAL BACKGROUND

Professor Catherine Smith has a Juris Doctor degree and teaches at the University of Denver Sturm College of Law. Smith Rep. 1. She co-authored an amicus brief on the rights of children of same-sex parents in *Obergefell v. Hodges*, *id.*, and she has had articles about equal

protection and children's rights published by Law and Contemporary Problems, the Washington University Law Review, and the Denver University Law Review, among other legal journals. *Id.* ex. B 1-2. But Professor Smith claims no expertise in climate change, climate science, meteorology, biology, fossil fuel development, renewable energies, U.S. energy policy, or medicine. Smith Dep. Tr. 16:23-17:2, 36:21-37:21 ("Smith Dep.") (excerpts attached as Ex. B). She has no training in sociology or history, *id.* 37:22-25, and has spent her entire career as a lawyer, *id.* at 34:8-17. Nor does she claim expertise in how climate change may cause harms to Plaintiffs. *Id.* at 122:3-8.

Professor Smith offers two principal legal opinions about children's rights. First, she opines that "the special characteristics of children and their differential treatment under the law bears on their status as a protected class for purpose [sic] of equal protection principles." Smith Rep. 1. Second, Professor Smith posits that government action "that creates devastating and disproportionate consequences to children requires at least intermediate scrutiny." *Id.* at 4.

Professor Smith explains the function of her report's historical and sociological legal analysis in the first sentences of her Executive Summary. She writes that the Supreme Court in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), explained that "new insights and societal understandings can reveal unjustified inequality within our most fundamental institutions that once passed unnoticed and unchallenged." *Id.* at 3 (quoting *Obergefell*, 135 S. Ct. at 2603-04). And she notes that the Court considers these "advanced understandings" and incorporates "the lessons learned into the fabric of constitutional law." *Id.* 3. She then advocates for the recognition of children as a protected class and the application of intermediate scrutiny by making the same historical and sociological considerations she admits judges make in reaching their own conclusions.

Professor Smith roots her protected class analysis in interpretive readings of the Constitution and Bill of Rights. Smith Rep. 7 (contending that "[t]he Founders held claim to the concept that certain unalienable rights could never be lost to later generations through the action or inaction of earlier generations."); *id.* at 11 (arguing that "[t]he founding documents, including the Bill of Rights, have special sensitivities towards children and future generations that are reflected throughout our nation's continuing history since the late 1800s."). She then identifies presidential initiatives and pieces of legislation designed to protect children before highlighting similar international efforts. *Id.* at 16 (contending that "the United States throughout the twentieth century repeatedly recognized that children are deserving of special protection under the law").

After establishing that "America's founding documents, the Bill of Rights, and international law have laid the ground work for a more robust recognition of the rights and interests of children," Professor Smith turns to a series of "cases about children's Fourteenth Amendment equal protection rights" that she believes "are critical to analyzing one of the most menacing threats to the health and well-being of children today – climate change." *Id.* at 3-4; *see also id.* 18-35. She first relies on a series of cases—including *Brown v. Board of Education of Topeka, Shawnee County*, 347 U.S. 483 (1954); *Tinker v. Des Moines Independent Community School*, 393 U.S. 503 (1969); *Graham v. Florida*, 560 U.S. 48 (2010); and *Miller v. Alabama*, 567 U.S. 460 (2012); among many others—to establish that "Children are children. They are a class entitled to special consideration and protection as a result." *Id.* at 24.

Professor Smith then hones in on a specific set of "child-centered cases" to argue that heightened scrutiny should apply "when government action imposes a lifetime of hardship on children for matters beyond their control." *Id.* at 24. These cases include *Levy v. Louisiana*, 391

U.S. 68, 68 (1968); *Weber v. Aetna Casualty & Surety Company*, 406 U.S. 164 (1972); and *Plyler v. Doe*, 457 U.S. 202, 226 (1982). *Id.* at 24-31. She uses the legal framework established in these cases to highlight certain historical and societal harms judges have considered in those child-centered cases, including economic deprivation, stigmatic and psychological harm, and barriers to family formation. *Id.* at 31-35; *see also* Smith Dep. 120:12-121:17 (confirming that the categories of harms identified by Professor Smith in her report are derived from the "child-centered cases"). Professor Smith contends that "[t]hese cases offer valuable guideposts for when heightened review is warranted" and concludes that "the history and traditions of the nation, in combination with Supreme Court jurisprudence protecting the equal rights of children, require at least intermediate scrutiny[.]" Smith Rep. 35.

Professor Smith frames the rest of her report by arguing that "[e]ach of the child-centered cases presents circumstances where children are uniquely harmed and the Court has to intervene to protect children from injuries caused by the management of large-scale systems over which government wields control." *Id.* at 39. She argues that the government's "climate and energy systems" fall into this category of government-controlled large-scale systems that will "deprive children of the benefits that are foundational for their lives" and for that reason warrant intermediate scrutiny. *Id.* at 36. In reaching this conclusion, Professor Smith relies on factors identified from case law regarding children's "lack of control over their plight," *id.* at 36; weighs the same categories of harm considered in the child-centered cases, *id.* at 42-45; and cites *Obergefell* and *United States v. Windsor*, 570 U.S. 744 (2013), for the proposition that certain groups of children are more vulnerable to those harms. *Id.* at 40-45. She concludes by arguing that the Constitution and Supreme Court precedent require heightened scrutiny "when government actions impose a lifetime of hardship on children for matters beyond their control,

even where no fundamental right is at issue." *Id.* at 46.

Because it offers only inadmissible legal opinion, Professor Smith's report and testimony should be excluded in its entirety.

### III.     LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. District courts serve as gatekeepers in assessing the admissibility of expert evidence under this rule. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *see also Murray v. S. Route Mar. SA*, 870 F.3d 915, 923 (9th Cir. 2017) ("District judges play an active and important role as gatekeepers examining the full picture of the experts' methodology and preventing shoddy expert testimony and junk science from reaching the jury."). As gatekeepers, trial judges consider whether: (1) "the opinion is based on scientific, technical, or other specialized knowledge"; (2) "the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue"; (3) "the expert has appropriate qualifications"; (4) "the testimony is relevant and reliable"; (5) "the methodology or technique the expert uses 'fits' the conclusions"; and (6) "its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (internal citations omitted).

The Ninth Circuit limits expert opinions to ultimate issues of fact—"expert witnesses may not opine as to legal conclusions, *i.e.*, an opinion on an ultimate issue of law." *Siring v. Or. State Bd. of Higher Educ. ex. rel. E. Or. Univ.*, 927 F. Supp. 2d 1069, 1076 (D. Or. 2013) (citing *Hangarter*, 373 F.3d at 1016). "[A]lthough experts may use legal terms in expressing their opinions, expert testimony that consists of legal conclusions is unhelpful and inadmissible." *Arjangrad v. JPMorgan Chase Bank, N.A.*, No. 3:10-cv-01157-PK, 2012 WL 1890372, at *7 (D.

Or. May 23, 2012) (citing *United States v. Boulware,* 558 F.3d 971, 975 (9th Cir. 2009)). "Any 'judicially defined terms,' 'terms that derived their definition from judicial interpretations,' or 'legally specialized terms' constitute expression of opinion as to the ultimate legal conclusion." *Halsted v. City of Portland*, No. 3:10-cv-00619-AC, 2012 WL 13054271, at *2 (D. Or. Mar. 7, 2012) (citing *United States v. Duncan*, 42 F.3d 97, 101-02 (2d Cir. 1994)).

The proponent of the expert opinion testimony bears the burden of establishing its admissibility. *Daubert*, 509 U.S. at 592 n.10; *Lust By and Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). "Admissibility of the expert's proposed testimony must be established by a preponderance of the evidence." *Chong v. STL Int'l, Inc.*, No. 3:14-cv-244-SI, 2016 WL 4253959, at *3 (D. Or. Aug. 10, 2016).

IV.  **ARGUMENT**

    A. **PROFESSOR SMITH'S REPORT IS LEGAL ADVOCACY WITH THE PRETENSE OF SOCIOLOGICAL AND HISTORICAL ANALYSIS**

Professor Smith's report is inadmissible because it addresses the ultimate legal issues in the case, *viz.*, the standard of review to apply to children when considering an equal protection claim. *See* Smith Rep. 1 ("I, Catherine Smith, have been retained by Plaintiffs in the above-captioned matter to provide my expert opinions regarding a historical and sociological legal analysis of whether government actions that discriminate against and harm children should be reviewed under heightened judicial scrutiny."). The report accomplishes this in two ways. First, Professor Smith offers interpretive readings of Supreme Court cases and the presidential initiatives, legislation, and social shifts courts may consider in reaching their own decisions on the same legal issues Professor Smith addresses—all under the guise of a historical and sociological analysis she admits courts routinely undertake themselves. She then identifies those factors courts have looked to in child-centered equal protection cases and applies them to the

facts of this case.

Experts and attorneys offer the court differing but potentially useful functions. Experts interpret and analyze factual evidence. Attorneys advocate for certain outcomes based on legal arguments and the facts of their case. But attorneys cannot offer the court the expert's special knowledge. So the expert functions as a vehicle with which the court can arrive at the truth, as opposed to a legal advocate persuading the court to arrive at a particular conclusion. Yet the Smith Report advocates for two legal conclusions: (1) children are a protected class (2) warranting at least intermediate scrutiny.

The Ninth Circuit has defined the permissible scope of expert testimony. "[E]xpert testimony concerning an ultimate issue is not per se improper." *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002), *amended* 319 F.3d 1073 (9th Cir. 2003). Nor does expert testimony that is otherwise admissible become objectionable because "it embraces an ultimate issue" to be decided by the trier of fact. Fed. R. Evid. 704(a). But "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Mukhtar*, 299 F.3d at 1065 n.10. This limitation is consistent with the principle that expert testimony should aid the trier of fact. "Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing *Daubert*, 509 U.S. at 591).

Professor Smith's expert report is not—and her proposed testimony would not be— helpful. Whether children are a protected class and whether that protected class warrants intermediate scrutiny are legal issues the court can decide using the same tools Professor Smith uses in her report. The Smith Report includes references to the Constitution, the Bill of Rights, presidential and international initiatives designed to protect children, and Supreme Court cases.

Professor Smith admits that the Court could look to the same founding documents when interpreting the Constitution:

> Q.  But would you agree that a Court could look to the Constitution and could interpret the Constitution in a case?
>
> A.  Yes.
>
> Q. Okay.  And a Court could look to the Bill of Rights [and] the Fourteenth Amendment in a case?
>
> A.  A Court could.

Smith Dep. 51:18-24.

Professor Smith also admits that the Court could look to the same presidential initiatives and social shifts:

> Q.  But in your position as a law professor, you wouldn't think it inappropriate for a court to look at these presidential statements in reaching its conclusion that there's been this evolution over time of children's rights and in reaching a conclusion about the level of scrutiny to be applied?
>
> A.  I think it goes back to looking at social shifts and changes in society, and I think the Court does that often, and it can reference lots of different provisions, statements, speakers in doing so, whether it's a presidential statement or a statement from civil rights activists or -- or anyone else.  But I -- I would say that I think it's important for the Court to be thinking about these issues because, unlike what Kennedy said, the difference from *Obergefell* in this case with respect to children is that children don't have the same power that adults have to plea and protest, to educate the Court and society about the harms that they experience.

*Id.* at 58:12-59:6.

And Professor Smith admits that case law would inform her testimony as it does her report:

> Q.  And would you yourself testify that certain groups of children are more vulnerable than others to climate change based on other things in the case?
>
> A.  If there's some sort of document from the parties, a statement from the federal government, from the defendants, I might rely on that, but I won't be relying on my own expertise to reach that conclusion, but I will rely on the case

>    law to say that it's an important consideration for the court and that we look at
>    children as a class or classification, including subsets of kids.
>
>        Q. And, again, when you say you'd rely on the case law to show it's an
>    important consideration for the Court, you're referring to the child-centered
>    cases?
>
>        A. Yes.

*Id.* at 133:4-19.

The Constitution. Presidential initiatives. Court cases. Professor Smith admits these are all within the Court's purview. Yet she applies all three herself in concluding that children are a protected class warranting at least intermediate scrutiny. "Expert testimony is not helpful to a jury, and thus not relevant, when it addresses an issue that is within 'the common knowledge of the average layman.'" *Arjangrad*, 2012 WL 1890372, at *7 (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001), *amended by* 246 F.3d 1150 (9th Cir. 2001)). And while there is no jury here, the Constitution, presidential initiatives, societal shifts, and court cases are well within the purview of the trial judge, as Professor Smith herself acknowledges. *See* Smith Dep. 50:16-21, 58:12-24.

Professor Smith not only considers the same texts, initiatives, and shifts in societal thinking that courts do in child-centered cases but also applies legal rules from those cases throughout her report. First, she notes "the abiding principle that '[l]egislation imposing special disabilities upon groups disfavored by virtue of circumstances beyond their control suggests the kind of "class or caste" treatment that the Fourteenth Amendment was designed to abolish.'" Smith Rep. 24 (alteration in original) (quoting *Plyer*, 457 U.S. at 220). She then applies that principle to climate change, writing that "children impacted by climate change face a different kind of lack of control over their plight because they do not have economic power and cannot vote." *Id.* at 36. Second, she notes "[t]he child-centered cases establish that the government may

not use large-scale government systems to pose serious risks to the wellbeing of children." *Id.* at 39. She then applies that rule to climate change, writing that "the national energy system is one of the largest systems under government control and direction" and that it "has significant consequences for the rights, benefits, and wellbeing of children." *Id.* Professor Smith concludes by noting that "[t]he federal defendants set policy for both [the climate and energy] systems" and "those policies should be reviewed under heightened scrutiny." *Id.* Third, she highlights specific harms from large-scale government systems that she argues the child-centered cases prohibit, including economic and psychological harms and barriers to family formation. *Id.* at 31. She then analogizes those harms to climate change, which she contends flows from the United States' energy policy. *Id.* at 42-45.

Plaintiffs may claim that Professor Smith is offering purely historical or sociological analysis, but every aspect of her analysis is permeated by legal advocacy based on the same factors traditionally addressed by legal counsel. Courts typically reject expert testimony that purports to apply, interpret, or advocate a legal position. The plaintiffs in *Democratic National Committee v. Reagan* sought to include testimony from an expert historian who concluded that the law in question had the effect of depriving minority voters of the opportunity to participate in the political process and was passed with the intent of suppressing minority voters. No. CV-16-01065-PHX-DLR, 2018 WL 2191664, at *2 (D. Ariz. May 10, 2018), *aff'd*, No. 18-15845, 2018 WL 4344291 (9th Cir. Sept. 12, 2018). While the court admitted the underlying data, it found that the historian's "ultimate opinions" were not useful. *Id.*, 2018 WL 2191664, at *3. The court stated that he "applied the law as he interpreted it to the data he assembled" and so "his opinions presented more like an attorney's closing argument than an objective analysis of data." *Id.*

Other courts have excluded historical analyses that speak directly to the governing law.

In excluding an expert's opinion on the history of the Fair Credit Reporting Act, the U.S. District Court for the Northern District of Illinois found that "expert testimony on the history or purpose of the law is impermissible." *In re Ocean Bank*, 481 F. Supp. 2d 892, 903 (N.D. Ill. 2007). The U.S. District Court for the Eastern District of Virginia excluded an expert's testimony detailing the history of Virginia's trust law because the purpose of the testimony was to "assist the Court in determining what law to apply to the issues raised." *SunTrust Banks, Inc. v. Robertson*, No. 2:09-cv-197, 2010 WL 11566593, at *6 (E.D. Va. Aug. 12, 2010). And the U.S. Court of Federal Claims excluded expert testimony where the expert testified about the history of the underlying legal doctrine because the plaintiff's counsel could "make each of the arguments proffered by [the expert] during the trial." *Sparton Corp. v. United States*, 77 Fed. Cl. 1, 9 (2007).

Professor Smith's opinions constitute legal analysis. Her expert report is essentially a legal argument that counsel could make in briefing and at trial. She admits that she could have presented the same opinions to this Court in an amicus brief—and has done so in other cases, such as *Obergefell* where she made similar arguments based on the same child-centered cases. *See* Smith Dep. 140:2-145:20, 145:18-20 ("I certainly could submit an amicus brief at the trial-level stage, like the law professor's brief, but I'm being asked to be an expert in this case."). She bases her opinion not on data from a technical field in which she has expertise but on legal materials that all legal professionals would consider in arguing and deciding a case. *See* Smith Dep. 77:7-81:5 (conceding that the materials she used and the conclusions she reached are identical to what a court would consider in rendering an opinion).

To the extent that Professor Smith offers an "often overlooked" interpretation of the child-centered cases, Smith. Dep. 42:20, her report and testimony should be excluded because

they concern "both what the law is and how it should be applied to the facts of a case." *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1043 (D. Ariz. 2005).

### B. PROFESSOR SMITH'S REPORT USURPS THE JUDGE'S FUNCTION BY INTERPRETING THE LAW

The Smith Report supplants more than just the role of trial counsel. By resolving disputed questions of law, Professor Smith's expert report occupies the "exclusive province of the trial judge." *See Hornish v. King Cty.*, 899 F.3d 680, 701 (9th Cir. 2018) (quoting *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008)). "[E]vidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible." *Nationwide*, 523 F.3d at 1060 (quoting *Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir. 1988)).

Although "[t]he concerns about admitting expert legal opinion may be lessened where, as here, a court sits as trier of fact," *CFM Commc'ns, LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1233 (E.D. Cal. 2005), none of the limited circumstances justifying deviance from the general rule that legal testimony is improper exist here. "[T]he Ninth Circuit has recognized that there may be 'instances in rare, highly complex and technical matters where a trial judge utilizing limited and controlled mechanisms, under the matter of trial management, permits some testimony seemingly at variance with the general rule.'" *Shops at Grand Canyon 14, LLC v. Rack Room Shoes, Inc.*, No. 2:09-cv-01234-RLH-PAL, 2010 WL 4181361, at *2 (D. Nev. Oct. 20, 2010) (quoting *Flores v. Arizona*, 516 F.3d 1140, 1166 (9th Cir. 2008), *rev'd sub nom Horne v. Flores,* 557 U.S. 433 (2009)). Yet the trial judge has "broad discretion" to exclude expert testimony that is not helpful to her decision. *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995) (per curiam) (internal citation omitted).

This is not a case warranting deviation from the general rule that legal matters are

inappropriate subjects for expert testimony. Where courts have found deviation appropriate, they have recognized that specialized knowledge within a particular industry makes expert testimony uniquely helpful. For example, in *Shops at Grand Canyon*, the expert had specialized knowledge of the real estate industry in Las Vegas. 2010 WL 4181361, at *3. Conversely, the Ninth Circuit has held experts could not be used to provide legal meaning or interpret insurance policies as written. *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999). The U.S. District Court for the Central District of California precluded expert testimony from a law professor about "the standard of review, the standard of patentability, the applicability of the presumption of validity, and the issues of claim scope and construction." *GTY Indus. v. Genlyte Grp., Inc.*, No. CV 94-1280 KN, 1995 WL 862319, at *1 (C.D. Cal. Dec. 19, 1995) (internal citation omitted). While the proposed expert was a patent law professor, he had "no demonstrated qualifications to testify as to technical matters." *Id.* The U.S. District Court for the District of Arizona also excluded testimony from law professors about piercing the corporate veil in a case involving cleanup of a hazardous waste site. *Pinal Creek Grp.*, 352 F. Supp. 2d at 1044. In precluding the testimony, which included summaries of state law and discussions of Supreme Court precedent, the court stated that "federal courts typically prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case." *Id.* at 1042.

Like the patent law professor in *GTY Industries*, Professor Smith has no demonstrated qualifications to testify to technical matters. She is not an expert in climate change, climate science, meteorology, biology, fossil fuel development, renewable energies, U.S. energy policy, economics, medicine, or mental health, Smith Dep. 16:22-17:2, 36:21-37:21, and would not testify to the facts of what harms are caused by climate change. *Id.* at 122:14-22, 124:24-125:11,

126:7-15, 132:22-133:3.  And, as is clear from Professor Smith's report, children-centered equal protection cases are neither rare nor highly technical because courts have Supreme Court and lower court precedent at their disposal.  *See* Smith Rep. 18-35 (discussing long line of child-centered Supreme Court cases); Smith Dep. 40:19-41:19 ("And my expertise is to push those [child-centered] cases out and say we can look at them from a different way."); Smith Dep. 43:1-11 (noting that her report pulls "guiding principles" from the child-centered cases to be used in deciding the appropriate level of scrutiny).  Professor Smith cited and applied that precedent herself to conclude that children are a protected class warranting intermediate scrutiny.  Admitting Professor Smith's testimony "would give the appearance that the court was shifting to witnesses the responsibility to decide the case," and Professor Smith is in no better position to resolve these legal issues than the court.  *United States v. Scop*, 846 F.2d 135, 150 (2d Cir. 1988).

### C. EVEN IF PROFESSOR SMITH'S REPORT DID NOT CONSTITUTE IMPROPER LEGAL TESTIMONY, IT IS INADMISSIBLE BECAUSE IT DOES NOT PROVIDE RELEVANT EVIDENCE

Aside from the fact that Professor Smith's testimony offers improper legal conclusions, it is also inadmissible because it is irrelevant to the issues in dispute in this case.  Under Federal Rule of Evidence 402, evidence is admissible only if it is relevant.  Evidence is relevant only if it has a tendency to make a fact "of consequence in determining the action" more or less probable. Fed. R. Evid. 401; *see also Clark v. Thomas*, 706 F. App'x 358, 359 (9th Cir. 2017) (upholding district court order holding evidence inadmissible when it was not "relevant to the disputed issues at trial").

Professor Smith's report argues that "government actions that discriminate against and harm children should be reviewed under heightened judicial scrutiny" because children are a

"protected class for purpose of equal protection principles." Smith Rep. 1. This opinion is not relevant to this action because the question of whether children are a protected class owed heightened scrutiny has already been decided by this Court. In its Opinion and Order on Defendants' motion for judgment on the pleadings and motion for summary judgment, the Court found that children are not a suspect class to which heightened scrutiny applies under the Equal Protection Clause. ECF No. 369 at 57-58. Although the Court left open the possibility that strict scrutiny could still apply to Plaintiffs' equal protection claim based on the "alleged infringement of a fundamental right"—here, the alleged "right to a climate system capable of sustaining human life," *id.* at 58—Professor Smith does not opine on the existence or infringement of that alleged fundamental right. Her testimony is limited to the conclusion that "climate change's consequences for children raises [] an 'area of constitutional sensitivity' that warrants heightened scrutiny, *even when no fundamental right is at issue*," because children are a protected class. Smith Rep. 4 (emphasis added); *see also id.* at 35 ("In my expert opinion, the history and traditions of the nation, in combination with Supreme Court jurisprudence protecting the equal rights of children, require at least intermediate scrutiny when government actions impose a lifetime of hardship on children for matters beyond their control, even where no fundamental right is at issue.").

In her deposition, Professor Smith confirmed that she does not directly analyze fundamental rights in her report. Smith Dep. 113:9-115:15. She also confirmed that she does not intend to testify about the existence of any particular fundamental rights at trial. *Id.* at 115:16-18. And, as discussed above, Professor Smith has acknowledged she is not an expert in how climate change might infringe a fundamental right to a climate system capable of sustaining human life, thereby causing harm to Plaintiffs or others. *Id.* at 122:5-8.

Because the Court has already determined that children are not a suspect class under the Equal Protection Clause, Professor Smith's report and testimony are not relevant and therefore should be found inadmissible under Federal Rules of Evidence 401 and 402.

## V.  CONCLUSION

For the reasons discussed above, Defendants respectfully request that the Court exclude the Smith Report and related testimony.

Dated: October 15, 2018

Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division

*/s/ Clare Boronow*
LISA LYNNE RUSSELL
GUILLERMO A. MONTERO
SEAN C. DUFFY (NY Bar No. 4103131)
MARISSA PIROPATO (MA Bar No. 651630)
CLARE BORONOW (admitted to MD bar)
FRANK J. SINGER (CA Bar No. 227459)
ERIKA NORMAN (CA Bar No. 268425)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
601 D Street NW
Washington, DC 20004
Telephone: (202) 305-0445
Facsimile:  (202) 305-0506
sean.c.duffy@usdoj.gov

*Attorneys for Defendants*