No. 18-_____

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re UNITED STATES OF AMERICA, et al.

UNITED STATES OF AMERICA, et al., Petitioners,

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON,
Respondent,

and

KELSEY CASCADIA ROSE JULIANA, et al., Real Parties in Interest.

On Petition for a Writ of Mandamus to the United States District Court
for the District of Oregon (No. 6:15-cv-01517-AA)

**PETITION FOR A WRIT OF MANDAMUS AND
EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

JEFFREY BOSSERT CLARK
*Assistant Attorney General*
JEFFREY H. WOOD
ERIC GRANT
*Deputy Assistant Attorneys General*
ANDREW C. MERGEN
SOMMER H. ENGELS
ROBERT J. LUNDMAN
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 514-0943
eric.grant@usdoj.gov

Counsel for Petitioners

## CIRCUIT RULE 27-3 CERTIFICATE

Pursuant to Circuit Rule 27-3(a), I hereby certify that to avoid irreparable harm to Petitioners United States of America, et al. (the government), relief is needed in less than 21 days' time.

1.      Regarding Circuit Rule 27-3(a)(1), the government notified the Clerk earlier today of its intention to file this mandamus petition and emergency motion. The government so notified counsel for Real Parties in Interest (Plaintiffs) on Sunday, November 4, 2018.  The just-finalized petition and motion are being served simultaneously with filing both via the district court's CM/ECF system and via e-mail to the below-stated addresses.

2.      Regarding Circuit Rule 27-3(a)(3)(i), counsel are as follows:

**Counsel for the Government:**

Eric Grant
(202) 514-0943
eric.grant@usdoj.gov

Andrew C. Mergen
(202) 514-2813
andy.mergen@usdoj.gov

Sommer H. Engels
(202) 353-7712
sommer.engels@usdoj.gov

Robert J. Lundman
(202) 514-2946
robert.lundman@usdoj.gov

Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044

**Counsel for Plaintiffs:**

Julia A. Olson
(415) 786-4825
JuliaAOlson@gmail.com
Wild Earth Advocates
1216 Lincoln Street
Eugene, Oregon 97401

Philip L. Gregory
(650) 278-2957
pgregory@gregorylawgroup.com
Gregory Law Group
1250 Godetia Drive
Redwood City, California 94062

Andrea K. Rodgers
(206) 696-2851
Andrearodgers42@gmail.com
Law Offices of Andrea K. Rodgers
3026 NW Esplanade
Seattle, Washington 98117

3.     Regarding Circuit Rule 27-3(a)(3)(ii), the facts showing the existence

and nature of the claimed emergency are set forth in detail below in in the Statement

of the Case (pp. 3-10) and in Part III of the Argument (pp. 35-37).  In brief, the

government respectfully requests emergency relief in this matter because it faces a

trial that Plaintiffs seek to commence as early as "the latter part of the week of

November 12" (i.e., next week) and that is estimated to last approximately 50 trial

days, or 10 full weeks.

4.    Regarding Circuit Rule 27-3(a)(3)(iii), Plaintiffs' counsel were notified of this mandamus petition and emergency motion via an e-mail sent on Sunday, November 4.  Plaintiffs' counsel are being served with the just-finalized petition and motion simultaneously with filing both via the district court's CM/ECF system and via e-mail to the above-stated addresses.

5.    Regarding Circuit Rule 27-3(a)(4), the government is seeking relief from the district court in a motion filed earlier today, Monday, November 5.

<div style="text-align:right">
s/ Eric Grant<br>
Eric Grant

Counsel for Petitioners
</div>

## TABLE OF CONTENTS

CIRCUIT RULE 27-3 CERTIFICATE ..................................................................i

TABLE OF AUTHORITIES ...........................................................................vi

INTRODUCTION ..........................................................................................1

STATEMENT OF JURISDICTION.....................................................................2

STATEMENT OF THE ISSUES........................................................................2

STATEMENT OF THE CASE............................................................................3

ARGUMENT ...............................................................................................10

I.    If the district court declines to certify its orders for interlocutory
      appeal under 28 U.S.C. § 1292(b), this Court should issue a writ
      of mandamus directing the district court to dismiss this action ...................10

      A.    The government has a right to relief from the district court's
            refusal to dismiss this fundamentally misguided action ....................13

            1.    The district court clearly and indisputably erred by
                  exercising jurisdiction over the action ......................................13

                  a.    Plaintiffs lack Article III standing .................................13

                  b.    Federal courts may not entertain this action
                        in any event...................................................................18

            2.    The district court clearly and indisputably erred by
                  allowing the claims to proceed outside the binding
                  framework of the APA...............................................................20

            3.    The district court clearly and indisputably erred by
                  allowing the claims to proceed on the merits ...........................23

                  a.    Substantive due process.................................................23

                  b.    Public-trust doctrine .....................................................26

B.    The government has no other adequate means to attain relief from the district court's refusal to terminate these fundamentally  misguided and improper proceedings ......................27

C.    Mandamus relief is appropriate under the circumstances...................31

II.    Alternatively, if the district court declines to certify its orders for interlocutory appeal under 28 U.S.C. § 1292(b), this Court should issue a writ of mandamus directing the district court to do so ......................33

III.    In any event, this Court should immediately grant a stay of proceedings in the district court pending consideration of this petition.............34

CONCLUSION .......................................................................................38

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Abelesz v. OTP Bank*,
    692 F.3d 638 (7th Cir. 2012) ............................................................32

*Alec L. ex rel. Loorz v. McCarthy*,
    561 Fed. Appx. 7 (D.C. Cir.),
    *cert. denied*, 135 S. Ct. 774 (2014)...............................................26

*American Electric Power v. Connecticut*,
    564 U.S. 410 (2011).............................................................16, 25

*Armstrong v. Exceptional Child Center, Inc.*,
    135 S. Ct. 1378 (2015).......................................................... 22-23

*Center for Biological Diversity v. U.S. Department of Interior*,
    563 F.3d 466 (D.C. Cir. 2009).................................................15

*Cheney v. U.S. District Court*,
    542 U.S. 367 (2004)................................... 10, 12-13, 19, 27-28, 31-32, 34, 37

*Clapper v. Amnesty International USA*,
    568 U.S. 398 (2013)..............................................................14

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)........................................................ 13, 19-20

*Drakes Bay Oyster Co. v. Jewell*,
    747 F.3d 1073 (9th Cir. 2014) ...............................................35

*Fernandez-Roque v. Smith*,
    671 F.2d 426 (11th Cir. 1982) ...............................................33

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund,*
    *Inc.*, 527 U.S. 308 (1999) .......................................................19

*Guaranty Trust Co. v. York*,
    326 U.S. 99 (1945).................................................................19

*Hilton v. Braunskill,*
    481 U.S. 770 (1987)...................................................................35

*In re Justices of Supreme Court of Puerto Rico,*
    695 F.2d 17 (1st Cir. 1982)...............................................28, 32

*In re Kellogg Brown & Root, Inc.,*
    756 F.3d 754 (D.C. Cir. 2014),
    *cert. denied,* 135 S. Ct. 1163 (2015).............................28, 32

*In re Roman Catholic Diocese of Albany, New York, Inc.,*
    745 F.3d 30 (2d Cir. 2014) ................................................ 31-32

*In re United States,*
    884 F.3d 830 (9th Cir. 2018) .................................................5, 34

*In re United States,*
    895 F.3d 1101 (9th Cir. 2018) ...................................................6

*In re United States,*
    No. 18-72776 (9th Cir. Nov. 2, 2018) ...................................9, 38

*Lexmark International, Inc. v. Static Control Components,*
    *Inc.,* 572 U.S. 118 (2014) ............................................................14

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992).......................................................... 14-17

*Lujan v. National Wildlife Federation,*
    497 U.S. 871 (1990).....................................................................22

*Martin v. Franklin Capital Corp.,*
    546 U.S. 132 (2005)......................................................... 33-34

*Missouri v. Jenkins,*
    515 U.S. 70 (1995)........................................................................19

*National Audubon Society v. Superior Court,*
    33 Cal. 3d 419,
    *cert. denied,* 464 U.S. 977 (1983).........................................26

*Nken v. Holder*,
        556 U.S. 418 (2009)....................................................................................35

*Norton v. Southern Utah Wilderness Alliance*,
        542 U.S. 55 (2004)......................................................................................22

*Obergefell v. Hodges*,
        135 S. Ct. 2584 (2015)................................................................................25

*Perez v. Mortgage Bankers Ass'n*,
        135 S. Ct. 1199 (2015)................................................................................29

*Plaut v. Spendthrift Farm, Inc.*,
        514 U.S. 211 (1995)....................................................................................18

*PPL Montana, LLC v. Montana*,
        565 U.S. 576 (2012)....................................................................................26

*Roe v. Wade*,
        410 U.S. 113 (1973)....................................................................................25

*Schlesinger v. Reservists Committee to Stop the War*,
        418 U.S. 208 (1974)....................................................................................15

*Seminole Tribe of Florida v. Florida*,
        517 U.S. 44 (1996)......................................................................................23

*Simon v. Eastern Kentucky Welfare Rights Organization*,
        426 U.S. 26 (1976)......................................................................................17

*Tagg Bros. & Moorhead v. United States*,
        280 U.S. 420 (1930)....................................................................................30

*Unemployment Compensation Commission v. Aragon*,
        329 U.S. 143 (1946)....................................................................................30

*United States v. Burr*,
        25 F. Cas. 30 (No. 14,692d) (C.C. Va. 1807)..............................................33

*United States v. Carlo Bianchi & Co.*,
        373 U.S. 709 (1963)....................................................................................30

*Vermont Agency of Natural Resources v. United States*
   *ex rel. Stevens*, 529 U.S. 765 (2000) ............................................................19

*Warth v. Seldin*,
   422 U.S. 490 (1975).......................................................................................16

*Washington Environmental Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) ................................................................16, 18

*Washington v. Glucksberg*,
   521 U.S. 702 (1997).......................................................................................24

*Webster v. Doe*,
   486 U.S. 592 (1988).......................................................................................21

*Western Radio Services Co. v. U.S. Forest Service*,
   578 F.3d 1116 (9th Cir. 2009),
   *cert. denied*, 559 U.S. 1106 (2010) ..............................................................21

*Wilkie v. Robbins*,
   551 U.S. 537 (2007).......................................................................................21

*Wong Yang Sung v. McGrath*,
   339 U.S. 33 (1950).........................................................................................29

## Constitution, Statutes, and Court Rules

United States Constitution

    art. I, § 1 ...............................................................................31

    art. II, § 1, cl. 1 ....................................................................31

    art. III, § 1 ............................................................................18

Administrative Procedure Act

    5 U.S.C. § 702......................................................................20-21

    5 U.S.C. § 706......................................................................21

28 U.S.C. § 1291.............................................................................27

28 U.S.C. § 1292.................................................... 1-2, 6, 8, 10-11, 27, 33-34, 38

Clean Air Act, 42 U.S.C. § 7607 .....................................................30

All Writs Act, 28 U.S.C. § 1651 .....................................................2, 34

Fed. R. App. P. 21 ..........................................................................2

9th Cir. General Order 6.8a..............................................................34

## Other Authority

16 Charles Alan Wright et al., *Federal Practice and Procedure*
    (3d ed. 2005 & Supp. 2018)

    § 3932 ..................................................................................28

    § 3933.1 ...............................................................................32

## INTRODUCTION

After nearly 19 months of proceedings in this Court and in the Supreme Court — encompassing four mandamus petitions and two stay applications — the Supreme Court's November 2, 2018 order points to the appropriate roadmap for this action. That order makes clear that it is proper for Petitioners United States of America, et al. (the government) to seek a writ of mandamus from this Court directing dismissal of Plaintiffs' action, and the government accordingly files this petition.  The order also makes clear that the government has satisfied the standard for certification of district court orders for interlocutory appeal under 28 U.S.C. § 1292(b).  Therefore, the government is simultaneously moving the district court reconsider its decision declining to certify its orders denying the government's dispositive motions and to stay all proceedings pending resolution of that motion and this petition.

If the district court grants certification and stays all proceedings, as the Supreme Court has signaled that it should, it will obviate the need for this Court's intervention by way of mandamus.  If, however, the district court declines to grant certification (despite the Supreme Court's clear guidance to the contrary), this Court would need to intervene to provide the pretrial appellate review contemplated by the Supreme Court.  The government accordingly submits this petition asking this Court — in the event that the district court does not grant the government's request for certification and a stay — either (1) to grant a writ of mandamus ordering dismissal

of the action or (2) to grant a writ of mandamus directing the district court to certify its decisions on the government's dispositive motions for interlocutory appeal under § 1292(b); and, in any event, (3) to stay litigation in the district court pending resolution of this petition.

To be clear, the government hopes that this Court's intervention through extraordinary relief will not be necessary. The government is doing everything in its power to persuade the district court to follow the Supreme Court's guidance and to certify its decisions for interlocutory appeal. But if the district court declines to do so, this Court should intervene to provide the relief that the Supreme Court has expressly stated "may be available in" this Court — and that is plainly warranted given the fundamental defects in Plaintiffs' action. ECF No. 416, at 2.

## STATEMENT OF JURISDICTION

This Court has authority to issue the requested relief pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and Rule 21 of the Federal Rules of Appellate Procedure.

## STATEMENT OF THE ISSUES

1.     Whether this Court should issue a writ of mandamus directing the district court to dismiss this action.

2.     Whether, in the alternative, this Court should issue a writ of mandamus directing the district court to certify its denials of the government's dispositive motion for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

3.    Whether, in any event, this Court should immediately grant a stay of proceedings in the district court pending consideration of this petition.

## STATEMENT OF THE CASE

Plaintiffs are a group of minor children and an organization representing them. They brought this action in August 2015 against President Obama (for whom President Trump was later substituted), the Executive Office of the President, three sub-components within that office, and eight Cabinet departments and agencies for allegedly violating their rights under the Constitution and a purported federal public trust which, they asserted, conferred on them a substantive right to certain climate conditions. *See generally* ECF No. 7 (operative complaint).  Among other relief, Plaintiffs asked the district court to order the President and other officials and agencies named as defendants to "prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric $CO_2$." *Id.* at 94.

The government moved to dismiss Plaintiffs' claims on several grounds, including lack of standing, failure to state a cognizable constitutional claim, and failure to state a claim on a public trust theory.  ECF No. 27.  In November 2016, the district court denied that motion, ECF No. 83, and it later declined to certify its order for interlocutory appeal, ECF No. 172 (June 8, 2017).  The court ruled that Plaintiffs had established Article III standing by alleging that they had been harmed

by the effects of climate change through increased droughts, wildfires, and flooding; and that the government's regulation of (and failure to further regulate) fossil fuels had caused Plaintiffs' injuries.  The court further determined that it could redress those injuries by "order[ing] Defendants to cease their permitting, authorizing, and subsidizing of fossil fuels and, instead, move to swiftly phase out $CO_2$ emissions, as well as take such other action necessary to ensure that atmospheric $CO_2$ is no more concentrated than 350 ppm by 2100, including to develop a national plan to restore Earth's energy balance, and implement that national plan so as to stabilize the climate system."  ECF No. 83, at 28 (quoting complaint); *see generally id.* at 18-28.

On the merits, the district court held that Plaintiffs had stated a claim under the Fifth Amendment's Due Process Clause and a federal public trust doctrine. *Id.* at 28-51.   The court found in the Fifth Amendment's protection against the deprivation of "life, liberty, or property, without due process of law," a previously unrecognized fundamental right to a "climate system capable of sustaining human life," and the court determined that Plaintiffs had adequately alleged infringement of that fundamental right.  ECF No. 83, at 32.  The court also held that Plaintiffs had adequately stated a claim under a federal public trust doctrine, which it held imposes a judicially enforceable prohibition on the federal government against "depriving a future legislature of the natural resources necessary to provide for the well-being and survival of its citizens."  *Id.* at 37 (quoting amicus brief in support of Plaintiffs).

Plaintiffs' claims under this public trust rationale, the court concluded, are also "properly categorized as substantive due process claims." *Id*. at 51.

The government petitioned this Court for a writ of mandamus to halt these deeply flawed proceedings. This Court stayed the litigation for seven-and-a-half months but ultimately denied the petition without prejudice. *In re United States*, 884 F.3d 830, 838 (9th Cir. 2018). Specifically, the Court "decline[d] to exercise [its] discretion to grant mandamus relief at [that] stage of the litigation." *Id.* at 838. The Court explained, however, that "[c]laims and remedies often are vastly narrowed as litigation proceeds," and that it had "no reason to assume this case will be any different." *Id*. The Court observed that the government could continue to "raise and litigate any legal objections [it may] have," *id.* at 837, and the Court added that the government remains free to "seek[] mandamus in the future," *id*. at 838.

Consistent with this Court's opinion, the government moved for judgment on the pleadings, ECF No. 195, arguing that Plaintiffs' claims should be dismissed in their entirety, and for summary judgment, ECF No. 207, arguing that the district court should enter judgment in favor of the government on all of Plaintiffs' claims. The government also moved for a protective order precluding all discovery. ECF No. 196. On June 29, 2018, the district court denied the government's motion for a protective order. ECF No. 300. On July 18, 2018, the district court held argument on the dispositive motions and took them under advisement.

While the two dispositive motions were still pending and after the district court had denied the government's motion for a protective order barring discovery, the government sought relief from both this Court and the Supreme Court. ECF No. 308-1; ECF No. 321-1. Both courts denied the requested relief without prejudice. This Court determined that "[a]bsent a specific discovery order, mandamus relief remains premature." *In re United States*, 895 F.3d 1101, 1105 (9th Cir. 2018). The Supreme Court denied the government's application "without prejudice" because it was "premature." ECF No. 330-1. The Court also stated that the "breadth of [Plaintiffs'] claims is striking, however, and the justiciability of those claims presents substantial grounds for difference of opinion." *Id*. It instructed the district court to "take these concerns into account in assessing the burdens of discovery and trial, as well as the desirability of a prompt ruling on the Government's pending dispositive motions." *Id*. The Supreme Court clearly referenced the standard for certification in 28 U.S.C. § 1292(b), which provides (emphasis added):

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is *substantial ground for difference of opinion* and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Despite the Supreme Court's expectation of a "prompt ruling" on the government's dispositive motions, ECF No. 330-1, the district court issued no ruling on those motions for more than two months after the Supreme Court's order, which

itself came more than two months after the motions were filed.  With the trial date of October 29, 2018 just weeks away, the government on October 5 filed another stay request in the district court.  The government informed the court that it planned to file a petition for a writ of mandamus (or, in the alternative, a petition for a writ of certiorari) in the Supreme Court, and it asked the district court to stay discovery and trial pending the Supreme Court's resolution of that petition.  ECF No. 361.  The court ultimately denied the request.  ECF No. 374.  On October 15 — roughly five months after the government's dispositive motions were filed and only two weeks before the start of the scheduled trial — the court issued an opinion largely denying the motions and declining to certify its ruling for interlocutory appeal.  ECF No. 369.

The district court granted two narrow aspects of the government's motions.  First, the court dismissed the President from the action, but only "without prejudice" and while warning that it "is not possible to know how developments to the record in the course of the litigation may change the analysis," such that the court could "not conclude with certainty that President Trump will never become essential to affording complete relief."  *Id.* at 18-19.  Second, the court granted summary judgment to the government on Plaintiffs' "freestanding claim under the Ninth Amendment," which the court held "not viable as a matter of law."  *Id.* at 56.

The district court otherwise denied the government's motions.  The court rejected the government's argument that Plaintiffs were required to assert only

challenges to specific agency actions under the APA, concluding that the "APA does not govern" claims seeking equitable relief for alleged constitutional violations based on "*aggregate action* by *multiple agencies*." *Id.* at 25. The court also rejected the government's argument that Plaintiffs had failed to establish standing at the summary-judgment stage, largely by reiterating its analysis from the motion-to-dismiss stage. *Id.* at 29-45. The court likewise reiterated its earlier holdings on the government's other central arguments. *Id.* at 25-27, 45-48, 54-55. The court addressed Plaintiffs' equal protection claim for the first time, allowing the claim to proceed because it "would be aided by further development of the factual record." *Id.* at 59.

The district court again declined to certify its order for interlocutory appeal under 28 U.S.C. § 1292(b), which authorizes certification where (among other requirements) an "order involves a controlling question of law as to which there is substantial ground for difference of opinion." *See* ECF No. 369, at 59-61. The court did not address the Supreme Court's express statement that "the justiciability of [Plaintiffs'] claims presents substantial grounds for difference of opinion." ECF No. 330-1.

With less than two weeks remaining before the scheduled 10-week trial, the government again sought relief from both this Court and the Supreme Court. ECF No. 390; ECF No. 391. On October 19, the Chief Justice ordered that "discovery

and trial in the [district court] are stayed pending . . . further order of the undersigned or of the Court."  ECF No. 399.  Consequently, the district court vacated "all trial dates and associated deadlines."  ECF No. 404.  In light of those developments, this Court on Friday, November 2 denied as moot the government's emergency motion for a stay of the trial.  *In re United States*, No. 18-72776, ECF No. 5, at 2.

Later that same day, the Supreme Court again denied the government's application for relief "without prejudice," this time on the ground that "adequate relief may be available in the United States Court of Appeals for the Ninth Circuit." ECF No. 416, at 2.  The Supreme Court explained:

> Although the Ninth Circuit has twice denied the Government's request for mandamus relief, it did so without prejudice.  And the court's basis for denying relief rested, in large part, on the early stage of the litigation, the likelihood that plaintiffs' claims would narrow as the case progressed, and the possibility of attaining relief through ordinary dispositive motions.  Those reasons are, to a large extent, no longer pertinent.  The 50-day trial was scheduled to begin on October 29, 2018, and is being held in abeyance only because of the current administrative stay.

*Id.* at 3.  The Supreme Court also vacated the Chief Justice's October 19 order temporarily staying discovery and trial in the district court.  *Id.*

Still later that same day, Plaintiffs asked the district court for "an immediate status conference in order to set a date for the Pre-Trial Conference and the commencement of trial."  ECF No. 405.  Plaintiffs also made ten pretrial motion-related filings.  ECF Nos. 406-415.  As stated in a letter sent to the government on

November 3, Plaintiffs "will request that the Court hold the Pre-Trial Conference on November 8 or 9," and that trial commence as early as "the latter part of the week of November 12." Exhibit 2, at 3 (filed concurrently herewith).

Earlier today, the government filed a motion asking the district court to reconsider its denials of the government's requests to certify the court's orders for interlocutory appeal under 28 U.S.C. § 1292(b), and an accompanying request for a stay pending consideration of that motion and this petition. ECF Nos. 418-419.

## ARGUMENT

I.     **If the district court declines to certify its orders for interlocutory appeal under 28 U.S.C. § 1292(b), this Court should issue a writ of mandamus directing the district court to dismiss this action.**

A writ of mandamus is warranted when a party establishes that (1) the "right to issuance of the writ is clear and indisputable"; (2) the party has "no other adequate means to attain the relief" sought; and (3) "the writ is appropriate under the circumstances." *Cheney v. U.S. District Court*, 542 U.S. 367, 380-81 (2004) (internal quotation marks omitted). Mandamus is reserved for "exceptional circumstances amounting to a judicial usurpation of power," and to "confine" a lower court "to a lawful exercise of its prescribed jurisdiction." *Id.* at 380 (same); *accord* ECF No. 416, at 1.

Those are the circumstances of this case. Plaintiffs' position amounts to the remarkable assertion that permitting or encouraging the combustion of fossil fuels

violates the Due Process Clause of the Constitution and that a single district court in an action brought by a handful of Plaintiffs may decree the end of the carbon-based features of the United States' energy system, without regard to the statutory and regulatory framework that Congress enacted for the responsible agencies to address such issues with broad public input.  Months ago, the Supreme Court flagged the "striking" breadth of those claims and the "substantial" doubts about their justiciability, reciting the standard for interlocutory certification and thereby indicating that appellate review is warranted before trial.  ECF No. 330-1.  Days ago, the Supreme Court further stated that "the 'striking' breadth of plaintiffs' claims 'presents substantial grounds for difference of opinion,'" this time expressly citing 28 U.S.C. § 1292(b).  ECF No. 416, at 2.

In light of the Supreme Court's clear guidance, the government has sought reconsideration of the district court decision not to certify its orders denying the government's dispositive motions for interlocutory appeal under § 1292(b).  The government is hopeful that the district court will grant that request, which would obviate the need for this Court to act on this petition.  But if the district court again declines to certify its orders for interlocutory appeal (despite the Supreme Court's clear guidance that it should), mandamus from this Court will be warranted to ensure the pretrial appellate review contemplated by the Supreme Court.

The factors for mandamus are readily satisfied.  Given the manifest absence of Article III jurisdiction and the egregious defects in Plaintiffs' claims, the government has established a "clear and indisputable" right to relief.  *Cheney*, 542 U.S. at 381.  The government has "no other adequate means" to "attain the relief" it seeks before an unjustified trial that would "threaten the separation of powers."  *Id.* at 380-81.  And issuance of "the writ is appropriate under the circumstances."  *Id.* at 381.  Indeed, as the Supreme Court noted in its November 2 order, the "traditional use of the writ . . . has been to confine" a lower court "to a lawful exercise of its prescribed jurisdiction."  ECF No. 416, at 1 (quoting *Cheney*, 542 U.S. at 380).  Mandamus is especially appropriate here, because it is the only way "to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities."  *Cheney*, 542 U.S. at 382.

The government recognizes that this Court has already denied mandamus petitions in this case several times.  But as the Supreme Court explained, this Court's earlier "basis for denying relief rested, in large part, on the early stage of the litigation, the likelihood that plaintiffs' claims would narrow as the case progressed, and the possibility of attaining relief through ordinary dispositive motions."  ECF No. 416, at 3.  The Supreme Court expressly stated that "[t]hose reasons are, to a large extent, no longer pertinent," and that "adequate relief" for the government accordingly "may be available" in this Court.  *Id.* at 2-3.  In light of the Supreme

Court's order, the government respectfully requests that this Court consider this renewed request and grant the requested relief.

### A.    The government has a right to relief from the district court's refusal to dismiss this fundamentally misguided action.

The government's right to the dismissal of this action is clear and indisputable. Plaintiffs' implausible and far-reaching claims are procedurally and substantially defective in at least three independent ways.

### 1.    The district court clearly and indisputably erred by exercising jurisdiction over the action.

Most fundamentally, the district court lacks jurisdiction over Plaintiffs' claims. The Supreme Court has reiterated that "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation marks omitted). Enforcing this limitation accords with the "traditional use of the writ," i.e., to "confine" a lower court "to a lawful exercise of its prescribed jurisdiction." ECF No. 416, at 1 (quoting *Cheney*, 542 U.S. at 380). Plaintiffs' action fails to qualify as a case or controversy within the meaning of Article III for at least two reasons.

### a.    Plaintiffs lack Article III standing.

To demonstrate standing, Plaintiffs must prove that (1) they "have suffered an injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete

and particularized," and "(b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted; brackets in original). The purpose of these standing requirements is "to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty International USA*, 568 U.S. 398, 408 (2013). "In keeping with [that] purpose," a court's inquiry must be "especially rigorous when reaching the merits of the dispute would force [it] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Id.* (internal quotation marks omitted). All three standing requirements must be satisfied to invoke a court's jurisdiction. *Defenders of Wildlife*, 504 U.S. at 560-61. Plaintiffs here cannot satisfy *any* of the three standing requirements.

*First*, as to injury, Plaintiffs fail to satisfy the standing requirement because they assert "generalized grievance[s]," *id.* at 575, not the invasion of a "legally protected" interest that is "concrete and particularized," *id.* at 560; *accord, e.g.,* *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125, 127 n.3 (2014). This Court has made clear that "standing to sue may not be

14

predicated upon an interest . . . which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 220 (1974).

Plaintiffs' asserted injuries are quintessential generalized grievances rather than challenges to the invasion of a distinct, legally protected interest.  The asserted injuries arise from a diffuse, global phenomenon that affects every other person in their communities, in the United States, and throughout the world.  Those injuries are "not focused any more on these [Plaintiffs] than [they are] on the remainder of the world's population," and so they are "too generalized to establish standing." *Center for Biological Diversity v. U.S. Department of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009).

*Second*, even if Plaintiffs adequately alleged judicially cognizable injuries, they cannot establish that those injuries were *caused* by the broad, undifferentiated aggregation of the largely unspecified government actions that they challenge, much less the particular and specifically identified actions that must be the focus of judicial review.  *Defenders of Wildlife*, 504 U.S. at 560.  Plaintiffs principally complain of the government's regulation (or lack thereof) of private parties not before the district court.  Among their widely scattered objections, for example, Plaintiffs claim that the United States subsidizes the fossil-fuel industry.  ECF No. 7, ¶¶ 171-178 (operative complaint).  But when a plaintiff's alleged harms may have been caused

directly by the conduct of parties other than the defendants (and only indirectly by the defendants), it is "substantially more difficult to meet the minimum requirement" of Article III:  "to establish that, in fact, the asserted injury was the consequence of the defendants' actions, or that prospective relief will remove the harm."  *Warth v. Seldin*, 422 U.S. 490, 504-05 (1975); *accord Defenders of Wildlife*, 504 U.S. at 562.

Showing causation is especially difficult given the complex interaction of greenhouse gases in the global atmosphere.  As the Supreme Court has explained, "emissions in New Jersey may contribute no more to flooding in New York than emissions in China."  *American Electric Power Co. v. Connecticut*, 564 U.S. 410, 422 (2011).  But even Plaintiffs' broad challenge does not suggest that the government can control "emissions in China."  *Id.*  The types of regulatory decisions referenced by Plaintiffs and the district court — such as permitting livestock grazing and setting "energy and efficiency standards," ECF No. 369, at 39 — are remarkably attenuated from the specific injuries alleged, such as "the magnitude of rainfall and the extent of flooding" near one Plaintiff's home or "the pattern of drought that led" another Plaintiff to relocate, *id.* at 41.  In short, there is no "causal nexus" between the amorphously described decisions challenged by Plaintiffs and the specific harms alleged.  *See Washington Environmental Council v. Bellon*, 732 F.3d 1131, 1143 (9th Cir. 2013) (finding no causation in similar case).  To the contrary, there is "a natural disjunction between Plaintiffs' localized injuries and the greenhouse effect."  *Id.*

16

*Third*, even if Plaintiffs could somehow establish cognizable injury-in-fact and causation, they could not establish that their asserted injuries likely could be *redressed* by an order of a federal court. *Defenders of Wildlife*, 504 U.S. at 560. Plaintiffs have not even begun to articulate a remedy within a federal court's authority to award that could move the needle on the complex phenomenon of global climate change, much less likely redress their alleged injuries. *See, e.g.*, *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 40-46 (1976) (holding that plaintiffs challenging tax subsidies for hospitals serving indigent patients lacked standing where they could only speculate whether a change in policy would "result in [the plaintiffs] receiving the hospital services they desire").

The district court has repeatedly assumed that it has the authority to order the government to "prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric $CO_2$." ECF No. 83, at 12-13, 26-27 (quoting ECF No. 7, at 94). In its most recent order, the court recites some of the "actions" that the government could take to redress Plaintiffs' asserted injuries. These include drastic measures like phasing out all greenhouse gas emissions "within several decades" or converting the Nation's entire electricity generation infrastructure to "100 percent clean, renewable wind, water, and sunlight" sources. ECF No. 369, at 43-44 (internal quotation marks and brackets omitted).

17

But neither Plaintiffs nor the court has cited any legal authority that would permit such an unprecedented usurpation of legislative and executive authority by an Article III court, essentially placing a single district court in Oregon — acting at the behest of a few individuals having one particular perspective on the complex issues involved — in charge of directing American energy and environmental policy. Nor have Plaintiffs or the district court grappled with the fact that reducing the carbon emissions arguably within the control of the government would likely still fail to redress their injuries because — as this Court has recognized — greenhouse gas emissions are a "global occurrence" that arise mostly outside the United States, thereby making it all the more speculative and uncertain that even Plaintiffs' unprecedented remedy would actually redress their asserted injuries. *Bellon*, 732 F.3d at 1147 (finding no redressability in similar case).

### b. Federal courts may not entertain this action in any event.

Quite aside from these fatal flaws with respect to standing, this action simply is not one that a federal court may entertain consistent with the Constitution. The "judicial Power of the United States," U.S. Const. art. III, § 1, is "one to render dispositive judgments" in "cases and controversies" as defined by Article III. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-19 (1995) (internal quotation marks omitted). That power can "come into play only in matters that were the traditional concern of the courts at Westminster" — "cases and controversies of the sort

18

traditionally amenable to, and resolved by, the judicial process." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000) (same). Thus, if "a dispute is not a proper case or controversy, the courts have no business deciding it." *DaimlerChrysler Corp.*, 547 U.S. at 341.

Plaintiffs' action is not a case or controversy cognizable under Article III. Plaintiffs ask the district court to review and assess the entirety of Congress's and the Executive Branch's programs and regulatory decisions relating to climate change and then to pass upon the comprehensive constitutionality of all of those policies, programs, and inaction in the aggregate. *See, e.g.*, ECF No. 7, ¶¶ 277-310. No federal court has ever purported to invoke the "judicial Power" to perform such a sweeping policy review — and for good reason: the Constitution commits to Congress the power to enact comprehensive government-wide measures of the sort sought by Plaintiffs. And it commits to the President the power to oversee the Executive Branch in its administration of existing law and to draw on its expertise and formulate policy proposals for changing that law. Such functions are not the province of Article III courts. The district court's contrary assertion constitutes a "judicial usurpation of power." *Cheney*, 542 U.S. at 380.

Plaintiffs appeal to the district court's equitable powers as justifying the review they seek in this case. But a federal court's equitable powers are "subject to restrictions: the suit must be within the traditional scope of equity as historically

evolved in the English Court of Chancery." *Guaranty Trust Co. v. York*, 326 U.S. 99, 105 (1945).   The relief requested by Plaintiffs is plainly not of the sort "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999).   "There simply are certain things that courts, in order to remain courts, cannot and should not do." *Missouri v. Jenkins*, 515 U.S. 70, 132 (1995) (Thomas, J., concurring).   One of those things is "running Executive Branch agencies." *Id.* at 133.   The same is surely true of running *all* of them.   At bottom, this dispute over American energy and environmental policy "is not a proper case or controversy" or a proper suit in equity, and so "the courts have no business deciding it." *DaimlerChrysler Corp.*, 547 U.S. at 341.

> ### 2.   The district court clearly and indisputably erred by allowing the claims to proceed outside the binding framework of the APA.

Plaintiffs' action is misconceived for another reason.   Under the APA, a judicial challenge to an agency's regulatory measures must be targeted at specifically identified agency actions or alleged failures to act, and review must be based on the administrative record for those actions and in accordance with special statutory provisions for judicial review.   The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.   The APA authorizes a reviewing court to "hold unlawful and set

aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity," *id.* § 706(2)(A)-(B), and to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1).

The APA thus provides a "comprehensive remedial scheme" for a "person 'adversely affected . . . ' by agency action" or alleged failure to act with respect to regulatory requirements and standards, permitting, and other administrative measures. *Western Radio Services Co. v. U.S. Forest Service*, 578 F.3d 1116, 1122-23 (9th Cir. 2009) (citation omitted), *cert. denied*, 559 U.S. 1106 (2010); *see also Wilkie v. Robbins*, 551 U.S. 537, 551-54 (2007) (describing the APA as the remedial scheme for vindicating complaints against "unfavorable agency actions"); *Webster v. Doe*, 486 U.S. 592, 607 n.* (1988) (Scalia, J., dissenting) (explaining that the APA "is an umbrella statute governing judicial review of all federal agency action," and that "if review is not available under the APA it is not available at all").

Plaintiffs allege that a vast number of (mostly unspecified) "agency action[s]" and inactions spanning the last several decades are, in the words of the APA, "contrary to constitutional right."   5 U.S.C. §§ 702, 706(2)(B).   As currently formulated, however, Plaintiffs' claims may not proceed under the APA, because the APA allows challenges only to "circumscribed, discrete" final agency action, not the "broad programmatic attack" on agency policies asserted by Plaintiffs here.

*Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62, 64 (2004) (*SUWA*);
*accord Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990).  Plaintiffs
expressly cast their claims as a challenge to the "affirmative aggregate actions" of
the defendant agencies, ECF No. 7, ¶ 5 — the antithesis of a challenge to specifically
identified and "*discrete* agency action" as permitted by Congress under the APA.
*SUWA*, 542 U.S. at 64.

Plaintiffs do not argue that their claims are proper under the APA.  Rather,
they argue that their claims need not comply with the APA because the Constitution
itself provides a right of action.  ECF No. 7, ¶ 13.  But the Supreme Court has never
suggested that the Constitution itself provides an across-the-board right of action for
all constitutional claims.  To the contrary, the Court recently concluded that the
Supremacy Clause does *not* "confer a right of action," a decision that conflicts with
the inherent cause of action for constitutional claims envisioned by Plaintiffs.
*Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015).

The district court likewise failed to grapple with *Armstrong*.  ECF No. 369, at
19-25.  *Armstrong* recognized that federal courts have equitable authority in some
circumstances "to enjoin unlawful executive action."  135 S. Ct. at 1385.  But it
emphasized that equitable power is "subject to express and implied statutory
limitations."  *Id.*  Thus, "[w]here Congress has created a remedial scheme for the
enforcement of a particular federal right," courts "have, in suits against federal

officers, refused to supplement that scheme with one created by the judiciary."
*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 74 (1996). Here, even if the
equitable authority of an Article III court could otherwise ever extend to an action
remotely resembling the one pursued by Plaintiffs here, the APA provides "express
. . . statutory limitations" that "foreclose," *Armstrong*, 135 S. Ct. at 1385 (internal
quotation marks omitted), Plaintiffs' asserted constitutional claims against the broad
and largely unspecified "aggregate actions" of the federal government as a whole,
ECF No. 7, ¶ 129.

> ### 3.    The district court clearly and indisputably erred by allowing the claims to proceed on the merits.

Finally, even if the district court could reach the merits of Plaintiffs'
constitutional theories, it should not have allowed their claims to move forward, let
alone to a ten-week trial. In declining to dismiss the case, the court concluded that
Plaintiffs had stated two constitutional claims based on substantive due process:
(1) a judicially enforceable fundamental right to "a climate system capable of
sustaining human life," and (2) a federal public-trust doctrine to the same effect.
ECF No. 369, at 48, 55. Both claims are baseless.

> #### a.    Substantive due process

As the Supreme Court has twice recognized, Plaintiffs' substantive due
process claims are "striking" in breadth. ECF No. 330-1; ECF No. 416, at 2. The
Supreme Court has repeatedly instructed courts considering novel due process

claims to "exercise the utmost care whenever . . . asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed" into judicial policy preferences. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (internal quotation marks omitted). More specifically, the Supreme Court has "regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Id.* at 720-21 (same). The district court's recognition here of a sweeping and "unenumerated fundamental right" to "a climate system capable of sustaining human life," ECF No. 83, at 31-32, squarely contradicts that directive. Such a right is entirely without basis in this Court's precedent or in the Nation's history and tradition.

The district court's recognition of a constitutional right to particular climate conditions, moreover, would wrest fundamental policy issues of energy development and environmental regulation affecting everyone in the country from "the arena of public debate and legislative action," and thrust them into the supervision of the federal courts. *Glucksberg*, 521 U.S. at 720. Indeed, the district court's decision here would vest a single district court — acting at the behest of 21 minors, a person purporting to act on behalf of future generations, and a single environmental organization advocating one particular perspective — with authority to oversee some of the most complex and high-stakes policy problems in

government.  To understate considerably, Congress or an "expert agency is surely better equipped to do the job than individual district judges." *American Electric Power*, 564 U.S. at 428.

Remarkably, the district court rooted its recognition of a fundamental due process right to "a climate system capable of sustaining human life," ECF No. 83, at 32, in the Supreme Court's recognition of a fundamental right to same-sex marriage in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015).  There is no relationship, however, between a distinctly personal and circumscribed right to same-sex marriage and the alleged right to a climate system capable of sustaining human life that apparently would run indiscriminately to every individual in the United States.  The right recognized by the district court has no relationship to any right as "fundamental as a matter of history and tradition" as the right to marry recognized in *Obergefell*.  *Id.* at 2602.  Nor was *Obergefell*'s recognition of that narrow right an invitation to abandon the cautious approach to recognizing new fundamental rights that is demanded by the Court's prior decisions.  The district court's reliance on *Roe v. Wade*, 410 U.S. 113 (1973), and a decision by the Supreme Court of the Philippines provides no further support.  *See* ECF No. 83, at 31-32.  To the contrary, the court's invocation of such far-afield precedents underscores that the right it purported to recognize has no legal basis.

b.    **Public-trust doctrine**

Plaintiffs' novel public-trust claim fares no better.  The roots of a public-trust doctrine "trace to Roman civil law and its principles can be found in the English common law on public navigation and fishing rights over tidal lands and in the state laws of this country."  *PPL Montana, LLC v. Montana*, 565 U.S. 576, 603 (2012). Where it applies, such a rationale generally is that "the sovereign owns all of its navigable waterways and the lands lying beneath them as trustee of a public trust for the benefit of the people."  *National Audubon Society v. Superior Court*, 33 Cal. 3d 419, 434 (internal quotation marks omitted), *cert. denied*, 464 U.S. 977 (1983).

Plaintiffs attempt to invoke a federal public-trust doctrine to impose judicially enforceable, extra-statutory obligations on the government's regulation of the fossil-fuel industry and the alleged effects on the atmosphere.  They fail, however, to identify a single decision applying public-trust notions in this sweeping and novel manner.  Even if such a doctrine could ever dictate a sovereign's regulation of private parties, Plaintiffs' claim would be unavailing because a public-trust doctrine is purely a matter of *state* law and pertains only to a *state's* functions.  *See PPL Montana*, 565 U.S. at 603 ("[T]he public trust doctrine remains a matter of state law."). Indeed, the D.C. Circuit concluded that a similar public-trust claim against federal officials was so insubstantial that it could not even provide a basis for federal jurisdiction.  *See Alec L. ex rel. Loorz v. McCarthy*, 561 Fed. Appx. 7, 8 (per curiam),

*cert. denied*, 135 S. Ct. 774 (2014).  As the D.C. Circuit explained, the Supreme Court has "categorically rejected any federal constitutional foundation for [the public trust] doctrine, without qualification or reservation."  *Id.*

### B. The government has no other adequate means to attain relief from the district court's refusal to terminate these fundamentally  misguided and improper proceedings.

Mandamus is warranted to correct the district court's egregious errors because the government has "no other adequate means" to obtain relief from the district court's refusal to dismiss this litigation or to prevent the impending trial.  *Cheney*, 542 U.S. at 380.  The denial of a motion to dismiss is not among the "final decisions of the district courts" reviewable by a court of appeals under 28 U.S.C. § 1291.  The district court has repeatedly rejected the government's requests to certify its decisions for interlocutory appeal.  ECF No. 172; ECF No. 369, at 59-61.  Indeed, the court refused to certify its decision for interlocutory appeal even after the Supreme Court expressly recognized the "substantial grounds for difference of opinion" about the justiciability of the claims, ECF No. 330-1 — a statement directly tracking the text of the statute authorizing certification for interlocutory appeal, 28 U.S.C. § 1292(b), but that the court did not even mention in its order denying the government's dispositive motions.  In its most recent order, moreover, the Supreme Court underscored the fact that the district court "declined to certify its orders for interlocutory review under 28 U.S.C. § 1292(b)."  ECF No. 416, at 2.

To be sure, the government might be able to raise some of the arguments asserted here after a 10-week liability-phase trial, after a finding that the federal government is liable for the harms of climate change, and after further proceedings to impose an unprecedented invasive remedy. But an appellate reversal at that point would hardly provide an "*adequate* means" of obtaining relief from the usurpation of power by the district court and from the resulting proceedings that themselves violate the separation of powers. *Cheney*, 542 U.S. at 380 (emphasis added); *see also, e.g., In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014) (granting mandamus where appeal after final judgment would not provide an "adequate" means of obtaining relief), *cert. denied*, 135 S. Ct. 1163 (2015); *In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17, 20-25 (1st Cir. 1982) (same); 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3932 (3d ed. 2005 & Supp. 2018) (citing similar cases).

The government, moreover, is not a private litigant seeking to evade the normal process of appellate review. The Executive Branch agencies and officials sued by Plaintiffs will "suffer a special institutional harm by being forced to remain" in this suit through a trial, finding of liability, and entry of a remedy. *In re Justices*, 695 F.2d at 20. As the Supreme Court explained in *Cheney*, "mandamus standards are broad enough to allow a court of appeals to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities." 542

U.S. at 382; *see also id.* (recognizing the "paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties").   Here, requiring the government to participate in the fundamentally misguided trial envisioned by the district court would constitute a "judicial usurpation of power" warranting mandamus for at least two additional reasons.  *Id.* at 380.

*First*, subjecting the government to trial on Plaintiffs' claims would violate the APA's reticulated scheme for agencies to make factual assessments and policy determinations through rulemaking with broad public participation and through agency adjudication, not though civil litigation directly in Article III courts.  The APA sets forth a "comprehensive regulation of procedures" for agency decisionmaking.  *Wong Yang Sung v. McGrath*, 339 U.S. 33, 36 (1950).  "Time and again," the Supreme Court has explained that the APA establishes the exclusive procedural requirements for agency decisionmaking, and courts are not free to alter those requirements.  *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1207 (2015).  To require agencies to take official positions on factual assessments and questions of policy concerning the climate through the civil litigation process — and then, if liability is found, to participate in further judicial proceedings to impose on them an "enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric $CO_2$," ECF No. 83, at 12-13, 26-27 (quoting ECF No. 7,

at 94) — would impermissibly conflict with the procedures prescribed by the APA and deprive other interested parties and the public of the opportunity mandated by Congress or agency procedures to provide input.*

*Second*, subjecting the government to trial on Plaintiffs' claims would violate the Constitution's separation of powers.  Even before the enactment of the APA, the Supreme Court recognized that permitting an agency's "findings to be attacked or supported in court by new evidence would substitute the court for the administrative tribunal," *Tagg Bros. & Moorhead v. United States*, 280 U.S. 420, 444 (1930), a step that would improperly allow the court to "usurp[] the agency's function," *Unemployment Compensation Commission v. Aragon*, 329 U.S. 143, 155 (1946). Moreover, "in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed," the Supreme Court has made clear that "consideration is to be confined to the administrative record and that no *de novo* proceeding may be held."  *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963).

Limiting judicial review of actions taken within the scope of the agency's authority as conferred by Congress in its organic statute in this manner reflects

---

* For example, this action clearly implicates Congress's policy decisions in the Clean Air Act.  Section 307 of that Act, 42 U.S.C. § 7607, contains a procedural scheme bearing on air quality-related rulemaking and adjudication that is even more highly reticulated than the APA default.

fundamental separation-of-powers principles. By seeking to leverage the civil litigation process to direct federal agencies' decisions outside the congressionally prescribed statutory frameworks that govern the official actions of the numerous agencies and officials that Plaintiffs have sued, Plaintiffs would run roughshod over those principles. Plaintiffs' proposed approach violates the vesting of the "legislative Power[]" in Congress to the extent it would require agencies to transgress the substantive and procedural constraints imposed on them by statute. U.S. Const. art. I, § 1. To the extent Plaintiffs seek a judicial decree directly requiring the government to develop and implement broad policies across the Executive Branch, they seek to violate the Constitution's vesting of "executive Power . . . in a President of the United States." *Id.* art. II, § 1, cl. 1. Granting mandamus relief is the only "adequate means" of preventing such intrusions. *Cheney*, 542 U.S. at 380.

## C.    Mandamus relief is appropriate under the circumstances.

Finally, and for the reasons discussed above, mandamus relief is "appropriate under the circumstances." *Cheney*, 542 U.S. at 381. As noted, mandamus was traditionally used "to confine [an inferior court] to a lawful exercise of its prescribed jurisdiction," and granting mandamus to dismiss this case based on the manifest absence of Article III jurisdiction and of any cognizable constitutional rights on the merits would be consistent with that use. *Id.* at 380; *see also, e.g., In re Roman*

*Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 35-36 (2d Cir. 2014) (per curiam) (issuing writ of mandamus based on district court's failure to grant motion to dismiss for lack of jurisdiction); *Abelesz v. OTP Bank*, 692 F.3d 638, 651-52 (7th Cir. 2012) (same); *In re Justices*, 695 F.2d at 25 (same); Wright, *supra*, § 3933.1 (discussing other examples).

Mandamus is particularly appropriate here because dismissing the case is the only way "to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities." *Cheney*, 542 U.S. at 382.  As noted, the Supreme Court has indicated that appellate review before trial is appropriate by reciting language from the statute authorizing certification for interlocutory appeal and by expressly citing that statute.  ECF No. 330-1; ECF No. 416, at 2.  But the district court has declined to follow the Supreme Court's direction, leaving an extraordinary writ as the only means for appellate review before much of the Executive Branch is subjected to a trial on baseless claims that the district court has no authority to remedy.  The "novelty of the District Court's" ruling, "combined with its potentially broad and destabilizing effects," underscores that granting such a writ is "appropriate under the circumstances."  *In re Kellogg Brown & Root*, 756 F.3d at 763 (quoting *Cheney*, 542 U.S. at 381).

## II.    Alternatively, if the district court declines to certify its orders for interlocutory appeal under 28 U.S.C. § 1292(b), this Court should issue a writ of mandamus directing the district court to do so.

If the district court declines to certify its denials of the government's dispositive motions for interlocutory appeal under 28 U.S.C. § 1292(b), and if this Court does not issue a writ of mandamus directing the district court to dismiss this action, this Court should at least issue a writ directing the district court to certify its decisions for interlocutory appeal under § 1292(b) — as the Supreme Court has now made unmistakably clear that the district court should do.  *See* ECF No. 416, at 2.

To be sure, certification for interlocutory appeal under § 1292(b) is an exercise of discretion for the district court.  But as the Supreme Court has made clear, "a motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005) (Roberts, C.J.) (quoting *United States v. Burr*, 25 F. Cas. 30, 35 (No. 14,692d) (C.C. Va. 1807) (Marshall, C.J.)).  As the Supreme Court explained, "limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike."  *Id.*; *cf. Fernandez-Roque v. Smith*, 671 F.2d 426, 431 (11th Cir. 1982) ("[T]his case presents the truly 'rare' situation in which it is appropriate for this court to require certification of a controlling issue of national significance.").

The Supreme Court has left little room for doubt that the district court's orders denying the government's dispositive motions meet the "legal standards" for certification under 28 U.S.C. § 1292(b). *Martin*, 546 U.S. at 139. As this Court has recognized in this very case, mandamus is available in "exceptional circumstances amounting to . . . a clear abuse of discretion." *In re United States*, 884 F.3d at 834 (quoting *Cheney*, 542 U.S. at 380). The district court's refusal to certify for interlocutory appeal such an extraordinary decision as the district court's here, after the Supreme Court has expressly indicated that the standard for certification is satisfied, would surely qualify as a "clear abuse of discretion" and an "exceptional" circumstance warranting mandamus. *Id.*

## III. In any event, this Court should immediately grant a stay of proceedings in the district court pending consideration of this petition.

Finally, the government requests a stay of district court proceedings while this Court and, if necessary, the Supreme Court consider the government's pending request for mandamus relief. *See* All Writs Act, 28 U.S.C. § 1651(a) (authorizing courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"); *cf.* 9th Cir. General Order 6.8a (motions panel "may also issue a stay or injunction pending further consideration of the application").

Whether to issue a stay is "an exercise of judicial discretion . . . to be guided by sound legal principles," *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (internal quotation marks omitted), based on the following four factors:  (1) the applicant's likely success on the merits; (2) irreparable injury to the applicant absent a stay; (3) substantial injury to the other parties; and (4) the public interest. *Id.* at 434 (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  The first two factors are "the most critical." *Id.*  The balance of equities and consideration of the public interest merge when the government is a party.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Parts I and II above demonstrate that the government has a strong likelihood of obtaining some form of mandamus relief from either this Court or from the Supreme Court.  Indeed, the Supreme Court has expressly stated that "adequate relief may be available in" this Court, and, by denying the government's mandamus petition *without* prejudice,  ECF No. 416, at 2-3, the Supreme Court has left open the possibility that it would grant mandamus in response to a future request by the government.

Sections I.B and I.C in particular (pp. 27-32) show that, absent a stay, the government will suffer irreparable injury.  Specifically, the government will be forced to proceed with a 10-week liability trial that is fundamentally inconsistent with Article III and the separation of powers under the Constitution, as well as with

procedures Congress has prescribed in agencies' organic statutes and the APA for agencies to consider factual and legal issues concerning major policy and for the courts to review their determinations.  Trial would force the government to address climate-change policy not in APA rulemakings and other agency actions authorized by statute, but rather in a single trial court in Oregon.  These injuries caused by the trial itself could not be remedied on appeal.

The more tangible costs of these proceedings should also not be ignored.  As of October 18, when the government filed its mandamus petition in the Supreme Court, the Department of Justice alone had already devoted more than 13,000 attorney and paralegal hours and spent millions of taxpayer dollars in expert fees, travel expenses, and other non-attorney fees defending against Plaintiffs' baseless claims.  Exhibit 1, ¶¶ 2-3 (filed concurrently herewith).  If the liability phase of trial proceeds as scheduled, the parties are expected to present up to 72 witnesses — 43 lay witnesses and 29 expert witnesses.  *Id.*, ¶ 5.  Expert testimony would be expected on a diverse range of topics — including the impacts of climate change on ocean chemistry, sea level, glaciers, terrestrial ecosystems, and human physical and emotional health, as well as the technical and economic feasibility of transitioning to renewable sources of energy and sequestering carbon from the atmosphere, to name just a few examples — described in more than 1100 pages worth of expert reports.  *Id.*  Plaintiffs' exhibit list includes documents dating back to the

Washington Administration.  To conduct a trial of this staggering complexity, even under conservative estimates, attorneys and paralegals of the Department's Environmental and Natural Resources Division are likely to commit an additional 7300 hours and additional millions of taxpayer dollars between now and February 2019 to proceedings that should never occur.  *Id.*, ¶¶ 6-7.

The government, of course, recognizes the need to devote resources to defend against plausible claims and, in the ordinary course, it does not seek extraordinary relief from this Court simply because it disagrees with a district court's resolution of a dispositive motion.  But the claims in this case are extraordinary, and the district court's errors are numerous and profound.  The costs that those errors would impose on the government, if the trial is permitted to proceed, would unavoidably "distract [the Department] from the energetic performance of its constitutional duties" in a manner that warrants this Court's intervention.  *Cheney*, 542 U.S. at 382.

By contrast, Plaintiffs can make no credible claim that a relatively brief stay to decide the government's petition will cause them irreparable harm.  Because Plaintiffs' alleged injuries stem from the cumulative effects of $CO_2$ emissions from every source in the world over decades, whatever additions to the global atmosphere that may somehow be attributed to the defendant agencies over the time it takes to resolve the government's pending petition are plainly *de minimis* in context and not a source of irreparable harm.

37

This Court rightly granted a stay of district court proceedings in order to consider the government's first mandamus petition in this case. *In re United States*, No. 17-71692, ECF No. 7 (July 25, 2017).  And the Chief Justice granted an administrative stay for the Supreme Court to consider the government's most recent mandamus petition.  Because the *Nken* factors strongly favor a stay — and because the Supreme Court plainly contemplated that this Court would address the government's request for "adequate relief" before trial, ECF No. 416, at 2 — a stay is appropriate here.

## CONCLUSION

For the foregoing reasons, the Court should issue a writ of mandamus directing the district court to dismiss this action or, alternatively, to certify its denials of the government's dispositive motions for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Moreover, the Court should immediately grant an administrative stay of proceedings in the district court pending consideration of this petition.

Dated:  November 5, 2018.

Respectfully submitted,

s/ Eric Grant
JEFFREY BOSSERT CLARK
*Assistant Attorney General*
JEFFREY H. WOOD
ERIC GRANT
*Deputy Assistant Attorneys General*
ANDREW C. MERGEN
SOMMER H. ENGELS
ROBERT J. LUNDMAN
*Attorneys*
Environment and Natural Resources Division
Counsel for Petitioners          U.S. Department of Justice

## STATEMENT OF RELATED CASES

There are three related cases within the meaning of Circuit Rule 28-2.6, namely, the government's prior petitions for writs of mandamus: *In re United States*, 884 F.3d 830 (9th Cir. 2018) (No. 17-71692); *In re United States*, 895 F.3d 1102 (9th Cir. 2018) (No. 18-71928); and *In re United States* (denied as moot Nov. 2, 2018) (No. 18-72776).

**Form 8.**      **Certificate of Compliance Pursuant to 9th Circuit Rules 28.1-1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4** for Case Number 18-_____

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28.1-1. The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1. The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b). The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [_____] The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☒ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [9,256] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4. The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant [s/ Eric Grant]    Date [Nov 5, 2018]

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 5, 2018.

I further certify that on this date, a notice of filing of the foregoing (including a complete copy of the foregoing) will be filed in the district court in the underlying matter, and service in compliance with Federal Rule of Appellate Procedure 21(a)(1) will be accomplished through the district court's CM/ECF system.  All counsel in this case are participants in that system.  In addition, a courtesy copy of the foregoing has been provided via e-mail to the following counsel for Plaintiffs:

Julia A. Olson
JuliaAOlson@gmail.com
Wild Earth Advocates
1216 Lincoln Street
Eugene, Oregon 97401

Philip L. Gregory
pgregory@gregorylawgroup.com
Gregory Law Group
1250 Godetia Drive
Redwood City, California 94062

Daniel M. Galpern
Dan.Galpern@gmail.com
Law Offices of Daniel M. Galpern
1641 Oak Street
Eugene, Oregon 97401

Andrea K. Rodgers
Andrearodgers42@gmail.com
Law Offices of Andrea K. Rodgers
3026 NW Esplanade
Seattle, Washington 98117

s/ Eric Grant
Eric Grant

Counsel for Petitioners

No. 18-_____

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re UNITED STATES OF AMERICA, et al.

UNITED STATES OF AMERICA, et al., Petitioners,

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON,
Respondent,

and

KELSEY CASCADIA ROSE JULIANA, et al., Real Parties in Interest.

On Petition for a Writ of Mandamus to the United States District Court
for the District of Oregon (No. 6:15-cv-01517-AA)

**EXHIBITS TO PETITION FOR A WRIT OF MANDAMUS AND
EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

<div style="margin-left:40%">

JEFFREY BOSSERT CLARK
*Assistant Attorney General*
JEFFREY H. WOOD
ERIC GRANT
*Deputy Assistant Attorneys General*
ANDREW C. MERGEN
SOMMER H. ENGELS
ROBERT J. LUNDMAN
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 514-0943
eric.grant@usdoj.gov

</div>

Counsel for Petitioners

**EXHIBITS**

1.    Declaration of Guillermo A. Montero, filed in *In re United States*, No. 18A410

      (U.S. Oct. 18, 2018).

2.    Letter from Plaintiffs' counsel to government's counsel (Nov. 3, 2018).

Exhibit 1

3a

IN THE SUPREME COURT OF THE UNITED STATES

_____

No. 18A-_____

IN RE UNITED STATES OF AMERICA, ET AL.

_____

DECLARATION OF GUILLERMO A. MONTERO
IN SUPPORT OF APPLICATION FOR A STAY PENDING
DISPOSITION OF A PETITION FOR A WRIT OF MANDAMUS TO THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON
AND ANY FURTHER PROCEEDINGS IN THIS COURT
AND REQUEST FOR AN ADMINISTRATIVE STAY

_____

I, Guillermo A. Montero, do declare and if called upon would testify as follows:

1.   I am an assistant chief in the Environment and Natural Resources Division ("ENRD") of the United States Department of Justice, where I have worked since 2004.   In that capacity, I supervise the attorneys of record for Defendants in the district court proceedings of the above-captioned action.   I have personal knowledge of the statements made herein, as informed by my review of district court filings, information in the ENRD case management system, and information compiled from the ENRD Office of the Comptroller, Expert Witness Unit, and Office of Litigation Support.

2.   As of October 17, 2018, ENRD has devoted over 13,000 attorney and paralegal hours defending this case.

4a

2

3.    As of October 17, 2018, ENRD has expended $2,134,141.09
on expert witness invoice payments; $13,333.57 on invoice payments
for depositions and transcripts; and $121,611.61 on employee
travel expenses.

4.    The liability phase of trial in this case will begin on
October 29, 2018, and is expected to last approximately 50 calendar
days over the course of several months.    The district court has
scheduled the first two weeks of this phase of trial for October
29 through November 9, 2018.

5.    The parties have indicated that they will call 29 expert
witnesses during this phase of trial, and as many as 43 lay
witnesses, for a total of 72 potential witnesses.    The expert
witnesses will testify to a broad range of topics, including the
impacts of climate change on ocean chemistry, sea level, glaciers,
terrestrial ecosystems, and human physical and emotional health,
as well as the technical and economic feasibility of transitioning
to renewable sources of energy and sequestering carbon from the
atmosphere.    That proposed testimony is described in 1,156 pages
of expert reports and approximately 130 hours of depositions
completed as of October 12.

6.    Between now and the end of the liability phase of trial,
I estimate that ENRD will expend another $5.2 million in expert
witness fees, in addition to the following sundry expenses:
$198,986.65 for travel-related expenses from October 2018 through

February 2019; $40,000 in transcript, copying, and shipping costs; and $9,600 for a conference room at trial.

7.    Primary responsibilities for handling this phase of trial have been assigned to five attorneys and three paralegals. I estimate that each attorney will expend anywhere from 60 to 80 hours per week on this case for the ten weeks I expect trial to be in session, and anywhere from 30 to 40 hours per week on this case when trial is not in session, *viz.*, the weeks of Nov. 12-16, Nov. 19-23, Dec. 17-21, Dec. 24-28, and Dec. 31-Jan. 4.  I also estimate that each attorney will work between 10 and 12 hours per day between now and the start of this phase of trial on October 29. Similarly, I estimate that the three paralegals assigned to this trial will expend a combined total of 220 hours per week on this case for the ten weeks I expect trial to be in session, and a combined total of 100 hours per week on this case while trial is not in session.  I also estimate that those three paralegals will work a combined 24 hours per day on this case between now and the start of this phase of trial on October 29.  Based on the lowest number in each range, and if trial proceeds as expected, I conservatively estimate that ENRD attorneys and paralegals will expend at least 7,300 hours on the liability phase of trial between now and February, 2019.

8.    Attached as Exhibit A is a true and correct copy of Plaintiffs' Witness List, which Plaintiffs filed with the district court on October 15, 2018.

6a

4

9.    Attached as Exhibit B is a true and correct copy of Defendants' Witness List, which Defendants filed with the district court on October 15, 2018.

10.   Attached as Exhibit C is a true and correct copy of the Exhibit List Plaintiffs served on Defendants on October 12, 2018, with column-widths modified solely for purposes of facilitating printing.

11.   Attached as Exhibit D is a true and correct copy of the Exhibit List Defendants served on Plaintiffs on October 12, 2018, with column-widths modified solely for purposes of facilitating printing.

I declare that the foregoing is true and correct.   Executed on this 17th day of October, 2018.

_____
GUILLERMO A. MONTERO

Exhibit 2

**GREGORY LAW GROUP**
**1250 Godetia Drive**
**Redwood City, CA 94062-4163**
**pgregory@gregorylawgroup.com**

November 3, 2018

***VIA EMAIL***

Sean C. Duffy
Frank Singer
Marissa Piropato
Clare Boronow
Erika Norman
**U.S. DEPARTMENT OF JUSTICE**
**ENVIRONMENT & NATURAL RESOURCES DIVISION**
601 D Street NW
Washington, DC 20004
sean.c.duffy@usdoj.gov
frank.singer@usdoj.gov
Marissa.piropato@usdoj.gov
clare.boronow@usdoj.gov
Erika.Norman@usdoj.gov

> **Re:** ***Juliana v. United States***, **6:15-cv-01517-AA, Pretrial Issues on which Counsel Should Meet and Confer**

Dear Sean, Frank, Marissa, Clare, and Erika,

In light of the Supreme Court order dated November 2, 2018, Plaintiffs would like to set up a meet and confer session to commence an immediate trial. To that end, we are available to meet and confer any time on the following issues on Monday, November 5:

**PLAINTIFFS' EXHIBIT LIST**

- Plaintiffs' Exhibit List was filed with the Court on October 19. On November 2, Plaintiffs sent Defendants via overnight mail a USB stick containing all of Plaintiffs' exhibits identified with exhibit number and Bates stamped number. That USB stick will arrive before 10:30 a.m. on Monday, November 5. Plaintiffs are continuing to refine our Exhibit List and will inform you of any changes to the Exhibit List as soon as possible.
- Plaintiffs also have filed their opposition to Defendants' Motion to Strike Plaintiffs' Exhibits.

November 3, 2018
Page **2** of **5**

**DEFENDANTS' EXHIBIT LIST**

- Defendants' Exhibit List was filed with the Court on October 19.
- Plaintiffs filed objections to Defendants' Exhibit List on October 19.
- Plaintiffs have reviewed Defendants' FRE 1006 Summary and have found numerous inaccuracies. Plaintiffs hereby request Defendants withdraw their FRE 1006 Summary.
- Plaintiffs have reviewed the Congressional Hearing Reports included on Defendants' Exhibit List and have numerous objections regarding these Reports.
- Plaintiffs will be filing supplemental objections to Defendants' Exhibit List.
- Plaintiffs remain willing to meet and confer on these issues.

**MOTIONS IN LIMINE**

**Plaintiffs' Motions in Limine re. Judicial Notice**

- Plaintiffs filed their Motion for Reconsideration with respect to the documents that the Court did not judicially notice.
- Plaintiffs remain willing to meet and confer on this issue.

**Defendants' Threatened Motion to Strike Plaintiffs' Fact Witnesses**

- On November 2, Plaintiffs responded via letter that Defendants have no grounds to strike Plaintiffs' eight fact witnesses.
- Plaintiffs remain willing to meet and confer on this issue.

**Defendants' Motion to Strike Plaintiffs' Pretrial Order**

- Plaintiffs filed their response in opposition.
- Plaintiffs remain willing to meet and confer on this issue.

**Defendants' Motions in Limine re: Experts**

- Catherine Smith
  - Plaintiffs will file their response in opposition on or before November 5.
  - Plaintiffs will meet and confer on this issue in light of the points raised in Plaintiffs' response.
- Akilah Jefferson
  - Plaintiffs have filed their response in opposition.
  - Plaintiffs remain willing to meet and confer on this issue in light of the points raised in Plaintiffs' response.
- Unidentified portions of scientific expert testimony of six experts
  - Plaintiffs have filed their response in opposition.
  - Plaintiffs remain willing to meet and confer on this issue in light of the points raised in Plaintiffs' response.

November 3, 2018
Page **3** of **5**

**Defendants' Motion for Judicial Notice of Congressional Hearing Reports**

- Plaintiffs filed their response not opposing the authenticity of the documents but preserving their objections to Defendants' Exhibit List.
- Plaintiffs remain willing to meet and confer on this issue in light of the points raised in Plaintiffs' response.

**DISCOVERY**

**Depositions**

- Plaintiffs propose taking the depositions of the following witnesses during the week of November 12:
  - o   Dr. Akilah Jefferson in San Diego;
  - o   Dr. Karrie Walters in Eugene;
  - o   Dr. Jeffrey Sugar in Los Angeles;
  - o   The author of the Speth Rebuttal Report; and
  - o   Those Plaintiffs not previously deposed who will testify at trial in Eugene.

**Gus Speth Rebuttal Report**

- Plaintiffs propose a new deadline for service of this rebuttal report as November 9, 2018. The prior deadline was October 26, one week after the temporary stay was put in place.
- Plaintiffs propose taking the deposition of this witness during the week of November 12.

**Plaintiffs' Supplemental Responses to Defendants' Interrogatories**

- Plaintiffs will serve supplemental responses to Defendants' interrogatories.

**Plaintiffs' Motion to Compel Interrogatory Responses**

- Plaintiffs will file a renewed request for expedited consideration of this motion.

**TRIAL**

**Trial Scheduling**

- Plaintiffs will request that the Court hold the Pre-Trial Conference on November 8 or 9.
- Plaintiffs will request that trial commence either on November 19 or during the latter part of the week of November 12 if the Court's schedule allows, first with opening statements and witnesses.
- Plaintiffs believe opening statements should be limited to two hours per side.

November 3, 2018
Page **4** of **5**

## Designation of Eakin & Kuperberg Deposition Transcripts

- Plaintiffs request that Defendants stipulate to the use of designated deposition testimony from these two witnesses.

## Agenda for Pretrial Conference

- Plaintiffs believe the parties should agree on a proposed agenda for the Pre-Trial Conference.
- Plaintiffs' proposed agenda is as follows:

    o Administrative matters
        ▪ Trial Dates
        ▪ Hours per day: 8:30-4:30 p.m.
        ▪ Break out rooms
        ▪ Time limits per side for the presentation of evidence

    o Opening statement: 2 hours per side.

    o Order of witnesses
        ▪ Notice 48 hours in advance
        ▪ All witnesses are allowed in the courtroom

    o Handling of experts
        ▪ We will ask the Court to have reviewed an expert's report before that expert takes the witness stand.
        ▪ We will suggest a limited direct examination of an expert witness based on the court's review of his or her report.
        ▪ Voir dire of an expert.
        ▪ We will ask the Court to consider taking experts out of order such that Plaintiffs may put on their rebuttal experts during Plaintiffs' case-in-chief.
        ▪ We will ask the Court to address confidential proceedings re. testimony about Plaintiffs.

    o Handling of exhibits
        ▪ Hard copies/binders: the parties should reach a date for completion of the physical marking and numbering of all papers and objects that are expected to be introduced as exhibits.
            • Bates number
            • Exhibit sticker
            • Submission to court
                o Objections

- Objections not so disclosed (other than objections under Federal Rules of Evidence 402 and 403) shall be deemed waived unless excused by the court for good cause shown. *See* Fed. R. Civ. P. 26(a)(3).
  - Does not apply to demonstratives
  - Effect of failure to list an exhibit or to disclose such exhibit to opposing counsel will result, except upon a showing of good cause, in the non-admissibility of the exhibit into evidence at the trial.
  - Plaintiffs will raise with the Court that Defendants failed to make their exhibits available for inspection prior to the due date for submission of objections.
  - For each listed exhibit, counsel shall determine whether they will stipulate to admissibility for all purposes or at least waive foundation for the opposing party's exhibits.

- Depositions
  - Designations by the offering party of those portions of any depositions which will be presented at trial.
  - The other party shall then designate additional portions of any deposition appearing on the offering party's list.
  - A party who objects to admissibility of deposition testimony to be offered shall file a list of objections that party intends to preserve.
  - Counsel shall then confer prior to commencement of the trial to edit the depositions.

- Use of other discovery materials

Plaintiffs are willing to consider other matters that Defendants wish to raise. We look forward to scheduling a meet and confer on November 5.

Regards,

/s/

**Philip L. Gregory**

cc:   **Julia A. Olson**

**Andrea Rodgers**

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 5, 2018.

I further certify that on this date, a notice of filing of the foregoing (including a complete copy of the foregoing) will be filed in the district court in the underlying matter, and service in compliance with Federal Rule of Appellate Procedure 21(a)(1) will be accomplished through the district court's CM/ECF system. All counsel in this case are participants in that system. In addition, a courtesy copy of the foregoing has been provided via e-mail to the following counsel for Plaintiffs:

Julia A. Olson
JuliaAOlson@gmail.com
Wild Earth Advocates
1216 Lincoln Street
Eugene, Oregon 97401

Philip L. Gregory
pgregory@gregorylawgroup.com
Gregory Law Group
1250 Godetia Drive
Redwood City, California 94062

Daniel M. Galpern
Dan.Galpern@gmail.com
Law Offices of Daniel M. Galpern
1641 Oak Street
Eugene, Oregon 97401

Andrea K. Rodgers
Andrearodgers42@gmail.com
Law Offices of Andrea K. Rodgers
3026 NW Esplanade
Seattle, Washington 98117

s/ Eric Grant
Eric Grant

Counsel for Petitioners