STEVE MARSHALL
*Attorney General of Alabama*

Edmund G. LaCour Jr. (AL Bar No. 9182-U81L)
*Solicitor General*

Thomas A. Wilson (AL Bar No. 1494-D25C)
*Deputy Solicitor General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Ave.
Montgomery, AL 36130
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov

*Counsel for Proposed Defendant-Intervenor*
*State of Alabama*

[*additional counsel listed on signature page*]

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**, *et al.*,<br>    Plaintiffs,<br><br>    v.<br><br>**UNITED STATES OF AMERICA**, *et al.*,<br>    Defendants. | Case No. 6:15-cv-01517-AA<br><br>**MOTION FOR LIMITED INTERVENTION AND MEMORANDUM IN SUPPORT BY PROPOSED DEFENDANT-INTERVENORS STATES OF ALABAMA, ALASKA, ARKANSAS, GEORGIA, INDIANA, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NORTH DAKOTA, OHIO, OKLAHOMA, SOUTH CAROLINA, TEXAS, UTAH, AND WEST VIRGINIA.**<br><br>**REQUEST FOR EXPEDITED RULING** |

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................ ii

**LOCAL RULE 7-1(a) CERTIFICATION** ................................................. 1

**MOTION** .......................................................................................................... 1

**INTRODUCTION** ........................................................................................... 2

**BACKGROUND** .............................................................................................. 5

    I.  The *Juliana* Litigation. ..................................................................... 5

    II. The Federal Government's Collusive Litigation Strategy and That Strategy's Likelihood Here. ................................................................................ 7

    III. The Intervening States and Their Interests in This Case. ............................. 9

**ARGUMENT** ................................................................................................... 12

    I.  The States Are Entitled to Limited Intervention as a Matter Of Right Under Rule 24(a)(2). ................................................................................ 12

        A.  The Motion Is Timely. ...................................................... 13

        B.  The States Have Significant Interests in This Litigation. ................................ 14

        C.  Plaintiffs' Challenge Threatens to Impair the States' Interests. .................... 15

        D.  The Federal Government Will Not Adequately Represent the Interests of the States. ...................................................................... 16

    II. In the Alternative, This Court Should Grant the States Limited Permissive Intervention Under Rule 24(b). ................................................... 18

**CONCLUSION** ............................................................................................... 19

**CERTIFICATE OF SERVICE** ..................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
  458 U.S. 592 (1982) ................................................................. 10

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003) .......................................... 13, 16, 17

*Becerra v. Mayor & City Council Baltimore,*
  No. 20-454, 2021 WL 1951787 (U.S. May 17, 2021) ......................... 8, 9

*Brumfield v. Dodd,*
  749 F.3d 339 (5th Cir. 2014) ................................................ 16

*California ex rel. Lockyer v. United States,*
  450 F.3d 436 (9th Cir. 2006) ............................................ 14, 16

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011) ............................................ 15, 16

*City & Cty. of San Francisco v. United States Citizenship & Immigr. Servs.,*
  992 F.3d 742 (9th Cir. 2021) ......................................... 4, 7, 8, 15

*Collins v. City of Harker Heights, Tex.,*
  503 U.S. 115 (1992) .......................................................... 6

*Cook Cty., Ill. v. Wolf,*
  No. 20-3150 (7th Cir. Mar. 9, 2021) ......................................... 7

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n,*
  788 F.3d 312 (D.C. Cir. 2015) .............................................. 17

*Dep't of Homeland Sec. v. New York,*
  140 S. Ct. 599 (2020) ........................................................ 7

*In re United States,*
  884 F.3d 830 (9th Cir. 2018) ................................................. 5

*Juliana v. United States,*
  47 F.3d 1159 (9th Cir. 2020) ........................................... passim

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ........................................................ 6, 7

*Mayor & City Council of Baltimore v. Azar*,
    392 F. Supp. 3d 602 (D. Md. 2019) ........................................................... 9

*Missouri v. Illinois*,
    180 U.S. 208 (1901) ................................................................................ 11, 15

*Perry v. Schwarzenegger*,
    630 F.3d 898 (9th Cir. 2011) ..................................................................... 18

*San Francisco Herring Ass'n v. Dep't of the Interior*,
    946 F.3d 564 (9th Cir. 2019) ....................................................................... 3

*Smith v. L.A. Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) ............................................... 12, 13, 14, 15

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001). ..................................................................... 16

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) ..................................................................................... 16

*United States v. U.S. Dist. Court for Dist. of Or.*,
    139 S. Ct. 1 (2018) ......................................................................................... 5

*Wilderness Soc'y v. U.S. Forest Serv.*,
    630 F.3d 1173 (9th Cir. 2011) ............................................................. 12, 15

*Wolf v. Cook Cty., Ill.*,
    140 S. Ct. 681 (2020) ..................................................................................... 7

## Rules

Fed. R. Civ. P. 24 ............................................................................. 12, 14, 15, 18

## Regulations

84 C.F.R. § 41,292 (Aug. 14, 2019) ..................................................................... 7

86 C.F.R. § 7037 (Jan. 20, 2021) ........................................................................ 17

86 C.F.R. § 7041 (January 20, 2021) .................................................................... 9

86 C.F.R. § 7619 (January 27, 2021) .................................................................... 9

## LOCAL RULE 7-1(a) CERTIFICATION

Pursuant to Local Rule 7-1(a), the Proposed Defendant-Intervenor States certify that the parties made a good-faith effort through telephone conferences on June 7 with Plaintiffs and Defendants to resolve this dispute, but were unable to do so. Defendants oppose the States' request for intervention as of right and take no position on the States' request for permissive intervention. Plaintiffs oppose this Motion, stating as follows: "Plaintiffs[] oppose Alabama *et al*.'s intervention as of right and permissive intervention as untimely and inconsistent with Rule 24. Due to the untimely nature of the motion to intervene and the case calendar, Plaintiffs also oppose the motion to expedite. Once Plaintiffs see the motions, Plaintiffs may have additional grounds for their opposition."

## MOTION

Pursuant to Federal Rule of Civil Procedure 24, Proposed Defendant-Intervenors move this Court for an order allowing them to intervene as defendants in this case as of right, or in the alternative permissibly, for the limited purposes of opposing Plaintiffs' motion for leave to amend and file a second amended complaint (Doc. 462),[1] participating in settlement negotiations, and objecting to any proposed settlement (if necessary).[2]

---

[1] Unless indicated otherwise, "Doc." refers to docket entries in this case, and page citations accord with CM/ECF pagination.

[2] Because of the limited scope of the States' proposed intervention and the unique posture of the case—wherein the Ninth Circuit has ordered this case dismissed and Plaintiffs are in the midst of trying to file a new complaint—the States attach to this motion only a short brief in opposition to Plaintiffs' motion to amend (Doc. 462). *See Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1236 n.19 (D.C. Cir. 2004) (allowing intervention where prospective intervenors did not include a pleading because it was not clear "what type of pleading the would-be intervenors could have filed in a case such as this" and parties "ma[d]e no claim they had inadequate notice of the intervenors' appeal") (citing Fed. R. Civ. P. 24(c)).

Proposed Defendant-Intervenors' Motion for
Limited Intervention and Memo. in Support       1

Proposed Defendant-Intervenors respectfully request an expedited ruling on their motion. To that end, they propose that any response to this motion be filed by June 15, and any reply in support of the motion be filed by June 17. Proposed Defendant-Intervenors respectfully request a ruling by June 22, ahead of the June 23, 2021 settlement conference. *See* Doc. 474. Plaintiffs oppose this requested schedule; Defendants do not.

## <u>INTRODUCTION</u>

Recent events leave the States of Alabama, Alaska, Arkansas, Georgia, Indiana, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, Texas, Utah, and West Virginia (the "Proposed Defendant-Intervenors," or the "States") with no choice but to move for limited intervention in this case to ensure their interests are not undermined through settlement of a dispute that this Court lacks jurisdiction to adjudicate. The States request limited intervention to argue that, pursuant to the Ninth Circuit's clear holding, Plaintiffs lack Article III standing to bring their claims and that therefore any settlement of those claims in this Article III Court is improper. Specifically, the States seek to intervene for the limited purposes of opposing Plaintiffs' motion for leave to amend and file a second amended complaint (Doc. 462); participating in settlement negotiations; and, if necessary, objecting to any proposed settlement. The States do not intervene to litigate the merits of Plaintiffs' claims; rather, the States argue that any such adjudication is barred by Article III. And the States do not waive their Eleventh Amendment sovereign immunity, but instead expressly reserve it.

In mid-2015, twenty-one individuals, an environmental organization, and a "representative of future generations" (the "Plaintiffs") sued the President, the United States, and federal agencies (the "Federal Defendants" or "Defendants"), seeking, among other things, an order from this Court requiring that the federal government develop a plan to "phase out fossil fuel emissions and draw

down excess atmospheric $CO_2$." *Juliana v. United States*, 947 F.3d 1159, 1164-65 (9th Cir. 2020). A federal initiative to "phase out fossil fuel emissions" necessarily impacts the States. But because the States' interests appeared to largely align with those of the Federal Defendants, the States had no need to intervene at that time. The federal government proved an adequate defender of its and the States' interests; in January 2020, following over four years of adversarial litigation, the Ninth Circuit held that Plaintiffs lacked Article III standing and ordered this Court to dismiss this case. *Id.* at 1165. The Court of Appeals released its mandate on March 5, 2021 (Doc. 461), at which point this "[C]ourt [was] unquestionably obligated to execute the terms of a mandate." *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 574 (9th Cir. 2019) (internal quotation marks omitted). Save for a nondiscretionary dismissal, the case had concluded.

But a remarkable series of events has shaken the States' confidence in the mandate's practical finality and in their assurance that the federal government will continue to defend the States' interests. Despite the Ninth Circuit's instruction that this Court "dismiss [this case] for lack of Article III standing," *Juliana*, 947 F.3d at 1175, and the mandate issuing on March 5, 2021, this case remains undismissed. More surprising still, on May 26, 2021, this Court scheduled a settlement conference between Plaintiffs and the federal government. *See* Doc. 474. But the Ninth Circuit's decision shows that there is no case to settle, for no case or controversy even exists. *Juliana*, 947 F.3d at 1175.

Because Defendants decisively prevailed in this litigation, their agreement to participate in any post-mandate settlement discussion necessarily raises concerns. At best, they will preserve their victory; at worst, they will arrogate to themselves policymaking powers that the People entrusted to their elected representatives, not the Department of Justice, and in so doing harm the

States and their citizens. Based on the federal government's approach to other high-profile litiga-tion in the time since the Ninth Circuit's mandate issued, the States have cause to believe the latter is likely.

Since President Biden's inauguration, the federal government has repeatedly used unprec-edented, collusive litigation maneuvers to avoid the legal processes our government must normally respect before implementing new policies. The recent "public charge rule" litigation provides a prime example. There, despite having achieved a likely path to victory before the Supreme Court—as indicated by multiple Supreme Court stays of adverse lower-court orders and a grant of certio-rari—the federal government, "[i]n concert with the various plaintiffs … simultaneously dismissed all the cases challenging the rule (including cases pending before the Supreme Court), acquiesced in a single judge's nationwide vacatur of the rule, leveraged that now-unopposed vacatur to imme-diately remove the rule from the Federal Register, and quickly engaged in a cursory rulemaking stating that the federal government was reverting back to the Clinton-era guidance—all without the normal notice and comment typically needed to change rules." *City & Cty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 992 F.3d 742, 743 (9th Cir. 2021) (Vandyke, J., dissenting from the denial of intervention). As discussed further below, *see infra* Background § II, this is not an isolated episode.

Defendants' recently revealed strategy compels the States to intervene in this case; using collusive litigation tactics to overhaul our national energy system via federal-court fiat would de-prive the States and their people of their rightful place in our constitutional order and threaten the economic security of the States and their citizens. Without a seat at the table, the States cannot ensure adequate protection of their interests. This Court should grant the States' Motion.

## BACKGROUND

I.    **The *Juliana* Litigation.**

In their first amended complaint, Plaintiffs accused Defendants of violating Plaintiffs' sub-stantive-due-process and equal-protection rights, the Ninth Amendment, and the public-trust doc-trine. Doc. 7 at 89-100. Plaintiffs sought both declaratory relief and an injunction ordering the government to "implement" a plan to "phase out fossil fuel emissions." *Id.* at 99. Defendants moved to dismiss the case for lack of jurisdiction and failure to state a claim. Doc. 27. This Court rejected Defendants' motion, holding Plaintiffs had standing to sue and that the Constitution guar-antees a "fundamental right … to a climate system capable of sustaining human life," which Plain-tiffs sought to protect. Doc. 54 at 31-32.

Defendants unsuccessfully sought both a writ of mandamus from the Ninth Circuit, *see In re United States*, 884 F.3d 830, 837-38 (9th Cir. 2018), and a motion to stay proceedings from the Supreme Court, *see United States v. U.S. Dist. Court for Dist. of Or.*, 139 S. Ct. 1 (2018). Though the Supreme Court concluded Defendants' request was "premature," it nevertheless noted that the "breadth of respondents' claims is striking ... and the justiciability of those claims presents sub-stantial grounds for difference of opinion." *Id*.

Defendants then moved for summary judgment and judgment on the pleadings. Doc. 207. This Court denied the bulk of the government's motions, again holding Plaintiffs had standing to sue and finding they had presented sufficient evidence to survive summary judgment. Doc. 369. So Defendants filed a motion for interlocutory appeal, which this Court denied. *Id*. Then Defend-ants filed a motion for reconsideration, Doc. 418, and the Ninth Circuit requested this Court "to promptly resolve [Defendants'] motion to reconsider the denial of the request to certify orders for interlocutory review," *United States v. U.S. Dist. Court for the Dist. of Or.*, No. 18-73014, Doc. 3

at 2 (citing the Supreme Court's admonition that the case's justiciability "presents substantial grounds for difference of opinion"). After reconsideration, this Court granted Defendants' request, Doc. 444, and the Ninth Circuit took up the appeal.

The Court of Appeals held Plaintiffs lacked Article III standing because the relief sought was neither likely to redress Plaintiffs' asserted injuries nor within a federal court's power to award. *Juliana*, 947 F.3d at 1169-73. Among other things, the Court expressly rejected Plaintiffs' contention that they had standing to bring a declaratory action, noting such relief was "unlikely by itself to remediate [Plaintiffs'] alleged injuries absent further court action." *Id.* at 1170. The Court of Appeals further held Plaintiffs' injunction request unredressable because it "call[ed] for no less than a fundamental transformation of this country's energy system, if not that of the industrialized world," *id.* at 1171, and because Plaintiffs' demands could be met only "by the People's 'elected representatives, rather than by federal judges interpreting the basic charter of government for the entire country,'" *id.* at 1172 (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128-29 (1992)). *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992) ("[S]eparation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts."). The Ninth Circuit thus "remand[ed] this case to the district court with instructions to dismiss for lack of Article III standing." *Juliana*, 947 F.3d at 1175.

Yet Plaintiffs, insisting the case remains a live dispute, have sought to amend their complaint. *See* Doc. 462. And despite the Court of Appeals' rejection of a declaratory judgment's capacity to satisfy Article III's redressability requirement, *see Juliana*, 947 F.3d at 1170, Plaintiffs' proposed amendments request precisely this relief, *see* Doc. 462-3. All this despite the Ninth Circuit declaring no case or controversy exists as to the scope of the claims and topics in this case.

This Court scheduled a settlement conference between the parties for June 23. Doc. 474.

## II.    The Federal Government's Collusive Litigation Strategy and That Strategy's Likelihood Here.

As noted above, the federal government has recently engaged in collusive litigation tactics to achieve the Executive's policy goals through federal courts. This strategy allows Defendants not only to avoid defending positions they now dislike, but to implement new policies through courts rather than through proper channels in the executive or legislative branches. *See Juliana*, 947 F.3d at 1171; *Lujan*, 504 U.S. at 559-60. Defendants have offered no assurance that they will not attempt to run the same play here. Indeed, the "striking" "breadth of [Plaintiffs'] claims," *U.S. Dist. Court for Dist. of Or.*, 139 S. Ct. 1, provides Defendants a tantalizing opportunity to try to alter nationwide energy policy under the guise of settling a case they already won.

The federal government's machinations in the "public charge rule" litigation provide a compelling example of the risks the States face. In 2019, the Trump Administration—following notice and comment—issued a final rule defining federal immigration law's "public charge" language. Inadmissibility on Public Charge Grounds; Final Rule, 84 Fed. Reg. 41,292 (Aug. 14, 2019). After several groups and states challenged the 2019 rule in various courts, the Supreme Court stepped in and stayed injunctions from lower courts. *See Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599 (2020); *Wolf v. Cook County, Ill.*, 140 S. Ct. 681 (2020). And on February 22, 2021, the Court granted review of the Second Circuit's decision. *See Dep't of Homeland Sec. v. New York*, No. 20-449, 2021 WL 666376, at *1 (U.S. Feb. 22, 2021). Then, without warning, the federal government and plaintiffs "implemented a plan to instantly terminate the rule with extreme prejudice," *City & Cty. of San Francisco*, 992 F.3d at 743 (Vandyke, J., dissenting from denial of intervention), by moving to dismiss the Seventh Circuit appeal, *see* Unopposed Motion to Voluntarily Dismiss Appeal, *Cook County, Ill. v. Wolf*, No. 20-3150 (7th Cir. Mar. 9, 2021), Doc. 23.

> Approximately an hour and a half later, DHS released a statement explaining that "the Department of Justice will no longer pursue appellate review of judicial decisions invalidating or enjoining enforcement of the 2019 Rule." With a reaction time the envy of every appellate court, the Seventh Circuit only a few hours after DHS's statement granted the motion to dismiss and immediately issued the mandate. Later that same evening, DHS issued another statement noting that "[f]ollowing the Seventh Circuit dismissal this afternoon, the final judgment from the Northern District of Illinois, which vacated the 2019 public charge rule, went into effect." It continued that "[a]s a result, the 1999 interim field guidance on the public charge inadmissibility provision (*i.e.*, the [Clinton-era] policy that was in place before the 2019 public charge rule) is now in effect." A little over 24 hours later, the parties filed a joint stipulation to dismiss the case in the Northern District of Illinois. The district court closed the case the following day.

*City & Cty. of San Francisco*, 992 F.3d at 747 (Vandyke, J., dissenting) (internal citations omitted).

That same day, the federal defendants "filed joint stipulations to dismiss all the cases pending before the Supreme Court, including the Second Circuit case in which the Supreme Court had already granted cert," and moved to dismiss a Fourth Circuit case as well. *Id.* The Seventh Circuit "summarily denied" various states' motions to intervene, and the Ninth Circuit followed suit. *Id.* at 748-49. Thus, by colluding with plaintiffs, the federal defendants "got[] rid of a rule they dislike[d]," and "[did] so in a way that allowed them to dodge the pesky requirements of the APA and ensure that it will be very difficult for any future administration to promulgate another rule like the 2019 rule." *Id.* at 749.

In a similar vein, the federal government recently sought and achieved dismissal of a series of cases—which the Supreme Court had already agreed to review, *see Becerra v. Mayor and City Council of Balt.*, No. 20-454 (2021)—involving the Department of Health and Human Services' rule for the Title X family-planning program. Shortly after President Biden ordered the HHS Secretary to consider repealing a rule governing the provision of funds under Title X, *see Memorandum on Protecting Women's Health at Home and Abroad* § 2 (Jan. 28, 2021), https://perma.cc/24K8-BMAJ, the federal government dismissed its attempt to reverse a decision

enjoining that rule, ensuring the injunction would remain in effect. *Mayor & City Council of Baltimore v. Azar*, 392 F. Supp. 3d 602 (D. Md. 2019), *appeal dismissed as moot sub nom. Mayor of Baltimore v. Azar*, 973 F.3d 258 (4th Cir. 2020), *cert. granted sub nom. Cochran v. Mayor & City Council of Baltimore*, 141 S. Ct. 1369, 209 L. Ed. 2d 118 (2021), *cert. dismissed sub nom. Becerra v. Mayor & City Council Baltimore*, No. 20-454, 2021 WL 1951787 (U.S. May 17, 2021).

The Biden Administration has likewise proven ambitious in pursuing its environmental policy goals. *See Biden-Harris Administration Immediate Priorities*, White House, https://perma.cc/27UU-Y7V8 (last visited June 8, 2021) ("Climate" placed above "Health Care" and "Immigration"). Within hours of taking office, President Biden issued an Executive Order revoking the Keystone XL permit in accordance with his administration's "ambitious plan" to "reduce harmful emissions and create good clean-energy jobs," concluding the pipeline would "not be consistent with [his] Administration's economic and climate imperatives." Exec. Ord. No. 13990, 86 Fed. Reg. 7037, 7041 (January 20, 2021). And on January 27, barely a week later, the President issued Executive Order 14008, imposing a moratorium on all oil and natural-gas leasing activities on public lands and offshore waters, and in turn unraveling longstanding statutory schemes on which States rely. Exec. Ord. No. 14008, 86 Fed. Reg. 7619. As Defendants said in their recent pleading, "[t]he President and the Administration" have declared a "climate crisis." Doc.468 at 5. Thus, Defendants' actions suggest a risk that they will use settlement to arrogate to themselves tremendous power that rightfully belongs instead to "the People's 'elected representatives.'" *Juliana*, 947 F.3d at 1172 (quoting *Collins*, 503 U.S. at 128-29).

## III.    The Intervening States and Their Interests in This Case.

The Proposed Defendant-Intervenors comprise a 17-State coalition: Alabama, Alaska, Arkansas, Georgia, Indiana, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota,

Ohio, Oklahoma, South Carolina, Texas, Utah, and West Virginia. Each of the States has a stake in this country's energy policy and, accordingly, an interest in any potential settlement of Plaintiffs' astonishingly broad claims. As far as the States can tell, because Plaintiffs seek "a fundamental transformation of this country's energy system," *Juliana*, 947 F.3d at 1171, any or all pieces of that system might be on the bargaining table.

The States have direct stakes in many of the policies that Plaintiffs challenged, "including beneficial tax provisions, permits for imports and exports, subsidies for domestic and overseas projects, and leases for fuel extraction on federal land." *Id.* at 1167. Alabama, for example, has discrete interests in the Outer Continental Shelf Lands Act ("OCSLA"), Mineral Leasing Act ("MLA"), and Gulf of Mexico Energy Security Act ("GOMESA") oil-and-gas leasing programs, having received over $50 million in GOMESA disbursements in 2020 alone. *See Gulf of Mexico Energy Security Act* ("GOMESA"), U.S. Dep't of the Interior Nat. Res. Revenue Data, https://perma.cc/X8KX-ZB2D (last visited June 8, 2021). These sovereign interests are hardly unique to Alabama; each year the federal government returns billions of dollars to the States and environmental reclamation projects from OCSLA and MLA lease proceeds for critical environmental restoration and protection projects. *See* Brandon S. Tracy, Cong. Rsch. Serv., R46537, Revenues and Disbursements from Oil and Natural Gas Production on Federal Lands (2020); Laura B. Comay, Cong. Research Serv., IF11649, Federal Offshore Oil and Gas Revenues During the COVID-19 Pandemic (2021). A settlement that curtailed or ended these programs would strike a blow against the States, their people, and self-government.

The States also have "quasi-sovereign interests in the health and well-being—both physical and economic—of [their] residents" as *parens patriae. Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982). As a general matter, Plaintiffs' demands, if even partly

granted, are certain to increase the price of energy for States and their citizens. As the Supreme Court has explained, "if the health and comfort of the inhabitants of a state are threatened, the state is the proper party to represent and defend them." *Missouri v. Illinois*, 180 U.S. 208, 241 (1901).

Moreover, the new administration's energy policies have already cost jobs—and, with them, associated tax revenues—in the States. Turning again to Alabama for an example, over 100 employees lost their jobs, were furloughed, or had their hours significantly cut following President Biden's rescission of the permit for the Keystone XL pipeline. *See Berg Pipe Employees in Mobile Expected to Lose Jobs Due to Cancelled Keystone XL Pipeline*, NBC 15 News, https://perma.cc/57W8-GLXP (last visited June 8, 2021). And, again, Alabama is not alone. The State Department predicted Keystone XL would produce 42,100 jobs and $2 billion in earnings throughout the United States. *See* U.S. Dep't of State, Record of Decision and National Interest Determination 18 (Mar. 23, 2017), https://perma.cc/H67U-V3NC. States with higher exposure to the pipeline's benefits thus suffered proportionally greater harms when the federal government unilaterally rescinded the pipeline's permit.

The Biden Administration has evinced a willingness to disregard these interests of the States in the name of its climate agenda. This behavior is itself deeply concerning, but coupled with the government's recent appetite for collusive litigation maneuvers, the States reasonably fear they may be robbed of the right to voice their concerns and protect themselves and their citizens. The States have sovereign and quasi-sovereign interests in ensuring the continued vitality of the liberty-protecting checks on government power imposed by the Constitution, the APA, and other laws. The States thus seek to protect these rights by intervening for the limited purpose of ensuring this case is—in accordance with the Ninth Circuit's decision—dismissed for lack of jurisdiction.

## ARGUMENT

**I.     The States Are Entitled to Limited Intervention as a Matter Of Right Under Rule 24(a)(2).**

Rule 24(a)(2) provides that, "[o]n timely motion, the court must permit anyone to intervene who ... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). This Rule requires an applicant for intervention to establish four elements:

> (1) that its motion is timely;
> (2) that it has a "significantly protectable interest relating to the subject of the action";
> (3) that the action "may as a practical matter impair or impede [its] ability to protect that interest"; and
> (4) that such interest is "inadequately represented by the parties to the action."

*Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (ellipsis omitted). As the Ninth Circuit has "repeatedly instructed," the requirements for intervention "are to be broadly interpreted in favor of intervention." *Id.* (brackets omitted). "[A] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (quoting *United States v. City of L.A.*, 288 F.3d 391, 397-98 (9th Cir. 2002)).

The Ninth Circuit's liberal policy favors the States' request for limited intervention to ensure the Court of Appeals' instruction to dismiss for lack of jurisdiction is followed and no collusive settlement is allowed. To this end, the States seek to intervene to oppose Plaintiffs' motion for leave to amend and file a second amended complaint; to participate in settlement negotiations; and, if necessary, to object to any proposed settlement. *First*, the Motion comes less than four weeks after this Court set this case for a settlement conference and less than two weeks after the conference was scheduled. *Second*, the States and their citizens clearly have significant

interests in the "subject of the action," which is nothing less than "a fundamental transformation of this country's energy system, if not that of the industrialized world." *Juliana*, 947 F.3d at 1171. *Third*, any potential settlement or grant of Plaintiffs' mandate-evading request to file a new complaint would threaten to "impede [the States'] ability to protect [those] interest[s]." *Smith*, 830 F.3d at 853. And *finally*, as discussed above, the federal government's recent actions in litigation and in pursuing the Biden Administration's environmental goals demonstrate—at the very least—that Defendants "may be" inadequate representatives of the States' interests. *Arakaki*, 324 F.3d at 1086. This Court should therefore grant the States' limited motion to intervene as of right.

### A.    The Motion Is Timely.

Courts determine timeliness "by the totality of the circumstances," focusing on three "primary factors": "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith*, 830 F.3d at 854 (internal quotation marks omitted). "The crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

There is no question this Motion is timely. The Court raised the prospect of a settlement conference less than four weeks ago, and the conference was set less than two weeks ago. Thus, in short order, the States requested and reviewed records from this Court, assessed their interests and arguments, then drafted and filed this Motion.

The States' limited intervention does not prejudice the parties. "The only 'prejudice' that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution

more difficult." *Smith*, 830 F.3d at 857 (cleaned up). Because the States filed this Motion expeditiously and formal settlement negotiations have not begun, there is no prejudice. That conclusion is further bolstered by the very limited nature of the States' intervention. The States do not seek to litigate the merits of Plaintiffs' claims—indeed, we and the Ninth Circuit think any such adjudication would be improper. The States seek only to secure this case's previously ordered dismissal and thereby prevent collusive settlement of claims no Article III court has power to decide.

Finally, while the States' proposed intervention occurred after the Ninth Circuit's disposition of this case, that is the "stage of the proceeding" during which it became clear that the federal government might imperil rather than advance the States' interests. The Motion is timely.

### B.    The States Have Significant Interests in This Litigation.

A limited motion to intervene under Rule 24(a)(2) "does not require a specific legal or equitable interest." *Wilderness Soc'y*, 630 F.3d at 1179. Instead, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id*. A party therefore "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006); *see also Wilderness Soc'y*, 630 F.3d at 1180 ("[T]he operative inquiry should be whether the interest is protectable under some law and whether there is a relationship between the legally protected interest and the claims at issue.").

As explained above, *see supra* Background § III, the States have compelling interests in seeing this case dismissed. Any "fundamental transformation of this country's energy system" is going to affect the States and their citizens. *Juliana*, 947 F.3d at 1171. And both the Constitution and various federal statutes grant the States and their citizens a say in whether and how any such

"transformation" occurs. These substantive and procedural interests are sufficiently compelling to justify the States' limited intervention in the upcoming proceedings regarding settlement and Plaintiffs' attempt to revive their claims. *Wilderness Soc'y*, 630 F.3d at 1179.

Moreover, the States have a right to protect "the health and well-being—both physical and economic—of [their] residents" as *parens patriae*. *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 607; *see also Missouri v. Illinois*, 180 U.S. at 241. Plaintiffs' demands jeopardize the livelihoods of untold numbers of the States' citizens. *See supra* Background § III. Should Defendants accede to even a sliver of Plaintiffs' demands, they will undoubtedly disrupt and harm the lives of citizens throughout the States.

### C.    Plaintiffs' Challenge Threatens to Impair the States' Interests.

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene...." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24 advisory committee's note). Because the outcome of this litigation "may as a practical matter impair or impede [the States'] ability to protect [their] interests," Fed. R. Civ. P. 24(a)(2), the States meet the third element of the Ninth Circuit's intervention test. *See Smith*, 830 F.3d at 853.

As explained above, the States have significant protectable interests in the energy policies Plaintiffs have sought to upend. These interests are difficult to overstate, for they intimately relate to the States' sovereign prerogatives as well as their quasi-sovereign *parens patriae* interests. Furthermore, implementing even a portion of the federal government's sweeping climate agenda through settlement necessarily deprives the States of procedural guarantees under the APA and the Constitution. Without the ability to intervene in a limited manner for the purposes of objecting to a potentially collusive settlement and ensuring this Court concludes this case in accordance with

the Ninth Circuit's decision, the States risk "hav[ing] no alternative forum where they can mount

a robust defense of [their interests]." *California ex rel. Lockyer*, 450 F.3d at 442. This risk warrants

intervention. After all, "[t]he very purpose of intervention is to allow interested parties to air their

views so that a court may consider them before making potentially adverse decisions." *Brumfield*

*v. Dodd*, 749 F.3d 339, 344-45 (5th Cir. 2014)

### D. The Federal Government Will Not Adequately Represent the Interests of the States.

Finally, the current parties will not adequately represent the States' interests. As the Ninth

Circuit has explained, "[t]he burden on proposed intervenors in showing inadequate representation

is minimal," requiring only that they "demonstrate that representation of their interests 'may be'

inadequate." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (quoting *Trbovich v.*

*United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)); *see also Citizens for Balanced Use*,

647 F.3d at 898 (same). To evaluate adequacy of representation, the Ninth Circuit typically con-

siders three factors:

> (1) whether the interest of a present party is such that it will undoubtedly make all
> the intervenor's arguments; (2) whether the present party is capable and willing to
> make such arguments; and (3) whether the would-be intervenor would offer any
> necessary elements to the proceedings that other parties would neglect.

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001). The States therefore

need only "show that, because of the difference in interests, it is likely that Defendants will not

advance the same arguments as [the States]." *Id*. at 824. This is not a heavy lift.

At the moment, there is no guarantee that the interests of the federal government and the

States in this litigation are aligned. The States contend that (1) there are no grounds for Defendants

to settle a case they have already won, and (2) transforming the country's energy system through

settlement rather than legislation would violate foundational principles of separated powers and

self-government. The States cannot await the outcome of the settlement conference to find out whether the Federal Defendants are equally committed to these positions.

Moreover, the federal government's declaration that the "United States must prioritize the development of a clean energy economy," *see* E.O. 13990, 86 Fed. Reg. 7037 (Jan. 20, 2021) § 6(b), illustrates that Defendants and Plaintiffs share a common goal. And the federal government's recent willingness to achieve policy goals through collusive litigation tactics, *see supra* Background § II, suggests Defendants may likewise share Plaintiffs' enthusiasm for settlement. It is thus easy to see that Defendants' "representation of [the States'] interests 'may be' inadequate." *Arakaki*, 324 F.3d at 1086. The States "should not need to rely on a doubtful friend to represent [their] interests, when [they] can represent [themselves]." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015).

Finally, while Defendants have ably briefed why Plaintiffs' motion to file an amended complaint should be denied and this case dismissed with prejudice, *see* Doc. 468, Defendants' apparent willingness to consider settlement of nonviable claims calls into question whether Defendants "will undoubtedly make all the [States'] arguments." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822. Defendants' desire to advance the Biden Administration's policy goals may lead them to settle this case rather than "make such arguments." *Id.* The States thus "offer [a] necessary element[] to the" upcoming proceedings on settlement and possible dismissal with prejudice— namely, a party fully committed to ensuring that any overhaul of our national energy system "be made by the People's 'elected representatives, rather than by'" collusive litigants. *Juliana*, 947 F.3d at 1172 (quoting *Collins*, 503 U.S. at 128-29). Moreover, the States are prepared to press arguments against amending the complaint before the Ninth Circuit and Supreme Court if those arguments prove unpersuasive to this Court. Defendants have not yet demonstrated whether they

are willing to do the same, particularly where continued district court proceedings provide Defendants further excuse to return to the settlement table.

Thus, given the risks that Defendants may not adequately represent the States' interests in these upcoming proceedings, the States are entitled to limited intervention as of right.

## II.    In the Alternative, This Court Should Grant the States Limited Permissive Intervention Under Rule 24(b).

Rule 24(b) provides that, "[o]n a timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Where a litigant "timely presents such an interest in intervention," the Court should consider

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] … whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).

In this case, each criterion favors limited permissive intervention. As explained above, the motion is timely and the States' defenses rely on "question[s] of law or fact" already presented. Fed. R. Civ. P. 24(b)(1)(B). The States seek permission for limited intervention because Defendants will not "adequately represent[]" their interests in the case's upcoming proceedings. *Id.* Moreover, considering the federal government's willingness to collude with its purported opponents in litigation to achieve policy goals, the States' presence in this case will undoubtedly "contribute to … the just and equitable adjudication of the legal questions presented." *Id.* Accordingly, this Court should grant the States' alternative request for limited permissive intervention.

## CONCLUSION

The States respectfully request that the Court grant their Motion to intervene for the limited purposes of opposing Plaintiffs' motion for leave to amend and file a second amended complaint; participating in settlement negotiations; and objecting to any proposed settlement, if necessary.

Respectfully submitted,

STEVE MARSHALL
Attorney General of Alabama

/s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (AL Bar No. 9182-U81L)
*Solicitor General*

Thomas A. Wilson (AL Bar No. 1494-D25C)
*Deputy Solicitor General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Ave.
Montgomery, AL 36130
Telephone: (334) 353-2196
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov

*Counsel for Proposed Defendant-Intervenor State of Alabama*

LESLIE RUTLEDGE
Attorney General of Arkansas

/s/ Nicholas J. Bronni
Nicholas J. Bronni (AR Bar No. 2016097)
*Solicitor General*

STATE OF ARKANSAS
OFFICE OF THE ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, AR 72201
Telephone: (501) 682-6302

TREG TAYLOR
Attorney General of Alaska

/s/ Nathaniel Haynes
Nathanial Haynes (AK Bar No. 1906061)
*Assistant Attorney General*

STATE OF ALASKA
ALASKA DEPARTMENT OF LAW
ENVIRONMENTAL SECTION
1031 W. 4th Ave, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5274
Nathaniel.Haynes@Alaska.gov

*Counsel for Proposed Defendant-Intervenor State of Alaska*

CHRISTOPHER M. CARR
Attorney General of Georgia

/s/ Andrew Pinson
Andrew Pinson (GA Bar No. 584719)
*Solicitor General*

STATE OF GEORGIA
GEORGIA DEPARTMENT OF LAW
40 Capitol Square SW
Atlanta, GA, 30334
Telephone: (404) 458-3409

Nicholas.Brunni@ArkansasAG.gov

*Counsel for Proposed Defendant-Intervenor State of Arkansas*

TODD ROKITA
Attorney General of Indiana

/s/ Thomas M. Fisher
Thomas M. Fisher (IN Bar No. 17949-49)
*Solicitor General*

STATE OF INDIANA
OFFICE OF THE ATTORNEY GENERAL
Indiana Government Center South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-6255
Facsimile: (317) 232-7979
Tom.Fisher@atg.in.gov

*Counsel for Proposed Defendant-Intervenor State of Indiana*

LYNN FITCH
Attorney General of Mississippi

/s/ Justin L. Matheny
Justin L. Matheny (MS Bar No. 100754)
*Deputy Solicitor General*

STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205
Telephone: (601) 359-3680
Justin.Matheny@ago.ms.gov

*Counsel for Proposed Defendant-Intervenor State of Mississippi*

apinson@law.ga.gov

*Counsel for Proposed Defendant-Intervenor State of Georgia*

JEFF LANDRY
Attorney General of Louisiana

/s/ Elizabeth B. Murrill
Elizabeth B. Murrill (LA Bar No. 20685)
*Solicitor General*

J. Scott St. John (LA Bar No. 36682)
*Deputy Solicitor General*

STATE OF LOUISIANA
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, LA 70804
Telephone: (225) 326-6766
emurrill@ag.louisiana.gov
stjohnj@ag.louisiana.gov

*Counsel for Proposed Defendant-Intervenor State of Louisiana*

ERIC SCHMITT
Attorney General of Missouri

/s/ Jeff P. Johnson
Jeff P. Johnson (MO Bar No. 73249)
*Deputy Solicitor General*

STATE OF MISSOURI
OFFICE OF THE ATTORNEY GENERAL
Supreme Court Building
207 West High Street
P.O. Box 899
Jefferson City, MO 65102
Telephone: (314) 340-7366
Fax: (573) 751-0774
Jeff.Johnson@ago.mo.gov

*Counsel for Proposed Defendant-Intervenor State of Missouri*

AUSTIN KNUDSEN
Attorney General of Montana

/s/ David Dewhirst
David Dewhirst (MT Bar No. 65934132)
*Solicitor General*

STATE OF MONTANA
OFFICE OF THE ATTORNEY GENERAL
215 North Sanders
P.O Box 201401
Helena, MT 59620-1401
Telephone: (406) 444-4145
David.Dewhirst@mt.gov

*Counsel for Proposed Defendant-Intervenor State of Montana*

WAYNE STENEHJEM
Attorney General of North Dakota

/s/ Matthew A. Sagsveen
Matthew A. Sagsveen (ND Bar No. 05613)
*Solicitor General*

STATE OF NORTH DAKOTA
OFFICE OF THE ATTORNEY GENERAL
500 North 9th Street
Bismarck, ND 58501-4509
Telephone: (701) 328-3640
Fax: (701) 328-4300
masagsve@nd.gov

*Counsel for Proposed Defendant-Intervenor State of North Dakota*

DAWN CASH
Acting Attorney General of Oklahoma

/s/ Mithun Mansinghani
Mithun Mansinghani (OK Bar No. 32453)
*Solicitor General*

STATE OF OKLAHOMA
OFFICE OF THE ATTORNEY GENERAL

DOUGLAS J. PETERSON
Attorney General of Nebraska

/s/ James A. Campbell
James A. Campbell (NE Bar No. 26934)
*Solicitor General*

STATE OF NEBRASKA
OFFICE OF THE NEBRASKA ATTORNEY
GENERAL
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-2682
Jim.Campbell@Nebraska.gov

*Counsel for Proposed Defendant-Intervenor State of Nebraska*

DAVE YOST
Attorney General of Ohio

/s/ Benjamin M. Flowers
Benjamin M. Flowers (OH Bar No. 0095284)
*Solicitor General*

STATE OF OHIO
OFFICE OF THE ATTORNEY GENERAL
30 East Broad Street, 17th Floor
Columbus, OH 43215
Telephone: (614) 466-8980
Fax: (614) 466-5087
Benjamin.Flowers@OhioAGO.gov

*Counsel for Proposed Defendant-Intervenor State of Ohio*

ALAN WILSON
Attorney General of South Carolina

/s/ James Emory Smith, Jr.
James Emory Smith, Jr. (SC Bar No. 5262)
*Deputy Solicitor General*

STATE OF SOUTH CAROLINA
OFFICE OF THE ATTORNEY GENERAL

313 NE 21st St.
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Fax: (405) 521-4518
Mithun.Mansinghani@oag.ok.gov

*Counsel for Proposed Defendant-Intervenor State of Oklahoma*

KEN PAXTON
Attorney General of Texas

Brent Webster (TX Bar No. 24053545)
*First Assistant Attorney General*

Judd E. Stone II (TX Bar No. 24076720)
*Solicitor General*

/s/ Natalie D. Thompson
Natalie D. Thompson (TX Bar No. 24088529)
*Assistant Solicitor General*

STATE OF TEXAS
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, TX 78711-2548
Telephone: (512) 936-1700
Fax: (512) 474-2697
Natalie.Thompson@oag.texas.gov

*Counsel for Proposed Defendant-Intervenor State of Texas*

PATRICK MORRISEY
Attorney General of West Virginia

/s/ Lindsay See
Lindsay See (WV Bar No. 13360)
*Solicitor General*

STATE OF WEST VIRGINIA
OFFICE OF THE WEST VIRGINIA ATTORNEY
GENERAL
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
Telephone: (681) 313-4550

P.O. Box 11549
Columbia, SC 29211
Telephone: (803) 734-3680
Fax: (803) 734-3677
esmith@scag.gov

*Counsel for Proposed Defendant-Interve-nor State of South Carolina*

SEAN REYES
Attorney General of Utah

/s/ Melissa A. Holyoak
Melissa A. Holyoak (UT Bar No. 9832)
*Solicitor General*

STATE OF UTAH
OFFICE OF THE UTAH ATTORNEY GENERAL
160 E. 300 S., 6th Floor
Salt Lake City, UT 84114
Telephone: (801) 538-9600
MelissaHolyoak@agutah.gov

*Counsel for Proposed Defendant-Interve-nor State of Utah*

Proposed Defendant-Intervenors' Motion for
Limited Intervention and Memo. in Support    22

Lindsay.S.See@wvago.gov

*Counsel for Proposed Defendant-Intervenor State
of West Virginia*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2021, I electronically filed the foregoing with the Clerk of

the Court for the United States District Court for the District of Oregon by using the CM/ECF

system, which will send notification of such to the attorneys of record.


 */s/ Edmund G. LaCour Jr.*
Edmund G. LaCour Jr.
Counsel for State of Alabama