JEAN E. WILLIAMS
Acting Assistant Attorney General

SEAN C. DUFFY (NY Bar No. 4103131)
FRANK J. SINGER (CA Bar No. 227459)
Trial Attorneys
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
150 M Street NE
Washington, DC 20002
Telephone: (202) 305-0445
Facsimile:  (202) 305-0506
sean.c.duffy@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**, *et al.*,<br>    Plaintiffs,<br><br>        v.<br><br>**UNITED STATES OF AMERICA**, *et al.*,<br>    Defendants. | Case No. 6:15-cv-01517-AA<br><br>**DEFENDANTS' BRIEF IN OPPOSITION TO STATES' MOTION FOR LIMITED INTERVENTION**<br><br>**(ECF No. 475)** |

**Introduction**

After years of litigation and a mandate from the Ninth Circuit requiring dismissal for lack of Article III standing, seventeen States seek to insert themselves into this case as a check on Defendants, who, the States speculate, may suddenly take a wholly new position in the upcoming, court-mandated settlement conference. But intervention as of right cannot rest on speculation; rather, it is the States' burden to make a "compelling," evidence-based showing that Defendants do not adequately represent their interests. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (citation omitted). They have not met that requirement. "[T]he mere change from one presidential administration to another, a recurrent event in our system of government, should not give rise to intervention as of right in ongoing lawsuits." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983). Because the States' arguments rest entirely on speculation about positions that the new administration *might* take—speculation undermined by the government's recent filings in this case—the Court should deny their motion for intervention as of right.[1]

**Background**

On March 5, 2021, the Ninth Circuit issued its mandate effectuating its January 17, 2020 decision remanding the case to this Court with instructions to dismiss for lack of Article III standing. ECF No. 461. On March 9, Plaintiffs moved for leave to file a proposed amended complaint that rephrases their request for relief. ECF No. 462. Defendants opposed the motion on grounds that, in light of the Ninth Circuit's mandate, the Court lacks discretion to take any action other than dismissal of this case. ECF No. 468 at 7-10. Defendants also explained that

---

[1] As noted in the States' motion, Defendants take no position on the States' request for permissive intervention. States' Mot. for Limited Intervention 1, ECF No. 475 ("State Mot.").

amendment would be futile because Plaintiffs' new requests for relief suffer the same flaws as

their original requests. *Id.* at 11-17.

At a May 13, status conference, the Court sua sponte referred this case to Magistrate

Judge Coffin for settlement discussions. *See* ECF No. 471. That settlement conference is

scheduled for June 23. ECF No. 474. The Court set oral argument on Plaintiffs' motion to

amend for June 25. ECF No. 471.

On June 8, seventeen states filed the instant motion to intervene. State Mot. The States

seek limited intervention to "oppos[e] Plaintiffs' motion for leave to amend and file a second

amended complaint (Doc. 462); participat[e] in settlement negotiations; and, if necessary,

object[] to any proposed settlement." *Id.* at 2.

### Legal Standard

An applicant for intervention as of right under Fed. R. Civ. P. 24(a)(2)

> must establish four elements: (1) that the prospective intervenor's motion is
> "timely"; (2) that the would-be intervenor has "a 'significantly protectable'
> interest relating to . . . the subject of the action," (3) that the intervenor is "so
> situated that the disposition of the action may as a practical matter impair or
> impede [the intervenor's] ability to protect that interest"; and (4) that such interest
> is "inadequately represented by the parties to the action."

*Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (quoting *Freedom from*

*Religion Found.*, 644 F.3d at 841). "Failure to satisfy any one of the requirements is fatal to the

application, and [the court] need not reach the remaining elements if one of the elements is not

satisfied." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

### Argument

The States' motion fails to satisfy the fourth requirement for intervention as of right

because Defendants adequately represent the interests identified by the States.

The Ninth Circuit considers three factors in determining the adequacy of representation:

(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003). "The most important factor in determining the adequacy of representation is how the [proposed intervenor's] interest compares with the interests of existing parties." *Id.*

An existing party's representation is presumed adequate "[w]hen an applicant for intervention and an existing party have the same ultimate objective." *Id.* Likewise, in the context of governmental parties, it is presumed that a government "adequately represents its citizens when the applicant shares the same interest." *Id.*; *see also United States v. California*, No. 2:18-cv-490-JAM-KJN, 2018 WL 1993937, at *2 (E.D. Cal. Apr. 27, 2018) (holding United States presumed to adequately represent the interests of its constituents). The presumptions are particularly applicable where, as here, the Department of Justice is defending the government's constitutional interests. *See Freedom from Religion Found.*, 644 F.3d at 841. When these presumptions apply, it is the movant's burden to rebut them with "a compelling showing" of inadequacy. *Id.*; *see also Prete v. Bradbury*, 438 F.3d 949, 956-57 (9th Cir. 2006) (further describing the two presumptions).

Both presumptions apply here. First, Defendants and the States share the same "ultimate objective"—achieving dismissal of this case in accordance with the Ninth Circuit's mandate based on a determination that Plaintiffs lack Article III standing. *Compare* State Mot. 2 *with* ECF No. 468 at 8. Indeed, the parties' objectives are so similar that the States adopted the United States' brief in opposition to Plaintiffs' motion to amend their complaint wholesale, with no additional argument. ECF No. 475-1. While Executive Order 14008 established a

government-wide approach to the climate crisis and declared that the "Federal Government must drive assessment, disclosure, and mitigation of climate pollution and climate-related risks in every sector of our economy, marshaling the creativity, courage, and capital necessary to make our Nation resilient in the face of this threat," 86 Fed. Reg. 7619, 7622 (Feb. 1, 2021), it did not alter the United States' view that this case is non-justiciable and should be dismissed. *See* ECF No. 468.

Second, it is presumed that the United States adequately represents the interests of its constituents, which include the residents of the seventeen movant states. It is therefore the States' "compelling burden" to overcome those presumptions by demonstrating that Defendants cannot or will not represent their interests. *Arakaki*, 324 F.3d at 1087-88 (where governmental defendants are presumed to adequately represent interests, the "only question" is whether they are "capable and willing to make" proposed arguments "should it be necessary"). They have not met that burden.

Many of the general interests the States have identified are identical to those of the United States and, therefore, the United States is presumed to adequately represent those interests. Like the States, the United States has an interest in the federal energy policies and systems that Plaintiffs seek to change and the health and wellbeing, "both physical and economic," of its residents. State Mot. 10-11, 14-15. Like the States, the United States receives revenue from mineral leasing programs. *Id.* at 10. And like the States, the United States has concerns about lost jobs and revenue caused by changes to energy policies. *Id.* at 11.

Beyond those general interests, the States posit that "there is no guarantee that the interests of the federal government and the States in this litigation are aligned" because they cannot divine whether the United States shares the States' views that the Court should dismiss

Plaintiffs' Complaint based on the lack of standing, and that the changes in energy policy that

Plaintiffs seek are best pursued by policymakers rather than litigants. *Id.* at 16-17.  In fact,

Defendants have consistently made similar arguments throughout this litigation.  *See, e.g.*, Defs.'

Mot. to Dismiss 18-19, ECF No. 27-1 (raising separation of powers concerns and noting energy

policy "should be made by decision makers who are politically accountable, have expertise, and

are able to pursue a coherent national or international strategy"); Defs.' Answer 69-70, ECF No.

98 (stating that Plaintiffs' requested relief "is barred by Article I of the Constitution, which vests

legislative powers in the Congress," "Article II, which vests executive powers in the President,"

and "separation of powers principles implicit in the Constitution"); Defs.' Mot. for J. on the

Pleadings 22-25, ECF No. 195 (arguing that Plaintiffs' "breathtakingly broad request" for an

"enforceable national remedial plan" violates the separation of powers); Defs.' Mot. for Summ.

J. 20-23, ECF No. 207 (same); Appellants' Opening Br. 25, *Juliana v. United States*, No. 18-

36082 (9th Cir. filed Feb. 1, 2019), Dkt. No. 16 ("The actions that Plaintiffs' seek to compel are

appropriately considered by the legislature and the executive . . . .").

Most recently, Defendants again raised these same points in their opposition to Plaintiffs'

motion to amend the complaint.  With respect to the separation of powers issue, Defendants

explained that

> [t]he proposed complaint, which continues to challenge the aggregate of actions
> of multiple federal agencies, would likewise seek to prevent the Executive and
> Legislative branches from carrying out a host of unspecified policies, practices,
> and actions. . . . The policy decisions that Plaintiffs aim to nullify, prevent, or
> curtail are within the province of the political branches.

ECF No. 468 at 16-17.  And, with respect to the view that the Court should dismiss this lawsuit,

Defendants opposed Plaintiffs' attempt to reanimate the case, explaining that the Court has no

discretion to take any action other than to dismiss pursuant to the Ninth Circuit's mandate. *Id.* at 7-10.

In light of the voluminous evidence that Defendants adequately represent the States' interests, the States' argument boils down to pure speculation that the new administration *may* engage in "collusive litigation tactics" and "*may* . . . share Plaintiffs' enthusiasm for settlement." State Mot. 17 (emphasis added).[2]  But speculation, in the absence of any "persuasive evidence," is insufficient to rebut the presumption of adequate representation. *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) (denying intervention as of right and rejecting unsupported argument that government's "broader interests would lead it to stake out an undesirable legal position"); *see also Prete*, 438 F.3d at 958-59 (denying intervention as of right and rejecting speculation that government defendant "may be inclined" to take a narrower position on certain issues); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305-06 (9th Cir. 1997) (denying intervention as of right and rejecting unsupported argument that government "cannot be 'count[ed] on'" to defend proposition when the government has "vigorously defended" the proposition "in the context of the present lawsuit at every turn" (internal citation omitted)).

Here, the speculation is baseless.  First, the upcoming settlement conference was mandated by this Court.  The States' reference to Defendants' "apparent willingness to consider settlement," State Mot. 17, is therefore based on nothing more than Defendants' compliance with

---

[2] The speculative nature of the States' assertions is confirmed by their hedging language. *See, e.g.*, State Mot. 9 ("Defendants' actions *suggest a risk* that they will use settlement to arrogate to themselves tremendous power" (emphasis added)); *id.* at 17 ("Defendants' desire to advance the Biden Administration's policy goals *may* lead them to settle this case" (emphasis added)); *id.* at 16 ("*[T]here is no guarantee* that the interests of the federal government and the States in this litigation are aligned." (emphasis added)).

a court order.  Second, the President's recent executive orders, cited by the States, say nothing

about this case, let alone the specific relief that Plaintiffs request.[3]  *See id.* at 9, 17.  And, third,

the broad policy goals articulated in the referenced executive orders provide no basis for second-

guessing the United States' express positions concerning this Court's lack of jurisdiction or the

inappropriateness of formulating climate policy in a litigation setting.  *See Yazzie v. Hobbs*, No.

CV-20-08222-PCT-GMS, 2020 WL 8181703, at *3 (D. Ariz. Sept. 16, 2020) (denying

intervention motion of Republican party organizations arguing that defendant Democratic

official "does not adequately represent their interests" and holding that defendant's statements

and actions outside of case do not "call into question her sincerity, will or desire to defend" the

case at hand); *Lane v. Kitzhaber*, No. 3:12-cv-00138-ST, 2014 WL 2807701, at *7 (D. Or. June

20, 2014) ("The proposed Intervenors may not agree with defendants on every provision in the

Executive Order, but they have articulated no reason why defendants, as a result of the Executive

Order, would be likely to abandon defense of this lawsuit.").[4]

At base, the States ask this Court to ignore the current administration's recent statements

---

[3] The States go so far as to speculate that the order in which one webpage lists the new administration's "immediate priorities" is meaningful.  State Mot. 9 (citing https://perma.cc/27UU-Y7V8).  Such attempts to read the tea leaves betray the extent of their conjecture.

[4] Insofar as the States accuse the United States of "collusive litigation tactics," the contention is both baseless and inadequate as a matter of law.  *See, e.g.*, *Oakland Bulk & Oversized Terminal*, 960 F.3d at 620-21 (holding parties' positions and conduct in past lawsuit "irrelevant" to adequacy of representation in case involving different issues); *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 741 F. App'x 367, 372 (9th Cir. 2018) (affirming denial of intervention as of right based on allegation of collusion between class counsel and defendant where proposed intervenor had not "produced any persuasive evidence of collusion"); *E&B Nat. Res. Mgmt. Corp. v. County of Alameda*, No. 18-cv-05857-YGR, 2019 WL 5697912, at *5 (N.D. Cal. Nov. 4, 2019) (denying intervention and noting proposed intervenor "has not shown how the County's conduct in other cases is relevant to an analysis here").

*in this case* reiterating the separation of powers concerns that the government has raised consistently for six years, and to assume without evidence that the new administration "will use settlement to arrogate to themselves tremendous power that rightfully belongs instead to 'the People's "elected representatives."'" *Compare* ECF No. 468 at 16-17 *with* State Mot. 9.  The Ninth Circuit has rejected precisely the inference that the States rely upon here, holding that speculation about the effects of a change of administration is insufficient to demonstrate inadequate representation.  *League of United Latin Am. Citizens*, 131 F.3d at 1306-07.  Otherwise "proposed intervenors could *always* satisfy . . . Rule 24(a)(2) if the defendant were a [ ] government entity."  *Id.* at 1307; *see also United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) ("[T]he mere change of administration is insufficient to alter the conclusion that the interests of the Community Interveners are adequately protected by the United States" because "[c]ampaign rhetoric and perceived philosophic differences without more specific objective evidence in the record are insufficient by themselves to demonstrate adversity of interest.").

Finally, the States' remaining arguments fail because they suggest differences in litigation tactics and strategy rather than divergent goals in this case.  "[M]ere [ ] differences in [litigation] strategy . . . are not enough to justify intervention as a matter of right."  *Perry*, 587 F.3d at 954 (quoting *City of Los Angeles*, 288 F.3d at 402-03).  For example, the States have already forecast their intent, if permitted to intervene, to "press [their] arguments against amending the complaint before the Ninth Circuit and Supreme Court if those arguments prove unpersuasive to this Court."  State Mot. 17.  Defendants' choice to not make such a premature pronouncement is not indicative of a "divergence over the ultimate objective of the suit."  *Perry*, 587 F.3d at 949; *see also Freedom from Religion Found.*, 644 F.3d at 842 (denying intervention

as of right in part because "if the mere possibility that the federal defendants *might* decline to appeal were sufficient to rebut the presumption of adequacy, then nearly every case involving a federal defendant would be subject to intervention as of right").

In sum, contrary to the States' motion, it is not Defendants' obligation to offer "assurance[s]" or "guarantee[s]" about their intentions in the upcoming settlement conference but rather the States' burden to make a "compelling showing" that representation is inadequate. State Mot. 7, 16.  The States' reliance on unsupported speculation about the new administration's approach to this case is insufficient to "satisfy this heightened threshold." *Oakland Bulk & Oversized Terminal*, 960 F.3d at 620.  The States have therefore failed to overcome the presumption of adequate representation and their motion for intervention as of right should be denied.

## Conclusion

The Court should deny the States' motion for intervention as of right because their interests are adequately represented by the United States.

Dated:  June 22, 2021

JEAN E. WILLIAMS
Acting Assistant Attorney General
United States Department of Justice

*/s/ Sean C. Duffy*
SEAN C. DUFFY (NY Bar No. 4103131)
FRANK J. SINGER (CA Bar No. 227459)
Environment & Natural Resources Division
Natural Resources Section
150 M Street, NE
Washington, DC 20002
Tel:  (202) 305-0445
Fax:  (202) 305-0506
E-mail:  sean.c.duffy@usdoj.gov

*Attorneys for Defendants*