Proceedings

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


KELSEY CASCADIA ROSE JULIANA, )

et al.,                       )

            Plaintiffs,       )

    v.                        )No. 6:15-cv-01517-AA

THE UNITED STATES OF AMERICA, )

et al.,                       )

            Defendants.       )



ORAL ARGUMENT

BEFORE THE HONORABLE ANN AIKEN

Friday

June 25, 2021

10:00 A.M.


APPEARANCES:

For Plaintiffs:  Ms. Julia Olson

                 Mr. Philip Gregory

                 Ms. Andrea Rodgers

For Defendants:  Mr. Sean Duffy

                 Mr. Frank Singer


REPORTED BY:    Ms. Eleanor G. Knapp, RPR-CSR

Proceedings

2

```
 1                     JUNE 25, 2021

 2                       Friday

 3                     10:00 A.M.

 4               THE CLERK:  Now is the time set for

 5    Civil Case Number 15-1517, Juliana, et al., v.

 6    United States of America, et al., for oral argument.

 7    If you could please introduce yourselves for the

 8    record, beginning with Plaintiffs.

 9               MS. OLSON:  Good morning, Your Honor.

10    This is Julia Olson on behalf of the plaintiffs.

11               MR. GREGORY:  Good morning, Your

12    Honor.  This is Philip Gregory on behalf of the

13    plaintiffs.

14               MS. RODGERS:  And good morning, Your

15    Honor.  This is Andrea Rodgers on behalf of the

16    plaintiffs.

17               MR. DUFFY:  Good morning, Your Honor.

18    This is Sean Duffy on behalf of the defendants.

19               MR. SINGER:  Good morning, Your Honor.

20    This is Frank Singer on behalf of the United States.

21               THE COURT:  Thank you all.  I believe

22    that's all that I expect on this call.  Is that

23    correct, Cathy?

24               THE CLERK:  Yes, that is everyone,

25    Judge.  Thank you.
```

```
1              THE COURT:  Thank you.  I have
2    reviewed all the materials that have been submitted.
3              Ms. Olson, this is your motion to
4    amend, so I'm happy to hear any additional argument
5    you wish to make.  Go ahead.
6              MS. OLSON:  Thank you, Your Honor.
7    Good morning.  May it please the Court, this is
8    Julia Olson on behalf of the plaintiffs, many of
9    whom are on the public call-in line today.  We want
10   to thank Your Honor and the court staff for
11   providing the plaintiffs and the public the ability
12   to listen at a time when we cannot all gather at
13   person at the courthouse.
14             I would like to reserve five to ten
15   minutes for rebuttal with this Court's permission.
16             THE COURT:  We don't stand on those
17   kind of technical time limits.  So if you want to
18   respond, you'll be able to do that.  Don't think
19   it's confined to that period of time.  All right?
20             MS. OLSON:  Thank you, Your Honor.
21             Your Honor, how our nation's children
22   and adults speak, move, love, vote, worship,
23   assemble, learn, and behave in our world is a
24   function of the rights we hold and those we are
25   denied.  For our rights to endure in the face of
```

Proceedings

```
 1   government policy threats, they need to be declared.
 2              Do children have a right to free
 3   speech on Snapchat when they aren't in school even
 4   if that speech is profane?  On Wednesday, eight
 5   Supreme Court justices said yes, they do.  The
 6   Supreme Court issued a declaration of constitutional
 7   law in Mahoney Area School District v. B.L.
 8              THE COURT:  May I interrupt for a
 9   second?  I apologize.  But if you're not speaking,
10   would everyone else put their phone on mute.  I
11   started to hear people talking, and it's difficult
12   enough to hear on these phone conference calls
13   generally.  For the court reporter, it's even more
14   difficult.  So again, please, everybody mute your
15   phone if you're not speaking.
16              And I apologize, Ms. Olson, for
17   interrupting.  Please go ahead.
18              MS. OLSON:  Thank you.  That
19   declaration in Mahoney of a student's constitutional
20   rights isn't just about one 14-year-old cheerleader,
21   who is now in college.  It's about the First
22   Amendment rights of children across the country.
23   It's also about the line where government interests
24   -- in that case, the public schools -- unjustly
25   invade those constitutionally protected rights.
```

Proceedings

1    Only our courts can declare those constitutional

2    rights and define those constitutional lines in a

3    final judgment for all.

4                Nearly 80 years ago in West Virginia

5    State Board of Education v. Barnette, the Supreme

6    Court also protected children who were in school

7    exercising their free speech and freedom of

8    religious expression, and the Court declared their

9    rights.

10               In 2005 in Roper v. Simmons, the

11   Supreme Court invoked the Eighth Amendment rights of

12   young people convicted of crimes and finally

13   declared that children cannot be sentenced to death.

14               In 2012 in Miller v. Alabama, the

15   Court said rarely should children be sentenced to

16   life without the possibility of parole.  Since that

17   declaration of constitutional law in Miller, 31

18   states and the District of Columbia either banned

19   life without parole for children or have no children

20   serving that sentence.  That declaration of rights

21   had real life consequences, not just for Evan

22   Miller, but many other children.

23               This term the Supreme Court clarified

24   when life without parole for Evan Miller and other

25   children may be permitted and when it deprives them

Proceedings

1    of fundamental rights under the Eighth Amendment.

2    And that new constitutional declaration and

3    clarification will also have profound consequences

4    for convicted children around the country, affecting

5    their entire life trajectory.

6                    Only our courts can judge and declare

7    those constitutional rights and define those

8    constitutional lines.  And those declaratory

9    judgments of our courts matter immensely.

10                    21 children and young people are here

11    today to argue over whether they are entitled to

12    file an amended complaint that seeks primarily an

13    adjudication of whether they too have

14    constitutionally protected rights that have been

15    invaded by their government and where the line is of

16    that invasion or deprivation.

17                    While this Second Amended Complaint is

18    not about First Amendment speech or Eighth Amendment

19    cruel and unusual punishment, the rights of Kelsey,

20    the eldest, and Levi, the youngest, and the 19 youth

21    in between are located in and protected by the Fifth

22    Amendment.  And they are no less vital to their

23    freedom and their pursuit of happiness, the rights

24    to life and to personal security and to be free of

25    government-imposed danger, the right to family

Proceedings

```
1    autonomy, the right to a climate system that
2    sustains human life, the right to equal protection
3    of the law, and the right to public trust resources
4    are all at least as deeply rooted in the history of
5    our nation, as fundamental to our liberty as the
6    rights some people seek to own an AR-15 assault
7    weapon.
8              But just this month in Miller v.
9    Bonta, a federal judge in the Southern District of
10   California declared unconstitutional policies
11   banning children and adults from owning assault
12   weapons.
13             Our federal courts allow people
14   standing to assert their alleged fundamental rights
15   when they have real injuries in order to challenge
16   government policies that cause those injuries and
17   then have those rights adjudicated.
18             A declaration of rights and
19   constitutional limits on government policies very
20   often have significant ramifications because it
21   changes the legal relationship between all of us and
22   our government.  It affects how we live our lives,
23   our dignity, and our physical security.  Some
24   people, Your Honor, want to protect the right of
25   self-defense via alleged constitutional rights to
```

Proceedings

1    assault weapons, and they have standing to walk

2    through the courthouse doors and receive a

3    declaration on that issue.

4                These young people before you today

5    want to protect their lives and personal security

6    too.  And they also have standing to receive a

7    declaration of their rights and the constitutional

8    limits on government policies when their government

9    is actively threatening their self-preservation.

10                So while we are here on a routine

11    motion to amend a prior complaint to correct a

12    perceived defect that was found by the Ninth

13    Circuit, the outcome of this routine motion has

14    monumental implications for whether justice is

15    served.

16                Here, where the law of the case is

17    that the subject matter of Plaintiffs' complaint --

18    the nation's energy system policies and practices

19    and the plaintiffs' Fifth Amendment claims against

20    that system -- are not barred by the political

21    question doctrine, it would be manifestly unjust and

22    contrary to Article III and the nearly century-old

23    act of Congress not to allow these children and

24    youth to access our judiciary to seek a declaration

25    of their constitutional rights and the line at which

Proceedings

1    those rights are infringed by their government.

2                That declaration alone, even if no

3    further relief is available, will change the current

4    legal status of these youth.  And the plain text of

5    the declaratory judgment allows for just that.

6                Even where no further relief may be

7    available, this Court may issue declaratory judgment

8    for or against the plaintiffs where they have

9    demonstrated injury, causation, and a live case or

10   controversy with their government.  And nothing the

11   Ninth Circuit said on interlocutory appeal changes

12   this Court's obligation to say what the law is.

13               I want to turn now to the Rule 15(a)

14   analysis.  Your Honor, based on the briefing of the

15   parties there are two primary issues for this Court

16   to resolve in order to grant Plaintiffs' motion to

17   amend.

18               First, this Court should find the

19   Ninth Circuit dismissed the First Amended Complaint

20   without prejudice.

21               Second, this Court should hold that

22   the proposed Second Amended Complaint would not be

23   futile in light of the Ninth Circuit interlocutory

24   opinion and the law governing amendments because

25   there has been no delay, no bad faith, and there

1    will be no prejudice to defendants.  Plaintiffs'

2    amendment should be granted in order to comply with

3    the spirit of Federal Rule of Civil Procedure 15(a)

4    to freely and liberally move meritorious cases to

5    trial and a merits judgment.

6                    There is a presumption in favor of

7    amendment here that the Government has not rebutted.

8    And Eminence Capital, the Ninth Circuit case at

9    1052, stands for that.

10                   So turning to the issue of prejudice,

11   the Ninth Circuit dismissal could only have been of

12   one type, and that's without prejudice.  When a

13   court intends to dismiss a case with prejudice, it

14   says so.  The Ninth Circuit did not do that here.

15   And most importantly, legally it could not have

16   dismissed the First Amended Complaint with prejudice

17   because it did not render a merits judgment.  It did

18   not award summary judgment to Defendants, and it did

19   not find that no amendment could cure the purported

20   standing deficiency.  Instead, what the Ninth

21   Circuit did on its face was dismiss the First

22   Amended Complaint for lack of subject matter

23   jurisdiction based on its view that Plaintiffs

24   lacked standing.

25                   Courts are not permitted to get to the

1   merits resolution of a case when they lack

2   jurisdiction.  The Government does not disagree that

3   there was no merits resolution, and they agree that

4   summary judgment was not awarded in their favor.

5                The circuit courts are unanimously in

6   agreement on this.  And the courts say consistently

7   that it would actually be inappropriate for an

8   appellate court to dismiss with prejudice for lack

9   of standing.  The Ninth Circuit case Fleck &

10  Associates at 471 F.3d 1106 supports that.

11               Thus, in the mandate issued to this

12  Court, the directions had to be to dismiss

13  Plaintiffs' First Amended Complaint without

14  prejudice.

15               That then brings us to the futility

16  analysis.  Before I address that question of

17  futility and walk through the Ninth Circuit opinion,

18  I think it's really important to talk about the

19  procedural posture of the First Amended Complaint on

20  interlocutory appeal.  That procedural posture set

21  the stage for the Ninth Circuit's opinion and what

22  it did and did not do in that opinion.

23               Unlike most of the cases the

24  Government relies upon for its futility analysis

25  where Plaintiffs' complaints were dismissed by the

district court, in this case, as Your Honor well knows, Plaintiffs won Defendants' motion to dismiss and prevailed on every motion the Government made to dismiss the case. So at the time of the interlocutory appeal, there was no final judgment in this Court as to standing. There were no findings of fact. And the reason was, of course, that there were disputed issues of material fact that this Court needed a trial and finding of fact to resolve as is the ordinary course of litigation.

But the Government wanted premature review of those pretrial decisions. All they could take up to the Ninth Circuit were this Court's denials of their pretrial motions. And the Ninth Circuit was only in a position to resolve the arguments the Government put before them as to why the case should be prematurely dismissed.

And this is key. The Ninth Circuit focused its redressability analysis right where Defendants asked it to. They asked the Ninth Circuit to say that Plaintiffs' specific request for a court-ordered remedial plan was outside the jurisdiction of the courts and, for that reason, Plaintiffs could not seek their central relief which was injunctive. And therefore, the Ninth Circuit

```
1    said Plaintiffs had no standing.

2                    The Government's opening brief on

3    interlocutory appeal never once argued that

4    Plaintiffs could not obtain declaratory relief nor

5    that declaratory relief would not provide at least

6    partial redress.  They never made that argument in

7    their opening or reply brief.  Thus, it's not

8    surprising that the Ninth Circuit did not analyze

9    and conclusively address whether declaratory

10   judgment sufficed for the redressability prong of

11   Plaintiffs' Article III standing.

12                   And that important back story of how

13   we arrived at this moment dictates how this Court

14   should also interpret the Ninth Circuit's ruling on

15   the First Amended Complaint.

16                   So going into futility, the law of the

17   case right now on standing is crucial to look at at

18   this juncture.  And Plaintiffs believe the Court

19   should take the Ninth Circuit at its word as to its

20   three specific holdings.  And these are quotes from

21   the Ninth Circuit opinion.

22                   First, quote, The district court

23   correctly found the injury requirement met, at 1168.

24                   Second, The district court correctly

25   found the Article III causation requirement
```

1   satisfied for purposes of summary judgment, at 1169.

2                And third, quote, It is beyond the

3   power of an Article III court to order, design,

4   supervise, or implement the plaintiffs' requested

5   remedial plan, at 1171.

6                That is the explicit law of the case

7   that was fully analyzed and briefed on standing and

8   resulted in the dismissal of the First Amended

9   Complaint.

10               With respect to the issue of whether

11  Plaintiffs could cure that deficiency, the Ninth

12  Circuit was silent.  It's interlocutory opinion did

13  not address whether amendment would be futile, and

14  that remains an open question for the discretion of

15  this Court.

16               And importantly, Defendants suggest

17  that the Ninth Circuit opinion should just be pasted

18  on the Court's decision here.  But that opinion was

19  only with respect to the First Amended Complaint.

20  That Court did not have Plaintiffs' proposed Second

21  Amended Complaint before it which has new requests

22  for relief and new factual allegations that must be

23  taken as true.

24               And what those allegations taken as

25  true --

Proceedings

```
1                    THE COURT:  I'm sorry.  Ms. Olson,
2    will you step back at the beginning again of that
3    argument?  I got -- you kind of cut in and out a
4    little bit.  Would you go back to that, right after
5    you finished the three issues that were the holding
6    and the law of the case.  So just right at the end
7    of that, would you start into that next argument?  I
8    apologize.  I thought I caught it all, but I really
9    want you to redo it for me.
10                   MS. OLSON:  Yes.  Of course, Your
11   Honor.  No problem.
12                   So with respect to amending the
13   complaint and whether that would be futile or not,
14   the Ninth Circuit was silent.  Its interlocutory
15   opinion did not address futility of amendment, and
16   that remains an open question for this Court to
17   decide and it's fully within this Court's
18   discretion.
19                   The Ninth Circuit's dismissal order
20   also only applied to Plaintiffs' First Amended
21   Complaint.  And now that the Second Amended
22   Complaint has a new request for relief and new
23   factual allegations that must be taken as true, the
24   order of the Court requiring dismissal of the First
25   Amended Complaint does not automatically apply to
```

Proceedings

1    the Second Amended Complaint.

2                    Specifically, Plaintiffs now allege

3    for the first time in the Second Amended Complaint

4    that if this Court declares the nation's energy

5    system policies and practices unconstitutional, the

6    Government will change those policies and practices

7    to stop the constitutional violation.  The

8    constitutional controversy would then be resolved,

9    and the legal status of the plaintiffs would be

10   forever altered vis-a-vis their relationship with

11   their government just as the legal status of

12   children was altered in Brown v. Board of Education

13   or in the Mahoney School District case with respect

14   to the rights -- the free speech rights of children.

15                   Some of the important paragraphs in

16   the Second Amended Complaint are 95-A, 95-B,

17   paragraph 12, 276-A, and paragraph 212.  And these

18   paragraphs tell the factual story that in addition

19   to the plaintiffs being injured in all of the ways

20   that have already been accepted as law of the case,

21   the plaintiffs are being injured because their

22   federal government continues to put them at greater

23   risk of even more physical and mental health harm

24   than they already experience.  And that's caused by

25   the policies and practices of the national energy

Proceedings

1    system that are continuing and ongoing.

2                    And Plaintiffs allege that if that

3    system is declared unconstitutional, Defendants

4    thereafter will abide by this Court's declaratory

5    judgment and reduce, to a meaningful extent, the

6    cause of the harm.  Plaintiffs allege that

7    Defendants would abide by the decree of the Court

8    and bring the energy system into constitutional

9    compliance, redressing the substantial cause of

10   these Plaintiffs' constitutional injuries.

11                   The defendants want this Court to read

12   into the interlocutory opinion an implied ruling

13   that the Ninth Circuit has barred this Court from

14   allowing the amended complaint or that the Ninth

15   Circuit is barring this Court from issuing

16   declaratory judgment.  But that reading of the Ninth

17   Circuit opinion, Your Honor, asks you to ignore what

18   the Court explicitly said was the central issue

19   before it.  And that's a quote at page 1164 and -65

20   of the interlocutory opinion.

21                   The central issue before the Court was

22   whether an Article III court can provide the

23   plaintiffs the redress they seek, an order requiring

24   the Government to develop a plan to phase out fossil

25   fuel emissions.  So that central issue was

1    injunctive relief, and that is what the Court

2    addressed.  Declaratory judgment was not the issue

3    that the defendants put before the Ninth Circuit,

4    and it wasn't the issue the Ninth Circuit was

5    focused on addressing.

6              This Court in Hampton v Steen

7    explained that leave to amend should be denied only

8    when it is clear that the complaint cannot be saved

9    by any amendment and that a district court should

10   not read into an appellate mandate language that is

11   not there, particularly when doing so would result

12   in a manifest injustice.  This Court specifically

13   wrote at page 2 of your opinion in Hampton, "When a

14   court is presented with new law, new facts, or

15   otherwise changed circumstances, it has discretion

16   to rule afresh."

17             Here there is new law, there are new

18   facts, and changed circumstances all present.  And

19   the combination of these factors justify allowing

20   the Second Amended Complaint to proceed.

21             And importantly in this Rule 15(a)

22   analysis, it's Defendants' burden to prove

23   otherwise.  So going to Defendants' burden on the

24   law of the declaratory judgment, first Defendants

25   must squarely address the law on whether declaratory

1    judgment as set forth in Plaintiffs' Second Amended

2    Complaint is sufficient for Article III standing.

3                    The burden to prove that declaratory

4    judgment could not be awarded is theirs at this

5    stage.  Yet they do not grapple with the most

6    pertinent case law in their brief.  Defendants

7    ignore the MedImmune case of the Supreme Court,

8    which sets the case or controversy standard for

9    obtaining a declaratory judgment.  They never once

10   argued that declaratory -- sorry, Your Honor.

11                   THE COURT:  You cut out.  So again,

12   can you start back in your argument?  You just cut

13   out.

14                   MS. OLSON:  Yes.  I apologize, Your

15   Honor.

16                   THE COURT:  No.  That's the nature of

17   doing these hearings remotely.

18                   MS. OLSON:  Yes.  So on the point of

19   whether declaratory judgment can be awarded in this

20   constitutional rights case, it's Defendants' burden

21   to show that declaratory judgment could never be

22   awarded.  And they don't grapple with the most

23   pertinent case law on that issue.

24                   For example, they ignore entirely the

25   MedImmune case of the Supreme Court which sets the

1    case or controversy standard for obtaining a

2    declaratory judgment under the Declaratory Judgment

3    Act.  Defendants never argue that declaratory

4    judgment cannot suffice for standing.  And they

5    don't explain how the plain language of the

6    Declaratory Judgment Act doesn't mean that even when

7    no other relief is available, Plaintiffs can get a

8    declaration of their rights and the wrongdoing of

9    the Government as long as there is a live

10   controversy between the parties and there is injury

11   and causation.

12              The defendants also don't fully

13   grapple with the analysis in the Uzuegbunam v.

14   Preczewski case that was recently decided.  That

15   case clearly says that where there is an injury and

16   where there is causation in a constitutional case,

17   that even where the injury and causation no longer

18   exist, that a nominal damage of one dollar is enough

19   for the redressability prong of Article III standing

20   because that one dollar acts as a form of

21   declaratory relief.

22              They don't respond to the Supreme

23   Court's clear ruling that at common law nominal

24   damages acted as the equivalent of declaratory

25   judgment before declaratory judgment acts existed.

```
 1                   THE COURT:  May I interrupt?  My
 2      understanding of your amendment is that you are
 3      asking for the declaratory relief along with the
 4      nominal damages.  Am I correct about that?
 5                   MS. OLSON:  Your Honor, we have not
 6      asked for nominal damages.  We could amend the
 7      complaint to do that, but we think that in this
 8      case, because we have an ongoing and live
 9      controversy with the Government, that declaratory
10      judgment is the appropriate remedy.  A nominal
11      damage remedy would only be appropriate here if the
12      Government rescinded and corrected the energy
13      policies that are causing the constitutional
14      violation as the Government had done so in
15      Uzuegbunam.
16                   THE COURT:  Because that intervening
17      Supreme Court case changes somewhat the complexion
18      of everything, I'm just suggesting that out of an
19      abundance of analysis and saving, perhaps, future
20      sets of motions, that you might want to have that in
21      your complaint in the alternative -- and/or.  You
22      know, I'm just thinking of that Supreme Court case
23      and wanting to make sure that we don't ignore sort
24      of the direction the Supreme Court gave in that
25      case.  Just -- that's why I asked.  I didn't see
```

1    that that was in your amended complaint.

2                    Anyway, go ahead and with your

3    argument.

4                    MS. OLSON:  Thank you, Your Honor.  We

5    think that paragraph 4 of the prayer for relief

6    includes the ability of the Court to award nominal

7    damages, but we can also amend that into the

8    complaint expressly.

9                    So in addition to not grappling with

10   the clear law under the Declaratory Judgment Act and

11   under Article III standing where there are abundant

12   new cases from the Supreme Court this term, the

13   defendants also don't address or meet their burden

14   to prove futility with respect to the new factual

15   allegations that are in the Second Amended

16   Complaint.

17                   They must argue that it is clear

18   beyond doubt that declaratory judgment would not

19   provide any redress of Plaintiffs' injuries, and the

20   Ninth Circuit has held that in the Center for

21   Biological Diversity v. Veneman case at page 1114.

22                   The Government here does not contend

23   that it will not change its energy policy and

24   practices if the Court awards this (unintelligible)

25   here, a declaration of their rights and a

Proceedings

```
 1    declaration of the Government's constitutional
 2    violation in carrying out that system.
 3                 They also don't contest the new
 4    factual allegations that when the Government
 5    corrects its constitutional violations that
 6    significant risks of ongoing and worsening harm to
 7    Plaintiffs will abate.  Their silence on these
 8    points does not meet their burden to prove up
 9    futility.  And in fact, Defendants, throughout the
10    course of these six years of litigation, have
11    consistently sought to ignore the important redress
12    of declaratory judgment in the constitutional
13    controversy and in this case.  They ignored it on
14    interlocutory appeal, and they are trying to
15    sidestep it here as well.
16                 But Brown v. Board of Education is
17    still good law.  And in 1954 the Supreme Court said
18    that the first and most important question was
19    declaring the rights of the children to equal
20    integrated education.
21                 So the proper interpretation of any
22    ambiguity in the Ninth Circuit interlocutory opinion
23    must be one that is consistent with Article III, the
24    Declaratory Judgment Act, and Supreme Court
25    precedent interpreting and setting the law for how
```

1    the lower courts should view their obligations to

2    hear cases.

3              The amended factual allegations.  We

4    allege that the Government will comply with the

5    Court's order.  And that's also backed up not just

6    by the factual allegations but by the law of the

7    Ninth Circuit and the Supreme Court in the Evans and

8    Eu cases cited in our brief.

9              So just to be really clear, because I

10   think the Ninth Circuit opinion and how it treats

11   declaratory relief and, of course, predominantly

12   injunctive relief is something that Your Honor has

13   to wrestle with, and what the rule of mandate case

14   has made clear is that this Court can decide any

15   issue that the Ninth Circuit is silent on or did not

16   lay to rest.

17             The dismissal by the Ninth Circuit was

18   not a blanket dismissal.  It did not -- that Court

19   did not address every aspect of this Court's prior

20   order.  It was limited to the reasons it stated.

21   And on this motion to amend, we don't need to argue

22   whether the Ninth Circuit got it right or got it

23   wrong.  We need to look at what they didn't consider

24   and did not rule on.

25             So I want to walk through this list of

```
1     what the Ninth Circuit is silent on.
2                 The Ninth Circuit was silent on
3     whether amendment would be futile.
4                 They were silent on the Declaratory
5     Judgment Act and never cited 28 USC 2201.
6                 They were silent on the Supreme Court
7     precedent of MedImmune which sets the case or
8     controversy standard for declaratory judgment.
9                 They were silent on the second prong
10    of the redressability analysis with respect to
11    whether the Court has the authority to award
12    declaratory judgment.
13                They were silent on the likelihood of
14    partial redressability through declaratory judgment.
15                They were silent on the remedial
16    effect of a change in legal status of the parties if
17    declaratory judgment was ordered and how that would
18    impact the ongoing and worsening harm caused by the
19    Government's conduct.
20                They were silent, of course, as to any
21    new factual allegations in the Second Amended
22    Complaint as well as Plaintiffs' new request for
23    relief because that was not before them.
24                And of course they were silent on the
25    new Supreme Court precedent on Uzuegbunum v.
```

```
1    Preczewski, which also was decided after their
2    opinion.
3              So the Ninth Circuit does not lay any
4    of those issues to rest.  The Ninth Circuit never
5    said this Court cannot declare a constitutional
6    violation where there is an active case or
7    controversy with ongoing injury and causation.  And
8    it would have been wrong had they said that, but
9    they didn't get to that issue.
10             So in a constitutional case of this
11   magnitude and of first impression, these issues of
12   declaratory judgment, partial redressability, and
13   the scope of relief that's proper must be thoroughly
14   and carefully resolved at a trial on standing and
15   the merits.
16             For all of these reasons, Your Honor,
17   the Second Amended Complaint should be accepted as
18   overcoming the final jurisdictional threshold of
19   properly pleading redressability.  And if this Court
20   disagrees, Plaintiff respectfully requests an
21   opportunity to further plead redressability by
22   amendment.
23             And unless Your Honor has further
24   questions, I will wait and respond to any other
25   issues on rebuttal.
```

Proceedings

1          THE COURT:  I do have a question, and

2     I would like to jump to having you deal with it

3     head-on in your argument, and that is the late

4     filing by the Government on the analysis and the

5     implication of the Supreme Court case issued on June

6     17th, California v. Texas.  And I -- you know, it's

7     a decision that was focused on the Affordable Care

8     Act, but may have implications in this case.  And

9     I'm confident it will be argued strenuously by the

10    Government, but I would like to have your thoughts

11    on it at this point as I look at and listen to their

12    arguments.

13         MS. OLSON:  Yes, Your Honor, I think

14    that the California v. Texas case is completely

15    irrelevant and off point to the issues before the

16    Court here.  The reason is simple.  In California v.

17    Texas, the Supreme Court found that there wasn't

18    injury and, because there wasn't going to be injury,

19    there couldn't be redressability.

20              So in that case the provision that

21    would have imposed fines on people who didn't have

22    insurance had already been decided by the Government

23    that it would not be enforced.  So there was no

24    threat of the imposition of fines or harm in that

25    case, and that's why the Supreme Court said that

Proceedings

1   there is no redress that we can or should provide

2   here because there isn't injury in fact.

3               In contrast, of course, here the law

4   of the case is that Plaintiffs have adequately

5   established injury in fact and causation.  And the

6   harms are ongoing.  I mean, I think -- this has

7   really been a term of standing decisions.  Just

8   today, Your Honor, another decision came down in the

9   TransUnion v. Ramirez case, which is also a standing

10  case.  And there Justice Kavanaugh, writing for the

11  majority, says that for there to be a case or

12  controversy under Article III, the plaintiffs must

13  have a personal stake in the case and, to

14  demonstrate their personal stake, Plaintiffs must be

15  able to sufficiently answer the question, "What's

16  it to you?"

17              And that question -- "What's it to

18  you?" -- is very, very clear here.  It's -- the

19  Government is acting as if these young people hold

20  no constitutional rights.  They've said as much.

21  They also believe that their energy system policies

22  and practices are unreviewable and that it doesn't

23  matter if they continue burning fossil fuels

24  throughout the course of the century or not.

25              And that is a controversy between the

Proceedings

1    plaintiffs and their government that answers the

2    question, "What's it to you?"

3                   And -- but I think the California v.

4    Texas case is not pertinent to this Court's

5    resolution of Plaintiffs' motion to amend, but the

6    TransUnion v. Ramirez case and possibly the Arthrex

7    case, which was also decided this week, may be

8    pertinent.  And we intend to file a notice of

9    supplemental authority at least as to the TransUnion

10   case, Your Honor, which came out this morning.

11                  THE COURT:  Thank you.  I try very

12   hard the mornings of expected opinions to be attuned

13   to them coming down, and I was getting ready for

14   this case and had an earlier hearing and did not

15   know that case came down.  So I would have missed

16   just your eloquent summary of the argument and the

17   essence of the case, "What's it to you?"  So I'm

18   very grateful I asked that question.

19                  And you've got to have -- it's

20   interesting that all these cases have been basically

21   the body of the work of the Supreme Court in these

22   last few days.

23                  Anything else you need to add?  Thank

24   you.  That was helpful to -- that late submission.

25                  Anything else you need to add,

Proceedings

1   Ms. Olson, or are you finished and I can turn to the

2   Government?  And I will come back to you for further

3   argument.

4                  MS. OLSON:  Yes, Your Honor.  I'll

5   reserve time for after the Government argues.  Thank

6   you.

7                  THE COURT:  You're welcome.  For the

8   Government?  Is it -- Mr. Duffy, are you going to

9   argue?

10                  MR. DUFFY:  Yes, that's right, Your

11   Honor.

12                  THE COURT:  Go right ahead.

13                  MR. DUFFY:  Good morning, and may it

14   please the Court, this is Sean Duffy with the United

15   States Department of Justice on behalf of the

16   defendants.

17                  Your Honor, I'm going to go straight

18   to the bottom line issue before the Court today.

19   The Ninth Circuit has decided this case and ordered

20   that it be dismissed.  The Ninth Circuit, en banc,

21   declined to reconsider that decision.  There is no

22   standing.  There is no jurisdiction.  There is

23   nothing left for this Court to do but to dismiss the

24   case.

25                  Plaintiffs disagree with the Ninth

Proceedings

1    Circuit decision.  That is evident from their

2    briefs.  The appropriate venue to raise that

3    disagreement, of course, is in the Supreme Court.

4              In the operative complaint, the

5    plaintiffs sought both declaratory and injunctive

6    relief.  In the proposed amended complaint they seek

7    essentially the same relief.

8              Nothing has changed in this case.  To

9    return to the trial court and litigate the same case

10   that the Ninth Circuit has ordered this Court to

11   dismiss as Plaintiffs propose is improper.

12             I'd like to begin with what we know

13   from the Ninth Circuit's decision because there are

14   at least a few inescapable takeaways worth noting.

15             First, we know declaratory relief

16   standing alone is not enough to satisfy the

17   redressability requirement for standing.  And while

18   Plaintiffs have their reasons for disagreeing with

19   the Ninth Circuit's conclusion, that disagreement

20   isn't for this Court to resolve.

21             Second, we know an injunction also

22   won't suffice because the Ninth Circuit is skeptical

23   that even the incredibly broad injunction Plaintiffs

24   initially sought would not be substantially likely

25   to redress their injuries.  It follows that the

Proceedings

1    vaguer injunction that they now seek falls even

2    shorter of satisfying redressability.

3              Plaintiffs' primary contention is that

4    they can amend the complaint to seek stand-alone

5    declaratory judgment on a constitutional issue.

6    They cannot do so.

7              Just last week in California v. Texas,

8    the Supreme Court reaffirmed the long-standing

9    principle that the Declaratory Judgment Act alone

10   does not provide a court with jurisdiction.

11   Instead, like every other type of remedy,

12   declaratory judgment actions must satisfy Article

13   III's case or controversy requirement.

14             The Plaintiffs referred to the

15   MedImmune decision.  The Supreme Court in California

16   v. Texas relied on that decision as well for this

17   exact proposition.  In California v. Texas the

18   plaintiffs sought a declaration that the minimal

19   coverage provision of the Affordable Care Act is

20   unconstitutional.  But because the provision that

21   Plaintiffs challenged is not enforceable, they would

22   achieve no redress without a declaration -- or with

23   a declaration of it's constitutional.

24             The Supreme Court held that a

25   plaintiff did not have standing merely to obtain an

1   opinion that some government action is

2   unconstitutional.  In other words, an Article III

3   court cannot declare constitutional rights in a

4   vacuum.  There must be a redressable claim.

5              That holding applies here.

6   Plaintiffs' injuries will not be redressed merely if

7   the Court declares government action to be

8   unconstitutional.  Here the Ninth Circuit found that

9   the claim for declaratory relief is not redressable

10  because a declaration on a constitutional ruling is

11  not likely to redress their injuries.  The Ninth

12  Circuit concluded that the, quote, psychic

13  satisfaction of a declaration standing alone cannot

14  satisfy the redressability requirement.

15             And the Supreme Court decision in

16  California v. Texas affirms this principle.

17             THE COURT:  So, Counsel, how do you --

18  you have to acknowledge that in the California case,

19  without a doubt -- and why every scholar who was

20  watching that case knew that the issue was that the

21  fine or fee had been eliminated and so it was really

22  rather a moot point to just simply make a

23  pronouncement about the Affordable Care Act.  And

24  nobody could tie that together with the ability to

25  take those kids -- but this is very different

Proceedings

1   because the Ninth Circuit acknowledged that there

2   was harms to the plaintiffs in this instance and

3   that they had -- they had -- there was a link in

4   causation.  And so it's postured very differently.

5                   And then today -- and I haven't

6   obviously read the decision that just came down, but

7   I'm -- and I will, you know, immediately following

8   this hearing.  But if Justice Kavanaugh is writing

9   that a case or controversy requires a personal stake

10   of "What's it to you," it seems me these 21 children

11   have certainly put that in the arena of controversy

12   and -- in their amendment, which would be their

13   first opportunity -- first amendment in this case to

14   put in -- an opportunity to address this declaratory

15   action and have the -- have, then, the opportunity

16   for the federal government to understand that courts

17   are going to protect a constitutional right, which I

18   think I wrote clearly about -- that is, the ability

19   to breathe, have clean water, have an energy source,

20   and be free from, let's say, for example in Oregon,

21   fires, wildfires, drought, inability to provide

22   resources for the community -- that they would have

23   a chance to have that right, declaratory judgment.

24                   And then it would then empower the

25   government -- certainly a district court judge would

1    not be running the government -- but the government

2    to know that they have an obligation to address

3    policies that impinge on that constitutional right.

4                    And that's, in essence, I think what

5    the Ninth Circuit case talked about in terms of

6    understanding the -- from their vantage point --

7    from their vantage point what was possible for a

8    court to do.  Although I may disagree that the -- an

9    opportunity for a district court judge to oversee

10   and to help all three branches of government do a

11   better job of protecting the constitutional right to

12   breathe the air, have water, have resources

13   available, certainly that's contemplated in the way

14   in which our government was established.  But that's

15   way down the road.

16                    So I think -- you know, I'm happy to

17   hear further argument.

18                    I also think that the Ninth Circuit

19   anticipated that if there could be a way to replead

20   this case, it was not foreclosed to this Court.

21                    So anyway, I just think the new case

22   today -- I guess I'm thinking a little bit out loud.

23   The new case today -- "What's it to you?" -- these

24   young people have certainly thrown down that

25   question.

1                    And it seems like the Supreme Court

2    decisions in these two most recent cases give me

3    guidance as to what I need to do.  So go ahead.

4                    MR. DUFFY:  Your Honor, I confess I

5    haven't read the decision that came down today, but

6    if Your Honor wants to have supplemental briefing on

7    that, we'll certainly do that.

8                    THE COURT:  Oh, I would like

9    supplemental briefing.  And I will get the

10   transcript of this argument and do further research.

11                   But -- so go right ahead.  But it's

12   clear to me that there's -- this changes -- these

13   cases from the Supreme Court changed the complexion

14   of the case in significant ways.

15                   And again, I believe even the Ninth

16   Circuit has given me some guidance.  We're just

17   looking at what's the most appropriate.  The

18   Government has a lot of latitude on how we should

19   proceed in this case.

20                   So go right ahead.  Continue your

21   argument.

22                   MR. DUFFY:  Okay.  Well, I will

23   respond to your first point about the Court's

24   decision in California v. Texas.  The plaintiffs

25   distinguish that case on the basis that their -- the

Proceedings

1    first prong of standing wasn't met in that case.

2    But the Supreme Court never sliced up the argument

3    that way.  It looked -- it really just looked at

4    standing generally and determined that a declaratory

5    judgment standing alone without meeting the standing

6    requirements is impermissible.

7                Turning to the Ninth Circuit's

8    decision in this case, on the plaintiffs' request

9    for injunctive relief, the Ninth Circuit found at

10    least two reasons why Plaintiffs lack standing.

11    First, it expressed doubt that an injunction would

12    be substantially likely to redress Plaintiffs'

13    injuries.  Based on Plaintiffs' own expert

14    testimony, injunctive relief is not likely to stop

15    climate change or ameliorate their injuries.

16                Second, the Court identified the

17    severe separation of powers concerns that this

18    lawsuit posts.  It found the Plaintiffs' claims are

19    not redressable because the injunctive relief they

20    seek is not within the power of an Article III court

21    to grant.

22                The Ninth Circuit concluded that any

23    effective plan would necessarily require a host of

24    complex policy decisions entrusted to the wisdom and

25    discretion of the executive and legislative branches

1    and held that those decisions must be made by

2    elected representatives.

3                   The proposed second complaint fairs no

4    better than the first one.  In it Plaintiffs

5    fundamentally seek the same declaratory and

6    injunctive relief that they sought previously.  With

7    regard to the declaratory relief, in both complaints

8    Plaintiffs seek a declaration that the energy system

9    violates their constitutional rights and the public

10   trust doctrine and a declaration that Section 201 of

11   the Energy Policy Act is unconstitutional.

12                  The declaratory relief that Plaintiffs

13   seek is the same in both complaints.

14                  With regard to the injunctive relief

15   in the proposed amended complaint, Plaintiffs seek

16   to enjoin Defendants from carrying out policies,

17   practices, and affirmative actions that harm them.

18                  Both complaints seek essentially the

19   same injunctive relief, which is to have the Court

20   essentially commandeer the energy policy of the

21   United States.  This is not a possible remedy, and

22   it raises severe separation of powers issues.

23                  And it is noted that the Ninth Circuit

24   found that both of these forms of relief are not

25   redressable.

Proceedings

```
1                    Three important consequences flow --
2                    THE COURT:  I would -- excuse me.  I
3    would disagree with that.  I think what it does is
4    it gives direction to the Government to say when you
5    have choices and you have rights at stake and you
6    have a choice to use a source of energy that is
7    damaging or even a source that will sustain all the
8    abilities that the public may have to clean air,
9    clean water, resources -- you know, all that were
10   listed -- that their obligation is to choose the
11   source that will not damage.
12                   I mean, I don't think it directs
13   anything.  What it does is it gives guidance to the
14   federal government about, again, stepping up and
15   protecting the constitutional rights that have been
16   discussed.
17                   So what is interesting in this case is
18   -- and what I think many people have not understood
19   -- is a district court is a place where the facts
20   are developed and the facts are laid out.  And
21   perhaps you noted in my earlier decision, I
22   bifurcated.  I bifurcated for a reason.  I
23   bifurcated because if the facts and the trial on
24   those facts were out there, I strongly suspect -- it
25   goes right along with Ms. Olson's argument -- I
```

Proceedings

1    strongly suspect that -- when she says that the

2    federal government is likely to follow a court's

3    declaratory action, I strongly suspect if the

4    Government had those facts aired in open court, that

5    before the Court could even act there may be both

6    executive and legislative action that begins to

7    redress and address the damage done to the rights

8    that have been expressed by the 21 young people and

9    others.

10              So I think it's framing this in a way

11   in which trial courts are -- our best use is to

12   develop those facts.  And then that's why I had a

13   second bifurcation and a place to -- how are those

14   redressed.

15              So, you know, this case is more

16   sophisticated than I think the Ninth Circuit

17   understood or that the Ninth Circuit understood what

18   a district court is capable of doing.

19              It's hard for me in this instance to

20   say otherwise, but so much work is done in

21   settlement discussions.  That's why I often refer

22   everyone to settlement.  In a settlement conference,

23   there's so much work that can come to the table when

24   people are interested in problem-solving and putting

25   mechanisms in place that allow people to address

1    these issues, because sometimes courts aren't the

2    best place.

3              But courts can be in a position where

4    they are, shall we say, backstopping the rights and

5    protecting those rights while solutions are reached

6    between and among the various parties who are both

7    in the case and not in the case.

8              So I hear you and the argument, but

9    I'm wanting you to think a little broader in terms

10   of -- not in such absolute terms, but to understand

11   why I think getting facts on the table all along in

12   this situation have been the goal of the Court and

13   important that these facts be developed on both

14   sides.  Go ahead.

15             MR. DUFFY:  Okay.  I take your point,

16   Your Honor.  But with respect to settlement, the

17   parties can explore settlement outside of the shadow

18   of this case.

19             THE COURT:  Mr. Duffy, I am well aware

20   of that.  And I know that -- I know that is a

21   parallel track.  In most of my cases, it is a

22   parallel track because in so many ways I believe

23   settlement allows people to come to a resolution of

24   a case that -- where maybe nobody is particularly

25   perfectly satisfied, but they understand that there

Proceedings

1    is a problem to be addressed and they approach it in

2    a different fashion.

3                   So, yes, I'm aware of that.  But I'm

4    also trying to get you to focus on how this case,

5    moving forward with an amendment -- given what the

6    Supreme Court has said in the two most recent cases

7    and the way this case is postured, amending the

8    complaint is, frankly, not such a -- shall we say, a

9    controversial request on the part of the plaintiffs.

10                   MR. DUFFY:  Well, I disagree with Your

11   Honor's interpretation of what the Ninth Circuit has

12   ordered in this case.  If the Ninth Circuit had any

13   inkling that the plaintiffs could file an amended

14   complaint on remand, I think there would have been

15   some language in that opinion to that effect, and I

16   see no language in the opinion to that effect.

17                   THE COURT:  Well, we're going to agree

18   to disagree on that point, because, let me tell you,

19   having been on the bench a long time, when they want

20   to dismiss with prejudice, they do that.  I get

21   those opinions.  When they don't, they leave it

22   open.  And this was left open.  I'm just saying.

23                   MR. DUFFY:  Okay.  Well, with regard

24   -- you raise a couple of points going to the merits.

25   And let's not forget, the Ninth Circuit and the

1    Supreme Court understood that the striking breadth

2    of Plaintiffs' claims presents substantial grounds

3    for difference of opinion while at the same time

4    citing the standards for interlocutory appeal under

5    Section 1292(b).  That observation wasn't only made

6    on standing.  The Supreme Court clearly referred to

7    all aspects of the case.

8             So to the extent Plaintiffs insist

9    that an amendment is necessary to vindicate a clear

10   constitutional right, I just want to be clear that

11   the Ninth Circuit and the Supreme Court have not

12   accepted that view.

13            Even if Plaintiffs are ultimately

14   allowed to amend their complaint here, they will

15   ultimately have to contend with the faults in all

16   other aspects of their case, including the merits.

17            So we believe that three important

18   consequences flow ineluctably from the foregoing

19   analysis.

20            First, the Court must follow the Ninth

21   Circuit's mandate and dismiss the case.  Dismissal

22   must be with prejudice, and the Court must deny the

23   motion to amend the complaint.

24            Under the rule of mandate, as Your

25   Honor's aware, a lower court is unquestionably

Proceedings

1    obligated to execute the terms of the mandate.  And

2    the post-mandate conduct of the district court must

3    also be consistent with the spirit of the mandate.

4    The Ninth Circuit mandate is clear in this case.

5    They've instructed the Court to dismiss the case for

6    lack of Article III jurisdiction.  That opinion

7    leaves no room for continuing this lawsuit based on

8    the minor amendments to the amended complaint.

9                    Dismissal should be with prejudice.

10   Dismissal with prejudice is appropriate where a

11   complaint cannot be saved by an amendment.  That's

12   the case here.  Plaintiffs lack standing not merely

13   because of a pleading deficiency that could be

14   cured.  That is clear from the proposed amended

15   complaint itself which does not in any way cure the

16   incurable standing deficiency that the Ninth Circuit

17   identified.

18                    At bottom, the proposed amended

19   complaint -- in it there's no change -- there's no

20   allegation changing -- change in the government

21   action that was challenged.  There's no change in

22   the types of harm the plaintiffs allege, and there's

23   no change in the declaratory relief the plaintiffs

24   seek.  Indeed, Plaintiffs concede that they are not

25   bringing any new claims.

1           So dismissal should be with prejudice

2    because any claim Plaintiffs intend to bring is no

3    different than the unsuccessful claims they already

4    brought.

5           And the motion to amend should be

6    denied as futile.  Futility by itself is grounds for

7    denying an amendment.  Here futility mandates denial

8    of the proposed amendment because the proposed

9    complaint seeks the same declaratory injunctive

10   remedies that the Ninth Circuit found failed to

11   establish redressability for purposes of standing.

12           In sum, both the rule of mandate and

13   the futility of amendment mandate the same result in

14   this case, dismissal with prejudice.

15           At root, Plaintiffs' request for

16   declaratory relief seeks a constitutional opinion

17   without a remedy.  But Article III courts do not

18   decide theoretical inquiries; they decide cases.

19           And Plaintiffs' request for injunctive

20   relief seeks nothing more than a request that the

21   judiciary commandeer the executive branch and do so

22   at the expense of the legislative branch of

23   government.  Our constitution crafted separated

24   powers that does not allow one branch of government

25   to commandeer another.  Under our system of

Proceedings

1   government, the resolution of some critical issues

2   that are perceived as requiring judicial resolution

3   are not always amenable to a judicial resolution.

4   And that reality is no doubt frustrating to those

5   who hoped for the judicial process to accomplish

6   what the political process has not.

7                It was surely frustrating to the

8   states in Texas v. California who sought to end the

9   Affordable Care Act.  But the constitutional

10   limitations on the powers of the courts and the

11   separations of powers principles within that

12   document preserved the process by which our

13   democracy functions.

14                We do not disrespect youth and the

15   important cause that they take up, but the place to

16   take up that cause is not the courtroom but instead

17   with their elected representative.

18                For all the foregoing reasons, the

19   Court should deny the motion to amend and it should

20   dismiss this case with prejudice as the Ninth

21   Circuit mandate requires.

22                If Your Honor has any further

23   questions, I'm happy to take those.

24                THE COURT:  No, I'm fine.  Thank you.

25                MR. DUFFY:  Thank you, Your Honor.

Proceedings

47

```
 1                  THE COURT:  Ms. Olson, do you have
 2      something more to add?
 3                  MS. OLSON:  Yes, thank you.  I just
 4      have, I think, two or three quick points, Your
 5      Honor.
 6                  I think it's incredible that six years
 7      into this case where Plaintiffs have adequately
 8      demonstrated they have ongoing and really
 9      life-threatening injuries and they have demonstrated
10      with sufficient evidence that the Government is the
11      substantial cause of those injuries -- and those
12      findings or rulings of this Court below have been
13      affirmed by the Ninth Circuit -- but we are still
14      here arguing, six years later, over whether
15      Plaintiffs can get a declaratory judgment on their
16      constitutional rights.
17                  It's -- I know of no other case that
18      would say that declaratory relief is not appropriate
19      and not required in this situation.
20                  And the reason why it's so important
21      -- I want to emphasize this -- and it really ties
22      into what Mr. Duffy said.  Mr. Duffy says that the
23      energy system is up to the political branches and
24      that these young people need to go convince their
25      elected officials or they need to go to the polls
```

1    and vote to change that system.  And there's no

2    other instance where a constitutional right, a

3    fundamental right, is being violated that plaintiffs

4    are told to go to the polls.

5                     So, for example, people who want to

6    protect their Second Amendment gun rights, they are

7    not told, "Go to the polls."  They are granted

8    standing to come to the federal courts to have an

9    adjudication of their rights.

10                    And every decision the Government has

11   made about the energy system today and for the past

12   50 years has been, to this point, solely up to the

13   political will of the majority and has not been

14   cavened by the constitution.  And those policies and

15   practices, which Defendants admit are endangering

16   these Plaintiffs, have never been evaluated for

17   their constitutionality.  But fundamental to our

18   constitutional democracy and its survival is these

19   young people's inalienable constitutional rights

20   that cannot be put up to a vote or the politics of

21   lobbyists.

22                    They are protected.  The founders

23   protected people and their rights from having to

24   just go to the polls to secure them and protect

25   them.

```
1              And I think the Ninth Circuit case in

2   Ibrahim v. Department of Homeland Security at page

3   993 also brings this home.  And it says a plaintiff

4   is not required to solve all roadblocks to full

5   realization of their rights at one time, that a

6   declaration of people's rights can remove one vital

7   roadblock to actually redressing harm that has been

8   caused.

9              So Plaintiffs clearly -- I just want

10  to state this clearly.  We've said this for a long

11  time, but we do not ask the Court to commandeer the

12  nation's energy system.  We want the Court here to

13  do its job -- to hear the evidence on both sides,

14  find the facts, declare the rights, and, if Your

15  Honor finds violations of those rights, to also

16  declare them.

17             And what Plaintiffs truly want is for

18  the political branches of government to stop

19  infringing their rights and to make policy decisions

20  that are protective of them.

21             And -- and then the last point, and

22  then I'll conclude, is that the defendants keep

23  saying that the nation's energy policy is dedicated

24  to their unfettered discretion.  But they have never

25  once argued that the nation's energy system presents
```

Proceedings

1    a nonjusticiable political question for the nation's

2    energy policy.  And they've never once said that the

3    climate crisis and the harms it's imposing on these

4    children are nonjusticiable because of the political

5    question doctrine.  And that argument has done --

6    it's been decided.  It's law of the case.

7                    So as we head into over 110-degree

8    temperatures this early summer weekend in Eugene,

9    Oregon, and a summer again ravaged by drought, with

10   looming threats of another vicious wildfire season,

11   there's a new draft report by the United Nations

12   that just came out, and it says, quote, The worst is

13   yet to come affecting our children's and our

14   grandchildren's lives much more than our own.

15                   Six years into this case these

16   plaintiffs are still being individually harmed by

17   their government's policies and practices, and only

18   a declaration by this Court of their constitutional

19   rights and the Government's violation thereof, after

20   all of the facts are laid bare, will truly begin to

21   protect their rights and redress their ongoing

22   injuries.

23                   And with that, Your Honor, unless you

24   have further questions, I just have a couple of

25   housekeeping matters.

Proceedings

```
 1                    THE COURT:  Go ahead.  I don't have
 2    any other questions.  Thank you.
 3                    MS. OLSON:  Okay.  So we will file the
 4    notice of supplemental authority and respond on the
 5    California v. Texas case and perhaps the Arthrex
 6    case, which we need to read more carefully.
 7                    And we also are going to submit a new
 8    Second Amended Complaint that corrects for all of
 9    the individual defendants who have now been
10    appointed and confirmed to those defendant positions
11    as well as remove the organizational plaintiff,
12    Earth Guardians, as a named plaintiff in the Second
13    Amended Complaint since this case is moving forward
14    for the individual violations.
15                    And we will also look at adding the
16    nominal damages request for relief.
17                    THE COURT:  Would you in your
18    supplement briefing obviously touch on the case that
19    came down today?  I have fortunately had a law clerk
20    who has read it quickly and summarized it for me,
21    but I would essentially like you to talk about that
22    case as well in your supplement.
23                    MS. OLSON:  Absolutely, Your Honor.
24    We will do that.
25                    THE COURT:  All right.  Thank you.
```

Proceedings

1               MS. OLSON:  Thank you very much.

2               THE COURT:  Anything else for you,

3   Mr. Duffy?

4               MR. DUFFY:  No.  I just have one

5   comment, and that will be it.

6               It's not Mr. Duffy who said that the

7   energy system is up to the political branches.  It's

8   the Ninth Circuit who said that definitively in its

9   opinion.

10              And insofar as Plaintiffs are saying

11  that a declaratory judgment would be enough to grant

12  some redressability here, there again, the Ninth

13  Circuit has spoken to that definitively.  It said

14  no, and this Court is bound by that.

15              THE COURT:  So, Mr. Duffy, I would

16  also tell you that the Government has the chance to

17  take a look -- and I will obviously pull the UN

18  report, the worst is yet to come, and I will read

19  that carefully -- that report carefully as well.

20  And I would think at this point the Government might

21  take a look at what -- what courts can do to be

22  helpful in this instance.

23              And I was hopeful that your argument

24  might have been different today.  But I'm prepared

25  to go forward and make my decision in this case.

1          But I'm going to tell you honestly --
2     and I'm just putting this -- noting this for the
3     record.  I'm not going to be able to get at this
4     immediately, and I'll tell you why.  I have
5     emergency hearings on water cases in part of this
6     state.  I have an emergency ESA case.  I have TROs
7     that are in front of me.  And you will have your
8     opinion as I get to it.
9          But the nature of the work is such
10    that as a district court judge in Oregon, I'm keenly
11    aware of some of the issues that were argued here
12    today.  So I will get you an opinion when we -- I've
13    also asked for a transcript.  I will look for the
14    supplemental briefing.  But do not look for an
15    immediate ruling.  I'm taking this under advisement.
16          I thank you for your time this
17    morning, and we're in recess.  Thank you.
18          MS. OLSON:  Thank you, Your Honor.
19          MR. DUFFY:  Thank you, Your Honor.
20          (Conclusion of proceedings.)
21
22
23
24
25

Proceedings

54

```
1    State of Oregon    )
                        )    ss.
2    County of Lane     )

3

4         I, Eleanor G. Knapp, CSR-RPR, a Certified

5    Shorthand Reporter for the State of Oregon, certify

6    that the witness was sworn and the transcript is a

7    true record of the testimony given by the witness;

8    that at said time and place I reported all testimony

9    and other oral proceedings had in the foregoing

10   matter; that the foregoing transcript consisting of

11   53 pages contains a full, true and correct

12   transcript of said proceedings reported by me to the

13   best of my ability on said date.

14        If any of the parties or the witness requested

15   review of the transcript at the time of the

16   proceedings, such correction pages are attached.

17        IN WITNESS WHEREOF, I have set my hand this 28th

18   day of June 2021, in the City of Eugene, County of

19   Lane, State of Oregon.

20

21        Eleanor G Knapp

22   Eleanor G. Knapp, CSR-RPR

23   CSR No. 93-0262

24   Expires:  September 30, 2023

25
```

**110degree** 50:7

**1292b** 43:5

**14yearold** 4:20

**15a** 9:13 10:3 18:21

**17th** 27:6

**276a** 16:17

**28th** 54:17

**615cv01517aa** 1:7

**95a** 16:16

**95b** 16:16

**abate** 23:7

**abide** 17:4,7

**abilities** 39:8

**ability** 3:11 22:6 33:24 34:18 54:13 (5)

**able** 3:18 28:15 53:3

**absolute** 41:10

**absolutely** 51:23

**abundance** 21:19

**abundant** 22:11

**accepted** 16:20 26:17 43:12

**access** 8:24

**accomplish** 46:5

**achieve** 32:22

**acknowledge**

33:18

**acknowledged** 34:1

**across** 4:22

**act** 8:23 20:3,6 22:10 23:24 25:5 27:8 32:9,19 33:23 38:11 40:5 46:9 (13)

**acted** 20:24

**acting** 28:19

**action** 33:1,7 34:15 40:3,6 44:21 (6)

**actions** 32:12 38:17

**active** 26:6

**actively** 8:9

**acts** 20:20,25

**add** 29:23,25 47:2

**adding** 51:15

**addition** 16:18 22:9

**additional** 3:4

**address** 11:16 13:9 14:13 15:15 18:25 22:13 24:19 34:14 35:2 40:7,25 (11)

**addressed** 18:2 42:1

**addressing** 18:5

**adequately** 28:4 47:7

**adjudicated** 7:17

**adjudication** 6:13 48:9

**admit** 48:15

**adults** 3:22 7:11

**advisement** 53:15

**affecting** 6:4 50:13

**affects** 7:22

**affirmative** 38:17

**affirmed** 47:13

**affirms** 33:16

**affordable** 27:7 32:19 33:23 46:9 (4)

**afresh** 18:16

**against** 8:19 9:8

**agree** 11:3 42:17

**agreement** 11:6

**ahead** 3:5 4:17 22:2 30:12 36:3,11,20 41:14 51:1 (9)

**aiken** 1:13

**aired** 40:4

**al** 1:5,9 2:5,6 (4)

**alabama** 5:14

**allegation** 44:20

**allegations** 14:22,24 15:23 22:15 23:4 24:3,6

25:21 (8)

**allege** 16:2 17:2,6 24:4 44:22 (5)

**alleged** 7:14,25

**allow** 7:13 8:23 40:25 45:24 (4)

**allowed** 43:14

**allowing** 17:14 18:19

**allows** 9:5 41:23

**alone** 9:2 31:16 32:9 33:13 37:5 (5)

**altered** 16:10,12

**alternative** 21:21

**although** 35:8

**ambiguity** 23:22

**ameliorate** 37:15

**amenable** 46:3

**amend** 3:4 8:11 9:17 18:7 21:6 22:7 24:21 29:5 32:4 43:14,23 45:5 46:19 (13)

**amended** 6:12,17 9:19,22 10:16,22 11:13,19 13:15 14:8,19,21 15:20,21,25 16:1,3,16 17:14 18:20 19:1 22:1,15 24:3 25:21 26:17 31:6 38:15 42:13 44:8,14,18 51:8,13 (34)

**amending** 15:12

42:7

**amendment** 4:22 5:11 6:1,18,18,22 8:19 10:2,7,19 14:13 15:15 18:9 21:2 25:3 26:22 34:12,13 42:5 43:9 44:11 45:7,8,13 48:6 (25)

**amendments** 9:24 44:8

**america** 1:8 2:6

**among** 41:6

**analysis** 9:14 11:16,24 12:19 18:22 20:13 21:23 25:10 27:4 43:19 (10)

**analyze** 13:8

**analyzed** 14:7

**andor** 21:21

**andrea** 1:21 2:15

**ann** 1:13

**anticipated** 35:19

**anyway** 22:2 35:21

**apologize** 4:9,16 15:8 19:14 (4)

**appeal** 9:11 11:20 12:5 13:3 23:14 43:4 (6)

**appearances** 1:18

**appellate** 11:8 18:10

applied 15:20

applies 33:5

apply 15:25

appointed 51:10

approach 42:1

appropriate 21:10,11 31:2 36:17 44:10 47:18 (6)

ar15 7:6

arena 34:11

argue 6:11 20:3 22:17 24:21 30:9 (5)

argued 13:3 19:10 27:9 49:25 53:11 (5)

argues 30:5

arguing 47:14

argument 1:12 2:6 3:4 13:6 15:3,7 19:12 22:3 27:3 29:16 30:3 35:17 36:10,21 37:2 39:25 41:8 50:5 52:23 (19)

arguments 12:16 27:12

arrived 13:13

arthrex 29:6 51:5

article 8:22 13:11,25 14:3 17:22 19:2 20:19 22:11 23:23 28:12 32:12 33:2 37:20 44:6 45:17 (15)

aspect 24:19

aspects 43:7,16

assault 7:6,11 8:1

assemble 3:23

assert 7:14

associates 11:10

attached 54:16

attuned 29:12

authority 25:11 29:9 51:4

automatically 15:25

autonomy 7:1

available 9:3,7 20:7 35:13 (4)

award 10:18 22:6 25:11

awarded 11:4 19:4,19,22 (4)

awards 22:24

backed 24:5

backstopping 41:4

bad 9:25

banc 30:20

banned 5:18

banning 7:11

bare 50:20

barnette 5:5

barred 8:20

17:13

barring 17:15

basically 29:20

behalf 2:10,12,15,18,20 3:8 30:15 (7)

behave 3:23

bench 42:19

best 40:11 41:2 54:13

better 35:11 38:4

beyond 14:2 22:18

bifurcated 39:22,22,23

bifurcation 40:13

biological 22:21

bit 15:4 35:22

bl 4:7

blanket 24:18

board 5:5 16:12 23:16

body 29:21

bonta 7:9

bottom 30:18 44:18

bound 52:14

branch 45:21,22,24

branches 35:10 37:25 47:23 49:18 52:7 (5)

breadth 43:1

breathe 34:19 35:12

brief 13:2,7 19:6 24:8 (4)

briefed 14:7

briefing 9:14 36:6,9 51:18 53:14 (5)

briefs 31:2

bring 17:8 45:2

bringing 44:25

brings 11:15 49:3

broad 31:23

broader 41:9

brought 45:4

brown 16:12 23:16

burden 18:22,23 19:3,20 22:13 23:8 (6)

burning 28:23

california 7:10 27:6,14,16 29:3 32:7,15,17 33:16,18 36:24 46:8 51:5 (13)

callin 3:9

cannot 3:12 5:13 18:8 20:4 26:5 32:6 33:3,13 44:11 48:20 (10)

capable 40:18

capital 10:8

care 27:7 32:19 33:23 46:9 (4)

carefully 26:14 51:6 52:19,19 (4)

carrying 23:2 38:16

cascadia 1:4

case 2:5 4:24 8:16 9:9 10:8,13 11:1,9 12:1,4,17 13:17 14:6 15:6 16:13,20 19:6,7,8,20,23,25 20:1,14,15,16 21:8,17,22,25 22:21 23:13 24:13 25:7 26:6,10 27:5,8,14,20,25 28:4,9,10,11,13 29:4,6,7,10,14,15,17 30:19,24 31:8,9 32:13 33:18,20 34:9,13 35:5,20,21,23 36:14,19,25 37:1,8 39:17 40:15 41:7,7,18,24 42:4,7,12 43:7,16,21 44:4,5,12 45:14 46:20 47:7,17 49:1 50:6,15 51:5,6,13,18,22 52:25 53:6 (100)

cases 10:4 11:23 22:12 24:2,8 29:20 36:2,13 41:21 42:6 45:18 53:5 (12)

cathy 2:23

caught 15:8

causation 9:9 13:25 20:11,16,17 26:7 28:5 34:4 (8)

Proceedings

3

**cause** 7:16 17:6,9 46:15,16 47:11 (6)

**caused** 16:24 25:18 49:8

**causing** 21:13

**cavened** 48:14

**center** 22:20

**central** 12:24 17:18,21,25 (4)

**century** 28:24

**centuryold** 8:22

**certified** 54:4

**certify** 54:5

**challenge** 7:15

**challenged** 32:21 44:21

**chance** 34:23 52:16

**change** 9:3 16:6 22:23 25:16 37:15 44:19,20,21,23 48:1 (10)

**changed** 18:15,18 31:8 36:13 (4)

**changes** 7:21 9:11 21:17 36:12 (4)

**changing** 44:20

**cheerleader** 4:20

**children** 3:21 4:2,22 5:6,13,15,1 9,19,22,25 6:4,10 7:11 8:23 16:12,14 23:19

34:10 50:4 (19)

**children's** 50:13

**choice** 39:6

**choices** 39:5

**choose** 39:10

**circuit** 8:13 9:11,19,23 10:8,11,14,21 11:5,9,17 12:13,15,18,21,25 13:8,19,21 14:12,17 15:14 17:13,15,17 18:3,4 22:20 23:22 24:7,10,15,17,22 25:1,2 26:3,4 30:19,20 31:1,10,22 33:8,12 34:1 35:5,18 36:16 37:9,22 38:23 40:16,17 42:11,12,25 43:11 44:4,16 45:10 46:21 47:13 49:1 52:8,13 (66)

**circuit's** 11:21 13:14 15:19 31:13,19 37:7 43:21 (7)

**circumstances** 18:15,18

**cited** 24:8 25:5

**citing** 43:4

**civil** 2:5 10:3

**claim** 33:4,9 45:2

**claims** 8:19 37:18 43:2 44:25 45:3 (5)

**clarification** 6:3

**clarified** 5:23

**clean** 34:19 39:8,9

**clear** 18:8 20:23 22:10,17 24:9,14 28:18 36:12 43:9,10 44:4,14 (12)

**clearly** 20:15 34:18 43:6 49:9,10 (5)

**clerk** 2:4,24 51:19

**climate** 7:1 37:15 50:3

**college** 4:21

**columbia** 5:18

**combination** 18:19

**commandeer** 38:20 45:21,25 49:11 (4)

**comment** 52:5

**common** 20:23

**community** 34:22

**complaint** 6:12,17 8:11,17 9:19,22 10:16,22 11:13,19 13:15 14:9,19,21 15:13,21,22,25 16:1,3,16 17:14 18:8,20 19:2 21:7,21 22:1,8,16 25:22 26:17 31:4,6 32:4 38:3,15 42:8,14 43:14,23 44:8,11,15,19 45:9

51:8,13 (48)

**complaints** 11:25 38:7,13,18 (4)

**completely** 27:14

**complex** 37:24

**complexion** 21:17 36:13

**compliance** 17:9

**comply** 10:2 24:4

**concede** 44:24

**concerns** 37:17

**conclude** 49:22

**concluded** 33:12 37:22

**conclusion** 31:19 53:20

**conclusively** 13:9

**conduct** 25:19 44:2

**conference** 4:12 40:22

**confess** 36:4

**confident** 27:9

**confined** 3:19

**confirmed** 51:10

**congress** 8:23

**consequences** 5:21 6:3 39:1 43:18 (4)

**consider** 24:23

**consistent** 23:23

**consistently** 11:6 23:11

**consisting** 54:10

**constitution** 45:23 48:14

**constitutional** 4:6,19 5:1,2,17 6:2,7,8 7:19,25 8:7,25 16:7,8 17:8,10 19:20 20:16 21:13 23:1,5,12 26:5,10 28:20 32:5,23 33:3,10 34:17 35:3,11 38:9 39:15 43:10 45:16 46:9 47:16 48:2,18,19 50:18 (42)

**constitutionality** 48:17

**constitutionally** 4:25 6:14

**contains** 54:11

**contemplated** 35:13

**contend** 22:22 43:15

**contention** 32:3

**contest** 23:3

**continue** 28:23 36:20

**continues** 16:22

**continuing** 17:1 44:7

**contrary** 8:22

| | | | | |
|---|---|---|---|---|
| **contrast** 28:3 | 31:3,9,10,20 32:8,10,15,24 33:3,7,15,17 34:25 35:8,9,20 36:1,8,13 37:2,16,20 38:19 39:2,19 40:4,5,18 41:12,19 42:6,17 43:1,6,11,20,22,25 44:2,5 46:19,24 47:1,12 49:11,12 50:18 51:1,17,25 52:2,14,15 53:10 (136) | **cure** 10:19 14:11 44:15 | **declaratory** 6:8 9:5,7 13:4,5,9 17:4,16 18:2,24,25 19:3,9,10,19,21 20 :2,2,3,6,21,24,25 21:3,9 22:10,18 23:12,24 24:11 25:4,8,12,14,17 26:12 31:5,15 32:5,9,12 33:9 34:14,23 37:4 38:5,7,12 40:3 44:23 45:9,16 47:15,18 52:11 (55) | **deficiency** 10:20 14:11 44:13,16 (4) |
| **controversial** 42:9 | | **cured** 44:14 | | **define** 5:2 6:7 |
| **controversy** 9:10 16:8 19:8 20:1,10 21:9 23:13 25:8 26:7 28:12,25 32:13 34:9,11 (14) | | **current** 9:3 | | **definitively** 52:8,13 |
| | | **cut** 15:3 19:11,12 | | **delay** 9:25 |
| | | **damage** 20:18 21:11 39:11 40:7 (4) | | **democracy** 46:13 48:18 |
| **convicted** 5:12 6:4 | | | | **demonstrate** 28:14 |
| | **court's** 3:15 9:12 12:13 14:18 15:17 17:4 20:23 24:5,19 29:4 36:23 40:2 (12) | **damages** 20:24 21:4,6 22:7 51:16 (5) | | **demonstrated** 9:9 47:8,9 |
| **convince** 47:24 | | | **declare** 5:1 6:6 26:5 33:3 49:14,16 (6) | |
| **correction** 54:16 | | **damaging** 39:7 | | **denial** 45:7 |
| **corrects** 23:5 51:8 | | **danger** 6:25 | | **denials** 12:14 |
| **counsel** 33:17 | **courthouse** 3:13 8:2 | **date** 54:13 | **declared** 4:1 5:8,13 7:10 17:3 (5) | **denied** 3:25 18:7 45:6 |
| **county** 54:2,18 | | **deal** 27:2 | | **deny** 43:22 46:19 |
| **couple** 42:24 50:24 | **courtordered** 12:22 | **death** 5:13 | **declares** 16:4 33:7 | |
| | **courtroom** 46:16 | **decide** 15:17 24:14 45:18,18 (4) | **declaring** 23:19 | **denying** 45:7 |
| **course** 12:7,10 15:10 23:10 24:11 25:20,24 28:3,24 31:3 (10) | **courts** 5:1 6:6,9 7:13 10:25 11:5,6 12:23 24:1 34:16 40:11 41:1,3 45:17 46:10 48:8 52:21 (17) | **decided** 20:14 26:1 27:22 29:7 30:19 50:6 (6) | **declined** 30:21 | **department** 30:15 49:2 |
| | | **decree** 17:7 | | **deprivation** 6:16 |
| **court** 1:1 2:21 3:1,7,10,16 4:5,6,8,13 5:6,8,11,15,23 9:7,15,18,21 10:13 11:8,12 12:1,6,9 13:13,18,22,24 14:3,15,20 15:1,16,24 16:4 17 :7,11,13,15,18,21, 22 18:1,6,9,12,14 19:7,11,16,25 21:1,16,17,22,24 22:6,12,24 23:17,24 24:7,14,18 25:6,11,25 26:5,19 27:1,5,16,17,25 29:11,21 30:7,12,14,18,23 | | **dedicated** 49:23 | | **deprives** 5:25 |
| | **coverage** 32:19 | **decision** 14:18 27:7 28:8 30:21 31:1,13 32:15,16 33:15 34:6 36:5,24 37:8 39:21 48:10 52:25 (16) | **deeply** 7:4 | **design** 14:3 |
| | **crafted** 45:23 | | **defect** 8:12 | **determined** 37:4 |
| | **crimes** 5:12 | | **defendant** 51:10 | **develop** 17:24 40:12 |
| | **crisis** 50:3 | | **defendants** 1:10,22 2:18 10:1,18 12:20 14:16 17:3,7,11 18:3,24 19:6 20:3,12 22:13 23:9 30:16 38:16 48:15 49:22 51:9 (22) | **developed** 39:20 41:13 |
| | **critical** 46:1 | **decisions** 12:12 28:7 36:2 37:24 38:1 49:19 (6) | | **dictates** 13:13 |
| | **crucial** 13:17 | | | **difference** 43:3 |
| | **cruel** 6:19 | **declaration** 4:6,19 5:17,20 6:2 7:18 8:3,7,24 9:2 20:8 22:25 23:1 32:18,22,23 33:10,13 38:8,10 49:6 50:18 (22) | | |
| | **csr** 54:23 | | **defendants'** 12:2 18:22,23 19:20 (4) | **differently** 34:4 |
| | **csrrpr** 54:4,22 | | | |

**difficult** 4:11,14

**dignity** 7:23

**direction** 21:24 39:4

**directions** 11:12

**directs** 39:12

**disagree** 11:2 30:25 35:8 39:3 42:10,18 (6)

**disagreeing** 31:18

**disagreement** 31:3,19

**disagrees** 26:20

**discretion** 14:14 15:18 18:15 37:25 49:24 (5)

**discussed** 39:16

**discussions** 40:21

**dismiss** 10:13,21 11:8,12 12:2,4 30:23 31:11 42:20 43:21 44:5 46:20 (12)

**dismissal** 10:11 14:8 15:19,24 24:17,18 43:21 44:9,10 45:1,14 (11)

**dismissed** 9:19 10:16 11:25 12:17 30:20 (5)

**disputed** 12:8

**disrespect** 46:14

**distinguish** 36:25

**district** 1:1,2 4:7 5:18 7:9 12:1 13:22,24 16:13 18:9 34:25 35:9 39:19 40:18 44:2 53:10 (16)

**diversity** 22:21

**doctrine** 8:21 38:10 50:5

**document** 46:12

**dollar** 20:18,20

**doors** 8:2

**doubt** 22:18 33:19 37:11 46:4 (4)

**draft** 50:11

**drought** 34:21 50:9

**duffy** 1:22 2:17,18 30:8,10,13,14 36:4,22 41:15,19 42:10,23 46:25 47:22,22 52:3,4,6,15 53:19 (21)

**earth** 51:12

**education** 5:5 16:12 23:16,20 (4)

**effect** 25:16 42:15,16

**effective** 37:23

**eight** 4:4

**eighth** 5:11 6:1,18

**either** 5:18

**eldest** 6:20

**eleanor** 1:25 54:4,22

**elected** 38:2 46:17 47:25

**eliminated** 33:21

**eloquent** 29:16

**emergency** 53:5,6

**eminence** 10:8

**emissions** 17:25

**emphasize** 47:21

**empower** 34:24

**en** 30:20

**endangering** 48:15

**endure** 3:25

**energy** 8:18 16:4,25 17:8 21:12 22:23 28:21 34:19 38:8,11,20 39:6 47:23 48:11 49:12,23,25 50:2 52:7 (19)

**enforceable** 32:21

**enforced** 27:23

**enjoin** 38:16

**entire** 6:5

**entirely** 19:24

**entitled** 6:11

**entrusted** 37:24

**equal** 7:2 23:19

**equivalent** 20:24

**esa** 53:6

**essence** 29:17 35:4

**essentially** 31:7 38:18,20 51:21 (4)

**establish** 45:11

**established** 28:5 35:14

**et** 1:5,9 2:5,6 (4)

**eu** 24:8

**evaluated** 48:16

**evan** 5:21,24

**evans** 24:7

**evidence** 47:10 49:13

**evident** 31:1

**exact** 32:17

**example** 19:24 34:20 48:5

**excuse** 39:2

**execute** 44:1

**executive** 37:25 40:6 45:21

**exercising** 5:7

**exist** 20:18

**existed** 20:25

**expect** 2:22

**expected** 29:12

**expense** 45:22

**experience** 16:24

**expert** 37:13

**expires** 54:24

**explain** 20:5

**explained** 18:7

**explicit** 14:6

**explicitly** 17:18

**explore** 41:17

**expressed** 37:11 40:8

**expression** 5:8

**expressly** 22:8

**extent** 17:5 43:8

**f3d** 11:10

**face** 3:25 10:21

**factors** 18:19

**factual** 14:22 15:23 16:18 22:14 23:4 24:3,6 25:21 (8)

**failed** 45:10

**fairs** 38:3

**faith** 9:25

**falls** 32:1

**family** 6:25

**fashion** 42:2

**faults** 43:15

**favor** 10:6 11:4

Proceedings

**federal** 7:9,13 10:3 16:22 34:16 39:14 40:2 48:8 (8)

**fee** 33:21

**fifth** 6:21 8:19

**file** 6:12 29:8 42:13 51:3 (4)

**filing** 27:4

**final** 5:3 12:5 26:18

**finally** 5:12

**findings** 12:6 47:12

**fine** 33:21 46:24

**fines** 27:21,24

**finished** 15:5 30:1

**fires** 34:21

**five** 3:14

**fleck** 11:9

**flow** 39:1 43:18

**focus** 42:4

**focused** 12:19 18:5 27:7

**follow** 40:2 43:20

**follows** 31:25

**foreclosed** 35:20

**foregoing** 43:18 46:18 54:9,10 (4)

**forever** 16:10

**forget** 42:25

**forms** 38:24

**forth** 19:1

**fortunately** 51:19

**forward** 42:5 51:13 52:25

**fossil** 17:24 28:23

**founders** 48:22

**framing** 40:10

**frank** 1:23 2:20

**frankly** 42:8

**free** 4:2 5:7 6:24 16:14 34:20 (5)

**freedom** 5:7 6:23

**freely** 10:4

**friday** 1:14 2:2

**front** 53:7

**frustrating** 46:4,7

**fuel** 17:25

**fuels** 28:23

**full** 49:4 54:11

**fully** 14:7 15:17 20:12

**function** 3:24

**functions** 46:13

**fundamental** 6:1 7:5,14 48:3,17 (5)

**fundamentally** 38:5

**futile** 9:23 14:13 15:13 25:3 45:6 (5)

**futility** 11:15,17,24 13:16 15:15 22:14 23:9 45:6,7,13 (10)

**future** 21:19

**gather** 3:12

**goal** 41:12

**governing** 9:24

**government** 4:1,23 6:15 7:16,19,22 8:8,8 9:1,10 10:7 11:2,24 12:3,11,16 16:6,11,22 17:24 20:9 21:9,12,14 22:22 23:4 24:4 27:4,10,22 28:19 29:1 30:2,5,8 33:1,7 34:16,25 35:1,1,10,14 36:18 39:4,14 40:2,4 44:20 45:23,24 46:1 47:10 48:10 49:18 52:16,20 (57)

**government's** 13:2 23:1 25:19 50:17,19 (5)

**governmentimposed** 6:25

**grandchildren's** 50:14

**grant** 9:16 37:21 52:11

**granted** 10:2 48:7

**grapple** 19:5,22 20:13

**grappling** 22:9

**grateful** 29:18

**gregory** 1:20 2:11,12

**grounds** 43:2 45:6

**guardians** 51:12

**guess** 35:22

**guidance** 36:3,16 39:13

**gun** 48:6

**hampton** 18:6,13

**happiness** 6:23

**happy** 3:4 35:16 46:23

**harm** 16:23 17:6 23:6 25:18 27:24 38:17 44:22 49:7 (8)

**harmed** 50:16

**harms** 28:6 34:2 50:3

**headon** 27:3

**health** 16:23

**hear** 3:4 4:11,12 24:2 35:17 41:8 49:13 (7)

**hearing** 29:14 34:8

**hearings** 19:17 53:5

**held** 22:20 32:24 38:1

**helpful** 29:24 52:22

**history** 7:4

**hold** 3:24 9:21 28:19

**holding** 15:5 33:5

**holdings** 13:20

**homeland** 49:2

**honestly** 53:1

**honor** 2:9,12,15,17,19 3:6,10,20,21 7:24 9:14 12:1 15:11 17:17 19:10,15 21:5 22:4 24:12 26:16,23 27:13 28:8 29:10 30:4,11,17 36:4,6 41:16 46:22,25 47:5 49:15 50:23 51:23 53:18,19 (38)

**honor's** 42:11 43:25

**honorable** 1:13

**hoped** 46:5

**hopeful** 52:23

**host** 37:23

**housekeeping** 50:25

**human** 7:2

**ibrahim** 49:2

**identified** 37:16 44:17

**ignore** 17:17 19:7,24 21:23

23:11 (5)

**ignored** 23:13

**iii** 8:22 13:11,25
14:3 17:22 19:2
20:19 22:11 23:23
28:12 33:2 37:20
44:6 45:17 (14)

**iii's** 32:13

**immediate** 53:15

**immediately** 34:7
53:4

**immensely** 6:9

**impact** 25:18

**impermissible**
37:6

**impinge** 35:3

**implement** 14:4

**implication** 27:5

**implications** 8:14
27:8

**implied** 17:12

**imposed** 27:21

**imposing** 50:3

**imposition** 27:24

**impression** 26:11

**improper** 31:11

**inability** 34:21

**inalienable** 48:19

**inappropriate**
11:7

**includes** 22:6

**including** 43:16

**incredible** 47:6

**incredibly** 31:23

**incurable** 44:16

**indeed** 44:24

**individual**
51:9,14

**individually**
50:16

**ineluctably** 43:18

**inescapable**
31:14

**infringed** 9:1

**infringing** 49:19

**initially** 31:24

**injunction**
31:21,23 32:1
37:11 (4)

**injunctive** 12:25
18:1 24:12 31:5
37:9,14,19
38:6,14,19 45:9,19
(12)

**injured** 16:19,21

**injuries** 7:15,16
17:10 22:19 31:25
33:6,11 37:13,15
47:9,11 50:22 (12)

**injury** 9:9 13:23
20:10,15,17 26:7
27:18,18 28:2,5
(10)

**injustice** 18:12

**inkling** 42:13

**inquiries** 45:18

**insist** 43:8

**insofar** 52:10

**instance** 34:2
40:19 48:2 52:22
(4)

**instead** 10:20
32:11 46:16

**instructed** 44:5

**insurance** 27:22

**integrated** 23:20

**intend** 29:8 45:2

**intends** 10:13

**interested** 40:24

**interesting** 29:20
39:17

**interests** 4:23

**interlocutory**
9:11,23 11:20
12:5 13:3 14:12
15:14 17:12,20
23:14,22 43:4 (12)

**interpret** 13:14

**interpretation**
23:21 42:11

**interpreting**
23:25

**interrupt** 4:8
21:1

**interrupting** 4:17

**intervening**
21:16

**introduce** 2:7

**invade** 4:25

**invaded** 6:15

**invasion** 6:16

**invoked** 5:11

**irrelevant** 27:15

**issue** 8:3 9:7
10:10 14:10
17:18,21,25 18:2,4
19:23 24:15 26:9
30:18 32:5 33:20
(15)

**issued** 4:6 11:11
27:5

**issues** 9:15 12:8
15:5 26:4,11,25
27:15 38:22 41:1
46:1 53:11 (11)

**issuing** 17:15

**job** 35:11 49:13

**judge** 2:25 6:6
7:9 34:25 35:9
53:10 (6)

**judgment** 5:3
9:5,7 10:5,17,18
11:4 12:5 13:10
14:1 17:5,16
18:2,24
19:1,4,9,19,21
20:2,2,4,6,25,25
21:10 22:10,18
23:12,24
25:5,8,12,14,17
26:12 32:5,9,12
34:23 37:5 47:15
52:11 (43)

**judgments** 6:9

**judicial** 46:2,3,5

**judiciary** 8:24
45:21

**julia** 1:19 2:10
3:8

**juliana** 1:4 2:5

**jump** 27:2

**juncture** 13:18

**june** 1:15 2:1
27:5 54:18 (4)

**jurisdiction**
10:23 11:2 12:23
30:22 32:10 44:6
(6)

**jurisdictional**
26:18

**justice** 8:14
28:10 30:15 34:8
(4)

**justices** 4:5

**justify** 18:19

**kavanaugh** 28:10
34:8

**keenly** 53:10

**kelsey** 1:4 6:19

**key** 12:18

**kids** 33:25

**knapp** 1:25
54:4,22

**lack** 10:22 11:1,8
37:10 44:6,12 (6)

**lacked** 10:24

**laid** 39:20 50:20

**lane** 54:2,19

**language** 18:10
20:5 42:15,16 (4)

**latitude** 36:18

**law** 4:7 5:17 7:3 8:16 9:12,24 13:16 14:6 15:6 16:20 18:14,17,24,25 19:6,23 20:23 22:10 23:17,25 24:6 28:3 50:6 51:19 (24)

**lawsuit** 37:18 44:7

**lay** 24:16 26:3

**learn** 3:23

**least** 7:4 13:5 29:9 31:14 37:10 (5)

**leave** 18:7 42:21

**leaves** 44:7

**legal** 7:21 9:4 16:9,11 25:16 (5)

**legally** 10:15

**legislative** 37:25 40:6 45:22

**less** 6:22

**levi** 6:20

**liberally** 10:4

**liberty** 7:5

**lifethreatening** 47:9

**likelihood** 25:13

**limitations** 46:10

**limited** 24:20

**limits** 3:17 7:19

**8:8**

**link** 34:3

**listed** 39:10

**listen** 3:12 27:11

**litigate** 31:9

**litigation** 12:10 23:10

**lobbyists** 48:21

**located** 6:21

**longstanding** 32:8

**looming** 50:10

**loud** 35:22

**love** 3:22

**lower** 24:1 43:25

**magnitude** 26:11

**mahoney** 4:7,19 16:13

**majority** 28:11 48:13

**mandate** 11:11 18:10 24:13 43:21,24 44:1,3,4 45:12,13 46:21 (11)

**mandates** 45:7

**manifest** 18:12

**manifestly** 8:21

**material** 12:8

**materials** 3:2

**matter** 6:9 8:17

**10:22 28:23 54:10** (5)

**matters** 50:25

**maybe** 41:24

**meaningful** 17:5

**mechanisms** 40:25

**medimmune** 19:7,25 25:7 32:15 (4)

**meet** 22:13 23:8

**meeting** 37:5

**mental** 16:23

**merely** 32:25 33:6 44:12

**meritorious** 10:4

**merits** 10:5,17 11:1,3 26:15 42:24 43:16 (7)

**met** 13:23 37:1

**miller** 5:14,17,22,24 7:8 (5)

**minimal** 32:18

**minor** 44:8

**minutes** 3:15

**missed** 29:15

**moment** 13:13

**month** 7:8

**monumental** 8:14

**moot** 33:22

**morning** 2:9,11,14,17,19 3:7 29:10 30:13 53:17 (9)

**mornings** 29:12

**motion** 3:3 8:11,13 9:16 12:2,3 24:21 29:5 43:23 45:5 46:19 (11)

**motions** 12:14 21:20

**move** 3:22 10:4

**moving** 42:5 51:13

**mute** 4:10,14

**nation** 7:5

**nation's** 3:21 8:18 16:4 49:12,23,25 50:1 (7)

**national** 16:25

**nations** 50:11

**nature** 19:16 53:9

**necessarily** 37:23

**necessary** 43:9

**ninth** 8:12 9:11,19,23 10:8,11,14,20 11:9,17,21 12:13,14,18,20,25 13:8,14,19,21 14:11,17 15:14,19 17:13,14,16 18:3,4 22:20 23:22 24:7,10,15,17,22 25:1,2 26:3,4 30:19,20,25

**31:10,13,19,22 33:8,11 34:1 35:5,18 36:15 37:7,9,22 38:23 40:16,17 42:11,12,25 43:11,20 44:4,16 45:10 46:20 47:13 49:1 52:8,12** (72)

**nobody** 33:24 41:24

**nominal** 20:18,23 21:4,6,10 22:6 51:16 (7)

**nonjusticiable** 50:1,4

**noted** 38:23 39:21

**notice** 29:8 51:4

**noting** 31:14 53:2

**number** 2:5

**obligated** 44:1

**obligation** 9:12 35:2 39:10

**obligations** 24:1

**observation** 43:5

**obtain** 13:4 32:25

**obtaining** 19:9 20:1

**obviously** 34:6 51:18 52:17

**officials** 47:25

**olson** 1:19 2:9,10 3:3,6,8,20 4:16,18 15:1,10 19:14,18 21:5 22:4 27:13 30:1,4 47:1,3

51:3,23 52:1 53:18 (24)

**olson's** 39:25

**ongoing** 17:1 21:8 23:6 25:18 26:7 28:6 47:8 50:21 (8)

**open** 14:14 15:16 40:4 42:22,22 (5)

**opening** 13:2,7

**operative** 31:4

**opinion** 9:24 11:17,21,22 13:21 14:12,17,18 15:15 17:12,17,20 18:13 23:22 24:10 26:2 33:1 42:15,16 43:3 44:6 45:16 52:9 53:8,12 (25)

**opinions** 29:12 42:21

**opportunity** 26:21 34:13,14,15 35:9 (5)

**oral** 1:12 2:6 54:9

**order** 7:15 9:16 10:2 14:3 15:19,24 17:23 24:5,20 (9)

**ordered** 25:17 30:19 31:10 42:12 (4)

**ordinary** 12:10

**oregon** 1:2 34:20 50:9 53:10 54:1,5,19 (7)

**organizational** 51:11

**outcome** 8:13

**outside** 12:22 41:17

**overcoming** 26:18

**oversee** 35:9

**paragraph** 16:17,17 22:5

**paragraphs** 16:15,18

**parallel** 41:21,22

**parole** 5:16,19,24

**partial** 13:6 25:14 26:12

**particularly** 18:11 41:24

**parties** 9:15 20:10 25:16 41:6,17 54:14 (6)

**past** 48:11

**pasted** 14:17

**people's** 48:19 49:6

**perceived** 8:12 46:2

**perfectly** 41:25

**perhaps** 21:19 39:21 51:5

**period** 3:19

**permission** 3:15

**permitted** 5:25 10:25

**personal** 6:24 8:5

28:13,14 34:9 (5)

**pertinent** 19:6,23 29:4,8 (4)

**phase** 17:24

**philip** 1:20 2:12

**phone** 4:10,12,15

**physical** 7:23 16:23

**plain** 9:4 20:5

**plaintiff** 26:20 32:25 49:3 51:11,12 (5)

**plaintiffs** 1:6,19 2:8,10,13,16 3:8,11 9:8 10:23 12:2,24 13:1,4,18 14:11 16:2,9,19,21 17:2,6,23 20:7 23:7 28:4,12,14 29:1 30:25 31:5,11,18,23 32:14,18,21 34:2 36:24 37:10 38:4,8,12,15 42:9,13 43:8,13 44:12,22,23,24 45:2 47:7,15 48:3,16 49:9,17 50:16 52:10 (61)

**plaintiffs'** 8:17,19 9:16 10:1 11:13,25 12:21 13:11 14:4,20 15:20 17:10 19:1 22:19 25:22 29:5 32:3 33:6 37:8,12,13,18 43:2 45:15,19 (25)

**plan** 12:22 14:5 17:24 37:23 (4)

**plead** 26:21

**pleading** 26:19 44:13

**please** 2:7 3:7 4:14,17 30:14 (5)

**point** 19:18 27:11,15 33:22 35:6,7 36:23 41:15 42:18 48:12 49:21 52:20 (12)

**points** 23:8 42:24 47:4

**policies** 7:10,16,19 8:8,18 16:5,6,25 21:13 28:21 35:3 38:16 48:14 50:17 (14)

**policy** 4:1 22:23 37:24 38:11,20 49:19,23 50:2 (8)

**political** 8:20 46:6 47:23 48:13 49:18 50:1,4 52:7 (8)

**politics** 48:20

**polls** 47:25 48:4,7,24 (4)

**position** 12:15 41:3

**positions** 51:10

**possibility** 5:16

**possible** 35:7 38:21

**possibly** 29:6

**postmandate** 44:2

**posts** 37:18

**posture** 11:19,20

**postured** 34:4 42:7

**power** 14:3 37:20

**powers** 37:17 38:22 45:24 46:10,11 (5)

**practices** 8:18 16:5,6,25 22:24 28:22 38:17 48:15 50:17 (9)

**prayer** 22:5

**precedent** 23:25 25:7,25

**preczewski** 20:14 26:1

**predominantly** 24:11

**prejudice** 9:20 10:1,10,12,13,16 11:8,14 42:20 43:22 44:9,10 45:1,14 46:20 (15)

**premature** 12:11

**prematurely** 12:17

**prepared** 52:24

**present** 18:18

**presented** 18:14

**presents** 43:2 49:25

**preserved** 46:12

**presumption** 10:6

**pretrial** 12:12,14

**prevailed** 12:3

previously 38:6

primarily 6:12

primary 9:15
32:3

principle 32:9
33:16

principles 46:11

prior 8:11 24:19

problem 15:11
42:1

problemsolving
40:24

procedural
11:19,20

procedure 10:3

proceed 18:20
36:19

process 46:5,6,12

profane 4:4

profound 6:3

prong 13:10
20:19 25:9 37:1
(4)

pronouncement
33:23

proper 23:21
26:13

properly 26:19

propose 31:11

proposed 9:22
14:20 31:6
38:3,15 44:14,18
45:8,8 (9)

proposition
32:17

protect 7:24 8:5
34:17 48:6,24
50:21 (6)

protected 4:25
5:6 6:14,21
48:22,23 (6)

protecting 35:11
39:15 41:5

protection 7:2

protective 49:20

prove 18:22 19:3
22:14 23:8 (4)

provide 13:5
17:22 22:19 28:1
32:10 34:21 (6)

providing 3:11

provision 27:20
32:19,20

psychic 33:12

public 3:9,11
4:24 7:3 38:9 39:8
(6)

pull 52:17

punishment 6:19

purported 10:19

purposes 14:1
45:11

pursuit 6:23

quick 47:4

quickly 51:20

quote 13:22 14:2
17:19 33:12 50:12

(5)

quotes 13:20

raise 31:2 42:24

raises 38:22

ramifications
7:20

ramirez 28:9
29:6

rarely 5:15

ravaged 50:9

reached 41:5

reading 17:16

reaffirmed 32:8

reality 46:4

realization 49:5

reason 12:7,23
27:16 39:22 47:20
(5)

reasons 24:20
26:16 31:18 37:10
46:18 (5)

rebuttal 3:15
26:25

rebutted 10:7

receive 8:2,6

recent 36:2 42:6

recently 20:14

recess 53:17

reconsider 30:21

record 2:8 53:3
54:7

redo 15:9

redress 13:6
17:23 22:19 23:11
28:1 31:25 32:22
33:11 37:12 40:7
50:21 (11)

redressability
12:19 13:10 20:19
25:10,14
26:12,19,21 27:19
31:17 32:2 33:14
45:11 52:12 (14)

redressable
33:4,9 37:19
38:25 (4)

redressed 33:6
40:14

redressing 17:9
49:7

reduce 17:5

refer 40:21

referred 32:14
43:6

regard 38:7,14
42:23

relationship 7:21
16:10

relied 32:16

relief 9:3,6 12:24
13:4,5 14:22
15:22 18:1
20:7,21 21:3 22:5
24:11,12 25:23
26:13 31:6,7,15
33:9 37:9,14,19
38:6,7,12,14,19,24
44:23 45:16,20
47:18 51:16 (34)

relies 11:24

religious 5:8

remains 14:14
15:16

remand 42:14

remedial 12:22
14:5 25:15

remedies 45:10

remedy 21:10,11
32:11 38:21 45:17
(5)

remotely 19:17

remove 49:6
51:11

render 10:17

replead 35:19

reply 13:7

report 50:11
52:18,19

reported 1:25
54:8,12

reporter 4:13
54:5

representative
46:17

representatives
38:2

request 12:21
15:22 25:22 37:8
42:9 45:15,19,20
51:16 (9)

requested 14:4
54:14

requests 14:21
26:20

Proceedings

**require** 37:23

**required** 47:19 49:4

**requirement** 13:23,25 31:17 32:13 33:14 (5)

**requirements** 37:6

**requires** 34:9 46:21

**requiring** 15:24 17:23 46:2

**rescinded** 21:12

**research** 36:10

**reserve** 3:14 30:5

**resolution** 11:1,3 29:5 41:23 46:1,2,3 (7)

**resolve** 9:16 12:9,15 31:20 (4)

**resolved** 16:8 26:14

**resources** 7:3 34:22 35:12 39:9 (4)

**respect** 14:10,19 15:12 16:13 22:14 25:10 41:16 (7)

**respectfully** 26:20

**respond** 3:18 20:22 26:24 36:23 51:4 (5)

**rest** 24:16 26:4

**result** 18:11 45:13

**resulted** 14:8

**return** 31:9

**review** 12:12 54:15

**reviewed** 3:2

**rights** 3:24,25 4:20,22,25 5:2,9,11,20 6:1,7,14,19,23 7:6,14,17,18,25 8:7,25 9:1 16:14,14 19:20 20:8 22:25 23:19 28:20 33:3 38:9 39:5,15 40:7 41:4,5 47:16 48:6,9,19,23 49:5,6,14,15,19 50:19,21 (48)

**risk** 16:23

**risks** 23:6

**road** 35:15

**roadblock** 49:7

**roadblocks** 49:4

**rodgers** 1:21 2:14,15

**room** 44:7

**root** 45:15

**rooted** 7:4

**roper** 5:10

**rose** 1:4

**routine** 8:10,13

**rprcsr** 1:25

**rule** 9:13 10:3 18:16,21 24:13,24

43:24 45:12 (8)

**ruling** 13:14 17:12 20:23 33:10 53:15 (5)

**rulings** 47:12

**running** 35:1

**satisfaction** 33:13

**satisfied** 14:1 41:25

**satisfy** 31:16 32:12 33:14

**satisfying** 32:2

**saved** 18:8 44:11

**saving** 21:19

**saying** 42:22 49:23 52:10

**scholar** 33:19

**schools** 4:24

**scope** 26:13

**sean** 1:22 2:18 30:14

**season** 50:10

**section** 38:10 43:5

**secure** 48:24

**security** 6:24 7:23 8:5 49:2 (4)

**seek** 7:6 8:24 12:24 17:23 31:6 32:1,4 37:20 38:5,8,13,15,18 44:24 (14)

**seeks** 6:12 45:9,16,20 (4)

**selfdefense** 7:25

**selfpreservation** 8:9

**sentenced** 5:13,15

**separated** 45:23

**separation** 37:17 38:22

**separations** 46:11

**september** 54:24

**served** 8:15

**serving** 5:20

**sets** 19:8,25 21:20 25:7 (4)

**setting** 23:25

**settlement** 40:21,22,22 41:16,17,23 (6)

**severe** 37:17 38:22

**shadow** 41:17

**shall** 41:4 42:8

**shorter** 32:2

**shorthand** 54:5

**sidestep** 23:15

**signature** 54:21

**significant** 7:20 23:6 36:14

**silence** 23:7

**silent** 14:12 15:14 24:15 25:1, 2,4,6,9,13,15,20,2 4 (12)

**simmons** 5:10

**simple** 27:16

**simply** 33:22

**singer** 1:23 2:19,20

**situation** 41:12 47:19

**six** 23:10 47:6,14 50:15 (4)

**skeptical** 31:22

**sliced** 37:2

**snapchat** 4:3

**solely** 48:12

**solutions** 41:5

**solve** 49:4

**sophisticated** 40:16

**sorry** 15:1 19:10

**sort** 21:23

**sought** 23:11 31:5,24 32:18 38:6 46:8 (6)

**source** 34:19 39:6,7,11 (4)

**southern** 7:9

**speak** 3:22

**speaking** 4:9,15

**specific** 12:21

13:20

**specifically** 16:2
18:12

**speech** 4:3,4 5:7
6:18 16:14 (5)

**spirit** 10:3 44:3

**spoken** 52:13

**squarely** 18:25

**ss** 54:1

**staff** 3:10

**stage** 11:21 19:5

**stake** 28:13,14
34:9 39:5 (4)

**stand** 3:16

**standalone** 32:4

**standard** 19:8
20:1 25:8

**standards** 43:4

**standing** 7:14
8:1,6 10:20,24
11:9 12:6
13:1,11,17 14:7
19:2 20:4,19
22:11 26:14
28:7,9 30:22
31:16,17 32:25
33:13
37:1,4,5,5,10 43:6
44:12,16 45:11
48:8 (33)

**stands** 10:9

**start** 15:7 19:12

**started** 4:11

**state** 5:5 49:10
53:6 54:1,5,19 (6)

**stated** 24:20

**states** 1:1,8
2:6,20 5:18 30:15
38:21 46:8 (8)

**status** 9:4 16:9,11
25:16 (4)

**steen** 18:6

**step** 15:2

**stepping** 39:14

**stop** 16:7 37:14
49:18

**straight** 30:17

**strenuously** 27:9

**striking** 43:1

**strongly** 39:24
40:1,3

**student's** 4:19

**subject** 8:17
10:22

**submission** 29:24

**submit** 51:7

**submitted** 3:2

**substantial** 17:9
43:2 47:11

**substantially**
31:24 37:12

**suffice** 20:4
31:22

**sufficed** 13:10

**sufficient** 19:2
47:10

**sufficiently** 28:15

**suggest** 14:16

**suggesting** 21:18

**sum** 45:12

**summarized**
51:20

**summary** 10:18
11:4 14:1 29:16
(4)

**summer** 50:8,9

**supervise** 14:4

**supplement**
51:18,22

**supplemental**
29:9 36:6,9 51:4
53:14 (5)

**supports** 11:10

**supreme** 4:5,6
5:5,11,23 19:7,25
20:22 21:17,22,24
22:12 23:17,24
24:7 25:6,25
27:5,17,25 29:21
31:3 32:8,15,24
33:15 36:1,13
37:2 42:6
43:1,6,11 (33)

**surprising** 13:8

**survival** 48:18

**suspect** 39:24
40:1,3

**sustain** 39:7

**sustains** 7:2

**sworn** 54:6

**system** 7:1
8:18,20 16:5
17:1,3,8 23:2

28:21 38:8 45:25
47:23 48:1,11
49:12,25 52:7 (17)

**table** 40:23 41:11

**takeaways** 31:14

**technical** 3:17

**temperatures**
50:8

**ten** 3:14

**term** 5:23 22:12
28:7

**terms** 35:5
41:9,10 44:1 (4)

**testimony** 37:14
54:7,8

**texas** 27:6,14,17
29:4 32:7,16,17
33:16 36:24 46:8
51:5 (11)

**text** 9:4

**thank** 2:21,25
3:1,6,10,20 4:18
22:4 29:11,23
30:5 46:24,25
47:3 51:2,25 52:1
53:16,17,18,19
(21)

**theoretical** 45:18

**thereof** 50:19

**third** 14:2

**thoroughly** 26:13

**thoughts** 27:10

**threat** 27:24

**threatening** 8:9

**threats** 4:1 50:10

**threshold** 26:18

**throughout** 23:9
28:24

**thrown** 35:24

**tie** 33:24

**ties** 47:21

**today** 3:9 6:11
8:4 28:8 30:18
34:5 35:22,23
36:5 48:11 51:19
52:24 53:12 (13)

**touch** 51:18

**track** 41:21,22

**trajectory** 6:5

**transcript** 36:10
53:13
54:6,10,12,15 (6)

**transunion** 28:9
29:6,9

**treats** 24:10

**trial** 10:5 12:9
26:14 31:9 39:23
40:11 (6)

**tros** 53:6

**true** 14:23,25
15:23 54:7,11 (5)

**truly** 49:17 50:20

**trust** 7:3 38:10

**turn** 9:13 30:1

**turning** 10:10
37:7

**type** 10:12 32:11

| | | | |
|---|---|---|---|
| **types** 44:22 | **vaguer** 32:1 | **weekend** 50:8 | **1052** 10:9 |
| **ultimately** 43:13,15 | **vantage** 35:6,7 | **welcome** 30:7 | **1106** 11:10 |
| **un** 52:17 | **various** 41:6 | **west** 5:4 | **1114** 22:21 |
| **unanimously** 11:5 | **veneman** 22:21 | **wildfire** 50:10 | **1164** 17:19 |
| | **venue** 31:2 | **wildfires** 34:21 | **1168** 13:23 |
| **unconstitutional** 7:10 16:5 17:3 32:20 33:2,8 38:11 (7) | **via** 7:25 | **wisdom** 37:24 | **1169** 14:1 |
| | **vicious** 50:10 | **wish** 3:5 | **1171** 14:5 |
| **unfettered** 49:24 | **view** 10:23 24:1 43:12 | **won** 12:2 | **1954** 23:17 |
| **unintelligible** 22:24 | **vindicate** 43:9 | **won't** 31:22 | **2005** 5:10 |
| | **violated** 48:3 | **worsening** 23:6 25:18 | **2012** 5:14 |
| **united** 1:1,8 2:6,20 30:14 38:21 50:11 (7) | **violates** 38:9 | **worship** 3:22 | **2021** 1:15 2:1 54:18 |
| **unjust** 8:21 | **violation** 16:7 21:14 23:2 26:6 50:19 (5) | **worst** 50:12 52:18 | **2023** 54:24 |
| **unjustly** 4:24 | | **worth** 31:14 | **2201** 25:5 |
| **unless** 26:23 50:23 | **violations** 23:5 49:15 51:14 | **wrestle** 24:13 | **151517** 2:5 |
| **unlike** 11:23 | **virginia** 5:4 | **wrong** 24:23 26:8 | **930262** 54:23 |
| **unquestionably** 43:25 | **visavis** 16:10 | **wrongdoing** 20:8 | |
| **unreviewable** 28:22 | **vital** 6:22 49:6 | **young** 5:12 6:10 8:4 28:19 35:24 40:8 47:24 48:19 (8) | |
| **unsuccessful** 45:3 | **vote** 3:22 48:1,20 | | |
| **unusual** 6:19 | **wait** 26:24 | **youngest** 6:20 | |
| **usc** 25:5 | **walk** 8:1 11:17 24:25 | **youth** 6:20 8:24 9:4 46:14 (4) | |
| **uzuegbunam** 20:13 21:15 | **watching** 33:20 | **201** 38:10 | |
| **uzuegbunum** 25:25 | **weapon** 7:7 | **212** 16:17 | |
| **vacuum** 33:4 | **weapons** 7:12 8:1 | **471** 11:10 | |
| | **wednesday** 4:4 | **993** 49:3 | |
| | **week** 29:7 32:7 | **1000** 1:16 2:3 | |