JULIA A. OLSON (OR Bar 062230)
julia@ourchildrenstrust.org
Our Children's Trust
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

ANDREA K. RODGERS (OR Bar 041029)
andrea@ourchildrenstrust.org
Our Children's Trust
3026 NW Esplanade
Seattle, WA 98117
Tel: (206) 696-2851

PHILIP L. GREGORY (*pro hac vice*)
pgregory@gregorylawgroup.com
Gregory Law Group
1250 Godetia Drive
Redwood City, CA 94062
Tel: (650) 278-2957

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**; **XIUHTEZCATL TONATIUH M.**, through his Guardian Tamara Roske-Martinez; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>The **UNITED STATES OF AMERICA**; et al.,<br><br>Defendants. | Case No.: 6:15-cv-01517-AA<br><br>**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND AND FILE SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND AND FILE SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

INTRODUCTION

As requested by this Court during oral argument on June 25, 2021,[1] Plaintiffs hereby submit this Notice of Supplemental Authorities in support of Plaintiffs' Motion for Leave to Amend and File Second Amended Complaint for Declaratory and Injunctive Relief to address recent decisions of the United States Supreme Court: *TransUnion LLC v. Ramirez*, 594 U.S. __ (2021), No. 20-297, 2021 WL 2599472 (June 25, 2021), and *California v. Texas*, 593 U.S. __ (2021), No. 19-840, 2021 WL 2459255 (June 17, 2021), both of which address Article III standing; *Mahoney Area School Dist. v. B.L.*, 594 U.S. __ (2021), No. 20-255, 2021 WL 2557069 (June 23, 2021), regarding the efficacy of constitutional protection through declaratory judgment; and *United States v. Arthrex*, 141 S.Ct. 1970 (2021), demonstrating the court's flexibility in fashioning a remedy for a constitutional violation.[2]

SUPPLEMENTAL AUTHORITIES

***TransUnion LLC v. Ramirez***

In *TransUnion LLC v. Ramirez*, the Supreme Court considered whether a class of 8,185 individuals had Article III standing to pursue claims that TransUnion violated the Fair Credit Reporting Act. 2021 WL 2599472 at *3. Justice Kavanaugh, writing for the majority, began by

---

[1] Transcript of Oral Argument at 36, 53, *Juliana v. United States*, No. 6:15-cv-01517-AA (June 25, 2021). Citations to page numbers are to slip opinions where Westlaw pin cites are unavailable.
[2] At oral argument, Plaintiffs also referenced *Miller v. Bonta*, 19-cv-01537-BEN-JLB, slip op. 92-93 (S.D. Cal. June 4, 2021), stayed by No. 21-55608, 2021 WL 2659807 (9th Cir. June 21, 2021), where a district court declared that policies banning assault weapons were unconstitutional because "[a]s *Heller* explains, the Second Amendment takes certain policy choices and removes them beyond the realm of permissible state action," in order to protect citizen's rights of self-preservation. Wrongly or rightly decided, the principle that the Constitution's protection of fundamental rights takes certain policy choices and removes them from permissible governmental action is central to our constitutional democracy and Article III review here.

PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITIES IN SUPPORT OF      1
PLAINTIFFS' MOTION FOR LEAVE TO AMEND AND FILED SECOND AMENDED
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

stating the well-accepted proposition that, "Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *Id.* at *6. The Court continued:

> For there to be a case or controversy under Article III, the plaintiff must have a "'personal stake'" in the case—in other words, standing. *Raines*, 521 U.S. at 819. To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: **"'What's it to you?'"** Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983).

*Id*. (emphasis added). Quoting then-Judge Barrett, the Court added, "'Article III grants federal courts the power to redress harms that defendants cause plaintiffs . . . .'" *Id.* at *8 (*quoting Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (Barrett, J.)).

The Court then held that 1,853 class members who had their misleading credit reports disseminated to third parties had standing because they suffered concrete reputational harms, while the 6,332 class members whose credit reports had not been sent to third parties had not suffered concrete harms as they incurred no reputational damage. *Id.* at *3, *11.

Here, Plaintiffs have standing to pursue their constitutional claims because Plaintiffs' original allegations of injuries, which the Ninth Circuit found are concrete and ongoing,[3] combined with their new allegations in their Proposed Second Amended Complaint, clearly demonstrate their "personal stake" in this case and compellingly answer the question, "What's it to you?" For example, Plaintiffs allege:

> Youth Plaintiffs are actually harmed in uniquely individual and particularized ways by Defendants' fossil fuel energy policies and practices that make up the national energy system. Youth Plaintiffs are actually harmed physically by the national energy system. Youth Plaintiffs are actually harmed psychologically, mentally, and emotionally by the national energy system.

Proposed Second Am. Compl. at ¶ 95-A.

---

[3] *Juliana v. United States*, 947 F.3d 1159, 1167-68 (9th Cir. 2020) (holding plaintiffs had met their burden to establish concrete and particularized injury in fact).

> Declaratory judgment in Youth Plaintiffs' favor would be substantially likely to stop the United States' hastening of the environmental apocalypse that locks in irreversible injuries to Plaintiffs.

*Id*.

> If the national energy system is not declared unconstitutional, Youth Plaintiffs will disproportionately and irrevocably suffer from the worsening physical and mental health harms caused by the national energy system and the hastening irreversibility of them. If the energy system is not declared unconstitutional, the energy system will inflict additional irreversible and catastrophic harm on these young Plaintiffs. If the energy system is declared unconstitutional, on information and belief, Defendants will take corrective action and change and/or cease the policies and practices that make the national energy system unconstitutional.

*Id.* at ¶ 95-B.

> Until the Court resolves this constitutional controversy, these young Plaintiffs will continue to be harmed and put at extreme risk by Defendants' energy system and Defendants will continue policies and practice, made up of many aggregate actions, to perpetuate an unconstitutional energy system. . . .

*Id.* at ¶ 12.

> Without declaratory relief in the first instance, Defendants will be free to, and will, continue its policies and practices that make the nation's energy system in a manner that "may hasten an environmental apocalypse" and carry out "the Nation's willful destruction." Declaratory judgment will eliminate the current and substantial legal controversy and inform the parties of the unlawfulness or lawfulness of the government's conduct, especially as to whether Defendants' conduct causes a deprivation of rights secured by the Constitution.

*Id.* at ¶ 276-A.

Given these 21 Plaintiffs' profound "personal stake" in this case, this Court can exercise its Article III "power to redress harms that defendants cause plaintiffs . . . .'" *TransUnion LLC*, 2021 WL 2599472 at *8 (*quoting Casillas*, 926 F.3d at 332). Based on the allegations in the Second Amended Complaint and the law of the case, this Court is presented with and "may resolve" "a real controversy with real impact on real persons." *TransUnion LLC*, 2021 WL 2599472 at *7 (quoting *American Legion v. American Humanist Assn.*, 588 U. S. \_\_\_, \_\_\_, 139 S. Ct. 2067, 2103

(2019) (GORSUCH, J., concurring in judgment). In contrast to the 6,332 class members who could have, but did not suffer cognizable, only hypothetical, harm, these youth have already suffered dangerous harm to their personal health and security and more harm is on the way, as demonstrated by the "record smashing" climate change-induced extreme heat plaguing several plaintiffs in the Pacific Northwest.[4]

***California v. Texas***

In another recent standing decision, *California v. Texas*, Justice Breyer, writing for the majority, held that two individuals and 17 states lacked standing to challenge the Patient Protection and Affordable Care Act (the "Affordable Care Act"). 593 U.S. __ (2021), No. 19-840, 2021 WL 2459255 at *3 (June 17, 2021). With respect to the standing allegations of the two individual plaintiffs, the Court assumed that their "pocketbook injury" due to the purchase of health insurance to comply §5000A(a) of the Affordable Care Act was adequate for purposes of standing, but held that the injuries were not fairly traceable to §5000A(a). *Id.* at *4. According to the Court, the

---

[4] This Court can take judicial notice of the National Oceanic and Atmospheric Administration's June 30, 2021 report of "Astounding heat obliterates all-time records across the Pacific Northwest and Western Canada in June 2021." *See* https://www.climate.gov/news-features/event-tracker/astounding-heat-obliterates-all-time-records-across-pacific-northwest. As referenced at oral argument, it has recently been reported that a draft report from the Intergovernmental Panel on Climate Change ("IPCC") warns: "The worst is yet to come, affecting our children's and grandchildren's lives much more than our own." https://phys.org/news/2021-06-climate-impacts-sooner.html; https://www.theguardian.com/environment/2021/jun/23/climate-change-dangerous-thresholds-un-report; https://grist.org/science/leaked-un-report-warns-of-climate-tipping-points/. The report recognizes the systemic nature of the climate crisis and states that "[l]ife on Earth can recover from a drastic climate shift by evolving into new species and creating new ecosystems. Humans cannot." https://phys.org/news/2021-06-climate-impacts-sooner.html. The report notes that "[e]ven at 1.5 degrees Celsius of warming, conditions will change beyond many organisms' ability to adapt" and that "[c]urrent levels of adaptation will be inadequate to respond to future climate risks." https://phys.org/news/2021-06-climate-impacts-sooner.html. While the report is not yet publicly available, this Court can take judicial notice of its existence as it has been reported in the press and is generally known to the public within the Court's jurisdiction. *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458-59 (9th Cir. 1995).

plaintiffs' injuries were not caused by the challenged statutory provision or any government action because there is no penalty that the IRS can impose if individuals fail to obtain insurance. *Id*. "Because of this, there is no possible Government action that is causally connected to the plaintiffs' injury—the costs of purchasing health insurance. . . . In a word, [plaintiffs] have not shown that any kind of Government action or conduct has caused or will cause the injury they attribute to §5000A(a)." *Id*. An unenforceable statutory provision, absent any actual or threatened government action, cannot satisfy the "fairly traceable" causation requirement. *Id.* at *5.

The Court added a redressability analysis to support its causation holding. According to the Court, "[t]o determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *Id.* at *5 (*quoting Allen v. Wright*, 468 U.S. 737, 753. n.19 (1984)). In considering the appropriateness of the declaratory judgment remedy as to the constitutionality of §5000A(a), the Court noted that:

> The Declaratory Judgment Act, 28 U.S.C. §2201, alone does not provide a court with jurisdiction. . . . Instead, just like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement. . . . At a minimum, this means that the dispute must "be 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, **as distinguished from an opinion advising what the law would be upon a hypothetical state of facts**.'"

*Id.* at *6 (internal citations omitted; emphasis added).

In considering the specific relief plaintiffs sought in *California*, the Court observed the only relief plaintiffs were seeking with regard to §5000A(a) was declaratory relief as to its constitutionality. *Id*. However, because §5000A(a) was not responsible for causing plaintiffs' injuries, "[t]o find standing here to attack ***an unenforceable statutory provision*** would allow a federal court to issue what would amount to 'an advisory opinion without the possibility of any judicial relief.' . . . It would threaten to grant unelected judges a general authority to conduct

oversight of decisions of the elected branches of Government." *Id.* (*citing Los Angeles* v. *Lyons*, 461 U.S. 95, 129 (1983) (Marshall, J., dissenting)) (emphasis added).

In contrast to *California,* here, Plaintiffs do not challenge "an unenforceable statutory provision" or present a hypothetical controversy, but rather challenge "Defendants' fossil fuel energy policies and practices that make up the national energy system." Proposed Second Am. Compl. at ¶ 95-A. The conduct challenged here is "causing Plaintiffs' ongoing injuries" and, unless declared unconstitutional, "Defendants will be free to continue to operate the national energy system to cause harmful GHG emissions in an unconstitutional manner." *Id.* at ¶ 95-C. Importantly, unlike in *California*, Plaintiffs have established "Government action that is causally connected to the plaintiffs' injury." *California*, 2021 WL 2459255 at *4; *Juliana*, 947 F.3d at 1169 ("The causal chain here is sufficiently established.").

Because Plaintiffs have established the injury and causation prongs of standing, the Supreme Court's language in *California* as to the appropriateness of declaratory judgment for an unenforceable statutory provision in inapposite. As such, the ongoing legal controversy as to the constitutionality of the U.S. energy system is "real and substantial" and the relief Plaintiffs seek, a declaration that the United States' national energy system violates their constitutional rights, in addition to the other relief sought, would provide "specific relief through a decree of a conclusive character," not an advisory opinion based upon hypothetical facts. *California*, 2021 WL 2459255 at *6; Proposed Second Am. Compl., Prayer for Relief 1-4, 6; *see also id.* at ¶ 95-D ("[D]eclaratory judgment will have immediate practical consequences and will be substantially likely to provide meaningful redress because upon information and belief Defendants will abide by any declaratory judgment order and bring the national energy system into constitutional compliance.").

*Mahoney Area School District v. B.L.*

In *Mahoney Area School District v. B.L.,* "[t]he school district filed a petition for certiorari in [the Supreme] Court, asking [it] to decide '[w]hether [*Tinker*], which holds that public school officials may regulate speech that would materially and substantially disrupt the work and discipline of the school, applies to student speech that occurs off campus.'" 141 S. Ct. 2038, slip op. at 4 (2021). The Court declared "that the school violated B.L.'s First Amendment rights" and affirmed the judgment below, noting the "fundamental societal values" that are implicated in protecting First Amendment rights, even in a case where the injured student was in college and no longer attending Mahoney's schools. *Id.* at 11. *Mahoney* demonstrates that declaring the infringement of young people's constitutional rights and setting limits on government policies or acts that infringe those rights is a vital function of Article III courts where a plaintiff has suffered an actual injury.

*United States v. Arthrex, Inc.*

After holding that the Appointments Clause of the Constitution had been violated through a statutory structure allowing Administrative Patent Judges to adjudicate public rights of private parties without executive review or removal authority, the Supreme Court analyzed an appropriate remedy for the constitutional violation. *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, slip op. at 19-23 (2021). In responding to the argument on remedy that a "more tailored declaration of unconstitutionality would necessitate a policy decision best left to Congress in the first instance," the Court rejected that limitation on its remedial powers and used its Article III authority to create a tailored approach to the otherwise unconstitutional statutory scheme. *Id.* at 19-20 (recognizing the need to give "'full effect' to the Constitution").

## CONCLUSION

Taken together, *TransUnion, California*, and *Mahoney* affirm that Plaintiffs' Proposed Second Amended Complaint properly alleges Article III standing and that this Court "may resolve" "a real controversy with real impact on real persons" through declaratory judgment in the first instance. *TransUnion LLC*, 2021 WL 2599472 at 7 (quoting *American Legion*, 139 S. Ct. at 2103 (GORSUCH, J., concurring in judgment). Where the law of the case is that plaintiffs have adequately alleged cognizable injuries, caused by government conduct – as they have here – "Article III grants federal courts the power to redress harms that defendants cause plaintiffs . . . .'" *Id.* at *8 (*quoting Casillas*, 926 F.3d at 332). And in fashioning remedies for unconstitutional government action, *Arthrex* makes clear federal courts have latitude to tailor remedies to fit the scope of the violation and give "full effect" to the Constitution. Slip. op. at 20.

Respectfully submitted this 1st day of July, 2021.

*/s/ Julia A. Olson*
JULIA A. OLSON (OR Bar 062230)
julia@ourchildrenstrust.org

PHILIP L. GREGORY (*pro hac vice*)
pgregory@gregorylawgroup.com

ANDREA K. RODGERS (OR Bar 041029)
andrea@ourchildrenstrust.org

*Attorneys for Plaintiffs*
