STEVE MARSHALL
*Attorney General of Alabama*

Edmund G. LaCour Jr. (AL Bar No. 9182-U81L)
*Solicitor General*

Thomas A. Wilson (AL Bar No. 1494-D25C)
*Deputy Solicitor General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Ave.
Montgomery, AL 36130
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov

*Counsel for Proposed Defendant-Intervenor
State of Alabama*

[*additional counsel listed on
signature page*]

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**, *et al.*, Plaintiffs, | Case No. 6:15-cv-01517-AA |
| v. | |
| **UNITED STATES OF AMERICA**, *et al.*, Defendants. | **PROPOSED DEFENDANT-INTER-VENORS STATES OF ALABAMA, ALASKA, ARKANSAS, GEORGIA, INDIANA, KANSAS, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NORTH DAKOTA, OHIO, OKLAHOMA, SOUTH CAROLINA, TEXAS, UTAH, AND WEST VIRGINIA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LIMITED INTERVENTION.**<br><br>**(ECF Nos. 475, 508, 509)** |

## INTRODUCTION

Plaintiffs' response to the States'[1] Motion for Limited Intervention (Doc. 475) confirms that through their ongoing settlement negotiations with Defendants, Plaintiffs seek "a fundamental transformation of this country's energy system." *Juliana v. United States*, 947 F.3d 1159, 1171 (9th Cir. 2020).[2] And any such "transformation" would, of course, affect the States. The States thus have an interest in participating in these negotiations, objecting to any potential settlement of Plaintiffs' claims, and seeking the denial of Plaintiffs' motion for leave to amend and file a second amended complaint.

## ARGUMENT

### I.    Plaintiffs' Threshold Arguments Fail.

Plaintiffs present three threshold reasons why the States' Motion should be denied: (A) a quasi-jurisdictional bar based on the States' sovereign immunity; (B) mootness; and (C) standing. None of these arguments succeeds.

### A.    The States May Intervene for a Limited Purpose Without Waiving Their Sovereign Immunity.

Throughout their Response, Plaintiffs assert that "this Court cannot entertain [the States'] motion under Rule 24 because [the States] have not waived sovereign immunity." Doc. 508 at 10; *see also id.* at 10-13; *id.* 15, 18, 31. But this would not be the first case in which a State has retained

---

[1] The term "States" refers to the States of Alabama, Alaska, Arkansas, Georgia, Indiana, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, Texas, Utah, and West Virginia. Doc. 475 at 6; Doc. 499.

[2] The States again note their special, limited appearance solely for purposes of opposing Plaintiffs' motion for leave to amend and file a second amended complaint (Doc. 462); participating in settlement negotiations; and, if necessary, objecting to any proposed settlement. Neither this brief nor any preceding or subsequent appearance, pleading, document, writing, objection, or conduct should be construed to constitute a waiver of any rights, protections, or immunities, including, without limitation, sovereign immunity. The States expressly reserve their sovereign immunity.

its sovereign immunity while seeking to protect its interests through narrow, limited arguments. Rather, courts have repeatedly recognized that States may expressly retain their sovereign immunity when entering litigation for limited purposes. *See, e.g.*, *Georgia v. Jesup*, 106 U.S. 458, 462-63 (1882) (holding State of Georgia retained sovereign immunity despite appearing in lawsuit to challenge lower court's jurisdiction). This principle applies to intervention. *See, e.g.*, *Missouri v. Fiske*, 290 U.S. 18, 25 (1933) (State of Missouri's motion "for leave to intervene as 'a party defendant'" only seeking "temporary impounding" of property "was too limited in character to constitute a waiver of the immunity given by the amendment" because relief sought "was 'in no sense a matter of right, but rather partakes of grace'"). The Fifth Circuit's decision in *Faulk v. Union Pacific Railroad Co.* is instructive. 449 F. App'x 357 (5th Cir. 2011). There, the State of Louisiana voluntarily intervened in a lawsuit between private landowners and Union Pacific Railroad Company for the limited purpose of "defend[ing] against Union Pacific's challenge to the constitutionality of [a Louisiana state statute]." *Id.* at 363. Just as the States have done here, "in its motion to intervene and its intervenor complaint, the State expressly reserved its immunity." *Id.*; *see also id.* ("Louisiana has made it clear that it 'does [not] intend to become ... a party to this litigation for the purposes of any damages,' and that it 'merely intervenes herein for the express purposes of being heard on the challenged constitutionality of [the statute].'"). Nevertheless, the district court granted the State's motion.

Thus the relevant inquiry is not simply whether the States retain or relinquish their immunity, but the extent to which the States seek to intervene. Plaintiffs therefore contend that the States seek to intervene not for the limited purposes they described but "to litigate the claims and defenses of the parties in this federal action." Doc. 508 at 12. Plaintiffs assert that the States have "already demonstrated" this intent because their "alleged interests regarding the nation's energy

policies … go precisely to the merits of Plaintiffs' claims, and their asserted interest in only Article III standing and justiciability makes little sense since none of their alleged harms is linked to their jurisdictional arguments." *Id.* at 13. This argument, however, confuses the limited issue the States have raised—whether this Court has jurisdiction to consider Plaintiffs' claims—with the consequences that could flow from a court order granting relief on those claims. The States' "alleged harms" flowing from this case's continuation and potential disposition straightforwardly "link[]" to" "Article III standing and justiciability" because if this case is finally dismissed as not justiciable, the litigation will no longer pose a risk to the States' interests in the nation's energy policies. But it is the States' limited appearance and argument, not the States' broader interests in the outcome of the case, that determine the scope of the States' intervention.[3]

Because the States seek only limited intervention for the narrow purpose of contesting this Court's jurisdiction, they may intervene and make these arguments without waiving sovereign immunity. *See Fiske*, 290 U.S. at 25; *Faulk*, 449 F. App'x at 363.

## B.    The States' Motion for Limited Intervention Is Not Moot.

Plaintiffs also contend that "the ability of [the States] to intervene became moot when the briefing and oral argument of Defendants extinguished the concerns raised by [the States]." Doc.

---

[3] Plaintiffs assert that the "States have shown they will wade into the claims and defenses of this case, and even misrepresent what has been decided thus far" based on the States' assertion that there is "no case or controversy." Doc. 508 at 13 n.5. But the no-case-or-controversy point neither touches on the merits of Plaintiffs' claims nor misrepresents the Ninth Circuit's holding. It is merely a reference to that court's holding that Plaintiffs "lack … Article III standing." *Juliana*, 947 F.3d at 1175; *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (explaining that the judicial "power extends only to 'Cases' and 'Controversies,' Art. III, § 2"). Plaintiffs declare "there is a case or controversy" because "there is injury and causation and an alleged constitutional violation," Doc. 508 at 13 n.5, but that assertion fails because it omits the critical third prong of standing: that the injury "is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547.

508 at 13-14. But this argument rests on a misunderstanding of both the States' position and the doctrine of mootness.

The States seek to intervene because this case requires dismissal for lack of jurisdiction and because Defendants have shown "apparent willingness to consider settlement of nonviable claims," Doc. 475 at 21—indeed, non-justiciable claims—thus posing a threat to the States' interests. The States made clear in their Motion that their qualms lay not with Defendants' briefing or public litigation positions, *see id.*, but rather with the case's continuation amidst the threat of collusive settlement. That Defendants have publicly (and correctly) maintained that this case is non-justiciable hardly moots the States' Motion where the litigation and threat of collusion continue.

Indeed, the revelation that the parties' "[n]egotiations" remain "ongoing," Doc. 501—despite Defendants' public assertion that there is no case or controversy to settle, *see* Doc. 498 at 4—underscores that the States were right to worry in the first place. These recent events have only strengthened the States' claims. That Defendants continue to negotiate suggests that they have failed to push their public position in private negotiations despite this Court's invitation to do so. *See* Doc. 472 at 6 (Court suggesting to parties that "if one or the other of you say, 'We will not negotiate,' you can tell [the Court-appointed settlement-conference judge] that").

This apparent willingness to continue negotiating settlement in a non-justiciable dispute undermines Plaintiffs' contention that the States' limited intervention would only "belatedly echo the arguments of Defendants" and "add nothing of substance." Doc. 508 at 15. To the contrary, the States can ensure that Defendants' public position will appear in the parties' private

negotiations. The result of the parties' first round of settlement negotiations has further substanti-

ated the States' concerns.[4]

### C.    Article III's Standing Requirement Presents No Obstacle to the States' Intervention.

Last among their threshold arguments, Plaintiffs complain that the States cannot seek limited intervention because they "have not demonstrated they have Article III standing to intervene as a party-defendant to seek appellate review of any interlocutory order." Doc. 508 at 15. But as the States made clear, they "seek to intervene for the limited purposes of opposing Plaintiffs' motion for leave to amend and file a second amended complaint …; participating in settlement negotiations; and, if necessary, objecting to any proposed settlement." Doc. 475 at 6. That the States are prepared to appeal is irrelevant to the inquiry whether they have standing to intervene here.

In *Town of Chester v. Laroe Estates, Inc.*, the Supreme Court expressly addressed the question, "Must a litigant possess Article III standing in order to intervene of right under Federal Rule of Civil Procedure 24(a)(2)?" 137 S. Ct. 1645, 1648 (2017). The answer is "sometimes": "[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Id.* at 1651. Both Plaintiffs and Defendants have explained that the States and Defendants each seek dismissal in this case. *See* Doc. 508 at 26; Doc. 498 at 9. The States agree with this point, as far as it goes.[5] Because all parties agree the States

---

[4] Defendants' decision to continue settlement negotiations was noted repeatedly in the States' reply to Defendants' response brief. *See* Doc. 506 (the "Government Reply") at 2, 3, 8, 9, 11, 13-14. Despite Plaintiffs having responded to several of the Government Reply's points in their response, *see* Doc. 508 at 6 n.1, 11, 13, Plaintiffs' mootness argument does not address the ongoing nature of their negotiations with Defendants.

[5] As the States explained in their Government Reply, however, "similar litigation preferences do not demonstrate convergent goals" under Rule 24's adequacy-of-representation prong. Doc. 506 at 7. Indeed, *Town of Chester* reaffirms this point, for it expressly contemplates intervenors who pursue the same "relief" as an existing party yet have nevertheless proven, pursuant to Rule 24, that the existing party will not adequately represent its interests. 137 S. Ct. at 1651.

pursue the same relief as Defendants, the States need not separately satisfy Article III standing.

*Town of Chester*, 137 S. Ct. at 1651.

## II.    The States Are Entitled to Limited Intervention as a Matter of Right Under Rule 24(a)(2).

Rule 24(a)(2) requires an applicant for intervention to establish four elements:

(1)     that its motion is timely;
(2)     that it has a "significantly protectable interest relating to the subject of the action";
(3)     that the action "may as a practical matter impair or impede [its] ability to protect that interest"; and
(4)     that such interest is "inadequately represented by the parties to the action."

*Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (ellipsis omitted). As the Ninth

Circuit has "repeatedly instructed," the requirements for intervention "are to be broadly interpreted

in favor of intervention." *Id.* (brackets omitted). "[A] liberal policy in favor of intervention serves

both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S.*

*Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (quoting *United States v. City of L.A.*,

288 F.3d 391, 397-98 (9th Cir. 2002)).

### A.    The Motion Is Timely.

Plaintiffs argue the States' motion is "premature" and thus "untimely" because the States

"currently have no insights into the confidential settlement proceedings by virtue of their closed-

door nature and cannot yet ascertain whether they can rebut the presumption that the federal gov-

ernment is adequately representing their interest." Doc. 508 at 28-29. That is, Plaintiffs contend

timeliness is functionally irrelevant because no event has triggered an "aware[ness] that [the

States'] interests would not be adequately protected," and thus that no "date for assessing the time-

liness" of the Motion exists. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). Plaintiffs' ar-

gument therefore reduces to an inadequacy-of-representation claim, which the States discuss be-

low, *see infra* § II.D, and addressed at length in their Government Reply, *see* Doc. 506.

Proposed Defendant-Intervenors' Reply Memo.
in Support of Motion for Limited Intervention   6

Regardless, Plaintiffs' quasi-timeliness argument fails to engage the States' arguments about the events that gave rise to the States' concerns. As the States explained in their Motion, Defendants have announced broad policy goals virtually identical to those demanded by Plaintiffs, and the Biden Administration has engaged in collusive litigation strategies to achieve other policy goals. *See* Doc. 475 at 11-16, 21. Indeed, Defendants did not even attempt to rebut these assertions beyond a conclusory refutation in a footnote. *See* Doc. 498 at 8 n.4 (calling collusive-litigation contention "baseless"). Add to this that a federal court recently found, at least as a preliminary matter, that the Biden Administration is already acting unlawfully in pursuit of its energy-policy goals. *See Louisiana v. Biden*, No. 2:21-cv-778, 2021 WL 2446010, at *18 (W.D. La. June 15, 2021) ("By pausing the leasing, the agencies are in effect amending two Congressional statutes ... which they do not have the authority to do."). Thus, settlement negotiations in this case reasonably concerned the States. And this concern appears to have been prescient; in the short time since the States filed their Motion, Defendants have demonstrated an apparent willingness to keep negotiation settlements "ongoing," Doc. 501, despite publicly stating there is no case or controversy to settle, Doc. 498 at 4-5. Because the States filed their Motion less than four weeks after this Court raised the prospect of settlement, this Motion is timely.

### B.    The States Have Significant Interests in This Litigation.

A party "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). "[T]he operative inquiry should be whether the interest is protectable under some law and whether there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y*, 630 F.3d at 1180.

The States have "sufficient interest[s]" in several of the federal programs Plaintiffs decry and seek to eliminate. *See* Doc. 475 at 14-15 (describing discrete interests in oil-and-gas leasing arrangements, among other things). For example, in both their First Amended Complaint and their Proposed Second Amended Complaint, Plaintiffs expressly seek to declare oil-and-gas leasing programs unconstitutional and eliminate them. *See* Doc. 7 at 64, 99; Doc. 462-1 at 113, 148. If Plaintiffs succeed in destroying programs that net the States significant revenues, the States will, of course, "suffer a practical impairment of [their] interests as a result of the pending litigation." *California ex rel. Lockyer*, 450 F.3d at 441. And beyond their concerns over specific projects and programs, the States' more general concerns are well justified; indeed, the generality of these concerns necessarily mirrors the "striking" breadth of Plaintiffs' claims, *United States v. U.S. Dist. Ct. for Dist. of Oregon*, 139 S. Ct. 1 (2018), which threatens "no less than a fundamental transformation of this country's energy system, if not that of the industrialized world," *Juliana*, 947 F.3d at 1171.

Plaintiffs contend that the States failed to offer "any evidence" supporting their economic interests in federal oil-and-gas leasing programs. Doc. 508 at 20. But the States cited the United States Department of Interior's Natural Resources Revenue Data, *see* Doc. 475 at 14, and as Plaintiffs previously recognized, "[t]he Ninth Circuit broadly acknowledges that courts 'may take judicial notice of records and reports of administrative bodies.'" *See* Doc. 366 at 4 (citing *Interstate Nat. Gas Co. v. Southern Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)). Plaintiffs then insist that the States "have demonstrated no entitlement to receive any funds" because the revenues they receive in accordance with federal oil-and-gas-leasing statutes are actually "'gifts' to which [the States] are not legally entitled." Doc. 508 at 20. Creative argument notwithstanding, the "operative inquiry" is "whether the interest is protectable under some law and whether there is a relationship

between the legally protected interest and the claims at issue." *Wilderness Soc'y*, 630 F.3d at 1180. Here, the OCLA, MLA, and GOMESA are federal programs under which the States are receiving revenues, *see* Doc. 475 at 14, and Plaintiffs' claims directly attack these revenue-generating programs, *see* Doc. 7 at 64, 99; Doc. 462-1 at 113, 148. Plaintiffs then fault the States for their inability to prove whether "resolution of Plaintiffs' claims in settlement would cause those funds to be rescinded," Doc. 508 at 20, but this argument is beside the point. After all, intervention typically occurs *before* litigation concludes. What matters here is that Plaintiffs seek to destroy programs providing tangible benefits to the States and that destruction would "practical[ly] impair[]" the States' interests. *California ex rel. Lockyer*, 450 F.3d at 441.

Plaintiffs next oppose intervention by arguing that "a general interest in the energy system, which everyone in this country has, is simply too tenuous to rise to the level of a significant protectable right." Doc. 508 at 20 (internal quotation marks omitted). But, of course, a similarly "general interest" undergirds Plaintiffs' claims; per their First Amended Complaint: "Plaintiffs' substantive Fifth Amendment rights have been infringed because Defendants directly caused atmospheric $CO_2$ to rise to levels that dangerously interfere with a stable climate system *required alike by our nation and Plaintiffs*." *See* Doc. 7 at 90 (emphasis added). Plaintiffs' arguments thus bare more than a passing resemblance to the arguments Defendants initially asserted against this case's justiciability. *See, e.g.*, Doc. 27-1 at 17 (arguing case non-justiciable because "asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens") (cleaned up). In any event, because Plaintiffs have asserted claims of "striking" breadth, *U.S. Dist. Ct. for Dist. of Oregon*, 139 S. Ct. 1, at the very least, the States are entitled to rely on similarly broad concerns and defend similarly broad interests.

Finally, Plaintiffs argue that "[t]he case and controversy at issue here is a declaration of Plaintiffs' constitutional rights," and that the States' "interest in federal energy policies" fall beyond the scope of the case. Doc. 508 at 21. Plaintiffs fail to recognize that an action seeking a bare "declaration of Plaintiffs' constitutional rights" is not a "case [or] controversy" under Article III. As the Supreme Court explained earlier this term, "[t]he Declaratory Judgment Act, 28 U.S.C. § 2201, alone does not provide a court with jurisdiction." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021). "Instead, just like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement." *Id*. Seeking a declaration of constitutional rights is not, as Plaintiffs suggest, sufficient to confer jurisdiction on this Court.

The States have interests in several federal programs and activities that Plaintiffs seek to eliminate or significantly curtail through this lawsuit, and these interests are specific enough to satisfy Rule 24. The States' additional, broader interests in this litigation match the litigation's remarkable—and non-justiciable—breadth. Because Plaintiffs seek to "practical[ly] impair[]" the States' interests through this "pending litigation," the States are sufficiently interested in this lawsuit to satisfy Rule 24's requirements. *California ex rel. Lockyer*, 450 F.3d at 441.

## C.    Plaintiffs' Challenge Threatens to Impair and Impede the States' Interests.

After showing a "significantly protectable interest relating to the subject of the action," proposed intervenors must show "that the action 'may as a practical matter impair or impede [their] ability to protect that interest.'" *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (quoting Fed. R. Civ. P. 24(a)(2)). Rule 24 means what it says: The States need show only the action *may* diminish their ability to protect their interests; legal certainty is not required.

The States have met Rule 24's requirement. As explained above, the States have significant protectable interests in the very policies and programs Plaintiffs seek to upend. *Compare* Doc. 475

at 14-15 (describing interests of the States) *with Juliana*, 947 F.3d at 1167 n.4 (describing Plaintiffs' intent to impinge on certain interests). Furthermore, implementing even a portion of Plaintiffs' sweeping climate agenda through settlement deprives the States of procedural guarantees under the APA and the Constitution—a point Plaintiffs never contest. Without the ability to intervene, the States risk "hav[ing] no alternative forum where they can mount a robust defense of [their interests]." *California ex rel. Lockyer*, 450 F.3d at 442.

Plaintiffs respond that "[t]he primary problem with the Proposed Intervenor States' argument is there is no settlement agreement by which to judge whether any of the terms harms their purported interests." Doc. 508 at 22. But Rule 24 applies a forward-looking standard, requiring only that a proposed intervenor's interests *may* suffer absent intervention. As the States have explained, the facts of this case satisfy this minimal requirement: (1) Plaintiffs have declared their intention to diminish programs that benefits the States, *see* Doc. 7 at 64, 99; Doc. 462-1 at 113, 148; *Juliana*, 947 F.3d at 1167 n.4; (2) Defendants have declared interests mirroring those of Plaintiffs, *see* Doc. 506 at 10-11 (describing Defendant Secretary of Energy's statements substantially similar to those of Plaintiffs); Doc. 475 at 13 (providing further examples of federal government's recent energy policies and their similarities to Plaintiffs' position); and (3) Defendants, despite publicly arguing no case or controversy exists, Doc. 498 at 4, appear to have kept settlement negotiations "ongoing," Doc. 501. The threat to the States' interests could hardly be clearer.

Indeed, Plaintiffs suggest it is possible they will strike a settlement with Defendants "that alters the federal government's fossil fuel energy policy" and has "tremendous" impacts on the States. Doc. 508 at 22. While Plaintiffs are confident such a settlement would promote the health and wealth of the States and their residents, *see id.*, the "host of complex policy decisions" underlying the national energy system has been entrusted "to the wisdom and discretion of the executive

and legislative branches," *Juliana*, 947 F.3d. at 1171, not to private litigants and courts. The States have an interest in ensuring this division of power remains intact.

To be sure, the States were encouraged to see Plaintiffs commit to involving the States "if Plaintiffs and Defendants ever reach[] a settlement agreement and proposed consent decree." Doc. 508 at 10. The States will rely on Plaintiffs' representation, and will object should an eventual agreement impinge their interests. *See, e.g.*, *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986) ("A court's approval of a consent decree between some of the parties … cannot dispose of the valid claims of nonconsenting intervenors."). But the States' ability to object to a settlement later does not negate their interest in now partici-pating in settlement negotiations or litigation over Plaintiffs' motion for leave to amend and file a second amended complaint. The States have views on the propriety of a settlement that should be represented in those negotiations.[6] Moreover, if Plaintiffs are allowed to revive their claims, the risk of ongoing settlement negotiations and a collusive end to this case will persist.

Finally, Plaintiffs suggest that, as an "equitable consideration," "[c]onfidential settlements are favored by courts and thus barriers should not be erected to thwart the process." Doc. 508 at 18 (citing *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002)). It is true that the Ninth Circuit "ha[s], on occasion, been reluctant to require the granting of motions to intervene where

---

[6] Plaintiffs repeatedly assert that the States have "ma[de] clear they would not approach settlement talks in good faith." Doc. 508 at 9; *see also id.* at 18 (alleging "bad faith"); *id.* at 19 (same). The assertion is baseless. As the Supreme Court explained in this case, "the justiciability of [Plaintiffs'] claims presents substantial grounds for difference of opinion." *U.S. Dist. Ct. for Dist. of Oregon*, 139 S. Ct. 1. That parties harbor good-faith disagreement about this case's justiciability should be unremarkable, if not expected. Moreover, this Court expressly invited either party to reject nego-tiations outright and tell the settlement judge, "We will not negotiate," never suggesting such a position would constitute bad faith. Doc. 472 at 6. In any event, the States believe this case is not justiciable and that this position should be adequately pressed in settlement talks and litigation over Plaintiffs' pending motion.

Proposed Defendant-Intervenors' Reply Memo.
in Support of Motion for Limited Intervention  12

lengthy settlement efforts might be disrupted." *Carpenter*, 298 F.3d at 1125. But "[t]hose cases did not involve a claim of failure of a governmental agency to represent its citizens." *Id*. As in *Carpenter*, the States' case for intervention has only strengthened as Defendants have apparently failed to fulsomely press their public positions in private negotiations. *See id*. ("It was only when the intervenors learned that the settlement constituted a substantial departure from the position that the government had maintained throughout the litigation that they sought to intervene."). In keeping with *Carpenter*, this case's facts rebut whatever "equitable consideration" Plaintiffs seek.

### D.    The Federal Government Will Not Adequately Represent the Interests of the States.

Regarding Rule 24's adequacy-of-representation inquiry, Plaintiffs present substantially the same arguments as Defendants. *Compare* Doc. 494 at 4-5 ("Defendants and the States share the same 'ultimate objective'—achieving dismissal of this case"; and "it is presumed that the United States adequately represents the interests of its constituents") *with* Doc. 508 at 26 ("Defendants and the [States] share the same 'ultimate objective'" dismissal of this case"; and "[t]his shared objective … creates a presumption of adequate representation"). Rather than rehash the contents of its Government Reply here, the States incorporate the relevant portions of that brief, Doc. 506 at 3-13, into this subsection.

 The States add only that Plaintiffs, despite having analyzed the States' Government Reply and responded to it elsewhere in their response brief, *see supra* n.5, fail to address the apparent inconsistencies between Defendants' public and private positions. *See* Doc. 506 at 9 ("[I]n the short time since the States filed their Motion, Defendants have demonstrated a willingness to keep negotiation settlements 'ongoing,' Doc. 501, despite publicly stating there is no case or controversy to settle, Doc. 498 at 4-5."). Instead, Plaintiffs submit that the States' concerns represent little more than "unsupported innuendo," Doc. 508 at 27, and that "the Biden Administration's

issuance of climate policy executive orders does not automatically alter the DOJ's defense of this case, particularly with respect to Article III standing, which is the only legal issue the [States] seek to address," *id.* at 28. Plaintiffs' argument conflates Defendants' interests in the "subject of the action," Fed. R. Civ. P. 24(a)(2), with their attorneys' litigation tactics and thus commits the same error as Defendants, *see* Doc. 506 at 5-8. What is more, Defendants' apparent willingness to continue settlement negotiations despite their previous contention that this case is non-justiciable suggests that Defendants *have* "alter[ed] the DOJ's defense of this case, particularly with respect to standing." Doc. 508 at 28.[7]

For all the reasons explained in their Government Reply and reiterated here, Defendants have not thus far and will not, going forward, "undoubtedly make all the [States'] arguments." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001). Defendants therefore do not adequately represent the States.

## III.    The States Satisfy the Ninth Circuit's Test for Limited Permissive Intervention Under Rule 24(b).

"On a timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Where a litigant "timely presents such an interest in intervention," the Court should consider

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] ... whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation,

---

[7] Plaintiffs' claim that the States "assert[ed]" Defendants "voluntarily [came] to the settlement table," Doc. 508 at 27, but this misrepresents the States' position. The States have recognized that this Court ordered settlement negotiations and that Defendants' initial decision to engage in negotiations was not Defendant-driven. But Defendants' apparent willingness to *continue* negotiations, Doc. 501, suggests a departure from their previous—and correct—position that this case is not justiciable, which reinforces the States' concerns.

and whether parties seeking intervention will significantly contribute to full devel-
opment of the underlying factual issues in the suit and to the just and equitable
adjudication of the legal questions presented.

*Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011). For all the reasons described above,
in the States' Government Reply, and in their Motion, each criterion favors intervention.

    Though Plaintiffs' argument against permissive intervention largely recycles positions they
articulated earlier in their brief, they present new theories contesting the States' timeliness which
merit reply. They begin by citing the fact that the States "seek entry at a late stage in the proceed-
ings—nearly six years after this litigation began." Doc. 508 at 30. But Plaintiffs fail to explain
how this alleged delay affects this Court's timeliness analysis, instead implicitly suggesting that
intervening "nearly six years after this litigation began" is *per se* untimely. The Ninth Circuit's
decision in *United States v. Oregon*, 745 F.2d 550 (9th Cir. 1984), makes quick work of any such
inference. There, the district court denied the State of Idaho's application for intervention "upon
the conclusion that the application was untimely." *Id.* at 551. Idaho appealed and the Ninth Circuit
reversed, explaining that "[m]ere lapse of time alone is not determinative," and that a "changed
circumstance—the possibility of new and expanded negotiations … indicate[d] that the stage of
the proceeding and reason for delay are factors which militate in favor of granting the application
[for intervention]." *Id.* at 552. Like Idaho, the States in this case sought to intervene shortly after
the prospect of settlement negotiations arose. *See* Doc. 475 at 17. Plaintiffs further fail to substan-
tiate their conclusory assertion that "permitting intervention … risks further prejudicing Plaintiffs
by delaying adjudication of this case on the merits" while simultaneously conceding, as they must,
that "additional delay alone is not decisive." Doc. 508 at 31.

    The Court's decision to order the parties to negotiations triggered "changed circum-
stance[s]" in this case. *Oregon*, 745 F.2d at 552. The States filed their Motion less than four weeks

later. Doc. 475. Aside from "additional delay," which they agree is "not decisive," Plaintiffs do not attempt to show how the States' limited intervention might prejudice them.

## **CONCLUSION**

The States respectfully request that the Court grant their Motion to intervene for the limited purposes of participating in settlement negotiations; if necessary, objecting to any proposed settlement; and opposing Plaintiffs' motion for leave to amend and file a second amended complaint.

Dated July 20, 2021                                                    Respectfully submitted,

STEVE MARSHALL                                            TREG TAYLOR
Attorney General of Alabama                              Attorney General of Alaska

/s/ Edmund G. LaCour Jr.                                     /s/ Nathaniel Haynes
Edmund G. LaCour Jr. (AL Bar No. 9182-U81L)        Nathanial Haynes (AK Bar No. 1906061)
*Solicitor General*                                               *Assistant Attorney General*

Thomas A. Wilson (AL Bar No. 1494-D25C)            STATE OF ALASKA
*Deputy Solicitor General*                                    ALASKA DEPARTMENT OF LAW
                                                                        ENVIRONMENTAL SECTION
STATE OF ALABAMA                                         1031 W. 4th Ave, Suite 200
OFFICE OF THE ATTORNEY GENERAL                   Anchorage, AK 99501
501 Washington Ave.                                          Telephone: (907) 269-5274
Montgomery, AL 36130                                       Nathaniel.Haynes@Alaska.gov
Telephone: (334) 353-2196
Fax: (334) 353-8400                                            *Counsel for Proposed Defendant-Interve-*
Edmund.LaCour@AlabamaAG.gov                       *nor State of Alaska*
Thomas.Wilson@AlabamaAG.gov

*Counsel for Proposed Defendant-Intervenor State*
*of Alabama*

LESLIE RUTLEDGE                                           CHRISTOPHER M. CARR
Attorney General of Arkansas                              Attorney General of Georgia

/s/ Nicholas J. Bronni                                          /s/ Andrew Pinson
Nicholas J. Bronni (AR Bar No. 2016097)              Andrew Pinson (GA Bar No. 584719)
*Solicitor General*                                               *Solicitor General*

Proposed Defendant-Intervenors' Reply Memo.
in Support of Motion for Limited Intervention  16

STATE OF ARKANSAS
OFFICE OF THE ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, AR 72201
Telephone: (501) 682-6302
Nicholas.Brunni@ArkansasAG.gov

*Counsel for Proposed Defendant-Intervenor State of Arkansas*

TODD ROKITA
Attorney General of Indiana

/s/ Thomas M. Fisher
Thomas M. Fisher (IN Bar No. 17949-49)
*Solicitor General*

STATE OF INDIANA
OFFICE OF THE ATTORNEY GENERAL
Indiana Government Center South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-6255
Facsimile: (317) 232-7979
Tom.Fisher@atg.in.gov

*Counsel for Proposed Defendant-Intervenor State of Indiana*

JEFF LANDRY
Attorney General of Louisiana

/s/ Elizabeth B. Murrill
Elizabeth B. Murrill (LA Bar No. 20685)
*Solicitor General*

J. Scott St. John (LA Bar No. 36682)
*Deputy Solicitor General*

STATE OF LOUISIANA
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, LA 70804
Telephone: (225) 326-6766
emurrill@ag.louisiana.gov
stjohnj@ag.louisiana.gov

STATE OF GEORGIA
GEORGIA DEPARTMENT OF LAW
40 Capitol Square SW
Atlanta, GA, 30334
Telephone: (404) 458-3409
apinson@law.ga.gov

*Counsel for Proposed Defendant-Intervenor State of Georgia*

DEREK SCHMIDT
Attorney General of Kansas

/s/ Brant M. Laue
Brant M. Laue (KS Bar No. 16857)
*Solicitor General*

STATE OF KANSAS
OFFICE OF THE ATTORNEY GENERAL
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612
Telephone: (785) 368-8539
Fax: (785) 296-3131
Brant.Laue@ag.ks.gov

*Counsel for Proposed Defendant-Intervenor State of Kansas*

LYNN FITCH
Attorney General of Mississippi

/s/ Justin L. Matheny
Justin L. Matheny (MS Bar No. 100754)
*Deputy Solicitor General*

STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205
Telephone: (601) 359-3680
Justin.Matheny@ago.ms.gov

*Counsel for Proposed Defendant-Intervenor State of Mississippi*

*Counsel for Proposed Defendant-Intervenor State of Louisiana*

ERIC SCHMITT
Attorney General of Missouri

/s/ Jeff P. Johnson
Jeff P. Johnson (MO Bar No. 73249)
*Deputy Solicitor General*

STATE OF MISSOURI
OFFICE OF THE ATTORNEY GENERAL
Supreme Court Building
207 West High Street
P.O. Box 899
Jefferson City, MO 65102
Telephone: (314) 340-7366
Fax: (573) 751-0774
Jeff.Johnson@ago.mo.gov

*Counsel for Proposed Defendant-Intervenor State of Missouri*

DOUGLAS J. PETERSON
Attorney General of Nebraska

/s/ James A. Campbell
James A. Campbell (NE Bar No. 26934)
*Solicitor General*

STATE OF NEBRASKA
OFFICE OF THE NEBRASKA ATTORNEY GENERAL
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-2682
Jim.Campbell@Nebraska.gov

*Counsel for Proposed Defendant-Intervenor State of Nebraska*

DAVE YOST
Attorney General of Ohio

/s/ Benjamin M. Flowers
Benjamin M. Flowers (OH Bar No. 0095284)

AUSTIN KNUDSEN
Attorney General of Montana

/s/ David Dewhirst
David Dewhirst (MT Bar No. 65934132)
*Solicitor General*

STATE OF MONTANA
OFFICE OF THE ATTORNEY GENERAL
215 North Sanders
P.O Box 201401
Helena, MT 59620-1401
Telephone: (406) 444-4145
David.Dewhirst@mt.gov

*Counsel for Proposed Defendant-Intervenor State of Montana*

WAYNE STENEHJEM
Attorney General of North Dakota

/s/ Matthew A. Sagsveen
Matthew A. Sagsveen (ND Bar No. 05613)
*Solicitor General*

STATE OF NORTH DAKOTA
OFFICE OF THE ATTORNEY GENERAL
500 North 9th Street
Bismarck, ND 58501-4509
Telephone: (701) 328-3640
Fax: (701) 328-4300
masagsve@nd.gov

*Counsel for Proposed Defendant-Intervenor State of North Dakota*
DAWN CASH
Acting Attorney General of Oklahoma

/s/ Mithun Mansinghani
Mithun Mansinghani (OK Bar No. 32453)

*Solicitor General*

STATE OF OHIO
OFFICE OF THE ATTORNEY GENERAL
30 East Broad Street, 17th Floor
Columbus, OH 43215
Telephone: (614) 466-8980
Fax: (614) 466-5087
Benjamin.Flowers@OhioAGO.gov

*Counsel for Proposed Defendant-Intervenor State of Ohio*

ALAN WILSON
Attorney General of South Carolina

/s/ James Emory Smith, Jr.
James Emory Smith, Jr. (SC Bar No. 5262)
*Deputy Solicitor General*

STATE OF SOUTH CAROLINA
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 11549
Columbia, SC 29211
Telephone: (803) 734-3680
Fax: (803) 734-3677
esmith@scag.gov

*Counsel for Proposed Defendant-Intervenor State of South Carolina*

SEAN REYES
Attorney General of Utah

/s/ Melissa A. Holyoak
Melissa A. Holyoak (UT Bar No. 9832)
*Solicitor General*

STATE OF UTAH

*Solicitor General*

STATE OF OKLAHOMA
OFFICE OF THE ATTORNEY GENERAL
313 NE 21st St.
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Fax: (405) 521-4518
Mithun.Mansinghani@oag.ok.gov

*Counsel for Proposed Defendant-Intervenor State of Oklahoma*

KEN PAXTON
Attorney General of Texas

Brent Webster (TX Bar No. 24053545)
*First Assistant Attorney General*

Judd E. Stone II (TX Bar No. 24076720)
*Solicitor General*

/s/ Natalie D. Thompson
Natalie D. Thompson (TX Bar No. 24088529)
*Assistant Solicitor General*

STATE OF TEXAS
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, TX 78711-2548
Telephone: (512) 936-1700
Fax: (512) 474-2697
Natalie.Thompson@oag.texas.gov

*Counsel for Proposed Defendant-Intervenor State of Texas*

PATRICK MORRISEY
Attorney General of West Virginia

/s/ Lindsay See
Lindsay See (WV Bar No. 13360)
*Solicitor General*

STATE OF WEST VIRGINIA

OFFICE OF THE UTAH ATTORNEY GENERAL
160 E. 300 S., 6th Floor
Salt Lake City, UT 84114
Telephone: (801) 538-9600
MelissaHolyoak@agutah.gov

*Counsel for Proposed Defendant-Intervenor State of Utah*

OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
Telephone: (681) 313-4550
Lindsay.S.See@wvago.gov

*Counsel for Proposed Defendant-Intervenor State of West Virginia*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Oregon by using the CM/ECF system, which will send notification of such to the attorneys of record.


 /s/ Edmund G. LaCour Jr.
Counsel for State of Alabama