JULIA A. OLSON (OR Bar 062230)
julia@ourchildrenstrust.org
Our Children's Trust
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

ANDREA K. RODGERS (OR Bar 041029)
andrea@ourchildrenstrust.org
Our Children's Trust
3026 NW Esplanade
Seattle, WA 98117
Tel: (206) 696-2851

PHILIP L. GREGORY (*pro hac vice*)
pgregory@gregorylawgroup.com
Gregory Law Group
1250 Godetia Drive
Redwood City, CA 94062
Tel: (650) 278-2957

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**; **XIUHTEZCATL TONATIUH M.**, through his Guardian Tamara Roske-Martinez; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>**The UNITED STATES OF AMERICA**; et al.,<br><br>Defendants. | Case No.: 6:15-cv-01517-AA<br><br>**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** |

PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY                                    1

Plaintiffs hereby provide notice of supplemental authority of a new opinion from the United States Supreme Court, issued on November 22, 2021, *Mississippi v. Tennessee*, -- S.Ct. – (2021), 2021 WL 5434188, slip opinion attached to this notice.

A unanimous opinion by Chief Justice Roberts, *Mississippi v. Tennessee*, supports the broad principle that even after a case is dismissed for failing to plead a viable remedy, a motion to amend could be brought to cure the pleading deficiency. By way of background, after first being dismissed from Federal District Court, Mississippi brought an original action in the Supreme Court against Tennessee for novel damages and other relief related to the pumping of groundwater by Memphis from the Middle Claiborne Aquifer, a water resource that lies beneath eight States. *Mississippi*, 2021 WL 5434188 *3, 4. Mississippi argued Tennessee's pumping—using wells located entirely in Tennessee—siphons water away from Mississippi and amounted to a tortious taking of groundwater owned by Mississippi. *Id.* at *4. In its complaint, Mississippi expressly disclaimed any equitable apportionment remedy, the Court's traditional remedy in transboundary resource cases between states. *Id.* The Special Master appointed by the Supreme Court, to oversee motions practice, discovery, and a five-day evidentiary hearing, recommended the Court dismiss the complaint but grant Mississippi leave to amend to bring an equitable apportionment claim. *Id.* Mississippi challenged the recommendation to dismiss and never sought leave to amend; Tennessee objected to the recommendation to grant Mississippi leave to file an amended complaint. *Id.*

The Court was "[c]onfronted" with a "matter of first impression" as to available judicial remedies for interstate groundwater disputes and focused its "analysis on whether equitable apportionment of the Middle Claiborne Aquifer would be 'sufficiently similar' to past applications of the doctrine to warrant the same treatment." *Mississippi*, 2021 WL 5434188 *5. The unanimous

Court dismissed Mississippi's complaint because it had not sought the only relief the Court held it could seek for a transboundary water resource dispute—equitable apportionment. *Mississippi*, 2021 WL 5434188 *5-7. The Supreme Court declined "to decide whether Mississippi should be granted" leave to amend, "because the State has never sought it." *Id.* at *7. The Court concluded: "As Mississippi has neither sought leave to amend nor tendered a proposed complaint seeking equitable apportionment, we have no occasion to determine how these and other pertinent principles might apply." *Id*.

However, the Court left open the possibility that leave to amend could nonetheless be sought after dismissal: "Finally, if Mississippi were to seek leave to amend, its complaint would be subject to our longstanding rule that a 'State seeking equitable apportionment under our original jurisdiction must prove by clear and convincing evidence some real and substantial injury or damage.'" *Id*. at *7. (citation omitted). The phrase "if Mississippi were to seek leave to amend . . . ." shows that, simply because the Supreme Court ultimately dismissed the case of first impression in its original form, such dismissal does not preclude leave to amend, even seven years after the case was filed, after a five-day evidentiary hearing, and even when a party has disavowed the very remedy that would open the door to leave to amend. The Supreme Court signaled that Mississippi would likely have been allowed leave to amend, yet Mississippi had not sought leave. *Id.* Indeed, the Supreme Court goes so far as to map out the proper complaint for Mississippi to bring, which "might also require the joinder of additional parties" and require a pleading that there is "clear and convincing evidence" of "some real and substantial injury or damage." *Id.* (internal quotations and citations omitted).

Unlike the State of Mississippi, since the first Motion to Dismiss filed by Defendants in the instant case, Plaintiffs have requested leave to amend if their claims, including issues of first

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**                                      3

impression, were dismissed on standing or other jurisdictional grounds as soon as Defendants filed their motion to dismiss in 2016. Doc. 41 at 45. (citations omitted) ("If this Court finds facial deficiencies with Plaintiffs' standing allegations or finds the FAC fails to state a claim, Plaintiffs respectfully request leave to amend."). *Mississippi v. Tennessee* stands for the broad principle that the remedy sought can be amended to cure a jurisdictional deficiency, and jurisdictional dismissal of a case for an improper remedy does not, as Defendants have argued, mean the case is over and the deficiency cannot be cured. *Mississippi v. Tennessee* makes clear that, in matters of first impression, leave to amend is a viable pathway after dismissal to cure a remedial deficiency, and it supports Plaintiffs' Motion for Leave to File Amended Complaint. Doc. 462.

This Court should grant Plaintiffs' Motion forthwith.

DATED this 29th day of November, 2021.

                                              Respectfully submitted,

                                              */s/ Julia A. Olson*
                                              JULIA A. OLSON (OR Bar 062230)
                                              julia@ourchildrenstrust.org

                                              PHILIP L. GREGORY (*pro hac vice*)
                                              pgregory@gregorylawgroup.com

                                              ANDREA K. RODGERS (OR Bar 041029)
                                              andrea@ourchildrenstrust.org

                                              *Attorneys for Plaintiffs*

2021 WL 5434188
Only the Westlaw citation is currently available.
Supreme Court of the United States.

STATE OF MISSISSIPPI, Plaintiff

v.

TENNESSEE, City of Memphis, Tennessee,
and Memphis Light, Gas & Water Division

No. 143, Orig.
|
Argued October 4, 2021
|
Decided November 22, 2021

**Synopsis**
**Background:** The State of Mississippi brought original action against the State of Tennessee, city, and city's water utility seeking damages, as well as declaratory and injunctive relief, for the allegedly tortious taking of hundreds of billions of gallons of water belonging to Mississippi through the pumping, from wells located within Tennessee, of groundwater from an aquifer located underneath both states, as well as parts of six other states, in order to provide drinking water to the city. After Mississippi's motion for leave to file a bill of complaint was granted, a Special Master was appointed, who subsequently issued a report recommending that Mississippi's complaint be dismissed with leave to amend. Both Mississippi and Tennessee filed exceptions.

**Holdings:** The Supreme Court, Chief Justice Roberts, held that:

on issue of first impression, the aquifer's waters were subject to the judicial remedy of equitable apportionment, and

Supreme Court would decline to grant Mississippi leave to file amended complaint to seek equitable apportionment.

Exceptions overruled in part and sustained in part, and case dismissed.

*Syllabus*[*]

Mississippi brought an original action against Tennessee for damages and other relief related to the pumping of groundwater by the City of Memphis from the Middle Claiborne Aquifer, a valuable water resource that lies beneath eight States. Mississippi argues that Tennessee's pumping—using wells Mississippi concedes are located entirely in Tennessee—siphons water away from Mississippi and amounts to a tortious taking of groundwater owned by Mississippi. Mississippi expressly disclaims any equitable apportionment remedy, arguing that the "fundamental premise of this Court's equitable apportionment jurisprudence—that each of the opposing States has an equality of right to use the waters at issue—does not apply to this dispute." Complaint ¶49. The Special Master appointed by the Court to assess Mississippi's claims determined that the aquifer is an interstate water resource and that equitable apportionment is the exclusive judicial remedy. Because Mississippi's complaint did not seek equitable apportionment, the Special Master recommended that the Court dismiss the complaint but grant Mississippi leave to amend. Mississippi challenges the recommendation to dismiss; Tennessee objects to the recommendation to grant Mississippi leave to file an amended complaint.

*Held*: The waters of the Middle Claiborne Aquifer are subject to the judicial remedy of equitable apportionment; Mississippi's complaint is dismissed without leave to amend. Pp. —— – ——.

(a) The doctrine of equitable apportionment aims to produce a fair allocation of a shared water resource between two or more States, see *Colorado* v. *New Mexico*, 459 U.S. 176, 183, based on the principle that States have an equal right to reasonable use of shared water resources. *Florida* v. *Georgia*, 592 U.S. ——, ——. The Court has applied the doctrine to interstate rivers and streams, see *South Carolina* v. *North Carolina*, 558 U.S. 256, to disputes over interstate river basins, see *Florida* v. *Georgia*, 585 U.S. ——, ——, and in situations where the pumping of groundwater has affected the flow of interstate surface waters, see *Nebraska* v. *Wyoming*, 515 U.S. 1, 14. The Court has also applied the doctrine to anadromous fish that migrate between the Pacific Ocean and spawning grounds in the Columbia-Snake River system, "travel[ing] through several States during their lifetime." *Idaho ex rel. Evans* v. *Oregon*, 462 U.S. 1017, 1018–1019, 1024.

The Court has not before addressed whether equitable apportionment applies to interstate aquifers. Equitable apportionment of the Middle Claiborne Aquifer is

"sufficiently similar" to past applications of the doctrine to warrant the same treatment, for several reasons. *Id.*, at 1024. First, the Court has applied equitable apportionment when transboundary water resources were at issue. Here the Middle Claiborne Aquifer's "multistate character" seems beyond dispute. *Sporhase* v. *Nebraska ex rel. Douglas*, 458 U.S. 941, 953. Second, the Middle Claiborne Aquifer contains water that flows naturally between the States, and the Court's equitable apportionment cases have all concerned such water, *Kansas* v. *Colorado*, 206 U.S. 46, 98, or fish that live in it, *Idaho ex rel. Evans*, 462 U.S., at 1024. While Mississippi contends the natural transboundary flow of the Middle Claiborne Aquifer is slower than some streams and rivers, the Court has applied equitable apportionment even to streams that run dry from time to time. See *Kansas*, 206 U.S., at 115. The speed of the flow does not place the aquifer beyond equitable apportionment. Finally, actions taken in Tennessee to pump water from the aquifer clearly have effects on the portion of the aquifer that underlies Mississippi. Tennessee's pumping has contributed to a cone of depression that extends miles into northern Mississippi, and Mississippi itself contends that this cone of depression has reduced groundwater storage and pressure in northern Mississippi. Such interstate effects are a hallmark of the Court's equitable apportionment cases, see, *e.g., Florida*, 592 U.S., at ——. For all these reasons, the Court holds that the judicial remedy of equitable apportionment applies to the waters of the Middle Claiborne Aquifer. Pp. —— – ——.

 **\*2**  (b) The Court rejects Mississippi's contention that it has a sovereign ownership right to all water beneath its surface that precludes application of equitable apportionment. The Court has "consistently denied" the proposition that a State may exercise exclusive ownership or control of interstate "waters flowing within her boundaries." *Hinderlider* v. *La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 102. Although the Court's past equitable apportionment cases have generally concerned streams and rivers, no basis exists for a different result in the context of the Middle Claiborne Aquifer. To the contrary, Mississippi's ownership approach would allow an upstream State to completely cut off flow to a downstream one, a result contrary to the Court's equitable apportionment jurisprudence. The Court's decision in *Tarrant Regional Water Dist.* v. *Herrmann*, 569 U.S. 614, does not support Mississippi's position. *Tarrant* concerned whether one State could cross another's boundaries to access a shared water resource under the terms of an interstate compact. The Court did not consider equitable apportionment, because the affected States had negotiated a compact that determined their respective rights to the resource. To the extent *Tarrant* stands for the broader proposition that one State may not physically enter another to take water in the absence of an express agreement, that principle is not implicated here. The parties have stipulated all of Tennessee's wells are drilled straight down and do not cross the Mississippi-Tennessee border. While the origin of an interstate water resource may be relevant to the terms of an equitable apportionment, that feature alone cannot place the resource outside the doctrine itself. Because the waters contained in the Middle Claiborne Aquifer are subject to equitable apportionment, the Court overrules Mississippi's exceptions and adopts the Special Master's recommendation to dismiss the bill of complaint. Pp. —— – ——.

(c) Mississippi has neither sought leave to amend its complaint nor tendered a proposed complaint seeking equitable apportionment. The Court does not address whether Mississippi should be granted such leave and sustains Tennessee's objection to the Special Master's recommendation to grant Mississippi leave to amend. Pp. —— – ——.

Exceptions overruled in part and sustained in part, and case dismissed.

Roberts, C.J., delivered the opinion for a unanimous Court.

ON EXCEPTIONS TO REPORT OF SPECIAL MASTER

**Attorneys and Law Firms**

John V. Coghlan, Deputy Solicitor General, for Plaintiff.

David C. Frederick, for Defendants.

Frederick Liu for the United States as amicus curiae, by special leave of the Court, in support of overruling plaintiff's exceptions

Jim Hood, Attorney General, State of Mississippi, Geoffrey C. Morgan, Assistant Attorney General, George W. Neville, Harold E. Pizzetta, III, Alison E. O'Neal, Mississippi Attorney General's Office, Jackson, MS, C. Michael Ellingburg, Counsel of Record, Larry D. Moffett, Daniel Coker Horton & Bell, P.A., Jackson, MS, John W. (Don) Barrett, David M. McMullan, Jr., Barrett Law Group, P.A., Lexington, MS, George B. Ready, George B. Ready Attorneys, Hernando, MS, Charles Barrett, Charles Barrett, P.C., Nashville, TN, for Plaintiff.

Lynn Fitch, Attorney General, State of Mississippi, Tricia Beale, Ta'shia S. Gordon, Mississippi Attorney, General's Office, Jackson, MS, C. Michael Ellingburg, Counsel of Record, Ellingburg Law Firm, Pllc, Flowood, MS, Larry D. Moffett, Law Office of Larry D., Moffett, Pllc, Oxford, MS, Charles Barrett, William J. Harbison, II, Neal & Harwell, Plc, Nashville, TN, Edward C. Taylor, Daniel Coker Horton & Bell, P.A., Gulfport, MS, for Plaintiff.

David C. Frederick, Joshua D. Branson, Grace W. Knofczynski, Alejandra Avila, Kellogg, Hansen, Todd Figel & Frederick P.L.L.C., Washington, D.C., Herbert H. Slatery III, Attorney General, Andrée Sophia Blumstein, Solicitor General, Sohnia W. Hong, Senior Counsel, Counsel of Record, Nashville, TN, David L. Bearman, Counsel of Record, Kristine L. Roberts, Baker, Donelson, Bearman, Caldwell & Berkowitz, Pc, Memphis, TN, Cheryl W. Patterson, Charlotte Knight Griffin, Memphis Light, Gas & Water Division, Memphis, TN, Jennifer Sink, City of Memphis, TN, for Defendants.

**Opinion**

Chief Justice ROBERTS delivered the opinion of the Court.

The City of Memphis sits on the banks of the Mississippi River in the southwest corner of Tennessee. Arkansas marks the City's western border, and Mississippi its southern. Hundreds of feet beneath Memphis lies one of the City's most valuable resources: the Middle Claiborne Aquifer. Workers discovered the aquifer in 1886 while drilling a well for the Bohlen-Huse Ice Company. Ever since, water pumped from the aquifer has provided Memphis with an abundant supply of clean, affordable drinking water.

The Middle Claiborne Aquifer underlies other States too, including Mississippi. This case began in 2014 when Mississippi invoked our original jurisdiction and sought leave to file a bill of complaint against Tennessee. Mississippi alleges that Tennessee's pumping has taken hundreds of billions of gallons of water that were once located beneath Mississippi. It seeks at least $615 million in damages, as well as declaratory and injunctive relief. We granted Mississippi leave to file its complaint and appointed a Special Master to oversee proceedings. The Special Master has now issued his report, which recommends that this Court dismiss Mississippi's complaint with leave to amend. Both Mississippi and Tennessee have filed exceptions.

I

A

Layers of rock, clay, silt, sand, and gravel exist below the Earth's surface. Groundwater percolates through the spaces in and around these materials, sometimes forming underground reservoirs of water known as aquifers. Some aquifers are small, while others span tens of thousands of square miles. The Middle Claiborne Aquifer is one of the latter. It underlies portions of eight States in the Mississippi River Basin: Alabama, Arkansas, Illinois, Kentucky, Louisiana, Mississippi, Missouri, and Tennessee. See Report of Special Master 16; Hearing Tr. 278–279. Many of these States, including Mississippi and Tennessee, draw significant amounts of groundwater from the aquifer. *Id.,* at 660–662, 1038–1040; Joint Exh. J–71.

To extract water from an aquifer, people drill wells. Pumps then draw water to the surface, where it is processed and piped to customers. Pumping does not just bring water to the surface; it also lowers water pressure at the site of the well. Water is naturally drawn to this area of lower pressure. This, in turn, "causes a pattern of lower or depressed water levels around the wells." Report of Special Master 13. Hydrogeologists call such areas "cones of depression." These cones of depression can be local—say, the size of a backyard. Or they can be regional, stretching out for many miles from a pumping site. See *id.,* at 21–23; Hearing Tr. 176, 188, 435.

**\*3** The City of Memphis, through its public utility, the Memphis Light, Gas and Water Division (MLGW), pumps approximately 120 million gallons of groundwater from the Middle Claiborne Aquifer each day. *Id.,* at 186, 200; Pl. Exh. P–157. It does so using more than 160 wells located in and around Memphis. Joint Statement of Stipulated and Contested Facts 101. Some of these wells are located just a few miles from the Mississippi-Tennessee border, though all are drilled straight down such that none crosses the physical border between the States. *Id.,* at 101–102, 106. MLGW's pumping contributes to a cone of depression that underlies both the City of Memphis and DeSoto County, Mississippi. Report of Special Master 21–23; Hearing Tr. 206, 435–436, 525.

Mississippi argues that MLGW's pumping has altered the historic flow of groundwater within the Middle Claiborne Aquifer. Mississippi concedes that some water naturally flows from the part of the aquifer beneath Mississippi to the part

beneath Tennessee. But only to the extent of some 30 to 60 feet per year. See Exceptions Brief for Mississippi 8; see also Report of Special Master 24 ("Mississippi does not dispute the expert consensus that at least some quantity of groundwater ... crossed the border under natural conditions."). Mississippi contends that MLGW's pumping has substantially hastened this existing flow, allowing Memphis to take billions of gallons of groundwater that otherwise would have remained under Mississippi for thousands of years.

B

In 2005, prior to the present litigation, the Attorney General of Mississippi sued the City of Memphis and MLGW in Federal District Court. The suit alleged that Memphis had wrongfully appropriated groundwater belonging to Mississippi through its pumping activities. Mississippi sought hundreds of millions of dollars in damages.

The District Court dismissed the suit for failure to join Tennessee, which it determined was an indispensable party. *Hood ex rel. Miss.* v. *Memphis*, 533 F. Supp. 2d 646, 651 (ND Miss. 2008). The Fifth Circuit then affirmed. *Hood ex rel. Miss.* v. *Memphis*, 570 F. 3d 625 (2009).

Both decisions turned in large part on what is known as "equitable apportionment." Under that doctrine, this Court allocates rights to a disputed interstate water resource after one State sues another under our original jurisdiction. See *Kansas* v. *Colorado*, 206 U.S. 46, 97–98 (1907). Traditionally, equitable apportionment has been the exclusive judicial remedy for interstate water disputes, unless a statute, compact, or prior apportionment controls. This Court has never before held that an interstate aquifer is subject to equitable apportionment, so Mississippi's suit implicated a question of first impression.

The Court of Appeals, affirming the District Court, held that interstate aquifers are comparable to interstate rivers and are thus subject to equitable apportionment. It reasoned that an aquifer "flows, if slowly." *Hood ex rel. Miss.*, 570 F. 3d, at 630. And it said the fact that an aquifer is "located underground, as opposed to resting above ground," was of "no analytical significance." *Ibid.* Because determining "Mississippi and Tennessee's relative rights to the Aquifer" brought the case within the equitable apportionment doctrine, the Court of Appeals affirmed the District Court's holding that Tennessee was an indispensable party. *Id.,* at 630–631; see also Fed. Rule Civ. Proc. 19(a). Joinder of Tennessee in the lower federal courts was not possible, however, because this Court has exclusive jurisdiction over suits between States. See U.S. Const., Art. III, § 2; 28 U.S. C. § 1251(a). So the Fifth Circuit held that the District Court had properly dismissed the suit. *Hood ex rel. Miss.*, 570 F. 3d, at 632–633; Fed. Rule Civ. Proc. 19(b).

**\*4** Mississippi then petitioned for a writ of certiorari. It also sought leave to file a bill of complaint against Tennessee, Memphis, and MLGW under our original jurisdiction. The proposed complaint requested over $1 billion in damages for the alleged taking of Mississippi's water. In the alternative, it sought equitable apportionment of the aquifer, with a damages award for past diversions of groundwater. We declined to grant certiorari, 559 U.S. 904 (2010), and denied without prejudice Mississippi's request for leave to file a bill of complaint, 559 U.S. 901 (2010).

C

In 2014, Mississippi again sought leave from this Court to file a bill of complaint against Tennessee, Memphis, and MLGW. That is the basis of this suit. Mississippi's complaint alleges that MLGW "has forcibly siphoned into Tennessee hundreds of billions of gallons of high quality groundwater owned by Mississippi." Complaint ¶23. It says that MLGW's "mechanical pumping" is to blame and that the "groundwater taken by Defendants from within Mississippi's borders would have never under normal, natural circumstances been drawn into Tennessee." *Id.,* ¶24. This "wrongful taking," the State contends, "is evidenced by a substantial drop in pressure and corresponding drawdown of stored groundwater" in northwest Mississippi, and by a cone of depression extending miles into its territory. *Id.,* ¶25. As a result, Mississippi says, it has to drill its own wells deeper to access the aquifer, and use more electricity to pump water to the surface. *Id.,* ¶54(b).

Mississippi claims an absolute "ownership" right to all groundwater beneath its surface—even after that water has crossed its borders. See *id.,* ¶¶8–12, 39. It argues that Tennessee's pumping thus amounts to a tortious taking of property, and it seeks at least $615 million in damages. See *id.,* ¶¶55–56. Mississippi expressly disclaims equitable apportionment, arguing that the "fundamental premise of this Court's equitable apportionment jurisprudence—that each of the opposing States has an equality of right to use the waters at issue—does not apply to this dispute." *Id.,* ¶49.

We granted Mississippi leave to file its complaint and appointed Judge Eugene E. Siler, Jr., of the Sixth Circuit to serve as Special Master. He has ably discharged his duties. Following motions practice, discovery, and a five-day evidentiary hearing, the Special Master issued a report recommending that we dismiss Mississippi's complaint, but with leave to amend. He first determined that the Middle Claiborne Aquifer is an interstate water resource. He found that the aquifer is a "single hydrogeological unit," that Tennessee's pumping affects groundwater beneath Mississippi, and that prior to such pumping, "groundwater flowed between Mississippi and Tennessee"—a fact Mississippi "does not dispute." Report of Special Master 15–24.

The Special Master then concluded that, because the aquifer is an interstate water resource, equitable apportionment is the appropriate remedy. He recognized that equitable apportionment "stands alone as the federal common-law principle for disputes over interstate water," *id.,* at 31, and saw "no compelling reason to chart a new path for groundwater resources," *id.,* at 26. Because Mississippi's complaint did not seek equitable apportionment, the Special Master recommends that we dismiss it. But he also recommends that we grant Mississippi leave to file an amended complaint seeking equitable apportionment, though the State has not yet sought such leave.

Mississippi and Tennessee both filed exceptions to the Special Master's report. Mississippi objects to the Special Master's recommendation that we dismiss the suit. It argues that the Special Master erred in finding the water in the Middle Claiborne Aquifer subject to equitable apportionment. Tennessee objects only to the Special Master's recommendation that we grant Mississippi leave to amend its complaint.

 *5  We "conduct an independent review of the record, and assume the ultimate responsibility for deciding all matters." *Kansas* v. *Nebraska,* 574 U.S. 445, 453 (2015) (internal quotation marks omitted). Based on that review, we dismiss Mississippi's complaint and decline to grant leave to amend.

II

A

Equitable apportionment aims to produce a fair allocation of a shared water resource between two or more States. See *Colorado* v. *New Mexico,* 459 U.S. 176, 183 (1982). The doctrine's "guiding principle" is that States "have an equal right to make a reasonable use" of a shared water resource. *Florida* v. *Georgia*, 592 U.S. ——, —— (2021) (slip op., at 4) (internal quotation marks omitted).

We pioneered the doctrine in *Kansas* v. *Colorado,* 206 U.S. 46. Since then, we have often applied it to interstate rivers and streams. See *South Carolina* v. *North Carolina,* 558 U.S. 256 (2010); *Colorado* v. *New Mexico,* 459 U.S. 176; *Nebraska* v. *Wyoming,* 325 U.S. 589 (1945); *Wyoming* v. *Colorado,* 259 U.S. 419 (1922). We have also applied the doctrine to disputes over interstate river basins, see *Florida* v. *Georgia*, 585 U.S. ——, —— – —— (2018) (slip op., at 2–3), and in situations where the pumping of groundwater has affected the flow of interstate *surface* waters, see *Nebraska* v. *Wyoming,* 515 U.S. 1, 14 (1995). We have even applied the doctrine to anadromous fish—such as Chinook salmon and steelhead trout—that migrate between the Pacific Ocean and spawning grounds in the Columbia-Snake River system, "travel[ing] through several States during their lifetime." See *Idaho ex rel. Evans* v. *Oregon,* 462 U.S. 1017, 1018–1019, 1024 (1983).

Mississippi correctly observes that we have never considered whether equitable apportionment applies to interstate aquifers. See Exceptions Brief for Mississippi 28. Confronted as we are with this matter of first impression, we resist general propositions and focus our analysis on whether equitable apportionment of the Middle Claiborne Aquifer would be "sufficiently similar" to past applications of the doctrine to warrant the same treatment. *Idaho ex rel. Evans,* 462 U.S., at 1024 (adopting such an approach in extending the doctrine to anadromous fish). We conclude that it would.

First, we have applied equitable apportionment only when transboundary resources were at issue. See *Virginia* v. *Maryland,* 540 U.S. 56, 74, n. 9 (2003); *Colorado* v. *New Mexico,* 459 U.S., at 183. The Middle Claiborne Aquifer's "multistate character" seems beyond dispute. See *Sporhase* v. *Nebraska ex rel. Douglas,* 458 U.S. 941, 953 (1982). Mississippi concedes that the "geologic formation in which the groundwater is stored straddles two states." Complaint ¶41. Indeed, a core premise of Mississippi's suit is that Tennessee is pumping water that was once in Mississippi. The evidence shows that wells in Memphis and wells in northwest Mississippi are "pumping from the same aquifer." Hearing Tr. 492; see Report of Special Master 20 (noting that the

"scientific consensus holds that the Middle Claiborne Aquifer is a single hydrogeological unit" spanning multiple States).

Also pertinent is that the Middle Claiborne Aquifer contains water that flows naturally between the States. All of our equitable apportionment cases have concerned such water, *Kansas* v. *Colorado,* 206 U.S., at 98, or fish that live in it, *Idaho ex rel. Evans,* 462 U.S., at 1024. Mississippi suggests the Middle Claiborne Aquifer is distinguishable from interstate rivers and streams because its natural flow is "extremely slow." Exceptions Brief for Mississippi 8. But we have long applied equitable apportionment even to streams that run dry from time to time. See *Kansas* v. *Colorado,* 206 U.S., at 115. And although the transboundary flow here may be a mere "one or two inches per day," Exceptions Brief for Mississippi 8, that amounts to over 35 million gallons of water per day, and over ten billion gallons per year, see Hearing Tr. 532–533. So the speed of the flow, at least in the context of this case, does not place the aquifer beyond equitable apportionment.

**\*6** Finally, it is clear that actions in Tennessee "reach[ ] through the agency of natural laws" to affect the portion of the aquifer that underlies Mississippi. *Kansas* v. *Colorado,* 206 U.S., at 97. Tennessee's pumping has contributed to a cone of depression that extends miles into northern Mississippi. Hearing Tr. 484–485, 501–502, 926; see also Report of Special Master 22–23. Mississippi itself contends that this cone of depression has reduced groundwater storage and pressure in northern Mississippi. See Complaint ¶¶25, 54. It also alleges that Tennessee's pumping is "siphoning" tens of millions of gallons of groundwater each day from Mississippi's portion of the aquifer. *Id.*, ¶54. Such interstate effects are a hallmark of our equitable apportionment cases. See, *e.g., Florida* v. *Georgia*, 592 U.S., at —— – —— (2021) (slip op., at 2–3) (examining the effects of Georgia's water use on Florida's oyster fisheries and river ecosystem).

For these reasons, we hold that the waters of the Middle Claiborne Aquifer are subject to the judicial remedy of equitable apportionment.

B

Mississippi contends that it has sovereign ownership of all groundwater beneath its surface, so equitable apportionment ought not apply. We see things differently. It is certainly true that "each State has full jurisdiction over the lands within its borders, including the beds of streams and other waters." *Kansas* v. *Colorado,* 206 U.S., at 93. But such jurisdiction does not confer unfettered "ownership or control" of flowing interstate waters themselves. *Wyoming* v. *Colorado,* 259 U.S., at 464. Thus, we have "consistently denied" the proposition that a State may exercise exclusive ownership or control of interstate "waters flowing within her boundaries." *Hinderlider* v. *La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 102 (1938). Although our past cases have generally concerned streams and rivers, we see no basis for a different result in the context of the Middle Claiborne Aquifer. When a water resource is shared between several States, each one "has an interest which should be respected by the other." *Wyoming* v. *Colorado,* 259 U.S., at 466. Mississippi's ownership approach would allow an upstream State to completely cut off flow to a downstream one, a result contrary to our equitable apportionment jurisprudence.

Mississippi argues that our decision in *Tarrant Regional Water Dist.* v. *Herrmann,* 569 U.S. 614 (2013), supports its position. We disagree. *Tarrant* concerned the interpretation of an interstate compact. We held that the compact did not authorize the party States to "cross each other's boundaries to access a shared pool of water." *Id.,* at 627. Our decision turned on the language of the compact and background principles of contract law. We did not consider equitable apportionment, because the affected States had taken it upon themselves to negotiate a compact that determined their respective rights to the resource in question.

To the extent *Tarrant* stands for the broader proposition that one State may not physically enter another to take water in the absence of an express agreement, that principle is not implicated here. The parties have stipulated that all of Tennessee's wells are drilled straight down and do not cross the Mississippi-Tennessee border. See Joint Statement of Stipulated and Contested Facts 106. When Tennessee pumps groundwater, it is pumping water located within its own territory. That some of the water was previously located in Mississippi is of no moment, just as it was not dispositive that the river at issue in *Colorado* v. *New Mexico* started in Colorado, 459 U.S., at 181, n. 8, or that certain fish at issue in *Idaho ex rel. Evans* hatched in Idaho, 462 U.S., at 1028, n. 12. The origin of an interstate water resource may be relevant to the terms of an equitable apportionment. But that feature alone cannot place the resource outside the doctrine itself.

**\*7** We conclude that the waters contained in the Middle Claiborne Aquifer are subject to equitable apportionment.

We therefore overrule Mississippi's exceptions and adopt the Special Master's recommendation to dismiss the bill of complaint.

III

After recommending that this Court dismiss Mississippi's suit, the Special Master went on to recommend that we grant the State leave to file an amended complaint seeking equitable apportionment. We decline to decide whether Mississippi should be granted such leave, because the State has never sought it. As Mississippi itself emphasizes—literally—it has "*not yet requested equitable apportionment*." Reply Brief to Defendants' Exception 7.

Nor can we assume Mississippi will do so. Mississippi's initial pleadings in this case disavowed equitable apportionment entirely. See Complaint ¶38 ("This case does not fall within the Court's equitable apportionment jurisprudence."). The State instead sought relief under principles of tort law. And the proceedings below reflected this posture, focusing on the physical properties of the aquifer and Tennessee's pumping. An equitable apportionment case would require us to consider a broader range of evidence. Such evidence often includes not only the physical properties and flow of a water resource, but also existing uses, the availability of alternatives, practical effects, and the costs and benefits to the States involved. See *Florida* v. *Georgia*, 585 U.S., at —— – —— (2018) (slip op., at 13–14); *South Carolina*, 558 U.S., at 271–272; *Colorado* v. *New Mexico*, 459 U.S., at 183, 186–187. A just equitable apportionment might also require the joinder of additional parties, cf. Fed. Rule Civ. Proc. 19(a), as Mississippi and Tennessee are not the only States that rely on the Middle Claiborne Aquifer for groundwater, see Hearing Tr. 660–662, 1038–1040; Joint Exh. J–71. Finally, if Mississippi were to seek leave to amend, its complaint would be subject to our longstanding rule that a "State seeking equitable apportionment under our original jurisdiction must prove by clear and convincing evidence some real and substantial injury or damage." *Idaho ex rel. Evans*, 462 U.S., at 1027.

As Mississippi has neither sought leave to amend nor tendered a proposed complaint seeking equitable apportionment, we have no occasion to determine how these and other pertinent principles might apply.

\* \* \*

Mississippi has failed to show that it is entitled to relief. We therefore overrule Mississippi's exceptions to the Special Master's report, sustain Tennessee's, and dismiss the case.

It is so ordered.

**All Citations**

--- S.Ct. ----, 2021 WL 5434188

Footnotes

\*   The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337.