JULIA A. OLSON (OR Bar 062230)
julia@ourchildrenstrust.org
Our Children's Trust
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

ANDREA K. RODGERS (OR Bar 041029)
andrea@ourchildrenstrust.org
Our Children's Trust
3026 NW Esplanade
Seattle, WA 98117
Tel: (206) 696-2851

PHILIP L. GREGORY (*pro hac vice*)
pgregory@gregorylawgroup.com
Gregory Law Group
1250 Godetia Drive
Redwood City, CA 94062
Tel: (650) 278-2957

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**; **XIUHTEZCATL TONATIUH M.**, through his Guardian Tamara Roske-Martinez; et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>**The UNITED STATES OF AMERICA**; et al.,<br><br>    Defendants. | Case No.: 6:15-cv-01517-AA<br><br>**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** *Dobbs v. Jackson Women's Health Org.*, **142 S. Ct. 2228 (2022)** |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**                                    1

Plaintiffs hereby provide notice of supplemental authority of a new opinion from the United States Supreme Court issued on June 24, 2022, *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022), attached to this Notice, which supports Plaintiffs' Motion for Leave to File Amended Complaint. Doc. 462.

*Dobbs* is precedential to this Court's decision on whether to allow Plaintiffs to proceed to trial on their proposed Second Amended Complaint, now pending before the Court on Plaintiffs' Motion for Leave to Amend, where the core issue presented to this Court is whether or not amendment is "futile." Defendants' Opp., Doc. 468 at 11; Plaintiffs' Reply, Doc. 469 at 1. As Plaintiffs have previously briefed this Court, the Supreme Court has long held whether declaratory judgment (sought here) is a useful remedy, *i.e.*, not futile, in a particular case is a factual inquiry vested in the district courts in the first instance. Plaintiffs' Reply, Doc. 469 at 5-6 (citing *MedImmune, Inc. v. Genentech, Inc*, 549 U.S. 118, 136 (2007)). *Dobbs* supports a ruling by this Court that one of the most vital roles of our federal judiciary is to evaluate and to declare, as these youth have requested in their proposed Second Amended Complaint, whether the rights Plaintiffs claim to be violated are constitutionally protected and what standard of review applies to a claimed infringement of those rights. *Dobbs* also provides a roadmap for this Court to analyze the alleged rights in this case and issue declaratory judgment. Finally, while overturning the long-standing precedent of *Roe v. Wade, Dobbs* simultaneously promises that the Supreme Court did nothing to undermine the precedent of other implicit liberty rights Plaintiffs have relied on in this case, which remain binding constitutional precedent.

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**                                    2

1. ***Dobbs* affirms the judiciary's vital and ongoing role in analyzing, finding, and "un-finding" constitutional rights, which defines the legal rights of citizens vis-à-vis their government.**

*Dobbs* holds that the Court's "sole authority is to exercise 'judgment'—which is to say, the authority to judge what the law means and how it should apply to the case at hand." 142 S. Ct. at 2278. The Court "can only do [its] job, which is to interpret the law, apply longstanding principles of *stare decisis,* and decide this case accordingly." *Id.* at 2279. Thus, *Dobbs* affirms that deciding what rights the Constitution confers or does not confer is squarely the province of the judiciary. It also makes crystal clear the profundity of declaring or denying constitutional rights in an actual case or controversy, in line with *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021), which also held declarative remedies "affect[t] the behavior of the defendant towards the plaintiff" providing redress under an Article III standing analysis. *See* Plaintiffs' Reply, Doc. 469 at 8. Just as declaring the right to reproductive choice, namely abortion, constitutionally protected and now unprotected has affected the lives of countless people and the behavior of government, declaring the right to a climate system capable of sustaining human life constitutionally protected or unprotected will also have immense consequence in the relationship between these youth and their government, as Plaintiffs have alleged in their proposed Second Amended Complaint. *See e.g.,* Doc. 514-1, SAC ¶ 30-A.

G. Tucker's Blackstone Commentaries,[1] relied upon by the Supreme Court in *Dobbs*, affirms that:

> [J]udges . . . are the depositaries of the laws; the living oracles, who must decide in all cases of doubt and who are bound by an oath to decide according to the law of the land. Their knowledge of that law is derived from experience and study; from the "*viginti annorum lucubrationes*," [trans.: the nighttime labors of twenty years]

---

[1] The Supreme Court leans heavily on the "most important early American edition of Blackstone's Commentaries," 2 St. George Tucker, from 1803, in conducting its analyses. *Dobbs*, 142 S. Ct. at 2251.

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** 3

> which Fortescue mentions; and from being long personally accustomed to the judicial decisions of their predecessors. And indeed these judicial decisions are the principal and most authoritative evidence, that can be given, of the existence of such a custom as shall form a part of the common law.

2 St. George Tucker 69 (1803). As Plaintiffs argued in their reply brief of this Motion to Amend:

> Defendants contend Plaintiffs have no constitutional rights to personal security, family autonomy, life, liberty, property, equal protection, public trust resources, or a climate system that sustains life, and Defendants dispute they are infringing those rights, which unequivocally make them adversaries of the youth.

Plaintiffs' Reply, Doc. 469 at 7. Only the Court can resolve this life-threatening controversy and, according to *Dobbs,* declare whether or not the rights asserted are constitutionally protected.

## 2. *Dobbs* **mandates a historical factual inquiry in cases involving finding or "un-finding" constitutional rights**

The Supreme Court's approach in *Dobbs* supports the duty of this Court to undertake a thorough merits-based analysis of these young people's assertion of rights and infringement thereof. In overruling *Roe* and *Casey*, the Majority examined whether the Constitution refers to abortion, and whether such right is implicitly protected by any constitutional provision, reiterating the *Glucksberg* test that any such right must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." 142 S. Ct. at 2242, citing *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). For instance, the Supreme Court refers to "the language of the instrument" as offering a "'fixed standard' for ascertaining what our founding document means." 142 S. Ct. at 2244-45, citing 1 J. Story, Commentaries on the Constitution of the United States § 399, p. 383 (1833). While *Dobbs* involved a right whose specific words, "privacy" and "abortion," are not in the Constitution, *Id*. at 2245, in *Juliana*, Plaintiffs claim a right to a "climate system capable of sustaining human life," and to "life" itself, which is explicitly in the language of the instrument. Doc. 514-1 ¶¶ 5, 8, 34-A, 96,

278-82[2]; U.S. Const. amend. V. Only the courts can "ascertain" what the right of "life" means in the founding documents and whether these Youth Plaintiffs are entitled to its constitutional protection.[3]

Similarly, with respect to "liberty," only the courts can decide what protection liberty affords under the Constitution. Thus, *Dobbs* sets forth, in part, this Court's task: "Historical inquiries of this nature are essential whenever we are asked to recognize a new component of the 'liberty' protected by the Due Process Clause because the term 'liberty' alone provides little guidance. 'Liberty' is a capacious term." 142 S. Ct. at 2247. "Ordered liberty sets limits and defines the boundary between competing interests." *Id*. at 2257. Now, more than ever, as this Supreme Court begins rewriting the definition of constitutionally-protected liberty through an historical lens, fact-based, historically-informed, merits-based decisions by our federal district courts must precede appellate court review of an actual case or controversy regarding asserted constitutional rights and infringements.

*Dobbs* also heralds *Timbs v. Indiana*, 139 S. Ct. 682 (2019) and *McDonald v. Chicago*, 561 U.S. 742, 763–66 (2010), as models of constitutional analysis; both of which were fact-intensive cases, with *Timbs* decided on the merits after consideration of the evidence. 142 S. Ct. at 2246-47. In line with those models, the Supreme Court "begin[s] with the common law…" *Id*. at 2249. The Supreme Court also looks to "state constitutional provision or statute," "federal or state judicial

---

[2] References to the "right to life" or infringements to a Plaintiff's "life" arise more than 100 times throughout the proposed Second Amended Complaint. *See* Doc. 514-1.
[3] *See Juliana v. United States*, 217 F. Supp. 3d 1224, 1250 (D. Or. 2016), *rev'd and remanded*, 947 F.3d 1159 (9th Cir. 2020) ("In this opinion, this Court simply holds that where a complaint alleges governmental action is affirmatively and substantially damaging the climate system in a way that will cause human deaths, shorten human lifespans, result in widespread damage to property, threaten human food sources, and dramatically alter the planet's ecosystem, it states a claim for a due process violation.").

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** 5

precedent," and "scholarly treatise." *Id*. at 2259. The failure to engage with the long traditions of history can be "devastating" to a judicial position, according to the Majority in *Dobbs*. *Id*. at 2260. Ultimately, the Supreme Court is looking for a "firm grounding in constitutional text, history, or precedent," and constitutional standards that are built to last. *Id*. at 2272, 2274. Unlike *Dobbs*' criticism of *Roe,* the present case does not require the Court to conduct "doctrinal innovation" that "engineer[s] exceptions to longstanding background rules" or fail to deliver a "'principled and intelligible' development of the law." *Id*. at 2276. A thorough factual and historical inquiry based on the claims in the proposed Second Amended Complaint will make clear that the asserted constitutionally protected rights are entirely consistent with constitutional text, common law, longstanding background rules, Blackstone, Story, and the like, and are vital to ordered liberty.

Thus, *Dobbs* makes clear both that constitutional analyses require rigor, as well as exploration of facts and history, and that the judiciary is the singular branch of government tasked with such an inquiry in an actual constitutional case or controversy as is presented here.

### 3. *Dobbs* affirms other implicit liberty rights

*Dobbs* repeatedly affirms that the implicit liberty rights protected by precedent such as *Griswold*, 381 U.S. 479 (1965), *Eisenstadt*, 405 U.S. 438 (1972), *Lawrence,* 539 U.S. 558 (2003), and *Obergefell*, 576 U.S. 644 (2015), remain intact as binding constitutional precedent.

> The abortion right is also critically different from any other right that this Court has held to fall within the Fourteenth Amendment's protection of "liberty." . . . because it destroys what [*Roe* and *Casey*] called "fetal life" and what the law now before us describes as an "unborn human being."

*Id*. at 2243.  Notwithstanding the concurrence or dissent, the Supreme Court reiterated repeatedly throughout *Dobbs*: "The exercise of the rights at issue in *Griswold*, *Eisenstadt*, *Lawrence*, and *Obergefell* does not destroy a 'potential life,' but an abortion has that effect," *Id.* at 2261; "none of these decisions involved what is distinctive about abortion: its effect on what *Roe* termed

'potential life,'" *Id*. at 2268; "our decision concerns the constitutional right to abortion and no other right. Nothing in this opinion should be understood to cast doubt on precedents that do not concern abortion," *Id*. at 2277-78; the "conclusion that the Constitution does not confer such a right [to abortion] does not undermine [other recognized implicit rights] in any way." *Id*. at 2258. In sum, the Supreme Court says: Abortion is different. Life, even "potential life" is at stake.

Here, too, life is at stake.

### Conclusion

*Dobbs* is precedential to this Court's decision on the Motion to Amend because the issues presented by the proposed Second Amended Complaint involve fundamental constitutional rights, where the evidence will show such rights have substantial basis in the Constitution's text and in our Nation's history. Defendants take the position that federal courts lack authority to declare or deny the existence of any such fundamental rights, but the *Dobbs* decision clearly shows such position is untenable.

If one trusts the message of the Supreme Court in *Dobbs*, when it criticizes the dissent that righting constitutional wrongs should not take decades, especially when "potential life" is at stake and generations of "children" have suffered, then *Dobbs* makes clear that *Juliana v. United States* must proceed from a Second Amended Complaint to trial and decision on the merits, and there is no time to waste. In the Supreme Court's words:

> Does the dissent really maintain that overruling *Plessy* was not justified until the country had experienced more than a half-century of state-sanctioned segregation and generations of Black school children had suffered all its effects?

*Id*. at 2279. Said another way, can any judge "really maintain" that deciding whether children have rights to life and a stable climate system is "not justified until the country ha[s] experienced more than a half-century of state-sanctioned [climate destruction] and generations of [ ] children had

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**                                                              7

suffered all its effects?" A trial in *Juliana* is entirely consistent with the *Dobbs* Majority's concern about the constitutional issues presented by government-sanctioned harm to life, liberty, and children, and the need to set the constitutional record straight based on the Constitution's text and our Nation's history. No final decision in this case should be rendered until *this Court* has had a chance to hear the case on the merits and make that most vital constitutional ruling about the right to life and liberty of our children.

In criticizing the *Dobbs* Concurrence by the Chief Justice for offering a "narrow decision" that the Majority viewed as wrong and unprincipled, the Supreme Court emphasized: the "quest for a middle way would only put off the day when we would be forced to confront the question we now decide. The turmoil . . . would be prolonged. It is far better—for this Court and the country—to face up to the real issue without further delay." *Id*. at 2283. Given the allegations of systemic government action causing the current climate crisis that denies these Youth their rights to life and liberty, particularly when the Ninth Circuit has found the Youth have already more-than-established at the pretrial phase their injury caused by the affirmative acts of their government, this Court should grant Plaintiffs' Motion to Amend and set a trial date forthwith. Such a decision should end Defendants' incessant petitioning the appellate courts for a premature writ of mandamus and any other extraordinary measures on the shadow docket that thwart these Youths' ability to finally have their evidence heard by the district court in the first instance. After all, life is at stake. *Dobbs* demands as much.[4]

---

[4] As women and mothers, and as a grandfather to a beautiful granddaughter, counsel Olson and Rodgers and counsel Gregory wish to note their objection to *Dobbs* and its reversal of *Roe*, constitutional protection that Olson and Rodgers have lived under since infancy. We object to equating *Dobbs* with *Brown v. Board of Education*. And we object to the Majority of the Supreme Court writing women and privacy over our bodies out of the U.S. Constitution. Out of respect for the rule of law, the judiciary, and our sworn oaths to uphold the Constitution, we will argue before this Court faithfully following Supreme Court precedent as warranted, and we will work to protect

DATED this 11th day of October, 2022.

                        Respectfully submitted,

                        */s/ Julia A. Olson*
                        JULIA A. OLSON (OR Bar 062230)
                        julia@ourchildrenstrust.org

                        PHILIP L. GREGORY (*pro hac vice*)
                        pgregory@gregorylawgroup.com

                        ANDREA K. RODGERS (OR Bar 041029)
                        andrea@ourchildrenstrust.org

                        *Attorneys for Plaintiffs*

---

the fundamental rights and equal protection of the law of all genders, races, cultures, religions, sexual orientations, and socio-economic classes of children today and of generations of children to come so that they can strive for their best potential in life and be safe in their bodies, minds, homes, schools, and communities. As attorneys, we will name wrongs and seek to right them when we see them.

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**                        9