IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA, *et al.*,** | Civ. No. 6:15-cv-01517-AA |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **UNITED STATES OF AMERICA, *et al.*,** | |
| Defendants. | |

_____

AIKEN, District Judge:

In this civil rights action, plaintiffs—a group of young people between the ages of eight and nineteen when this lawsuit was filed and "future generations" through their guardian Dr. James Hansen—allege injury from the devastation of climate change and contend that the Constitution guarantees the right to a stable climate system capable of sustaining human life. Plaintiffs maintain that federal defendants have continued to permit, authorize, and subsidize fossil fuel extraction and consumption, despite knowledge that those actions cause catastrophic global warming. This case returns to this Court on remand from the Ninth Circuit Court of Appeals, where plaintiffs demonstrated their "injury in fact" was "fairly traceable" to federal defendants' actions—two of three requirements necessary to establish

standing under Article III.  However, the Ninth Circuit reversed with instructions to dismiss plaintiffs' case, holding that plaintiffs failed to demonstrate "redressability"—the third, final requirement to establish Article III standing.  The Ninth Circuit determined that plaintiffs did not "surmount the remaining hurdle" to prove that the relief they seek is within the power of an Article III court to provide. *Juliana v. United States*, 947 F.3d 1159, 1171 (9th Cir. 2020).  After that court's decision, plaintiffs moved to amend, notifying this Court of an intervening change in controlling law, *Uzuegbunam v. Preczewski*, ___U.S.___, 141 S. Ct. 792 (2021), asserting abrogation of the Ninth Circuit's ruling on redressability.  Now, plaintiffs contend that permitting amendment will allow plaintiffs to clear the hurdle the Ninth Circuit identified, so that the case may proceed to a decision on the merits.  For the reasons explained, this Court grants plaintiffs' motion for leave to file a second amended complaint.  (Doc. 462).

## BACKGROUND

In August 2015, plaintiffs brought this action asserting that the federal government has known for decades that carbon dioxide pollution was causing catastrophic climate change and that large-scale emission reduction was necessary to protect plaintiffs' constitutional right to a climate system capable of sustaining human life.  (Doc. 7 at 51).  As the Ninth Circuit recognized, plaintiffs provided compelling evidence, largely undisputed by federal defendants, that "leaves little basis for denying that climate change is occurring at an increasingly rapid pace." *Juliana*, 947 F.3d at 1166.  The substantial evidentiary record supports that since the dawn of the Industrial Age, atmospheric carbon dioxide has "skyrocketed to levels

not seen for almost three million years," with an astonishingly rapid increase in the last forty years. *Id*. at 1166. The Ninth Circuit summarized what plaintiffs' expert evidence establishes: that this unprecedented rise stems from fossil fuel combustion and will "wreak havoc on the Earth's climate if unchecked." *Id*. The problem is approaching "the point of no return," the court stated, finding that the record conclusively demonstrated that the federal government has long understood the risks of fossil fuel use. *See id*. (cataloguing, as early as 1965, urgent warnings and reports from government officials imploring swift nationwide action to reduce carbon emissions before it was too late).

In their first amended complaint, filed in the District Court for the District of Oregon, plaintiffs alleged violations of their substantive rights under the Due Process Clause of the Fifth Amendment; the Fifth Amendment right to equal protection of the law; the Ninth Amendment; and the public trust doctrine. (Doc. 7). Plaintiffs also sought several forms of declaratory relief and an injunction ordering federal defendants to implement a plan to "phase out fossil fuel emissions and draw down excess atmospheric [carbon dioxide]." *Id*. at 94-95.

Federal defendants moved to dismiss for lack of standing, failure to state a cognizable constitutional claim, and failure to state a claim on a public trust theory. (Doc. 27). Adopting the findings and recommendation of Federal Magistrate Judge Thomas Coffin, this Court denied federal defendants' motion, concluding that plaintiffs had standing to sue, raised justiciable questions, and had stated a claim for infringement of a Fifth Amendment due process right:

> In this opinion, this Court simply holds that where a complaint alleges governmental action is affirmatively and substantially damaging the climate system in a way that will cause human deaths, shorten human lifespans, result in widespread damage to property, threaten human food sources, and dramatically alter the planet's ecosystem, it states a claim for a due process violation[.]  To hold otherwise would be to say that the Constitution affords no protection against a government's knowing decision to poison the air its citizens breathe or the water its citizens drink.  Plaintiffs have adequately alleged infringement of a fundamental right.

*Juliana v. United States*, 217 F. Supp. 3d 1224, 1250 (D. Or. 2016), *rev'd and remanded*, 947 F.3d 1159 (9th Cir. 2020).

At that stage of litigation, this Court also determined that plaintiffs had stated a viable due process claim arising from federal defendants' failure to regulate third-party emissions and had stated a public trust claim grounded in the Fifth and the Ninth Amendments.  *Id.* at 1252, 1259.

Federal defendants moved to certify to the Ninth Circuit for interlocutory appeal[1] this Court's order denying federal defendants' motion to dismiss.  Doc. 120.  This Court denied the motion to certify.  (Doc. 172).  Federal defendants petitioned the Ninth Circuit for Writ of Mandamus, contending that this Court's opinion and order denying their motion to dismiss was based on clear error.  (Doc. 177).  The Ninth Circuit denied the petition, concluding mandamus relief was unwarranted at that stage of litigation, when plaintiffs' claims could be "narrowed" in further proceedings.  *See In re United States*, 884 F.3d 830, 833 (9th Cir. 2018).

---

[1]    A request for permissive interlocutory appeal is governed by 28 U.S.C. § 1292(b), which permits a district court to certify an interlocutory order for immediate appeal if the court is of the opinion that such order: (1) involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

Federal defendants then filed several motions so aimed at narrowing plaintiffs' claims, including motions for judgment on the pleadings, doc. 195; a protective order barring discovery, doc. 196; and for summary judgment, doc. 207. This Court denied defendants' motion for a protective order. (Doc. 212). But this Court granted in part and denied in part federal defendants' motions for judgment on the pleadings and for summary judgment, dismissing plaintiffs' Ninth Amendment claim, dismissing the President as a defendant, and narrowing plaintiffs' equal protection claim to a fundamental rights theory. *Juliana v. United States*, 339 F. Supp. 3d 1062 1103 (D. Or. 2018), *rev'd and remanded*, 947 F.3d 1159 (9th Cir. 2020).

Federal defendants unsuccessfully petitioned for mandamus in the Ninth Circuit and twice sought, and were twice denied, a stay of proceedings by the United States Supreme Court. Ultimately, the Ninth Circuit, on November 8, 2018, issued an order inviting this Court to certify for interlocutory review its orders on federal defendants' dispositive motions. *United States v. U.S. Dist. Court for the Dist.* of Or., No. 18-73014. Shortly thereafter, the Ninth Circuit granted federal defendants' petition to appeal.

On interlocutory appeal of this Court's certified orders denying federal defendants' motions for dismissal, judgment on the pleadings, and summary judgment, the Ninth Circuit agreed with this Court's determination that plaintiffs had presented adequate evidence at the pre-trial stage to show particularized, concrete injuries to legally protected interests. That court recounted evidence that one plaintiff was "forced to leave her home because of water scarcity, separating her from relatives on the Navajo Reservation[,]" and another "had to evacuate his coastal

home multiple times because of flooding." *Id*. at 1168. The Ninth Circuit also determined that this Court correctly found plaintiffs had presented sufficient evidence that their alleged injuries are fairly traceable to federal defendants' conduct, citing among its findings that plaintiffs' injuries "are caused by carbon emissions from fossil fuel production, extraction, and transportation" and that federal subsidies "have increased those emissions," with about 25% of fossil fuels extracted in the United States "coming from federal waters and lands," an activity requiring federal government authorization. *Id*. at 1169. The court held, however reluctantly, that plaintiffs failed to show their alleged injuries were substantially likely to be redressed by any order from an Article III court and that plaintiffs therefore lacked standing to bring suit. *Id*. at 1171.

In so holding, the court stated, "There is much to recommend the adoption of a comprehensive scheme to decrease fossil fuel emissions and combat climate change, both as a policy matter in general and a matter of national survival in particular," however, such was "beyond the power of an Article III court to order, design, supervise, or implement." *Id*. at 1171. Ultimately, based on its redressability holding alone, the Ninth Circuit reversed the certified orders of this Court and remanded the case with instructions to dismiss for lack of Article III standing. *Id*. at 1175.

After the Ninth Circuit issued its interlocutory opinion, plaintiffs notified this Court of what they identified as an intervening case in the United States Supreme Court which held that the award of nominal damages was "a form of declaratory relief in a legal system with no general declaratory judgment act" and that a "request for nominal damages alone satisfies the redressability element of standing where a

plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam*, 141 S. Ct. at 798, 802. Writing for the majority, Justice Thomas explained that, even where a single dollar cannot provide full redress, the ability "to effectuate a *partial remedy*" satisfies the redressability requirement. *Id*. at 801 (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992) (emphasis added).

Plaintiffs contend that the Supreme Court's holding constitutes—as Chief Justice Roberts noted in his dissent—an "expansion of the judicial power" under Article III. *Uzuegbunam*, 141 S. Ct. at 806 (Roberts, C. J. dissenting). According to plaintiffs, the Ninth Circuit was skeptical, but did not decide whether declaratory relief alone would satisfy redressability, where such relief only partially redresses injury. Plaintiffs assert that they should be granted leave to amend to replead factual allegations demonstrating that relief under the under the Declaratory Judgment Act, 28 U.S.C. § 2201, is sufficient to allege redressability, even where a declaration effectuates a partial remedy, as stated in *Uzuegbunam,* which the Ninth Circuit did not have the chance to consider.

## LEGAL STANDARD

Federal Rule of Civil Procedure Rule 15 allows a party to amend its pleading "with the opposing party's written consent or the court's leave." The rule instructs that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Trial courts have discretion in deciding whether to grant leave to amend, but "[i]n exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (citing *Conley*

*v. Gibson*, 355 U.S. 41, 47-48 (1957)).  The judicial policy of Rule 15 favoring amendments should be applied with "extreme liberality." *Id.* (citing *Rosenberg Brothers & Co. v. Arnold*, 283 F.2d 406 (9th Cir. 1960) (per curiam).  Leave to amend should be granted freely "even if a plaintiff's claims have previously been dismissed." *Hampton v. Steen*, No. 2:12-CV-00470-AA, 2017 WL 11573592, at *2 (D. Or. Nov. 13, 2017) (citing *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002)).

Courts consider four factors when determining whether leave to amend should be granted: 1) prejudice to the opposing party; 2) bad faith; 3) futility of amendment; and 4) undue delay.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  Not all factors are equal and only when prejudice or bad faith is shown should leave to amend be denied. *Howey v. United States*, 481 F.2d 1187, 1190-91 (9th Cir. 1973).  Leave to amend should not be denied based only on delay, *id.*, particularly when that delay is not caused by the party seeking amendment.

A court may deny leave to amend if the proposed amendment is futile or would be subject to dismissal.  *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir.2011).  An amendment is "futile" if the complaint could not be saved by amendment.  *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir.2011). The court must determine whether the deficiencies in the pleadings "can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint."  *Id.* (quotation marks omitted).  A party should be allowed to test his claim on the merits rather than on a motion to amend unless it appears beyond doubt that the proposed amended pleading

would be subject to dismissal.  *Roth v. Garcia Marquez*, 942 F.2d 617, 629 (9th Cir.1991).

## DISCUSSION

## I.    Ninth Circuit Mandate Permits Court to Consider Motion to Amend

In its interlocutory opinion, the Ninth Circuit remanded the case to this Court with instructions to dismiss.  Plaintiffs maintain that the Ninth Circuit did not state in its instructions whether dismissal was with or without leave to amend, and therefore, this Court should freely grant leave to do so.  Federal defendants assert that this Court must dismiss according to the rule of mandate and because any amendment would be futile.[2]

Under the "rule of mandate," a lower court is unquestionably obligated to "execute the terms of a mandate."  *United States v. Kellington*, 217 F.3d 1084, 1092 (9th Cir. 2000).  Compliance with the rule of mandate "preserv[es] the hierarchical structure of the court system," *Thrasher*, 483 F.3d at 982, and thus constitutes a basic feature of the rule of law in an appellate scheme.  But while "the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court, it 'leaves to the district court any issue not expressly or impliedly

---

[2]    There is no material dispute between the parties whether plaintiffs' amendments are in bad faith, prejudicial to defendants, or unduly delayed.  Having considered those factors, this Court finds that none bar plaintiffs' request to amend.

disposed of on appeal.'" *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986) (quoting *Stevens v. F/V Bonnie Doon*, 731 F.2d 1433, 1435 (9th Cir. 1984)).

"Absent a mandate which explicitly directs to the contrary, a district court upon remand can permit the plaintiff to file additional pleadings ...." *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 574 (9th Cir. 2019) (quoting *Nguyen,* 792 F.2d at 1502; *see also Sierra Club v. Penfold*, 857 F.2d 1307, 1312 (9th Cir. 1988). When mandate in the prior appeal did not expressly address the possibility of amendment and did not indicate a clear intent to deny amendment seeking to raise new issues not decided by the prior appeal, that prior opinion did not purport "to shut the courthouse doors." *San Francisco Herring Ass'n*, 946 F.3d at 574 (citing *Nguyen*, 792 F.2d at 1503).

In *San Francisco Herring Ass'n*, the Ninth Circuit discussed its issuance of a mandate in a prior appeal, which vacated the district court's order entering summary judgment in the defendants' favor and directed the district court to dismiss the complaint. *See San Francisco Herring Ass'n v. U.S. Dep't of Interior*, 683 F. App'x 579, 581 (9th Cir. 2017) (vacating judgment and remanding case with instructions to dismiss for lack of subject matter jurisdiction). On remand, the district court allowed the plaintiff to seek leave to file a second amended complaint. The Ninth Circuit determined the district court correctly found that the mandate to dismiss did not prevent the plaintiff from seeking leave to re-plead. *San Francisco Herring Ass'n*, 946 F.3d 574. The court reasoned that in instructing to dismiss, it had been silent on whether the dismissal should be with or without leave to amend and did not preclude the plaintiff from filing new allegations. *Id*. at 572-574.

Here, this Court does not take lightly its responsibility under the rule of mandate. Rather, it considers plaintiffs' new factual allegations under the Declaratory Judgment Act, and amended request for relief in light of intervening recent precedent, to be a new issue that, while discussed, was not decided by the Ninth Circuit in the interlocutory appeal. Nor did the mandate expressly state that plaintiffs could not amend to replead their case—particularly where the opinion found a narrow deficiency with plaintiffs' pleadings on redressability. This Court therefore does not interpret the Ninth Circuit's instructions as mandating it "to shut the courthouse doors" on plaintiffs' case where they present newly amended allegations. *San Francisco Herring Ass'n*, 946 F.3d at 574.

## II.    Amendment is Not Futile

### A.    *The Interlocutory Opinion*

The Ninth Circuit recited the established rule that, to demonstrate Article III redressability, plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award. *Juliana,* 947 F.3d at 1170. Redress need not be guaranteed, but it must be more than "merely speculative." *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Here, applying the above rule, the Ninth Circuit stated that a declaration alone is not relief "substantially likely to mitigate [plaintiffs'] asserted concrete injuries." *Juliana*, 947 F.3d at 1170. The court considered whether partial redress suffices to prove the first redressability prong, concluding that it likely does not, because even

if plaintiffs obtained the sought relief and federal defendants ceased promoting fossil fuel, such would only ameliorate, rather than "solve global climate change." *Id. at* 1171.

Even so, the court did not decide that plaintiffs had failed to prove the first prong of redressability: the court stated, "[w]e are therefore skeptical that the first redressability prong is satisfied. But even *assuming that it is*, [plaintiffs] do not surmount the remaining hurdle—establishing that the specific relief they seek is within the power of an Article III court." *Juliana,* 947 F.3d at 1171. (emphasis added).

In addressing whether plaintiffs had proved the second prong, the court identified the "specific relief" plaintiffs sought was an injunction requiring federal defendants not only to cease permitting, authorizing, and subsidizing fossil fuel, but also to prepare a plan, subject to judicial monitoring, to draw down harmful emissions. That specific relief, the court determined, was not within the power of an Article III court to award. *Id*. The court explained that for the district court to "order, design, supervise, or implement" plaintiffs' requested remedial plan, any effective plan would require a "host of complex policy decisions" entrusted under constitutional separation of powers to the executive and legislative branches. *Id*. In essence, the court found plaintiffs' injuries beyond redress because, in its view, plaintiffs' requested relief requires the district court to evaluate "competing policy considerations" and supervise implementation over many years. *Id*. at 1171–73

Summarizing what the court did—and did not—identify as the legal defects in plaintiffs' case, the court did not decide whether plaintiffs' requested declaratory

relief failed or satisfied the redressability requirement for standing, and did not consider that issue under *Uzuegbunam* or the Declaratory Judgment Act. Rather, the court resolved that plaintiffs failed to demonstrate redressability on grounds that plaintiffs' requested remedial and injunctive relief was beyond the power of an Article III court to provide. The court was also silent on whether dismissal was to be with or without leave to amend.

### B.    *Plaintiffs' Proposed Amendments*

Plaintiffs assert that their proposed amendments cure the defects the Ninth Circuit identified and that they should be given opportunity to amend. Plaintiffs explain that the amended allegations demonstrate that relief under the Declaratory Judgment Act alone would be substantially likely to provide partial redress of asserted and ongoing concrete injuries, and that partial redress is sufficient, even if further relief is later found unavailable.

Plaintiffs also amended their factual allegations directly linking how a declaratory judgment alone will redress of plaintiffs' individual ongoing injuries. (*See* doc. 514-2 ¶¶ 19-A, 22-A, 30-A, 34-A, 39-A, 43-A, 46-A, 49-A, 52-A, 56-A, 59-A, 62-A, 64-A, 67-A, 70-A, 72-A, 76-A, 80-A, 85-A, 88-A, 90-A.). Plaintiffs assert that declaratory relief is within a court's Article III power to provide. Plaintiffs also omitted the "specific relief" the Ninth Circuit majority found to be outside Article III authority to award. Among other deletions, plaintiffs eliminated their requests for this Court to order federal defendants to prepare and implement a remedial plan and prepare a list of U.S. $CO_2$ emissions. Plaintiffs also omitted their request for this Court to monitor and enforce the remedial plan.

Plaintiffs' Second Amended Complaint thus requests this Court to: (1) declare that the United States' national energy system violates and continues to violate the Fifth Amendment of the U.S. Constitution and Plaintiffs' constitutional rights to substantive due process and equal protection of the law; (2) enter a judgment declaring the United States' national energy system has violated and continues to violate the public trust doctrine; and (3) enter a judgment declaring that § 201 of the Energy Policy Act has violated and continues to violate the Fifth Amendment of the U.S. Constitution and plaintiffs' constitutional rights to substantive due process and equal protection of the law.

While declaratory relief was part of plaintiffs' prayer in the operative complaint, plaintiffs did not cite *Uzuegbunam*—recent authority affirming that partial declaratory relief satisfies redressability for purposes of Article III standing. Plaintiffs contend that they should be granted leave to amend based on the Supreme Court's holding that a request for nominal damages alone (a form of declaratory relief) satisfies the redressability element necessary for Article III standing, where the plaintiff's claim is based on a completed violation of a legal right, and the plaintiff establishes the first two elements of standing. *Uzuegbunam*, 141 S. Ct. at 801–02.

### C.  *Plaintiffs' Amended Pleadings Satisfy Redressability*

This Court adamantly agrees with the Ninth Circuit that its ability to provide redress is animated by two inquiries, one of efficacy and one of power. *Juliana*, 947 F.3d at 1169. Plaintiffs' proposed amendments allege that a declaration under the Declaratory Judgment Act is substantially likely to remediate their ongoing injuries, and that such relief is within this Court's power to award.

### 1.    Declaratory Relief Alone is Substantially Likely to Redress Injury

The court can grant declaratory relief in the first instance and later consider further necessary or proper relief, if warranted, under the Declaratory Judgment Act. 28 U.S.C. §§ 2201, *et seq.* "In a case of actual controversy within its jurisdiction, [ ] any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201. "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

The Supreme Court has long recognized that declaratory judgment actions can provide redressability, even where relief obtained is a declaratory judgment alone. Well-known cases involve the census, *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992), and *Utah v. Evans,* 536 U.S. 452 (2002).

In each of the census cases, a state objected to the way the Census Bureau counted people and sued government officials. In *Franklin v. Massachusetts*, the Supreme Court stated, "For purposes of establishing standing," it did not need to decide whether injunctive relief against was appropriate where "the injury alleged is likely to be redressed by declaratory relief" and the court could "assume it is substantially likely that the President and other executive and congressional officials would abide by an authoritative interpretation of the census statute and

constitutional provision by the District Court." 505 U.S. at 803.

In *Utah v. Evans*, the Supreme Court referenced *Franklin*, explaining that, in terms of its "standing" precedent, declaratory relief affects a change in legal status, and the practical consequence of that change would "amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." 536 U.S. 452 (2002).

Similarly, the Supreme Court has determined that a plaintiff had standing to sue the Nuclear Regulatory Commission for a declaration that the Price-Anderson Act, which limited the liability of nuclear power companies, was unconstitutional. *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 81 (1978).

Other cases recognized the role of declaratory relief in resolving constitutional cases. *See, e.g.*, *Evers v. Dwyer*, 358 U.S. 202, 202-04 (1958) (ongoing governmental enforcement of segregation laws created actual controversy for declaratory judgment); *Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A court may grant declaratory relief even though it chooses not to issue an injunction or mandamus.").

Finally, the Supreme Court held that, for the purpose of Article III standing, nominal damages—a form of declaratory relief—provide the necessary redress for a completed violation of a legal right, even where the underlying unlawful conduct had ceased. *Uzuegbunam*, 141 S. Ct. 792, 802. *Uzuegbunam* illustrates that when a plaintiff shows a completed violation of a legal right, as plaintiffs have shown here, standing survives, even when relief is nominal or trivial.

Here, this Court notes that, in its determination of standing, the Ninth Circuit was "skeptical" that declaratory relief alone would remediate plaintiffs' injuries,

*Juliana*, 947 F.3d at 1171.  The court noted that even if all plaintiffs' requests for relief were granted against federal defendants, such would not solve the problem of climate change entirely.  But for redressability under Article III standing, plaintiffs need not allege that a declaration alone would solve their every ill.  To plead a justiciable case, a court need only evaluate "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  There is nothing in § 2201 preventing a court from granting declaratory relief even if it is the only relief awarded.

In light of that determination, by pleading a claim under § 2201, plaintiffs establish that the text of the statute itself resolves the uncertainty posed by the Ninth Circuit, given that plaintiffs have established an active case and controversy showing injury and causation.  Section 2201 also provides that declaratory relief may be granted "whether or not further relief is or could be sought." *Id.*  Under the statute, the relief plaintiffs seek fits like a glove, where plaintiffs request consideration of declaratory relief independently of other forms of relief, such as an injunction. *See Steffel v. Thompson*, 415 U.S. 452, 475, (1974) (stating in a different context that "regardless of whether injunctive relief may be appropriate, federal declaratory relief is not precluded.").  This Court finds that plaintiffs' proposed amendments are not futile: a declaration that federal defendants' energy policies violate plaintiffs' constitutional rights would itself be significant relief.

### 2.    *Redress is Within Power of Article III Courts*

It is a foundational doctrine that when government conduct catastrophically harms American citizens, the judiciary is constitutionally required to perform its independent role and determine whether the challenged conduct, not exclusively committed to any branch by the Constitution, is unconstitutional.    *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176–78 (1803).    The judicial role in cases like this is to apply constitutional law, declare rights, and declare the government's responsibilities.    No other branch of government can perform this function because the "judicial Power" is exclusively in the hands of Article III courts.    U.S. Const. Art. III, § 1.    The issue before this Court now is not to determine what relief, specifically, is in its power to provide.    This Court need only decide whether plaintiffs' amendments—alleging that declaratory relief is within an Article III court's power to award— "would be subject to dismissal."    *Carrico,* 656 F.3d 1002.

The Declaratory Judgment Act authorizes this Court's determination in its embrace of both constitutional and prudential concerns where the text is "deliberately cast in terms of permissive, rather than mandatory, authority."    *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952) (J. Reed, concurring).    The Act gives "federal courts competence to make a declaration of rights."    *Pub. Affairs Associates v. Rickover*, 369 U.S. 111, 112 (1962).    The Supreme Court has found it "consistent with the statute . . . to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp."    *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 136 (2007).

Here, plaintiffs seek declaratory relief that "the United States' national energy system that creates the harmful conditions described herein has violated and continues to violate the Fifth Amendment of the U.S. Constitution and Plaintiffs' constitutional rights to substantive due process and equal protection of the law." (Doc. 514-1 ¶ 1). This relief is squarely within the constitutional and statutory power of Article III courts to grant. Such relief would at least partially, and perhaps wholly, redress plaintiffs' ongoing injuries caused by federal defendants' ongoing policies and practices. Last, but not least, the declaration that plaintiffs seek would by itself guide the independent actions of the other branches of our government and cures the standing deficiencies identified by the Ninth Circuit. This Court finds that the complaint can be saved by amendment. *See Corinthian Colleges*, 655 F.3d at 995.

## CONCLUSION

For the reasons stated above, plaintiffs' Motion to File a Second Amended Complaint, doc. 462, is GRANTED.

IT IS SO ORDERED.

Dated this  1st  day of June 2023.


_____/s/Ann Aiken_____

Ann Aiken
United States District Judge