TODD KIM
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

SEAN C. DUFFY (NY Bar No. 4103131)
FRANK J. SINGER (CA Bar No. 227459)
Trial Attorneys
Natural Resources Section
150 M Street NE
Washington, DC 20002
Tel: (202) 305-0445
sean.c.duffy@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# EUGENE DIVISION

|  |  |
|---|---|
| KELSEY CASCADIA ROSE JULIANA, *et al.*, | Case No. 6:15-cv-1517-AA |
| Plaintiffs, | |
| v. | **DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO CERTIFY** |
| THE UNITED STATES OF AMERICA, *et al.*, | |
| Defendants. | |

## MOTION

Defendants move to dismiss Plaintiffs' second amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and the Ninth Circuit's mandate ordering this Court to dismiss the case. Should the Court issue an order denying the motion to dismiss, in the alternative, Defendants move this Court to certify that order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The grounds for these motions are set forth in detail in the memorandum submitted herewith. These motions are supported by the accompanying memorandum and such further evidence and argument as might be offered to the Court before these motions are submitted for decision. Wherefore, Defendants request for the reasons set forth in their accompanying memorandum that the Court dismiss the second amended complaint with prejudice and enter judgment for Defendants.

In compliance with Local Rule 7-1, on June 22, 2023, the Parties conferred telephonically to resolve the dispute that informs this motion to dismiss and the request to certify any order denying the motion to dismiss for interlocutory appeal. Plaintiffs indicated that they oppose both the motion to dismiss and the request to certify for interlocutory appeal.[1]

---

[1] On June 14, 2023, Defendants moved, pursuant to Fed. Civ. P. 6(b)(1), to enlarge time to respond to the second amended complaint. *See* Defs.' Mot. to Enlarge Time, ECF No. 545. As explained in the motion to enlarge time, during the parties' conferral on that motion, Plaintiffs indicated that they do not oppose expedited consideration, but they do oppose an enlargement of time to respond to the Second Amended Complaint unless the response is in the form of an answer. ECF No. 545 ¶¶ 1-2. In a June 21, 2023 minute order, the Court granted the motion for an extension of time, but indicated that the extension is for "Time to Answer," and that the "Answer is due by 7/24/2023." ECF No. 546. The minute order is thus ambiguous insofar as it appears to grant an extension to file an answer but does not address any other type of response to the complaint, such as a motion under Fed. R. Civ. P. 12. Given the uncertainty, Defendants are filing this motion to dismiss today to comply with the time limits in Fed. R. Civ. P. 15(a)(3).

DEFS.' MOT. TO DISMISS
SECOND AM. COMPL.

TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

    A.    The First Amended Complaint and Prior District Court Proceedings ................... 2

    B.    The Ninth Circuit Decision ................................................................. 4

    C.    The Motion for Leave to File a Second Amended Complaint ............................ 6

    D.    The Second Amended Complaint ........................................................... 8

STANDARD OF REVIEW .................................................................................... 9

ARGUMENT ................................................................................................... 10

    I.    The Rule of Mandate Requires Dismissal of the Second Amended Complaint ................................................................................................ 10

    II.    Plaintiffs Lack Standing Because Their Claims are Not Redressable ................. 11

        A.    Plaintiffs do not have standing to seek injunctive relief ........................... 12

        B.    Plaintiffs do not have standing to seek declaratory relief ........................ 13

    III.    Plaintiffs' Action is Not a Case or Controversy Cognizable Under Article III ................................................................................................. 17

    IV.    Plaintiffs' Claims Fail on the Merits ................................................... 19

        A.    There is no constitutional right to a stable climate system ....................... 19

        B.    Plaintiffs fail to allege a cognizable state-created danger claim ............... 21

        C.    No federal public trust doctrine creates a right to a stable climate system ................................................................................................ 24

            1.    No public trust doctrine binds the federal government ................. 24

            2.    Any public trust doctrine would not apply to the "climate system" or the atmosphere ........................................................... 27

        D.    Plaintiffs are not a discrete minority and have no equal protection claim ................................................................................................. 29

        E.    The Ninth Amendment guarantees no substantive rights ........................ 31

V.    Plaintiffs Were Required to Bring this Action Under the Administrative
      Procedure Act but Concededly Did Not .................................................. 32

VI.   If the Court Denies Defendants' Motion to Dismiss, it Should Certify its
      Order for Interlocutory Appeal ............................................................. 32

CONCLUSION.................................................................................................... 34

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alabama v. Texas,*
    347 U.S. 272 (1954) ................................................................................................. 26

*Alec L. v. Jackson,*
    863 F. Supp. 2d 11 (D.D.C. 2012) ........................................................................... 26

*Alec L. v. McCarthy,*
    561 F. App'x 7 (D.C. Cir. 2014) ........................................................................ 25, 26

*Appleby v. City of New York,*
    271 U.S. 364 (1926) ................................................................................................. 25

*Aronow v. Minnesota,*
    No. A12-0585, 2012 WL 4476642 (Minn. Ct. App. Oct. 1, 2012) ......................... 28

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................. 10

*Badgerow v. Walters,*
    142 S. Ct. 1310 (2022) ............................................................................................... 9

*Baker v. Carr,*
    369 U.S. 186 (1962) ................................................................................................. 17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................. 10

*Bracken v. Okura,*
    869 F.3d 771 (9th Cir. 2017) ................................................................................... 22

*California v. Texas,*
    141 S. Ct. 2104 (2021) ........................................................................................ 15, 16

*Chernaik v. Brown,*
    No. 16-11-09273, 2015 WL 12591229 (Or. Cir. Ct. May 11, 2015) ....................... 28

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985) ................................................................................................. 29

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ................................................................................................. 19

*Clean Air Council v. United States,*
    362 F. Supp. 3d 237 (E.D. Pa. 2019) .......................................................... 6, 13, 28

*Collins v. City of Harker Heights,*
    503 U.S. 115 (1992) .............................................................................................. 5, 13

*Cunningham v. Beavers*,
   858 F.2d 269 (5th Cir. 1988) ................................................................ 30

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ................................................................... 17, 18

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ................................................................. 9

*DeLeon v. Little*,
   981 F. Supp. 728 (D. Conn. 1997) .......................................................... 32

*DeShaney v. Winnebago Cnty. Dep't of Social Servs.*,
   489 U.S. 189 (1989) ............................................................................ 21

*District of Columbia v. Air Florida, Inc.*,
   750 F.2d 1077 (D.C. Cir. 1984) ....................................................... 24, 27

*Douglas v. Hugh A. Stallings, M.D., Inc.*,
   870 F.2d 1242 (7th Cir. 1989) .............................................................. 30

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
   438 U.S. 59 (1978) ................................................................................ 8

*Ely v. Velde*,
   451 F.2d 1130 (4th Cir. 1971) ............................................................... 20

*FCC v. Beach Commc'ns, Inc.*,
   508 U.S. 307 (1993) ............................................................................ 31

*Filippone ex rel. Filippone v. Iowa Dep't of Nat. Res.*
   No.12-0444,2013 WL 988627 (Iowa Ct. App. Mar. 13, 2013) ............................. 28

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) .............................................................................. 8

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) .............................................................................. 4

*Gabree v. King*,
   614 F.2d 1 (1st Cir. 1980) ............................................................... 30, 33

*Gibson v. Matthews*,
   926 F.2d 532 (6th Cir. 1991) ................................................................ 32

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*,
   527 U.S. 308 (1999) ............................................................................ 18

*Guaranty Trust Co. v. York*,
   326 U.S. 99 (1945) .............................................................................. 18

*Guertin v. Michigan*,
   912 F.3d 907 (6th Cir. 2019) ................................................................ 20

*Haaland v. Brackeen,*
    No. 21-376, 2023 WL 4002951 (June 15, 2023) .................................................... 16

*Hall v. City of Los Angeles,*
    697 F.3d 1059 (9th Cir. 2012) .................................................................... 10, 11

*Idaho v. Coeur d'Alene Tribe,*
    521 U.S. 261 (1997) ...................................................................................... 25

*Ill. Cent. R.R. Co. v. Illinois,*
    146 U.S. 387 (1892) ................................................................................ 25, 27

*In re Sanford Fork & Tool Co.,*
    160 U.S. 247 (1895) ...................................................................................... 10

*Ischay v. Barnhart,*
    383 F. Supp. 2d 1199 (C.D. Cal. 2005) ............................................................ 10

*Jaffee v. Soc'y of N.Y. Hosp.,*
    No. 96-cv-3623-LAP, 1999 WL 246747 (S.D.N.Y. Apr. 27, 1999) ........................ 30

*Juliana v. United States,*
    947 F.3d 1159 (9th Cir. 2020) .......................... 1, 4, 5, 6, 7, 8, 11, 12, 13, 14, 15, 16, 19, 27, 32

*Juliana v. United States,*
    986 F.3d 1295 (9th Cir. 2021) ................................................................... 6, 16

*Kennedy v. City of Ridgefield,*
    439 F.3d 1055 (9th Cir. 2006) ........................................................................ 23

*Kennedy v. City of Ridgefield,*
    440 F.3d 1091 (9th Cir. 2006) ........................................................................ 21

*Kleppe v. New Mexico,*
    426 U.S. 529 (1976) ................................................................................ 26, 27

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ........................................................................................ 9

*L.W. v. Grubbs,*
    974 F.2d 119 (9th Cir. 1992) .......................................................................... 22

*Lake v. City of Southgate,*
    No. 16-10251, 2017 WL 767879 (E.D. Mich. Feb. 28, 2017) ............................... 20

*Lehnhausen v. Lake Shore Auto Parts Co.,*
    410 U.S. 356 (1973) ...................................................................................... 31

*Long Sault Dev. Co. v. Call,*
    242 U.S. 272 (1916) ...................................................................................... 25

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ..................................................................................... 9, 18

*M.S. v. Brown,*
    902 F.3d 1076 (9th Cir. 2018) .................................................................. 12, 15

*Mann v. Meachem,*
    929 F. Supp. 622 (N.D.N.Y. 1996) ................................................................. 32

*Marbury v. Madison,*
    5 U.S. (1 Cranch) 137 (1803) ......................................................................... 19

*Martinez v. California,*
    444 U.S. 277 (1980) ........................................................................................ 23

*Mass. Bd. of Ret. v. Murgia,*
    427 U.S. 307 (1976) ........................................................................................ 30

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) .................................................................................... 5, 15

*Matter of E. Coast Foods, Inc.,*
    66 F.4th 1214 (9th Cir. 2023) ........................................................................... 9

*Maxwell v. Cnty. of San Diego,*
    708 F.3d 1075 (9th Cir. 2013) ......................................................................... 22

*Maya v. Centex Corp,*
    658 F.3d 1060 (9th Cir. 2011) ........................................................................... 9

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ........................................................................................ 16

*Meland v. Weber,*
    2 F.4th 838 (9th Cir. 2021) ............................................................................... 9

*Mendez-Gutierrez v. Gonzalez,*
    444 F.3d 1168 (9th Cir. 2006) ......................................................................... 10

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,*
    453 U.S. 1 (1981) ............................................................................................ 20

*Munger v. City of Glasgow Police Dep't,*
    227 F.3d 1082 (9th Cir. 2000) ................................................................... 22, 23

*Murguia v. Langdon,*
    61 F.4th 1096 (9th Cir. 2023) ......................................................................... 21

*Naruto v. Slater,*
    888 F.3d 418 .................................................................................................... 9

*Nat'l Audubon Soc'y v. Superior Ct.,*
    658 P.2d 709 (Cal. 1983) ................................................................................ 24

*Nat'l Sea Clammers Ass'n v. City of New York,*
    616 F.2d 1222 (3d Cir. 1980) ......................................................................... 20

*Nunez v. City of San Diego*,
    114 F.3d 935 (9th Cir. 1997) ............................................................................... 30

*Pacific Bell Tel. Co. v. linkLine Communications, Inc.*,
    555 U.S. 438 (2009) ........................................................................................... 19

*Patel v. Kent School Dist.*,
    648 F.3d 965 (9th Cir. 2011) ............................................................................... 21

*Pauluk v. Savage*,
    836 F.3d 1117 (9th Cir. 2016) ...................................................................... 21, 22

*Penilla v. City of Huntington Park*,
    115 F.3d 707 (9th Cir. 1997) ............................................................................... 23

*Phillips Petroleum Co. v. Mississippi*,
    484 U.S. 469 (1988) ..................................................................................... 25, 27

*Plaut v. Spendthrift Farm, Inc.*,
    514 U.S. 211 (1995) ........................................................................................... 17

*Powell v. McCormack*,
    395 U.S. 486 (1969) ............................................................................................. 8

*PPL Montana, LLC v. Montana*,
    565 U.S. 576 (2012) ................................................................................ 25, 26, 27

*Price v. Cohen*,
    715 F.2d 87 (3d Cir. 1983) ................................................................................. 30

*Quern v. Jordan*,
    440 U.S. 332 (1979) ........................................................................................... 11

*Rucho v. Common Cause*,
    139 S. Ct. 2484 (2019) ....................................................................................... 17

*S.F. Herring Ass'n v. Dep't of the Interior*,
    946 F. 3d 564 (9th Cir. 2019) ............................................................................. 10

*Sanders-Reed ex rel. Sanders-Reed v. Martinez*,
    350 P.3d 1221 (N.M. Ct. App. 2015) ................................................................. 28

*Sessions v. Morales-Santana*,
    582 U.S. 47 (2017) ............................................................................................. 30

*Shively v. Bowlby*,
    152 U.S. 1 (1894) ............................................................................................... 25

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ......................................................................................... 4, 14

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Protection*,
    560 U.S. 702 (2010) ........................................................................................... 27

*Strandberg v. City of Helena,*
 791 F.2d 744 (9th Cir. 1986) ............................................................ 31

*Summa Corp. v. California ex rel. State Lands Comm'n,*
 466 U.S. 198 (1984) .......................................................................... 27

*Town of Chester v. Laroe Estates, Inc.,*
 581 U.S. 433 (2017) .......................................................................... 12

*United States v. Bd. of Cty. Comm'rs of Cnty. of Otero,*
 843 F.3d 1208 (10th Cir. 2016) ........................................................ 27

*United States v. Bifield,*
 702 F.2d 342 (2d Cir. 1983) ............................................................. 32

*United States v. Carolene Prods. Co.,*
 304 U.S. 144 (1938) .......................................................................... 30

*United States v. Cote,*
 51 F.3d 178 (9th Cir. 1995) .............................................................. 10

*United States v. Flores-Villar,*
 536 F.3d 990 (9th Cir. 2008) ............................................................ 30

*United States v. Kellington,*
 217 F.3d 1084 (9th Cir. 2000) .......................................................... 10

*United States v. Mission Rock Co.,*
 189 U.S. 391 (1903) .......................................................................... 27

*United States v. Thrasher,*
 483 F.3d 977 (9th Cir. 2007) ............................................................ 10

*United States v. Washington,*
 172 F.3d 1116 (9th Cir. 1999) .......................................................... 11

*Utah v. Evans,*
 536 U.S. 452 (2002) ............................................................................ 8

*Uzuegbunam v. Preczewski,*
 141 S. Ct. 792 (2021) .................................................................... 7, 16

*Vieth v. Jubelirer,*
 541 U.S. 267 (2004) .......................................................................... 17

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens,*
 529 U.S. 765 (2000) .......................................................................... 17

*Warth v. Seldin,*
 422 U.S. 490 (1975) ............................................................................ 9

*Wash. Env't Council v. Bellon,*
 732 F.3d 1131 (9th Cir. 2013) ............................................................ 5

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ............................................................................ 20

*Wood v. Ostrander*,
    879 F.2d 583 (9th Cir. 1989) ...................................................... 22, 23

**Statutes and Constitutional Provisions**

28 U.S.C. § 1292(b) .......................................................... 2, 4, 32, 33

28 U.S.C. § 2201 ............................................................................... 2

42 U.S.C. § 1983 .......................................................................... 7, 21

5 U.S.C. § 702 ................................................................................ 32

U.S. CONST. art. III§ 1 ..................................................................... 17

U.S. CONST. art. IV § 3, cl. 2 .............................................. 13, 24, 26

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................ 1, 3, 9

Fed. R. Civ. P. 12(b)(6) .............................................................. 3, 9, 19

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## INTRODUCTION

Plaintiffs have failed to bring a justiciable case. Recognizing this, the Court of Appeals for the Ninth Circuit mandated dismissal of this action for lack of standing because Plaintiffs cannot show that their claims are redressable by an Article III court. *Juliana v. United States*, 947 F.3d 1159, 1175 (9th Cir. 2020), *reh'g en banc denied*, 986 F.3d 1295 (Mem.) (9th Cir. 2021). Because the now-operative complaint is not different in any relevant sense from the complaint that the Ninth Circuit examined and rejected in 2020, this Court should comply with the Ninth Circuit mandate and dismiss the operative complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

The Court should also dismiss the second amended complaint ("SAC") for three additional reasons. *First*, Plaintiffs have not alleged a redressable claim under Article III. *Second*, this action should be dismissed because it is not a case or controversy that a federal court may entertain consistent with the Constitution and the scope of its equitable jurisdiction. *Third*, because the Constitution provides no fundamental right to a "stable climate system," and no federal "public trust" doctrine applies, the claims based on alleged constitutional violations and an alleged public trust fail on the merits and should be dismissed under Rule 12(b)(6). *See* SAC ¶¶ 277-310.

For these reasons, the Court should dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6). If the Court denies this motion to dismiss the second amended complaint,

Defendants ask in the alternative, under 28 U.S.C. § 1292(b), that the Court certify for interlocutory appeal its order denying the motion to dismiss.[2]

## BACKGROUND

### A.    The First Amended Complaint and Prior District Court Proceedings

Plaintiffs brought this action in August 2015 against the United States, President Obama, the Executive Office of the President, the heads of three sub-components within that office, and eight Cabinet departments and agencies, alleging that Defendants violated their rights under the Constitution and a purported federal public trust doctrine. Compl. for Decl. & Inj. Relief, ECF No. 1; *see also* First Am. Compl. for Decl. & Inj. Relief ("FAC"), ECF No. 7. They sought an order enjoining Defendants from further violations of the alleged constitutional and public trust rights underlying each of their claims, as well as an order directing Defendants to "prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric $CO_2$." FAC at 94 (Prayer for Relief ¶ 7). Plaintiffs also sought several forms of declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. *See id.* ¶ 14. Specifically, Plaintiffs sought a judgment declaring:

- "that Defendants have violated and are violating Plaintiffs' fundamental constitutional rights to life, liberty, and property by substantially causing or contributing to a dangerous concentration of $CO_2$ in the atmosphere, and . . . dangerously interfer[ing] with a stable climate system . . .";
- "Defendants' public trust violations . . ."; and
- "the Energy Policy Act, Section 201, to be unconstitutional on its face."

*Id.* at 94 (Prayer for Relief ¶¶ 1, 5, 3). Plaintiffs also sought injunctive relief, where they requested that the Court:

---

[2] Defendants will separately move under 28 U.S.C. § 1292(b) for an order certifying for interlocutory appeal this Court's order granting Plaintiffs' motion for leave to amend their complaint, June 1, 2023 Op. & Order, ECF No 540 ("Rule 15 Order").

- "Enjoin Defendants from further violations of the Constitution underlying each claim for relief"; and

- "Order Defendants to prepare and implement an enforceable national remedial plan to phase out fossil fuel emissions and draw down excess atmospheric $CO_2$ so as to stabilize the climate system."

*Id.* (Prayer for Relief ¶¶ 2, 6, 7). In addition to this declaratory and injunctive relief, the Complaint asked the Court to "[g]rant such other and further relief as the Court deems just and proper." *Id.* at 95 (Prayer for Relief ¶ 9).

The government moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of standing, failure to state a cognizable constitutional claim, and failure to state a claim on a public trust theory. Fed. Defs.' Mot. to Dismiss, ECF No. 27. The Court denied that motion in November 2016, and largely denied the United States' motion for judgment on the pleadings (ECF No. 195) and motion for summary judgment (ECF No. 207) in October 2018. *See* Nov. 10, 2016 Op. & Order ("MTD Order"), ECF No. 83; Oct. 15, 2018 Op. & Order ("MJP & MSJ Order"), ECF No. 369. The government requested certification for interlocutory review by the Ninth Circuit of each of these dispositive motions, which the Court also denied. ECF No. 172; MJP & MSJ Order at 59-61.

Following that, the United States petitioned the Supreme Court for a writ of mandamus and stay of proceedings. ECF No. 390-1; ECF No. 391-1. The full Court denied the petition on November 2, 2018, but on grounds that "adequate relief may be available in the United States Court of Appeals for the Ninth Circuit." Nov. 2, 2018 Order 2, ECF No. 416. And while the Court recognized that the Ninth Circuit had denied the United States' petitions for writ of mandamus twice in the past, it explained that the Ninth Circuit had done so without prejudice, and for reasons that were, "to a large extent, no longer pertinent." *Id.* at 3. Finally, the Court noted that "the 'striking' breadth of plaintiffs' claims 'presents substantial grounds for difference

of opinion,'" while also citing the standard for interlocutory appeal under 28 U.S.C. § 1292(b).
*Id.* at 2 (citation omitted).

The United States then moved this Court to reconsider its denial of the requests to certify
its orders for interlocutory appeal. Defs.' Mot. to Reconsider, ECF No. 418. In response, the
Court certified the case for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and stayed
proceedings pending a decision by the Ninth Circuit. Nov. 21, 2018 Order, ECF Nos. 444, 445.
The government then sought permission to appeal, which the Ninth Circuit granted. Filed Order,
*Juliana v. United States*, No. 18-36082 (9th Cir. Dec. 26, 2018), Dkt. No. 1.

### B.    The Ninth Circuit Decision

On January 17, 2020, the Ninth Circuit issued a decision reversing this Court's certified
orders and remanding the case to this Court with instructions to dismiss for lack of Article III
standing. *Juliana*, 947 F.3d at 1175. The Ninth Circuit held that Plaintiffs had adequately
pleaded injury-in-fact and traceability, but not redressability. Because a "plaintiff must
demonstrate standing separately for each form of relief sought," *Friends of the Earth, Inc. v.
Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000), the Ninth Circuit analyzed the
redressability of Plaintiffs' requests for both declaratory and injunctive relief. As to each, the
Ninth Circuit determined whether the relief sought was "both (1) substantially likely to redress
their injuries; and (2) within the district court's power to award." *Juliana*, 947 F.3d at 1170.

Beginning with Plaintiffs' request for a declaration that the government is violating the
Constitution, the Ninth Circuit concluded that Plaintiffs failed the first prong of the redressability
test because a declaratory judgment, without more, was not "substantially likely to mitigate
[Plaintiffs'] asserted concrete injuries." *Id*. ("[P]sychic satisfaction is not an acceptable Article
III remedy because it does not redress a cognizable Article III injury") (quoting *Steel Co. v.
Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)).

With regard to Plaintiffs' requests for injunctive relief, the Ninth Circuit concluded that Plaintiffs failed at least the second prong of the redressability test, if not both prongs. It first observed that the crux of that relief would require the government not only to cease permitting, authorizing, or subsidizing fossil fuel use, but also to prepare a plan, subject to judicial approval, to draw down harmful emissions. *Id.* at 1170. Even with the broad scope of the requested injunction, however, the Ninth Circuit remained "skeptical" that Plaintiffs had satisfied the first prong of the redressability test because they had not shown that the injunctive relief they seek is "substantially likely to redress their injuries." *Id.* at 1171. The Ninth Circuit explained that an order enjoining the challenged government activities would not suffice to stop catastrophic climate change or ameliorate Plaintiffs' injuries. *Id.* at 1170. And, even to the extent Plaintiffs insisted their "injuries would be to some extent ameliorated" by the injunction they requested, the Ninth Circuit explained that Plaintiffs could not rely on the Supreme Court's relaxed redressability standard in *Massachusetts v. EPA*, 549 U.S. 497, 525-26 (2007), because they do not assert a procedural right. *Id.* at 1171; *see also Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1144-45 (9th Cir. 2013).

Turning to the second prong of the redressability test, the Ninth Circuit found that Plaintiffs could not show that the injunctive relief they sought is within the power of an Article III court to grant. *Juliana*, 947 F.3d at 1171. The Court explained that "any effective plan would necessarily require a host of complex policy decisions entrusted . . . to the wisdom and discretion of the executive and legislative branches," *id.*, decisions "which must be made by the People's 'elected representatives.'" *Id.* at 1172 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128-29 (1992)); *see also id.* at 1170 (noting that the injunction Plaintiffs sought would "enjoin the Executive from exercising discretionary authority expressly granted by Congress" and would

"enjoin Congress from exercising power expressly granted by the Constitution over public lands").[3]

The Ninth Circuit reversed this Court's orders on the dispositive motions and remanded the case to this Court "with instructions to dismiss for lack of Article III standing." *Id.* at 1175. Following denial of Plaintiffs' request for en banc rehearing of the panel's decision, *Juliana v. United States*, 986 F.3d 1295 (Mem.) (9th Cir. 2021), the Ninth Circuit issued the mandate on March 5, 2021, effectuating its January 17, 2020 decision. ECF No. 461.

### C.     The Motion for Leave to File a Second Amended Complaint

On March 9, 2021, Plaintiffs moved this Court for leave to file a second amended complaint. Pls.' Mot. for Leave to Amend, ECF No. 462. In their motion, Plaintiffs sought an order granting leave to amend "well in advance of their deadline to petition the U.S. Supreme Court for a writ of certiorari, due on July 12, 2021." *Id.* at 1. Plaintiffs explained that they "contest the Ninth Circuit's standing analysis on redressability and its ruling on Article III equitable authority and reserve their rights to petition the Supreme Court for a writ of certiorari to review and reverse that decision." *Id.* at 12 n.7.

Rather than seek Supreme Court review of the Ninth Circuit decision, however, Plaintiffs let their deadline to petition for certiorari pass on July 12, 2021. They instead pressed their arguments in this Court, relying heavily on the Supreme Court's March 8, 2021 decision in

---

[3] Because it held that Plaintiffs lack standing, the Court of Appeals did not reach the merits of Plaintiffs' claims, i.e., whether the claims asserting a fundamental right to a "stable climate system" or violations of a purported federal public trust doctrine stated a claim for which relief could be granted. It confirmed, however, that "[r]easonable jurists can disagree about whether the asserted constitutional right exists." *Juliana*, 947 F.3d at 1169 (citing *Clean Air Council v. United States*, 362 F. Supp. 3d 237, 250-53 (E.D. Pa. 2019) (finding no constitutional right similar to the one Plaintiffs assert here)). And it noted the Supreme Court's observation "that the 'striking' breadth of plaintiffs' . . . claims 'presents substantial grounds for difference of opinion.'" *Id.* at 1169-70 (internal citation omitted).

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021). The Supreme Court in that case allowed

plaintiffs asserting a First Amendment claim under 42 U.S.C. § 1983 to establish the

redressability element of standing based on a claim for nominal damages for past injury,

although the claims based on future injury were moot because the defendant had ceased to

enforce the policies that the plaintiffs challenged. Pls.' Reply in Supp. of Mot. for Leave to

Amend, ("Pls.' Rule 15 Reply") 8-11, ECF No. 469. The Supreme Court held in that context that

"a request for nominal damages satisfies the redressability element of standing where a

plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam*, 141 S. Ct. at

802.

 Defendants opposed the motion for leave to amend on the grounds that the Ninth Circuit

mandate required this Court to dismiss the case, and that the proposed amendment would be

futile because it cannot cure the jurisdictional defects that require dismissal. Defs.' Resp. in

Opp'n to Mot. for Leave to Amend, ECF No. 468. Responding to Plaintiffs' reliance on

*Uzuegbunam*, Defendants explained among other things that the case turned on the award of

nominal damages, which Plaintiffs do not seek here.

 This Court nonetheless granted Plaintiffs' motion for leave on June 1, 2023. Rule 15

Order, ECF No. 540. In that opinion, the Court overlooked the Ninth Circuit's conclusion that

Plaintiffs' requested declaratory relief failed under the first prong of the redressability test.

*Compare* Rule 15 Order at 12-13 (concluding that the Ninth Circuit "did not decide whether

plaintiffs' requested declaratory relief failed or satisfied the redressability requirement for

standing") *with Juliana*, 947 F.3d at 1170 (holding that Plaintiffs failed the first prong of the

redressability test because a declaratory judgment, without more, was not "substantially likely to

mitigate [Plaintiffs'] asserted concrete injuries"). The Court next revisited whether relief under

the Declaratory Judgment Act could satisfy redressability, and concluded that it could, despite the Ninth Circuit's holding to the contrary in this case. *Compare* Rule 15 Order at 13, 16-17 (concluding that "a declaration that federal defendants' energy policies violate plaintiffs' constitutional rights would itself be significant relief") *with Juliana*, 947 F.3d at 1170-71 (reaching the opposite conclusion, *viz.*, that Plaintiffs' requested relief under the Declaratory Judgment Act did not satisfy the redressability requirement). Finally, the Court relied on *Uzuegbunam* for the proposition that standing may be satisfied even when "relief is nominal or trivial," Rule 15 Order at 16, again, contrary to the Ninth Circuit's decision and reasoning. *See Juliana*, 947 F.3d at 1170-71.[4]

## D.    The Second Amended Complaint

On June 8, Plaintiffs served their second amended complaint, which seeks declaratory relief nearly identical to the declaratory relief sought in the first amended complaint. *Compare* FAC at 94 (Prayer for Relief ¶¶ 1,3,5) (seeking declaration that Defendants have violated Plaintiffs' constitutional rights (¶ 1) and public trust doctrine (¶ 5), and that the Energy Policy Act is unconstitutional on its face (¶ 3)) *with* SAC at 143 (Prayer for Relief ¶¶ 1, 2, 3) (same). And the second amended complaint makes only minor changes to the scope of injunctive relief sought—rather than seeking an injunction *directing* the government to "implement [a] . . . remedial plan to phase out fossil fuel emissions and draw down excess atmospheric $CO_2$," FAC at 94 (Prayer for Relief ¶ 7), it seeks an injunction "*restraining* Defendants from carrying out

---

[4] In reexamining the Ninth Circuit's redressability decision, this Court also invoked various Supreme Court cases that pre-date the Ninth Circuit's decision in this case. *See* Rule 15 Order at 15-17 (citing *Franklin v. Massachusetts*, 505 U.S. 788 (1992); *Utah v. Evans*, 536 U.S. 452 (2002); *Duke Power Co. v. Carolina Env't Study Grp., Inc*., 438 U.S. 59, 81 (1978); *Powell v. McCormack*, 395 U.S. 486, 499 (1969)).

policies, practices, and affirmative actions" that allegedly harm Plaintiffs. SAC at 143 (Prayer for Relief ¶ 4) (emphasis added).

## STANDARD OF REVIEW

"The district courts of the United States are courts of limited jurisdiction, defined (within constitutional bounds) by federal statute." *Badgerow v. Walters*, 142 S. Ct. 1310, 1315 (2022). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (cleaned up). A court reviews a motion to dismiss a complaint for lack of Article III standing under Fed. R. Civ. P. 12(b)(1). *Naruto v. Slater*, 888 F.3d 418, 425 n.7 (9th Cir. 2018) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)). Where the jurisdictional attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021). "[A] party must establish an Article III case or controversy before [a court can] exert subject matter jurisdiction." *Matter of E. Coast Foods, Inc.*, 66 F.4th 1214, 1218 (9th Cir. 2023).

A court may also dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-*

*Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, a court need not accept as true any legal conclusion set forth in a pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must set forth facts supporting a *plausible*, not merely *possible*, claim for relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

## ARGUMENT

**I.      The Rule of Mandate Requires Dismissal of the Second Amended Complaint.**

"Under the 'rule of mandate,' a lower court is unquestionably obligated to 'execute the terms of a mandate.'" *S.F. Herring Ass'n v. Dep't of the Interior*, 946 F. 3d 564, 574 (9th Cir. 2019) (citation omitted). The "mandate rule . . . serves an interest in preserving the hierarchical structure of the court system," *United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007), "and thus constitutes a basic feature of the rule of law in an appellate scheme." *S.F. Herring Ass'n*, 946 F.3d at 574. When the scope of the remand is clear, the role of a district court is limited. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012); *Mendez-Gutierrez v. Gonzalez*, 444 F.3d 1168, 1172 (9th Cir. 2006). A district court cannot vary or examine the mandate of an appellate court "for any other purpose than execution," *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895), nor "refuse to dismiss a case when the mandate required it." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995).

The task of a district court in applying the rule of mandate is to "distinguish matters that have been decided on appeal . . . from matters that have not." *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000). "The rule of mandate requires that, on remand, the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision." *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1214 (C.D. Cal. 2005) (emphasis in

original) (citing *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979)). "Violation of the rule of mandate is a jurisdictional error." *Hall*, 697 F.3d at 1067.

Here, the mandate is clear. The Ninth Circuit held that neither the declaratory relief nor the injunctive relief sought in the first amended complaint—and which Plaintiffs again seek in the second amended complaint—satisfies the redressability requirement. On that basis, the Ninth Circuit reversed the certified orders and remanded to this Court "with instructions to dismiss for lack of Article III standing." *Juliana*, 947 F.3d at 1175. The instructions to dismiss the case are unambiguous and leave no room for perpetuating a lawsuit based on the second amended complaint, which is nearly identical to the first amended complaint. This Court should accordingly dismiss the second amended complaint rather than reexamine whether a declaratory judgment could satisfy redressability, as that issue was expressly disposed of on appeal. *United States v. Washington*, 172 F.3d 1116, 1118 (9th Cir. 1999) (holding that "[t]he mandate is controlling as to all matters within its compass" and that district courts on remand may examine only those issues "not expressly or impliedly disposed of on appeal") (cleaned up).

## II.    Plaintiffs Lack Standing Because Their Claims are Not Redressable.

Even assuming the Ninth Circuit's mandate were not controlling as to redressability, this Court should dismiss Plaintiffs' second amended complaint on that basis.[5] "To have standing under Article III, a plaintiff must have (1) a concrete and particularized injury that (2) is caused

---

[5] Plaintiffs also contend that Section 201 of the Energy Policy Act and the Department of Energy's 2011 order authorizing the export of liquified natural gas from the Jordan Cove LNG Terminal in Coos Bay, Oregon are unconstitutional. SAC ¶¶ 193, 288 and p. 143, ¶ 3 (Prayer for Relief). As with all of Plaintiffs' claims, a favorable decision specific to the Energy Policy Act would not meaningfully redress Plaintiffs' asserted climate injuries. In any event, this claim is beyond this Court's jurisdiction because exclusive jurisdiction to review export authorizations like this one is vested in the courts of appeals. 15 U.S.C. § 717r(b); *Consol. Gas Supply Corp. v. FERC*, 611 F.2d 951, 957 (4th Cir. 1979).

by the challenged conduct and (3) is likely redressable by a favorable judicial decision." *Juliana*, 947 F.3d at 1168. With respect to the third element—redressability—"plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Id.* at 1170 (citing *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (cleaned up).[6]

A.    **Plaintiffs do not have standing to seek injunctive relief.**

Even if the rule of mandate did not apply, the Ninth Circuit's opinion controls as a matter of precedent. The second amended complaint should be dismissed for the same reasons that the Ninth Circuit held the first amended complaint should be dismissed. The second amended complaint seeks an "injunction restraining Defendants from carrying out policies, practices, and affirmative actions that render the national energy system unconstitutional in a manner that harms Plaintiffs." SAC at 143 (Prayer for Relief ¶ 4). But the Ninth Circuit has already held, and Plaintiffs' experts have conceded, that "an order simply enjoining [the challenged] activities will not, according to their own experts' opinions, suffice to stop catastrophic climate change or even ameliorate" Plaintiffs' injuries. *Id*. Plaintiffs, therefore, cannot satisfy the first prong of the redressability inquiry for injunctive relief because they cannot show that the relief sought is "substantially likely to redress their injuries." *Id.* at 1171.

---

[6] Defendants recognize that the Ninth Circuit concluded that the first amended complaint adequately pleaded the first two prongs of Article III standing. *Juliana*, 947 F.3d at 1168-69. Defendants respectfully reserve their right in potential higher court review to raise their opposition to the Ninth Circuit's ruling on the injury-in-fact and traceability prongs of standing.

Even if Plaintiffs could establish that injunctive relief would ameliorate their alleged injuries, the injunction they seek in the second amended complaint is unavailable because it would enjoin the Executive Branch from exercising discretionary authority granted to it by statute, and would enjoin Congress from exercising power expressly granted to it by the Constitution. *Id.* (citing the Property Clause, U.S. CONST. art. IV, § 3, cl. 2). Plaintiffs seek an injunction "restraining Defendants from carrying out policies, practices, and affirmative actions" that allegedly harm them. SAC at 143 (Prayer for Relief ¶ 4). As the Ninth Circuit has explained, such an injunction would "necessarily require a host of complex policy decisions entrusted . . . to the wisdom and discretion of the executive and legislative branches," *Juliana*, 947 F.3d at 1171, decisions "which must be made by the People's 'elected representatives.'" *Id.* at 1172 (quoting *Collins*, 503 U.S. at 128-29). The policy decisions that Plaintiffs aim to nullify, prevent, or curtail are within the province of the political branches. *Id.* at 1173. The requested injunction therefore lies beyond a district court's power to award. *Id.*

**B.      Plaintiffs do not have standing to seek declaratory relief.**

The declaratory relief sought in the second amended complaint—which is nearly identical to the declaratory relief sought in the first amended complaint—also fails the redressability analysis. The Ninth Circuit concluded that a declaration that the government is violating the Constitution would not likely remediate Plaintiffs' injuries. *Id.* at 1170. The Ninth Circuit found that while a declaration may be "likely to benefit the plaintiffs psychologically, [it] is unlikely by itself to remediate their alleged injuries absent further court action." *Id.* at 1170; *see also Clean Air Council*, 362 F. Supp. 3d at 246, 249 ("I cannot adequately redress Plaintiffs' injuries. . . . [Declaratory] relief will not redress the injuries Plaintiffs have already suffered."). And because the declaration Plaintiffs sought could not address Plaintiffs' injuries without

impermissibly embroiling a federal court in ongoing oversight of the elected branches, all that would be left is "psychic satisfaction," which "is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co.*, 523 U.S. at 107. Thus, the Ninth Circuit concluded that Plaintiffs lack Article III standing to bring a claim solely for declaratory relief.

The second amended complaint fares no better. The declaration Plaintiffs now seek is not materially different from the declaration they sought in their first amended complaint, and the Ninth Circuit has already concluded that such relief fails the test for redressability. And the declaration they seek also suffers from the same basic redressability flaw that sinks their request for an injunction—Plaintiffs cannot establish that "the specific relief they seek is within the power of an Article III court." *Juliana*, 947 F.3d at 1171. Their second amended complaint seeks a declaration concluding that "the national energy system" is unconstitutional, SAC at 143, ¶¶ 3-4; that sort of unbounded declaration, which would functionally declare unconstitutional unspecified laws, regulations, and policies, is not within the power of a federal court to award.

Plaintiffs predict that a declaratory judgment is "likely to stop" the government conduct they complain of, because the government would change the "policies and practices" Plaintiffs object to. SAC ¶¶ 95-A, 95-B. Even assuming this were true, a declaratory judgment still would not adequately redress Plaintiffs' climate injuries for the same reason the Ninth Circuit was "skeptical" that even the broad injunction sought in the first amended complaint would be "substantially likely to redress [Plaintiffs'] injuries." *Juliana*, 947 F.3d at 1170-71. As the Ninth Circuit noted, Plaintiffs' own experts conceded that "reducing the global consequences of climate change demands much more than cessation of the government's promotion of fossil fuels. Rather, these experts opine that such a result calls for no less than a fundamental

transformation of this country's energy system, if not that of the industrialized world." *Id*. A declaratory judgment plainly would not accomplish this end. And even to the extent a declaratory judgment could have the effect of slowing or reducing global greenhouse-gas emissions, the Ninth Circuit explained that such an effect would not establish redressability in the context of Plaintiffs' claims here. *See id*. at 1171 (explaining that the relaxed redressability standard Plaintiffs sought to invoke is unavailable to them because they assert substantive claims rather than procedural rights claims) (citing *Massachusetts v. EPA*, 549 U.S. 497, 525-26 (2007)).

Turning to the second prong of the redressability analysis, Plaintiffs also cannot show that the declaratory relief they seek is "within the power of an Article III court." *Juliana*, 947 F.3d at 1171; *see also M.S.*, 902 F.3d at 1083. As the Ninth Circuit explained, "it is beyond the power of an Article III court to order, design, supervise, or implement" the programmatic remedies Plaintiffs seek in this lawsuit, *Juliana*, 947 F.3d at 1171, and labeling the requested relief as a declaratory judgment instead of an injunction does not bring that same remedy within an Article III court's power. *See California v. Texas*, 141 S. Ct. 2104, 2115-16 (2021). Plaintiffs' ultimate goal in seeking a declaratory judgment impermissibly remains broad judicial assessment and oversight of the Executive Branch unmoored from any discrete agency action or specific relief that would be within a court's power to award. To the extent Plaintiffs locate redressability in the persuasive effect of a broad declaration that would identify no substantive action violative of their rights, that sort of advisory opinion does not fall within an Article III court's power for the same reason.

In sum, the Ninth Circuit considered whether declaratory relief satisfied the redressability requirement and concluded, correctly and definitively, that such relief does not satisfy Article III

in this case. *Juliana*, 947 F.3d at 1170. Because the declaratory relief sought in the second amended complaint is nearly identical to the declaratory relief sought in the first amended complaint, it fares no better and Plaintiffs' second amended complaint must be dismissed.

The Supreme Court's opinion in *Uzuegbunam* does not support a different result. That opinion was issued in March 2021, after the Ninth Circuit panel decided the present case in January 2020, *see Juliana*, 947 F.3d 1159 (2020), and after the full Circuit denied rehearing en banc in February 2021. *Juliana*, 986 F.3d 1295 (Mem.) (2021). *Uzuegbunam* has no bearing on, and certainly did not abrogate, the Ninth Circuit's decision in this case. *Uzuegbunam* involved nominal damages, not declaratory judgments. *See* 141 S. Ct. at 802. Nominal damages are retrospective remedies that can redress "a completed violation of a legal right." *Id.* Declaratory judgments, in contrast, operate prospectively to address a defendant's future conduct. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-127 (2007). Nothing in *Uzuegbunam* even remotely suggests that the Supreme Court intended to overrule its long-standing precedent on standing to seek prospective remedies such as declaratory judgments.

Following *Uzuegbunam*, the Supreme Court has continued to recognize that declaratory relief is not enough to establish redressability unless a declaration will have some immediate, real-world effect that addresses concrete harm. *See California v. Texas*, 141 S. Ct. at 2115-16 (dismissing for lack of redressability where plaintiffs sought a declaratory judgment stating that the statutory provision they attacked is unconstitutional); *Haaland* v. *Brackeen*, No. 21-376, 2023 WL 4002951, at *18 (June 15, 2023) (same). Because neither the injunctive nor the declaratory relief they seek will redress Plaintiffs' alleged injuries, the claims in the second amended complaint are not redressable and the Court should dismiss the claims for lack of Article III standing.

**III.    Plaintiffs' Action is Not a Case or Controversy Cognizable Under Article III.**

Aside from Plaintiffs' lack of standing, this action should be dismissed because it simply is not one that a federal court may entertain consistent with the Constitution. "Sometimes, . . . the law is that the judicial department has no business entertaining the claim of unlawfulness— because the question is entrusted to one of the political branches or involves no judicially enforceable rights." *Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004) (plurality opinion). In such a case the claim is said to . . . be nonjusticiable—outside the courts' competence and therefore beyond the courts' jurisdiction." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2494 (2019) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)).

The "judicial Power of the United States," U.S. CONST. art. III, § 1, is "one to render dispositive judgments" in "cases and controversies" as defined by Article III. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-19 (1995) (citation omitted). That power can "come into play only in matters that were the traditional concern of the courts at Westminster" and only in "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000) (citations omitted). "If a dispute is not a proper case or controversy, the courts have no business deciding it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

Plaintiffs' suit is not a case or controversy cognizable under Article III. Plaintiffs ask the Court to review and assess the entirety of Congress's and the Executive Branch's programs and regulatory decisions relating to climate change and then to pass on the comprehensive constitutionality of all of those policies, programs, and inaction in the aggregate. SAC ¶¶ 277-310. No federal court, nor the courts at Westminster, has ever purported to use the "judicial Power" to perform such a sweeping policy review—and for good reason: the Constitution

entrusts to Congress, not the Judiciary, the power to enact through legislation comprehensive government-wide measures of the sort sought by Plaintiffs. And it commits to the President the power to oversee departments and agencies in the Executive Branch in their administration of the broad range of laws committed to their implementation and to draw on their expertise to formulate policy proposals for changing those laws or their implementation across the Executive Branch. These functions are not the province of Article III courts. The "Constitution's central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts." *Defs. of Wildlife*, 504 U.S. at 559-60. The aggregated collection of undifferentiated "policies, practices, and . . . actions" that Plaintiffs seek to prevent or impose through their lawsuit challenging the entirety of the federal government's energy policy as implemented by eight separate departments and the Executive Office of the President, SAC at 143 (Prayer for Relief ¶ 4), are matters appropriately entrusted to the legislature and the executive, not the courts.

Nor is the review that Plaintiffs seek within the Court's equitable powers. A federal court's equitable powers are "subject to restrictions: the suit must be within the traditional scope of equity as historically evolved in the English Court of Chancery." *Guaranty Trust Co. v. York*, 326 U.S. 99, 105 (1945). The relief requested by Plaintiffs is plainly not of the sort "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). At bottom, this dispute over American energy and environmental policy "is not a proper case or controversy," either at law or in equity, and so "the courts have no business deciding it." *Cuno*, 547 U.S. at 341.

"The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion."

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803). If a dispute—even one alleging a

constitutional violation—is not a proper case or controversy, the federal courts may not decide it.

A court's inquiry into its own jurisdiction must be "especially rigorous when reaching the merits

of the dispute would force [it] to decide whether an action taken by one of the other two branches

of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

408 (2013) (citation omitted).

Because this action is categorically not a case or controversy within the meaning of

Article III, and far beyond the equitable authority of a court to entertain, the Court lacks

jurisdiction to entertain it.

## IV.    Plaintiffs' Claims Fail on the Merits.

Because Plaintiffs' action fails at the jurisdictional threshold, the Ninth Circuit never

reached—and this Court need not reach—the merits of the claims. Defendants recognize that this

Court previously denied the government's motion to dismiss the first amended complaint,

motion for judgment on the pleadings, and motion for summary judgment. ECF Nos. 83, 369.

However, the Ninth Circuit has reversed this Court's prior orders. *Juliana*, 947 F.3d at 1175.

Plaintiffs' second amended complaint, which supersedes the first amended complaint, *Pacific*

*Bell Tel. Co. v. linkLine Communications, Inc.*, 555 U.S. 438, 456 n.4 (2009), asserts the same

claims that were brought in the first amended complaint, which this Court addressed in orders

that the Ninth Circuit reversed. Defendants thus renew their objection that Plaintiffs' claims fail

on the merits and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### A.    There is no constitutional right to a stable climate system.

The Supreme Court has repeatedly instructed courts considering novel due process claims

to "'exercise the utmost care whenever . . . asked to break new ground in this field,'… lest the

liberty protected by the Due Process Clause be subtly transformed" into judicial policy preferences. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (cleaned up).  More specifically, the Supreme Court has "regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition.'" *Id.* at 720-21 (cleaned up). Plaintiffs' request that this Court recognize an implied fundamental right to a stable climate system, SAC ¶ 304, contradicts that directive, because such a purported right is without basis in the Nation's history or tradition.

The proposed right to a "stable climate system" is nothing like any fundamental right ever recognized by the Supreme Court. The state of the climate is a public and generalized issue, and so interests in the climate are unlike the particularized personal liberty or personal privacy interests of individuals the Supreme Court has previously recognized as being protected by fundamental rights. *See, e.g.*, *Guertin v. Michigan*, 912 F.3d 907, 921-22 (6th Cir. 2019) (The "Constitution does not guarantee a right to live in a contaminant-free, healthy environment."); *Nat'l Sea Clammers Ass'n v. City of New York*, 616 F.2d 1222,1237-38 (3d Cir. 1980) (finding it "established in this circuit and elsewhere that there is no constitutional right to a pollution-free environment"), *vacated on other grounds sub nom. Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981); *Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1971) (observing that arguments "in support of a constitutional protection for the environment" have not "been accorded judicial sanction"); *cf. Lake v. City of Southgate*, No. 16-10251, 2017 WL 767879, at *4 (E.D. Mich. Feb. 28, 2017) ("[W]henever federal courts have faced assertions of fundamental rights to a 'healthful environment' or to freedom from harmful contaminants, they have invariably rejected those claims."). Plaintiffs' First Claim for Relief must be dismissed.

**B.      Plaintiffs fail to allege a cognizable state-created danger claim.**

The First Claim for Relief must also be dismissed because the Constitution does not impose an affirmative duty to protect individuals, and Plaintiffs have failed to allege a cognizable claim under the "state-created danger" exception to that rule.

As a general matter:

> [The Due Process Clause] is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 194-95 (1989). Thus, the Due Process Clause imposes no duty on the government to protect persons from harm inflicted by third parties that would violate due process if inflicted by the government. *Id.* at 196; *accord Patel v. Kent School Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).

The Ninth Circuit recognizes two narrow exceptions to the no-duty-to-protect rule articulated in *DeShaney*: (1) the "special-relationship" exception, which applies to individuals involuntarily placed in state custody; and (2) the state-created danger exception. *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023).[7] Under the second exception, "a state actor can be held liable for failing to protect a person's interest in his personal security or bodily integrity when the state actor affirmatively and with deliberate indifference placed that person in danger." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016). The exception has "limited applicability," and the Ninth Circuit has not often approved its application. *Kennedy v. City of*

---

[7] The Ninth Circuit has rejected the argument that there is a third exception that "a state actor commits a § 1983 deprivation when he fails to perform an act he is legally required to do." *Murguia*, 61 F.4th at 1107.

*Ridgefield*, 440 F.3d 1091 (Mem.), 1095 (9th Cir. 2006) (Tallman, J., dissenting from denial of rehearing en banc).

Plaintiffs contend that the government's "deliberate actions" and "deliberate indifference" with regard to the dangers of climate change amount to a due process violation under the state-created danger exception. SAC ¶¶ 280-85. But applying the exception to the circumstances of this case would cause the exception to swallow the rule. "Every instance" in which the Ninth Circuit has "permitted a state-created danger theory to proceed has [also] involved an act by a government official that created an obvious, immediate, and particularized danger to a specific person known to that official." *Pauluk*, 836 F.3d at 1129-30 (Murguia, J., concurring in part and dissenting in part) (internal quotation marks omitted); *see also id.* at 1130 (collecting cases). None of those elements is present here.

*First*, Plaintiffs have identified no harms to their "personal security or bodily integrity" of the kind and immediacy that qualify for the state-created danger exception. Under Ninth Circuit precedent, viable harms include rape, *e.g., L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992); *Wood v. Ostrander*, 879 F.2d 583, 586, 590 (9th Cir. 1989); other physical assault, *e.g., Hernandez v. City of San Jose*, 897 F.3d 1125, 1129-30 (9th Cir. 2018); *Bracken v. Okura*, 869 F.3d 771, 779-80 (9th Cir. 2017); and death directly caused by a government action, *e.g., Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1082-83 (9th Cir. 2013); *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1084-85 (9th Cir. 2000). But here, Plaintiffs allege that general degradation of the global climate has harmed their "dignity, including their capacity to provide for their basic human needs, safely raise families, practice their religious and spiritual beliefs, [and] maintain their bodily integrity" and has prevented them from "lead[ing] lives with access to

clean air, water, shelter, and food." SAC ¶ 283. Those types of harm are unlike the immediate, direct, physical, and personal harms at issue in the above-cited cases.

*Second*, Plaintiffs identify no specific government actions—much less government *actors*—that put them in such danger. Instead, Plaintiffs contend that a number of (mostly unspecified) agency actions and inactions spanning the last several decades have exposed them to harm. This allegation of slowly-recognized, long-incubating, and generalized harm by itself conclusively distinguishes their claim from all other state-created-danger cases recognized by the Ninth Circuit. *See, e.g.*, *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997) (recognizing a due process violation where officers "took affirmative actions that significantly increased the risk facing [the victim]: they cancelled the 911 call to the paramedics; they dragged [him] from his porch, where he was in public view, into an empty house; they then locked the door and left him there alone . . . *after* they had examined him and found him to be in serious medical need") (emphasis in original); *Wood*, 879 F.2d at 588 (same where officer arrested driver, impounded his car, and left his female passenger by the side of the road at night in a high-crime area).

*Third*, Plaintiffs do not allege that government actions endangered *Plaintiffs* in particular. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1067 (9th Cir. 2006). The "duty to protect arises where a police officer takes affirmative steps that increase the risk of danger *to an individual*." *Munger*, 227 F.3d at 1089 (emphasis added); *see also Martinez v. California*, 444 U.S. 277, 284-85 (1980) (refusing to find state officers liable where officers were not aware that the victim "as distinguished from the public at large, faced any special danger"). As explained above, Plaintiffs' asserted injuries arise from a diffuse, global phenomenon that affects every other person in their communities, in the United States, and throughout the world.

For all these reasons, there is no basis for finding a violation of Plaintiffs' due process right under the state-created danger doctrine, and Plaintiffs' corresponding claim must be dismissed.

**C.      No federal public trust doctrine creates a right to a stable climate system.**

Plaintiffs' Fourth Claim for Relief, asserting public trust claims, should be dismissed for two independent reasons. First, any public trust doctrine is a creature of *state* law that applies narrowly and exclusively to particular types of state-owned property not at issue here. That doctrine has no application to federal property, the use and management of which is entrusted exclusively to Congress. U.S. Const. art. IV, § 3, cl. 2 ("The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."). Consequently, there is no basis for Plaintiffs' public trust claim against the federal government under *federal* law. Second, the "climate system" or atmosphere is not within any conceivable federal public trust.

### 1.      No public trust doctrine binds the federal government.

Plaintiffs rely on an asserted public trust doctrine for the proposition that the federal government must "take affirmative steps to protect" "our country's life-sustaining climate system," which they assert the government holds in trust for their benefit. SAC ¶ 308. But because any public trust doctrine is a matter of state law only, public trust claims may not be asserted against the federal government under federal law.

The concept of a public trust is derived from English common law. *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1081-82 (D.C. Cir. 1984). Where the concept has been invoked, it generally declares that "the sovereign owns all of its navigable waterways and the lands lying beneath them as trustee of a public trust for the benefit of the people." *Nat'l Audubon*

*Soc'y v. Superior Ct.*, 658 P.2d 709, 718 (Cal. 1983) (internal quotation marks and citation omitted).

Plaintiffs claim that the public trust is "secured by the Ninth Amendment and embodied in the reserved powers doctrines of the Tenth Amendment and the Vesting, Nobility, and Posterity Clauses of the Constitution." SAC ¶ 308. But the Supreme Court has without exception treated public trust doctrine as a matter of state law with no basis in the United States Constitution. *See, e.g., PPL Montana, LLC v. Montana*, 565 U.S. 576, 603-04 (2012); *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 283-85 (1997); *Phillips Petroleum Co. v. Mississippi*, 484 U.S. 469, 475 (1988); *Appleby v. City of New York*, 271 U.S. 364, 394 (1926); *Long Sault Dev. Co. v. Call*, 242 U.S. 272, 278-79 (1916); *Shively v. Bowlby*, 152 U.S. 1, 57-58 (1894); *Ill. Cent. R.R. Co. v. Illinois*, 146 U.S. 387, 452-53 (1892).

In *PPL Montana* the Supreme Court made clear that "the public trust doctrine remains a matter of state law," and that its "contours . . . do not depend upon the Constitution." 565 U.S. at 603-04. The Court explained that the public trust doctrine, as a creature of state law, was "subject . . . to the federal power to regulate vessels and navigation under the Commerce Clause and admiralty power." *Id.* at 604. In this Court's prior order denying Defendants' motions for judgment on the pleadings and for summary judgment, it attempted to distinguish *PPL Montana* on the basis that the Supreme Court did not address "the viability of federal public trust claims with respect to federally-owned trust assets." MTD Order at 44. But *PPL Montana* made clear that a public trust doctrine would never apply to the federal government, 565 U.S. at 603-04, and different factual assertions would not change that result.

Consistent with the discussion above, the D.C. Circuit rejected the same theory advanced by Plaintiffs here in *Alec L. ex rel. Loorz v. McCarthy*, 561 F. App'x 7 (D.C. Cir. 2014)—a

purported public trust action brought on behalf of a different group of children. There, the plaintiffs asserted that the federal government had abdicated a public trust duty to protect the atmosphere from irreparable harm. *Alec L. v. Jackson*, 863 F. Supp. 2d 11, 12 (D.D.C. 2012), *aff'd sub nom. Alec L. ex rel. Loorz v. McCarthy*, 561 F. App'x 7 (D.C. Cir. 2014). In a detailed opinion, the district court dismissed the case, holding that "the central premise upon which Plaintiffs rely to invoke the Court's jurisdiction is misplaced," because public trust claims do not present a federal question. *Id.* at 15 (citing *PPL Montana*, 565 U.S. at 603-04). The D.C. Circuit affirmed in an unpublished, per curiam opinion explaining that *PPL Montana* "repeatedly referred to 'the' public trust doctrine"—that is, "the *state* public trust doctrine"—and "directly and categorically rejected any federal constitutional foundation for that doctrine, without qualification or reservation." 561 F. App'x at 8.

The holdings in the foregoing cases are consistent with—and indeed compelled by—the Property Clause of the Constitution, which provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States[.]" U.S. CONST. art. IV, § 3, cl. 2. In *Kleppe v. New Mexico*, the Supreme Court held that "[t]he power over the public land thus entrusted to Congress is without limitations." 426 U.S. 529, 539 (1976) (cleaned up); *see also Alabama v. Texas*, 347 U.S. 272, 273 (1954). Because the Constitution makes Congress's power over federal property plenary, that power is not subject to, or in any way constrained by, any common law public trust doctrine.[8]

---

[8] In its earlier order on the motions to dismiss the first amended complaint, this Court rejected the United States' reliance on *Kleppe v. New Mexico*. MTD Order 47-48. While conceding that Congress's "power over public lands" is "without limitations[,]" this Court emphasized that "the furthest reaches of the power granted by the Property Clause have not yet been definitively resolved[.]" *Id.* (second alteration in original) (quoting *Kleppe*, 426 U.S. at 539). This Court

2.    Any public trust doctrine would not apply to the "climate system" or the atmosphere.

Independently, any asserted public trust doctrine does not help Plaintiffs here. Public trust cases have historically involved state ownership of specific types of natural resources, usually limited to submerged and submersible lands, tidelands, and waterways. *See, e.g.*, *PPL Montana*, 565 U.S. at 603-04 (riverbeds); *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Protection*, 560 U.S. 702, 707-08 (2010) (submerged lands); *Phillips Petroleum Co.*, 484 U.S. at 476-77 (tidelands); *Summa Corp. v. California ex rel. State Lands Comm'n*, 466 U.S. 198, 204-05 (1984) (tidelands); *United States v. Mission Rock Co.,* 189 U.S. 391, 406-07 (1903) (tidelands); *Ill. Cent. R.R.*, 146 U.S. at 452-60 (submerged lands).

Plaintiffs would inappropriately extend the public trust doctrine well beyond its historical mooring. Plaintiffs seek to hold the government responsible for maintaining "climate system, which encompasses our atmosphere, waters, oceans, and biosphere." SAC ¶ 308. Specifically, they contend that the federal government has "alienated substantial portions of the atmosphere" and that agencies have "failed in their duty of care as trustees to manage the atmosphere." SAC ¶ 309. Although state courts have sometimes expanded the state-law doctrine to protect additional uses of waters within a state's jurisdiction—e.g., for recreation, aesthetic enjoyment, and preservation of flora and fauna, *see Air Florida*, 750 F.2d at 1083 (collecting cases)—the climate system or atmosphere is unlike any resource previously deemed subject to a public trust. It

---

concluded on that basis that *Kleppe* did not necessarily foreclose the Plaintiffs' public trust claims. *Id.* But as the Tenth Circuit has explained, the uncertainty to which the *Kleppe* Court was referring "appears to concern not power over federal land but power over property outside federal land." *United States v. Bd. of Cty. Comm'rs of Cnty. of Otero*, 843 F.3d 1208, 1212-13 (10th Cir. 2016). And in finding a lack of redressability for Plaintiffs' requested injunctive relief, the Ninth Circuit in this case recognized that Plaintiffs would contravene the Property Clause insofar as they would be seeking "to enjoin Congress from exercising power expressly granted by the Constitution over public lands." *Juliana*, 947 F.3d at 1170.

cannot be owned and, due to its ephemeral nature, cannot remain within the jurisdiction of any single government. No court has held that the climate system or atmosphere is protected by a public trust doctrine. Indeed, the concept has been widely rejected.[9]

Although their operative complaint confirms that Plaintiffs seek to hold the federal government responsible for alleged mismanagement of the entire "climate system"—and not any particular tidelands, waters, or oceans—in its opinion and order denying the motions to dismiss the first amended complaint, this Court held that Plaintiffs had stated a viable claim because they "alleged violations of the public trust doctrine in connection with the territorial sea." MTD Order 40. But while Plaintiffs may allege that the territorial seas were harmed by the government's alleged failure to protect the climate system, in their second amended complaint, they contend that the atmosphere is burdened by a federal trust. SAC ¶ 310. That the federal agency action and inaction challenged by Plaintiffs might indirectly affect the territorial seas does not mean that Plaintiffs have identified a protected trust. For all these reasons, the Court should dismiss Plaintiffs' Fourth Claim for Relief.

---

[9] *See, e.g.*, *Clean Air Council*, 362 F. Supp. 3d at 254 ("I decline to arrogate to the Courts the authority to direct national environmental policy. Accordingly, I will grant Defendants' Motion and dismiss Plaintiffs' public trust claim . . . ."); *Sanders-Reed ex rel. Sanders-Reed v. Martinez*, 350 P.3d 1221, 1225 (N.M. Ct. App. 2015) ("Plaintiffs have cited no cases—and we have found none—where another jurisdiction's appellate court has concluded that common law public trust principles independently apply to management of the atmosphere."); *Filippone ex rel. Filippone v. Iowa Dep't of Nat. Res.*, No. 12-0444, 2013 WL 988627, at *3 (Iowa Ct. App. Mar. 13, 2013) (holding that the defendant "does not have a duty under the public trust doctrine to restrict greenhouse gases to protect the atmosphere"); *Aronow v. Minnesota*, No. A12-0585, 2012 WL 4476642, at *3 (Minn. Ct. App. Oct. 1, 2012) (explaining that "no Minnesota appellate court has held that the public-trust doctrine applies to the atmosphere"); *cf. Chernaik v. Brown*, No. 16-11-09273, 2015 WL 12591229, at *7 (Or. Cir. Ct. May 11, 2015) ("This Court, based on its understanding of the history of the public trust doctrine in Oregon, cannot conclude that the atmosphere is a 'resource' to which the public trust doctrine is applicable."), *aff'd in relevant part*, 295 Or. App. 584, 598 (2019); *aff'd*, 367 Or. 143 (2000).

**D.      Plaintiffs are not a discrete minority and have no equal protection claim.**

None of the government actions that Plaintiffs complain of classify or affect youth or posterity any differently than they affect other persons. For this reason, Plaintiffs' Equal Protection Clause claim must fail. But even if the challenged government actions classify or affect youth and posterity differently, those actions are reviewed under the rational basis test because youth and posterity are not suspect classifications that are subject to heightened scrutiny, as this Court previously recognized. MJP & MSJ Order at 57-59. Moreover, the challenged actions survive rational basis review because Plaintiffs have not alleged, and cannot allege, that there is no reasonably conceivable state of facts that could provide a rational basis for the Defendants' actions.

"The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). The "Constitution presumes that even improvident decisions will eventually be rectified by … democratic processes." *Id.* This general rule gives way only when a statute burdens a fundamental right protected by the Constitution or uses a suspect classification such as race, alienage, or national origin. Such laws are subject to strict scrutiny and will be sustained only if they are suitably tailored to a compelling state interest. *Id.*

Because Plaintiffs' desire to live free of climate change is not a fundamental right under the Constitution, *see* ECF No. 27-1 at 21-22, for the Court to apply heightened scrutiny to the challenged actions, Plaintiffs must show that they are a suspect class in need of extraordinary protection. But the Supreme Court has declined to treat classifications based on age as suspect and has thus declined to apply heightened scrutiny to government actions that classify by age. In *Massachusetts Board of Retirement v. Murgia*, the Supreme Court explained that "a suspect class

is one 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'" 427 U.S. 307, 313 (1976) (citation omitted). The Court stated that a suspect class is a "discrete and insular group," which the elderly are not because old age "marks a stage that each of us will reach if we live out our normal life span." *Id.* at 313-14 (citing *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152-53 n.4 (1938)).

The young, though they "have historically been denied full rights of adulthood while shouldering such burdens of citizenship as military service," have not been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness, as to justify searching judicial scrutiny." *Gabree v. King*, 614 F.2d 1, 2 (1st Cir. 1980) (quoting *Murgia*, 427 U.S. at 313) (internal quotation marks and citations omitted); *see also Cunningham v. Beavers*, 858 F.2d 269, 273 (5th Cir. 1988) ("No cases have ever held, and we decline to hold, that children are a suspect class."). Courts accordingly apply rational basis review to classifications based on youth or infancy. *See, e.g., United States v. Flores-Villar*, 536 F.3d 990, 998 (9th Cir. 2008) ("Rational basis review applies to the claim of age-based discrimination because age is not a suspect class."), *aff'd*, 564 U.S. 210 (2011), *and abrogated on other grounds by Sessions v. Morales-Santana*, 582 U.S. 47 (2017); *Douglas v. Hugh A. Stallings, M.D., Inc.*, 870 F.2d 1242, 1245-46 (7th Cir. 1989) ("[P]laintiffs can point this Court to no case which has recognized . . . minors . . . as a suspect classification."); *Jaffee v. Soc'y of N.Y. Hosp.*, No. 96-cv-3623-LAP, 1999 WL 246747, at *3 (S.D.N.Y. Apr. 27, 1999); *Price v. Cohen*, 715 F.2d 87, 93 (3d Cir. 1983).

"Because age is not a suspect classification," *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997), the actions Plaintiffs challenge are subject only to rational basis

review, which affords those actions a strong presumption of validity. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993). Under this standard, a court must uphold government action "if there is any reasonably conceivable state of facts that could provide a rational basis" for them. *Id.* at 313. Plaintiffs attacking the rationality of legislative acts bear the burden "to negative every conceivable basis which might support [them]." *Id.* at 315 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). But the second amended complaint does not allege facts from which this Court could plausibly conclude that the challenged federal policies and actions lack a rational basis. Instead, Plaintiffs' Equal Protection claim relies entirely on the establishment of a non-existent fundamental right, together with the uniformly rejected proposition that youth are "separate suspect classes in need of extraordinary protection." SAC ¶ 294. Because Plaintiffs have not alleged that the challenged government actions lack a rational basis (and because any attempt to do so would be futile), Plaintiffs' Second Claim for Relief should be dismissed for failure to state a claim.

  **E.**  **The Ninth Amendment guarantees no substantive rights**.

  Plaintiffs invoke the Ninth Amendment in alleging that Defendants have infringed their unenumerated right to a stable climate system in violation of the Ninth Amendment. SAC ¶¶ 302-06. This Court correctly ruled that Plaintiffs' Ninth Amendment claim in the first amended complaint "is not viable as a matter of law" under the Ninth Circuit's controlling precedent. MJP & MSJ Order at 56 (citing *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986)). This remains the case despite Plaintiffs' attempt to replead a Ninth Amendment claim in the second amended complaint, and that claim should be dismissed.

  "The [N]inth [A]mendment has never been recognized as independently securing any constitutional right." *Strandberg*, 791 F.2d at 748. Instead, it is a "rule of construction" that does

not give rise to individual rights. *United States v. Bifield*, 702 F.2d 342, 349 (2d Cir. 1983); *see*

*Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991) (dismissing claim on the ground that "the

[N]inth [A]mendment does not confer substantive rights in addition to those conferred by other

portions of our governing law"); *DeLeon v. Little*, 981 F. Supp. 728, 734 (D. Conn. 1997)

(holding that "'the Ninth Amendment does not guarantee any constitutional right'") (cleaned up);

*Mann v. Meachem*, 929 F. Supp. 622, 634 (N.D.N.Y. 1996) ("The Ninth Amendment is

recognized as a rule of construction and does not protect any specific right.").

**V.    Plaintiffs Were Required to Bring this Action Under the Administrative Procedure Act but Concededly Did Not.**

The Ninth Circuit found that "[w]hatever the merits of the plaintiffs' claims, they may

proceed independently of the review procedures mandated by the [Administrative Procedure Act

("APA")]." *Juliana*, 947 F.3d at 1167-68. In so doing the Ninth Circuit allowed Plaintiffs to

bypass the "comprehensive remedial scheme" that the APA provides for a "person suffering

legal wrong because of agency action" of the various agencies they have sued or by an agency's

alleged failure to act with respect to regulatory requirements and standards, permitting, and other

administrative measures. *Id.* at 1167-68; 5 U.S.C. § 702. Defendants disagree with the Ninth

Circuit's determination on this point but concede that the Ninth Circuit's decision governs, and

respectfully preserve their arguments on the applicability of the APA for potential further review.

**VI.    If the Court Denies Defendants' Motion to Dismiss, it Should Certify its Order for Interlocutory Appeal.**

The standard for certification for interlocutory appeal under 28 U.S.C. § 1292(b) requires

that a court decide a "controlling question of law." This motion to dismiss raises several

controlling questions of law, including whether (1) dismissal is required by the mandate rule; (2)

Plaintiffs have satisfied their burden of showing Article III standing; (3) this suit is a proper case

or controversy within a court's traditional equitable powers to entertain, and not foreclosed by

separation-of-powers doctrine; (4) Plaintiffs are required to bring their constitutional challenges to regulatory agency action or inaction under the APA; (5) there is a substantive due process right to a stable climate system; (6) there is a cognizable public trust claim against the federal government; and (7) Plaintiffs have a viable equal protection claim even though they are not a suspect class. The sufficiency of Plaintiffs' allegations under Rule 12 is purely a question of law. A successful appeal as to any of the first four issues, relating to justiciability, would inevitably dispose of the entire case, and they are therefore controlling. And a successful appeal of the remaining three issues, relating to the merits of Plaintiffs' claims, would similarly dispose of the entire case.

The second requirement for certification under 28 U.S.C. § 1292(b) is that the controlling question (or questions) of law decided by the court must present "substantial grounds for difference of opinion." The Supreme Court's earlier orders in this case leave no doubt that this requirement is satisfied, both as to justiciability and the merits of Plaintiffs' claims. The Supreme Court's July 30, 2018 Order stated that "the justiciability of [Plaintiffs'] claims presents substantial grounds for difference of opinion." ECF No. 330-1. And the Court's November 2, 2018 Order quoted the standard in 28 U.S.C. § 1292(b) and then, in the next sentence, stated that "the 'striking' breadth of plaintiffs' claims 'presents substantial grounds for difference of opinion.'" ECF No. 416 at 2 (quoting ECF No. 330-1). (That observation applies to equally to the second amended complaint, which is no different than the first amended complaint.) The November 2, 2018 Order also noted that the Ninth Circuit's prior denial of the United States' petitions for mandamus rested in large part on reasons that are "no longer pertinent." *Id.* at 3. The Supreme Court, in short, has clearly indicated that the issues in this case are appropriate for immediate consideration by the Ninth Circuit.

Finally, an "immediate appeal from" this Court's orders granting leave to amend (Rule 15 Order) and any order denying this motion to dismiss will "materially advance the ultimate termination of the litigation," because a favorable disposition of the government's motions would end the case. A successful interlocutory appeal would avoid a potentially lengthy trial and additional litigation that is protracted, expensive, and disruptive.

This Court granted a motion to certify most of the same issues for interlocutory appeal with respect to the first amended complaint, and the Ninth Circuit allowed for an appeal. *A fortiori*, certification is warranted if this Court denies the motion to dismiss the second amended complaint because, we respectfully submit, the Court should never have granted leave to file that complaint in light of the Ninth Circuit's mandate directing dismissal.

This Court thus should certify any order denying this motion to dismiss.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' claims should be dismissed with prejudice in their entirety for lack of Article III jurisdiction under Rule 12(b)(1). Alternatively, Plaintiffs' claims should be dismissed with prejudice in their entirety for failure to state a claim under Rule 12(b)(6). If the Court declines to dismiss any of the claims, Defendants respectfully request that the Court certify its order denying this motion to dismiss.

Dated: June 22, 2023

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

*/s/ Sean C. Duffy*
SEAN C. DUFFY (NY Bar No. 4103131)
FRANK J. SINGER (CA Bar No. 227459)
Trial Attorneys
Natural Resources Section

150 M Street NE
Washington, DC 20002
Tel: (202) 305-0445
Fax: (202) 305-0506
sean.c.duffy@usdoj.gov

*Attorneys for Defendants*