JULIA A. OLSON (OR Bar 062230)
julia@ourchildrenstrust.org
Our Children's Trust
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

ANDREA K. RODGERS (OR Bar 041029)
andrea@ourchildrenstrust.org
Our Children's Trust
3026 NW Esplanade
Seattle, WA 98117
Tel: (206) 696-2851

PHILIP L. GREGORY (*pro hac vice*)
pgregory@gregorylawgroup.com
Gregory Law Group
1250 Godetia Drive
Redwood City, CA 94062
Tel: (650) 278-2957

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**; **XIUHTEZCATL TONATIUH M.**, through his Guardian Tamara Roske-Martinez; et al., | Case No.: 6:15-cv-01517-AA |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)** |
| v. | |
| The **UNITED STATES OF AMERICA**; et al., | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 5

   I.   This Court Should Not Allow Defendants to Relitigate Issues Already Decided and Not Altered by the Second Amended Complaint. ....................................................... 5

   II.   Plaintiffs Have Demonstrated Redressability and Thus Have Standing............................ 9

      A.   Declaratory Relief Satisfies the Redressability Requirements. ....................................... 9

      B.   Plaintiffs Have Established Standing by Declaratory Relief Alone and Whether Injunctive Relief Can or Will be Awarded is Irrelevant at this Stage of the Proceedings. .................................................................................................... 13

   III.   This Case is Within the Court's Competence. ................................................................. 15

   IV.   Defendants' Continued Effort to Prevent Trial and Ignore this Court's Prior Decisions Contravenes their Rule 11 and Other Obligations. ........................................... 17

   V.   Interlocutory Appeal Should Be Denied as Certifying this Case Will Harm Plaintiffs and Result in Manifest Injustice. ................................................................................... 22

      A.   This Court is Not Required to and Should Not Certify any of its Orders. ..................... 23

      B.   There are no "Controlling Questions of Law" That Warrants Interlocutory Appeal.... 24

      C.   Defendants Fail to Show a Substantial Ground for Difference of Opinion With Respect to the Partial Redress that Declaratory Judgment Will Provide. ...................... 25

      D.   Interlocutory Appeal Would Not "Materially Advance the Ultimate Termination of the Litigation." ............................................................................................................. 25

      E.   Interlocutory Appeal Would Significantly Prejudice Plaintiffs. .................................... 26

CONCLUSION....................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*,
   855 F.2d 1470 (9th Cir. 1988) ................................................................. 19

*Am. Hotel Int'l Group, Inc. v. OneBeacon Ins. Co.*,
   374 F. App'x 71 (2d Cir. 2010) ................................................................. 7

*Arizona v. California*,
   460 U.S. 605 (1983) ................................................................................. 6

*Askins v. U.S. Dep't of Homeland Sec.*,
   899 F.3d 1035 (9th Cir. 2018) ......................................................... 5, 7, 8

*Bonser-Lain v. Texas Comm'n on Env't Quality*,
   2012 WL 3164561 (Tex. Dist. Aug. 2, 2012) ........................................ 22

*Brereton v. Bountiful City Corp.*,
   434 F.3d 1213 (10th Cir. 2006) ............................................................... 8

*California v. Texas*,
   141 S. Ct. 2104 (2021) ........................................................................... 11

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988) ................................................................................. 8

*Dismone v. Browner*,
   121 F.3d 1262 (9th Cir. 1997) ................................................................. 6

*Fleck & Associates, Inc. v. Phoenix*,
   471 F.3d 1100 (9th Cir. 2006) ................................................................. 8

*Flom v. Holly Corp.*,
   276 F. App'x. 615 (9th Cir. 2008) ......................................................... 10

*Gindes v. United States*,
   740 F.2d 947 (Fed. Cir. 1984) ................................................................. 6

*Haaland v. Brackeen*,
   143 S. Ct. 1609 (2023) ..................................................................... 11, 12

*Held v. Montana*,
   No. CDV-2020-307, Order on Defs.' Mot. to Dismiss
   (Mont. 1st Jud. Dist. Ct. May 23, 2023) ............................................... 16

*Herrera v. Wyoming*,
   139 S. Ct. 1686 (2019) ........................................................................... 11

*Hewitt v. Helms*,
    482 U.S. 755 (1987) ........................................................................................ 10

*In re Auto. Breakthrough Sciences, Inc.*,
    1996 F.T.C. LEXIS 478 (Nov. 5, 1996) ........................................................ 24

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1981) ........................................................................ 24

*In re Hawaiʻi Elec. Light Co., Inc.* (*MECO II*),
    526 P.3d 329 (Haw. 2023) ............................................................................. 21

*In re Maui Elec. Co., Ltd.* (*MECO I*),
    506 P.3d 192 (Haw. 2022) ............................................................................. 21

*Juliana v. United States*,
    947 F.3d 1159 (9th Cir. 2020) ............................................................... passim

*Juliana v. United States*,
    949 F.3d 1125 (9th Cir. 2018) ........................................................................ 23

*Juliana v. United States*,
    No. 6:15-CV-01517-AA, 2018 WL 6303774 (D. Or. Nov. 21, 2018) ................... 22

*Larson v. Valente*,
    456 U.S. 228 (1982) ........................................................................................ 12

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ........................................................................................ 12

*Mathur v. Her Majesty the Queen in Right of Ontario*,
    No. CV-19-00631627 (Ont. Super. Ct. Just. 2020) ...................................... 16

*Medtronic Inc. v. Mirowski Fam. Ventures, LLC*,
    571 U.S. 191 (2014) ........................................................................................ 12

*Meese v. Keene*,
    481 U.S. 465 (1987) ........................................................................................ 12

*Molybdenum Corp. of Am. v. Kasey*,
    279 F.2d 216 (9th Cir. 1960) ........................................................................ 26

*Moore v. Harper*,
    No. 21-1271, 2023 WL 4187750 (U.S. June 27, 2023) ................................ 13

*Mowat Const. Co. v. Dorena Hydro, LLC*,
    No. 6:14-CV-00094-AA, 2015 WL 5665302 (D. Or. Sept. 23, 2015) ......... 22, 23

*Nat'l Asbestos Workers Med. Fund. v. Phillip Morris, Inc.*,
   71 F. Supp. 2d 139 (E.D.N.Y. 1999) ................................................................... 23

*Navahine F. v. Hawai'i Dep't of Transp.*,
   Civil No. 1CCV-22-0000631, Order Den. Defs.' Mot. to Dismiss
   (Haw. Cir. Ct. Apr. 19, 2023) ............................................................... 14, 16

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
   981 F.2d 429 (9th Cir. 1992) ................................................................... 18

*Pepper v. United States*,
   562 U.S. 476 (2011) ............................................................................... 5

*Polich v. Burlington N., Inc.*,
   942 F.2d 1467 (9th Cir. 1991) .................................................................. 8

*Porter v. Martinez*,
   68 F.4th 429 (9th Cir. 2023) ............................................................. 11, 14

*Pub. Affs. Assocs. v. Rickover*,
   369 U.S. 111 (1962) ............................................................................... 16

*Richardson-Merrell, Inc. v. Koller*,
   472 U.S. 424 (1985) ............................................................................... 22

*Rucho v. Common Cause*,
   139 S. Ct. 2484 (2019) .................................................................... 15, 16

*Samuels v. Mackell*,
   401 U.S. 66 (1971) ................................................................................ 11

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
   360 F. Supp. 3d 1039 (S.D. Cal. 2019) ................................................. 9

*Sanchez-Espinoza v. Reagan*,
   770 F.2d 202 (D.C. Cir. 1985) ................................................................ 15

*Sanders-Reed ex rel. Sanders-Reed v. Martinez*,
   350 P.3d 1221 (N.M. Ct. App. 2015) .................................................... 22

*Steffel v. Thompson*,
   415 U.S. 452 (1974) ............................................................................... 14

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
   No. 20-1199, 2023 WL 4239254 (U.S. June 29, 2023) ......................... 13

*Teem v. Doubravsky*,
   No. 3:15-cv-00210-ST, 2016 U.S. Dist. LEXIS 13452 (D. Or. Jan. 7, 2016) ................... 23

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND**    iv
**AMENDED COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)**

*Texas Comm'n on Env't Quality v. Bonser-Lain*,
    438 S.W.3d 887 (Tex. App. 2014)............................................................................ 22

*Theede v. United States*,
    972 F.2d 1343 (9th Cir. 1992) ................................................................................ 19

*Urgenda Found. v. State of the Netherlands*,
    Case No. 19/00135 (Hague Ct. App. 2019)............................................................ 14

*Uzuegbunam v. Preczewski*,
    141 S. Ct. 792 (2021)........................................................................ 10, 11, 23, 25

*Webb v. Portland Mfg. Co.*,
    29 F. Cas. 506 (C.C.D. Me. 1838) ......................................................................... 11

*Wisdom v. Gugino*,
    787 F. App'x 390 (9th Cir. 2019) ............................................................................ 8

*Zdanok v. Glidden Co., Durkee Famous Foods Div.*,
    327 F.2d 944 (2d Cir. 1964) .................................................................................... 6

**Statutes**

28 U.S.C. § 1292(b) ..................................................................................... 5, 18, 23, 25

28 U.S.C. § 2201 ................................................................................................... 12

28 U.S.C. § 2202 ................................................................................................... 12

**Rules**

Fed. R. Civ. P. 11(b) ............................................................................................. 18

Fed. R. Civ. P. 11(c) ............................................................................................. 18

L.R. 7-1(a)(1)(A) ................................................................................................... 19

L.R. 7-1(a)(2) ........................................................................................................ 20

**Other Authorities**

16 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 3930 (3d. ed. 2012) ...................................................................... 26

Brendan O'Brien, *Canadian wildfire smoke spreads, 100 million Americans under air-quality alerts*, Reuters (June 29, 2023) ........................................................................ 27

Exec. Order No. 13990, *Protecting Public Health and the Environment and Restoring Science To Tackle the Climate Crisis*, 86 Fed. Reg. 7037 (Jan. 25, 2021) ........................... 17

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND**   v
**AMENDED COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)**

Exec. Order No. 14008, *Tackling the Climate Crisis at Home and Abroad*, 86 Fed. Reg. 7619 (Feb. 1, 2021) ................................................................................................................. 17

Exec. Order No. 14096, *Revitalizing Our Nation's Commitment to Environmental Justice for All*, 88 Fed. Reg. 25251 (Apr. 26, 2023) ...................................................................... 17

John T. Abatzoglou et al., *Compound Extremes Drive the Western Oregon Wildfires of September 2020*, 48 Geophysical Rsch. Letters e2021GL092520 (2021).............................. 27

Mark P. Gergen et al., *The Supreme Court's Accidental Revolution? The Test for Permanent Injunctions*, 112 Colum. L. Rev. 203 (2012) ............................................................. 14

Nat'l Centers for Env't Info., *U.S. Climate Extremes Index (CEI)* ............................................ 27

Samuel L. Bray, *The Myth of the Mild Declaratory Judgment*, 63 Duke L.J. 1091 (2014) ......... 14

*Sixth Oregon Climate Assessment*, Oregon Climate Change Research Institute (Erica Fleishman ed., 2023) ............................................................................................................. 27

The White House, *FACT SHEET: How the Build Back Better Plan Will Create a Better Future for Young Americans* (July 22, 2021) ......................................................................... 3

The White House, *FACT SHEET: President Biden's Executive Actions on Climate to Address Extreme Heat and Boost Offshore Wind* (July 20, 2022) ........................................ 2

The White House, *Remarks by President Biden at the 27th Conference of the Parties to the Framework Convention on Climate Change (COP27) | Sharm el-Sheikh, Egypt* (Nov. 11, 2022) .................................................................................................................. 3

The White House, *Remarks by President Biden at the COP26 Leaders Statement* (Nov. 1, 2021) .................................................................................................................. 3

The White House, *Remarks by President Biden at the League of Conservation Voters Annual Capital Dinner* (June 14, 2023) .......................................................................... 3

The White House, *Remarks by President Biden Before Signing Executive Actions on Tackling Climate Change, Creating Jobs, and Restoring Scientific Integrity* (Jan. 27, 2021).............. 2, 4

The White House, *Remarks by President Biden on Actions to Tackle the Climate Crisis* (July 20, 2022)................................................................................................................. 2, 4

The White House, *Remarks by President Biden on Climate Resilience | Palo Alto, CA* (June 19, 2023) ................................................................................................................. 2

U.S. EPA, *Climate Change and Children's Health and Well-Being in the United States* (Apr. 2023) .................................................................................................................. 17

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND   vi
AMENDED COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)**

U.S. EPA, *Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources: Oil and Natural Gas Sector Climate Review*, 86 Fed. Reg. 63110 (Nov. 15, 2021) ........................................................................................ 17

**INTRODUCTION**

For eight years and across three presidential administrations, the United States government and its Department of Justice ("DOJ") have sought not justice under the rule of law, but to "kill the *Juliana* case" no matter its legal merit. The U.S. DOJ has used every rare legal tool, more times than in any other case in history, to silence the constitutional claims of twenty-one of our nation's youth. Throughout the years of their failure, Defendants have been unwilling to accept the standing and valid claims of these young people and previous rulings that this meritorious case should proceed to trial. While they have been seeking to foil *Juliana*, every single administration has simultaneously expanded the United States' fossil fuel energy system, thereby making this nation the largest producer of fossil fuels on Earth, exacerbating the climate crisis, and intensifying the constitutional injuries of these young Plaintiffs. Defendants' current Motion to Dismiss contravenes prior decisions of this Court and the Ninth Circuit, as well as President Biden's own Executive Orders and commitments these Defendants have made to the American people, and especially its youth. This "rinse-and-repeat" Motion to Dismiss and attendant Motion to Certify seeking yet another interlocutory appeal should be summarily denied. This case involves an emergency of epic proportions: it is time for the United States to stand trial for creating an "environmental apocalypse" and putting these youth's lives, health, and safety in jeopardy in intentional violation of the U.S. Constitution.

The "compelling" and "substantial evidentiary record," which remains "largely undisputed by federal defendants," Amend Order at 2, ECF No. 540, demonstrates that the lives, liberties, and property of American children, including Plaintiffs, face significant and ongoing harms due to the climate crisis. Defendants have long understood these risks caused by burning fossil fuels, yet nonetheless continue to permit, authorize, and encourage fossil fuel activities with deliberate indifference. *See id.* at 1. While Defendants argue in their Motion to Dismiss Second Amended

Complaint and Motion to Certify ("MTD") that there is "no constitutional right" at stake for these youth Plaintiffs, MTD at 19, ECF No. 547, President Biden has stated that climate change represents "*the* existential threat to humanity,"[1] a "clear and present danger to the United States,"[2] and "an emergency" where long-awaited government responses are "going to save lives."[3] President Biden committed directly to "the young people organizing and leading the way" on addressing the climate crisis that "[y]ou have the full capacity and power of the federal government. Your government is going to work with you."[4] However, by its Motion to Dismiss, President Biden's administration uses the full capacity and power of the federal government to work against young people, to keep evidence of this government's affirmative actions causing the climate crisis out of the courtroom, and to deny Plaintiffs' constitutional rights.

The severity of this existential threat, which the Ninth Circuit Court of Appeals held concretely endangers these young Plaintiffs' lives, liberties, property, and equality, cannot be overstated. *Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020). Defendants' Motion to Dismiss ignores the government's own admissions, instead asserting that "[n]one of the government actions that Plaintiffs complain of classify or affect youth or posterity any differently

---

[1] The White House, *Remarks by President Biden on Climate Resilience | Palo Alto, CA* (June 19, 2023), https://www.whitehouse.gov/briefing-room/speeches-remarks/2023/06/19/remarks-by-president-biden-on-climate-resilience-palo-alto-ca/ (emphasis in original).

[2] The White House, *FACT SHEET: President Biden's Executive Actions on Climate to Address Extreme Heat and Boost Offshore Wind* (July 20, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/07/20/fact-sheetpresident-bidens-executive-actions-on-climate-to-address-extreme-heat-and-boost-offshore-wind/.

[3] The White House, *Remarks by President Biden on Actions to Tackle the Climate Crisis* (July 20, 2022), https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/07/20/remarks-by-president-biden-on-actions-to-tackle-the-climate-crisis/.

[4] The White House, *Remarks by President Biden Before Signing Executive Actions on Tackling Climate Change, Creating Jobs, and Restoring Scientific Integrity* (Jan. 27, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/01/27/remarks-by-president-biden-before-signing-executive-actions-on-tackling-climate-change-creating-jobs-and-restoring-scientific-integrity/.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND    2
AMENDED COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)**

than they affect other persons." MTD at 29. But as President Biden has repeatedly emphasized, climate change necessarily entails "threats our children, grandchildren, and great-grandchildren are going to face,"[5] and the government's failure to act will "condemn future generations to suffer."[6] Particularly because "it is this younger generation that will inherit the worst impacts of this crisis,"[7] he acknowledged "young people around the world, they feel the urgency of climate, and they feel it deeply. They're committed to these issues. They know the stakes, and that's their world we're creating."[8] The DOJ, purporting to represent the Biden Administration, does nothing to explain the contradiction between the DOJ's desperate defense of this case and the Biden Administration's public pronouncements.

In their efforts to lock Plaintiffs out of the court system and the Constitution, Defendants further insist that Plaintiffs request the invocation of powers "entrust[ed] to Congress, not the Judiciary." MTD at 18. Not only is this argument unresponsive to Plaintiffs' Second Amended Complaint, it neglects the sober reality of the climate crisis and the need for a "whole-of-

---

[5] The White House, *Remarks by President Biden at the League of Conservation Voters Annual Capital Dinner* (June 14, 2023), https://www.whitehouse.gov/briefing-room/speeches-remarks/2023/06/14/remarks-by-president-biden-at-the-league-of-conservation-voters-annual-capital-dinner/.

[6] The White House, *Remarks by President Biden at the COP26 Leaders Statement* (Nov. 1, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/11/01/remarks-by-president-biden-at-the-cop26-leaders-statement/.

[7] The White House, *FACT SHEET: How the Build Back Better Plan Will Create a Better Future for Young Americans* (July 22, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/22/fact-sheet-how-the-build-back-better-plan-will-create-a-better-future-for-young-americans/.

[8] The White House, *Remarks by President Biden at the 27th Conference of the Parties to the Framework Convention on Climate Change (COP27) | Sharm el-Sheikh, Egypt* (Nov. 11, 2022), https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/11/11/remarks-by-president-biden-at-the-27th-conference-of-the-parties-to-the-framework-convention-on-climate-change-cop27-sharm-el-sheikh-egypt/.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND    3
AMENDED COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)**

government approach" or "unified national response."[9] President Biden has openly recognized that the government at large has a "duty right now . . . to the young people in this nation, and to future generations . . . to act boldly on climate" and that "Congress . . . has failed in this duty."[10] By seeking to close the courthouse doors and steer Plaintiffs down another path—one that Defendants are aware has already failed this nation's children—who are ineligible to vote—Defendants' actions effectively enable the nation's willful destruction. *Juliana*, 947 F.3d at 1175 (Staton, J., dissenting) ("Plaintiffs bring suit to enforce the most basic structural principle embedded in our system of ordered liberty: that the Constitution does not condone the Nation's willful destruction.").

Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss Second Amended Complaint and Motion to Certify. In support of their current motions, Defendants have advanced, *ad nauseam*, the same set of legal arguments repeatedly raised and previously decided, while ignoring entirely the new allegations in Plaintiffs' Second Amended Complaint. As such, this Court's prior decisions should control the determination of this Motion to Dismiss. With respect to Defendants' argument on redressability, this Court already considered their arguments on this issue and ruled in its Amend Order that Plaintiffs have properly pled redressability in their Second Amended Complaint. As a result, that issue is also decided, making this Motion duplicative and moot. Further, even if aspects of this Motion to Dismiss were technically appropriate,

---

[9] The White House, *Remarks by President Biden Before Signing Executive Actions on Tackling Climate Change, Creating Jobs, and Restoring Scientific Integrity* (Jan. 27, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/01/27/remarks-by-president-biden-before-signing-executive-actions-on-tackling-climate-change-creating-jobs-and-restoring-scientific-integrity/.

[10] The White House, *Remarks by President Biden on Actions to Tackle the Climate Crisis* (July 20, 2022), https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/07/20/remarks-by-president-biden-on-actions-to-tackle-the-climate-crisis/.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND     4
AMENDED COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)**

Defendants mischaracterized Plaintiffs' requested relief and failed to mention, let alone analyze, the relevant allegations in the Second Amended Complaint which are responsive to the Ninth Circuit's concerns. Defendants misinterpret recent precedent on declaratory relief, which has been deemed sufficient to confer standing even where it offers only partial redress. The relief now being sought by these youth Plaintiffs is fully within the power of Article III courts to grant. Not only should this Court deny the Motion to Dismiss, this Court also should not certify that order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

**ARGUMENT**

**I.    This Court Should Not Allow Defendants to Relitigate Issues Already Decided and Not Altered by the Second Amended Complaint.**

In their Motion to Dismiss, Defendants seek to relitigate several issues that have already been briefed and decided multiple times throughout this litigation. While the Court is not exclusively bound by its prior decisions in reviewing Plaintiffs' Second Amended Complaint and can correct any errors of law, Defendants moving to dismiss an amended complaint may only ask the Court "to determine that the plaintiff's amended complaint did not cure the deficiencies of the initial complaint." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018) (holding district court had discretion to rely on prior reasoning in reviewing motion to dismiss amended complaint).

The law of the case doctrine is instructive here and provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[11] *Pepper v. United States*, 562 U.S. 476, 506 (2011) (quoting *Arizona v.*

---

[11] Even though the issues Defendants raise in their Motion to Dismiss have been briefed and decided multiple times, Defendants' moving papers notably omit any reference to the law of the case and, thus, fail to present any basis for this Court to reconsider its prior orders. For this reason alone, the Motion to Dismiss should be denied.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND     5
AMENDED COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)**

*California*, 460 U.S. 605, 618 (1983)). The law of the case doctrine is animated by a policy of consistency and fairness, since "[n]o litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time." *Dismone v. Browner*, 121 F.3d 1262, 1266 (9th Cir. 1997) (quoting *Gindes v. United States*, 740 F.2d 947, 949 (Fed. Cir. 1984)). "[W]here litigants have once battled for the court's decision, they should neither be required, *nor without good reason permitted,* to battle for it again." *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964) (emphasis added).

In their moving papers, Defendants provide no reason why this Court should deviate from its prior rulings on Defendants' first Motion to Dismiss, Motion for Judgment on the Pleadings, and Motion for Summary Judgment. These prior decisions resolved all issues Defendants raise in their new Motion to Dismiss, with the exception of redressability, which the new allegations in the Second Amended Complaint are intended to address. Defendants point to nothing in the Second Amended Complaint, the law, or the evidence, nor do they cite changed circumstances that should alter this Court's prior orders as to: the injury and causation prongs of standing; a cognizable case or controversy; the constitutional rights asserted to life, liberty, personal security, property, equality, a climate system that sustains life, public trust resources, and to be free from state-created danger; the Administrative Procedure Act ("APA") not barring the claims. *See* Appendix A (Table identifying the issues raised in Defendants' pending Motion to Dismiss and where in the record the issue was already briefed, argued, and decided).

As Defendants acknowledged in their response to Plaintiffs' Motion to Set Pretrial Conference, ECF No. 548, redressability was the singular issue on which the Ninth Circuit reversed and remanded for dismissal without prejudice. As such, it is the only element of the

Second Amended Complaint that Defendants could substantively argue in their present Motion to Dismiss "did not cure the deficiencies of the initial complaint." *Askins*, 899 F.3d at 1043; *see also Am. Hotel Int'l Group, Inc. v. OneBeacon Ins. Co.*, 374 F. App'x 71, 74 (2d Cir. 2010) ("[T]he findings of a district court not expressly or implicitly addressed on appeal remain the law of the case."). Redressability was *the only deficiency* identified by the Ninth Circuit. As to whether the Second Amended Complaint corrected that singular deficiency identified by the Ninth Circuit,[12] the Parties briefed and argued that issue extensively on the Motion for Leave to Amend in the futility analysis and the Court's Amend Order centers on and conclusively decides that legal question.[13] Transcript of Oral Argument at 13:2-11, 20:19, 22:9-21, 23:9-15, 25:9-14, ECF No. 504; Pls.' Mot. for Leave to Amend at 8-10, ECF No. 462; Defs.' Opp'n to Mot. for Leave to Amend at 12-14, ECF No. 468. Thus, Defendants' pending Motion to Dismiss seeks to relitigate the redressability issue, without any new law or other information that should change this Court's prior order. Amend Order at 17 ("[T]he relief plaintiffs seek fits like a glove, where plaintiffs request consideration of declaratory relief independently of other forms of relief, such as an injunction.").

Finally, Defendants also seek to relitigate the issue of whether the "rule of mandate" required this Court to dismiss Plaintiffs' First Amended Complaint *with* prejudice and *without*

---

[12] Plaintiffs maintain their objection to the Ninth Circuit's opinion as to redressability, which was wrongly decided. If the Court wishes to revisit that issue at this stage, Plaintiffs refer to the Court to their prior briefing which responds to Defendants' arguments. *See, e.g.*, Ninth Circuit Dkt. 156 at 9-14.

[13] "Defendants opposed the motion for leave to amend on the grounds that . . . the proposed amendment would be futile because it cannot cure the jurisdictional defects that require dismissal. Defs.' Resp. in Opp'n to Mot. for Leave to Amend, ECF No. 468." MTD at 7.

leave to amend.[14] As Defendants acknowledge: "Defendants opposed the motion for leave to amend on the grounds that the Ninth Circuit mandate required this Court to dismiss the case . . . ." MTD at 7. Based on extensive briefing on the mandate issue, this Court decided this issue; that decision should be controlling here since Defendants argue nothing new to support their arguments briefed over two years ago. Amend Order at 11 ("This Court . . . does not interpret the Ninth Circuit's instructions as mandating it 'to shut the courthouse doors' on plaintiffs' case . . . .").

The new allegations in the Second Amended Complaint are solely intended to address the narrow redressability concerns identified by the Ninth Circuit and, at this stage in the case, Defendants can only seek to re-litigate dismissal with respect to the new allegations and requests for relief in the Second Amended Complaint. Otherwise, Defendants would get yet another "bite at the apple," which causes further delay and prejudices Plaintiffs. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 n.5 (1988) ("Perpetual litigation of any issue—jurisdictional or nonjurisdictional—delays, and therefore threatens to deny, justice."); *Wisdom v. Gugino*, 787 F. App'x 390, 392 (9th Cir. 2019) (upholding denial of multiple motions which were "identical to the issues [ ] raised in other motions").

This Court should exercise its discretion to apply the law of the case and "follow the same reasoning" to reject the instant Motion to Dismiss which is "substantially the same" as motions this Court has already addressed. *Askins,* 899 F.3d at 1043; *see also San Diego Cnty. Credit Union*

---

[14] Significantly, Defendants cite no authority supporting their request that the Second Amended Complaint should be dismissed *with* prejudice. It is black letter law that a dismissal as to standing is *without* prejudice. *Fleck & Associates, Inc. v. Phoenix*, 471 F.3d 1100, 1106-07 (9th Cir. 2006) (citing *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("Since standing is a jurisdictional mandate, a dismissal with prejudice for lack of standing is inappropriate, and should be corrected to a dismissal without prejudice.")); *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) (finding dismissal improper without granting leave to amend unless "the complaint could not be saved by any amendment").

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND     8
AMENDED COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)**

*v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1046-47 (S.D. Cal. 2019) (relying on prior analysis to deny defendants' motion to dismiss after filing of an amended complaint). Since Defendants have presented no reason that justifies reconsideration of this Court's prior rulings on motions to dismiss, judgment on the pleadings, summary judgment, and leave to amend, and have not moved for reconsideration here, the Court should summarily deny the instant Motion to Dismiss citing its prior orders.[15]

## II.    Plaintiffs Have Demonstrated Redressability and Thus Have Standing.

### A.    Declaratory Relief Satisfies the Redressability Requirements.

After considering the Parties' briefing and oral argument on whether Plaintiffs' amendments to their complaint cured the redressability deficiency identified by the Ninth Circuit, this Court held:

> Under the [Declaratory Judgment Act], the relief plaintiffs seek fits like a glove, where plaintiffs request consideration of declaratory relief independently of other forms of relief, such as an injunction. . . . This Court finds that plaintiffs' proposed amendments are not futile: a declaration that federal defendants' energy policies violate plaintiffs' constitutional rights would itself be significant relief.

Amend Order at 17. This Court explained:

> It is a foundational doctrine that when government conduct catastrophically harms American citizens, the judiciary is constitutionally required to perform its independent role and determine whether the challenged conduct, not exclusively committed to any branch by the Constitution, is unconstitutional. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176-78 (1803). The judicial role in cases like this is to apply constitutional law, declare rights, and declare the government's responsibilities. No other branch of government can perform this function because the "judicial Power" is exclusively in the hands of Article III courts. U.S. Const. Art. III, § 1. The issue before this Court now is not to determine what relief,

---

[15] To the extent the Court disagrees and considers it necessary to re-address each basis for dismissal here, Plaintiffs rely upon and incorporate by reference their prior briefs and oral argument on each issue, as well as this Court's orders on the same. *See* Appendix A. Plaintiffs also preserve their objection that their Ninth Amendment claim was wrongly dismissed by this Court in its Opinion and Order deciding summary judgment, but that issue can be addressed on appeal after trial on the merits.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND    9
AMENDMENT COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)**

specifically, is in its power to provide. This Court need only decide whether plaintiffs' amendments—alleging that declaratory relief is within an Article III court's power to award— "would be subject to dismissal." *Carrico,* 656 F.3d 1002.

Amend Order at 18. Finally, this Court determined:

> Here, plaintiffs seek declaratory relief that "the United States' national energy system that creates the harmful conditions described herein has violated and continues to violate the Fifth Amendment of the U.S. Constitution and Plaintiffs' constitutional rights to substantive due process and equal protection of the law." (Doc. 514-1 ¶ 1). This relief is squarely within the constitutional and statutory power of Article III courts to grant. Such relief would at least partially, and perhaps wholly, redress plaintiffs' ongoing injuries caused by federal defendants' ongoing policies and practices. Last, but not least, the declaration that plaintiffs seek would by itself guide the independent actions of the other branches of our government and cures the standing deficiencies identified by the Ninth Circuit. This Court finds that the complaint can be saved by amendment. *See Corinthian Colleges*, 655 F.3d at 995.

Amend Order at 19.

By their Motion to Dismiss, Defendants pretend this ruling never happened, ignoring that this Court fully considered and decided Defendants' arguments that Plaintiffs should not be able to amend their complaint and proceed to the merits based on lack of Article III standing and redressability. Because this issue has been resolved by this Court at this pre-trial stage, and can be appealed after a merits determination and final judgment, there is nothing more to litigate on Article III standing and Plaintiffs' Second Amended Complaint.

It is worth noting here, however, that Defendants' slim treatment of *Uzuegbunam* misconstrues the Supreme Court's opinion. MTD at 16. It was the behavior-shifting quality of the remedy that persuaded the Court to declare nominal damages sufficient to confer Article III standing because the remedy served to resolve a controversy. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) (citing *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)); *see also Flom v. Holly Corp.*, 276 F. App'x. 615, 616 (9th Cir. 2008) (holding the value of a judgment is the "judicially sanctioned and material change in the legal relationship between the parties"). There is no question

that declaratory relief similarly affects Defendants' behavior, if not more so, because it instructs Defendants as to what the law requires. *See, e.g.*, *Samuels v. Mackell*, 401 U.S. 66, 73 (1971) ("Ordinarily . . . the practical effect of [injunctive and declaratory] relief will be virtually identical . . . ."); *Herrera v. Wyoming*, 139 S. Ct. 1686, 1712 (2019) (Alito, J., dissenting) ("The [Declaratory Judgment] Act . . . allows a person to obtain a definitive *ex ante* determination of his or her right to engage in conduct . . . ."). *Uzuegbunam*'s analysis did not turn on whether the relief was retrospective or prospective in nature, and such semantic distinctions misstate the redressability requirement. 141 S. Ct. at 799 ("[T]he law tolerates no farther inquiry than whether there has been the violation of a right") (citing *Webb v. Portland Mfg. Co.*, 29 F. Cas. 506, 508-09 (C.C.D. Me. 1838)).

Defendants' reliance on *California v. Texas* and *Haaland v. Brackeen* to argue against the sufficiency of declaratory relief is both misguided and misleading. Both cases support this Court's Amend Order. *See* ECF No. 505 (Plaintiffs' Notice of Supplemental Authorities analyzing *California v. Texas*). *California v. Texas* did not alter the law stated by *Uzuegbunam*. In that case, the Supreme Court dismissed for lack of an injury fairly traceable to defendants' conduct, not simply because declaratory relief was insufficient redress. *California v. Texas*, 141 S. Ct. 2104, 2113-17 (2021) (holding that plaintiff states failed to establish standing where they "failed to show how this injury is directly traceable to any actual or possible unlawful Government conduct"). The instant case presents no such issues—as the Ninth Circuit has already found, the injuries suffered by Plaintiffs are plausibly traceable to Defendants' conduct, and thus a declaration that such conduct is unconstitutional would alleviate Plaintiffs' injuries. *Juliana*, 947 F.3d at 1169; *see also Porter v. Martinez*, 68 F.4th 429, 438 (9th Cir. 2023) (finding redressability requirement satisfied

because district court could issue declaratory relief and confirming that the "constitutional minimum" of redressability "depend[s] on the relief that federal courts are *capable* of granting.").

In *Haaland*, a declaratory judgment would not have been binding on state officials, who were nonparties to the suit, and hence would not have afforded the plaintiffs any redress. *Haaland v. Brackeen*, 143 S. Ct. 1609, 1639 (2023) ("[S]tate officials are nonparties who would not be bound by the judgment."). The situation in *Juliana* is wholly different, as the federal officials that are either directly responsible for or have authority over the conduct causing Plaintiffs' injuries are parties to the suit, *Juliana*, 947 F.3d at 1169, and would be bound by any declaratory judgment issued by this Court. Defendants' claim that declaratory relief is insufficient to confer standing is incorrect, directly in conflict with Congress' intent in 28 U.S.C. §§ 2201-2202, and entirely unsupported by the precedent they themselves cite. *See, e.g.*, *Haaland*, 143 S. Ct. at 1639 ("[declaratory] relief conclusively resolves 'the legal rights *of the parties*.'") (citing *Medtronic Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 200 (2014)).

As this Court is well aware, the redressability prong of the standing analysis does not require that the remedy resolve the entire problem giving rise to Plaintiffs' injuries. Mitigating the harm caused is sufficient. *See, e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007) ("While it may be true that regulating motor-vehicle emissions will not by itself *reverse* global warming, it by no means follows that we lack jurisdiction to decide whether EPA has a duty to take steps to *slow* or *reduce* it."); *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury."); *Meese v. Keene*, 481 U.S. 465, 476-77 (1987) (holding partial relief would qualify as redress for standing purposes).

Defendants present no basis for this Court to deviate from its June 1, 2023 ruling that "a declaration that federal defendants' energy policies violate plaintiffs' constitutional rights would itself be significant relief." Amend Order at 17. In fact, this position received support from two recent Supreme Court decisions. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, No. 20-1199, 2023 WL 4239254, at*8-9, *23 (U.S. June 29, 2023) (finding that plaintiffs seeking declaratory relief to redress injuries due to race-conscious admissions had standing, although the Court's final holding did not solve racism and continued to allow "considering an applicant's discussion of how race affected his or her life, be it through discrimination, inspiration, or otherwise"); *Moore v. Harper*, No. 21-1271, 2023 WL 4187750, at *8-10 (U.S. June 27, 2023) ("Since early in our Nation's history, courts have recognized their duty to evaluate the constitutionality of legislative acts. . . . The idea that courts may review legislative action was so 'long and well established' by the time we decided *Marbury* in 1803 that Chief Justice Marshall referred to judicial review as 'one of the fundamental principles of our society.'").

**B. Plaintiffs Have Established Standing by Declaratory Relief Alone and Whether Injunctive Relief Can or Will be Awarded is Irrelevant at this Stage of the Proceedings.**

This Court has found that, as alleged in the Second Amended Complaint, declaratory judgment would at least partially, if not wholly, redress Plaintiffs' constitutional injuries caused by Defendants' ongoing policies and practices. Amend Order at 19. That is sufficient to deny Defendants' Motion to Dismiss. Whether any further injunctive relief would be warranted or granted is ultimately an issue for the merits, as that goes to the scope of the remedy, not the constitutional minimum for redressability.[16] Amend Order at 18 ("The issue before this Court now

---

[16] Substantially similar arguments to those raised by Defendants here, attempting to assert that remedies cannot fully redress Plaintiffs' injuries, have previously been denied by courts at the

is not to determine what relief, specifically, is in its power to provide . . . [but only] whether plaintiffs' amendments . . . 'would be subject to dismissal.'"); *Porter*, 68 F.4th at 438. As the Supreme Court explained in *Steffel v. Thompson*, 415 U.S. 452 (1974), "requir[ing] that all of the traditional equitable prerequisites to the issuance of an injunction be satisfied before the issuance of a declaratory judgment is considered would defy Congress' intent to make declaratory relief available in cases where an injunction would be inappropriate." *Id*. at 471. For that reason, the Supreme Court in *Steffel* held "the Court of Appeals was in error when it ruled that a failure to demonstrate irreparable injury—a traditional prerequisite to injunctive relief, having no equivalent in the law of declaratory judgments—precluded the granting of declaratory relief." *Id*. at 471-72 (citations omitted). *See* Mark P. Gergen et al., *The Supreme Court's Accidental Revolution? The Test for Permanent Injunctions*, 112 Colum. L. Rev. 203, 206, 241 (2012) (noting that courts have determined no additional requirements are needed to render a declaratory judgment effective against a government actor unless "a party cannot be trusted to respect rights in the future," thus requiring an injunction); Samuel L. Bray, *The Myth of the Mild Declaratory Judgment*, 63 Duke L.J. 1091, 1123 (2014) ("[I]n many cases in which a plaintiff seeks prospective relief, a declaratory judgment and an injunction are interchangeable. Both resolve uncertainty about the law and both bind the losing party.") Then-Judge Scalia aptly described the issue as follows: "[T]he

---

motion to dismiss stage. *See, e.g.*, Order Den. Defs.' Mot. to Dismiss at 3, *Navahine F. v. Hawai'i Dep't of Transp.*, Civil No. 1CCV-22-0000631 (Haw. Cir. Ct. Apr. 19, 2023) (Dkt. 179) ("The court understands this argument, but first, it is factual, which is generally fatal on a 12(b)(6) motion. Second, and more importantly, reduced to its essence, Defendants' argument is that it is not required to do anything because the problem is just too big and the State's efforts will have no impact. Putting aside that negative thinking will not solve the problem, the law requires that as trustee, the State/HDOT *must* take steps to maintain [the climate] to keep [it] from falling into disrepair."); *see also Urgenda Found. v. State of the Netherlands*, Case No. 19/00135 ¶ 61-62 (Hague Ct. App. 2019) (holding that the State's inability to provide complete redress to plaintiffs' climate-related injuries does not absolve it from the obligation to take measures to address the hazards of climate change).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND    14
AMENDED COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)**

discretionary relief of declaratory judgment is, in a context such as this where federal officers are defendants, the practical equivalent of specific relief such as injunction or mandamus, since it must be presumed that federal officers will adhere to the law as declared by the court." *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 n.8 (D.C. Cir. 1985).

### III.    This Case is Within the Court's Competence.

Defendants' reliance on *Rucho v. Common Cause*, 139 S. Ct. 2484, 2494 (2019), to argue that Plaintiffs do not present a justiciable claim is misguided and does not account for the new allegations in Plaintiffs' Second Amended Complaint which allege how declaratory relief would remedy the Plaintiffs' injuries. MTD at 17; ECF No. 542 at ¶¶ 12-14, 19-A, 22-A, 30-A, 34-A, 39-A, 43-A, 46-A, 49-A, 52-A, 56-A, 59-A, 62-A, 64-A, 67-A, 70-A, 72-A, 76-A, 80-A, 85-A, 88-A, 90-A, 95-A to -D. The issue in *Rucho* was not that the solution was too complex for courts to implement, nor was it that a court-ordered solution would impermissibly intrude upon other branches' constitutional powers. Rather, the Supreme Court refused to "reallocate political power" in the absence of a clear legal standard to limit their discretion. *Rucho*, 139 S. Ct. at 2507. It was for this reason the Ninth Circuit cited *Rucho* in support of its holding that Plaintiffs' request for a remedial plan is not within the Court's power to order. *Juliana*, 947 F.3d at 1173. While Plaintiffs maintain their objection to the Ninth Circuit's application of *Rucho*, the instant case now presents no such issues—the constitutional violations alleged by Plaintiffs can be declared, and would not require the Court to enter into an intervention "unlimited in scope and duration." *Rucho*, 139 S. Ct. at 2507. This Court and the Ninth Circuit previously established the instant case does not raise a nonjusticiable political question under the *Baker* factors, and Defendants provide no reason for why that *Baker* analysis should change under the operative Second Amended Complaint. *Juliana*, 947 F.3d at 1174 n.9 ("Contrary to the dissent, we do not find this to be a political question . . . .");

Order Den. MTD at 16, ECF No. 83 ("At its heart, this lawsuit asks this Court to determine whether defendants have violated plaintiffs' constitutional rights. That question is squarely within the purview of the judiciary."). Nothing in *Rucho*'s conclusions, nor in the Ninth Circuit's application of *Rucho*, supports a dismissal for lack of standing in the present case given the new allegations in the Second Amended Complaint.

As this Court has itself found, the Declaratory Judgment Act clearly conveys the power to grant declaratory relief to Article III courts. *See, e.g.*, *Pub. Affs. Assocs. v. Rickover*, 369 U.S. 111, 112 (1962). In particular, the Declaratory Judgment Act gives "federal courts competence to make a declaration of rights." *Id.*; Amend Order at 17-19. Defendants do not show why the constitutional rights asserted by Plaintiffs would be an exception to that rule. The redress sought by Plaintiffs in this case is entirely within this Court's power to grant.

Two related cases in state courts, as well as cases being litigated in courts around the world, demonstrate that the issues presented in Plaintiffs' Second Amended Complaint are within the competence of the judiciary. The federal judiciary is at least as competent to decide constitutional questions regarding climate change as state courts and the courts of other democracies across the world. *See, e.g.*, Order on Defs.' Mot. to Dismiss at 25-26, *Held v. Montana*, No. CDV-2020-307 (Mont. 1st Jud. Dist. Ct. May 23, 2023) (holding that the constitutionality of climate issues should be determined at trial which was conducted in June 2023); Order Den. Defs.' Mot. to Dismiss at 10-11, *Navahine F. v. Hawai'i Dep't of Transp.*, Civil No. 1CCV-22-0000631 (Haw. Cir. Ct. Apr. 19, 2023) (finding that state constitutional climate change challenge to transportation system does not present a political question and must be resolved at trial); *Mathur v. Her Majesty the Queen in Right of Ontario*, No. CV-19-00631627, 27-29 (Ont. Super. Ct. Just. 2020) (finding that a

challenge to affirmative government conduct in permitting climate change was justiciable, as violations of constitutional rights "are not pure policy decisions").

## IV.   Defendants' Continued Effort to Prevent Trial and Ignore this Court's Prior Decisions Contravenes their Rule 11 and Other Obligations.

Defendants have now repeatedly engaged in conduct that is heavily disfavored by the Ninth Circuit and may amount to an abuse of this Court's process. Defendants' improper conduct includes raising identical issues and arguments which have already been decided by the Ninth Circuit and this Court in earlier proceedings, failing to meet and confer with Plaintiffs in good faith, representing legal positions that are contrary to the Biden Administration's Executive Orders, Federal Register Notices, Reports, and public statements, and mischaracterizing the law.[17]

First, Defendants repeatedly raise the same arguments in their moving papers, ignoring all of this Court's prior orders on these precise issues, failing to even cite to them or distinguish them,

---

[17] *See, e.g.*, Exec. Order No. 14096, *Revitalizing Our Nation's Commitment to Environmental Justice for All*, 88 Fed. Reg. 25251, 25252 (Apr. 26, 2023) ("The cumulative impacts of . . . stressors, including those related to climate change and the environment, further disadvantage communities with environmental justice concerns. People in these communities suffer from poorer health outcomes and have lower life expectancies than those in other communities in our Nation."); Exec. Order No. 14008, *Tackling the Climate Crisis at Home and Abroad*, 86 Fed. Reg. 7619, 7622 (Feb. 1, 2021) ("[W]e face a climate crisis that threatens our people and communities, public health and economy, and, starkly, our ability to live on planet Earth."); Exec. Order No. 13990, *Protecting Public Health and the Environment and Restoring Science To Tackle the Climate Crisis*, 86 Fed. Reg. 7037, 7041 (Jan. 25, 2021) (declaring that government agencies tasked with assessing the impacts of greenhouse gas emissions must "reflect the interests of future generations in avoiding threats posed by climate change"); U.S. EPA, *Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources: Oil and Natural Gas Sector Climate Review*, 86 Fed. Reg. 63110, 63261 (Nov. 15, 2021) (to be codified at 40 C.F.R. pt. 60) ("The EPA believes that the GHG emission reductions resulting from implementation of these proposed standards and guidelines, if finalized will further improve children's health."); U.S. EPA, *Climate Change and Children's Health and Well-Being in the United States* 4 (Apr. 2023), https://www.epa.gov/system/files/documents/2023-04/CLiME_Final%20Report.pdf ("Children are uniquely vulnerable to climate change . . . . Climate impacts experienced during childhood can have lifelong consequences stemming from effects on learning, physical development, chronic disease, or other complications."); *see also supra,* Introduction (public statements of the Biden Administration).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND    17
AMENDED COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)**

and refusing to address the substantive content of the Second Amended Complaint. *See supra*, Part I; Appendix A. Defendants have failed to show clear error, changed law, new evidence, changed circumstances, or manifest injustice in this Court's prior rulings on these same issues. Pursuant to the Federal Rules of Civil Procedure, "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—*an attorney or unrepresented party certifies that . . . it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation*." Fed. R. Civ. P. 11(b) (emphasis added). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."[18]

The Ninth Circuit has held that pretrial motions that effectively repeat previously unsuccessful or decided arguments against the same party may constitute harassing behavior under Rule 11, even absent direct evidence of harassment.[19] *See, e.g.*, *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 439 (9th Cir. 1992) (affirming that a "second motion to compel largely duplicated [a] first motion to compel, which earlier had been denied," so raising "sufficiently similar" arguments could be inferred as harassment); *Theede v. United States*, 972

[18] Plaintiffs are aware that requesting any formal sanctions under Rule 11(c) would require a motion made separately and served upon Defendants at least 21 days before being filed with the Court or, alternatively, a finding "[o]n the Court's Initiative" that the other party must show cause. Fed. R. Civ. P. 11(c). At this time, Plaintiffs do not seek to file this Rule 11 motion, but to put Defendants on notice and flag for this Court that Defendants' current and continued actions would justify such a motion.

[19] Bent on inundating Plaintiffs and this Court with additional pleadings, Defendants just informed Plaintiffs of two additional motions Defendants anticipate filing this week: (1) a motion for certification for interlocutory review under 28 U.S.C. § 1292(b) of the Court's order granting leave to file an amended complaint (ECF No. 540); and (2) a motion to stay litigation pending resolution of Defendants' motion to dismiss, the request to certify any denial of that motion for interlocutory review (ECF No. 547), and the motion to certify the order granting leave to amend the complaint.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND    18 AMENDED COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)**

F.2d 1343 (9th Cir. 1992) (affirming that "repeated motions for default judgments in complete disregard of the district court's unequivocal refusal to grant the motions" was frivolous); *see also Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1477 (9th Cir. 1988) (explaining that "the motion [to dismiss] in this case may warrant sanctions under the improper purposes prong of Rule 11 because the cumulative effect of the Defendants' litigation tactics could indicate the motion was filed for an improper purpose").

In this case, the instant Motion to Dismiss raises issues and arguments addressed by this Court's prior orders and the Ninth Circuit. *See* Appendix A. In doing so, Defendants ignore this Court's denial of their first Motion to Dismiss, Motion for Judgment on the Pleadings, Motion for Summary Judgment, as well as this Court's order to file an amended complaint, and the Ninth Circuit's holding that only definitively reversed prior orders due to the second prong of redressability. *See id.* Defendants' conduct in repeating previously decided arguments is made all the more pernicious by the fact that they do not mention, let alone analyze, any of the new allegations in Plaintiffs' Second Amended Complaint designed to cure the redressability concerns identified by the Ninth Circuit.

Second, Defendants are obliged to meet and confer with Plaintiffs before filing a motion to make "a good faith effort through personal or telephone conferences to resolve the dispute." L.R. 7-1(a)(1)(A). Defendants are in violation of Local Rule 7-1(a)(1)(A) because there was no "good faith effort . . . to resolve the dispute" when there is no one on Defendants' side of the call who can even attempt to "resolve the dispute," much less make a good faith effort. *See* Appendix B (July 3, 2023 letter from Plaintiffs' counsel to Defendants' counsel). Throughout the course of this litigation, Defendant's counsel has represented that the decisions and instructions on the motions filed come from "upper management," including the Solicitor General's Office or the

Attorney General's Office. Counsel have repeatedly stated during meet and confers, including the one on June 22, 2023, that "we do not make the decisions" and "we are the messengers." Each time Plaintiffs attempt to confer on substance of the motion, Defendants' counsel points to "upper management" and makes clear that counsel has no authority to confer for the purpose of attempting to resolve the dispute as the Local Rule requires.

Local Rule 7-1(a)(2) requires the parties discuss "each claim, defense, or issue that is the subject of the proposed motion." Defendants' counsel did not discuss each of Plaintiffs' claims in the Second Amended Complaint and their defenses in the Motion to Dismiss when the parties met and conferred on June 22, 2023, instead stating Defendants were filing on grounds that had previously been briefed and decided. Even had Defendants discussed each basis for moving to dismiss, they would have had no authority to make a good faith effort to resolve any of those defenses, even though doing so might have avoided a duplicative motion that ignores this Court's prior orders, is contrary to President Biden's Executive Orders, is contrary to Supreme Court and Ninth Circuit precedent, and reargues issues decided many times over by the courts.

With respect to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, counsel inaccurately and intentionally misrepresented Plaintiffs' position to the Court:

> In compliance with Local Rule 7-1, on June 22, 2023, the Parties conferred telephonically to resolve the dispute that informs this motion to dismiss and the request to certify any order denying the motion to dismiss for interlocutory appeal. Plaintiffs indicated that they oppose both the motion to dismiss and the request to certify for interlocutory appeal.

MTD. On June 22, Plaintiffs set forth their position by email and requested Defendants' counsel include that language as part of the motion:

> Plaintiffs oppose both the Motion to Dismiss and request to certify for interlocutory appeal because, as Defendants acknowledged during the meet and confer, the issues being raised have already been briefed and decided multiple times by both the District Court and the 9th Circuit Court of Appeals. It is also Plaintiffs' position that

counsel of record lack authority to substantively confer on the motion since the decision to file the motion had already been made by the Solicitor General's Office, and/or the Attorney General's Office, thereby denying plaintiffs an opportunity to confer with those attorneys who have the capability to explain and/or modify the government's position.

Third, Defendants repeatedly seek to advance legal arguments that are wholly incompatible with their outward public representations. Defendants, who purport to represent the Biden Administration, filed this Motion to Dismiss to bar these young Plaintiffs from finally presenting evidence at trial of the harms they are suffering, to avoid working with youth on addressing the climate crisis that the federal government ostensibly views as an "existential threat" that children will "inherit the worst impacts of," and to deny the need to address problems Defendants have already conceded are within their "duty." *See supra*, Introduction. Defendants have therefore pursued a factual and legal approach that is directly contrary to the Biden Administration's express position.

Fourth, in their Motion to Dismiss, Defendants incorrectly claim that "[n]o court has held that the climate system or atmosphere is protected by a public trust doctrine." MTD at 28. In fact, the Hawaiʻi Supreme Court has already recognized that the public trust relates to "protection of air and other trust resources affected by climate change." *In re Maui Elec. Co., Ltd.* (*MECO I*), 506 P.3d 192, 202 n.15 (Haw. 2022); *see also In re Hawaiʻi Elec. Light Co., Inc.* (*MECO II*), 526 P.3d 329, 347-48 (Haw. 2023) (Wilson, J., concurring) ("The climate system is a 'natural resource' held in trust by the State for the benefit of present and future generations . . . . The climate system also encompasses all other natural resources, including 'land, water, [and] air.' In order for the other natural resources mentioned in Article XI, section 1 to be conserved for future generations, the level of atmospheric $CO_2$ must be reduced to below 350 ppm. That is, Hawaiʻi's beauty, land, water, air, minerals and energy sources all depend upon a stable climate system, and a stable

climate system is only possible if atmospheric $CO_2$ concentrations are limited to below 350 ppm.")
(internal citation omitted). Other courts have similarly found that the atmosphere is a public trust
resource. *See, e.g.*, *Sanders-Reed ex rel. Sanders-Reed v. Martinez*, 350 P.3d 1221, 1225 (N.M.
Ct. App. 2015) ("We agree that Article XX, Section 21 of our state constitution recognizes that a
public trust duty exists for the protection of New Mexico's natural resources, including the
atmosphere, for the benefit of the people of this state."); *Bonser-Lain v. Texas Comm'n on Env't*
*Quality*, 2012 WL 3164561 (Tex. Dist. Aug. 2, 2012), *rev'd on other grounds*, *Texas Comm'n on*
*Env't Quality v. Bonser-Lain*, 438 S.W.3d 887 (Tex. App. 2014).

## V.    Interlocutory Appeal Should Be Denied as Certifying this Case Will Harm Plaintiffs and Result in Manifest Injustice.

Continuing their long-standing tactic of delaying Plaintiffs' day in court by any means
necessary, Defendants again ask this Court to certify the resulting order on the Motion to Dismiss
for yet another interlocutory appeal. In doing so, Defendants in effect are asking this Court to
"abandon the deeply-held distaste for piecemeal litigation." *Richardson-Merrell, Inc. v. Koller*,
472 U.S. 424, 440 (1985). As this Court has previously stated, interlocutory appeals are "certainly
the exception rather than the rule." *Juliana v. United States*, No. 6:15-CV-01517-AA, 2018 WL
6303774, at *2 (D. Or. Nov. 21, 2018). In their Motion to Certify, Defendants made no showing
as to why a second interlocutory appeal would clear that high bar. Certifying this appeal "would
only result in increased complexity and additional delay." *Mowat Const. Co. v. Dorena Hydro,*
*LLC*, No. 6:14-CV-00094-AA, 2015 WL 5665302, at *14 (D. Or. Sept. 23, 2015). The Court
should deny this request to certify and grant Plaintiffs the opportunity to proceed to trial on the
merits, an opportunity Plaintiffs were promised nearly five years ago.

**A.  This Court is Not Required to and Should Not Certify any of its Orders.**

Under 28 U.S.C. § 1292(b), the district court has discretion to certify a case for interlocutory appeal only where the court is "of the opinion that [it] involves a controlling question of law" as to which there is "substantial ground for difference of opinion" and where "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Satisfaction of these three requirements is a "minimum" for certification. *Nat'l Asbestos Workers Med. Fund. v. Phillip Morris, Inc.*, 71 F. Supp. 2d 139, 162 (E.D.N.Y. 1999) (cited in *Teem v. Doubravsky*, No. 3:15-cv-00210-ST, 2016 U.S. Dist. LEXIS 13452, at *3 (D. Or. Jan. 7, 2016)). This Court retains unfettered discretion to deny Defendants' Motion to Certify. *Mowat Const. Co.*, 2015 WL 5665302, at *5. It is for "district judges to determine whether an immediate appeal will promote judicial efficiency." *Juliana v. United States*, 949 F.3d 1125, 1126 (9th Cir. 2018) (Friedland, J., dissenting). Since this Court clearly found that the case would benefit from a trial on the merits, Amend Order at 8 ("[a] party should be allowed to test his claims on the merits rather than on a motion to amend . . . ."), no certification should be granted.

The grounds on which this Court previously certified the case for interlocutory appeal—namely, the then-recent orders issued by the Supreme Court and the Ninth Circuit with respect to Plaintiffs' First Amended Complaint—have already been reviewed in the previous interlocutory appeal and no longer justify interlocutory appeal at this stage. Further appeal would result in delay, inefficiency, and the parties re-briefing the same issues. This Court already stated the recent holding in *Uzuegbunam*, together with the new allegations in Plaintiffs' Second Amended Complaint (which Defendants do not reference in their Motion), resolved the singular issue with which the Ninth Circuit disagreed with this Court. Amend Order at 13-14. Hence, Defendants' argument that "[t]his Court granted a motion to certify most of the same issues for interlocutory

appeal" weighs in favor of denying a second interlocutory appeal. MTD at 34. At this point, Plaintiffs should finally be afforded their right to put their evidence on at trial.

### B.   There are no "Controlling Questions of Law" That Warrants Interlocutory Appeal.

"While Congress did not specifically define what it meant by 'controlling,' the legislative history of 1292(b) indicates that this section was to be used only in exceptional situations . . . at the very least, a controlling question of law must encompass 'every order which, if erroneous, would be reversible error on final appeal.'" *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981) (internal citations omitted); *see also In re Auto. Breakthrough Sciences, Inc.*, 1996 F.T.C. LEXIS 478, at *1-2 (Nov. 5, 1996) (A question of law is deemed controlling "only if it may contribute to the determination, at an early stage, of a wide spectrum of cases," and not merely "a question of law which is determinative of the case at hand."). As detailed above, this Court has already ruled on the issues Defendants raise in their Motion to Dismiss and found the issues do not present grounds for dismissal. *See* Amend Order at 9-10 (holding that the Ninth Circuit's mandate did not prohibit Plaintiffs from filing additional pleadings), 15 (finding that Plaintiffs have standing), 18 (finding that redress is within the power of the Court). Defendants present no argument for why this Court should revisit its holding in the order granting leave to file a Second Amended Complaint. In fact, Defendants do not engage with this Court's reasoning in requesting certification, aside from briefly stating their belief that "the Court should never have granted leave to file [the Second Amended] complaint." MTD at 34. Defendants make no attempt to show why their request clears the aforementioned bar of an exceptional situation required to warrant certification for interlocutory appeal. *In re Cement*, 673 F.2d at 1026.

Defendants willfully ignore that one of the issues they raise has already been resolved on appeal to the Ninth Circuit. Consider Defendants' contention that there remains a question of

whether "[p]laintiffs are required to bring their constitutional challenges . . . under the APA." MTD at 33. The Ninth Circuit explicitly found that "[w]hatever the merits of the plaintiffs' claims, they may proceed independently of the review procedures mandated by the APA." *Juliana*, 947 F.3d at 1167-68. This failure to accept law of the case and contend with the orders of this Court and the Ninth Circuit is illustrative of the DOJ's contempt shown for ordinary practices of litigation in this case.

### C. Defendants Fail to Show a Substantial Ground for Difference of Opinion With Respect to the Partial Redress that Declaratory Judgment Will Provide.

Defendants' Motion to Certify wholly fails to meet their burden to show that there is a substantial ground for a difference of opinion on declaratory judgment providing important redress, as required by § 1292(b), particularly when the Supreme Court is clear in *Uzuegbunam* that such equitable relief provides redress. Defendants base their argument on the now nearly five-year old Supreme Court order, preceding *Uzuegbunam* and based on Plaintiffs' prior complaint which has now been amended, finding that "the justiciability of [Plaintiffs'] claims presents substantial grounds for difference of opinion." MTD at 33 (citing ECF No. 330-1). Even if there were a difference of opinion on this question based on the scope of the relief requested in the prior complaint, the Court should not use its discretion to further delay the resolution of that question on the merits, where a full trial record will make clear and very likely eliminate the difference of opinion that some judges might perceive exist pre-trial. The issue of redressability can always be appealed after final judgment.

### D. Interlocutory Appeal Would Not "Materially Advance the Ultimate Termination of the Litigation."

The final requirement under § 1292(b) is that interlocutory appeal must "materially advance the ultimate termination of the litigation." The opposite is true in this case—rather than

facilitating proceedings, Defendants' request for interlocutory appeal is yet another stalling tactic meant to further delay a case that has been ongoing for almost eight years. Aside from the Second Amended Complaint addressing the issue identified by the Ninth Circuit, there has been no development in this case for the Court of Appeals to review. Each issue raised by Defendants requires presentation of evidence at trial for the "case [to develop] far enough to permit considered appellate disposition of the questions presented." 16 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 3930 (3d. ed. 2012); *see also id.* at n.41 (describing cases where questions of standing were insufficient grounds to allow interlocutory appeal). Where "the question presented should await further ripening," the granting of an interlocutory appeal is premature and would only serve to delay proceedings. *Molybdenum Corp. of Am. v. Kasey*, 279 F.2d 216, 217 (9th Cir. 1960). Such is the case here. If Defendants remain concerned about "additional litigation that is protracted, expensive, and disruptive," MTD at 34, Plaintiffs invite Defendants to cease their stream of endless procedural motions and support Plaintiffs' efforts to swiftly bring this case to trial. Had Plaintiffs' trial proceeded in 2018, this case would have been resolved on final judgment with all appeals completed by now.

### E.  Interlocutory Appeal Would Significantly Prejudice Plaintiffs.

There is no dispute that allowing "'business as usual' $CO_2$ emissions" to continue will cause Plaintiffs "dangerous and unacceptable economic, social, and environmental risks." Defs.' Answer to First Am. Compl. ¶ 150, ECF No. 98. This danger has continued to be recognized and publicly acknowledged by Defendants. *See supra*, Introduction. It follows that any attempt to further delay these proceedings would exacerbate Plaintiffs' injuries and further delay resolution of their claims amidst an ever-worsening climate crisis. Interlocutory appeal will "serve only to squander the valuable time and resources of the judiciary and parties through piecemeal appellate

review of an undeveloped factual record, thereby lengthening and protracting this litigation." Pls.' Resp. in Opp'n to Defs.' Mot. to Certify Order for Interloc. Appeal at 2, ECF No. 133.

By this Motion to Dismiss, Defendants raise the same issues they have brought up time and time again while entirely failing to respond to any of this Court's prior orders with no regard for the harm these delay tactics cause Plaintiffs, the cost they impose on the judicial system, and the disregard Defendants show for Rule 11. *See supra*, Part III. Since this case was first filed, Oregon alone has faced three of its ten hottest years on record, the worst air quality ever recorded in all of its metro areas, and one of the most destructive wildfire seasons the State has ever seen.[20] In the country at large, the Climate Extremes Index reached four of its ten highest levels in the past seven years[21] and millions of Americans have been exposed to dangerous air quality conditions due to climate change-induced wildfires.[22] The urgency of the issues presented in this litigation cannot be denied. Any further delay in the resolution of this case will produce even more irreversible harm to Plaintiffs. For these reasons, as well as the reasons stated in Pls.' Resp. in Opp'n to Defs.' Mot. to Certify Order for Interloc. Appeal, ECF No. 133, Plaintiffs request this Court exercise its broad discretion to deny any request for interlocutory appeal to facilitate this case's prompt road to trial.

---

[20] *See Sixth Oregon Climate Assessment*, Oregon Climate Change Research Institute (Erica Fleishman ed., 2023); John T. Abatzoglou et al., *Compound Extremes Drive the Western Oregon Wildfires of September 2020*, 48 Geophysical Rsch. Letters e2021GL092520, 7 (2021) ("The extent of burned areas . . . during the 2020 Labor Day fires has no contemporary local analog.").
[21] Nat'l Centers for Env't Info., *U.S. Climate Extremes Index (CEI)*, https://www.ncei.noaa.gov/access/monitoring/cei/graph/us/01-12/cei (last visited July 6, 2023).
[22] Brendan O'Brien, *Canadian wildfire smoke spreads, 100 million Americans under air-quality alerts*, Reuters (June 29, 2023), https://www.reuters.com/world/us/smoke-canadian-wildfires-settles-over-us-midwest-east-2023-06-29/.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND    27
AMENDED COMPLAINT AND MOTION TO CERTIFY (ECF No. 547)**

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss Second

Amended Complaint and Motion to Certify and set a date to promptly commence trial.


DATED this 6th day of July, 2023.

*/s/ Philip L. Gregory*
PHILIP L. GREGORY (*pro hac vice*)
pgregory@gregorylawgroup.com
Gregory Law Group
1250 Godetia Drive
Redwood City, CA 94062
Tel: (650) 278-2957

JULIA A. OLSON (OR Bar 062230)
julia@ourchildrenstrust.org
Our Children's Trust
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

ANDREA K. RODGERS (OR Bar 041029)
andrea@ourchildrenstrust.org
Our Children's Trust
3026 NW Esplanade
Seattle, WA 98117
Tel: (206) 696-2851

*Attorneys for Plaintiffs*

Appendix A

*Juliana v. United States*
ISSUES RAISED IN SECOND MOTION TO DISMISS
THAT WERE PREVIOUSLY BRIEFED AND DECIDED

| Issue Raised in Motion to Dismiss | Prior Briefing on the Issue Raised | Decision by a Court on the Issue Raised |
|---|---|---|
| Rule of Mandate Requires Dismissal Second MTD 10-11 | <u>Mot. for Leave to File Second Am. Compl.</u>: Doc. 468 at 7-10 Doc. 469 at 2-6 | *Juliana v. United States*, No. 6:15-CV-01517-AA, 2023 WL 3750334, at *5 (D. Or. June 1, 2023) ("Here, this Court does not take lightly its responsibility under the rule of mandate. Rather, it considers plaintiffs' new factual allegations under the Declaratory Judgment Act, and amended request for relief in light of intervening recent precedent, to be a new issue that, while discussed, was not decided by the Ninth Circuit in the interlocutory appeal. Nor did the mandate expressly state that plaintiffs could not amend to replead their case— particularly where the opinion found a narrow deficiency with plaintiffs' pleadings on redressability. This Court therefore does not interpret the Ninth Circuit's instructions as mandating it "to shut the courthouse doors" on plaintiffs' case where they present newly amended allegations. *San Francisco Herring Ass'n*, 946 F.3d at 574.") |
| No Case or Controversy under Article III (English Court of Chancery) Second MTD 17-19 | <u>Motion for Summary Judgment ("MSJ")</u>: Doc. 207 at 21-22 Doc. 255 at 41 Doc. 315 at 28 <br><br> <u>Appeal (18-36082)</u>: DktEntry 16 at 24-27 DktEntry 37 at 29-32 DktEntry 100 at 15-17 <br><br> <u>Motion for Judgment on the Pleadings ("MJP")</u>: Doc. 195 at 22-25 | *Juliana v. United States*, 339 F. Supp. 3d 1062, 1085 (D. Or. 2018) ("The Court remains mindful, however, that it is 'emphatically the province and duty of the judicial department to say what the law is.'"); *id.* at 1085-86 ("Courts have an obligation not to overstep the bounds of their jurisdiction, but they have an equally important duty to fulfill their role as a check on any unconstitutional actions of the other branches of government.") |

Appendix A

| | | |
|---|---|---|
| | Oral Argument Transcripts:<br>District Court<br>Doc. 67 at 6:1-5<br>Doc. 82 at 24:10-29:24<br>Doc. 329 at 10:18-23, 19:9-15, 20:5-15, 76:4-24<br><br>Ninth Circuit<br>June 4. 2019 at 4:14-25, 21:12-23:6 | |
| No Constitutional Right to a Stable Climate System Second MTD 19-21 | First Motion to Dismiss ("First MTD"):<br>Doc. 27-1 at 20-22<br>Doc. 57 at 11<br><br>MSJ:<br>Doc. 207 at 25<br>Doc. 255 at 42-46<br>Doc. 315 at 29<br><br>Appeal (18-36082):<br>DktEntry 16 at 35-38<br>DktEntry 37 at 40-50<br>DktEntry 100 at 23-25<br><br>MJP:<br>Doc. 195 at 6-7<br><br>Oral Argument Transcripts:<br>District Court<br>Doc. 67 at 20:14-18, 21:17-19<br>Doc. 82 at 9:25-10:5<br>Doc. 392 at 23:7-11, 32:17-24 | *Juliana v. United States*, 217 F. Supp. 3d 1224, 1250 (2016) ("Exercising my 'reasoned judgment,' . . . I have no doubt that the right to a climate system capable of sustaining human life is fundamental to a free and ordered society."); *id*. ("where a complaint alleges governmental action is affirmatively and substantially damaging the climate system in a way that will cause human deaths, shorten human lifespans, result in widespread damage to property, threaten human food sources, and dramatically alter the planet's ecosystem, it states a claim for a due process violation.")<br><br>*Juliana v. United States*, 339 F. Supp. 3d 1062, 1097-98 (D. Or. 2018) ("The Court addressed these arguments in the previous order, and nothing in the current briefing persuades the Court to change its previous rationale."); *id*. at 1098 ("As such, the Court finds no reason to re-examine the previous ruling on the existence of this due process right. Moreover, further factual development of the record will help this Court and other reviewing courts better reach a final conclusion as to plaintiffs' claims under this theory.")<br><br>*Juliana v. United States*, 947 F.3d 1159, 1169-70 (9th Cir. 2020) ("Reasonable jurists can disagree about whether the asserted constitutional right exists. . . . In analyzing |

Appendix A

2

| | Ninth Circuit<br>June 4, 2019 at<br>52:12-57:22, 63:1-<br>65:10, 66:18-21 | redressability, however, we assume its<br>existence.") |
|---|---|---|
| Failure to Allege<br>Cognizable State-<br>Created Danger<br>Claim<br>Second MTD 21-24 | First MTD:<br>Doc. 41 at 5-9<br>Doc. 57 at 13-14<br><br>MSJ:<br>Doc. 207 at 26-27<br>Doc. 255 at 46-49<br>Doc. 315 at 32-36<br><br>Appeal (18-36082):<br>DktEntry 16 at 38-42<br>DktEntry 37 at 50-54<br>DktEntry 100 at 25-28<br><br>Oral Argument<br>Transcripts:<br>District Court<br>Doc. 67 at 22:21-24:3<br>Doc. 82 at 10:11-12:10, 27:1-28:7<br>Doc. 329 at 36:21-37:9<br><br>Ninth Circuit<br>June 4, 2019 at 65:8-10, 66:21-67:3 | *Juliana v. United States*, 217 F. Supp. 3d 1224,<br>1252 (2016) ("Accepting the allegations of the<br>complaint as true, plaintiffs have adequately<br>alleged a danger creation claim."); *id.*<br>("Plaintiffs have alleged that defendants played<br>a significant role in creating the current<br>climate crisis, that defendants acted with full<br>knowledge of the consequences of their<br>actions, and that defendants have failed to<br>correct or mitigate the harms they helped<br>create in deliberate indifference to the injuries<br>caused by climate change.")<br><br>*Juliana v. United States*, 339 F. Supp. 3d 1062,<br>1101 (2018) ("At this stage of the proceedings,<br>plaintiffs have introduced sufficient evidence<br>and experts' opinions to demonstrate a<br>question of material fact as to federal<br>defendants' knowledge, actions, and alleged<br>deliberate indifference.") |
| No Federal Public<br>Trust Doctrine<br>Second MTD 24-26 | First MTD:<br>Doc. 27-1 at 28-29<br>Doc. 41 at 19-27<br>Doc. 57 at 20-23<br><br>MSJ:<br>Doc. 207 at 27-29<br>Doc. 255 at 49-52<br>Doc. 315 at 36-38 | *Juliana v. United States*, 217 F. Supp. 3d 1224,<br>1259 (2016) ("The federal government, like<br>the states, holds public assets—at a minimum,<br>the territorial seas—in trust for the people.<br>Plaintiffs' federal public trust claims are<br>cognizable in federal court."); *id.* at 1260 ("I<br>conclude plaintiffs' public trust rights both<br>predated the Constitution and are secured by<br>it.")<br><br>*Juliana v. United States*, 339 F. Supp. 3d 1062,<br>1101-02 (D. Or. 2018) ("[T]he November 2016<br>Order extensively covered this legal argument, |

Appendix A

| | Appeal (18-36082):<br>DktEntry 16 at 48-52<br>DktEntry 37 at 54-56<br>DktEntry 100 at 29-30<br><br>Oral Argument Transcripts:<br>District Court<br>Doc. 67 at 6:6-11:11, 43:18-48:14<br>Doc. 82 at 17:20-18:18, 25:2-26:19, 33:5-36:17<br><br>Ninth Circuit<br>June 4, 2019 at 67:4-8 | and the Court finds no need to revisit its analysis based on the nearly identical arguments in this motion. See *Juliana*, 217 F.Supp.3d at 1252-1261. The Court does not find that its previous order, holding that the public trust doctrine is deeply rooted in our nation's history and that plaintiffs' claims are viable was clearly erroneous.") |
|---|---|---|
| Climate System/Atmosphere Not Subject to the Public Trust<br>Second MTD 27-28 | First MTD:<br>Doc. 41 at 27-29<br>Doc. 57 at 21<br><br>MSJ:<br>Doc. 207 at 27<br>Doc. 255 at 50, 52<br>Doc. 315 at 36-38<br><br>Appeal (18-36082):<br>DktEntry 16 at 54-57<br>DktEntry 37 at 59-60<br>DktEntry 100 at 32-33<br><br>Oral Argument Transcripts:<br>District Court<br>Doc. 67 at 11:12-12:7<br>Doc. 82 at 18:19-19:5 | *Juliana v. United States*, 217 F. Supp. 3d 1224, 1255 (2016) ("I conclude that it is not necessary at this stage to determine whether the atmosphere is a public trust asset because plaintiffs have alleged violations of the public trust doctrine in connection with the territorial sea.") |
| No Equal Protection Claim<br>Second MTD 29-31 | First MTD:<br>Doc. 27-1 at 23-26<br>Doc. 41 at 9-19<br>Doc. 57 at 14-19 | *Juliana v. United States*, 947 F.3d 1159, 1165 n.3 (9th Cir. 2020) ("The court found that age is not a suspect class, but allowed the equal protection claim to proceed on a fundamental rights theory.") |

Appendix A

| | | |
|---|---|---|
| | <u>MSJ</u>:<br>Doc. 207 at 24 n.8<br>Doc. 255 at 53<br>Doc. 315 at 39 n.11<br><br><u>Appeal (18-36082)</u>:<br>DktEntry 16 at 43-47<br>DktEntry 37 at 6-7<br><br><u>Oral Argument<br>Transcripts</u>:<br>District Court<br>Doc. 67 at 24:4-10,<br>25:10-21, 26:3-29:20,<br>39:18-43:17.<br>Doc. 82 at 28:8-21<br>Doc. 329 at 35:23-<br>36:2 | *Juliana v. United States*, 339 F. Supp. 3d 1062, 1103-04 (D. Or. 2018) ("However, the rejection of plaintiffs' proposed suspect class does not fully resolve their equal protection claim. As explained above, strict scrutiny is also triggered by alleged infringement of a fundamental right. *Wright*, 665 F.3d at 1141. Plaintiffs' equal protection claim rests on alleged interference with their right to a climate system capable of sustaining human life—a right the Court has already held to be fundamental. *Juliana*, 217 F. Supp. 3d at 1249-50; . . . . Plaintiffs' equal protection and due process claims both involve violation of a fundamental right and, as such, must be evaluated through the lens of strict scrutiny, which would be aided by further development of the factual record.") |
| Action Must Have Been Brought Under the Administrative Procedure Act ("APA")<br>Second MTD 32 | <u>MSJ</u>:<br>Doc. 207 at 1, 16-19<br>Doc. 255 at 29-36<br>Doc. 315 at 21-23<br><br><u>Appeal (18-36082)</u>:<br>DktEntry 16 at 27-35<br>DktEntry 37 at 33-37<br>DktEntry 100 at 18-23<br><br><u>MJP</u>:<br>Doc. 195 at 11-22<br><br><u>Oral Argument<br>Transcripts</u>:<br>District Court<br>Doc. 67 at 17:18-22<br>Doc. 329 at 16:1-10,<br>17:11-18:4<br><br>Ninth Circuit<br>June 4, 2019 at 54:1-9, 58:7-18 | *Juliana v. United States*, 947 F.3d 1159, 1167 (9th Cir. 2020) ("The government . . . first argues that those claims must proceed, if at all, under the APA. We reject that argument . . . . Because the APA only allows challenges to discrete agency decisions . . . the plaintiffs cannot effectively pursue their constitutional claims—whatever their merits—under that statute.") |

Appendix A

Appendix B



July 3, 2023

Re: *Juliana v. United States;* Defendants' Lack of Compliance with L.R. 7-1(a)

Sean and Frank,

By this letter, we are putting Defendants on notice and raising a standing objection to your violations of Fed. R. Civ. P. 7 and L.R. 7-1(a), due to the non-compliant "meet and confer" phone calls we have with you. It is our opinion that Defendants are in violation of the Local Rules by not bringing to meet and confer sessions the parties or the attorneys within DOJ who have the power to, in fact, confer in accordance with the Rules. Local Rule 7-1(a) provides:

1) Except for motions for temporary restraining orders, the first paragraph of every motion must certify that:
    A. In compliance with this Rule, *the parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so*; or
    B. The opposing party willfully refused to confer; or
    C. The moving party or opposing party is a prisoner not represented by counsel.
2) *When conferring about a dispositive motion, the parties must discuss each claim, defense, or issue that is the subject of the proposed motion.*
3) *The Court may deny any motion that fails to meet this certification requirement.*
4) A party filing a motion should state "UNOPPOSED" in the caption if the other parties to the action do not oppose the motion.

L.R. 7-1(a) (emphasis added).

*First*, Defendants are in violation of L.R. 7-1(a)(1)(A) because there is no "good faith effort . . . to resolve the dispute" when no one on Defendants' side of the call has the ability to even attempt to "resolve the dispute," much less make a good faith effort. You have repeatedly stated throughout the course of this litigation that the decisions and instructions on how you litigate this case and what motions you file are coming from "upper management." Sometimes you have specifically represented that the decisions are coming from the Solicitor General's Office or the Attorney General's Office. When we have asked to have a substantive discussion, you have not been willing to engage in discussion and respond with, "we do not make the decisions." You have stated, "we are the messengers." Each time we attempt to confer, you punt to "upper management" and make it clear you have no authority to confer for the purpose the Rule indicates. Further, you have not made these members of "upper management" available when we have asked to speak with them. As a result, there is no meaningful meet and confer when we are conferring with the messengers who have no authority to make a different decision or alter a motion. That nullifies the purpose of the Rule and is an utter waste of our time and resources.

*Second*, L.R. 7-1(a)(2) requires the parties discuss "each claim, defense, or issue that is the subject of the proposed motion." You did not discuss each of Plaintiffs' claims and Defendants' defenses when we met and conferred on June 22, 2023 regarding Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. Again, you would have had no authority to make a good faith effort to resolve any of those defenses even if you had walked through each one, which you did not do.

1

Appendix B



Doing so might have avoided a motion that ignores the law of the case, is contrary to President Biden's Executive Orders, is contrary to Supreme Court and Ninth Circuit precedent, and reargues issues decided many times over by the courts.

*Third*, with respect to Defendants' latest motion to dismiss, you misrepresented Plaintiffs' position and your compliance with the Local Rule. In Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, you inaccurately represented to the Court:

> In compliance with Local Rule 7-1, on June 22, 2023, the Parties conferred telephonically to resolve the dispute that informs this motion to dismiss and the request to certify any order denying the motion to dismiss for interlocutory appeal. Plaintiffs indicated that they oppose both the motion to dismiss and the request to certify for interlocutory appeal. (Doc. 547 at 2).

We wrote to you on June 22, 2023, prior to your filing the motion, requesting that Defendants include the following language as Plaintiffs' position on your motion:

> Plaintiffs oppose both the Motion to Dismiss and request to certify for interlocutory appeal because, as Defendants acknowledged during the meet and confer, the issues being raised have already been briefed and decided multiple times by both the District Court and the 9th Circuit Court of Appeals. It is also Plaintiffs' position that counsel of record lack authority to substantively confer on the motion since the decision to file the motion had already been made by the Solicitor General's Office, and/or the Attorney General's Office, thereby denying plaintiffs an opportunity to confer with those attorneys who have the capability to explain and/or modify the government's position.

You responded by email stating that you would not include our position in your motion and thereby misrepresented Plaintiffs' position by crafting your own description of our position.
It was an inaccurate statement to assert that Defendants complied with Local Rule 7-1(a) and conferred on Defendants' motion. As we stated during the phone call on June 22 and in our follow-up email to you, there was no "meet and confer" pursuant to the Local Rule. There was a phone call where you told us you had no decision-making authority to resolve the dispute, where you did not discuss each claim and defense, and where you made clear you were messengers with no authority to meaningfully comply with the Local Rule. The call was a sham as you had no authority to make "a good faith effort through personal or telephone conferences to resolve the dispute." L.R. 7-1(a).

As you know, the Court may deny any motion where Defendants have not complied with this Local Rule. The next time there is a motion or petition to confer on, we expect someone with decision-making authority to be on the call so that we can meaningfully discuss both Defendants' position and Plaintiffs' position in full compliance with Local Rule 7-1(a).

Sincerely,

Julia Olson
Andrea Rodgers
Phil Gregory

2

Appendix B