JULIA A. OLSON (OR Bar 062230)
julia@ourchildrenstrust.org
Our Children's Trust
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

ANDREA K. RODGERS (OR Bar 041029)
andrea@ourchildrenstrust.org
Our Children's Trust
3026 NW Esplanade
Seattle, WA 98117
Tel: (206) 696-2851

PHILIP L. GREGORY (*pro hac vice*)
pgregory@gregorylawgroup.com
Gregory Law Group
1250 Godetia Drive
Redwood City, CA 94062
Tel: (650) 278-2957

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **KELSEY CASCADIA ROSE JULIANA**; **XIUHTEZCATL TONATIUH M.**, through his Guardian Tamara Roske-Martinez; et al., | Case No.: 6:15-cv-01517-AA |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING A PETITION FOR A WRIT OF MANDAMUS (ECF No. 571)** |
| v. | |
| The **UNITED STATES OF AMERICA**; et al., | |
| Defendants. | |

## INTRODUCTION

The Solicitor General of the United States and the Department of Justice have singled out these 21 Youth Plaintiffs, eleven of whom are Black, Brown, and Indigenous, to use the most aggressive and discriminatory legal tactics to stop these Youth—with physical, emotional, cultural, property, and other tangible and deeply personal injuries—from having their trial against the United States federal government for its role in causing their injuries. Of the more than 40,000 civil cases in which the United States is a defendant represented by the Department of Justice, in **only one case** has the Solicitor General sought to stop the development of an evidentiary record at trial, in the ordinary course of litigation, purely on the basis that it costs the government too much money to proceed to trial: ***Juliana v. United States***. These youth have been politically targeted and persecuted, for over eight years, as the enormous power and machine of the Department of Justice singles them out among tens of thousands of other plaintiffs, in an effort to stop our nation's youth from taking the witness stand, when every court to review the *Juliana* Plaintiffs' claims has said that there is life and death at stake, the survival of the nation is at stake, and there is merit to their constitutional claims. All they seek after trail is a declaratory judgment of their rights and the government's wrongs, just as the students in *Brown v. Board of Education* did 70 years ago.[1]

But their government wants to hide the truth of the incriminating evidence from being presented at trial, circumvent the ordinary appellate process that would normally follow and would correct any mistake made by the lower courts, and wants at *all costs* to avoid a declaratory judgment that the Defendants might have acted, and might still be acting, unconstitutionally. These brave youth are the equivalent of citizen whistleblowers on the government's fossil fuel energy system, and the evidence of its conduct the government seeks to hide from the public, and they are

---

[1] The students and parents in *Brown v. Board of Education* went to trial **four months** after they filed their constitutional Fourteenth Amendment case.

being targeted unlike any other group of plaintiffs in any case in U.S. history as a result. These are *children and youth*, who come from the frontline communities of the climate crisis, the very youth this administration, and these Defendants, claim to want to protect. There is no other meaningful redress for these young Plaintiffs' injuries, but from the courts. It would be a colossal failure of democracy, the rule of law, and the third branch of government if their case never goes to trial. But at all cost, since the Trump administration took office and now through the Biden administration, the Department of Justice's mission has been, as stated by its own lawyers, "to kill *Juliana v. U.S.*"[2]

That Defendants once again seek a stay pending a petition for a writ of mandamus is nothing short of shocking. There is simply no basis for granting a writ of mandamus in this case, which would otherwise proceed to trial in routine fashion. In fact, the Department of Justice's own Justice Manual provides that a writ of mandamus is an "extraordinary remedy, which should only be used in exceptional circumstances of peculiar emergency or public importance." U.S. Dep't of Just., Just. Manual, Civil Resource Manual § 215. The Department of Justice fails to meet its own standard. The only emergency in this case is the climate emergency that Defendants created and the Department of Justice prolongs with further delays. Indeed, the only issue of public importance is the ongoing constitutional violations facing Plaintiffs with each additional day of delay.

## SUMMARY OF ARGUMENT

This Court should deny Defendants' Motion for a Stay Pending their Petition for a Writ of Mandamus ("Motion to Stay"), Doc. 571, *which Defendants just today announced to Plaintiffs they will file tomorrow before this Court has a chance to rule on the present motion*, and allow this case to proceed towards a prompt trial pursuant to Plaintiffs' Motion for an expedited trial

---

[2] Declaration of Julia A. Olson ("Olson Decl."), ¶ 6.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY    2
PENDING A PETITION FOR A WRIT OF MANDAMUS (ECF No. 571)**

date. Doc. 543. Defendants' sole reason for seeking a stay in the district court is the filing of their unprecedented *fifth* forthcoming petition for a writ of mandamus to the Ninth Circuit, which they claim is necessary to save the Department of Justice ("DOJ") from spending more attorney hours defending U.S. policies that are injuring these youth plaintiffs and "may hasten an environmental apocalypse." *Juliana v. United States*, 947 F.3d 1159, 1164 (9th Cir. 2020). As this Court quoted on December 29, 2023, in denying Defendants' most recent prior motion to stay litigation, Doc. 552: "With each year, the impacts of climate change amplify and the chances to mitigate dwindle." Doc. 565 (quoting *Matter of Hawaiʻi Elec. Light Co., Inc.*, 152 Haw. 352, 359 (2023)). The judicial branch of government can no longer "abdicat[e] responsibility to apply the rule of law." *Id*. It is time the DOJ's discriminatory targeting and political persecution of these twenty-one young plaintiffs end so that they can finally get their day in court.

Over the course of eight years, Defendants and the highest level political appointees at the Department of Justice have attempted to stay this litigation *fourteen* times, employing countless other extraordinary legal tools to avoid reaching the merits. *See* Doc 544, Olson Decl. to Set Pretrial Conf. ¶¶ 3, 8. Of the 40,000+ cases in which the United States is a defendant[3], in *no other case* has the Biden Administration taken the extraordinary step of filing a petition for writ of mandamus to stop a trial.[4] As this Court stated and every judge knows, this case and any future appellate review would be best served by factual development at trial. *Juliana v. United States*,

---

[3] For the 12-month period concluding March 31, 2023, the United States was a defendant in 40,549 cases of the 284,220 civil cases filed in federal court. *See* U.S. Courts, *Federal Judicial Caseload Statistics 2023*, https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2023.

[4] Since the Biden administration took office, the Solicitor General and the Department of Justice have only used a petition for writ of mandamus in *one other case*, to quash a subpoena for the deposition of the Secretary of Education, which is a typical use of the extraordinary mandamus measure. *In re U.S. Dep't of Educ.*, 25 F.4th 692 (9th Cir. 2022). Even there, the Department of Justice did not seek to stop trial. Olson Decl. ¶¶ 2-4.

No. 6:15-CV-01517-AA, 2018 WL 6303774, at *3 (D. Or. Nov. 21, 2018) ("This Court stands by its prior rulings on jurisdictional and merits issues, as well as its belief that this case would be better served by further factual development at trial."); *State v. Mont. First Jud. Dist. Ct., Lewis & Clark Cnty.*, No. OP 23-0311, 2023 WL 3861790, at *2 (Mont. June 6, 2023) ("Although the State asserts that this Court should take supervisory control to avoid a trial, we have repeatedly held that conserving resources, without more, is insufficient grounds to justify supervisory control where a party can seek review of the lower court's ruling on appeal and there is no evidence that relief on appeal would be inadequate."); *see also Held v. State*, No. CDV-2020-307, Order on Defendants' Motions to Dismiss for Mootness & for Summary Judgment at 13-14 (Mont. First Jud. Dist. Ct. May 23, 2023) (denying Defendants' motion for summary judgment given numerous "factual disputes"); *Held v. State*, No. CDV-2020-307, Findings of Fact, Conclusions of Law, & Order at 9 (Mont. First Jud. Dist. Ct. Aug. 14, 2023) (issuing detailed findings of fact and conclusions of law after seven days of trial and hearing testimony from 27 witnesses, resulting in declaratory judgment of constitutional violations). As a result of Defendants' unprecedented deployment of extreme tactics, this case has spanned three presidential administrations and more than eight years, leading to unwarranted delays on an urgent and time-sensitive issue harming young people.

With the case once again ready to proceed toward trial, Plaintiffs face more of Defendants' unparalleled targeting and persecution through repetitive motions, petitions, and other attempts at delay designed to prevent them from accessing justice. All the while, Plaintiffs continue to experience devastating injuries and betrayal at the hands of their federal government.

To be crystal clear, this is the only case of over 40,000 cases in which the United States as a defendant has resorted to these tactics. The Plaintiffs here are the only plaintiffs suing the federal government who are targeted with this egregious treatment by the highest offices of the

Department of Justice, who claim they need to save money rather than try this single case. These 21 youth have been targeted, discriminated against, and politically persecuted by their government and the Department of Justice, all because they seek to enforce their fundamental constitutional rights to life, liberty, and a life-sustaining climate system from the destruction of the fossil fuel energy system perpetuated by the Defendants.

In seeking another halt to these proceedings by this motion Defendants and the Department of Justice defy the rule of law and fail in every respect to meet the legal standard for what justifies a stay, and make fundamental misrepresentations to the Court in the process. The conduct of the Department of Justice lawyers should not be tolerated by this Court or the Ninth Circuit. As will be addressed more fully in this Opposition, and in the Declarations filed in support,[5] the only "fact" offered by Defendants to prove their claim for "irreparable harm" is that "attorneys and paralegals" and some unidentified experts with the DOJ will have to prepare the case for trial and then try the case. *See* Doc. 571 at 6; Doc. 571-1, Exhibit 1, Decl. of Guillermo A. Montero ¶ 3. According to Defendants, the federal government supposedly "will be irreparably harmed if it is forced to expend substantial public resources litigating" this case. Doc. 571 at 7. Not only is such an excuse already rejected by the Ninth Circuit and the U.S. Supreme Court; one expert, Nobel Laureate Joseph Stiglitz, characterizes this assertion of irreparable harm—when compared to the extensive climate damage suffered by the Nation and these Youth Plaintiffs—as "ludicrous." *See* Decl. of Joseph Stiglitz ("Stiglitz Decl.") ¶ 6.

Defendants fail to establish any justification for a stay. Defendants ignore, at best, record evidence, and admissions in their own Answer and other government documents, with which they

---

[5] The expert Declarations filed in Opposition include: Drs. Joseph Stiglitz, Steven Running, Mark Jacobson, and Lise Van Susteren. The Plaintiff Declarations filed in Opposition include: Avery M., Levi D., Miko V., Nathaniel B., and Sahara V.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY**                                            5
**PENDING A PETITION FOR A WRIT OF MANDAMUS (ECF No. 571)**

are familiar that a stay threatens to harm Plaintiffs irreparably and runs counter to the public interest. *See generally* Declaration of Steven Running. Defendants instead fixate ironically on the concept of expenditure of "public resources," their term for time spent by attorneys and paralegals with the DOJ, ignoring that, after eight years of delay, efficiency is best served by further factual development and adhering to the final judgment rule, because "[u]nder a more relaxed standard, cases could be interrupted and trials postponed indefinitely as enterprising appellants bounced matters between the district and appellate courts." *United States v. Acad. Mortg. Corp.*, 968 F.3d 996, 1002 (9th Cir. 2020) (internal quotation marks and citations omitted); Doc. 571-1 ¶¶ 2–3 (spending 8,000 hours since October 17, 2018); *see also Juliana v. United States,* 949 F.3d 1125, 1128 (9th Cir. 2018) (Friedland, J., dissenting) (stating that appellate review of legal issues is appropriate only "*if and when* they are presented [ ] after final judgment") (emphasis added). Ignoring their ethical obligations to be truthful about the facts of the case, Defendants continue to file papers with this Court that ignore the devastating impacts of climate disasters, asserting: "Nothing has changed since this case was filed that would now require the Court to proceed urgently toward trial."[6] Doc. 571 at 7. The supposed harm of Defendants' expenditure of "public resources" pales in comparison to the evidence of climate disasters presented here and in the Second Amended Complaint ("SAC"). Defendants simply do not satisfy their "heavy burden" to compel Plaintiffs to cease litigating in this Court.

Putting aside their expenditure of "public resources" and "nothing has changed" posturing, Defendants fail to show a genuine necessity for the proposed stay. Defendants fail to satisfy their

---

[6] Defendants' "nothing has changed" position is belied by their sanctimonious assertion on the very next page of their Motion to Stay: "The government does not dispute that climate change poses a serious threat, nor that addressing climate change requires the active involvement of the federal government. *See generally* Exec. Order 14,008, *Tackling the Climate Crisis at Home and Abroad*, 86 Fed. Reg. 7619 (Jan. 27, 2021)." Doc 571 at 8.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY**                     6
**PENDING A PETITION FOR A WRIT OF MANDAMUS (ECF No. 571)**

heavy burden to justify a stay when this case has relatively little discovery left to do to commence

trial and Plaintiffs' constitutional injuries worsen with each passing day. Because eight years of

delay is already too long, Plaintiffs respectfully request this Motion to Stay be denied.

## PROCEDURAL HISTORY

This Court is intimately familiar with the procedural history in this case. There is one

important stage in the procedural history of this case that Defendants' Motion to Stay tellingly

omits. In 2017, the DOJ filed a similar petition for writ of mandamus, asking the Ninth Circuit to

direct this Court to dismiss this case. Doc. 177; No. 17-71692, DktEntry 1-1. The Ninth Circuit

characterized the DOJ's position as arguing "that allowing the case to proceed will result in

burdensome discovery obligations on the federal government that will threaten the separation of

powers." *In re United States*, 884 F.3d 830, 833 (9th Cir. 2018). In finding the DOJ did not meet

"the high bar for mandamus relief," the Ninth Circuit denied that petition. *Id.* In words remarkably

prescient for purposes of this Motion to Stay, the Ninth Circuit found: "The issues that the

defendants raise on mandamus are better addressed through the ordinary course of litigation," and

trial is a vital step in the process of constitutional litigation. *Id.* at 834, 837. The Ninth Circuit

prophetically concluded its March 2018 opinion:

> There is enduring value in the orderly administration of litigation by the trial courts,
> free of needless appellate interference. In turn, appellate review is aided by a
> developed record and full consideration of issues by the trial courts. If appellate
> review could be invoked whenever a district court denied a motion to dismiss, we
> would be quickly overwhelmed with such requests, and the resolution of cases
> would be unnecessarily delayed.

*Id.* at 837. That ruling of the Ninth Circuit should be law of this case, and precedent the courts are

bound by. Defendants will absolutely have the opportunity to file an appeal in this case, and that

should only happen *after* trial on a fully developed factual record so that the vitally important

issues in this case are decided on the evidence, and not based on hypotheticals.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY**          7
**PENDING A PETITION FOR A WRIT OF MANDAMUS (ECF No. 571)**

## STANDARD OF REVIEW

"[S]tays will be granted only if a party shows the necessity for a stay." *In re Bel Air Chateau Hosp., Inc.*, 611 F.2d 1248, 1251 (9th Cir. 1979); *accord Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985) ("Where a discretionary stay is proposed, something close to genuine necessity should be the mother of its invocation."). A stay represents an "intrusion into the ordinary processes of administration and judicial review" and, as a result, is "not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quotations and citations omitted). A stay of proceedings is an exercise of judicial discretion, dependent upon the specific facts of a particular case. *Id.* at 433. The burden of justifying departure from the regular track of continued proceedings "lay[s] heavily on the petitioners . . . ." *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936); *see also Nken*, 556 U.S. at 433–34 ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."); *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

Courts consider four factors in determining whether issuance of a stay is appropriate:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 434 (internal citations omitted); *see Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011). "The first two factors of the traditional standard are the most critical." *Nken*, 556 U.S. at 434.

## ARGUMENT

As has become a regular pattern, Defendants' Motion to Stay fails to disclose to the Court the binding precedent that decisively goes against their motion or to provide evidence to satisfy the stay requirements under the circumstances of this case. *See, e.g.*, Pls.' Opp'n to Stay Mot.,

Doc. 134; Pls.' Opp'n to Stay Mot., Doc. 429. Further, the lack of evidence is important given the unique nature of their proposed writ petition. From January 1, 2021 to the present there has been only one other petition for writ of mandamus filed by the United States in *any* federal civil case in *any* U.S. Court of Appeals or the U.S. Supreme Court. *See In re U.S. Dep't of Educ.*, 25 F.4th 692 (9th Cir. 2022) (concerning the U.S. Department of Education's petition for mandamus to quash a subpoena of the former Secretary of Education). Olson Decl., ¶¶ 2-4.

While a dearth of evidence supporting a stay would, on its own, be sufficient to justify the Court denying Defendants' Motion to Stay, Plaintiffs will show why: (1) Defendants have *not* made a "strong showing" that they are likely to succeed on the merits; (2) Defendants will *not* be irreparably injured without a stay, much less injured at all; (3) Plaintiffs *will be* substantially injured if a stay is granted; and (4) a stay is *not* in the public interest.

## I.    Defendants Are Not Likely to Succeed on the Merits

Defendants have recycled their same arguments they made opposing the motion to amend and their motion to dismiss, which this Court has already rejected. Doc. 540; Doc. 565. Defendants continue to plainly ignore that dismissals for lack of Article III standing are by their nature dismissals without prejudice and that *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021), makes clear, at minimum, that declaratory relief (akin to nominal damages, which serves as declaratory relief) for harms already suffered is well within the authority of Article III courts even if no other relief is possible. Plaintiffs here do not need to seek nominal damages because declaratory relief will serve a higher, and at least equivalent, purpose. Furthermore, ongoing injury—as alleged here—makes declaratory relief all the more important and available, not less so.

The order of the Ninth Circuit mandated dismissal of the First Amended Complaint, but does not mandate dismissal of the Second Amended Complaint, which the Ninth Circuit has not

reviewed. The order of the Ninth Circuit, as Defendants have previously conceded, narrowly decided that redressability based on the broad request for relief in the First Amended Complaint was the only definitive issue requiring dismissal. *See* Mot. to Certify at 9, Doc. 551; Defs.' Resp. to Pls.' Mot. to Set Pretrial Conf. at 2, Doc. 548 ("The narrow issue of redressability was the only issue necessary to justify that mandate . . . ."). The Ninth Circuit dismissed "for lack of Article III standing." *Juliana*, 947 F.3d at 1175. Importantly, the dismissal did not indicate a dismissal with prejudice, which in this context means that it was without prejudice. Doc. 540. According to the Ninth Circuit,

> [o]ften a plaintiff will be able to amend its complaint to cure standing deficiencies. To deny any amending of the complaint places too high a premium on artful pleading and would be contrary to the provisions and purpose of Fed.R.Civ.P. 15. Rule 15(a) provides that amendment shall be granted "freely when justice so requires." Denial is proper only when amendment would be clearly frivolous, unduly prejudicial, cause undue delay or a finding of bad faith is made. S*ee Moore v. Kayport Packaging Exp. Inc.*, 885 F.2d 531, 538, 539 (9th Cir.1989).

*United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1402 (9th Cir. 1990). "This policy is 'to be applied with extreme liberality.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). A district court does not have discretion to act otherwise. *See United Union*, 919 F.2d at 1402 (holding that a district court abused its discretion by denying a union leave to amend after complaint was dismissed for lack of standing); *see also Polich v. Burlington N., Inc.* 942 F.2d 1467, 1472 (9th Cir. 1991) ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment."). Here, following the Ninth Circuit's decision, Plaintiffs filed a Second Amended Complaint that conformed the complaint and relief requested to the Ninth Circuit's opinion on redressability. *See* SAC, Doc. 542; MTD Opp., Doc. 549.

To meet their burden, Defendants have to show that they will prevail on the merits of their petition for writ of mandamus, which they cannot show. They cite *Vizcaino v. U.S. Dist. Ct. for*

*W. Dist. of Wash.*, 173 F.3d 713, 719 (9th Cir. 1999), for the proposition that "litigants who have proceeded to judgment in higher courts should not be required to go through that entire process again to obtain execution of the judgment." Doc. 571 at 7. What Defendants fail to explain is that *Vizcaino* does not apply to the Ninth Circuit's consideration of mandamus because the principle stated there was about avoiding re-litigation of *final* judgments. The Ninth Circuit clearly explained: "The appeal before us in *Vizcaino I* and *II* was taken from a *judgment on the merits denying relief to plaintiffs and the members of the class* certified by the district court. . . .that judgment would be res judicata with respect to the claims not only of the plaintiffs and other workers . . . substantial rights were at issue for all the members of the certified class." *Vizcaino v. U.S. Dist. Ct. for W. Dist. of Washington*, 173 F.3d 713, 720 (9th Cir.), *as amended* (June 10, 1999), *opinion amended on denial of reh'g sub nom. In re Vizcaino*, 184 F.3d 1070 (9th Cir. 1999) (emphasis added). Further, expounding on the uniqueness of judicial review of class certification issues, the Court explained that there was no further remedy for the excluded class members after a decision on the merits pursuant to Rule 23(c)(1). *Id.* at 721-22. In contrast, here, where there has been no judgment on the merits, Defendants will have full opportunity to appeal every aspect of this Court's decisions after a final judgment. There is no final judgment mandate, as in *Viscaino,* or its equivalent to enforce against this Court at this time. This Court did exactly what the Ninth Circuit expressly and impliedly directed and what binding precedent also requires of district courts: dismiss the First Amended Complaint without prejudice and consider whether amendment can cure the jurisdictional deficiency found. "Under these circumstances, the *Vizcaino* principle that mandamus is available to assure compliance with a prior mandate has no application." *Perry v. Schwarzenegger*, 602 F.3d 976, 980 (9th Cir. 2010).

Furthermore, Defendants have not reckoned with the binding precedent of the Supreme Court and the Ninth Circuit that "[t]he writ of mandamus is a drastic and extraordinary remedy reserved for really extraordinary causes." *In re Van Dusen*, 654 F.3d 838, 840 (9th Cir. 2011) (internal quotation marks and citations omitted). "[O]nly exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this extraordinary remedy." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004) (internal quotation marks and citations omitted). In considering whether to grant a writ of mandamus, when there is no final judgment to enforce, the Ninth Circuit is guided by the five factors identified in *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650 (9th Cir. 1977): "(1) whether the petitioner has no other means, such as a direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems or issues of first impression." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010) (citing *Bauman*, 557 F.2d at 654–55).[7]

---

[7] Defendants also stretch their argument by citing to a criminal case, *Will v. United States*, 389 U.S. 90, 95 (1967). Doc. 571 at 6. *Will* is the seminal criminal case holding that "[m]andamus . . . may never be employed as a substitute for appeal in derogation of" the "clear" policy of the final judgment rule, and "appellate review should be postponed, except in certain narrowly defined circumstances, until after final judgment ... by the trial court." *Will*, 389 U.S. at 96-97 (quotations omitted). According to *Will*, mandamus is "necessary to confine a lower court to the terms of an appellate tribunal's mandate" in a criminal case only where the mandate was exceedingly clear. *Id*. at 95–96. Here, even if *Will* were applicable as a criminal case, the Ninth Circuit's mandate was silent as to whether dismissal was with or without prejudice. *Will* strongly supports Plaintiffs' position that Defendants' petition for writ of mandamus is unlikely to succeed because of the overwhelming body of case law that says the "final judgment rule" should govern except in extraordinary circumstances.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY**                    12
**PENDING A PETITION FOR A WRIT OF MANDAMUS (ECF No. 571)**

In their Motion to Stay, Defendants not only fail to argue they satisfy the *Bauman* factors at this stage of the litigation; Defendants fail to even cite *Bauman*. And that omission is strategic. Because when the Ninth Circuit applied the *Bauman* factors in its March 2018 decision in this case, it addressed the precise showing the DOJ attempts to make in this Motion to Stay: "the defendants argue that mandamus is their only means of obtaining relief from potentially burdensome discovery. The defendants' argument fails because the district court has not issued a single discovery order, nor have the plaintiffs filed a single motion seeking to compel discovery." *In re United States*, 884 F.3d at 834. Moreover, Defendants will have a full opportunity to appeal this Court's orders, *after* trial in the normal course of litigation. Similarly, Defendants make no argument why their proposed mandamus petition is likely to succeed on the merits. Mandamus is "the exception rather than the rule." *Juliana*, 2018 WL 6303774, at *2.

The underlying principle in determining whether to grant or deny a stay is that "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n*, 713 F.2d at 1484 (quoting *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir. 1971)). Given the current posture of the instant case—where most of Defendants' arguments on interlocutory appeal were heard and rejected, and where Plaintiffs have since amended their complaint to address the singular narrow issue of concern in the Ninth Circuit's opinion, to the satisfaction of this Court, under its broad discretion, and where the rule of law strongly favors appeal after final judgments in order to avoid depriving litigants of an opportunity to be heard—Defendants have not demonstrated likely success on the merits.

## II.    Defendants Will Not Suffer Irreparable Injury Absent a Stay

An applicant for stay *must* "show that an irreparable injury is the more probable or likely outcome" if the stay is not granted. *Leiva-Perez*, 640 F.3d at 968. It is a "bedrock requirement that

stays must be denied to all petitioners who did not meet the applicable irreparable harm threshold, regardless of their showing on the other stay factors." *Id.* at 965. It is black letter law in precedent of the Supreme Court that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974). That should end the inquiry. But there is much more that shows how egregious Defendants' argument is and how blatantly they ignore the law and the facts in their three paragraph argument and their "ludicrous" arguments about "expending substantial public resources."

Here, that "attorneys and paralegals" with the Department of Justice would have to prepare the case for trial is never a sufficient ground to stay proceedings. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). As the *Lockyer* court noted, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' . . . ." *Id.*; *accord Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt.*, *Inc.*, 713 F.2d 1477, 1485 (10th Cir. 1983) ("[T]he consideration of judicial economy. . . . should rarely if ever lead to such broad curtailment of the access to the courts [by way of stay of proceedings]."); *GFL Advantage Fund, Ltd. V. Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003) ("[T]he interests of efficiency and judicial economy . . . . [do not] establish a 'clear case of hardship' [under *Landis*]."); *accord State v. Mont. First Jud. Dist. Ct., Lewis & Clark Cnty.,* No. OP 23-0311, 2023 WL 3861790, at *2 (Mont. June 6, 2023) (Montana Supreme Court ruling on similar issue in *Held v. State of Montana:* "In this case, the State has provided no reason why the District Court's ruling cannot be reviewed on appeal, if necessary. . .  " and "we have repeatedly held that conserving resources, without more, is insufficient grounds to justify supervisory control where a party can seek review of the lower court's ruling on appeal and there is no evidence that relief on appeal would be inadequate.").

Even Defendants admit that their motion requires them to show a likelihood of irreparable harm absent a stay. *See* Doc 571 at 4. No stay may issue without a finding that the threatened harm to the moving party is genuinely "irreparable" and that such irreparable harm is at least probable. *See Nken*, 556 U.S. at 435 (the "'possibility' standard is too lenient"); *id*. at 434–35. "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough" to show irreparable harm. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) (ellipsis in original) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Importantly, Defendants fail to cite a single case where irreparable harm was found when the only supposed damage was "attorneys and paralegals" with the Department of Justice having to prepare for trial. For this reason alone, the motion for stay should be denied.

Defendants argue that since 2018 they have suffered irreparable harm because the DOJ has had to defend the case, but DOJ is not even a party to the case, so harm to it is irrelevant. They argue no irreparable harm to *Defendants* other than monetary costs. Defendants provide no factual evidence on what additional discovery would be required other than updating expert reports previously served in 2018. Defendants themselves concede that the Second Amended Complaint contains allegations that are substantially similar to the original complaint, Doc. 468, which forecloses any attempt from them now to claim that any additional discovery would cause any irreparable harm to Defendants. Defendants well know that Plaintiffs are committed to moving quickly to trial, do not anticipate any significant discovery other than updating expert testimony and introducing the government's own new reports on climate change.

Defendants claim "the government will be irreparably harmed if it is forced to expend substantial public resources." Doc. 571 at 7; Doc 571-1 ¶ 3. As the Ninth Circuit wrote in 2018:

> The second *Bauman* factor is whether the petitioner "will be damaged or prejudiced in any way ***not correctable on appeal***." *Perry*, 591 F.3d at 1156. To satisfy this

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY**                    15
**PENDING A PETITION FOR A WRIT OF MANDAMUS (ECF No. 571)**

factor, the defendants "must demonstrate some burden . . . other than the mere cost and delay that are the regrettable, yet normal, features of our imperfect legal system." *DeGeorge v. U.S. Dist. Ct.*, 219 F.3d 930, 935 (9th Cir. 2000) (alteration in original) (quoting *Calderon v. U.S. Dist. Ct.*, 163 F.3d 530, 535 (9th Cir. 1998) (en banc)). Prejudice serious enough to warrant mandamus relief "includes situations in which one's 'claim will obviously be moot by the time an appeal is possible,' or in which one 'will not have the ability to appeal.'" *Id.* (quoting *Calderon*, 163 F.3d at 535). . . .

To the extent that the defendants are arguing that executive branch officials and agencies in general should not be burdened by this lawsuit, Congress has not exempted the government from the normal rules of appellate procedure, which anticipate that sometimes defendants will incur burdens of litigating cases that lack merit but still must wait for the normal appeals process to contest rulings against them. The United States is a defendant in close to one-fifth of the civil cases filed in federal court. The government cannot satisfy the burden requirement for mandamus simply because it, or its officials or agencies, is a defendant.

Distilled to its essence, the defendants' argument is that it is a burden to defend against the plaintiffs' claims, which they contend are too broad to be legally sustainable. That well may be. But, as noted, ***litigation burdens are part of our legal system, and the defendants still have the usual remedies before the district court for nonmeritorious litigation, for example, seeking summary judgment on the claims***.

*In re United States*, 884 F.3d at 835-6 (emphasis added). From October 17, 2018 to today, the government has spent over 8,000 hours just on the appellate process alone, making a mockery of its argument that early appeals will save public resources.[8] Doc. 571-1; *See* Stiglitz Decl., ¶ 6.b

Dr. Stiglitz provides the following expert testimony:

I want to be clear: The argument that the DOJ (or even the federal government) is somehow "irreparably harmed" by having to spend time preparing for trial, given the amount of money the DOJ has spent and will spend in attorney and expert time in defending this case, is a ludicrous argument. To suggest the harm to children's health and homes and constitutional rights is worth less than the money the government has to spend to litigate a case is to suggest every case could be stayed only because it cost taxpayer dollars to litigate.

---

[8] Had the case gone to trial in 2018, Defendants could have had 21 people spending more than 15 hours per day for 25 days (the approximate length of trial) to achieve that many hours of work. This case could have reached final judgment after trial for the amount of time Defendants have spent on its delay tactics.

Stiglitz Decl., ¶ 6.b. Dr. Stiglitz contrasts the public resources spent on direct subsidies to the fossil fuel industry, which have been estimated at approximately $20.5 billion per year, Stiglitz Decl. ¶ 10, and the fact that in 2022, the U.S. provided $760 billion in implicit and explicit fossil fuel subsidies to the industry, with the paltry millions in DOJ's legal fees it claims as irreparable harm to the Defendants. Stiglitz Decl. ¶ 10. Dr. Stiglitz also notes that The Department of Justice's budget requests are close to $40 billion dollars for Fiscal Year 2024. *Id.* at 22.

Because Defendants failed to show that they are "damaged or prejudiced in any way not correctable on appeal," Defendants fail to establish irreparable harm, let alone any injury, absent a stay. Defendants fail to make any argument about what harm will occur to Defendants if this case proceeds to a bench trial. *See* Doc. 571 at 6. Further, a stay applicant cannot demonstrate irreparable harm where they are faced with the routine rigors associated with complex civil litigation. *See In re United States*, 884 F.3d at 835-36 ("[D]efendants must demonstrate some burden . . . other than the mere cost and delay that are regrettable, yet normal, features of our imperfect legal system.") (internal quotations omitted);

Importantly, Defendants fail to address that their own conduct attempting to delay this litigation—including the now fourteen largely unsuccessful motions to stay—is the cause of this case's extended eight-year duration.[9] *See Juliana*, 949 F.3d at 1127 n.1 (Friedland, J., dissenting) ("If anything has wasted judicial resources in this case, it was" Defendants' requests for interlocutory appeal and mandamus relief.). Defendants' pending request for a stay will only lead to more judicial waste by further delaying Plaintiffs' trial, and precluding comprehensive appellate review which would be aided by a trial record.

---

[9] *See* Doc. 544 ¶¶ 3, 8 (unrefuted declaration that in no prior case has the Department of Justice filed as many petitions for writs of mandamus as it has filed in this case).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY**                    17
**PENDING A PETITION FOR A WRIT OF MANDAMUS (ECF No. 571)**

### III.    A Litigation Stay Will Substantially Injure Plaintiffs

Regarding the third factor, "'if there is even a fair possibility that the stay . . . will work damage to someone else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (internal citations omitted). Here, Youth Plaintiffs' irreparable injuries compound proportionally to each delay in adjudicating their claim. Stiglitz Decl. ¶ 6.d ("The cost of delay to these young Plaintiffs and the public interest is enormously high."). Because this is more than a "fair possibility" that the stay would damage someone other than Defendants, the stay should be denied. *See* all Declarations of Plaintiffs and their Experts submitted herewith. Defendants not only fail to address the extent to which a stay will certainly and substantially injure Plaintiffs; Defendants belittle the injuries Plaintiffs have already suffered and that are compounding the longer the trial court proceedings are delayed. Defendants disingenuously assert, ignoring all of their own evidence: "Nothing has changed since this case was filed that would now require the Court to proceed urgently toward trial." Doc. 571 at 7.

As shown by the Expert and Plaintiff Declarations filed herewith, Plaintiffs, who ranged from ages 8 to 19 when this case was filed in 2015, face an ever-worsening climate crisis and with it, risks to their health, their future, and their constitutional due process rights as the result of Defendants' ongoing actions. *See* SAC, Doc. 542; *Juliana*, 947 F.3d at 1168-69. Examples of how the climate crisis has deepened over the last several years of Defendants' delay are as follows:

- In the last six years, atmospheric $CO_2$ has risen 14 ppm, which is about 20% of the rise from the last ice age to our Holocene interglacial period. Running Decl. ¶ 6. The United States is responsible for 14% of that increase, emitting over 41.3 billion metric tons of $CO_2$. Running Decl. ¶ 8.

- Since the trial was canceled in 2018, the U.S. became the top producer of crude oil and remains the top producer of liquified natural gas in the world. Running Decl. ¶ 9.

- Every additional ton of $CO_2$ that enters the air adds to global warming and until the United States ceases to emit $CO_2$ from within its borders and stop producing more fossil fuels than any other country, the United States will continue to add to global warming, making the climate crisis worse. Running Decl. ¶ 10.

- According the 2023 Intergovernmental Panel on Climate Change Synthesis Report, "Every increment of global warming will intensify multiple and concurrent hazards (*high confidence*)."[10] Running Decl. ¶ 11.

- 2023 was the warmest year since global records began in 1850. Running Decl. ¶ 13.  "[T]he globe is blowing past prior record temperatures every few years." Running Decl. ¶ 19.

- "The global ocean reached its hottest level ever recorded by humans in 2023. The prior record was set in 2022, and before that in 2021, and before that in 2020, and before that in 2019." Running Decl. ¶ 21.

- It is critical that action by Defendants to reduce $CO_2$ emissions occur immediately. Running Decl. ¶ 31.

- Delay in initiating the transition to 100% renewable energy will make it much more difficult in getting to 100% renewables by 2050. Jacobson Decl. ¶ 12.

- Since 2018, Defendants have authorized substantial new fossil fuel infrastructure, which will be imbedded into the system for decades and make it harder to achieve 100% renewable energy by 2050. *See* Jacobson Decl. ¶ 12.

---

[10] IPCC, *Summary for Policy Makers*, *in* Climate Change 2023: Synthesis Report. Contribution of Working Groups I, II and III to the Sixth Assessment Report of the Intergovernmental Panel on Climate Change, 12 (2023).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY**          19
**PENDING A PETITION FOR A WRIT OF MANDAMUS (ECF No. 571)**

- Ceasing new fossil fuel leasing on federal public lands and preventing new fossil fuel infrastructure is necessary to meet an 80% transition to renewable energy by 2030 and a 100% transition by 2050, because any new leasing will result in embedded fossil fuel infrastructure, and deadly air pollution, that can last for decades. Jacobson Decl. ¶ 13.

- The environmental damage alone that results from delay in obtaining a remedy in this case could be irreparable. Stiglitz Decl. ¶¶ 13–21.

- The cost of delay to these Youth Plaintiffs and the public interest is enormously expensive because it equates to more climate damage, economic costs and greater uncertainty. The balancing of potential harms is clear: this case should be allowed to go to trial. Stiglitz Decl. ¶¶ 6, 15, 25–26.

- Children, including the Youth Plaintiffs, are already being harmed both physically and psychologically from climate change and their suffering increases with each day that governments continue with policies that result in high levels of GHG emissions. Van Susteren Decl.

- Any delay that prevents these Youth Plaintiffs from making their case at trial only serves to exacerbate their existing mental health injuries, with potentially life-long consequences. Van Susteren Decl. ¶ 19.

Furthermore, throughout this litigation, Plaintiffs have provided extensive, uncontradicted, and science-backed evidence that Defendants contribute to the ever-worsening climate crisis with their efforts to expand fossil fuel production and pollution. *See, e.g.,* Docs. 256-69, 271-75, 298, 542; *see also Juliana*, 947 F.3d at 1164 ("A substantial evidentiary record documents that the federal government has long promoted fossil fuel use despite knowing that it can cause catastrophic climate change, and that failure to change existing policy may hasten an

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY**                                    20
**PENDING A PETITION FOR A WRIT OF MANDAMUS (ECF No. 571)**

environmental apocalypse."). While Defendants admit that "'business as usual' $CO_2$ emissions will imperil future generations," Defendants willfully ignore their ongoing role in the production and emission of fossil fuels that contribute to dangerous global climate change and concretely harm Plaintiffs' lives. *See* Defs.' Answer to First Amend. Compl. ¶ 150, Doc. 98. This in and of itself serves as another injury these Plaintiffs are already experiencing and that will get worse the longer this case is delayed. Furthermore, the psychological injuries that the Youth Plaintiffs are experiencing are aggravated by their knowledge that the government, a trusted institution designed to protect public wellbeing, is actively endorsing policies that make climate change worse despite repeated warnings by scientists and public acknowledgement of the danger. Van Susteren Decl. ¶¶ 11–12. This is a concept known as institutional betrayal.

As anthropogenic climate change worsens and intensifies, the Plaintiffs' suffer irreparable harm and Defendants continue to attempt to further delay this case with increased relentlessness. Last summer, as evidenced by the Declarations of Avery and Miko, Plaintiffs were injured when good swaths of the U.S. were shrouded under smoke from uncontrollable wildfires across North America during the hottest summer on record.[11] In the past eight years, Oregon has recorded its worst urban air quality, endured three of its ten hottest years on record and witnessed one of the most severe wildfire seasons ever. *See* Doc. 549 at 27. In the summer of 2020, Plaintiff Sahara, who has asthma, was told to remain indoors because of the harmful wildfire smoke that shrouded her community. Sahara Decl. ¶ 3.

---

[11] Christine Hauser & Claire Moses, *Smoke Pollution From Canadian Wildfires Blankets U.S. Cities, Again,* N.Y. Times (July 17, 2023), http://www.nytimes.com/2023/07/17/us/wildfire-smoke-canada-ny-air-quality.html; Oliver Milman, *Fears of Hottest Year on Record as Global Temperatures Spike,* The Guardian (June 15, 2023), https://www.theguardian.com/environment/2023/jun/15/record-temperatures-global-heating.

Several plaintiffs have been forced to evacuate from their schools and their homes because of climate change-induced hurricanes. Plaintiff Levi has been displaced from his home due to climate change, having to move inland, away from the barrier island where he grew up due to intensifying weather events and the high costs of flood insurance. Levi Decl. ¶ 3. Two weeks after she started her first year of college, Plaintiff Avery had to evacuate inland due to Hurricane Idalia, an event President Biden publicly associated with the climate crisis. Avery Decl. ¶ 6; Running Decl. ¶ 26.

The Pacific Northwest "Heat Dome" in June 2021, which caused temperatures across the region to increase up to 16-20°C above normal, killing hundreds of people from excess temperatures, causing unprecedented loss of marine life[12] and exposing Plaintiffs Sahara and Miko to life-threatening temperatures. Sahara Decl. ¶ 5; Miko Decl. ¶ 3. Some plaintiffs have been exposed to unprecedented cold and storms. Levi Decl. ¶ 4; Avery Decl. ¶¶ 6–7; Miko Decl. ¶ 5; Nathan Decl. ¶ 3; Sahara Decl. ¶ 6.

In addition to Defendants' harmful support of the fossil fuel industry and worsening of the climate crisis, Defendants also harm Plaintiffs by further delaying this litigation. As a result of this case's repeated and extended delays caused by Defendants' barrage of motions, writs, and appeals over eight years, Plaintiffs experience trauma and continue to endure cultural, economic, physical, psychological, and mental injuries. *See* Doc. 544 ¶ 5; Avery Decl. ¶ 9; Miko Decl. ¶¶ 6–10; Nathan Decl. ¶ 6; Sahara Decl. ¶¶ 3, 7. If this litigation is further delayed, it will necessarily and irreversibly aggravate Plaintiffs' injuries by closing the window of opportunity for Defendants to take steps to return to or below 350 parts per million ("ppm") and preserve a habitable climate

---

[12] Rachel H. White et al., *The Unprecedented Pacific Northwest Heatwave of June 2021*, 14 Nature Commc'ns 727 (2023).

system for Plaintiffs and this Nation. *See* SAC ¶ 259, Doc. 542. There is no doubt: additional delay in this case "locks in additional impending catastrophes on top of those already occurring." *See* Doc. 544 ¶ 9. In moving for a stay, Defendants do not dispute: "that climate change poses a serious threat, nor that addressing climate change requires the active involvement of the federal government." Doc. 571 at 8.

"[D]eprivation of a constitutional right 'unquestionably constitutes irreparable injury' . . . ." *Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029, 1038 (S.D. Cal. 2022) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991) ("We have stated that an alleged constitutional infringement will often alone constitute irreparable harm.") (quotations and citations omitted); *Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) ("[A]lleged constitutional infringement will often alone constitute irreparable harm."). Furthermore, "environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotations and citations omitted and alterations normalized). Plaintiffs have produced expert and personal testimony of extensive irreparable harm from every day of delay in contrast to the Defendants single declaration about spending millions of dollars in legal time. There is simply no comparison. As two renowned experts independently state: it is "ludicrous."

Because Defendants fail to with candor to the court address the third grounds for a stay, and the evidence of irreparable harm to Plaintiffs is uncontroverted, this Court should deny Defendants' Motion to Stay.

IV.    **The Public Interest Requires a Denial of a Stay of Proceedings**

The public interest strongly favors denial of Defendants' Motion to Stay. Like government leaders before him, President Biden has identified the climate crisis as an "existential threat to humanity."[13] Plaintiffs will bear the brunt of the climate crisis—both because they will mature in a destabilized climate and because of their biological predisposition to climate change-related harms. Across the country, the Climate Extremes Index reached four of its ten highest levels in the past seven years and millions of American children have been exposed to dangerous air quality conditions due to climate change-induced wildfires, including these youth. *See* Doc. 549 at 27. The public interest will benefit when Plaintiffs present their evidence at trial—as is their due process right. *See, e.g.*, *Cobine v. City of Eureka*, No. C 16-02239 JSW, 2016 WL 1730084, at *7 (N.D. Cal. May 2, 2016) ("The Court recognizes the public interest of protecting the public health and safety as well as preserving the environment . . . ."); *Ctr. for Biological Diversity v. E.P.A.*, 722 F.3d 401, 415 (D.C. Cir. 2013) (Kavanaugh, J., concurring) ("The task of dealing with global warming is urgent and important at the national and international level.").

Plaintiffs' experts explain in greater detail the public interest that would be harmed by further delay:

- The two greatest emergencies are the drastic global warming that has occurred just in the last year and the worldwide air pollution death rate, which is approximately 7 million per year worldwide and nearly 100,000 deaths per year in the U.S. Jacobson Decl. ¶ 5.

---

[13] The White House, *Remarks by President Biden on Climate Resilience | Palo Alto, CA* (June 19, 2023), https://www.whitehouse.gov/briefing-room/speeches-remarks/2023/06/19/remarks-by-president-biden-on-climate-resilience-palo-alto-ca/.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY                24
PENDING A PETITION FOR A WRIT OF MANDAMUS (ECF No. 571)**

- According to NOAA, 2023 was also a record setting year for billion-dollar weather and climate disasters with tremendous loss of human life. Running Decl. ¶¶ 24–25; *see also* Stiglitz Decl. ¶¶ 16-18.

- The total cost of climate disaster events from 2017 to 2023 exceeds $1.0 trillion. Stiglitz Decl. ¶ 18.

- Delay in initiating the transition to 100% renewable energy will cost lives. Jacobson Decl. ¶ 14.

- The cost of delay to these young Plaintiffs and the public interest is enormously expensive. Stiglitz Decl. ¶¶ 19-21, 25.

Courts across the Ninth Circuit have long affirmed that the public interest is well-served by the protection of constitutional rights. "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Rodriguez v. Robbins*, 715 F.3d 1127, 1146 (9th Cir. 2013) (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)).

## CONCLUSION

Defendants' extraordinary fourteen attempts to stay this litigation over the past eight years, combined with soon-to-be seven petitions for writ of mandamus, five to the Ninth Circuit Court of Appeals, singling out this specific case, and these specific youth plaintiffs, to roadblock their path to trial like some sort of political vendetta should not be sanctioned by any court of law. *See* Olson Decl. at ¶¶ 2-6; *see* Doc. 549 at 17 ("Defendants have now repeatedly engaged in conduct that is heavily disfavored by the Ninth Circuit and may amount to an abuse of this Court's process."). Attorneys with the Department of Justice have used politically targeted and hostile language to describe their persecution of these young plaintiffs. The bottom line is that Defendants'

arguments are not rooted in law and their facts are not rooted in reality. They only care about "killing" this case and denying these American youth access to their courts and justice, no matter the cost to children, the nation, the public interest, or the planet.

Declaratory relief from this Court is Plaintiffs' last hope to remedy their constitutional injuries and preserve their reasonable safety from the harm caused by Defendants while time allows. Any further delay in this case before trial is deleterious to remedying Plaintiffs' constitutional injuries caused by Defendants and the wider public that will benefit from this meritorious case.

For the foregoing reasons, this Court should deny Defendants' Motion to Stay.

DATED this 1st day of February, 2024.

*/s/ Julia A. Olson*
JULIA A. OLSON (OR Bar 062230)
julia@ourchildrenstrust.org
Our Children's Trust
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

PHILIP L. GREGORY (*pro hac vice*)
pgregory@gregorylawgroup.com
Gregory Law Group
1250 Godetia Drive
Redwood City, CA 94062
Tel: (650) 278-2957

ANDREA K. RODGERS (OR Bar 041029)
andrea@ourchildrenstrust.org
Our Children's Trust
3026 NW Esplanade
Seattle, WA 98117
Tel: (206) 696-2851

*Attorneys for Plaintiffs*
